LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Proposed Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re:<br><br>MARC JOHN RANDAZZA<br><br>Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11<br><br>Date: October 21, 2015<br>Time: 1:30 p.m.<br>Courtroom 1 |
|---|---|

**MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 366**
**FOR AN ORDER DETERMINING THAT ADEQUATE ASSURANCE**
**HAS BEEN PROVIDED TO THE UTILITY COMPANIES**

Debtor, Marc John Randazza ("Debtor"), debtor and debtor in possession, by and through his proposed attorneys, the law firm of Larson & Zirzow, LLC, hereby respectfully submit his *Motion Pursuant to 11 U.S.C. §§ 105(a) and 366 for an Order Determining that Adequate Assurance Has Been Provided to the Utility Companies* ("Motion").

The Motion is made and based on the points and authorities provided herein, the *Declaration of Marc John Randazza in Support of Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a) and 366 for an Order Determining that Adequate Assurance Has Been Provided to the Utility Companies* (the "Randazza Declaration"),[1] which Randazza Declaration is incorporated herein in its entirety by this reference, the following memorandum of points and authorities, the

---

[1] All capitalized items not otherwise defined herein shall have those meanings ascribed in the Sylver Declaration.

papers and pleadings on file herein, judicial notice of which is respectfully requested, and any arguments of counsel made at any hearing on this matter.

## Jurisdiction and Introduction

1. On August 28, 2015 (the "Petition Date"), the Debtor filed his voluntary petition for relief under Chapter 11, title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case"). The Debtor is authorized to operate as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to LR 9014.2, the Debtor consents to the entry of final orders and judgments by the bankruptcy judge Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. No request has been made for the appointment of a trustee or examiner, and no official committees have been appointed in the above-captioned case (the "Chapter 11 Case"). See id.

4. The Debtor is an Attorney At Law. Additional information regarding the Debtor is contained in the Randazza Declaration.

## Relief Requested

5. In the ordinary course of his business, Debtor incurs utility expenses for water, sewer service, electricity, gas, telephone service, internet service, cable television, and waste management. These utility services are provided by the utilities (as such term is used in Section 366, collectively, the "Utility Providers") listed on the Utility Service List attached hereto as **Exhibit "1"** (the "Utility Service List").[2]

---

[2] Prior to the Petition Date, Debtor used his best efforts to determine specific and personal contact information (i.e., not just that general Post Office box to which payments are remitted) for his Utility Providers where notices of the Chapter 11 Case and this Motion could be sent, including but not limited to fax and e-mail addresses to allow for immediate delivery when such information was available.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

6. On average, Debtor collectively spends approximately $1,300.00 each month on utility costs. As of the Petition Date, Debtor is substantially current on his utility obligations.

7. Preserving utility services on an uninterrupted basis is essential to Debtor's ongoing operations/ability to work and, therefore, to the success of his reorganization. Any interruption of utility services, even for a brief period of time, would disrupt Debtor's ability to continue servicing his daily needs, thereby negatively affecting customer relationships, property and income. Such a result could jeopardize Debtor's reorganizations efforts and, ultimately, value and creditor recoveries. It is therefore critical that utility services continue uninterrupted during the Chapter 11 Case.

8. Debtor intends to pay his post-petition utility obligations owed to the Utility Providers in a timely manner. Debtor expect that he will have ample liquidity, based upon the Cash on Hand, as well as cash flow from operations, to pay post-petition obligations to the Utility Providers.

9. Specifically, Debtor's operations are currently cash flow positive, prior to debt service, and Debtor presently has more than $29,095.00 in cash on hand or in his bank account as of the Petition Date.

10. To provide additional assurance of payment for future services to the Utility Providers, that did not hold deposits from Debtor on the Petition Date (collectively, the "Other Utility Providers"), Debtor has dedicated the sum of $429.00, which is a sum equal to 33% of Debtor's estimated cost of his monthly utility consumption (the "Proposed Adequate Assurance"), for payments of utilities expenses. This will provide still further assurance of future payment, over and above Debtor's ability to pay for future utility services in the ordinary course of business based upon his existing Cash on Hand and cash flow from operations.

11. Debtor submits that the existing deposits and the Proposed Adequate Assurance provide protection well-in-excess-of that required to grant sufficient adequate assurance to the Utility Providers.

12. Notwithstanding the Proposed Adequate Assurance for the Utility Providers, if the Utility Providers are not satisfied that they have received adequate assurance of future

3

payment, the Debtor proposes the following procedures (the "Procedures") under which such dissatisfied Utility Provider may make additional requests for adequate assurance:

  a. If a Utility Provider is not satisfied with the assurance of future payment provided by the Debtor, the Utility Provider must serve a detailed written request (a "Request") so that it is actually received within fifteen (15) days of the date of the order granting this Motion (the "Request Deadline") requesting what additional protections it believe are necessary and appropriate under the circumstances.

  b. Without further order of the Court, the Debtor may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Request if the Debtor, in his discretion, determines that the Request is reasonable or if the parties negotiate alternate consensual provisions.

  c. If the Debtor believes that a Request is unreasonable, the Debtor shall file a motion pursuant to section 366(c) of the Bankruptcy Code (a "Determination Motion") within fifteen (15) days after the Request Deadline. The Determination Motion shall seek a determination from the Court that the Utility Deposit account, plus any additional consideration offered by the Debtor, constitutes adequate assurance of payment. Pending notice and a hearing of the Determination Motion, the Utility Provider that is the subject of the Determination Motion may not alter, refuse or discontinue services to the Debtor, or recover or set off against a prepetition deposit.

  d. Any Utility Provider that fails to make a timely Request shall be deemed to be satisfied that the Debtor's Deposits and Proposed Adequate Assurance provides adequate assurance of payment to such Utility Provider within the meaning of section 366 of the Bankruptcy Code, and shall further be deemed to have waived any right to seek additional adequate assurance during the course of this Chapter 11 Case.

13. To the extent Debtor subsequently identify additional providers of utilities, Debtor seeks authority, in his sole discretion, to amend the Utility Service List to add or remove any Utility Provider. For those Utility Providers that are subsequently added to the Utility Service List, Debtor will serve a copy of this Motion, along with the applicable portion of the

4

amended Utility Service List and any order entered in connection with this Motion. Any subsequently added Utility Provider that objects to Debtor's Proposed Adequate Assurance will be subject to the Procedures and must file a Request within thirty (30) days of being served with the relevant order.

14. Debtor further requests that all Utility Providers, including subsequently added Utility Providers, be prohibited from altering, refusing, or discontinuing utility services to Debtor absent further order of the Court.

**Legal Authority**

15. Section 366(c)(2) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), addresses utility services to a Chapter 11 debtor. See 11 U.S.C. § 366(c)(2). Specifically, section 366(c)(2) of the Bankruptcy Code provides that a utility may alter, refuse, or discontinue service if, within thirty (30) days after a Chapter 11 filing, such utility has not received an adequate "assurance of payment" that is satisfactory to the utility. See 11 U.S.C. § 366(c)(2).

16. Section 366(c)(1)(A) of the Bankruptcy Code provides that the term "assurance of payment" means: "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or, (vi) another form of security that is mutually agreed on between the utility and the debtor or trustee." Id. § 366(c)(1)(A). Thus, since section 366(c) of the Bankruptcy Code specifies the form of assurance that will be deemed adequate, a determination of the amount of assurance that must be provided falls squarely within the court's discretion. See id. § 366(c)(3)(A) ("A court may, after request of a party in interest and after notice and hearing, modify the amount of adequate assurance payment required."); see also In re Haven Eldercare, LLC, No. 07-32720, 2008 WL 139543, at *2 (Bankr. D. Conn. Jan. 10, 2008) (court modified the amount of adequate assurance to equal a cash deposit in an amount equal to that debtor's average monthly invoice over the last 12 months); In re Viking Offshore (USA) Inc., No. 08-31219-H3-11, 2008 WL 782449, at *3 (Bankr. S.D. Tex. Mar. 20, 2008) ("The structure of Section 366 is such that, if [d]ebtors are unable to provide an offer of adequate

5

assurance satisfactory to the utility, the utility may insist on a different amount, subject to a determination by the court.").

17.     While the court has discretion in determining the amount of assurance, such discretion is not limitless. Section 366(c)(3)(B) of the Bankruptcy Code lists certain factors that a court may not consider. Specifically, courts may no longer consider: (i) the absence of a security deposit before a debtor's petition date; (ii) a debtor's history of timely payments; or (iii) the availability of an administrative expense priority.

18.     Nonetheless, a court's discretion under section 366(c) of the Bankruptcy Code is nearly identical to the discretion it has under section 366(b). Compare 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment"), with 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2).").

19.     Courts construing section 366(b) of the Bankruptcy Code have long recognized that adequate assurance does not constitute an absolute guaranty of the debtor's ability to pay. See In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance. . . . a Bankruptcy Court is not required to give a [Utility Provider] the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition services.") (citing In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (S.D.N.Y. 2002); see also Va. Elec. & Power Co. v. Caldor, Inc.-N.Y. (In re Caldor, Inc.-N.Y.), 199 B.R. 1, 3 (S.D.N.Y. 1996), aff'd, 117 F.3d 646 (2d Cir. 1997) ("Section 366(b) requires a Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guaranty of payment.'").

20.     Courts have recognized that, in analyzing the requisite level of adequate assurance, they should "focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to

6

conserve scarce financial resources." Caldor, Inc.-N.Y., 117 F.3d at 650 (citing In re Penn Jersey Corp., 72 B.R. 981 (Bankr. E.D. Pa. 1987)).

21. It is also well-established that section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment whatsoever may be required. See id. at 650 ("Even assuming that 'other security' should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'"). This principle may be applicable in cases where the debtor has made prepetition deposits or prepayments for services that utilities will ultimately render post-petition. See 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for post-petition services as adequate assurance). Accordingly, even after BAPCPA's revisions to section 366 of the Bankruptcy Code, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary.

22. The Debtor believes he will have sufficient resources to pay, and intends to pay, all valid post-petition utility obligations for utility services in a timely manner. In addition, the Debtor has a powerful incentive to stay current on his utility obligations because of the Debtor's reliance on utility services for the operation of the Center. These factors, which the Court may (and should) consider when determining the amount of any adequate assurance payments, justify a finding that no adequate assurance payment is required in this Chapter 11 Case. In light of the foregoing, the Debtor respectfully submit that the Proposed Adequate Assurance for the Utility Providers are more than sufficient to assure the Utility Providers of future payment.

23. Moreover, if a Utility Provider disagrees with the Debtor's analysis, the Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtor's continuing operations. If a Utility Provider fails to timely file a Request in accordance with the Procedures, however, such Utility Provider shall be deemed to consent to the Procedures and shall be bound by any order approving this Motion. See In re Syroco, Inc., No. 07-04091, 2007 WL 2404295, at *2 (Bankr. D.P.R. 2007) (a utility provider's

lack of objection, response or counter-demand after receiving notice of hearing on utilities motion, notice of interim order and notice of final hearing constitutes tacit acceptance of the debtor's proposed two-week cash deposit as adequate assurance of payment as such term is used in section 366 of the Bankruptcy Code).

24. The proposed Procedures are necessary for the Debtor to carry out his reorganization efforts. If such Procedures are not approved, the Debtor could be forced to address a volume of requests by its Utility Providers during the critical first weeks of his reorganization. Moreover, the Debtor could be blindsided by a Utility Provider unilaterally deciding--on or after the thirtieth day following the Petition Date--that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. Discontinuation of utility service would force operations to cease, and such disruption of operations could place the Debtor's reorganization efforts in jeopardy.

### Reservation of Rights

25. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtor expressly reserves his rights to contest any invoice of a Utility Provider under applicable non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

### CONCLUSION

WHEREFORE, Debtor respectfully request that the Court enter an order substantially in the form attached hereto as **Exhibit "2"** providing as follows: (i) determining that his Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (ii) approving the Debtor's proposed Procedures whereby Utility Providers may request additional or different adequate assurance; (iii) prohibiting the Utility

Providers from altering, refusing, or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtor's Proposed Adequate Assurance; (iv) determining that the Debtor is not required to provide any additional adequate assurance beyond what is proposed by this Motion; and (v) granting the Debtor such other and further relief as is just and proper.

Dated: September 22, 2015.

LARSON & ZIRZOW, LLC

By: /s/ Zachariah Larson
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101

Proposed Attorneys for Debtor

# Exhibit "1"

## Utility Service List

1. Southwest Gas
2. NV Energy
3. Century Link
4. Clark County Water Reclamation
5. Las Vegas Valley Water District
6. Republic Service

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# EXHIBIT "2"

EXHIBIT "2"

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone:  (702) 382-1170
Fascimile:  (702) 382-1169

Proposed Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-15-14956-abl<br>Chapter 11 |
| MARC JOHN RANDAZZA | |
| Debtor. | Date: October 21, 2015<br>Time: 1:30 p.m.<br>Courtroom |

**ORDER GRANTING DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 FOR AN ORDER DETERMINING THAT ADEQUATE ASSURANCE HAS BEEN PROVIDED TO UTILITY COMPANIES**

Debtor, Marc John Randazza ("Debtors"), filed his *Motion Pursuant to 11 U.S.C. §§ 105(A) and 366 for an Order Determining that Adequate Assurance Has Been Provided to Utility Companies* ("Motion")[1] [ECF No.   ].

---

[1] All capitalized, undefined terms shall have the meaning ascribed to them in the Motion.

The Motion came on for hearing before the above-captioned Court on the ___ day of October, 2015 at _____, the Debtor appearing by and through his Proposed Attorneys, the law firm of Larson & Zirzow, LLC, and all other appearances were noted in the record.

No opposition having been filed; the Court having reviewed the Motion and the other pleadings and papers on file, and having heard and considered the argument of counsel; the Court having stated its findings of fact and conclusions of law on the record at the hearing on the Motion, which findings of fact and conclusions of law are incorporated herein by this reference in accordance with Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 9014; it appearing that the relief requested in the Motion is in the best interest of the Debtor, his estate, and his creditors, and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** as follows:

1.  The Motion is granted in its entirety;

2.  Except in accordance with the procedures set forth below, absent further order of the Court, Debtor's utilities (as such term is used in Section 366, collectively, the "Utility Providers") are prohibited from: (a) altering, refusing, or discontinuing service to, or discriminating against Debtor solely on the basis of the commencement of his bankruptcy case or on account of any unpaid invoice for services provided before the Petition Date, and (b) requiring the payment of a deposit or other security in connection with the Utility Providers' continued provision of utility services, including the furnishing of gas, heat, electricity, water, telephone service, or any other utility of like kind, to Debtor;

3.  If a Utility Provider is not satisfied with the assurance of payment provided under this order, the Utility Provider must serve a written request (a "Request") for additional assurance of payment, which Request must be served upon Debtor's counsel a detailed written request so that it is actually received within fifteen (15) days of the date of this Order (the "Request Deadline"). The Request must set forth the location(s) for which utility services are provided, the last 4 digits of the account number(s) for such location(s), the outstanding balance for each account and a summary of the Debtor's payment history for the 18 months prior to the Petition Date on each account. Without further order of the Court, Debtor may enter into

2

agreements granting additional adequate assurance to a Utility Provider serving a timely Request, if Debtor in his discretion determines that the Request is reasonable or if the parties negotiate alternate consensual provisions;

    4.    If Debtor believes that a Request is unreasonable, Debtor shall file a motion pursuant to Section 366(c)(2) (a "<u>Determination Motion</u>") within thirty (30) days after the Request Deadline, seeking a determination from the Court that the Utility Deposit Reserve constitutes adequate assurance of payment. Pending notice and a hearing on the Determination Motion, the Utility Provider that is the subject of the Request may not alter, refuse, or discontinue services to Debtor nor recover or set off against a prepetition deposit;

    5.    Any Utility Provider that fails to make a timely Request shall be deemed to be satisfied that Debtor's Adequate Assurance provides adequate assurance of payment to such Utility Provider within the meaning of Section 366, and shall further be deemed to have waived any right to seek additional adequate assurance during the course of his Chapter 11 case;

    6.    Debtor may supplement the Utility Providers List. Any subsequently identified Utility Provider set forth on a supplemental exhibit will fall within the scope of this Order from the date of the filing of such supplemental exhibit. Any Utility Provider not listed on the original Utility Provider List but included on a supplemental exhibit shall be served with notice and a copy of this Order within five (5) business days after the supplemental exhibit is filed with the Court, and is afforded thirty (30) days from the date of service to make a Request. Such Request must otherwise comply with the requirements of this Order;

    7.    Nothing in this Order or the Motion shall be deemed to vacate or modify any other restrictions on the termination of service by a Utility Provider as provided by Sections 362 and 366 or other applicable law, and nothing herein or in the Motion shall constitute post petition assumption or adoption of any agreement pursuant to Section 365 nor shall anything herein be deemed a waiver by Debtor or any other party of any right with respect to the assumption or rejection of an executory contract;

    8.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry;

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

9. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this order.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED BY:

LARSON & ZIRZOW, LLC

By: _____
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101

Proposed Attorneys for Debtor

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirement of approval under LR 9021(b)(1).

☒ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

#####

4