Vaughn M. Greenwalt (SBN 298481)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372

Attorneys for Creditors,
EXCELSIOR MEDIA CORP., and
LIBERTY MEDIA HOLDINGS, LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA | Case No.: BK-S-15-14956-abl<br><br>Chapter 11<br><br>**EXCELSIOR MEDIA CORP., AND LIBERTY MEDIA HOLDINGS, LLC.'S OPPOSITION TO DEBTOR'S APPLICATION TO EMPLOY AND RETAIN COUNSEL *NUNC PRO TUNC* TO THE PETITION DATE.**<br><br>Date: October 21, 2015<br>Time: 1:30 p.m.<br>Courtroom 1 |

    Excelsior Media Corp., and Liberty Media Holdings, LLC (collectively "E/L" or "Creditors"), by and through its attorney of record, hereby submit this opposition to debtor Marc John Randazza's ("Randazza" or "Debtor") Application to Employ and Retain Larson & Zirzow, LLC ("L&Z") as Attorneys for The Debtor *Nunc Pro Tunc* to the Petition Date (the "Application") on the grounds: (a) no showing is made to support a *nunc pro tunc* order; (b) L&Z has received payments which may constitute voidable preferences under section 457 of the Bankruptcy Code; (c)

---

1

the application does not establish that the fees already paid, and for which *nunc pro tunc* approval is sought, are reasonable; and (d) there is no support for the proposition that the court should approve the retention of a professional before the circumstances for which the retention is sought have occurred.

This Opposition is based upon the following memorandum of points and authorities, the declaration of Wendy M. Krincek, all pleadings and papers on file in this action, and such argument as may be presented at the hearing thereon.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On August 28, 2015, Debtor Marc John Randazza filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  Debtor is an attorney licensed in the states of Arizona, California, Colorado, Florida, Massachusetts, and Nevada.  Creditors E/L, are affiliated entities comprising a larger online entertainment firm whom formerly employed Debtor as its in-house general counsel from 2009 through 2012.

Debtor resigned his employment at E/L effective August 29, 2012, under contentious circumstances caused in chief by numerous instances of professional and ethical misconduct perpetrated by Debtor, at the expense of E/L.

In the latter half of 2012, Debtor initiated a frivolous arbitration action against E/L for unsubstantiated claims under Judicial Arbitration and Mediation Services, Inc. ("JAMS") case No. 1260002283 before the Hon. Stephen E. Haberfeld (Ret.) (the "Arbitrator").  In response, E/L filed counterclaims against Debtor stemming from flagrant violations of professional conduct, barred by ethical rules, which resulted *and continues to result* in harm to E/L.

On February 9 through 13, 2015, the Arbitrator held in-person evidentiary sessions on the merits of the parties' respective claims, counterclaims, and contentions.  After weighing the relevant evidence and testimony, the Arbitrator rendered his Interim Arbitration Award ("IAA") on June 3, 2015.  A true and correct copy of the IAA is attached hereto as Exhibit 1.  The IAA found firmly for

2

Opposition to Application To
Employ and Retain Counsel *Nunc Pro Tunc*.

E/L, and awarded E/L in excess of $1 million dollars, subject to an additional award for costs and attorneys fees upon application therefor.

In an effort to avoid payment of the entire monetary component of the IAA, and before the IAA could be confirmed by the state court, Debtor, by and through its counsel L&Z, initiated settlement negotiations with E/L. During these negotiations, Debtor consistently used the threat of a bankruptcy petition in an attempt to negotiate a sum of payment significantly reduced from that awarded to E/L in the IAA. Not only did Debtor use the threat of bankruptcy as a cudgel, but he and his allegedly estranged wife have initiated *sealed* divorce proceedings, and dissipated assets.

After weeks of feigned negotiation, and several attempts to have the hearing confirming the IAA continued, Debtor filed his petition for Chapter 11 reorganization on August 28, 2015 - the eve before the IAA could be confirmed. Debtor attempted delay for two reasons: (1) in a misguided effort to stay the award of attorneys fees by the Arbitrator, as well as the confirmation of the IAA by the state court; and (2) to push the date of petition out more than 90 days, so that Debtor's fraudulent, improper, and preferential transfers could not be clawed back, including payments to his attorneys L&Z.[1]

According to Debtor's schedules filed on September 11, 2015, Debtor has deposited with L&Z sums totaling $94,000. [ECF 15]  On September 22, 2015, L&Z filed the instant Application to Employ and Retain Larson & Zirzow, LLC as Attorneys for the Debtor *Nunc Pro Tunc* to the Petition Date. [ECF 18, 19]

According to the retainer agreements and statements made therein, L&Z entered into representation of Debtor as of June 11, 2015 for "pre-bankruptcy settlement negotiations and to attend a settlement conference. The Debtor paid L&Z a flat fee of $10,000.00 for this engagement." [ECF 18 at ¶7]

L&Z also purports to have been retained, via two separate retainer agreements, for representation in both a bankruptcy action, and a potential adversary proceeding. The first retainer

---

[1] So the Court is aware, Creditors E/L will also be moving for an order appointing a Chapter 11 Trustee, as well as for relief from the automatic stay in both the arbitration and state court proceedings.

3

Opposition to Application To
Employ and Retain Counsel *Nunc Pro Tunc*.

agreement was for preparation and filing of the voluntary petition for relief as debtor and debtor in possession in a bankruptcy case commenced under Chapter 11 of Title 11 of the United States Code; the second was for potential nondischargeability litigation.  [ECF 18, Exhibit 2, and 3, respectively].  Of particular import, the Application is silent as to how much of each of the retainer agreements were paid, when, or for what amounts.

L&Z's Application is deficient as it relates to exactly what the scope of services are that it has billed for as of yet.  In fact, L&Z only *informs* as to the fact that it has received a total sum of $94,000 for legal services in connection with Debtor's Chapter 11 case. "Of this sum, L&Z billed and was paid the sum of $26,908.82 *prior to the Petition Date*, and L&Z currently holds in trust the remainder sum of $67,091.18 (the "Remaining Retainer") a portion of which has been allocated pursuant to the Representation Agreements for potential adversary proceedings." [ECF 18 at ¶16 (emphasis added)]  This Application utterly fails to identify and delineate what services were provided totaling $26,908.82.

In any event, all transfers were made within 90 days of the filing of Debtor's Petition.  As such, the "pre-bankruptcy" retainer fees charged and collected by L&Z constitute an avoidable preferential transfer, and the funds must be clawed back to the estate.  As a result, L&Z will lose their status as "disinterested parties" and are therefore not qualified to serve as attorneys for the Debtor.

## II.    L&Z'S APPLICATION IS INSUFFICIENT TO SATISFY THE TEST FOR APPROVAL OF HIRING OF PROFESSIONALS.

L&Z's employment as attorneys for the debtor in possession in a Chapter 11 case is governed by § 327(a) of the Bankruptcy Code, which requires court approval for the attorney's employment.  The bankruptcy court is charged with "ensur[ing] that attorneys who represent the debtor do so in the best interests of the bankruptcy estate." *In re Park–Helena Corp.*, 63 F.3d 877, 880 (9th Cir.1995).  Under § 327, an attorney for a debtor cannot "hold or represent an interest adverse to the estate"; he or she must be a "disinterested person." 11 U.S.C. § 327(a).  Any creditor of the estate, or anyone with "an interest materially adverse to the interest of the estate ... by reason

4

Opposition to Application To
Employ and Retain Counsel *Nunc Pro Tunc*.

of any direct or indirect relationship to, connection with, or interest in, the debtor," is not a disinterested person. 11 U.S.C. §§ 101(14)(A), (C). A "creditor" includes any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." § 101(10)(A). A "claim" includes any "right to payment." § 101(5)(A).

To enable the Bankruptcy Court to evaluate an attorney's potential employment, Rule 2014(a) requires that an application for employment of an attorney under § 327 "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr.P. 2014(a). This disclosure requirement is applied "strictly." *Park–Helena*, 63 F.3d at 881.

An attorney approved for employment under § 327 must apply for interim or final compensation, which is subject to approval of the Bankruptcy Court. 11 U.S.C. §§ 328–31; see also *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 575 (Bankr.N.D.Tex.1986) (noting that "fees in bankruptcy cases ... are subject to review, modification, and outright cancellation by the Court"). Rule 2016(a) requires an attorney seeking compensation and/or reimbursement of expenses to file an application "setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." The fee application must also include, *inter alia*, "a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, [and] the source of the compensation so paid or promised." *Id*. After notice and a hearing, the court may award "reasonable compensation for actual, necessary services rendered," as well as "reimbursement for actual, necessary expenses." §330(a)(1).

Separate from, and in addition to, a fee application, § 329(a) further requires a debtor's attorney to "file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such

5

Opposition to Application To
Employ and Retain Counsel *Nunc Pro Tunc*.

attorney, and the source of such compensation." Rule 2016(b) requires the attorney to file such a statement "within 14 days after [a petition is filed]," along with supplemental statements "within 14 days after any payment or agreement not previously disclosed." The court may approve any reasonable compensation agreement, including on a retainer and/or hourly basis. §328(a). However, once an attorney has disclosed his or her "compensation paid or agreed to be paid," the court may "cancel any such agreement, or order the return of any such payment" if the court determines that it "exceeds the reasonable value of any such services." §329(b). The court may also "deny allowance of compensation for services and reimbursement of expenses [...] if, at any time [...], such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." §328(c).

If a debtor seeks approval for the employment of a professional on a *nunc pro tunc* basis, as Mr. Randazza does here, the test is even stronger. "A professional may receive court approval of employment "*nunc pro tunc*" where the professional did not receive prior approval, as long as such after-the-fact court approval is limited to exceptional circumstances. Applying for *nunc pro tunc* approval does not alleviate the professional from meeting the requirements of §327; the professional still must show that it was disinterested. The Ninth Circuit allows retroactive (*nunc pro tunc*) awards of fees for services rendered without prior court approval where: (1) the applicant has a satisfactory explanation for the failure to receive prior judicial approval; and (2) the applicant has benefitted the estate in some significant manner. These strict requirements are not to be taken lightly 'lest it be too easy to circumvent the statutory requirement of prior approval.'" *In re Mehdipour*, 202 B.R. 474,479 (9Th Cir. BAP, 1996).

**A.    L&Z Makes No Effort to Explain Why it is Seeking *Nunc Pro Tunc* Approval.**

The application to employ L&Z seeks *nunc pro tunc* approval to employ and retain the firm. However, the application makes no effort to explain why prior judicial approval was not obtained or to establish that L&Z has benefitted the estate in some significant manner. It appears that the request for *nunc pro tunc* approval is an effort to protect the $10,000 lump sum payment made

6

Opposition to Application To
Employ and Retain Counsel *Nunc Pro Tunc*.

pursuant to what the Application terms "Retainer 1." "Retainer 1" appears to have nothing to do with the bankruptcy case and, thus is likely an avoidable preferential transfer. This would not only subject the payment to recapture by the estate but also make L&Z a potential creditor. Since L&Z does not supply any detailed information on the nature of the work it performed in exchange for the $10,000, it cannot be determined whether it is reasonable, whether it benefitted the estate or whether it had any relation to the bankruptcy case.

As such, the Court should not approve, on a *nunc pro tunc* basis, the employment of L&Z under "Retainer 1."

### B. L&Z Potentially Holds An Interest Adverse To The Estate And Therefore Must Be Disqualified.

Because L&Z received pre-petition payment from the Debtor, under conditions that may subject those payments to a later avoidance action, L&Z cannot satisfy the "disinterested person" requirement. See, 11 U.S.C. § 327(a). *Id*. The Bankruptcy Code includes as a "disinterested person," someone who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor…, or for any other reason." 11 U.S.C. §1101(14)(E). Prior representation of the debtor does not, of itself, merit disqualification. See, 11 U.S.C. §1107(b) ("A person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.").

A debtors' counsel—or any estate professional- who is the beneficiary of a preference is in a precarious position:

> First, if [the debtor's counsel] actually did receive an avoidable preference then he would be ineligible to be paid anything from the estate unless and until he returns that preference. Second, if [the debtors' counsel] actually did receive an avoidable preference then he would probably be ineligible for employment, no matter how completely he disclosed the relevant facts, at least until he returns the preference ... As one court has put it, he would be unlikely to sue himself.

_____
7

Opposition to Application To
Employ and Retain Counsel *Nunc Pro Tunc*.

*Movitz v. Baker (In re Triple Star Welding, Inc.)*, 324 B.R. 778, 793 (9th Cir.BAP2005), *partially abrogated on other grounds, Dye v. Brown (In re AFI Holdings, Inc.)*, 530 F.3d 832 (9th Cir.2008)(citing *Staiano v. Pillowtex (In re Pillowtex, Inc.)* 304 F.3d 246, 254 (3d Cir.2002)).

The Ninth Circuit has adopted the test set out in *In re Pillowtex*, declaring that "where there is a 'facially plausible' preference claim then the preference issues must be resolved before proposed counsel can be employed (or compensated)." *In re Triple Star Welding*, 324 B.R. at 794 (*citing In re Pillowtex*, 304 F.3d at 254)).

An essential element of a preference claim is that the payment at issue was "made while the debtor was insolvent." 11 U.S.C. § 547(B)(3). Section 547(f) supplies a presumption that debtors are insolvent "on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). According to L&Z's own Application, Debtor transferred $10,000 to L&Z on or about June 11, 2015 – 78 days prior to Debtor's Petition. [ECF 18 at ¶7]

L&Z collected additional funds in prior to Debtor's Petition as well, including having billed, and collected, an additional $16,908.82 in retainer fees for which it provides no explanation or accounting therefor. L&Z also conspicuously fails to provide any date as to when the $16,908.82 was billed and/or collected, though it concedes that said amount was collected "prior to the Petition date." [ECF 18 at ¶16]

L&Z contends that it holds an additional sum of $67,091.18 which has been allocated to representation in potential adversary proceedings. [ECF 18 at ¶16] Again, no date of billing or collection has been provided, though it again concedes the $67,091.18 was collected "prior to the Petition date." [ECF 18 at ¶16] In any event, the amounts owed and collected by L&Z were within the 90 days prior to Debtor's Petition.

In *In re First Jersey Securities, Inc.*, 180 F.3d 504 (3d Cir.1999), the U.S. Trustee objected to retention of the counsel proposed by the debtor in possession on the ground that counsel had received a preferential payment, constituting an interest adverse to the estate. Notwithstanding that both the bankruptcy court and the district court had approved counsel's retention, the court reversed. The court stated "[w]here there is an actual conflict of interest ... disqualification is mandatory." *Id.* at 509 (citing *In re Marvel Entertainment*, 140 F.3d at 476). Then, in language that E/L here

8

Opposition to Application To
Employ and Retain Counsel *Nunc Pro Tunc*.

emphasizes, the court stated "[a] preferential transfer to [debtor's counsel] would constitute an *actual conflict of interest* between counsel and the debtor, and would require the firm's disqualification." 180 F.3d at 509 (emphasis in original).

> An avoidable preference is defined in section 547(b) of the Bankruptcy Code as: any transfer of an interest of the debtor in property-(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made-(A) on or within 90 days before the date of the filing of the petition; ... (5) that enables such creditor to receive more than such creditor would receive [in a Chapter 7 distribution].

11 U.S.C. § 547(b).

Because L&Z has taken and retained payments that may be preferential – as they were collected within the 90 days prior to Debtor's Petition – and it will not be advising Debtor to seek recovery of payments made to L&Z, an actual conflict of interest exists today, and will continue to exist if L&Z's retention is approved. See 11 U.S.C. §101(10)(A) (creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."); §101(5)(A) (claim is a right to payment). And, therefore, L&Z is not disinterested for the purposes of § 327(a). *See In re Kings River Resorts, Inc.*, 342 B.R. 76, 88 (Bankr.E.D.Cal.2006) ("A professional holding a potential prepetition claim against a debtor ... is a creditor of the estate and therefore not 'disinterested' ....").

### C. The Application Does Not Contain a Detailed Description of the Work Performed and the Amount Charged to Determine the Reasonableness of the Fees Already Paid.

The application does not satisfy Rule 2016(a)'s requirement that an attorney seeking compensation and/or reimbursement of expenses to file an application "setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." In fact, L&Z nowhere detail how much they have been paid under what is termed "Retainer 2" – the retainer governing the filing and processing of the Chapter 11 case. Yet, L&Z hopes to obtain *nunc pro tunc* approval of the fees charged and collected without ever having to

---
9

make the showing required under Rule 2016(a). This is improper. If the court is not presented with detailed facts demonstrating how much was charged, for what services, and how it was charged, it cannot make the necessary determination that it was reasonable and benefitted the estate. The entire application must be denied for this reason alone.

### D. The Court Should Not Approve a Retainer Agreement For Work That May Not Be Performed.

The request for approval of what is termed "Retainer 3" is wholly unsupported by logic and law. Apparently, the Debtor has paid L&Z a retainer of $30,000 – monies that are assets of the estate – to hold in case L&Z is required to represent the Debtor in a potential adversary proceeding. The Debtor cites to no authority that supports seeking, let alone obtaining, court approval to retain a professional *just in case* an adversary proceeding is filed. The proper way to proceed would be for the Debtor to return to court with an application to employ counsel to represent it in an adversary proceeding once that adversary proceeding is actually filed.

## III. CONCLUSION

Because L&Z billed and collected sums from the Debtor's in the 90-day period proceeding Petition, such sums paid are preferential transfers and subject to clawback to the estate. As such, L&Z will have a claim against the Debtor for sums owed pre-petition, will be a creditor of the estate, and therefore not a *disinterested party*. L&Z's Application must be denied on these grounds.

Dated: October 3, 2015               LANG, HANIGAN & CARVALHO, LLP


                                     By: __s/ Vaughn M. Greenwalt_____
                                         Vaughn M. Greenwalt
                                         Attorneys for Creditors,
                                         Excelsior Media Corp., and
                                         Liberty Media Holdings, LLC.

---
10

Opposition to Application To
Employ and Retain Counsel *Nunc Pro Tunc*.