LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Proposed Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re: | Case No.: BK-S-15-14956-abl |
|---|---|
| MARC JOHN RANDAZZA, | Chapter 11 |
| Debtor. | Date: October 21, 2015<br>Time: 1:30 p.m.<br>Courtroom 1 |

**REPLY TO THE OPPOSITION OF EXCELSIOR MEDIA CORPORATION**
**AND LIBERTY MEDIA HOLDINGS, LLC TO THE DEBTOR'S**
**APPLICATION TO EMPLOY AND RETAIN LARSON & ZIRZOW, LLC**
**AS COUNSEL *NUNC PRO TUNC* TO THE PETITION DATE**

Marc John Randazza, as debtor and debtor in possession ("Randazza" or the "Debtor"), by and through his proposed counsel, the law firm of Larson & Zirzow, LLC ("L&Z"), hereby submits his reply (the "Reply") to the opposition (the "Opposition") [ECF No. 38] filed by Excelsior Media Corporation and Liberty Media Holdings, LLC (collectively, "Excelsior/Liberty") to his *Application to Employ and Retain Counsel Nunc Pro Tunc to the Petition Date* (the "Application") [ECF No. 18].[1]

This Reply is made and based on the points and authorities herein, the *Declaration of Matthew C. Zirzow, Esq.* (the "Zirzow Declaration") submitted herewith, and any arguments

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meaning as set forth in the Application.

entertained by the Court at the time of the hearing on this matter. The Zirzow Declaration corrects and provides additional information from what was presented in the previous *Declaration of Zachariah Larson, Esq. in Support of Debtor's Application to Employ and Retain Larson & Zirzow, LLC as Attorneys for the Debtor Nunc Pro Tunc to the Petition Date* (the "Larson Declaration") [ECF No. 19].

## Introduction

1. Excelsior/Liberty's Opposition must be overruled because it makes no legitimate points of any merit in opposition to the Debtor's actual Application, which is the only matter presently before the Court, and instead is nothing more than a thinly-veiled attempt to use the Opposition cast the Debtor in a negative light for purposes of certain matters Excelsior/Liberty apparently will be filing in the future in this Chapter 11 Case. Specifically, although not at all relevant to the instant Application, Excelsior/Liberty includes a gratuitous and inaccurate description of the pre-petition arbitration and state court proceedings between the parties. See Opposition, p. 2, l. 15 to p. 3, l. 15. Suffice it to say, the Debtor disputes such characterizations, but will leave such issues to another day when they are properly before the Court. Similarly, with respect to Excelsior/Liberty's threats of seeking to appoint a chapter 11 trustee and/or stay relief to continue with the pre-petition arbitration and state court litigation with the Debtor, see id. p. 3, n.1, the Debtor believes such requests are irrelevant for purposes of the instant Application, and will obviously be disputed by him at the appropriate time.

2. Additionally, and before addressing the specific arguments raised in the Opposition, in preparing this Reply, L&Z realized that it incorrectly disclosed in the original Application and Larson Declaration the sum it billed and was paid by the Debtor pre-petition and thus, as a result, the amount of the retainers it had remaining on hand as of the Petition Date. This was due to L&Z neglecting to account in its calculations for a small invoice in the amount of $4,259.50 it issued and was paid for the month of August 2015 shortly before the filing, and instead mistakenly only accounted for invoices and payments in June and July 2015. To clarify and correct the record, L&Z billed and was paid the total sum of $31,168.32 pre-petition (not the $26,908.82 previously disclosed), and retains on hand retainers totaling $62,831.68 (not the

2

$67,091.18 previously disclosed) as of the Petition Date. To avoid any issue in this regard, and as a matter of full disclosure, attached to the Zirzow Declaration as **Exhibit 1** are true and copies of L&Z's pre-petition invoices, which also denote the services and expenses incurred and the payments received by L&Z pre-petition.

### No Approval of Pre-Petition Fees Charged and Paid is Required or Sought

3.  In its Opposition, Excelsior/Liberty first argues that the Application fails to identify and delineate what specific services were provided for the $26,908.82 (really $31,168.32) in pre-petition fees and costs paid to L&Z prior to the Petition Date for pre-petition services. In response, the Debtor asserts that there is no requirement whatsoever under the Bankruptcy Code or Bankruptcy Rules for any specific identification or delineation of pre-petition fees and costs paid to proposed counsel in a retention application. Instead, retention applications usually discuss the amount of pre-petition work done to inform the Court of the fact itself (which is, quite notably, not a disqualifying conflict per section 1107(b) of the Bankruptcy Code) and because it impacts the amount of retainer proposed counsel has remaining on hand as of the petition date to potentially be applied to post-petition fees and costs as may be allowed by the Court. Nowhere is there any requirement for any detail or what would essentially amount of a "fee application" for pre-petition services rendered to a debtor in a retention application. For example, Bankruptcy Rule 2016(a) obviously only applies to post-petition fees and costs as it speaks in terms of applications for compensation and reimbursement from the estate pursuant to sections 330 and 331 of the Bankruptcy Code.

4.  Notwithstanding the foregoing, the Debtor appreciates and acknowledges that the Court may review pre-petition fees and costs for reasonableness under section 329 of the Bankruptcy Code, but that is wholly a separate issue from the post-petition retention at issue in the Application pursuant to section 327(a) of the Bankruptcy Code and/or the allowance and payment of any post-petition fees and costs pursuant to sections 330 and 331 of the Bankruptcy Code. As such, there is simply no reason to delay the retention of counsel based upon pre-petition services provided by that counsel, and any potential issues with respect to section 329 of the Bankruptcy Code with respect to pre-petition billings can be preserved for another day (and if

adequate grounds are actually established for challenging such fees). In this regard, the Debtor further notes that the Opposition fails to acknowledge that L&Z did, in fact, timely file the necessary *Disclosure of Compensation* form with the Court regarding pre-petition services. See ECF No. 15, p. 42. For the avoidance of doubt, L&Z is not in any way seeking the approval of any pre-petition fees and costs billed and/or paid by way of the instant Application (which again is a retention application only, not a fee application), and Excelsior/Liberty's statements to the contrary are without merit.

**No Viable Preference Claim Exists for Any Pre-Petition Fees and Costs Charged and Paid**

5.    Second, the Opposition asserts that the mere possibility, without any actual proof, that L&Z may be the recipient of potential preferential transfer(s) pursuant to section 547 of the Bankruptcy Code as a result of the pre-petition payments it received for pre-petition services from the Debtor, means that it is not a "disinterested person" pursuant to section 327(a) of the Bankruptcy Code, and thus is also disqualified from representing the Debtor. As the invoices attached to the Zirzow Declaration indicate, the sequence of invoices and payments from L&Z to the Debtor pre-petition were as follows:

   (a)    Invoice for pre-bankruptcy settlement negotiations dated August 12, 2015 in a "flat fee" amount of $10,000 and paid on the same day from a retainer on hand;

   (b)    Invoice for pre-bankruptcy preparation for June 7, 2015 to July 30, 2015 in the amount of $16,908.82 and paid August 12, 2015 (and thus paid 12 days after bill issued); and

   (c)    Invoice for August 1, 2015 to August 28, 2015 in the amount of $4,259.50 paid August 25, 2015 (and thus paid the same day the invoice was issued).

A review of the foregoing invoices, as well as the legal representation agreements, reveals that L&Z could not possibly have been the recipient of a preference for numerous reasons.

6.    First, the amounts advanced by Randazza to L&Z to replenish the "evergreen" retainer were not transfers "for or on account of an antecedent debt owed by the debtor before such transfer was made" pursuant to section 547(b)(2) of the Bankruptcy Code. As the documents indicate, the monies from Randazza were advances for future anticipated services. It

4

is well established that if there is no preexisting debt, then the transfer is not preferential. <u>In re Bridge Info. Sys., Inc.</u>, 474 F.3d 1063 (8th Cir. 2007) (payment made to lessee to buy out lease renewal option was not on account of antecedent debt); <u>In re CVEO Corp.</u>, 327 B.R. 210 (Bankr. D. Del. 2005) (if payments were reimbursements for past claims, they were on account of antecedent debts, but, if they were made to satisfy future claims, there was no antecedent debt); <u>In re Vanguard Airlines, Inc.</u>, 295 B.R. 329 (Bankr. W.D. Mo. 2003) (advance payments for future services were not on account of an antecedent debt); <u>In re Presidential Airways, Inc.</u>, 228 B.R. 594 (Bankr. E.D. Va. 1999) (there was no antecedent debt where debtor paid broker in advance to procure insurance); <u>see also</u> <u>Stoumbos v. Kilimnik</u>, 988 F.2d 949 (9th Cir. 1993) (payment to redeem stock that had already been issued in return for services rendered was not on account of an antecedent debt).

      7.     Second, L&Z had a lien on and security interest in all monies held in its trust account, which, at all times within the preference period was in an amount in excess of any amounts owing by Randazza. Among other matters, the relevant documents provide for such a retainer, that the retainer is necessary to protect the firm's right to payment, and that the retainer is held as security for the payment of counsel's final bill. As a result, payments to secured creditors like L&Z cannot be avoided as preferences because such transfers lack the preferential effect required by section 547(b)(5) of the Bankruptcy Code. <u>Committee of Creditors Holding Unsecured Claims v. Koch Oil Co. (In re Powerine Oil Co.)</u>, 59 F.3d 969, 972 (9th Cir. 1995); <u>Batlan v. TransAmerica Commercial Fin. Corp. (In re Smith's Home Furnishings, Inc.)</u>, 265 F.3d 959, 964 (9th Cir. 2001); <u>Alvarado v. Walsh (In re LCO Enterps.)</u>, 12 F.3d 938, 941 (9th Cir. 1993). As such, any payments drawn from the retainer lacked preferential effect.

      8.     Third, and perhaps most obviously, as the same documents indicate, L&Z's statements for services rendered and payment from the Debtor (really via application of L&Z's retainer on hand) were made in the ordinary course of business and made according to ordinary business terms, and thus are fully subject to a defense pursuant to section 547(c)(2) of the Bankruptcy Code. Specifically, payments on L&Z's invoices were always received within at least several weeks of it invoicing for such services, if not much sooner, which is obviously

within the ordinary course of business of any law firm, and thus there is a clear defense to any potential preference attack on those transfers (as indeed there would be in almost any case).

**No Special Circumstances Need Be Demonstrated for *Nunc Pro Tunc* Approval Here**

9.  Excelsior/Liberty next argues that the Application does not support *nunc pro tunc* approval back to the Petition Date. In the case at hand, however, the Application was filed September 22, 2015, and thus only twenty five (25) days after the Petition Date, plus any additional time as may be attributable to get the matter to hearing, which hearing is occurring less than two (2) months in to the case. Such a minor delay between the Petition Date and the Application being filed and heard is hardly the retroactive approval many months (or even years) after the fact under which the caselaw requires "extraordinary or exceptional circumstances." Mehdipour v. Marcus & Millichap (In re Mehdipour), 202 B.R. 474, 479 (B.A.P. 9th Cir. 1996).

10.  As stated by the Ninth Circuit, professionals seeking *nunc pro tunc* employment "must (I) satisfactorily explain their failure to receive prior judicial approval; and (ii) demonstrate that their services benefitted the bankruptcy estate in a significant manner." Atkins v. Wayne (In re Atkins), 69 F.3d 970, 974 (9th Cir. 1995). Indeed, unless a proposed professional files its application immediately upon the commencement of a bankruptcy case and seeks an order shortening time in every case to have its retention application heard, it arguably encounters the *nunc pro tunc* issue raised by Excelsior/Liberty, which is just not practical. The absurdity of Excelsior/Liberty's position is highlighted by the fact that the Bankruptcy Rules themselves prohibit final approval of a professional's retention application within the first twenty-one (21) days of a bankruptcy case as well absent a showing of immediate and irreparable harm. Fed. R. Bankr. P. 6003(a) ("Except to the extent necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: (a) an application under Rule 2014").

11.  In Atkins, the Court dealt with a situation where an accounting firm sought *nunc pro tunc* approval of its services that it had provided to a bankruptcy estate on an emergency basis, which application was filed with the Court more than a year after the work was completed, and indeed fifteen (15) or more months after the work was commenced. Moreover,

6

notwithstanding such delays, the Court still affirmed the grant of compensation to the accounting firm.

12. Similarly, in Mehdipour, the Bankruptcy Appellate Panel approved the *nunc pro tunc* retention and compensation of a real estate broker for the estate and even through it was after the services were provided. Specifically, the Court noted that the broker had satisfied the Ninth Circuit requirements for retroactive compensation because the broker could not receive prior judicial approval because the debtor withdrew the application for employment of the broker, and the bankruptcy court denied the broker's own application for employment on the grounds that it did not have standing to file such an application. In addition, the U.S. Trustee filed a position statement to the broker's retention application in which it stated that it had no objection to the employment and payment of commission. In short, the Court found that the broker had availed itself of every potential method for obtaining court approval of its employment, and that after its application was denied, the broker's only recourse was to apply for fees pursuant to section 503 of the Bankruptcy Code.

13. The extreme delays and extraordinary facts at issue in Atkins and Mehdipour simply do not exist in the case at hand. It is exceedingly common that a few weeks may expire before a proposed professional gets its retention application on file with the Court, and such minor delay, especially with the press of other business at the outset of a bankruptcy case such as a debtor's bankruptcy schedules and statement of financial affairs, is entirely understandable and expected. Moreover, such minor delays simply do not pose the potential dangers and prejudice at issue in the *nunc pro tunc* cases referenced of potentially intentionally and irresponsibly delayed retentions; rather, the Application was filed reasonably timely.

14. Furthr, this Opposition is brought by what is ostensibly the estate's largest (albeit significantly disputed) creditor, who has been embroiled in a substantial pre-petition arbitration proceeding with the Debtor, and is really just an attempt to interfere with his selection of bankruptcy counsel, which is improper. The Debtor is fully entitled to the retention of professionals of his own choosing without interference from creditors. In re Immenhausen Corp., 159 B.R. 45, 47 (M.D. Fla. 1993); In re Creative Rest. Mgmt., Inc., 139 B.R. 902, 909-10 (Bankr.

7

W.D. Mo. 1992). A bankruptcy court should grant a debtor significant deference in its selection of its professionals to represent it under section 327(a) of the Bankruptcy Code. In re Marvel Entm't Grp., Inc., 140 F.3d 463, 478 (3d Cir. 1998); In re Creative Rest. Mgmt., 139 B.R. at 909.

15.    Finally, the Opposition's argument that *nunc pro tunc* approval is sought as a way to try and protect the $10,000.00 portion of the fees L&Z charged and was paid pre-petition for its review and handling of pre-petition settlement negotiations is meritless and indeed nonsensical as the Debtor is seeking to do no such thing. Again, that is a pre-petition sum earned and paid pre-petition and is thus, although still subject to section 329 of the Bankruptcy Code, it is not subject to the normal fee application process in the case post-petition and thus no such fee could be approved *nunc pro tunc* post-petition—much less in a retention application like the Application in the case at hand anyways. Again, as previously noted, no allowance or approval of any fees and costs—whether pre or post-petition—is requested by way of the instant Application.

**Approval of Retention for Potential Adversary Proceedings is Necessary and Appropriate**

16.    Finally, Excelsior/Liberty questions the need for the Debtor's retention of counsel for an adversary proceeding that they will almost certainly be filing, but have not yet as of yet. As an initial matter, the Debtor is merely trying to economize its retention application into one filing given the expected challenges that will be coming from Excelsior/Liberty and potentially others, as well as the main bankruptcy case itself. It really makes no sense to force counsel to file multiple retention applications for the various aspects of the case when it is all but a foregone conclusion that such actions will be arising. Indeed, a retention application for general bankruptcy counsel similarly will usually list any number of potential tasks that may arise in a chapter 11 case, and such retentions are regularly approved even if the professional does not actually end up having to necessarily perform all the tasks for which retention approval was sought.

17.    Second, approval for representation is needed by proposed counsel even if the defense is not for the estate or for the benefit of the estate and/or even if compensation is not sought from the estate--such as a potential claims against the Debtor pursuant to section 523

and/or 727 of the Bankruptcy Code—under the Bankruptcy Code. As such, L&Z does not have the luxury of simply not filing a retention application to be retained for such potential litigations. Additionally, there is no requirement under the Bankruptcy Code and/or the Bankruptcy Rules that an estate or a debtor must necessarily wait until after an event happens and the need for counsel definitively arises before getting a professional's retention approved and at the ready. Again, such arguments are nothing more than an attempt Excelsior/Liberty to deny the Debtor the counsel of his choosing and to prepare to represent him in litigation that is all but certain to arise—as illustrated by Excelsior/Liberty's own rather contentious Opposition.

## Conclusion

WHEREFORE, the Debtor respectfully requests that the Court grant the Application. Debtor also requests such other and further relief as is just and proper.

Dated: October 14th, 2015.

LARSON & ZIRZOW, LLC

By /s/ Matthew C. Zirzow
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101

Proposed Attorneys for Debtor

9