1   WENDY MEDURA KRINCEK, ESQ., (Bar No. 6417)
    LITTLER MENDELSON, P.C.
2   3960 Howard Hughes Parkway
    Suite 300
3   Las Vegas, NV 89169-5937
    Tel: (702) 862-8800
4   Fax: (702) 862-8811

5   Arthur Carvalho, Jr.  (Cal. Bar No. 125370)
    Vaughn M. Greenwalt (Cal. Bar. No. 298481)
6   LANG, HANIGAN & CARVALHO, LLP
    21550 Oxnard Street, Suite 760
7   Woodland Hills, CA 91367
    Tel: (818) 883-5644
8   Fax: (818) 704-9372
    *Appearing Pro Hac Vice*

9   Attorneys for Creditors,
10  EXCELSIOR MEDIA CORP., and
    LIBERTY MEDIA HOLDINGS, LLC

11

12

13                  UNITED STATES BANKRUPTCY COURT

14                        DISTRICT OF NEVADA

15

16
                                          | Case No.: BK-S-15-14956-abl
17
                                          | Chapter 11
18   In re:
                                          | Date:  November 25, 2015
19      MARC JOHN RANDAZZA                 | Time:  1:30 p.m.
                                          | Courtroom 1
20

21

22

23   **EXCELSIOR MEDIA CORP., AND LIBERTY MEDIA HOLDINGS, LLC.'S MOTION TO
     MODIFY THE AUTOMATIC STAY TO ALLOW A PRE-PETITION
24   ARBITRATION TO PROCEED TO JUDGMENT**

25   Creditors Excelsior Media Corp, and Liberty Media Holdings, LLC ("E/L" or "Creditors"),

26   by and through their counsel of record, Lang, Hanigan & Carvalho, LLP (appearing *pro hac vice*),

27   hereby moves this Court for an order modifying the automatic stay pursuant to 11 U.S.C. § 362(d)

28

(the "Motion"). This Motion is based on the attached memorandum of points and authorities herein, the Declarations of Vaughn M. Greenwalt, Wendy M. Krincek, and Jason Gibson filed in support hereof, all the papers and pleadings on file herein, and any oral argument made at the time of the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Creditors Excelsior Media Corp. and Liberty Media Holdings, LLC ("E/L") hereby move for an order modifying the automatic stay to allow the completion of the pending pre-petition arbitration between E/L and Debtor through the confirmation of all awards to a judgment entered by the Nevada State Court. That judgment will then be filed as a claim against Debtor and E/L will seek an order determining the judgment to be non-dischargeable.

Debtor is an attorney licensed in the states of Arizona, California, Colorado, Florida, Massachusetts, and Nevada. Creditors E/L, are affiliated entities comprising a larger online entertainment firm. Debtor was employed by E/L as its in-house general counsel from 2009 through 2012 pursuant to a written employment agreement (the "Employment Agreement"). [Exhibit 3] The Employment Agreement contains a provision requiring the arbitration of all disputes between Debtor and E/L.

Debtor resigned his employment at E/L effective August 29, 2012, under contentious circumstances caused in chief by numerous instances of professional and ethical misconduct perpetrated by Debtor at the expense of E/L.

On December 19, 2012, Debtor initiated an arbitration action under the auspices of Judicial Arbitration and Mediation Services, Inc. ("JAMS") against E/L for employment related claims (the "Arbitration"). E/L filed counterclaims in the Arbitration against Debtor alleging numerous serious violations of professional conduct causing significant harm to E/L. All of the claims at issue in the Arbitration were state law claims. [Declaration of Wendy M. Krincek ("Krincek Decl.") ¶2]

1    The parties agreed to the appointment of the Hon. Stephen E. Haberfeld (Ret.) as the
2   arbitrator for the matter. [Krincek Decl. ¶3]

3    After two years of discovery and pre-hearing litigation, the arbitration hearing was held over
4   five days -- February 9, 10, 11, 12 and 13, 2015. [Krincek Decl. ¶4]    At the hearing, the parties
5   introduced into evidence the testimony of 12 live witnesses (4 of which were experts) in addition to
6   admitted deposition and declaration testimony, hundreds of writings, and audiotapes and
7   videotapes. [Krincek Decl. ¶5] At the conclusion of the evidentiary hearing, the arbitrator took the
8   matter under submission in order to prepare a written award.

9    On June 3, 2015, the arbitrator issued his Interim Arbitration Award (the "IAA"). The IAA
10  found in favor of E/L on all of the claims and counterclaims, and awarded E/L damages against
11  Debtor in a sum exceeding $568,715, and an accounting.  In addition, the ruling states that
12  Arbitrator will award spoliation damages, return of company equipment, interest, costs and
13  attorneys' fees all to be determined in a subsequent hearing – in total, the award approaches $1
14  million dollars and is anticipated to significantly bypass that amount once the final award regarding
15  attorneys' fees and costs is rendered. [Krincek Decl. ¶6; IAA, p. 25-26]  At the request of E/L, the
16  arbitrator scheduled the hearing on E/L's application for attorneys' fees and costs for August 31,
17  2015. [Krincek Decl. ¶7]

18    Immediately after the award was issued, Debtor initiated settlement negotiations with E/L,
19  threatening to file bankruptcy if E/L did not accept a small fraction of the award in settlement.
20  [Krincek Decl. ¶8]

21    In light of this threat, on June 12, 2015, E/L petitioned the Nevada State Court ("State
22  Court") to confirm the IAA (the "Petition").[1]  The hearing on E/L's Petition was scheduled for
23  September 3, 2015 – 3 days after the hearing on E/L's motion for attorneys' fees and costs.
24  [Krincek Decl. ¶9]

25

26

27  [1] Nevada law provides for the confirmation of pre-award rulings by an arbitrator under NRRS 38.234. However, the
Interim Arbitration Award is a self-identified award.

28

E/L's Motion
For Relief From Stay

1    E/L was frustrated in its efforts to conclude the amount of the award and have it confirmed
2  by the State Court when, on August 28, 2015, Debtor filed his Chapter 11 petition – *3 days before*
3  *the attorneys' fees hearing, and 6 days before the confirmation hearing!*

4    By and through the instant motion, E/L seeks modification of the automatic stay so that (a)
5  the Arbitrator may finalize the arbitration award by determining the amount of additional damages,
6  attorney fees and costs to be included in the award; and (b) so that all awards made by the Arbitrator
7  may be reduced to a judgment by the Nevada State court as is required under NRS 38.239 and 9
8  U.S.C. §201; *et seq*.  E/L does not seek relief from the stay to collect on the judgment.  The
9  judgment will be filed as a claim in this bankruptcy and E/L will commence an adversary
10  proceeding for a determination that the judgment is non-dischargeable.

11  **II.    MODIFICATION OF THE AUTOMATIC STAY SHOULD BE GRANTED FOR**
12  **CAUSE.**

13    The filing of a bankruptcy petition operates as an automatic stay of the commencement or
14  continuation of legal actions or proceedings against a debtor.  11 U.S.C. §362(a).  Specifically, the
15  Code provides:

16    (a) Except as provided in subsection (b) of this section, a petition filed under section 301,
17      302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities
18      Investor Protection Act of 1970, operates as a stay, applicable to all entities, of –

19      (1) The commencement or continuation, including the issuance or employment of
20        process, of a judicial, administrative, or other action or proceeding against the debtor
21        that was or could have been commenced before the commencement of the case under
22        this title, or to recover a claim against the debtor that arose before the
23        commencement of the case under this title;

24      (2) The enforcement, against the debtor or against property of the estate, of a judgment
25        obtained before the commencement of the case under this title[.]

26  11 U.S.C. §362(a)(1), (2).

27

28
---
3

Relief from stay in the form of termination, annulment, modification, or conditioning may be granted.  11 U.S.C. §362(d).  Parties in interest may obtain modification to proceed with litigation in another forum related to an unsecured claim against a debtor only "for cause."  11 U.S.C. §362(d)(1).

The term "for cause" as used in §362(d) is not defined in the Code and, accordingly, whether to grant stay relief "for cause" is determined by the specific facts of each case.  *In re MacDonald* (9th Cir. 1985) 755 F.Supp.2d 715, 717.  Bankruptcy courts may, and sometimes must, abstain from hearing disputes that are only tangentially related to the bankruptcy case.  See, 28 U.S.C. §1334(c); *In re Tucson Estates, Inc*. (9th Cir. 1990) 912 F.Supp.2d 1162, 1169.

### A. Pending Arbitration

A contractual provision requiring mandatory arbitration of disputes constitutes "cause" for granting modification of the stay.  With limited exceptions, the Federal Arbitration Act (9 U.S.C. §1; *et seq*.) requires enforcement of arbitration provision in contracts affecting interstate commerce.  There is no statutory exception or bankruptcy policy that requires noncore matters, such as breach of contract disputes, to be litigated in bankruptcy courts in derogation of the Arbitration Act.  *In re Gurga* (9th Cir. BAP 1994) 176 BR 196, 200; *In re Mor-Bens Ins. Markets Corp*. (9th Cir. BAP 1987) 73 BR 644, 648-649; *In re Morgan* (9th Cir. BAPO 1983) 28 BR 3, 5.  The instant action is in accord with these holdings.

"Neither the Bankruptcy Code nor its legislative history contain anything which would prevent a court of arbitration from determining whether the insurers' claims are valid or whether any party has broken the contract.  Thus, the fact that these issues arise in the context of a bankruptcy does not invalidate the agreement of the parties to have the dispute heard by an arbitrator."  *In re Gurga* (1994) 176 B.R. 196, 200 citing *Mor-Ben Ins. Markets Corp*. 73 B.R. 644 (9th Cir. BAP 1987).  "There is no competing bankruptcy policy where the trustee or debtor in possession brings suit against a party who has made no claim against the estate.  Even if the defendant has made a claim against the estate, it may be appropriate to enforce a contract to

1   arbitrate." *In re Morgan*, 28 B.R. 3, 5 (9th Cir. BAP 1983); See also *Hays and Co v. Merrill Lynch*,

2   885 F.Supp.2d 1149 (3d Cir. 1989) (reversing the district court's denial of a motion to compel

3   arbitration, finding no congressional intent to exclude arbitration in noncore adversary proceedings

4   to enforce a claim of the estate.) "Thus, it is clear that in 1984 Congress did not envision all

5   bankruptcy related matters being adjudicated in a single bankruptcy court. We are mindful of the

6   goal of the Arbitration Act to ensure judicial enforcement of privately made arbitration agreements,

7   and that arbitration is a form of dispute resolution that finds favor in the courts." *In re Gurga, supra*

8   at 200.

9       Debtor is the former in-house general counsel for E/L. [Declaration of Jason Gibson

10  ("Gibson Decl.") ¶2]   At the outset of Debtor's employment, Debtor and E/L entered into the

11  Employment Agreement. [Exhibit 3; Gibson Decl. ¶3]   In paragraph 8 of the Employment

12  Agreement is a binding arbitration provision. [Gibson Decl. ¶4] After years of beneficial

13  employment, E/L discovered gross misconduct, ethical violations, and professional malpractice

14  perpetrated by Debtor. [Gibson Decl. ¶5] When Debtor gained some inclination that E/L may have

15  become aware of his acts and omissions, he immediately resigned his employment. [Gibson Decl.

16  ¶5-7]

17      Upon resignation Debtor initiated an arbitration before JAMS on December 19, 2012 in

18  accord with the terms of the Employment Agreement. [Krincek Decl. ¶2]  In the two years in which

19  the Arbitration has been pending, all discovery has been completed and all evidentiary hearings

20  have been conducted and concluded. [Krincek Decl. ¶4-5]  On June 3, 2015, the arbitrator issued

21  his Interim Arbitration Award in which he stated his "findings, conclusions, and determinations"

22  that Debtor's claims had no merit, that E/L had succeeded on its counterclaims, and awarded E/L

23  damages *in excess* of $1 million dollars. [Krincek Decl. ¶6; Exhibit 1 p.1]

24      It is clear both Debtor and E/L agreed to mandatory, exclusive arbitration of any claims

25  arising from the Employment Agreement.  Moreover, the parties have already completed the vast

26  majority of the arbitration proceedings, with relatively little to conclude aside from the issuance of a

27

28

E/L's Motion
For Relief From Stay

final arbitration award inclusive of all damages, attorneys' fees and costs. [Krincek Decl. ¶10] As the arbitrator stated: "[s]ubject to further order and/or a further and/or amended interim arbitration award, and the Final Arbitration Award, this [IAA], including the Determinations hereinabove set forth, is intended to be in full settlement of all claims, issues, allegations and contentions, on the merits, submitted by any party against any adverse party in this arbitration." Exhibit 1 at p.26.

Once the award is completed by the determination of all to be awarded E/L, the award must be reduced to a state court judgment in a confirmation proceeding pursuant to Nevada Revised Statutes §§38.239, 38.243 and 9 U.S.C. §207.

"There is nothing explicit or inherent in the Bankruptcy Code excusing [debtor] from arbitration of these claims." *Id*. Or, in this case, anything in the Bankruptcy Code that should prevent the Arbitrator from issuing a Final Arbitration Award. The stay should be modified on these grounds *alone* and E/L permitted to conclude the Arbitration and obtain a state court judgment in conformity with the award.

**B. Judicial Economy is Sufficient "Cause" to Modify The Stay.**

Separate, and in addition to, the arguments for cause to grant modification of the stay due to the Arbitration Act, judicial economy also favors modifying the stay so that the Arbitrator may issue his Final Arbitration Award, and that award can be confirmed by the State Court.

The law is well settled that granting or denying relief from stay is a matter of the court's sound discretion, and frequently involves consideration of numerous factors. *In re Kronemyer*, 405 B.R. 915 (9th Cir. BAP 2009). Those factors include the following:

1.  Will relief result in partial or complete resolution of the issues?

2.  Is there a lack of any connection or interference with the bankruptcy case?

3.  Do the foreign proceedings involve the debtor as a fiduciary?

4.  Has a special tribunal been established to hear the particular cause of action and does that tribunal have the expertise to hear such cases?

5.  Has the debtor's insurance carrier assumed financial responsibility?

E/L's Motion
For Relief From Stay

6. Does the action involve third parties and the debtor functions only as a bailee or conduit?

7. Would litigation in the other forum prejudice the interests of other creditors, the creditors committee and other parties?

8. Would the judgment claim arising from the foreign action be subject to equitable subordination?

9. Would success in the nonbankruptcy forum result in a lien avoidable under the Bankruptcy Code?

10. Would the interests of judicial economy and expeditious and economical determination of litigation be achieved?

11. Have the foreign proceedings progressed to where the parties have prepared for trial?

12. What is the impact of the stay on the parties and the "balance of hurt"?

*Truebro, Inc. v. Plumberex Specialty Products, Inc. (in re Plumberex Specialty Products, Inc.),* 311 B.R. 551 (Bankr.C.D.Cal. 2004), citing *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984).

Factors 5, 6, 8, and 9 have no relevance to the instant inquiry. Under analysis of the remaining 8 factors, nearly all tip either heavily or somewhat in favor of E/L.

Factor 1 weighs heavily in favor of E/L. If the arbitrator is allowed to issue a Final Arbitration Award, and that the State Court is allowed to confirm any awards, those determinations and findings will completely conclude the disputes stemming from the parties' Agreement. There is simply nothing left to do in the Arbitration aside from issuing a final award containing a complete measure of damages, costs, and attorneys fees; and having the awards confirmed by the state court.

Factor 2 weighs heavily in favor of E/L. The genesis of Debtor's claims arising from the Agreement, as well as E/L's counterclaims, all precede the bankruptcy by over 2 years and are in no way connected with Debtor's petition. Moreover, to allow the Arbitration to conclude, and be confirmed by the State Court, will not interfere with the bankruptcy in any manner. In fact, it will have the additional benefit of providing clarity as to the exact amount of liabilities associated with Debtor's estate.

1    Factor 3 weighs heavily in favor of E/L. E/L's claims arise from Debtor's bad faith acts,

2  ethical violations, and professional malpractice in his capacity as in-house general counsel for E/L

3  for which he owed fiduciary duties to E/L. "[G]enerally, proceedings in which the debtor is a

4  fiduciary ... need not be stayed because they bear no relationship to the purpose of the automatic

5  stay, which is debtor protection from his creditors." *In re Curtis*, 40 B.R. 795, 799 (Bankr.D. Utah

6  1984) (internal citations omitted). See, Exhibit 1, p.13 ¶Q "Mr. Randazza owed fiduciary duties to

7  E/L, because he was their in-house general counsel and their attorney of record in judicial civil

8  actions, and an E/L executive and employee." As the Arbitrator repeated throughout the IAA: "...

9  as a direct and proximate result of events being set in motion by Mr. Randazza's violations of

10  fiduciary duty and other duties", "The extent of Mr. Randazz'a contractual material breaches made

11  them also breaches of fiduciary duty...", "... which is appropriate in the circumstances of Mr.

12  Randazza's clear and serious violations of fiduciary duty...", among others. See, Exhibit 1, p. 19-

13  21.

14    Factor 4 weighs in favor of E/L. Although JAMS and the State Court are not a specialized

15  tribunal, it clearly has expertise to construe the laws of the State, including those of professional

16  responsibility, as well as the fact that JAMS is frequently called upon to preside over employment

17  agreement arbitrations. Indeed, it was contractually agreed that JAMS would provide over any such

18  disputes.

19    Factor 7 weighs heavily in favor of E/L. E/L is already the largest unsecured creditor, thus it

20  will not obtain that lofty title at the expense of another creditor. Importantly, the exact amount of

21  Debtor's liability to E/L is not concrete. To allow the arbitrator to issue a final award, and have the

22  awards confirmed in the State Court will allow all creditors to gleam the exact amount of the E/L's

23  claims.

24    Factor 10 may weigh most heavily in favor of E/L. The Arbitration is essentially complete;

25  all discovery has been completed, evidentiary hearings have been conducted, and the arbitrator has

26  already issued an IAA. All that remains is for a final award to issue with a complete measure of

27

28

1  damages, costs, and attorneys' fees, and for the awards to be confirmed by the State Court. Where

2  the suit involves exclusively questions of state law *or much of the litigation has already taken*

3  *place* the bankruptcy court should lift the stay to let the state action proceed to judgment. *In re*

4  *Castlerock Properties* (9th Cir. 1986) 781 F.Supp.2d 159, 163; see also *In re Tucson Estates,* (9th

5  Cir. 1990) 912 F.Supp.2d 1162, 1169 (stay lifted where bankruptcy filed on eve of state court trial

6  in 6-year old case and resolution of issue was essential to evaluate bankruptcy case.) To be sure,

7  this factor has consistently been found to weigh in favor of relief from stay *even before trial* has

8  been conducted. See, e.g., *In re Neal* (B.C.D.ID. 1994) 176 B.R. 30, 33-34 (stay lifted for judicial

9  economy to permit party to conclude state court battery action that had already been litigated

10 extensively); *In re Westwood Broadcasting, Inc.* (BC D HI 1983) 35 B.R. 47, 49 (stay lifted to

11 permit plaintiffs to continue state court breach of contract action against debtor where discovery

12 was complete and case was ready for trial); *In re Kemble* (9th Cir. 1985) 776 F.Supp.2d 802, 807

13 (relief from stay granted where bankruptcy filed on eve of state court trial after parties completed

14 extensive discovery). Moreover, *all* parties will save significant expense if they do not have to re-

15 litigate all of the claims and counterclaims to which they have substantially completed before

16 JAMS. See, *In re Santa Clara County Fair Ass'n, Inc.*, (9th Cir. BAP 1995) 180 B.R. 564, 566.

17       Factor 11 weighs heavily in favor of E/L. As detailed above, the parties have progressed

18 past the arbitration-equivalent of trial – the evidentiary hearings. The arbitrator has also issued an

19 IAA.

20       Factor 12 weighs heavily in favor of E/L for a variety of reasons already stated, but also

21 because allowance of the Arbitration to conclude, and the State Court to confirm, will provide

22 resolution of issues that are essential to evaluate the bankruptcy estate.

23       This is not a close case. All of the relevant *Curtis* factors weigh in favor of modifying the

24 stay in both the Arbitration and the State Court to confirm the award. E/L has presented adequate

25 cause to entitle it to modification.

26 //

27

28

E/L's Motion
For Relief From Stay

1  **III.    CONCLUSION**

2        For all of the foregoing reasons, E/L respectfully request that the Court grant the motion and

3  modify the automatic stay to allow that arbitration to conclude and a judgment thereon obtained.

4  E/L will separately seek an order determining that the judgment on the arbitration award is

5  nondischargeable.

6

7  Dated:  October 27, 2015               LANG, HANIGAN & CARVALHO, LLP

8

9                                  By:  _s/ Vaughn M. Greenwalt_

10                                    Vaughn M. Greenwalt
                                     Attorneys for Excelsior Media Corp., and

11                                    Liberty Media Holdings, LLC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   10