LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| In Re: | Case No: BK-S-15-14956-abl |
|---|---|
| MARC JOHN RANDAZZA, | Chapter 11 |
| Debtor. | Date: November 25, 2015<br>Time: 1:30 p.m.<br>Courtroom 1 |

## DEBTOR'S OPPOSITION TO THE MOTION OF EXCELSIOR MEDIA CORPORATION AND LIBERTY MEDIA HOLDINGS, LLC TO MODIFY THE AUTOMATIC STAY TO ALLOW A PRE-PETITION ARBITRATION TO PROCEED TO JUDGMENT

Marc John Randazza ("Randazza" or "Debtor"), by and through his counsel, the law firm of Larson & Zirzow, LLC, hereby respectfully submits his opposition (the "Opposition") to the motion (the "Motion") [ECF No. 60] filed by Excelsior Media Corporation ("Excelsior") and Liberty Media Holdings, LLC ("Liberty" and together with Excelsior, "Excelsior/Liberty") seeking to modify the automatic stay to allow not only a pre-petition Arbitration to proceed to final determination, but also a related (and improperly filed) Nevada State Court case to confirm the various decisions that may result from that Arbitration to final judgment. This Opposition is made and based on the points and authorities herein, the *Declaration of Marc John Randazza* filed in support hereof (the "Randazza Declaration"), the pleadings, papers and other records contained in this Court's file, judicial notice of which are respectfully requested, and any evidence or oral argument presented at the time of the hearing on the Motion.

## I. Jurisdiction and Venue

1. On August 28, 2015 (the "Petition Date"), the Debtor filed his voluntary petition for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case"). The Debtor is authorized to operate as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed in the Chapter 11 Case. No request has been made for the appointment of a chapter 11 trustee.

2. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to LR 9014.2, the Debtor consents to the entry of final orders and judgments by the bankruptcy judge with respect to the Motion. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

## II. Statement of Facts

**A.    The Arbitration and the Interim Award.**

3. Prior to the Petition Date, Randazza initiated an arbitration proceeding against Excelsior/Liberty styled as Randazza v. Excelsior Media Corp. *et al.*, JAMS No. 1260002283 (the "Arbitration"). Ransazza's claims in the Arbitration included significant contractual amounts owed as well as tort claims. Excelsior/Liberty filed various counterclaims against Randazza in the Arbitration. JAMS is a private arbitration, mediation and alternative dispute resolution company, and significant ongoing fees and costs must be paid to the JAMS arbitrator (the "Arbitrator") for those proceedings. Randazza was represented in the Arbitration by California-based attorney Kenneth P. White, Esq. of the law firm of Brown, White & Osborn in Los Angeles because the Arbitration principally involved issues of California law.

4. On or about June 3, 2015, the Arbitrator entered an *Interim Arbitration Award* (the "Interim Award") in the Arbitration. Motion, Ex. 1. The Interim Award awarded certain monetary damages in favor of Excelsior and/or Liberty and against Randazza. Id. pp. 23-25, ¶¶ 2-4, and 7. Critically, however, the Interim Award was interim only because it left at least three (3) substantial matters unresolved and pending further proceedings.

2

5. First, the Interim Award left open the possibility that the Arbitrator would award additional damages for the alleged spoliation and conversion of Excelsior and/or Liberty's files and other data, with such additional amounts to be set forth in a further and/or amended arbitration award and/or in a final arbitration award. Id. pp. 23-24, ¶ 2. Such further arbitration proceedings will require additional briefing and the presentation of additional evidence and/or arguments, as well as additional fees and costs paid to the Arbitrator in order for a final decision to be rendered at some unknown, future date.

6. Second, the Interim Award ordered an accounting from a non-party law firm's client trust account. Id. p. 25, ¶ 5. This accounting has not been started as of the Petition Date, and the Interim Award required it to be performed by a third-party accountant and/or accounting firm approved by the Arbitrator and paid for by Randazza, which will undoubtedly be at significant additional cost, and also impose unknown delays on any final and complete resolution of the Arbitration.

7. Third, the Interim Award also allowed Excelsior/Liberty to establish through further arbitration proceedings the amount of attorneys' fees and costs it may be entitled to recover, if any, under the applicable employment contract at issue. Id. p. 25, ¶ 8. The costs sought by Excelsior/Liberty in such further arbitration proceedings will undoubtedly include hundreds of thousands of dollars in fees and costs to be paid to the JAMS Arbitrator, which fees and costs will continue to accrue if the Arbitration is allowed to proceed.

8. In other words, instead of using the Bankruptcy Court to bring about an efficient and economical liquidation of its claims, Excelsior/Liberty's Motion, if granted, will only serve to add further fees and costs (both through the parties' own counsel as well as the Arbitrator) and delays to the ultimate liquidation of the claims at issue. For example, to date in the Arbitration, Randazza has paid in excess of $60,000.00 just in arbitration costs, which amounts do not include the undoubtedly significant amount of Arbitrator fees already incurred, and to be incurred going forward in those proceedings if they are allowed to continue. Additionally, any arbitration awards will thereafter require significant additional proceedings in an applicable state court to be confirmed before any final and enforceable judgment could be entered, which confirmation

3

proceedings will also be expensive and time consuming.[1]

9. The Interim Award also makes various problematic findings that do not comport with the equality of distribution principle of the Bankruptcy Code,[2] including a requirement that certain funds and property that may be property of the bankruptcy estate be "turned over" to Excelsior/Liberty, and apparently at the expense of all other creditors of the bankruptcy estate. Id. at pp. 25, ¶¶ 4 and 6. This is not surprising because the Arbitrator has no experience in bankruptcy matters, and there is a significant possibility that he may enter additional findings and conclusions regarding what he believes are property of the Debtor's bankruptcy estate if the Arbitration is allowed to proceed, which findings conflict with this Court's plenary jurisdiction.[3]

10. As of the Petition Date, Randazza still owed his California-based counsel in the Arbitration the sum of $28,392.86 [ECF No. 15, p. 19], and exclusive of any additional fees and costs that may be incurred in the future should Excelsior/Liberty's Motion be granted and the Arbitration proceedings be permitted to continue. Such a balance owing would also likely prevent such counsel from being able to represent the Debtor as special counsel in that Arbitration if it is allowed to proceed. As such, to the extent Excelsior/Liberty's Motion seeks to continue with the Arbitration, Randazza will not have the ability to pay for such fees and costs, which will obviously have a deleterious impact on his defense in those proceedings.

B.  **Excelsior/Liberty's Attempt to Confirm the Interim Award.**

11. On or about June 15, 2015, which was only about two and a half months prior to the Debtor's Petition Date, Excelsior/Liberty filed a motion in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), thereby commencing the case styled as

---

[1] Unreviewed arbitration decisions lack the status of a judgment. Caldeira v. Cnty. of Kauai, 866 F.2d 1175, 1178 (9th Cir. 1989).

[2] Beiger v. IRS, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property.") (citing 11 U.S.C. § 726(b), and H.R. Rep. No. 95-585, 177-178 (1977)).

[3] Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1168 (9th Cir. 1995) (noting that the determination of what is or is not property of a bankruptcy estate "is subject only to federal determination") (citing 11 U.S.C. § 541)); see also Gruntz v. Cnty. of Los Angeles, 202 F.3d 1074, 1079-1083 (9th Cir. 2000) (discussing the Bankruptcy Court's "plenary power over core proceedings").

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Excelsior Media Corp. et al. v. Randazza, Case No. A-15-719901-C (the "State Court Action"), thereby seeking to confirm the Interim Award and have formal judgment entered against Randazza (the "Motion to Confirm"). See Motion, Ex. 2. The Motion to Confirm was filed in the wrong jurisdiction, because any action to enforce any arbitration award was contractually required to be venued in San Diego County, California.

12. On August 7, 2015, Randazza, acting through new Nevada-based counsel at the law firm of Hutchison & Steffen, LLC, filed a lengthy *Opposition to Motion to Confirm Arbitration Award and Counter-motion to Vacate and/or Modify* the Interim Award. Randazza was forced to retain new Nevada-based counsel to file this opposition because, notwithstanding the provisions in the applicable agreement requiring that any action to enforce any arbitration award be venued in San Diego County, California, Excelsior/Liberty filed its Motion to Confirm in Clark County, Nevada. As set forth in Randazza's opposition to the Motion to Confirm, there are substantial and significant disputes about the confirmability of the Interim Award and such award might otherwise be subject to modification, if not complete vacatur. A true and correct copy of Randazza's opposition to Excelsior/Media's Motion to Confirm the Interim Award (excluding exhibits) is attached to the Randazza Declaration as **Exhibit 1**.

13. On August 24, 2015, Excelsior/Liberty filed its reply to Randazza's opposition and counter-motion in Nevada State Court. A true and correct copy of Excelsior/Liberty's reply (excluding exhibits) is attached to the Randazza Declaration as **Exhibit 2**.

14. As of the Petition Date, Randazza incurred approximately $40,000.00 in fees and costs to his Nevada-based counsel in the State Court Action, and still owed them the sum of $29,656.40 [ECF No. 15, p. 21] as of the Petition Date, and exclusive of any additional fees and costs that may be incurred in the future should Excelsior/Liberty's Motion be granted and those proceedings be allowed to continue. Such a balance would also likely prevent such counsel from continuing to represent the Debtor as special counsel in that proceeding if Excelsior/Liberty's Motion is granted and those proceedings are allowed to continue. The Debtor's bankruptcy petition also was filed prior to Randazza filing a reply relative to the cross-motion to vacate the Interim Award and prior to the hearing on the motions. As such, to the extent Excelsior/Liberty's

5

Motion seeks to continue with the State Court Action (both with respect to the Motion to Confirm the Interim Award and any proceedings to confirm any later and/or final awards that the Arbitrator may enter in the future), Randazza will not have the ability to pay for such fees and costs, which will obviously have a deleterious impact on his representation in those proceedings.

15. As a result of the foregoing practical concerns, and in an attempt to bring about a more economical resolution of his financial issues, including but not limited to the Arbitration and State Court Case, Randazza filed his bankruptcy petition prior to the Nevada State Court hearing and ruling on the Motion to Confirm and prior to his filing of a reply relative to his cross-motion to vacate the Interim Award.

16. On October 1, 2015, the Debtor attended his first meeting of creditors pursuant to section 341 of the Bankruptcy Code. At this meeting, counsel for Excelsior/Liberty stated his intent to file an objection to the dischargeability of its debts in the Chapter 11 Case. Such a filing by Excelsior/Liberty is presumably forthcoming, which filing will put the claims and issues at issue in the Arbitration and the State Court Case squarely before this Court for decision.

17. There is no indication as to when the Arbitration and Nevada State Court may finally decide all of the various matters before them if stay relief were granted, but it will almost certainly be many months after Excelsior/Liberty has filed its objection to the dischargeability of its debts and after those proceedings are well underway. Further, it is expected that State Court Action will be dismissed due to improper venue, thus requiring (presumably) Excelsior/Liberty to seek yet another stay relief order in order to seek to enforce the Interim Award in California.

18. As such, Excelsior/Liberty's Motion is part of a clear "divide and conquer" strategy of foisting as much costs in multiple forums on the Debtor as possible to run up costs and outspend him into submission, while also attempting to use those extraneous proceedings to obtain certain findings that it hopes may have issue preclusive effect in nondischargeability litigation it will soon be commencing in Bankruptcy Court. These attempts at outspending a debtor and stretching him across multiple forums with the associated costs of multiple counsel are exactly the kind of tactics that a uniform and centralized bankruptcy case is meant to avoid.

## III. Legal Argument

19. Section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the stay, such as by terminating, annulling, modifying, or conditioning such stay for "cause." "Cause" is not defined and thus, relief from the automatic stay is determined on a case-by-case basis. See Piombo Corp. v. Castlerock Props. (In re Castlerock Props.), 781 F.2d 159, 163 (9th Cir. 1985). Courts generally analyze the following twelve (12) factors when determining whether to terminate or modify the automatic stay to permit pending litigation to continue in another forum:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the good or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

12. The impact of the stay on the parties and the "balance of

hurt."

Adelson v. Smith (In re Smith), 389 B.R. 902, 919 (Bankr. D. Nev. 2008) (citing In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)); Sonnax Indus. Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990)). Not each of these factors are always relevant, nor are they each to be given equal weight. See id. As applied in the case at hand, a review of the forgoing factors indicates that granting stay relief to allow the Arbitration and the State Court Action to proceed is not appropriate.

20.   First, granting stay relief will only result in a partial resolution of the issues, thus still leaving for this Court the remainder of the action. Additionally, there is no clarity regarding when the Arbitrator and the Nevada State Court may even have the appropriate time to reset such matters and fully and finally decide all of them (including any potential appeals) even if this Court were inclined to entirely hold up any progress in the Debtor's bankruptcy case and any adversary proceeding pending such final resolutions. In fact, it is entirely possible that the Nevada State Court could vacate the Interim Award, requiring an arbitration before a new Arbitrator, or decide that the confirmation action should be dismissed based on the forum selection clause, requiring new litigation over confirmation/vacatur before the courts of the State of California.

21.   Second, the State Court Action obviously has a clear connection to this bankruptcy case, including Excelsior/Liberty's attempt to liquidate its claim in this proceeding. Determinations with respect to the dischargeability of particular debts are "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(I), as are determinations regarding the allowance or disallowance of claims against the estate pursuant to 28 U.S.C. § 157(b)(2)(B). Excelsior/Liberty will need to file a proof of claim before the final award is confirmed, to which Randazza would undoubtedly object, and thus Court, will need to decide its allowance or disallowance as a core proceeding. Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1021 (9th Cir. 2012). Thus, as in Thorpe, this Court should deny further arbitration.

22.   Third, the Arbitration and the State Court Action involve, at least in part, the Debtor's alleged status as a fiduciary, however, that only serves to highlight that one of the potential claims to be filed may be a claim pursuant to section 523(a)(4) of the Bankruptcy Code

8

for an alleged fraud or defalcation while acting in a fiduciary capacity, which again ultimately must be decided by this Court as a "core" non-dischargeability matter.

23. Fourth, no specialized tribunal has been established to hear and consider Excelsior/Liberty's claims, and such claims are garden-variety state law claims that any Court can adjudicate, and certainly within the purview of a bankruptcy court just as much as any private arbitrator or state court, and thus there is no special expertise to such issues with those other tribunals over the Bankruptcy Court.

24. Fifth, the Debtor's insurance carrier has not assumed any financial responsibility for defending the litigation, thus leaving him the main target and not a third party not principally involved in the bankruptcy case. As such, this factor also weighs against granting stay relief because it is exclusively the Debtor's liability at issue.

25. Sixth, the non-bankruptcy litigation does not involve essentially involve third parties, and the Debtor does not function only as a bailee or conduit for the good or proceeds in question; rather, the Debtor and his personal liability are the sole focus of the proceedings. As such, this factor also weighs against granting stay relief.

26. Seventh, allowing the Arbitration and the Nevada State Court proceedings to continue would prejudice the interests of other creditors and third parties because such matters would not be conducted before the Bankruptcy Court, and would likely delay the due and timely administration of this Chapter 11 Case given the uncertainties of when those various proceedings would ultimately be concluded.

27. Eighth, the claims at issue in the Arbitration and the State Court Action could be subject to equitable subordination pursuant to section 510(c) of the Bankruptcy Code given the type of conduct involved, and thus it makes sense to have one unified proceeding determining all such matters. As such, this factor also weighs against granting stay relief.

28. Ninth, Excelsior/Liberty's success in the Arbitration and Nevada State Court proceeding would not result in a judicial lien avoidable by the Debtor pursuant to section 522(f) of the Bankruptcy Code. Also this factor is not specifically implicated, the issue addressed therein--potentially conflicted jurisdictional determinations and the foreign proceedings trampling on

9

matters exclusively within the jurisdiction of the Bankruptcy Court--is implicated. Specifically, having the Debtor's bankruptcy case pending before this Court, a nondischargeability proceeding, and separate proceedings pending before an Arbitrator and the Nevada State Court will result in likely jurisdictional conflicts and additional and unnecessary expense to the parties, as already illustrated by the Arbitrator's decisions with respect to the "turn over" of property of the estate to Excelsior/Liberty.

29. Tenth, and most importantly, the interests of judicial economy and the expeditious and economical determination of litigation for the parties strongly counsels against granting stay relief in favor of the Arbitration and the State Court Action, and instead having a single, economical and unified proceeding in this Bankruptcy Court. Indeed, Excelsior/Liberty's Motion is targeted to short circuit the Debtor's ability to defend himself in a single proceeding and instead "spread him thin" across multiple forums, at this point, numbering at least three, and at significant additional costs.

30. Finally, the impact of the stay on the parties and the "balance of hurt" strongly favors allowing all matters to proceed in a unified bankruptcy forum where one judge can hear and consider all evidence in its fullest context, instead of the multi-step, more expensive and time-consuming process of having two or even three judges hear and determine only various parts of the case—in other words, having the Arbitrator determine certain limited issues at issue in the Arbitration, then having the Nevada State Court determine whether the Arbitrator's specific decisions should be confirmed, then having any appeals therefrom decided, and then having the Bankruptcy Court play "clean up" and parse through those findings to see if all the required elements for claims under the applicable provisions of section 523(a) of the Bankruptcy Code have been met, and if not, then having a nondischargebility trial on any and all remaining issues.

31. The Interim Award is couched in terms of breach of contract, unjust enrichment, and breach of fiduciary duty, but "in actuality, they [are] seeking to arbitrate dischargeability under §§ 523(a)(2), (4) and (6), a core bankruptcy issue." Ackerman v. Eber (In re Eber), 687 F.3d 1123, 1130 (9th Cir. 2012). As the Ninth Circuit found, "allowing an arbitrator to decide issues that are so closely intertwined with dischargeability would conflict with the underlying

purposes of the Bankruptcy Code." Id. at 1130-1131 (internal quotation omitted).

33. 32. Similar to the Ninth Circuit in Eber, in various other recent decisions, bankruptcy courts have also exercised their discretion to decline to compel further arbitration proceedings when those further proceedings were inextricably intertwined with nondischargeablity claims at issue in a debtor's bankruptcy case. In re Wade, 523 B.R. 594 (Bankr. W.D. Tenn. 2014); Trinity Christian Ctr. of Santa Ana, Inc. v. Koper (In re Koper), 516 B.R. 707 (Bankr. E.D.N.Y. 2014).

33. By contrast, the three cases Excelsior/Liberty highlights in its Motion--Gurga, Mor-Bens, and Morgan, Motion, p. 4, ll. 11-18, all involved non-core claims, where the debtor in possession was asserting claims that were required to be arbitrated, rather than creditor asserting claims against the debtor that involve core matter like in the case at hand. As such, the caselaw cited by Excelsior/Liberty is clearly distinguishable from the case at hand and is simply contrary to the more recent authority in the Ninth Circuit's 2012 decision in Eber and the additional 2014 cases cited by the Debtor above, which emphasized this critical core vs. non-core distinction as it impacts the Court's discretion with respect to arbitration provisions, especially within the bankruptcy non-dischargeability context.

34. The resolution of the matters at issue in the Arbitration and the State Court Action will have an obvious and quite significant impact on Debtor and his bankruptcy estate, including in particular Excelsior/Liberty's forthcoming non-dischargeability proceedings. Additionally, the claims in the State Court Action are general common law claims, and do not involve the application of specialized state statutes, or any issues of significant state public policy. Arbitrators and state courts have no special expertise in deciding such general common claims, and bankruptcy courts hear and decide such state law issues every day. The interests of judicial economy would be best served by having Debtor's bankruptcy case and the liability at issue heard in a single forum--under one judicial tent--and this Court is the only place where that could happen. Excelsior/Liberty's request for stay relief to proceed in both the Arbitration and the Nevada State Court should thus be denied in favor of a unified and centralized determination of such "core" bankruptcy matters before this Court.

11

## IV. Conclusion

WHEREFORE, the Debtor respectfully requests that Excelsior/Liberty's Motion be denied, and that he be granted such other and further relief as is just and proper.

Dated: November 10th, 2015.

                                LARSON & ZIRZOW, LLC

By: /s/ *signature*
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
810 S. Casino Center Blvd., Suite 101
Las Vegas, Nevada 89101

Attorneys for Debtor