# EXHIBIT "1"

Electronically Filed
08/07/2015 02:45:21 PM

*Alun D. Lurm*

**CLERK OF THE COURT**

**OPPS & CTM**
Mark A. Hutchison (4639)
Michael K. Wall (2098)
Timothy R. Koval (12014)
HUTCHISON & STEFFEN, LLC
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
Telephone: 702-385-2500
Facsimile: 702-385-2086
mhutchison@hutchlegal.com
mwall@hutchlegal.com
tkoval@hutchlegal.com

*Attorneys for Defendant*
*Marc J. Randazza*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| EXCELSIOR MEDIA CORP., a Nevada Corp.; LIBERTY MEDIA HOLDINGS, LLC, a California limited liability company; and JASON GIBSON, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>MARC J. RANDAZZA, individually,<br><br>Defendant. | Case No. A-15-719901-C<br><br>Dept. No. XXIV<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO CONFIRM ARBITRATION AWARD AND COUNTER-MOTION TO VACATE AND/OR MODIFY** |

Defendant Marc J. Randazza ("Defendant" or "Randazza") opposes Plaintiffs' Motion to

Confirm Arbitration Award. As a threshold matter, the Interim Arbitration Award cannot be

confirmed because it is a non-final award. Further, Plaintiffs have violated the arbitration clause

of the employment agreement between Randazza and his ex-employer Excelsior Media Corp.

("Excelsior") by bringing this confirmation action in Nevada. The employment agreement

- 1 -

requires the parties to bring any action to confirm, modify, or vacate an arbitration award concerning Randazza's employment in San Diego, California. Specifically, the agreement states that "any controversy, dispute or claim arising out of this Agreement or relating to Randazza's employment with Excelsior" must proceed through alternative dispute resolution, culminating in arbitration if necessary. Further, the agreement states, "[j]udgment on any Award made by the arbitrator may be entered in any court having jurisdiction." Contract of Employment for Corporate General Counsel By and Between Excelsior Media Corp. and Marc J. Randazza at § 8, attached as Exhibit A.[1] The agreement then clarifies that "[a]ny action to enforce an arbitrator's award will be venued [sic] in San Diego County, California, unless otherwise agreed to by the parties." *Id.* at § 9(f). Randazza is in the process of initiating an action to vacate and/or modify Plaintiffs' arbitration award in San Diego, California, the correct forum.

However, should the Court find that it is authorized to consider Plaintiffs' request, this Opposition should also be deemed a counter-motion to vacate pursuant to common law and NRS 38.241 or, in the alternative, to modify or correct the award pursuant to NRS 38.242. The award cannot be confirmed because it manifestly disregards the law by applying Nevada law instead of California law as required by Randazza's employment agreement, which states, "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to conflict of laws." Exhibit A at § 9(f). The Arbitrator's failure to apply California law demonstrated his evident bias against Randazza. The Arbitrator likewise

---

[1] Please see the declarations of Randazza and Ken White – who was Randazza's attorney in the underlying arbitration – for authentication of the exhibits to this brief. The declarations are attached as Exhibit B and Exhibit C, respectively. The exhibits that were entered in the arbitration contain arbitration exhibit numbers in the bottom right-hand portions of the documents.

failed in his duties to evaluate the record, and he exceeded his power. Defendant respectfully requests that this Court deny Plaintiffs' motion to confirm the arbitration award *in toto* and, to the extent applicable, vacate and/or modify the award.

Randazza's opposition to the motion to confirm the arbitration award and counter-motion to vacate and/or modify are based on EDCR 2.20, the following points and authorities, the attached exhibits, and any oral argument entertained by the Court.

DATED this 7th day of August, 2015.

HUTCHISON & STEFFEN, LLC

Mark A. Hutchison (4639)
Michael K. Wall (2098)
Timothy R. Koval (12014)

*Attorneys for Defendant*
*Marc J. Randazza*

- 3 -

**TABLE OF CONTENTS**

Table of Authorities ...............................................................................................6

Points and Authorities

I.     Introduction.............................................................................................8

II.    Factual Background ...............................................................................10

III.   Standard of Review................................................................................14

IV.    Analysis..................................................................................................17
       A.  Plaintiffs Have Violated The Employment Agreement
           By Bringing The Enforcement Action In Nevada ...................17

       B.  The Interim Arbitration Award Is Not Final, Thus
           Plaintiffs' Motion to Confirm The Award Should Be Denied................18

       C.  The Arbitrator Made Gross Factual and Legal Errors ..............................19
           1.  The Arbitrator Made Improper Factual Findings.....................19
               a.  Randazza Did Not Resign ................................................19
               b.  There Was No "Bribe" .....................................................21
           2.  The Arbitrator Made Improper Legal Determinations...............22
               a.  Randazza Should Have Prevailed on His Claims ............23
                   i.    Randazza Is Entitled To Reimbursement
                         Under California Law .........................................23
                   ii.   Randazza Is Owed Unpaid Wages Under
                         California Law ....................................................26
                   iii.  Randazza Is Owed Unpaid Wages Under
                         Nevada Law .......................................................28
                   iv.   Randazza Is Entitled To Unpaid Severance
                         And Bonuses......................................................30
                   v.    Randazza Was Wrongfully Terminated...........32
                   vi.   Randazza Was Subject To A Hostile
                         Work Environment..............................................33
                   vii.  Randazza Was Retaliated Against ......................34
               b.  The Interim Arbitration Award to Plaintiffs
                   Is Improper.....................................................................34
                   i.    Randazza Did Not Breach Fiduciary Duties........35
                   ii.   Randazza Was Not Unjustly Enriched................39
                   iii.  Damages For Spoliation Or Conversion
                         Are Not Warranted..............................................41

iv.  Disgorgement Of Wages Earned Is
     Impermissible.................................................43
v.   Remittance of Trust Funds Is Improper..............49
vi.  No Audit Of Randazza Legal Group's
     Trust Account Is Permissible...........................50
vii. Randazza Cannot Return a Non-Existent
     Laptop.........................................................51
viii. Gibson Is A Proper Party................................52
D.  **Interim Awards Are Not Otherwise Subject To Confirmation**.........53
     1. The Interim Award Was Replete With Bias................................53
        a.  *Physical Position Is Not An Indicium Of Credibility*
            *When The Arbitrator Directed Such Position*..................53
        b.  *The Arbitrator Expressly Bifurcated The Question*
            *Of Alter-Ego Liability But Disregarded His Own Order*.54
        c.  *Errors Of Counsel Were Misattributed To Defendant*.....57
        d.  *The Arbitrator Cannot Make An Adverse Finding*
            *Based On An Issue He Opted Not To Decide*.................57
V.   Conclusion.................................................................58

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 194 P.3d 96 (Nev. 2008).
*Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999).
*Cal. Satellite Sys. v. Nichols*, 170 Cal. App. 3d 56 (Cal. App. 3d Dist. 1985).
*Carlton v. Quint*, 77 Cal. App. 4th 690 (Cal. App. 2d Dist. 2000).
*Cedars-Sinai Med. Ctr. v. Superior Ct.*, 18 Cal.4th 1, 954 P.2d 511 (1998).
*Clark Cnty. Educ. Ass'n v. Clark Cnty. Sch. Dist.*, 122 Nev. 337, 131 P.3d 5 (2006).
*Complainant  v. Foxx*, EEOC Appeal No. 2012-24738–FAA-03 (July 15, 2015).
*Fetrow-Fix v. Harrah's Entm't, Inc.*, 2010 U.S. Dist. LEXIS 125625 (D. Nev. Nov. 16, 2010).
*General Dynamics Corp. v. Superior Court (Rose)*, 7 Cal 4th 1164, 876 P.2d 487 (1994).
*Ghirardo v. Antonioli*, 14 Cal. 4th 39, 924 P.2d 996 (Cal. 1996).
*Graber v. Comstock Bank*, 111 Nev. 1421, 905 P.2d 1112 (Nev. 1995).
*Jackson v. Johnson*, 5 Cal. App. 4th 1350, 7 Cal.Rptr.2d 482 (Cal. App. 2d Dist. 1992).
*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123 (U.S. 1951).
*Kane v. Sklar*, 122 Cal. App. 2d 480, 265 P.2d 29 (Cal. App. 1954).
*Liberty Media Holdings, LLC v. FF Magnat Limited*, C.A. No. 2:12-cv-01057 (D,Nev. Aug. 7, 2012).
*Lopez v. Corral*, 2010 Nev. LEXIS 69 (Nev. Dec. 20, 2010).
*McDonagh v. Harrah's Las Vegas, Inc.*, 2014 U.S. Dist. LEXIS 82290, 2014 WL 2742874 (D. Nev. June 17, 2014).
*Morelite Constr. Corp. v New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79 (2d Cir. 1984).
*Narayan v. EGL, Inc.*, 616 F.3d 895 (9th Cir. 2010).
*Nat'l Post Office Mailhandlers v United States Postal Serv.*, 751 F.2d 834 (6th Cir. 1985).
*Northland Truss Sys., Inc. v Henning Constr. Co., LLC*, 808 F. Supp. 2d 1119 (S.D. Iowa 2011).
Orion Shipping & Trading Co. v Eastern States Petroleum Corp., 312 F.2d 299 (2d Cir. 1963).
*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019 (9th Cir. 1991).
*Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 108 Cal. Rptr. 3d 455 (Cal. App. 4th Dist. 2010).
*Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013).
*Righthaven, LLC, v. Hoehn*, C.A. No. 2:11-cv-00050 (D.Nev. Jun. 6, 2013).
*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012).
*Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892 (9th Cir. 2013).
*Selcke v. New England Ins. Co.*, 995 F.2d 688 (7th Cir. 1993).
*Sherman v. Board of Trustees*, 9 Cal. App. 2d 262, 49 P.2d 350, 1935 Cal. App. LEXIS 1299 (Cal. App. 1935).
*Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App.4th 1489 (Cal. App. 1st Dist. 2008).
*Simon v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 63480, 2010 WL 2609436 (D. Nev. June 23, 2010).
*Small v. Univ. Med. Ctr. of S. Nev.*, 2014 U.S. Dist. LEXIS 114406 (D. Nev. Aug. 18, 2014).
*Stanley v. Richmond*, 35 Cal. App. 4th 1070, 41 Cal. Rptr. 2d 768 (Cal. App. 1st Dist. 1995).
*Sullivan v. Oracle Corp.*, 51 Cal 4th 1191 (2011).

**TABLE OF AUTHORITIES**

<u>Cases Cont'd.</u>

*Tandy Computer Leasing, Div. of Tandy Elecs. v. Terina's Pizza*, 105 Nev. 841, 784 P.2d 7 (Nev. 1989).

*Tuxedo Int'l Inc. v. Rosenberg*, 127 Nev.   , 251 P.3d 690 (Nev. 2011).

*Williams v. Cigna Financial Advisors Inc.*, 197 F.3d 752 (5th Cir. 1995).

*Wright v. Adventures Rolling Cross Country, Inc.*, 2012 U.S. Dist. LEXIS 104378 (N.D. Cal. 2012).

<u>Statutes And Other Authorities</u>

Cal. Civ. Code, Section 3294.
Cal. Gov. Code, Section 12940(a) & (h).
Cal. Labor Code, Sections 200-203.
Cal. Labor Code, Section 206.
Cal. Labor Code, Section 221.
Cal. Labor Code, Section 2802.
Cal. Labor Code, Section 2750.
Cal. R. Prof. Conduct 3-100.
NRS 17.130.
NRS 38.222.
NRS 38.236.
NRS 38.239.
NRS 38.241.
NRS 38.242.
NRS 38.330.
NRS 99.040.
NRS 108.221-.246
NRS 608.050.
NRS 608.160.
Nev. R. Prof. Conduct 1.6.
Nev. R. Prof. Conduct 3.4.
Nev. R. Prof. Conduct 5.6.
9 U.S.C. 10.
9 U.S.C. 11

## POINTS AND AUTHORITIES

### I.    Introduction

As noted by Plaintiffs in their motion to confirm the arbitration award, Arbitrator Haberfeld issued his self-titled Interim Arbitration Award. Exhibit D. By its own terms, it is not final; it contemplates a forthcoming accounting of a trust account managed by a non-party law firm, amounts to be determined for alleged spoliation, as well as the briefing and award of attorneys' fees to Plaintiffs. Once the award is finalized, the employment agreement between Randazza and Excelsior requires: "Any action to enforce an arbitrator's award will be venued [sic] in San Diego County, California, unless otherwise agreed to by the parties." Exhibit A at § 9(f). In other words, Plaintiffs are precluded from filing a motion to confirm the award in Clark County, Nevada, as they have done.

If, nevertheless, the Court were to entertain Plaintiffs' motion on the merits, the Interim Arbitration Award incorrectly fails to apply California law in several instances as required by the employment agreement. *Id.* (stating, "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to conflict of laws.") Further, it incorrectly requires Defendant to pay all three Plaintiffs, jointly, $275,000, plus interest, for an alleged breach of fiduciary duty. *Id.* at 23. It requires Defendant to remit to all three Plaintiffs, jointly, $60,000 that was paid to a non-party law firm. *Id.* It requires Defendant to pay $3,215.98 for expert costs, plus an unspecified amount for spoliation and conversion, notwithstanding lack of evidence of the value of the allegedly spoliated data[2] and the absence of

---

[2] Despite a five day hearing, preceded by extensive discovery practice, during which time Plaintiffs had the opportunity to have the alleged laptop that is the subject of the spoliation issue

a tort cause of action in California for spoliation, *Cedars-Sinai Med. Ctr. v. Superior Ct.*, 18 Cal.4[th] 1, 17, 954 P.2d 511 (1998). To their credit, Plaintiffs did not plead spoliation, but the Arbitrator nonetheless appears prepared to create such a claim. *Id.* at 23-24. The Interim Arbitration Award also requires an accounting of the non-party law firm's trust account, despite a complete lack of jurisdiction over that non-party.[3] *Id.* at 25.

And the Interim Arbitration Award requires Defendant to disgorge to Excelsior, his employer, the salary he earned in the amount of $197,000.00, for allegedly breaching a fiduciary duty and for spending excessive time on other matters. *Id.* at 24. There was no showing that Defendant did not perform the work and earn his salary, and the award is in violation of California Labor Code, Section 221, which states that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."[4] This is in addition to the improper denial of Defendant's claims. Consequently, Plaintiffs' action to confirm the Interim Arbitration Award in Clark County, Nevada, cannot be confirmed and the ultimate final award, assuming it retains these improper awards, would be subject to vacatur.

///

---

produced for inspection, the Arbitrator is requesting that Plaintiffs' expert newly determine what data may have been deleted. Exhibit A at 24.

[3] Similarly, Plaintiffs could have sought to inspect the trust account pre-hearing.

[4] The interim award also requires Defendant to return a laptop. Defendant has already done so, rendering the issue moot. It also dismisses Plaintiff Jason Gibson as a party, which Defendant does not oppose. But this dismissal as a party would seem to preclude the issuance of a monetary award to him.

## II.    Factual Background

Marc J. Randazza is a noted and respected First Amendment and Intellectual Property attorney with a nationwide focus.  Excelsior, a Nevada corporation whose President and owner is Jason Gibson, is a producer and internet distributor of pornographic films under the brand name "Corbin Fisher."  Excelsior frequently found itself requiring the services of an attorney with experience in those areas of law.

In July of 2009, Excelsior Media Corporation hired Randazza as its in-house general counsel.  Exhibit A.  While serving as general counsel, Randazza was also permitted to practice law on behalf of other clients through his outside law firm, Marc J. Randazza P.A. d/b/a Randazza Legal Group.  *Id.* at § 6(c) (stating in part, "[i]nsofar as such activities do not violate any professional ethical standard or the Confidentiality and inventions Assignment Agreement . . . , Excelsior agrees that Randazza may, without breaching such duties and agreements, provide professional services to a limited number of outside clients on an ongoing basis as long as such services are rendered without legal or professional conflict with Excelsior . . . .).

This outside law practice worked to create a symbiotic relationship for Excelsior.  Liberty Media Holdings, LLC ("Liberty"), is a California limited liability company whose managing member is the same Jason Gibson.  As a general practice, Liberty was assigned all rights in the Corbin Fisher films produced by Excelsior.  As general counsel, Randazza was tasked by Gibson, on behalf of Excelsior, to enforce Liberty's copyrights.  Liberty, with the approval of Gibson, enforced the copyrights in these films through Marc J. Randazza PA, which did business as Randazza Legal Group.

In any niche area of practice, the same attorneys frequently encounter each other.  Such is especially true in the world of those representing creators of online pornographic content and

those who represent the people who steal those works. One such attorney Randazza encountered on multiple occasions was Valentine Gurvits. In one matter, a company called TNAFlix was accused of infringing Liberty's copyrights. Gurvits and Randazza engaged in a bluff negotiation, with Gibson's full knowledge, that would result in the retention of Randazza as an attorney for TNAFlix following settlement, in order to effectuate a conflict of interest that would preclude Randazza from representing others against TNAFlix. This portion of the negotiation was intended to increase the overall settlement fund for Excelsior and Liberty. Although incorrectly referred to as a "bribe," no actual bribery ever occurred. Following settlement, Randazza kept up the pretense of pursuing the conflict of interest in order to maintain credibility in future dealings with Gurvits.

Randazza's strategy of post-settlement pretense with Gurvits proved prescient. In July of 2012, Randazza, for Liberty, came to settlement terms in an infringement action against FF Magnat Limited d/b/a Oron.com ("Oron"). Oron subsequently repudiated the agreement, but Randazza successfully obtained an order enforcing it. *Liberty Media Holdings, LLC v. FF Magnat Limited*, C.A. No. 2:12-cv-01057 (D,Nev. Aug. 7, 2012) (order granting Liberty's motion to enforce settlement against Oron), attached as Exhibit E.

Subsequent to this order, while Liberty was pursuing an order of attorneys' fees and freezing Oron's assets globally, Gurvits appeared for Oron and, not unexpected, Randazza again found himself negotiating a "bribe" that would create a conflict of interest for future claims against Oron. On August 13, 2012, Randazza disclosed this putative $75,000 "bribe" to Gibson as part of a settlement offer. Gibson soured at the mechanism in the agreement, because there was no express method to ensure that Liberty (rather than Randazza) would receive the $75,000.

- 11 -

August of 2012 was a trying time for Excelsior.  On August 7, 2012, Gibson reported that two significant employees would be terminated, one specifically for economic reasons.  *See* E-mail correspondence between Randazza and Gibson dated August 7, 2012, attached as Exhibit F.  Benefits, including 401k matching and dependent coverage, were eliminated.  *Id.*  Sales were declining and the ownership was dipping into personal assets to cover business expenses.  *Id.*  On or about August 21, 2012, Randazza was required, for the first time, to lend Plaintiffs $25,000 to cover a portion of litigation expenses.  Arbitration Transcript at 832:25-833:15, attached as Exhibit G.

In addition to corporate financial strain, Randazza became subject to personal disrespect.  In April of 2012, without prior notice to Randazza's or consent, a pornographic film was made in Randazza's office, which included a woman urinating on his desk.  The video is available for the Court's review upon request.  Filming in employee offices was not to be anticipated prior to that date; at that time, Randazza had no choice but to attempt to take it in stride.  In that same filming session, male-on-male homosexual pornography was photographed in Randazza's office.  The photographs are available for the Court's review upon request.  Gibson explicitly highlighted to Randazza that he was "shooting gay porn on [Randazza's] office desk & couch."  *See* Communications between Randazza and Gibson dated April 20, 2012 to April 24, 2012, attached as Exhibit H.  Then, on August 9, 2012, Gibson performed fellatio on another employee in the back seat of Randazza's vehicle, adjusting Randazza's rear view mirror in an attempt to compel him to watch.

In light of the personal harassment and the financial pressures, Randazza anticipated his termination was imminent.  For the protection of his clients, including Liberty, pursuant to California Rule of Professional Conduct 3-100 and Nevada Rule of Professional Conduct 1.6,

- 12 -

Randazza caused client (and personal) files stored on Excelsior's computers to be transferred to his firm's cloud storage system, wiping the computers to protect their confidentiality should Randazza be terminated by Excelsior.

On or about August 29, 2012, $550,000 was received from Oron. Gibson wanted all of the funds transferred to Liberty's account, without regard for proper disbursements. *See* E-mail communications among Randazza, Gibson, and Excelsior's outside counsel dated August 29, 2012, attached as Exhibit I. Later that day, Randazza wrote to Gibson that, "[g]iven our now openly adversarial relationship, it seems appropriate that I withdraw from representing Liberty in any further matters. There might be a way I can continue to wind down existing matters, but it's going to require a call to discuss it. When are you free?" *See* E-mail correspondence between Randazza and Gibson dated August 29, 2012, attached as Exhibit J. Notwithstanding Randazza's narrow statement that it seemed appropriate for him to withdraw from representing Liberty only, Gibson seized the opportunity to cast this statement as a resignation from Excelsior. *Id.* Gibson disingenuously stated to Randazza, "[w]e construe your email as a resignation of your employment and accept your resignation effective immediately." *Id.* Within an hour of receiving that e-mail, Randazza disputed that mischaracterization, stating to Excelsior's outside counsel, "that was not a resignation, as much as Mr. Gibson would like it to be so that he can try and evade payment of my severance," and correctly noting that they were terminating him. *Id.*

Following the termination of the employment relationship, Randazza commenced an arbitration claim against Excelsior relative to monies owed him and for sexual harassment, as

well as against Liberty and Gibson on an alter-ego theory.  Excelsior made a counterclaim.
Unfortunately, the Arbitrator failed at his task, issuing the misguided interim arbitration award.[5]

### III.    Standard of Review

Plaintiffs have sought confirmation of the arbitration award under both federal and
Nevada law.  Nevada recognizes nonexclusive common law grounds and statutory authority
under which a court may review an arbitration award.  *Graber v. Comstock Bank*, 111 Nev.
1421, 1426, 905 P.2d 1112, 1115 (1995).  The common law grounds are "(1) whether the award
is arbitrary, capricious, or unsupported by the agreement; and (2) whether the arbitrator
manifestly disregarded the law."  *Clark Cnty. Educ. Ass'n v. Clark Cnty. Sch. Dist.,* 122 Nev.
337, 341, 131 P.3d 5, 8 (2006).  The Nevada Supreme Court has defined the "manifest disregard
of the law" standard as error that is "obvious and capable of being readily and instantly perceived
by the average person qualified to serve as an arbitrator."  *Graber,* 111 Nev. at 1426, 905 P.2d at
1115 (quoting *Williams v. Cigna Financial Advisors Inc.,* 197 F.3d 752, 762 n.2 (5th Cir.
1995) (citation omitted).  Under Nevada statutory law, NRS 38.241, the award *shall* be set aside
if:

(a)  The award was procured by corruption, fraud or other undue means;

(b)  There was:

(1)  Evident partiality by an arbitrator appointed as a neutral arbitrator;

(2)  Corruption by an arbitrator; or

(3)  Misconduct by an arbitrator prejudicing the rights of a party to the arbitral
proceeding;

---

[5] Separately, the non-party law firm made claims against Liberty in the Clark County District Court relating to fees owed in the Oron litigation.  That action remains pending.  *Marc J. Randazza, P.A. v. Liberty Media Holdings, LLC,* Case No. A-12-673275-C (hereinafter "the State Court Action").

(c) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to NRS 38.231, so as to prejudice substantially the rights of a party to the arbitral proceeding;

(d) An arbitrator exceeded his or her powers . . . .

As set forth herein, evident partiality, misconduct, and exceeding of powers warrant setting aside the award under Nevada law.

Similarly, under federal law, an arbitration order is subject to being vacated under 9 U.S.C. 10:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Because the federal statute closely matches the Nevada statute, federal authorities construing the federal statute are persuasive for the construction of the state statute. The award must be final; review is not permissible of interim orders. *See, e.g., Northland Truss Sys., Inc. v Henning Constr. Co., LLC*, 808 F. Supp. 2d 1119, 1123 (S.D. Iowa 2011). Where a reasonable person would conclude that the arbitrator was partial to one party to the arbitration, "evident partiality" within the meaning of section 10 will be found. *Morelite Constr. Corp. v New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir. 1984). An arbitrator will be deemed to have exceeded his powers or imperfectly executed them where the record before him demonstrates unambiguous and undisputed mistakes of fact and the arbitrator relied on those

mistakes in making his award. *Nat'l Post Office Mailhandlers v United States Postal Serv.*, 751 F.2d 834, 843 (6th Cir. 1985). The arbitrator's partiality, misconduct, and exceeding of his powers, warrants vacatur of the arbitration award under federal law.

Further, under both NRS 38.241 and the Federal Arbitration Act, 9 U.S.C. 11, an arbitral award is subject to modification. NRS 38.242(1) sets the standard for modification if:

> (a) There was an evident mathematical miscalculation or an evident mistake in the description of a person, thing or property referred to in the award;

> (b) The arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or

> (c) The award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.

Under the Federal Arbitration Act, an award is also subject to modification:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. 11 (2015). Should the Court opt not to vacate the award, it may modify and correct the award so as to effect the intent thereof and promote justice between the parties.

In performing its review function, this Court is required to review the necessary transcript and exhibits. *Graber v. Comstock Bank*, 111 Nev. at 1429, 905 P.2d at 1117. Plaintiffs did not submit such to the Court and, for that reason alone, the motion should be denied. Notwithstanding that failure, the motion should be denied on the merits as the interim arbitration award is not subject to confirmation.

IV.    Analysis

Plaintiffs' motion fails both procedurally and substantively. Plaintiffs chose the wrong court and improperly submitted an interim, rather than final, award. Substantively, the Interim Arbitration Award is so manifestly and thoroughly rife with errors, omissions, disregard of applicable California law, and evident bias that it would be a miscarriage of justice to enforce it. Rather, to the extent applicable, the Court should deny the motion and/or vacate it in its entirety or remand it for rehearing before a new arbitration panel.

**A. Plaintiffs have Violated the Employment Agreement by Bringing the Enforcement Action in Nevada**

At the outset, it bears mention that the arbitration arose under the employment agreement between Randazza and Excelsior. Exhibit A at §§ 8 & 9. The arbitration was permitted to be conducted in Las Vegas, Nevada, by Section 8(F) of the employment agreement. However, an entirely separate section of the employment agreement controls construction thereof and enforcement (confirmation) of an arbitration award. Specifically, Section 9(E) states, in relevant part: "Any action to enforce an arbitrator's award will be venued [sic] in San Diego County, California, unless otherwise agreed to by the parties." Defendant has not consented to venue in Clark County, Nevada, nor has he otherwise waived the requirements of Section 9(E). A freely negotiated forum selection clause is enforceable where it is just and reasonable. *Tandy Computer Leasing, Div. of Tandy Elecs. v. Terina's Pizza*, 105 Nev. 841, 844, 784 P.2d 7, 8 (1989). A party seeking to set aside a forum selection clause must make a "strong showing" that the relief is warranted. *Tuxedo Int'l Inc. v. Rosenberg*, 127 Nev. ___, 251 P.3d 690, 699 (2011) (quoting *Tandy* at 844). Plaintiffs have failed to make any showing, let alone a strong showing. It is undisputed that the employment agreement was fully and freely negotiated, and given the geographic fluidity of the parties, it remains just and reasonable to enforce the agreement

requiring venue in San Diego. Without waiver of the argument that it is premature to litigate this matter, Randazza is in the process of filing an action in San Diego to vacate the interim arbitration award. Thus, Plaintiffs' motion to confirm the arbitration award must be denied. However, assuming, *arguendo,* that this is a proper jurisdiction, confirmation is not warranted and the interim awards are subject to vacatur.

**B. The Interim Arbitration Award Is Not Final, Thus Plaintiffs' Motion to Confirm the Award Should Be Denied**

Notwithstanding the improper venue, Plaintiffs state, without support, that the Interim Arbitration Award qualifies as an arbitral award subject to confirmation under NRS 38.236, NRS 38.239 and Section 9 of the Federal Arbitration Act, 9 U.S.C. 9.[6] Pursuant to NRS 38.222(2)(a), an "arbitrator may issue . . . orders for provisional remedies including interim awards, as the arbitrator finds necessary to protect the effectiveness of the arbitral proceeding and to promote the fair and expeditious resolution of the controversy, to the same extent and under the same conditions as if the controversy were the subject of a civil action . . . ." By definition, a provisional "interim award" is not a final award. Pursuant to NRS 38.330(4), an "award" must be made within 30 days after the conclusion of arbitration, demonstrating that the term, "award" as presented in NRS chapter 38 refers to a final arbitration award following the arbitration – as opposed to a provisional "interim award" pending the final resolution of the arbitration.

---

[6] Obviously, both Nevada and Federal law cannot apply to this action. If the federal statute applies, it would preempt the state statute. *See Southland Corp. Keating,* 465 U.S. 1 (1984). The federal statute applies only to "maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (1976). This is obviously not a maritime transaction, so unless it is "a contract evidencing a transaction involving commerce," the federal statute has no direct application here. We have cited to federal law as persuasive, not controlling.

NRS 38.239 only permits a party to seek confirmation of a final "award" after the party "receives notice of an award." This language indicates that the Nevada Legislature intended that an award must be final before a party seeks to confirm it with the district court. Thus, Plaintiffs' motion to confirm the Interim Arbitration Award is premature and should be denied. Similarly, the Interim Arbitration Award would not be subject to confirmation under the Federal Arbitration Act, because it does not dispose of a self-contained issue, such as temporary equitable relief. *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022 (9th Cir. 1991). Absent finality, Plaintiffs' motion must be denied.

**C. The Arbitrator Made Gross Factual and Legal Errors**

The Arbitrator made numerous findings and determinations that are factually and legally misplaced, so much so that he failed to execute his duties in manifest disregard of the facts and the law, exceeding his powers.

1. The Arbitrator Made Improper Factual Findings

Throughout the Interim Arbitration Award, the Arbitrator made numerous findings of fact. Many of these findings are wholly separated from the evidence and demonstrate the Arbitrator's failure to perform. Two of them are of particular note: deeming Randazza to have resigned and determining that Randazza was seeking personal remuneration in a settlement negotiation.

a. *Randazza Did Not Resign*

The Arbitrator erroneously found that Randazza's August 29, 2012, e-mail constituted a resignation. Exhibit J. As set forth above, on August 29, 2012, Randazza stated to Gibson that it seemed appropriate that Randazza withdraw as Liberty's counsel. *Id.* Although there is no language about separation of employment with Excelsior, Excelsior treated it as a letter of

resignation. As documented in Exhibit J, immediately upon learning that Plaintiffs construed the

e-mail as a resignation, Randazza disputed that characterization. *Id.*; Exhibit G at 206-207.

"A resignation is in the nature of a notice of the termination of a contract of employment

and is contractual in its nature. It is ineffectual without the intent of the incumbent to sever the

relationship of employer and employee." *Sherman v. Board of Trustees*, 9 Cal. App. 2d 262,

266, 49 P.2d 350, 352, 1935 Cal. App. LEXIS 1299, *6 (Cal. App. 1935). There is no evidence

that Randazza had the intent to sever the employment relationship. Several reasons demonstrate

it was not a resignation. First, and most telling, if Randazza intended to resign, he would not

have disputed that characterization of his e-mail immediately. Instead, it is clear that it was

disingenuously interpreted as a resignation, with Excelsior having already retained its

employment counsel at Littler. Excelsior intended to terminate Randazza and seized upon the e-

mail in order to pretextually treat it as a resignation.[7] Upon learning of their incorrect

interpretation of the e-mail, a rational employer would have required Randazza to work.

Excelsior took no steps to enable Randazza to perform his work on August 30, 2012, the next

day. It treated him as separated, not properly pursuant to a voluntary resignation. Such

constitutes an involuntary termination.

Second, as set forth above, on August 21, 2012, Randazza loaned Liberty $25,000 of his

own funds at the behest of his employer, Excelsior. Exhibit G at 832:25-833:15; Exhibit Y.

Plaintiffs attempted to suggest that Randazza intended to quit in the weeks leading up to August

29. A quitting employee would not lightly part with such a sum.

---

[7] As general counsel, Randazza would have been involved in the hiring process for outside counsel, were Littler on a standard retainer. Instead, it appears Littler was specifically hired relative to the termination of Randazza.

Third, the Arbitrator improperly considered that the transfer of client files to his firm's cloud storage, and then erasing those on Excelsior's hardware, evidenced an intent to resign. Instead, Randazza had prudently hoped for the best, but planned for the worst. The Arbitrator misconstrued the protective measures of wiping personal and Randazza Legal Group privileged information as an intent to quit; to the contrary, Randazza expected to be fired and was required to ensure that the law firm's files remained confidential, and he would not have been able to do so after termination. It is a miscarriage of justice to penalize Randazza for following his ethical duties.

### b.    There Was No "Bribe"

The arbitrator grounded his conclusions that Randazza breached fiduciary duties and committed malpractice on Randazza's alleged negotiation for a $75,000 "bribe." As set forth above, in prior dealings with an opposing attorney, Valentin Gurvits, Randazza had been presented with offers that, following the settlement, he would be retained by the opposing side. This would create a conflict of interest for Randazza should another party seek to engage him to pursue a similar claim against Gurvits' client. Randazza testified that he participated in these conversations as a bluff, to increase available settlement funds. Exhibit G at 242:16-243:2. Randazza testified that he never intended to individually profit. *Id.* at 173:1-22. No evidence was presented to the contrary.[8] Neither was there any evidence that Randazza ultimately

---

[8] Randazza did express a concern that delivering the earmarked $75,000 to Liberty might constitute improper fee sharing under Nevada Rule of Professional Conduct 5.4, and he intended to adjust his employment bonus and firm's bill commensurately to avoid impropriety. Exhibit G at 421:1-15. Typically, an attorney's fee is the property of the client. *Evans v. Jeff D.,* 475 U.S. 717, 731 (1986). Here, however, it was to be characterized as a legal fee to Randazza Legal Group for the representation of Oron, not an attorneys' fee award. However, Randazza ultimately agreed that he would figure out a way to ensure the earmark would be remitted to Liberty as part of the global settlement fund. *See* E-mail from Randazza to Gibson dated August 16, 2012, attached as Exhibit Z.

intended to consummate such a negotiation.[9]  Randazza had never previously consummated such a deal, despite it then being part of the negotiations as well.  Exhibit G at 397:7-10

Prior practice bears this out.  Following a settlement between Liberty and TNAFlix, an infringer represented by Attorney Gurvits, Randazza continued the pretense of negotiating to represent TNAFlix. *Id.* at 377:20-25.  Having kept up the pretense, Randazza was all the more credible in his negotiations with Attorney Gurvits in the Oron matter.  The Arbitrator effectively agreed that Randazza never intended to obtain the actual $75,000 for himself against the interests of Liberty.  He concluded, correctly, that Randazza and Gurvits were lying to each other.  Exhibit D at 7, n. 4.  Yet, the Arbitrator did not even consider how these tactics benefitted Plaintiffs.  Instead, as will be discussed below, he found that the "bribe" caused $275,000 in damages after Oron.com made post-termination claims for breach of the settlement agreement, none of which claims involved the alleged bribe.  The contradictory findings that Randazza both was and was not negotiating for a $75,000 bribe demonstrates the lack of any factual foundation for the Arbitrator's interim award.

As Randazza neither resigned nor acted against Plaintiffs' interests, each of the portions of the interim award are not only legally wrong, but factually misplaced.  Thus, the award cannot be confirmed.

2.  The Arbitrator Made Improper Legal Determinations

In the Interim Arbitration Award, the Arbitrator applied the incorrect law in several instances and made numerous improper legal conclusions, violating his duties as arbitrator and

---

[9] The only expert as to California professional responsibility, Attorney Ellen Peck, testified that this was not improper.  *See* Expert rebuttal report of Ellen Peck at 4-10, attached as Exhibit AA; Exhibit G at 1244:9-1245:6.  This was also not improper in Nevada.  *See* Expert rebuttal report of Joseph Garin at 17, attached as Exhibit BB.

rendering the arbitration award unenforceable.  With few exceptions, the legal conclusions as to

both Randazza's claim and Plaintiffs' counterclaims are erroneous and violate public policy in

manifest disregard of the law.  For general background of the legal issues presented in the

arbitration, Defendant attaches his Opening Post-Hearing Brief, at Exhibit K.  The Arbitrator

improperly ruled against Randazza on his claims against Plaintiffs as well as on their claims

against him.

<em>a.    Randazza Should Have Prevailed On His Claims</em>

Randazza brought eight claims against Plaintiffs:  1) reimbursement of expenses under

Cal. Labor Code, sec. 2802; 2) unpaid wages and vacation time under Cal. Labor Code, sec. 201-

203; 3) unpaid wages, expenses, and vacation time under NRS 608.050; 4) breach of contract; 5)

wrongful termination in violation of public policy; 6) hostile work environment; 7) retaliation;

and 8) declaration of alter ego.  In the Interim Arbitration Award, the Arbitrator ruled that

Randazza "shall take nothing by any of his claims."  Exhibit D at 23.  This ruling cannot be

confirmed.

i.    <u>Randazza Is Entitled To Reimbursement Under California Law</u>

As to claim 1, Randazza sought reimbursement of the $25,000 in litigation expenses he

advanced in the Oron.com matter pursuant to Cal. Labor Code, Section 2802.  *See* Amended

Arbitration Claims of Marc J. Randazza at 16-17, attached as Exhibit L.  This Section states,

"[a]n employer shall indemnify his or her employee for all necessary expenditures or losses

incurred by the employee in direct consequence of the discharge of his or her duties, or of his or

her obedience to the directions of the employer . . . ."  Cal. Labor Code § 2802(a) (2015).  The

Arbitrator denied the claim, stating that the statute a) did not apply in Nevada, and b) was not

incorporated into the contract.  Exhibit D at 11-12.  Although the Arbitrator denied this claim, he

- 23 -

also permitted Randazza to offset the $25,000 against monies awarded. *Id.* at 22. The Arbitrator provided no justification for permitting this offset, which could only be within his power if Randazza actually prevailed on this claim or, perhaps, claim 3 for unpaid expenses.[10] Thus, at a minimum, the award must be modified to find Randazza a prevailing party, who may seek attorney fees.

In making his erroneous legal conclusion, the Arbitrator ignored the employment agreement and his duties to interpret that agreement. The Arbitrator found that Cal. Labor Code, Section 2802 does not apply extraterritorially, citing *Sullivan v. Oracle Corp.*, 51 Cal 4th 1191 (2011), and *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 U.S. Dist. LEXIS 104378 (N.D. Cal. 2012). Exhibit D at 12, n. 9. First, the California Supreme Court in *Sullivan* expressly noted that it was not addressing the question of whether such law applied extraterritorially. 51 Cal. 4th at 1201. The *Wright* Court noted a presumption against extraterritoriality, finding the labor code did not apply where there was no choice of law provision. Here, there was a choice of law provision and it explicitly chose California law, with one key exception: it is "without regard to conflict of laws." Exhibit A at § 9(E).[11] The Arbitrator misread both cases and the employment agreement. Notwithstanding any presumption against extraterritoriality, the parties here agreed California law should apply extraterritorially.

---

[10] None of Randazza's December 16, 2013, affirmative defenses raised the entitlement to an offset, so it cannot be argued that the Arbitrator permitted the offset on that basis. *See* Marc J. Randazza's Affirmative Defenses to Counterclaims of Excelsior Media Corporation, attached as Exhibit K. In addition, the $25,000 was loaned to Liberty, yet the offset was awarded relative to Excelsior's counterclaims, further indicating that the Arbitrator deemed them alter egos of each other.

[11] This standard language means that California law regarding conflicts of laws would not be used to apply some other state's law on a theory that the other state had a superior interest in the controversy, emphasizing that only California law would apply.

Compounding his error, the Arbitrator stated that the choice of law provision only governed contract claims, not statutory claims, citing *Narayan v. EGL, Inc.*, 616 F.3d 895 (9th Cir. 2010). Exhibit D-12 and n. 10. The Arbitrator misread *Narayan*. More accurately, the Ninth Circuit stated, "While the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract." *Narayan v. EGL, Inc.*, 616 F.3d at 899. What *Narayan* does not say is that parties are precluded from ensuring that all of the benefits of California statutory law could not be incorporated into a contract. *See Selcke v. New England Ins. Co.*, 995 F.2d 688, 690 (7th Cir. 1993) ("The law could require contracting parties to specify every right and duty that they wanted to make legally enforceable, but then contracts would be very long. An economizing measure is for the law to create, whether by statute or common law, standard, 'off the rack' terms that parties can vary if they want but that govern otherwise, eliminating the need for parties to negotiate them expressly in every contract."). That is, though a Section 2802 claim does not rest on contractual provisions, parties are free to incorporate the law into their agreements. Here, the parties to the employment agreement incorporated the entire corpus of California labor law into the contract.

It is further notable that Section 2802 falls under Division 3, Chapter 2 of the California Labor Code, which, at Section 2750, begins by setting forth the identity of employer and employee as being those who are parties to a contract of employment. Thus, by definition, Section 2802, which must be read into all California contracts of employment, governs the instant contract where the parties chose California law to apply. The Arbitrator having wholly misapprehended the law, the Interim Arbitration Award must be vacated. Randazza is expressly entitled to reimbursement of the $25,000 and is a prevailing party.

ii.    <u>Randazza Is Owed Unpaid Wages Under California Law</u>

In Count II of his Amended Arbitration Claim, Randazza sought unpaid wages and bonuses under California Labor Code, Sections 201-203. Exhibit L at 18-21. These Sections require a discharging employer to pay the wages earned and unpaid of a discharged employee immediately at the time of discharge. Cal. Labor Code §§ 201-203 (2015). Here, Randazza sought a day's pay of $1,014.20, as he was only paid for four days from his final week, and an additional $2,281.95, representing an unpaid 5% wage increase from July 1 to August 30, 2012, required by the contract. *Id.*; Exhibit A at §§ 3(A)-(B). Randazza also sought certain non-discretionary bonuses, namely 25% of each of five settlements, in the amount of at least $190,779.35. Exhibit L at 19-21; Exhibit A at § 3(C).[12] Additionally, Randazza sought the penalty of his daily wage ($1,014) per day per Cal. Labor Code. sec. 2013, for the first thirty days during which Excelsior failed to pay his final wages per California Labor Code Section 203, which states that if an employedr fails to pay wages of a discharged employee, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Finally, treble damages of at least $564,130 were sought per Cal. Labor Code sec. 206(b). Exhibit L at 21.

---

[12] It is further notable that there was no dispute that Randazza was generally entitled to these 25% bonuses for settlements. Yet, in practice, the settlements were on behalf of Liberty, not Excelsior, though the contract itself only speaks to settlements paid to Excelsior. This further evidences that Liberty and Excelsior are alter egos of each other.

Once more, the Arbitrator incorrectly found that California law did not apply. Exhibit D at 11-12. For the same mistaken reasons as with the first claim, the Arbitrator failed to appreciate that California law is made part of the contract.[13]

Further, the Arbitrator otherwise erroneously found that Randazza was properly compensated. *Id.* at 12 ("In the event [sic], Mr. Randazza was properly compensated for all services as to which he has asserted statutory and contractual claims"). In Footnote 11, the Arbitrator stated that "claimed compensation raises were discretionary." *Id.* at n. 12. However, the Arbitrator undertook no examination of Excelsior's failure to abide the procedure by which it could avoid the raise. The explicit terms of the employment agreement make the raise mandatory unless there is an executed memorandum of understanding. Exhibit A at § 3(B). The parties never executed a memorandum of understanding and Plaintiffs failed to present any evidence to the contrary. Thus, the Arbitrator had no basis to deny Randazza his raise.

In a similar failure, the Arbitrator undertook no examination of what bonuses were owed for what settlements and whether they were paid. In fact, he did not even deign to decide how bonuses were to be calculated, as the parties disputed whether they were to be paid on net or gross settlements. Exhibit D at 12, n. 11 ("Mr. Randazza's bonuses were to be based on **net** and **gross** amounts") (emphasis added); Exhibit G at 31:24-34:9. Randazza claimed 25% of settlements and fee awards with Oron, Excubitor USA, and other amounts procured by Plaintiffs while Randazza was employed. Exhibit L at 19-20; Exhibit A at § 3(C). The employment agreement entitled Randazza to these fees and the Arbitrator had no option but to award them once it was established that the settlement funds existed. Instead, in dismissive fashion, the

---

[13] With respect to these claims, California Labor Code, Section 200(b) governs all work subject to an agreement between employers and employers.

Arbitrator states they were otherwise subject to disgorgement. Exhibit D at 12, n. 11.  Yet, even in his disgorgement order, the Arbitrator paid no attention to any of these particular bonuses or unpaid salary claims. *Id.* at 24.[14]  Moreover, as more fully set forth below, disgorgement of earned wages is improper.  And, as Randazza did not resign, he is otherwise owed, under statute, the full week's salary and statutory penalties.

iii.     <u>Randazza Is Owed Unpaid Wages Under Nevada Law</u>

In Count III of his Amended Arbitration Claim, Randazza sought to enforce his rights to the unpaid day, his 5% raise, and the nondiscretionary bonuses[15], pursuant to NRS 608.050, plus statutory penalties. Exhibit L at 21-23. The Arbitrator gave short shrift to this claim, stating that it "fails as a matter of law, because there is no private right of action for enforcement of that statute.  It is therefore not necessary to decide whether the [sic] a claim has been stated under that statute." Exhibit D at 12. The Arbitrator made a fundamental error of law in this finding, without having provided any basis in law.  The Arbitrator undertook no analysis of the private right of action.  No Nevada state court has found a private right of action wanting.  Presumably,

---

[14] In the disgorgement order, the Arbitrator states "Claimant shall pay Respondent Excelsior the amount of $197,000.00—as and for disgorgement of an appropriate amount of Claimant's employment compensation (including salary and bonuses) paid under his employment agreement." *Id.* at 24. The disgorgement figure lacks any form of calculation, yet appears curiously akin to Randazza's claim for unpaid bonuses, with one number transposed (the "7" in the hundreds column moved to the thousands). Assuming that the Arbitrator's reference in Footnote 11 to disgorgement correlates with Section 3 of the award, it appears that the Arbitrator is not requiring Randazza to write a check for $197,000, but rather that his claim for unpaid salary and bonuses of approximately that amount is forfeit.  This may be the likely interpretation, as it is the only portion of the monetary award to not include interest.

[15] Excelsior argued at the Arbitration that the bonuses are not wages within the meaning of NRS 608.050, citing to NRS 608.012. However, NRS 608.012 distinguishes commissions from other forms of bonuses and deems them as part of the wage.  Randazza's bonus was akin to a commission, selling a release of claims to an infringer for value, and thus is cognizable under the statute.

- 28 -