the Arbitrator relied upon Plaintiffs' citation to *McDonagh v. Harrah's Las Vegas, Inc.*, 2014 U.S. Dist. LEXIS 82290, *9, 2014 WL 2742874 (D. Nev. June 17, 2014), in its post-arbitration brief. However, such citation was misplaced; the Ninth Circuit found such a claim cognizable less than one year prior. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 901 (9th Cir. 2013); *Fetrow-Fix v. Harrah's Entm't, Inc.*, 2010 U.S. Dist. LEXIS 125625, *5 (D. Nev. Nov. 16, 2010) (finding that the plaintiffs stated a valid claim under NRS 608.050).

The *McDonagh* judge did not perform a private right of action analysis. Instead, tracing through the cited case law, the *McDonagh* decision ultimately rests on the analysis in *Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 960, 194 P.3d 96, 102 (2008), relative to NRS 608.160. In *Baldonado*, the Nevada Supreme Court found no private right of action where "the statutory scheme require[ed] the Labor Commissioner to enforce the labor statutes and" there was "the availability of an adequate administrative remedy for those statutes' violations." 124 Nev. at 960. The *Baldonado* court reached this stage of the analysis after first determining that there was no express private right of action and the legislative history was silent as to the intent to create a private remedy. *Id.* at 958-960. Although NRS 608.160 is silent as to enforcement, NRS 608.050 is not, and the *Baldonado* analysis is misplaced. Specifically, NRS 608.050(2) explicitly grants an employee the right to record a lien against the employer's property and foreclose thereon, in accordance with the provisions of NRS 108.221 to 108.246. Of note, NRS 108.238, incorporated by reference into NRS 608.050(2), specifically permits a civil action to recover the debt made subject of the lien, *i.e.* a private right of action. Similarly, NRS 108.239 entitles the claimant to, in a private civil action, enforce and foreclose the lien granted by NRS 608.050. Thus, unlike other claims in Chapter 608, claims under NRS 608.050 contain an express right of action and it is otherwise unreasonable to find no private right where the

statutory scheme permits the recording of and foreclosure on a lien for the debt created under that statute. Randazza is entitled, as argued at arbitration, to a day's pay, vested bonuses, the 5% raise, and statutory penalties. Thus, the Interim Arbitration Award should be vacated and remanded to a new arbitrator.

iv.    Randazza Is Entitled To Unpaid Severance And Bonuses

In his fourth claim, Randazza made claim for breach of contract relative to the aforementioned bonuses as well as for unpaid severance. Exhibit L at 23-24. Pursuant to Section 7(B) of the employment agreement, Randazza was entitled to twelve weeks of salary as a severance if terminated during his fourth year of employment. Exhibit A. This severance, in the amount of $60,852, was not paid. There is no dispute he was not paid this amount nor the claimed bonuses.

First, the Arbitrator erroneously found that Randazza resigned, disqualifying him from the severance payment. As set forth in detail above, the facts demonstrate that Randazza did not resign nor did he have any intent to resign. Excelsior's choice to deem the withdrawal of representing Liberty as a resignation had no basis in fact and to the contrary was a bad faith action in an effort to avoid paying Randazza the twelve weeks of severance it owed him. It is nonsensical for the Arbitrator to simultaneously determine that Randazza was so greedy as to divert $75,000 to himself while he was also readily willing to forego over $60,000 in severance.

The Arbitrator also found that Randazza was miscalculating the amount of his claimed bonus, that it should have been based on Liberty's net recovery, subtracting litigation costs, rather than gross settlement. In correspondence between Excelsior and Randazza, it was determined that Excelsior would "pay all expenses/assume all risks." *See* E-mail correspondence between Jason Gibson and Marc Randazza dated February 9, 2010, to February 15, 2010,

attached as Exhibit M.  Were the bonus from net, Randazza would have been subsidizing expenses by 25% and assuming part of the risk.  Only by ignoring the record before him could the Arbitrator have found otherwise.

The Arbitrator further exceeded his authority when he also determined that Excelsior did not have to make "any further contractual payment" based on Randazza's alleged own material breach and the doctrine of unclean hands.  Exhibit D at 13.  As to Randazza's own alleged breach, none occurred as discussed below.[16]  Similarly, the doctrine of unclean hands "applies only if the inequitable conduct occurred in a transaction directly related to the matter before the court and affects the equitable relationship between the litigants." *Cal. Satellite Sys. v. Nichols*, 170 Cal. App. 3d 56, 70 (Cal. App. 3d Dist. 1985).  Here, unclean hands cannot apply where Randazza was deprived of his severance solely because Excelsior spuriously chose to deem the separation a resignation, despite Randazza's contemporaneous disclaimer.

Similarly, the Arbitrator undertook no analysis of what alleged misconduct should deprive him of what particular bonus due.  For example, Randazza earned his bonus on the Oron matter in July 2012 at the time of settlement; yet, the Arbitrator made no finding that Randazza committed any breach or malpractice at that time causing injury to Plaintiffs.  Instead, the only finding of breach or malpractice occurred a month later, after the court enforced the Oron settlement and the bonus was earned. Thus, the Interim Arbitration Award should be vacated and remanded to a new arbitrator.

///

---

[16] By the same token, however, Randazza should not be compelled to perform any post-termination requirements based on Plaintiffs' material breach.

v.    Randazza Was Wrongfully Terminated

In his fifth claim, Randazza claimed wrongful termination based upon his sexual orientation and retaliation for a harassment complaint and for violating public policy, seeking to force Randazza to ignore his duties as an attorney. Exhibit L at 25-27. The Arbitrator gave no meaningful analysis to this claim, having erroneously determined Randazza voluntarily resigned. Exhibit D at 5-6, 8-11.

Randazza initially complained directly to Gibson about sexual harassment following the pornography filmed in his office in April 2012. Exhibit G at 618:2-18; Exhibit H at 6 (admonishing Randazza not to be "butt hurt" about the incident and refusing to apologize). Following Gibson performing fellatio in Randazza's vehicle, no complaint was made due to the chilling effect following the original complaint. *Id.* These events targeted Randazza on the basis of his sexual orientation and protected activities. Cal. Gov. Code § 12940(a) & (h) (2015) (precluding discrimination on the basis of sexual orientation and precluding retaliation); *Complainant v. Foxx*, EEOC Appeal No. 2012-24738–FAA-03 (July 15, 2015) (finding discrimination on the basis of sexual orientation to constitute discrimination on the basis of sex under Title VII). Excelsior's termination of Randazza may properly have been deemed wrongful termination on the basis of sexual orientation and complaints of harassment.

Subsequently, as noted above, due to the financial hardships of Excelsior, demands were put upon Randazza to distribute the Oron settlement funds. Exhibit I. As Randazza indicated, there were predicate acts he was required to undertake prior to distribution. *Id.* Such was consistent with his responsibilities under Nev.R.Prof. Conduct 3.4(c). When Excelsior terminated him, it acted with the retaliatory motive noted above as well as with the intent to punish Randazza for obeying his ethical duties. Because the employment agreement is to be

- 32 -

interpreted under California law, Randazza properly had a claim for wrongful termination. *See General Dynamics Corp. v. Superior Court (Rose)*, 7 Cal 4th 1164, 1191, 876 P.2d 487, 504 (1994) (an in-house attorney discharged for violating the ethics code can make a claim for wrongful discharge). Thus, the matter needs to be vacated and remanded to a new arbitrator.

vi.    Randazza Was Subjected To A Hostile Work Environment

In the sixth claim, Randazza made a direct claim for sexual harassment and the creation of a hostile work environment. Exhibit L at 28-31. As noted above, such claims are actionable under California law and, most recently, Title VII of the federal Civil Rights Act. Excelsior specifically targeted Randazza with gay pornography filmed on his desk and attempting to compel him to watch male-on-male fellatio performed in his vehicle. Although Randazza generally accepted such acts as part of the public-facing business of Excelsior, those incidents were attacks upon Randazza directly, with the express, and successful, intent of creating a hostile work environment.

The Arbitrator found count 6 was not proved. Exhibit D at 6. In so ruling, the Arbitrator contradicted his own finding that he would not resolve the conflicting evidence of whether the sexual acts occurred (gay and straight pornography filmed in his office, which included urination on his desk, and fellatio occurring in the back seat of his car while driving) or whether Randazza was bothered by these events. *Compare* Exhibit D at 5 *with* Exhibit D at 9. The Arbitrator had the evidence before him that these acts occurred and that they caused Randazza emotional distress. However, it appears he could not bring himself to afford any satisfaction to Randazza, further evidencing his unmistakable bias. Such an award cannot be confirmed.

/ / /

vii.    <u>Randazza Was Retaliated Against</u>

In Claim 7 of his Amended Arbitration Claim, Randazza asserted that he was wrongfully retaliated against for his complaints of sexual harassment, as set forth above. Exhibit L at 32-34. As noted above, Randazza complained of the harassment to Gibson on April 23, 2012, who refused to apologize and told him not to be "butt hurt." Subsequently, Gibson targeted Randazza with the vehicular fellatio incident, ultimately culminating in Gibson seizing upon the August 29 email to pretend Randazza resigned, effectively terminating him. Such action is unlawful, as noted, under California and federal law. Randazza suffered the loss of salary resulting from his retaliatory termination and suffered emotional distress. The Arbitrator gave no consideration to this claim, making the patently erroneous finding that Randazza resigned. The Interim Arbitration Award must, therefore, be vacated.

viii.    <u>Plaintiffs are Alter Egos of Each Other</u>

In the eighth count, Randazza sought a declaration that the Plaintiffs are alter egos of each other. Exhibit L at 34-38. Should the matter be vacated, Randazza is entitled to put forth evidence, which opportunity he was denied, to show that Gibson ignored corporate formalities and treated Excelsior and Liberty as his own alter egos and as alter egos of each other. A declaration is warranted to find them jointly and severally liable for the damages they caused Randazza.

b.    *The Interim Arbitration Award To Plaintiffs Is Improper*

Excelsior brought seven (7) counterclaims against Randazza: 1) breach of fiduciary duty; 2) conversion; 3) intentional interference with contractual relations; 4) tortious breach of duty of good faith and fair dealing; 5) legal malpractice; 6) unjust enrichment; and 7) breach of contract. The Interim Arbitration Award portion explicitly only addresses counterclaims 1, 2, 6 & 7.

Exhibit D at 23-25.  However, the Arbitrator, in his analysis, found that Randazza violated "fiduciary duty and other duties", implicating counts 4 & 5.  *Id.* at 18.  The Arbitrator did not address the third claim.[17]

At the outset, in varying portions of the Interim Arbitration Award, the Arbitrator gave monetary relief in some instances to "Respondent(s)" and in others to "Respondent Excelsior." Compare *Id.* at 23 ("Respondent(s)") with *id.* at 24 ("Respondent Excelsior"), 25 ("Respondents," "Respondent," and "Respondents and Counterclaimants Excelsior Media Corp. and Liberty Media Holdings, LLC").  The only respondent to have asserted counterclaims was Excelsior.  To the extent monies are awarded to any other respondent, including attorneys' fees,[18] such exceeded the Arbitrator's authority as claims by them were not put before him. Excelsior is not entitled, by any reasonable estimate, to any portion of the Interim Arbitration Award as the Arbitrator manifestly disregarded the record and the law.

i.    Randazza Did Not Breach Fiduciary Duties

The Arbitrator awarded Plaintiff(s) $275,000, plus prejudgment interest at 10%, for the alleged breach of fiduciary duty arising from Randazza's negotiation for the additional $75,000 payment. *Id.* at 23.  As discussed above, Randazza had obtained judicial enforcement of the $550,000 July 2012 settlement with Oron, and he was pursuing attorneys' fees and securing overseas assets of Oron.  As part of an effort to resolve these outstanding issues, Gurvits appeared for Oron and began negotiating a separate fee for Randazza to ensure that others might not enjoy the fruits of Randazza's skill.  Customarily, Randazza played along in order to expand

---

[17] The third counterclaim alleged Randazza caused other lawyers to cease working for Plaintiffs.

[18] It should be noted that if Liberty or Gibson could assert a claim for attorneys' fees, such would contradict the Arbitrator's alter-ego analysis, since by that finding only Excelsior would have a contract right to such fees.

the settlement fund.  The Arbitrator agreed that Randazza and Gurvits were bluffing.  Exhibit D

at 7 n.4 (stating that "except for admissions, anything which Mr. Randazza and his opposing

counsel in the Oron litigation, Val Gurvitz, communicated to each other lacked credibility . . .

.").

        There is no basis for this interim award.  Excelsior alleges that, following its termination

of Randazza, Oron brought claims against Liberty and a settlement was reached in that matter.

The $275,000 figure represents the approximate reduction in the ultimate agreement between

Oron and Liberty, from the original $550,000 paid.  First, as Liberty asserted no counterclaims

and was adjudged not to be the alter ego of Excelsior, Excelsior lacked standing to make this

claim.  Second, there is no causal connection, legal or factual, between the so-called "bribe" and

Liberty's decision to return $275,000 to Oron.  Second, at no point in the Oron Arbitration

Demand did it make mention of the negotiation over the $75,000 payment.  Exhibit N.  The

Arbitrator completely neglected a legal causation analysis required for any claim of breach of

fiduciary duty, breach of duty of good faith and fair dealing, breach of contract, or legal

malpractice.  *See Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1508-09 (Cal. App.

1st Dist. 2008) (discussing elements of claims); *Kane v. Sklar*, 122 Cal. App. 2d 480, 482-483,

265 P.2d 29, 31 (Cal. App. 1954); *Carlton v. Quint*, 77 Cal. App. 4th 690, 699 (Cal. App. 2d

Dist. 2000).  The Arbitrator recognized that "proximate cause" and "fact of damage" is a

separate element of the claims.  Exhibit D at 15.  Less than one page later, in contravention of the

causation element of any of these claims and in manifest disregard of the law, the Arbitrator

expressly ruled that "violations of fiduciary duties do not require 'fact of harm' to be shown by a

preponderance of the evidence or otherwise." *Id.* at 15-16.  As no reasonable construction of the

evidence could tie the $75,000 negotiation to the reduced settlement, there was no harm to

Excelsior and no proximate causation.  This is in addition to the absence of a breach where the Arbitrator acknowledged that, as a bluffer, Randazza was not intending to consummate the so-called "bribe."  Absent breach, causation, and harm, no award is justified.  The Arbitrator failed to perform his duties and this award must be vacated.

The record is devoid of corroboration that Liberty paid Oron $275,000, further undermining the claim of damages.  In fact, Plaintiffs' failure to corroborate is in violation of the Arbitrator's own order.  On August 15, 2013, Randazza requested production of "all communications related to the settlement of the Oron Litigation."  Following Plaintiffs' refusal to produce the communications evidencing the alleged revised settlement between Liberty and Oron.com, Randazza moved to compel.  The Arbitrator granted the motion subject to confidentiality considerations on March 31, 2014.  Exhibit O at 3-4.  The Arbitrator confirmed Plaintiffs' obligation to produce them again on August 28, 2014.  See, Exhibit P at 1-2.  Plaintiffs stipulated to an order on November 3, 2014, that they would produce them.  Exhibit Q at 2.  The Arbitrator again ordered production on January 16, 2015, of all e-mails from Oron's counsel.  Exhibit R at 1-2.  Despite these multiple orders, Plaintiffs never produced any such corroborating evidence of a finalized agreement with Oron.com to resettle the case at $275,000, the very measure of damages found by the Arbitrator.  Such likely would have shown the true cause for such reduction, if any, and that would certainly implicate whether Randazza's alleged errors or omissions contributed to it in any meaningful way.   Additionally, no corroborating evidence of any funds delivered to Oron or any meaningful compliance with the alleged agreement was introduced.

Even the Plaintiffs never argued that the $75,000 negotiation was the reason they allegedly forfeited half of the $550,000 original settlement with Oron, tendering back $275,000.

Instead, they claimed that Randazza provided material assistance to a third party (Datatech Enterprises, LLC) bringing a separate claim against Oron, in violation of paragraph 10 of the original settlement agreement.[19] This is exceptionally ironic. Throughout the litigation, Plaintiffs, through their expert Dennis Kennedy, contended that the negotiation of this so-called bribe violated Nevada Rule of Professional Conduct 5.6(b). Rule 5.6(b) prohibits an attorney from negotiating a settlement that restricts his right to practice. Yet, the very settlement provision in paragraph 10, to the extent it precluded Randazza individually from facilitating the representation of others, would have violated Rule 5.6(b) and would have been unenforceable as against public policy. Oron could not have legitimately claimed that Randazza was precluded from assisting Datatech Enterprises and, thus, no malpractice or other breach could have been committed by Randazza by virtue of this assistance. Assuming, *arguendo*, that Liberty paid Oron the $275,000,[20] such was due to the malpractice of successor counsel in failing to contest Oron's claim pursuant to the interpretation of an unlawful contract term as applied. Randazza is not liable for the errors of his successors.

In addition, although Defendant contends that California law is generally applicable, the Oron litigation occurred in Nevada and thus, to the extent Plaintiffs suffered harm, it was occasioned by the resolution of a Nevada matter. The 10% interest rate awarded grossly exceeds the rates permitted by NRS 99.040(1) or NRS 17.130(2). Thus, the Interim Arbitration Award cannot be confirmed.

/ / /

---

[19] Paragraph 10 stated "Liberty will agree to dissuade others from bringing suit against Oron."

[20] As argued below, the payment lacks corroboration.

ii.    <u>Randazza Was Not Unjustly Enriched</u>

The Arbitrator orders payment to Respondents based on an unjust enrichment theory. Exhibit D at 23. It is ordered for two instances: (1) legal fees of $55,000 paid to Marc J. Randazza, P.A. d/b/a Randazza Legal Group as a result of the representation of an unrelated individual, Wayne Hoehn, and (2) monies received by Marc J. Randazza, P.A., in the amount of $5,000, from James Grady, relative to expenses in the Oron litigation.[21]  First, as noted by the Arbitrator, these amounts were not paid to Randazza personally, but rather to his non-party law firm.  That alone renders the award improper, and subject to vacatur, as exceeding his powers. *See Orion Shipping & Trading Co. v Eastern States Petroleum Corp.*, 312 F.2d 299, 301 (2d Cir. 1963) ("an action for confirmation is not the proper time for a District Court to 'pierce the corporate veil.'"), *cert den'd* 373 U.S. 949, 83 S Ct 1679 (1963).

Second, in order to establish a cause of action for unjust enrichment, Plaintiffs were required to establish: (1) that the defendant received money that was intended to be used for the benefit of the plaintiff, (2) that the money was not used for the benefit of the plaintiff, and (3) defendant has not given money to the plaintiff. *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51, 924 P.2d 996, 998 (Cal. 1996).  Pursuant to his contract, Randazza was permitted to represent third-parties through his non-party law firm.  Exhibit A at § 6(C).

Randazza successfully represented an individual named Wayne Hoehn against a company called Righthaven, arising from Mr. Hoehn's fair use of an article in the Las Vegas Review-Journal; Righthaven was found to lack standing. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1168 (9th Cir. 2013).  Subsequently, on June 6, 2013, Randazza Legal Group was awarded

---

[21] The Arbitrator erroneously states the $60,000 figure is for the Hoehn representation, but then only awarded $60,000 for both instances.  The Arbitrator earlier correctly identified the Hoehn amount as $55,000. Exhibit D at 18.

$55,000 "for its administrative expenses." *Righthaven, LLC, v. Hoehn*, C.A. No. 2:11-cv-00050 (D.Nev. Jun. 6, 2013). The Arbitrator made no evaluation of the basis on which that fee was awarded, neither was any record made. The public record, however, shows that of $34,045.50 awarded for the Hoehn matter alone. Randazza's time represented but 15.02 hours over a six month period, totaling $6,773.50. *See Righthaven v. Hoehn*, C.A. No. 2:11-cv-00050, Document 32-3 (D.Nev. Jul. 5, 2011) (timesheet). The <u>Hoehn</u> distribution also included $3,815 earned by Randazza Legal Group in the companion matter of *Righthaven v. Leon*, C.A. No. 2:10-cv-01627 (D.Nev. Jul. 5, 2011), none of which was based on Randazza's time (per ECF 42-3 May 3, 2011 in that matter). Finally, it included the $29,848.35 incurred in *Righthaven v. Wolf*, C.a. No. 1:11-cv-00830 (D.Colo.) of which Randazza's time was but 9.5 hours over a five month period (per ECF No. 59-3, Oct. 14, 2011). Thus, Randazza Legal Group received $55,000 for nearly $65,000 in bills, where Randazza spent less than 24 hours of his own time working on the matter, between January and October 2011. There was no evidence that Randazza, in working on average less than three hours per month in his personal time, did any of the work on the Righthaven matters during time when he should have been working for Excelsior. He did not receive funds for the time intended for the benefit of Excelsior.

Moreover, the legal fees earned in the <u>Hoehn</u> matter were not for the benefit of Excelsior, nor could they be. Were Randazza, through Marc J. Randazza, P.A., to deliver the legal fees to Excelsior, they would be in violation of California Rule of Professional Conduct 1-320 and Nevada Rule of Professional Conduct 5.4(a), prohibiting lawyers and firms from sharing fees with non-lawyers. Excelsior, as a for-profit corporation, does not meet the exception of Nevada Rule 5.4(a)(4). As a matter of fact and a matter of law, both of which were misapprehended by the Arbitrator, Excelsior is not entitled to the Hoehn fees. Thus, the Court cannot confirm the

award of $55,000 as unjust enrichment.

The Arbitrator also awarded as unjust enrichment $5,000 received by Randazza Legal Group from a Mr. James Grady. Exhibit D at 23. As found by the Arbitrator, Grady funded the Oron litigation in the amount of $5,000. *Id.* at 18. Plaintiffs offered no evidence, and thus the Arbitrator cannot have found, that those funds were not used for Excelsior's benefit. Instead, the Arbitrator merely asserted that Randazza's statement lacked corroboration. Exhibit D at 19. Yet, as set forth above, at no time did the Arbitrator require Plaintiffs to corroborate that Oron was paid $275,000. Such a double standard cannot be condoned.

Further, if Plaintiffs, over Defendant's objection, are permitted to introduce new evidence relating to the trust account and computer, Randazza should be permitted to supplement the record with documentation corroborating his disbursement of the $5,000 for the benefit of Liberty. Thus, there is no basis to confirm this portion of the award.

        iii.          Damages For Spoliation Or Conversion Are Not Warranted

The Arbitrator awarded Plaintiff(s) $3,215.98 in expert fees incurred, and he reserved his decision on damages for spoliation and/or conversion pending further evidence of data destruction. Exhibit D at 23-24. As noted above, this demonstrates the non-finality of the entire award, precluding confirmation. Notwithstanding the foregoing, there is no evidence of spoliation or conversion and the Arbitrator manifestly disregarded the law. In a conversion claim, a plaintiff must show (1) that the plaintiff owned and/or had a right to possess an item of personal property, (2) the defendant intentionally interfered with the plaintiff's right to possession, including by destroying or refusing to return the property, (3) the plaintiff did not consent, (4) the plaintiff was harmed, and 5) the defendant's conduct was a substantial factor in causing the harm. *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 50, 108 Cal. Rptr. 3d

455, 464-465 (Cal. App. 4th Dist. 2010) (conversion requires an "act of dominion" over personal property).[22] Here, there is no dispute that Randazza, in his final days as an employee, removed non-Excelsior materials and then securely erased data from his work-issued laptop. Having had the benefit of over 100,000 documents produced and the delivery of all of its files from Randazza, Plaintiffs identified not a single missing document or category of documents belonging to them. Their own experts even recovered 19,000 files transferred to the cloud storage system. Exhibit G at 987:7-15. They only speculate, and the Arbitrator adopts, that documents might have been taken. Exhibit D at 17. The Arbitrator knew that the identification of potentially missing documents was crucial to this claim, yet he ignored his own prior ruling on the subject. Exhibit P at 1. Absent an evidentiary foundation, the Arbitrator failed to perform his duties. Plaintiffs' expert fee was unnecessary, as their expert merely confirmed what everyone knew: Randazza securely wiped the data and there was nothing he needed to retrieve that was not otherwise given by Randazza to them freely. Further, as Randazza acknowledged, keeping non-Excelsior materials on the laptop and iPhone, delivery of that data to Excelsior could have violated Nevada Rule of Professional Conduct 1.6, as it could have resulted in the revelation of confidential non-party client information. To condemn Randazza for abiding the rules of professional conduct is manifest disregard of the law. Finally, the record is closed as to all issues but attorneys' fees; no further examination or evidence is permissible under the Arbitrator's scope.

---

[22] Neither Nevada nor California recognize a cause of action for spoliation and Excelsior did not make such a claim. *Timber Tech Engineered Bldg. Prods. v. Home Ins. Co.*, 118 Nev. 630, 633, 55 P.3d 952, 954 (2002). To the extent the expense constitutes a sanction under JAMS Employment Arbitration Rule 29, Randazza could not fairly have been said to not have complied with his obligations under the Rules or the Arbitrator's order where arbitration had not yet been initiated. *See* JAMS Employment Arbitration Rule 17(a) (duty to exchange information only accrues "after commencement of the Arbitration").

Moreover, the Arbitrator's ruling evidences a double-standard. In Footnote 8 of the Interim Arbitration Award, the Arbitrator set forth that he excused the deletion of certain text messages (the award erroneously calls them e-mails) by a Chaz Vorias. Exhibit D at 11, n. 8. These text messages allegedly showed Randazza's assent to the April 2012 pornographic filming in his office. Exhibit G at 958:11-22. At no time, not after the April 23, 2012 complaint to Gibson or in August 2012 at the direction of counsel at Littler, did Excelsior cause Vorias to preserve those text messages. *Id.* at 963:16-965:10. The Arbitrator excused Excelsior's failure to ensure its agent preserved the alleged text message by shifting the blame to Vorias. The failure of a company to preserve employee text messages constitutes spoliation. *Small v. Univ. Med. Ctr. of S. Nev.*, 2014 U.S. Dist. LEXIS 114406, *128 (D. Nev. Aug. 18, 2014). The irony is that, unlike Vorias's destruction of text messages, Excelsior offered no evidence to suggest that Randazza destroyed documents, only, as he conceded, that he moved them to his firm's cloud storage. The Arbitrator's double standard cannot be condoned. Thus, there is no justifiable basis to confirm this portion of the interim award.

iv.    <u>Disgorgement Of Wages Earned Is Impermissible</u>

The Arbitrator orders Randazza to disgorge $197,000.00 of his earnings from his employment with Excelsior. Exhibit D at 24. The Arbitrator states that it was for violations of fiduciary duty in his capacity as an attorney regarding his performance in the TNAFlix and MegaUpload litigation, representation of XVideos and/or XNXX, and "excessive, undisclosed, time" on other matters. *Id.* The disgorgement order is impermissible as a matter of law.

Rather than consider California law, the Arbitrator decided to adopt the rationale of a Texas Supreme Court case, *Burrow v. Arce*, 997 S.W.2d 229, 237-238 (Tex. 1999). The *Burrow* court relied on Proposed Restatement 3d of the Law Governing Lawyers, § 49 (Proposed Final

Draft No. 1, 1996), which stated "A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter." The actual adopted Restatement provision appears at section 37. Reporter's Comment E to Restatement 3d of the Law Governing Lawyers, § 37, specifically distinguishes in-house counsel, noting "[o]n nonforfeiture of the salary of a lawyer employee, see [cases cited]." Randazza was an employee, not outside counsel, rendering sec. 37 and *Burrow* entirely inapplicable. Such is consistent with the laws of California precluding disgorgement of wages, discussed below.

Additionally, in *Burrow*, the Texas Supreme Court determined that fee forfeiture may be appropriate where a lawyer is engaged in "clear and serious violation of duty." 997 S.W. 2d at 241. The Arbitrator made no determination that Randazza's alleged violations were either clear or serious; even assuming a violation, the Arbitrator could not have found it clear or serious where undisputedly qualified experts disagreed that a violation even occurred under California or Nevada law. First, with respect to spending time on non-Excelsior or Liberty matters, the Arbitrator did not ground such in fiduciary duties, but rather attended to the contractual provision regarding outside work. Exhibit D at 24. Specifically, the contractual provision, Section 6(C), required that Randazza's first duty of "temporal loyalty" lie with Excelsior. Exhibit A at § 6(C). In Footnote 16, the Arbitrator stated that "billed hours shown to be in excess of that permitted by that agreement." Exhibit D at 19. As to his "excessive, undisclosed, time", it appears that the Arbitrator made no findings as to how much time, if any, was taken away from Randazza's responsibilities to Excelsior. Nothing in the record showed a failure of Randazza to meet deadlines or any pre-termination concerns regarding time spent. The contract required Randazza to use non-working hours, vacation days, and unpaid leave time to work on outside projects. The

Arbitrator made no finding that Randazza did not perform third-party work under these

parameters. Although evidence was introduced of Randazza's non-Excelsior/Liberty time,

Randazza testified that he worked long hours. Exhibit G at 632:16-633:7. At no point was he

critiqued or disciplined for not spending enough time on Excelsior matters. *Id.* at 675:21-676:15.

Thus, the Arbitrator lacked evidentiary foundation to suggest Randazza's time on outside

projects was excessive, requiring disgorgement.

Second, with respect to concurrent representation of XVideos and/or XNXX, no evidence

was introduced of breach of fiduciary duty or that Excelsior suffered any harm. While working

for Excelsior, Randazza's third-party clients included XVideos and XNXX, sites that might

facilitate the streaming of online videos. The evidence at the hearing indicated, at most, that

Randazza determined that they were not appropriate litigation targets. *See* Exhibit G at 734:10-

737:11; e-mail communication from Randazza dated September 6, 2011, attached as Exhibit S.

At no point was any evidence introduced that Randazza's opinion was erroneous and, moreover,

subsequent to Randazza's departure, Plaintiffs have not brought suit against them. Exhibit G at

821:12-17. The policies and choice Randazza instituted relative to XVideos and DMCA notices

have not changed, with new counsel implicitly ratifying them. *Id.* at 837:15-838:21. Instead, it

appears that the relationship was mutually beneficial, with Liberty's content having priority for

DMCA takedowns. *Id.* at 628:20-629:6. With respect to the representation of XVideos and/or

XNXX,[23] the Arbitrator omitted any analysis of legal causation. Similar to his analysis of post-

termination breach of fiduciary duty, in which the Arbitrator found Excelsior had a right without

a remedy, the absence of legal causation bars a remedy. Thus, there is no factual basis for the

---

[23] As the Arbitrator did not actually make a finding as to whether Randazza represented XVideos, XNXX, or both, it is unknown how he determined that Randazza's representation of one or both of them at a particular time was adverse to Excelsior and a breach of fiduciary duty.

arbitrator to have concluded that the representation of XVideos and XNXX violated any of Randazza's fiduciary duties in any way that would warrant disgorgement.

Third, the Arbitrator found that Randazza's representation of Liberty on matters involving TNAFlix and MegaUpload breached fiduciary duties. Exhibit D at 24. In negotiating settlements with TNAFlix and MegaUpload, Randazza was offered so-called "bribes" to be conflicted out of future third-party representation, none of which was consummated. Randazza settled both of those matters for $50,000 and $600,000 respectively. Exhibit G at 731:17-732:3. In the MegaUpload matter, Randazza was offered a $5,000 "bribe." *Id.* at 749:17-750:6. In the TNAFlix matter, negotiating with Attorney Gurvits, Randazza was offered $5,000 and made a bluff demand of $30,000. E-mail from Randazza to Gurvits dated December 22, 2010, attached as Exhibit T; e-mail correspondence between Randazza and Gurvits dated December 30, 2011 to January 11, 2011, attached as Exhibit U. None of these negotiations bore fruit. Plaintiffs' expert claimed that these negotiations violated the Nevada and California rules of professional conduct precluding restrictions on the right to practice. These rules address an attorney's obligations to society at large, not a particular client, in order that any person can hire the services of any attorney of their choosing. Excelsior is only permitted to recover on a claim for breach of fiduciary duty where the fiduciary duty was owed specifically to Excelsior arising out of the attorney-client relationship. *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086-1087, 41 Cal. Rptr. 2d 768, 776 (Cal. App. 1st Dist. 1995). No evidence of harm resulting from either negotiation was introduced, and Liberty benefitted from the TNAFlix negotiation where Randazza subsequently appeared credible to Gurvits in the Oron litigation. Even absent harm, there is no evidence that Randazza breached his fiduciary duties to Excelsior or Liberty. Thus, absent an actual breach of duty, causation, or harm, the Arbitrator had no basis in fact or law to

order disgorgement.

Not only is Randazza not subject to penalty as he did not violate any fiduciary duties, the supposed remedies of forfeiture and disgorgement violate California law. Both Section 37 of the Restatement and *Burrow* speak to forfeiture of the right to collect fees, rather than disgorgement of fees collected. No case law has been provided where the attorney was required to disgorge; the only precedent is a statement in dicta that disgorgement may be appropriate. *See Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). Even in *Burrow*, no individual attorney was required to return his or her salary.

Moreover, the Ninth Circuit did not analyze California wage law on the question. None of the cases address the salary of in-house counsel as a fee to be disgorged. None properly could. California Labor Code, Section 221, states that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Thus, even if outside counsel might be subject to a disgorgement order, in-house counsel, as an employee protected by the wage laws, is not. Randazza is entitled to retain his salary and bonuses previously paid under California law, and the Arbitrator's Interim Arbitration Award is in manifest disregard of the law. For Excelsior to seek enforcement thereof would constitute a new violation of those laws. Thus, the Interim Arbitration Award cannot be confirmed.

Finally, the Arbitrator did not consider any of the specific factors to determine the extent of forfeiture. With the exception of the few matters at issue in the arbitration, Defendant's service to Excelsior has not been questioned. The Arbitrator gives no indication at how he arrived at the $197,000.00 figure and it does not appear to correlate with any of Plaintiffs' specific requests for disgorgement. Such analysis is required by *Burrow*:

> It would be inequitable for an agent who had performed extensive services faithfully to be denied all compensation for some slight, inadvertent misconduct that left the principal unharmed, and the threat of so drastic a result would unnecessarily and perhaps detrimentally burden the agent's exercise of judgment in conducting the principal's affairs . . . . In determining whether and to what extent forfeiture is appropriate, relevant considerations include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.

*Burrow v. Arce*, 997 S.W.2d 229, 241 (Tex. 1999). For that reason alone, the Interim Arbitration Award cannot be confirmed.

The Arbitrator impermissibly instituted punitive damages, even in the absence of liability. The Arbitrator specifically ordered disgorgement to act "as a deterrent and disincentive for an attorney or other agent to breach of fiduciary duty." Exhibit D at 20, n. 18. The disgorgement was thus not compensatory. Absent a showing of actual harm, there is no tort, thus punitive damages cannot be awarded. *Jackson v. Johnson*, 5 Cal. App. 4th 1350, 1354-55, 7 Cal.Rptr.2d 482 (Cal. App. 2d Dist. 1992). Moreover, to the extent the duties arose independently of the contract, Plaintiffs were required to show, by clear and convincing evidence, oppression, fraud or malice. Cal. Civ. Code § 3294(a) (2015). The Arbitrator made no such findings. California does not permit the disgorgement order where (a) there was no precedent for attorney fee disgorgement; (b) there was no breach of fiduciary duty, causation, or harm; (c) wage laws prohibit in-house counsel from disgorging earnings; and (d) there was no actual harm or oppression, fraud, or malice warranting such punitive damages. In sum, the disgorgement order was issued in manifest disregard of the facts and the law, in violation of the Arbitrator's duties.

///

v.    <u>Remittance Of Trust Funds Is Improper</u>

As previously discussed, a non-party law firm, Marc J. Randazza P.A. d/b/a Randazza Legal Group represented Liberty in litigation. Funds were placed in the law firm's client funds trust account relative to expenses and recoveries in litigation. The Arbitrator orders Randazza to deliver to Plaintiffs certain funds held in this trust account and pay 10% interest thereon, specifically, "all Oron related funds[24] and, further, an additional $30,000 of non-Oron-related client funds." Exhibit D at 24-25. Such is improper for several reasons, in disregard of the law, and in excess of the Arbitrator's authority.

As set forth in the disbursement breakdown, of the original $550,000.00 Oron settlement received, Randazza was owed his 25% commission of $137,500.00, plus an additional $25,000.00 for the loan. Exhibit I. As counsel, Randazza Legal Group was also required to disburse $31,800.00 in litigation costs to third parties. *Id.* Additionally, Liberty owed Randazza Legal Group $21,279.50 for the services of professionals other than Randazza in the Oron litigation.[25] *Id.* Finally, Liberty owed Randazza Legal Group $2,601.00 for non-Oron matters. Remittance of these funds is impermissible.

First, to the extent such funds represent wages owed to Randazza, as set forth above, tender would be impermissible. Disgorgement of wages earned is impermissible under the law. Second, also as noted, the funds are not in a personal trust account, but rather with the non-party law firm; the Arbitrator lacks the authority to issue such an order as there has been no proper

---

[24] Plaintiffs claim that it was $275,000.

[25] Judge Navarro determined that the actual value of Randazza Legal Group's services, including Randazza's, was $131,797.50. *Liberty Media Holdings, LLC v. FF Magnat Ltd.*, Case No. 2:12-cv-01057 (D.Nev. Sept. 4, 2012). Subtracting out Randazza's labors, for which compensation is due under the employment contract, Randazza Legal Group is actually entitled to $81,433.98.

- 49 -

finding that the firm is Randazza's alter ego. Instead, these funds are subject to pending

litigation in the State Court Action, *Marc J. Randazza, P.A. v. Liberty Media Holdings, LLC*,

Case No. A-12-673275-C. Thus, the trust account was never properly before the arbitrator.

Third, the 10% interest is excessive under Nevada law, as previously noted. Moreover,

the Arbitrator's requirement of interest conflicts with Nevada Rule of Professional Conduct 1.15,

which does not require that funds held in trust be placed in an interest bearing account. The

Arbitrator manifestly disregarded this rule, resulting in an improper penalty to Randazza for his

firm's compliance with the rule. Certainly, if there was interest earned and the principal was

owed Plaintiffs, then they would be entitled to the interest earned, but an award of prejudgment

interest on disputed funds places a burden on law firms and lawyers that the rules of conduct do

not require. *See Lopez v. Corral*, 2010 Nev. LEXIS 69, *17-18 (Nev. Dec. 20, 2010) ("an

attorney who holds disputed funds in his trust account pending resolution of the dispute does not

convert those funds as a matter of law"). Thus, there is no basis at law for the award of interest.

Fourth, there is no basis in fact for the claim for an additional $30,000. Although

Plaintiffs claim it, there is no evidentiary basis. Instead, the only record was testimony from

Gibson that Randazza Legal Group may have received some settlement funds, which he admitted

was without any actual knowledge of such on his part. Exhibit G at 773:9-774:3. The Arbitrator

had no facts in evidence that would permit such an award.

> vi.    No Audit Of Randazza Legal Group's Trust Account Is
>        Permissible

Continuing his impermissible actions relative to the non-party law firm's client funds

trust account, the Arbitrator orders an accounting of that trust account. Exhibit D at 25. This

cannot be subject to confirmation. First, as previously noted, the record is closed. Plaintiffs did

not seek to keep the record open and this was a matter that could have been resolved during the

discovery phase.  Second, the Arbitrator gives no purpose to such accounting as relates to the

rights of Plaintiffs.  In fact, Excelsior never requested an accounting as part of its counterclaim.

Excelsior's Answer and Counterclaim, attached as Exhibit V.  Thus, it exceeds the Arbitrator's

powers to order an accounting.  Third, again exceeding the Arbitrator's authority, it interposes an

obligation on one or both non-party law firms, which are not parties to the arbitration, and thus

beyond the Arbitrator's powers.  And fourth, an audit of the account would necessarily reveal the

identities of other clients of the non-party law firms, revealing the fact of representation, which

may be confidential, and disclosing monies that may be subject to confidentiality agreements or

otherwise reveal client financial arrangements.  Such would result in a gross violation of

California Rule of Professional Conduct 3-100 and Nevada Rule of Professional Conduct 1.6.

Finally, a "claim for accounting must be tethered to relevant actionable claims." *Simon v. Bank

of Am., N.A.*, 2010 U.S. Dist. LEXIS 63480, *30, 2010 WL 2609436, at *11 (D. Nev. June 23,

2010) (internal citation omitted).  As there is no other actionable claim, no accounting is

warranted.  As a result, given the Arbitrator's manifest disregard of facts and law, in excess of

his authority, no accounting is warranted and the Interim Arbitration Award cannot be

confirmed.

vii.    Randazza Cannot Return A Non-Existent Laptop

As previously argued in his Opposition to Plaintiffs' Request for an Order Shortening Time

and Motion for Continuance, incorporated herein by reference, Section 6 of the Interim

Arbitration Award is meaningless.  Exhibit D at 25.  It requires Randazza to return an

unidentified laptop computer that likely does not exist.  There is no manufacturer, model, serial

number, or MAC address entered into evidence or referenced by the Arbitrator that would permit

Randazza to identify the computer and comply.  Plaintiffs presented no evidence in the record

that would identify such computer, when they simply could have testified to issuing computers X & Y and only receiving back computer X. The only mention in the record is where Gibson states that he is seeking the return of a "second company laptop that Mr. Randazza testified he had, and has not returned to the company." Exhibit G at 772:16-19. Nothing in Randazza's testimony mentioned simultaneously having two company issued laptops, only that over the course of his employment, two had been issued; at the time of termination, there was only the MacBook Air. *Id.* at 197: 15-22. Moreover, Plaintiffs did not even make a claim for the return of a computer in their counterclaim. Exhibit V. Absent any claim, let alone evidence, the Interim Arbitration Award is unreasonable and unenforceable. It exceeded the Arbitrator's authority and is in manifest disregard of the facts. The issue of an alleged second laptop should have been addressed in discovery; the record is closed and there is no meaningful purpose to this section of the award. There is no cause for any further inspection of the non-existent, unidentified computer, as required by Section 7 of the Interim Arbitration Award. Thus, the Interim Arbitration Award must be vacated.

viii.    <u>Gibson Is A Proper Party</u>

Finally, [26] Gibson should not be dismissed, per Section 9 of the Interim Arbitration Award. Exhibit D at 26. First, as discussed above, the Arbitrator failed to perform a meaningful alter ego analysis and expressly and unfairly deprived Defendant of the opportunity to present evidence on this question. His own prior order deferred the question and evidence thereon, and the ruling is therefore capricious and contradictory. Second, and related thereto, upon vacatur

---

[26] Defendant takes no issue with the order in Section 8 that the parties are free to each apply for attorneys' fees and costs, reserving the right to challenge any such application by Plaintiffs.

and remand to a different arbitrator, it is expected the evidence will show Gibson liable as an

alter ego of Excelsior.  Thus, the Interim Arbitration Award cannot be confirmed.

**D.  Interim Awards are Not Otherwise Subject to Confirmation**

1.  The Interim Award Was Replete With Bias

It is evident throughout the Interim Arbitration Award that the Arbitrator disfavored

Defendant and resolved all factual and credibility disputes, as well as conflicting expert opinions,

against him.  In doing so, the Arbitrator demonstrated his bias, failing to draw logical

conclusions and placing Randazza in catch-22 situations.  There are several instances that

highlight these problems.

a.  *Physical Position Is Not An Indicium Of Credibility When The Arbitrator Directed Such Position*

Relegating the credibility determination to Footnote 4 of the Interim Arbitration Award,

the Arbitrator determined Randazza lacked credibility based upon his physical position.  Exhibit

D at 6-7, n. 4.  Randazza was the only witness who was told prior to his testimony where to face,

for no other reason than to ensure the court reporter and the Arbitrator properly heard him.

Exhibit G at 10:16-11:22.  At the hearing, the Arbitrator instructed Randazza as follows:

> ARBITRATOR HABERFELD: I would just ask, Mr. Randazza, if you could, as much
> as you can, although the questions will be coming from Mr. White, who is to your right,
> and I am to your left, and the court reporter is across from you, to please try to be as
> much giving your testimony to me and to the court reporter, rather than looking to Mr.
> White, which would be making it difficult to read your lips and to hear you better.

*Id.* at 11:10-19.  Yet, in the Interim Arbitration Award, the Arbitrator commented negatively on

this middle-distance position, for Randazza's near perfect obedience "leaning well forward and

looking down or straight ahead into 'middle distance' in the direction of the wall behind where

the Arbitrator was seated."  Exhibit D at 6-7, n. 4.  He further criticized Randazza for not

maintaining "eye contact with either the questioning attorney or the Arbitrator" even though the

Arbitrator had instructed him not to even make eye contact with his own counsel and to face the middle distance between the court reporter and the Arbitrator. *Id.*

There was no similar colloquy before any other witness testified. *See, e.g.,* Exhibit G at 658-659 (testimony of Jason Gibson). The record does not indicate anywhere that Randazza deviated from the physical position the Arbitrator required; the Arbitrator's findings do not even indicate that his position during cross-examination differed from that during direct examination. Exhibit D at 6-7, n. 4; Exhibit C. It is patently unfair of the Arbitrator to make a credibility assessment adverse to Randazza based on him having followed the Arbitrator's explicit instruction.[27] And, it appears that the positioning colored the Arbitrator's entire decision, requiring vacatur and remand for a new hearing before a different Arbitrator.

b.  *The Arbitrator Expressly Bifurcated The Question Of Alter-Ego Liability But Disregarded His Own Order*

The Arbitrator, again by footnote, dismissed Gibson as a party, finding that Defendant had failed to show Gibson was an alter ego of either Excelsior or Liberty, and determined that neither Excelsior nor Liberty were alter egos of anybody or entity. Exhibit D at 2, n. 1. Randazza had specifically sought declaratory relief in Count 8 of his Amended Arbitration claim that Excelsior, Liberty, and Gibson were alter egos of each other, to be held jointly and severally liable. Exhibit L at 34-37. Presumably, the footnote ruling suggests that they were not found to be alter egos of each other, denying Claim 8. The Arbitrator omits from this footnote and the remainder of the Interim Arbitration Award any reference to his earlier ruling of January 8, 2014.

---

[27] Moreover, in raising the position of Randazza in their post-hearing brief, Plaintiffs improperly dropped a footnote relaying a supposed incident where chewing gum may have appeared on the car of Plaintiffs' counsel, without any actual evidence that Randazza was actually the cause and without relevance to the proceedings themselves. This may have prejudiced the entire decision making process, warranting vacatur.

In that ruling, the Arbitrator states that Randazza's "'alter ego' contentions will be segmented from [his] claims for liability and damages and will be deferred to a later phase of the arbitration or will become moot." Exhibit W at 1. This order precluded even the taking of discovery from Gibson and the entities that would tend to have shown alter-ego status. Without notice to Defendant, the Arbitrator disregarded this order, effectively pretending it did not exist. Defendant lacked opportunity to take discovery or present evidence on the question of alter ego. This issue was adjudicated adversely to Defendant even where the remainder of the decision rendered the question moot. The issue was not bifurcated, per the Arbitrator's own order. And the Arbitrator failed to undertake any actual analysis or application of the facts to the law.

Curiously, despite this ruling, the Arbitrator treats Plaintiffs as alter egos of each other. In that very same footnote, and throughout the interim award, the Arbitrator opts to treat Excelsior and Liberty interchangeably. In fact, at p. 23, paragraph 2, the Arbitrator issues a monetary award to all Plaintiffs, including Gibson,[28] jointly. Exhibit D. If they are not alter egos and proper parties, then the only party entitled to any award would be Excelsior, being the only party to assert a counterclaim. In fact, if they are not alter egos, the other Plaintiffs could not have asserted counterclaims as they were then not parties to the arbitration agreement. Similarly, since of the three Plaintiffs only Liberty was the client in the Oron litigation, and since Liberty was the only of the three Plaintiffs to allegedly disgorge the $275,000, only Liberty has standing to assert these alleged damages.

Further, there was no evidence to suggest that Excelsior had standing to bring a claim for malpractice on behalf of Liberty. Similarly, the Arbitrator requires disgorgement of disputed

---

[28] Gibson cannot be entitled to enforce a monetary award in his favor where he was dismissed as a "party," not merely as Respondent, depriving him of standing.

funds relative to the representation of Liberty held in trust, otherwise the subject of the State

Court Action.  Plaintiffs cannot have it both ways—they are either alter egos or the award is

void; and the Arbitrator acted with manifest disregard of the law and facts to let Plaintiffs have it

both ways.

Further, without even being presented the issue for adjudication, the Arbitrator in his

interim award, at paragraphs 2, 4, & 5, implicitly treated non-parties Marc J. Randazza, P.A.

d/b/a Randazza Legal Group and  Randazza Legal Group, PLLC, as Randazza's alter egos.  As

noted above, Marc J. Randazza, P.A. d/b/a Randazza Legal Group, a Florida entity, was the

outside law firm representing Liberty and other clients.  Randazza Legal Group, PLLC, did not

begin operations until after Randazza's termination.  The cited paragraphs of the Interim

Arbitration Award appear to require one or both of these non-party law firms to disgorge legal

fees for work performed in part by other lawyers, disgorge funds held in trust and certain

disputed funds to Plaintiffs, and require one or both of their trust accounts to be audited.  The

Arbitrator manifestly disregarded the portions of the record indicating that all litigation was

conducted through the non-party law firm, Marc J. Randazza, P.A.  Exhibit G at 55:11-24.  At no

time was evidence, let alone the question, presented to the Arbitrator as to whether the law firms

were Defendant's alter ego and the Arbitrator performed no analysis of the matter.  Thus, not

only did the Arbitrator blatantly disregard his prior ruling relative to the alter ego status of

Plaintiffs, he opted to doubly surprise Defendant by *sua sponte* determining Defendant and his

law firms were alter egos in the Interim Arbitration Award.  This further evidences the

Arbitrator's determination to construct an award adverse to Randazza, in an arbitrary fashion,

without regard for facts or law.

/ / /

c. *Errors Of Counsel Were Misattributed To Defendant*

In retaliation for Randazza having filed his arbitration claims, Gibson filed bar complaints against him in each of the five jurisdictions in which he was admitted. To properly preserve his sexual harassment claim, Randazza filed a complaint with the Nevada Equal Rights Commission & Equal Employment Opportunities Commission. Exhibit X. Randazza had different attorneys in these differing proceedings. The Arbitrator noted that Randazza's varying counsel made factual errors, where one or more attorneys appear to have not yet located or overlooked evidence. Exhibit D at 6, n. 4, 17-18. This matter included over 100,000 documents exchanged as part of discovery. Exhibit G at 801:14-18.[29] Given the volume of pleadings and documents at issue, mistakes of counsel are bound to happen. However, for unknown reasons, the Arbitrator attributed these errors to Randazza personally, and then he drew adverse credibility findings against Randazza for the errors of counsel. Exhibit D at 6, n. 4, 17-18. Such constitutes guilt by association, "one of the most odious institutions of history." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 178 (U.S. 1951). And yet, this guilt by association was a significant factor in the credibility determination and must not be condoned.

d. *The Arbitrator Cannot Make An Adverse Credibility Finding Based On An Issue He Opted Not To Decide*

As noted above, due to the office-desk pornography and back-seat fellatio incidents in which Randazza was targeted, separate and apart from the explicit nature of the industry, a sexual harassment and retaliatory termination claim was filed with the Nevada Equal Rights Commission and EEOC and made part of Randazza's arbitration claims. Exhibit X. Plaintiffs

---

[29] There has been no finding that the documents produced were not properly responsive to the Plaintiffs' discovery requests or otherwise excessive. Plaintiffs' overbroad discovery requests necessitated Defendant's comprehensive response.

denied the occurrence of the fellatio incident and denied that these events actually upset Randazza. The Arbitrator found, ultimately (and erroneously), that Randazza resigned, thus he explicitly held that he was not resolving a conflict of evidence as to how or whether the incidents occurred and their effect on Randazza. Exhibit D at 5. Even though the Arbitrator expressly stated that the sexual incidents were not being decided, he somehow held this against Randazza. At page 6, paragraph F, the Arbitrator states that the failure of Randazza to prove his sexually-based allegations and reactions to them undermined his credibility. *Id.* However, it was not the case that Randazza did not prove them; instead, the Arbitrator decided that no proof was required. To summarize the Arbitrator's circular reasoning: he chose not to make a credibility determination, because he credited Plaintiffs' theory as to cause of separation, resulting in Randazza not being credible, which is why he found Plaintiffs' theory credible. Such demonstrates clear bias and the absolute failure of the Arbitrator to execute his duties.

**V.    Conclusion**

The motion to confirm Plaintiffs' arbitration award is not properly before the Court as it is in the wrong jurisdiction and venue. Further, in light of the foregoing, given the evident bias, manifest disregard for the facts and the law, and exceeding his contractual powers, the Arbitrator's Interim Arbitration Award cannot be confirmed. To the contrary, it must be vacated and remanded to a different arbitrator.

DATED this 7th day of August, 2015.

HUTCHISON & STEFFEN, LLC

Mark A. Hutchison (4639)
Michael K. Wall (2098)
Timothy R. Koval (12014)

*Attorneys for Defendant*
*Marc J. Randazza*

**CERTIFICATE OF SERVICE**

Pursuant to NRCP 5(b), I certify that I am an employee of HUTCHISON & STEFFEN, LLC and that on this 7½ day of August, 2015, I caused the above and foregoing document entitled **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO CONFIRM ARBITRATION AWARD AND COUNTER-MOTION TO VACATE AND/OR MODIFY** to be served as follows:

☐         by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada;

☐         pursuant to EDCR 7.26, to be sent via facsimile;

☒         pursuant to EDCR 8.05(a) and 8.05(f), to be electronically served through the Eighth Judicial District Court's electronic filing system, with the date and time of the electronic service substituted for the date and place of deposit in the mail; and/or

☐         to be hand-delivered;

to the attorneys and/or parties listed below at the address and/or facsimile number indicated below:

Wendy Medura Krincek, Esq.
Ethan D. Thomas, Esq.
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway, Ste. 300
Las Vegas, NV 89169-5937
702-862-8800 (Tel)
702-862-8811 (Fax)

*Attorneys for Plaintiffs*

An Employee of Hutchison & Steffen, LLC