# EXHIBIT "2"

Electronically Filed
08/24/2015 04:57:51 PM

1  **RPLY**
   WENDY MEDURA KRINCEK, ESQ., Bar # 6417
2  ETHAN D. THOMAS, ESQ., Bar # 12847
   LITTLER MENDELSON, P.C.
3  3960 Howard Hughes Parkway
   Suite 300
4  Las Vegas, NV  89169-5937
   Telephone:   702.862.8800
5  Fax No.:      702.862.8811

6  Attorneys for Plaintiffs

7

8                          **DISTRICT COURT**

9                    **CLARK COUNTY, NEVADA**

10

11

12 EXCELSIOR MEDIA CORP., a Nevada
   Corp.; LIBERTY MEDIA HOLDINGS,
13 LLC, a California limited liability            Case No. A-15-719901-C
   company; and JASON GIBSON,
14 individually,                                  Dept. No. XXIV

15               Plaintiff,                       **PLAINTIFFS' REPLY IN SUPPORT OF
                                                 THEIR MOTION TO CONFIRM
16 vs.                                            ARBITRATION AWARD AND
                                                 OPPOSITION TO DEFENDANT'S
17 MARC J. RANDAZZA,                              COUNTERMOTION TO VACATE AND/OR
                                                 MODIFY**
18               Defendant.

19

20         Plaintiffs  Excelsior  Media  Corp.  ("Excelsior"),  Liberty  Media  Holdings,  LLC

21 ("Liberty"), and Jason Gibson, file this reply in support of their Motion to Confirm Arbitration

22 Award and oppose Defendant's Countermotion to Vacate and/or Modify.

23                   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

24    **I.      INTRODUCTION**

25         On  June  3,  2015,  the  Hon.  Stephen  E.  Haberfeld  (Ret.)  rendered  an  Interim

26 Arbitration  Award  in  favor  of  Plaintiffs  and  against  Defendant  Marc  J.  Randazza

27 ("Randazza")  in  a  binding  arbitration  proceeding.   The  Interim  Arbitration  Award  resolved

28 liability  as  to  all  claims  and  counterclaims  and  awarded  significant  damages  to  Plaintiffs.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

1   The Interim Arbitration Award (hereinafter "IAA") was previously attached as **Exhibit 1 to**
2   **Plaintiffs Motion to Confirm Arbitration Award**.  As has been highlighted in previously
3   briefing before the Court, since the IAA was issued, Randazza has failed to comply with
4   several provision of the award and has done all he can do to attempt to undermine Plaintiffs
5   rights pursuant to it.

6         Now, Randazza files the instant Opposition to Plaintiffs Motion to Confirm and
7   Countermotion to Vacate and/or Modify the IAA.  Because Randazza lacks clear and
8   convincing evidence of any ground to vacate or modify the award pursuant to federal and
9   state statutes or the common law, Randazza instead spends 58-pages attempting to
10  relitigate the entire three-year arbitration, primarily by presenting one-sided and at times
11  misrepresented evidence.  Randazza's Counter-Motion to Vacate and Modify should be
12  seen for what it is—a desperate "Hail Mary" in hopes to avoid confirmation of the IAA.
13  Therefore, Plaintiffs now seek entry of an order confirming this arbitration award pursuant
14  to NRS 38.239.

15  II.    **STANDARD OF REVIEW**

16        **A. Standard For Vacating An Arbitration Award**

17        Nevada recognizes both statutory and common-law grounds for challenging an
18  arbitration award.  However, "the scope of judicial review of an arbitration award is limited
19  and is nothing like the scope of an appellate court's review of a trial court's decision."
20  *Health Plan of Nevada, Inc. v. Rainbow Medical, LLC*, 120 Nev. 689, 695, 100 P.3d 172,
21  176 (Nev. 2004).  Upon motion, a court may only vacate an arbitration award if the party
22  seeking that the award be vacated is able to establish one of the following circumstances:

23        (a) The award was procured by corruption, fraud or other undue means;
24        (b) There was:
              (1) Evident partiality by an arbitrator appointed as a neutral arbitrator;
              (2) Corruption by an arbitrator; or
25            (3) Misconduct by an arbitrator prejudicing the rights of a party to the
              arbitral proceeding;
26            …

27        (d) An arbitrator exceeded his or her powers;
28            …

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

2.

1     NRS § 38.241.[1]

2     *Evident Partiality By An Arbitrator*

3        "Claims of evident partiality fall into two categories: (1) actual bias and (2)

4 nondisclosure of information." *Thomas v. City of N. Las Vegas*, 122 Nev. 82, 98, 127 P.3d

5 1057, 1068 (Nev. 2006). Randazza does not allege any nondisclosure of information by

6 the Arbitrator. Randazza does allege the arbitrator was biased. The integrity of the

7 arbitrator's decision is directly at issue in actual bias cases. *Woods v. Saturn Distribution*

8 *Corp.*, 78 F.3d 424, 427 (9th Cir. 1996). The appearance of impropriety alone is insufficient

9 to establish evident partiality in actual bias cases. *Id.* The party claiming partiality must

10 prove actual bias by establishing "**specific facts which indicate improper motives**." *Id.*

11 (emphasis added).

12     *Misconduct By An Arbitrator*

13        While misconduct is a basis to vacate an award, "the statute does not allow an

14 arbitration award to be vacated solely on the basis of error of law or interpretation," instead,

15 it "requires something more, such as misconduct pertaining to the proceedings on the part

16 of the arbitrators or the parties." *Robbins v. Day*, 954 F.2d 679, 683 (11th Cir. 1992). In

17 order to vacate an arbitration award on the ground of arbitrator misconduct, "[t]he

18 misconduct must amount to a denial of fundamental fairness of the arbitration

19 proceeding...." *Roche v. Local 32B-32J Serv. Employees Int'l Union*, 755 F. Supp. 622,

20

---

21

22 [1] The standard to vacate under the Federal Arbitration Act is substantially similar:

      (1) where the award was procured by corruption, fraud, or undue means;

23       (2) where there was evident partiality or corruption in the arbitrators, or either of them;

24       (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any

25       party have been prejudiced; or

26       (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

27 9 U.S.C. § 10. Randazza incorrectly alleges the Federal Arbitration Act does not cover contracts of

28 employment. *See e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001).

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89159-5937
702 862 8800

1   624 (S.D.N.Y. 1991). "A hearing is fundamentally fair if it meets 'the minimal requirements

2   of fairness'-adequate notice, a hearing on the evidence, and an impartial decision by the

3   arbitrator. *Sunshine Min. Co. v. United Steelworkers of Am.,* AFL-CIO, CLC, 823 F.2d

4   1289, 1295 (9th Cir. 1987). Randazza does not appear to be arguing for vacatur on the

5   basis of misconduct and there is no evidence presented in his motion to vacate that would

6   support such an allegation.

7          *Exceeding of Powers By An Arbitrator*

8          Exceeding of powers by an arbitrator is also a basis to set aside an arbitration order

9   under NRS 38.241. That basis is also exceedingly limited. Courts must "presume that

10  arbitrators are acting within the scope of their authority." *Health Plan of Nevada, Inc.*, 120

11  Nev. at 697. The only basis in which an Arbitrator exceeds his powers is "when they

12  address issues or make awards outside the scope of the governing contract." *Id.* The

13  Nevada Supreme Court has held that "[a]llegations that the arbitrator misinterpreted the

14  agreement or made factual or legal errors do not support vacating an award as being in

15  excess of the arbitrator's powers." Indeed, review under excess authority grounds "is

16  limited and only granted in very unusual circumstances." *Id.*

17         *Common Law Grounds*

18         In addition to the limited statutory grounds, Nevada also recognizes two limited

19  common-law grounds under which a party may challenge an arbitration award: "(1) the

20  award is arbitrary, capricious, or unsupported by the arbitration agreement; or (2) the

21  arbitrator manifestly disregarded the law." *Clark Cnty. Educ. Ass'n v. Clark Cnty. School

22  District*, 122 Nev. 337, 339 131 P.3d 5, 7 (Nev. 2006). Under the first ground, "the

23  reviewing court may only concern itself with the arbitrator's findings and whether they are

24  supported by substantial evidence or whether the subject matter of the arbitration is within

25  the arbitration agreement." *Id.* The arbitrary-and-capricious standard does not allow a

26  reviewing court to vacate an arbitrator's award based on misinterpretation of the law. *Id.* at

27  343-344. The review is limited to whether the arbitrator's findings are supported by

28  substantial evidence in the record. *Id.*

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

4.

According to the Nevada Supreme Court, this common-law judicial inquiry into whether an arbitrator manifestly disregarded the law is "narrow" and "extremely limited." *Bohlmann v. Byron John Printz & Ash, Inc.*, 120 Nev. 543, 547, 96 P.3d 1155, 1158 (Nev. 2004). "[T]he reviewing court may only concern itself with whether the arbitrator knew of the law and, if so, consciously disregarded it, not whether the private arbitrator's interpretation of the law was correct." *Clark Cnty. Educ. Ass'n v. Clark Cnty. School District*, 122 Nev. at 337, 343-44, 131 P.3d at 7.

> "A 'reviewing court should not concern itself with the 'correctness' of an arbitration award" and thus does not review the merits of the dispute. In other words, the issue is not whether the arbitrator correctly interpreted the law, but whether the arbitrator, knowing the law and recognizing that the law required a particular result, simply disregarded the law."

*Bohlmann*, 120 Nev at 547, 96 P.3d at 1158. Neither common law standard permits a reviewing court to consider the arbitrator's interpretation of the law. *Clark Cnty. Educ. Ass'n v. Clark Cnty. School District*, 122 Nev. at 337, 342, 131 P.3d at 9.

Regardless of whether the award is being challenged under statutory or common-law grounds, the party seeking to attack the validity of the arbitration award has the burden of proving the required ground relied upon by ***clear and convincing evidence***. *Health Plan of Nevada, Inc.*, 120 Nev. at 695. "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). Indeed, "courts should defer to the arbitrator's resolution of the dispute whenever possible." *Robbins*, 954 F.2d at 682.

While Randazza's Opposition and Counter Motion makes vague references to the grounds of evident partiality, misconduct, exceeding powers, manifest disregard for the law, and that it is arbitrary or capricious, it lacks specific evidence or analysis which demonstrates that any of these grounds existed—let alone clear and convincing evidence.

### B. Standard for Modifying An Arbitration Award

Nevada law permits a court to modify or correct an award if:

(a) There was an evident mathematical miscalculation or an evident mistake in the description of a person, thing or property referred to in the award;

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

(b) The arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or

(c) The award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.

NRS § 38.242.[2] Courts considering "evident mathematical miscalculation under the Uniform Arbitration Act define it as clear mathematical error." *Manor Health Care Ctr., Inc. v. Monsour*, No. 52796, 2010 WL 3341726, at *1 (Nev. June 23, 2010)(citing *North Blvd. Plaza v. North Blvd. Associates,* 136 N.C.App. 743, 526 S.E.2d 203, 205 (N.C.Ct.App.2000). "A mathematical miscalculation of figures is one that occurs under an agreed to standard or principle, but is not a disagreement about the standard itself." *Id.* (citing *Dadak v. Commerce Ins. Co.,* 53 Mass.App.Ct. 302, 758 N.E.2d 1083, 1085 (Mass.App.Ct.2001)).   Modification may also be appropriate when the Arbitrator decides "an issue that was neither grieved nor submitted by the parties." *In re Arbitration between Int'l Bhd. of Elec. Workers A.F.L. & C.L.C. & its Local 1593 & Dakota Gasification Co.,* 362 F. Supp. 2d 1135, 1140 (D.N.D. 2005); *See* NRS § 38.242.

## III.    ARGUMENT

### A. Nevada is the Proper Venue to Hear the Instant Action

Randazza preliminarily argues that Plaintiffs violated the Employment Agreement between Randazza and Excelsior by filing the instant action to confirm the IAA in Clark County, Nevada, as opposed to San Diego County, California.  Randazza contends San Diego County is the proper venue for this action because Section 9 Paragraph E, a "governing law" provision in the Employment Agreement, notes that any action to enforce an arbitrator's award "will be venued in San Diego County, California, unless otherwise agreed to by the parties." **Exhibit 3 to Plaintiffs Motion to Confirm Arbitration Award.** The reason the Employment Agreement specified San Diego County, California is because when the employment relationship began Plaintiffs resided and/or were headquartered in San Diego.   Randazza himself relocated to San Diego soon after the agreement was

---

[2] The Federal Arbitration Act Standard is almost identical.   *See* Randazza's Opposition and Counter-Motion at 16:12-18.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1    entered into. Nonetheless, in 2011, all of the parties relocated to Las Vegas and continue

2    to reside in Las Vegas.[3]

3          What Randazza's argument ignores is that the actual arbitration provision set forth in

4    Section 8 of the Employment Agreement, states that "[j]udgment on any Award made by

5    the arbitrator may be entered in any court having jurisdiction." *Id.* Thus, the binding

6    arbitration provision does not require that this action seeking a confirmation and judgment

7    of the arbitration be venued in San Diego.

8          Further, JAMS Employment Arbitration Rules & Procedures likewise state:

9          Proceedings to enforce, confirm, modify or vacate an Award will be controlled
10          by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec
      1, *et seq.,* or applicable state law. The Parties to an Arbitration under these
11          Rules shall be deemed to have consented that <u>judgment upon the Award may
      be entered in any court having jurisdiction thereof.</u>

12    Notably, Randazza does not dispute that the instant court has jurisdiction over the parties.

13    Accordingly, venue for the instant matter in Clark County is proper pursuant to the

14    Employment Agreement.

15          Further, Nevada Law states that applications for judicial relief under Nevada's

16    Uniform Arbitration Act are properly venued:

17          [i]n the court of the county in which the agreement to arbitrate specifies the
      arbitration hearing is to be held **or, if the hearing has been held, in the**
18          **court of the county in which it was held**. Otherwise, the motion may be
      made in the court of any county in which an adverse party resides or has a
19          place of business or, if no adverse party has a residence or place of business
      in this State, in the court of any county in this State.
20

21    NRS § 38.246 (emphasis added). Randazza does not dispute that the instant arbitration

22    was held in Las Vegas, Nevada in February of 2015—making venue proper in this Court.

23          When the parties initially entered into the employment agreement they anticipated

24    their relationship would remain centered in San Diego, which is why they also agreed that

25    the arbitration would be conducted "within 40 miles of the city of San Diego, California, or

26    as mutually agreed to by the parties." *Id.* at Section 8 Paragraph F. Notwithstanding that

27    ---

28    [3] For that reason, Randazza's reference to the "geographic fluidity of the parties" is an inexplicable
misrepresentation to the Court. Unfortunately, this is not the only blatant misrepresentation made in
Randazza's Opposition and Counter-Motion.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

7.

1    fact, and because all relevant parties and witnesses were now located in Las Vegas, in July

2    2014, Randazza and Plaintiffs stipulated that the arbitration would take place in Las Vegas,

3    Nevada as opposed to San Diego.[4]  **Exhibit A hereto (Stipulation and Order Adjusting**

4    **Arbitration Schedule and Location)[5].**  By stipulating to the arbitration being held in Las

5    Vegas, Randazza has waived any right he may have had to argue that any motion to

6    confirm the award should be venued in San Diego County, California.[6]  In fact, in that

7    stipulation, Randazza specifically noted his position that noting in the stipulation represents

8    a waiver of his argument that the California choice of law provision in the employment

9    agreement governs this dispute.  He did not similarly disclaim his waiver of the San Diego

10   venue provisions in that employment agreement.  **Exhibit A at 2:4-6.**  In sum, the

11   Employment Agreement and applicable law provide that this action to confirm and obtain a

12   judgment upon the IAA is properly venued before this Court as the arbitration proceeding

13   took place in Clark County, Nevada.  Even if not the case, Randazza either waived his right

14   to enforce the San Diego venue provision set forth in Section 9.E. of the Employment

15   Agreement (relating to enforcement of an arbitrator's award), or implicitly mutually agreed

16   to Clark County, Nevada being an appropriate venue for confirmation of the arbitration

17   award when he agreed to arbitrate this matter in Las Vegas.

18        **B. Plaintiffs Motion to Confirm is Not Premature**

19        Randazza further opposes Confirmation of the Award by claiming it is premature.

20   According to Randazza's *subjective interpretation* of the Uniform Arbitration Act, only

21   final awards can be confirmed pursuant to NRS 38.239.  Tthe only issues remaining for the

22   arbitrator to decide is the issue of Plaintiffs' attorneys' fees and a yet to be determined

23   amount of monetary sanctions the Arbitrator will grant for Randazza's spoliation evidence.

24

25   [4] While the parties later stipulated to move the dates set in this Order, the location of Las Vegas, Nevada remained the same.

26   [5] The Declaration of Wendy M. Krincek is attached as Exhibit 1 authenticating certain exhibits.

27   [6] Arguably, the stipulation also modified the Employment Agreement to provide that the arbitration take place in Las Vegas which "confers exclusive jurisdiction on [this] court to enter judgment on an award."  NRS § 38.244.

28

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702 862 8800

8.

1    *See* IAA at pg. 24 ¶ 2 and 25 ¶ 8.  The fact that the Arbitrator may still grant these

2    additional remedies does not prevent confirmation of the IAA because the statute governing

3    envisions that any arbitration award may be confirmed:

4        the party may make a motion to the court for an order confirming the award at
         which time the court shall issue a confirming order unless the award is
5        modified or corrected pursuant to NRS 38.237 or 38.242 or is vacated
         pursuant to NRS 38.241.
6

7    NRS 38.239.  Nevada law further provides that even pre-award rulings by an arbitrator may

8    be confirmed by a court.  NRS 38.234.

9        As noted previously, Courts in other jurisdictions have specifically held that "the

10   issue of attorneys' fees is not so significant to make the Interim Award anything less than

11   final." *In re Rollins, Inc. (Black)*, 552 F. Supp. 2d 1318, 1325 (M.D. Fla. 2004) *aff'd in part,*

12   *rev'd in part on other grounds Rollins, Inc. v. Black*, 167 F. App'x 798 (11th Cir. 2006);

13   *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, No. 8:09-CV-02036-T-23, 2011 WL 7459781, at

14   *4 (M.D. Fla. Dec. 20, 2011); *see also Am. Numismatic Ass'n v. Cipoletti*, 254 P.3d 1169,

15   1173 (Colo. App. 2011)("We are persuaded ... that an 'award' is subject to confirmation or

16   challenge under the 1975 Act if it entirely disposes of the case on the merits: an

17   outstanding issue of attorney fees and costs under a fee- and cost-shifting provision does

18   not affect the character of the decision on the merits as an 'award'").  Notably, Randazza

19   failed to address any of the above referenced cases cited in Plaintiffs Motion to Confirm.

20   Instead, he depends, unpersuasively, on his own interpretation of the statute.

21       Randazza also claims that Plaintiffs failure to submit the relevant transcript and

22   exhibits mandates denial of their Motion to Confirm.  Randazza cites to *Graber v. Comstock*

23   *Bank*, 111 Nev. 1421 (Nev. 1995).  However, that case does not require that a party

24   seeking to confirm an arbitration award submit the underlying transcript and evidence with

25   its motion.  Rather, that case merely found that a district court erred in failing to review the

26   arbitration transcript and exhibits given that the motion for confirmation was objected to.  *Id.*

27   at 1428-29.  That being said, now that Randazza has claimed the Arbitrator manifestly

28   disregarded the law, Plaintiffs submit the arbitration transcript and relevant arbitration

9.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1    exhibits referenced herein in order for the court to review Randazza's allegations.[7]

2    Randazza previously provided the Court with the Exhibits he believes evidence grounds to

3    vacate or modify the award.[8]

### C. The Arbitrator Did Not Make Legal or Factual Errors—But Even if He Did—Randazza Cannot Establish the Proper Grounds to Vacate or Modify the Award By Clear and Convincing Evidence

6    As noted previously, only extremely limited grounds exist upon which an Arbitrator's

7    Award may be vacated or modified.  Despite the many buzzwords used by Randazza, his

8    arguments regarding the alleged errors the Arbitrator committed fail to establish any of the

9    few grounds upon which an award can be vacated or modified.[9]

### 1. The Alleged Improper Factual Findings

#### a. Randazza's Resignation

12    Randazza contends the Arbitrator made an improper factual finding that he

13    voluntarily resigned his employment with Excelsior.  Randazza has not shown by clear and

14    convincing evidence that the Arbitrator's finding was not supported by substantial evidence.

15    Randazza contends the Arbitrator erroneously found that his August 29, 2012 email (in

16    which he, the General Counsel of the company, specifically states he is withdrawing from

17    representing the company in any further matters) was a resignation.  Unfortunately for

18    Randazza, the Arbitrator's finding was supported by not only substantial, but overwhelming

19    evidence. Because this factual dispute over whether a resignation or involuntary

20    termination occurred impacted several of Randazza's claims there was substantial

21    _____

[7] Attached hereto as **Exhibit B** is a copy of the Arbitration Transcript Vol. 1 (p. 1-274); **Exhibit C** is a copy of the Arbitration Transcript Vol. 2 (p. 275-573); **Exhibit D** is a copy of the Arbitration Transcript Vol. 3 (p. 574-889); **Exhibit E** is a copy of the Arbitration Transcript Vol. 4 (p. 890-1104); **Exhibit F** is a copy of the Arbitration Transcript Vol. 5 (p. 1105-1350).

[8] Relevant Arbitration Exhibits as well as exhibits referenced in portions of the arbitration transcript and briefs cited to by Plaintiffs are attached hereto as **Exhibit G**. The relevant arbitration exhibits have their arbitration exhibit numbers in the lower right-hand corner of the document and have been provided in numerical order.  Should the Court believe review of any other Exhibits referenced in the underlying record is necessary, Plaintiffs are happy to provide them at the Court's request.

[9] A perfect example of the lack of focus Randazza's brief has can be found at 19:12-13. Randazza argues that the Arbitrator "failed to execute his duties in manifest disregard of the facts and the law, exceeding his powers." Not only is that sentence a mouthful, it is entirely meaningless. It combines multiple, limited and independent grounds to vacate an arbitration award and renders them one confusing label and/or conclusion.

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

10.

1   evidence presented and post-arbitration briefing on this topic. **Excelsior's Post-**

2   **Arbitration Brief at 17:1-20:16, attached hereto as Exhibit H with arbitration exhibits**

3   **cited therein included in Exhibit G.** The evidence that Randazza resigned included, but

4   was not limited to evidence that in the days and hours leading up to Randazza sending his

5   resignation email he:  planned for his paralegal at Excelsior to quit her employment at

6   Excelsior and become employed by his own private law firm; set up an email account for

7   his Excelsior paralegal at his private law firm, made arrangements for the removal of all his

8   personal items from his office, two days prior to resigning was witnessed removing some

9   personal items from his office and said "fuck this shit, I quit", conspired with his Excelsior

10  paralegal to remove all Excelsior's electronic files to a cloud-based storage system to which

11  Excelsior would not have access, and wiped his company-owned laptop more than 24

12  hours prior to resigning and ran wiping software two more times on the day he resigned for

13  good measure.  Randazza's claim that "there is no evidence that Randazza had the intent

14  to sever the employment relationship" is nothing short of delusional.

15          The Arbitrator summarized his findings on this topic as follows:

16      G.      As stated above, Mr. Randazza voluntarily ended his employment by

17  E/L. The principal evidence of that consisted of (1) Mr. Randazza's August
    29, 2012 email to Mr. Gideon, (2) days before sending Mr. [Gibson] his

18  August 29 email, Mr. Randazza cleaned out his personal belongings from
    his office, (3) shortly after Noon on August 28— and more than 24 hours

19  before sending his August 29 email to Mr. [Gibson]— Mr. Randazza had his
    corporate laptop computer "wiped" the first of four times during his last week

20  of employment, and (4) before that, Mr. Randazza was overheard to say
    "Fuck this shit, I quit" following a company *happy hour* event.

21      H.      In his August 29, 2012 email to Mr. Gideon, Mr. Randazza stated that
    he could no longer represent the Company, i.e., E/L. In the circumstances

22  then known, Mr. [Gibson] and other E/L executives with whom he consulted
    reasonably, and not hastily, concluded from their review of Mr. Randazza's

23  August 29, 2012 email that Mr. Randazza had resigned from his employment.
    Their conclusion was proven accurate by facts which became known after Mr.

24  Randazza's departure. Any actions taken by them based on that reasonable
    belief did not result in any involuntary termination of Mr. Randazza's E/L

25  employment.

26      I.      The lack of absolute, unquestionable, pristine clarity in Mr. Randazza's
    August 29, 2012 carefully worded and crafted email that he was resigning his

27  employment was deliberate.

28  **IAA at 8-9.**  Randazza's disagreement with the Arbitrator's finding is is not a basis upon

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702 862 8800

1   which to vacate the award.  In light of the evidence and the Arbitrator's undoubted review

2   and analysis of the same, Randazza has failed to present clear and convincing evidence

3   that these factual findings were arbitrary or capricious—making Randazza's challenge to

4   the Award on this basis meritless.

5                    ***b. The $75,000 Bribe***

6          Randazza also claims that the Arbitrator erred in his factual finding that one of the

7   things which led to the deterioration of his employment relationship and one (of many) ways

8   in which Randazza breached fiduciary duties to Excelsior/Liberty was by negotiating a

9   $75,000 bribe for himself in July-August 2012.  Randazza claims there was no "bribe" and

10  that is evident because he had engaged in similar negotiations with opposing counsel "as a

11  bluff" to increase settlement funds for Liberty in the past.  Randazza comes nowhere close

12  to establishing that the Arbitrator's factual determination was arbitrary or capricious.

13         Liberty had sued Oron for copyright infringement.  The evidence presented at the

14  arbitration established that Randazza initiated and actively participated in negotiations with

15  counsel for Oron for an extra settlement payment to himself in exchange for his agreement

16  to never sue Oron again on behalf of other clients.  The evidence presented at arbitration

17  showed that Randazza's claim that his negotiations for a bribe for himself were just bluffing

18  was just one more lie to try and cover up his misdeeds.  The evidence presented showed

19  that when initially accused of negotiating for bribes for himself, Randazza denied such

20  negotiations took place and, in fact, claimed to have taken the highroad by refusing to

21  engage in such negotiations with opposing counsel.  Fortunately, during the course of

22  discovery in the arbitration proceeding and after Randazza had articulated that denial (even

23  to the State Bar), Excelsior was able to obtain from Randazza's opposing counsel their e-

24  mail communications evidencing Randazza's rabid pursuit of bribes for himself.  Those e-

25  mail communications from Randazza included gems such as this communication from

26  Randazza to his opposing counsel in the midst of negotiating a settlement in a dispute

27  between Liberty Media and an entity referred to as "TNA":

28         Randazza:  Keeping me out of the TNA game is a little more complicated.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

12.

> If your client wants to keep me personally out of the TNA game, then I think that there needs to be a little gravy for me. And it has to be more than the $5k you were talking about before. I'm looking at the cost of at least a new Carrera in retainer deposits after circulating around the adult entertainment expo this week. I'm gonna want at least used BMW money.
>
> In order to conflict me out of future matters, I suggest this: Your firm retains me as "of counsel" to you. I get $5k per month (for six months) paid to me, from you (TNA will reimburse you, I presume). I will render advice on TNA and TNA only, and I'll be Chinese walled from your other clients so that other conflicts are not created. ... That way, I'm adequately compensated for my loss of major potential work, and I'm conflicted out of acting adversely to TNA. **Exhibit G hereto at Ex. 356.**

Additional damning emails were produced that Randazza had sent to the same opposing counsel specifically regarding the later Oron litigation:

> Randazza to opposing counsel: whatever you guy [sic] pay me to retain me would come from your paypal account, and would have no real relevance to that. I spoke to my partner, who was adamant that we should earn $100k if we're never to be able to sue [Oron] forever and ever. I got him to go with $75k. But, for that, we'll provide some really great value—including a jurisdiction derailing plan that you'll drool over.

**Exhibit G hereto at Ex. 366.** It was only after disclosure of these e-mail communications that Randazza was forced to change his story – which then evolved to admitting he negotiated for bribes for himself, but claimed he was not serious and it was just part of his settlement strategy. This story was also easily seen through as Excelsior had also received and produced numerous communications from Randazza to opposing counsel after settlements for Liberty had been reached showing his continued dogged pursuit of the bribe payment in the TNA matter. And belied yet more in the Oron matter by Randazza's e-mail communications where he tried to cover up the nature of the $75,000 bribe by having it removed from the settlement agreement and also characterized as a personal "settlement" payment to him. A detailed analysis of the evidence presented at the arbitration regarding the bribe negotiations can be found in **Excelsior's Post-Arbitration Brief at 30:19-38:1 regarding the TNA matter and at 40:3-44:2 regarding the Oron matter, attached hereto as Exhibit H.**

Randazza and Oron eventually came to an agreement that Randazza would be paid a $75,000 bribe to prevent him from filing future lawsuits against that company. *Id.* On

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702 862 8800

1    August 13, 2012, Randazza presented Excelsior's CEO Jason Gibson with a settlement

2    agreement for his review that included a payment of $550,000 to Liberty but also

3    referenced an additional $75,000.  *Id.* Gibson questioned Randazza about the $75,000,

4    and Randazza described it as a bribe and attempted multiple times to rationalize it.  *Id.* The

5    evidence was overwhelming and clear that Randazza initiated the improper bribe

6    negotiations, attempted to conceal them from Excelsior/Liberty, and that the discovery of

7    the bribe ultimately fractured Randazza and Gibson's business relationship and personal

8    friendship.  *Id.*

9         The Arbitrator discussed the $75,000 bribe at varying points throughout the Interim

10   Arbitration Award but his specific factual findings can be summarized as follows:

11        The precipitating events which led to the end of Mr. Randazza's employment
          was Mr. [Gibson] having first learned on August 13, 2012 that Mr. Randazza
12        had been involved in and successfully concluded negotiations for a bribe in
          the amount of $75,000, to be paid to Mr. Randazza by the other side in
13        connection with resolution of high-importance litigation, commonly referred to
          as the "Oron litigation," which had been initiated and pursued on behalf of E/L
14        by Mr. Randazza, as E/L's counsel of record. The first indication of that was
          Mr. [Gibson] noticing a provision included in an execution copy of an Oron
15        settlement agreement, presented to him for signature by Mr. Randazza on
          that date, and Mr. [Gibson's] inquiring of Mr. Randazza about that provision.
16
          After initial contacts with Mr. Randazza concerning what Mr. Gideon
17        discovered in the Oron settlement agreement, communications and relations
          between Messrs. [Gibson] and Randazza noticeably chilled during Mr.
18        Randazza's remaining employment, which ended on August 29, 2012.
          **Interim Arbitration Award at 3.**
19        ...
          Mr. Randazza beat a hasty retreat, in an attempt to salvage the situation by
20        offering to pay the bribe money over to E/L, when initially confronted by Mr.
          [Gibson] concerning the "bribe" provision in the Oron settlement agreement,
21        presented for [Gibson's] signature.  **Interim Arbitration Award at 4.**
22        ...
          The Arbitrator has determined, based on the evidence, that Mr. Randazza
23        solicited the bribe in the first instance, attempted to negotiate with Oron's
          counsel ways and means whereby it would be concealed from and not
24        become known by E/L, and disclosed it to E/L, per Mr. [Gibson], for the first
          time only on August 13, 2012, when the settlement documentation prepared
25        and presented for Mr. [Gibson's] signature on behalf of E/L by Oron's counsel
          surfaced a $75,000 retainer payment to Mr. Randazza.
26
          The Arbitrator has further determined that E/L never gave Mr. Randazza
27        permission or consent to solicit, negotiate or accept the $75,000 bribe,* or
          any bribe or any other payment other than payment of all proceeds being
28

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800                                          14.

solely for the benefit of and deposited to the account of his clients/principals, E/L.

*On August 13, 2013, Mr. [Gibson] handwrote an arrow and "Who gets this" next to the $75,000 payment provision in the copy of the execution copy of the Oron settlement agreement presented to him by Mr. Randazza. The Arbitrator credits that notation as being first notice to and genuine surprise expressed by Mr. Gideon about any Oron settlement payment not being made directly to E/L.

That notation also was the genesis of a rapid unraveling of the theretofore close professional and personal relationship, symbolized by Mr. [Gibson's] sharply reducing communications with Mr. Randazza and Mr. Randazza's repeated and ultimately unsuccessful efforts to salvage his situation, by attempting to re-establish direct contact with Mr. [Gibson]. As previously stated, the Arbitrator has not accepted Mr. Randazza's central contention and narrative that this state of affairs, triggered on August 13, 2012, was manufactured by Mr. Gibson and served as a convenient or other pretext for an earlier-decided termination of Mr. Randazza's employment.

The Arbitrator has not accepted that E/L's knowledge of or informed consent to any such situation can be implied by non-objection and silence in response to an unspecific, Delphic allusion in one of Mr. Randazza's emails prior to August 13, 2012 or to Mr. Randazza's after-the-fact, self-serving reference to alleged earlier communications, wherein Mr. Randazza claimed in the later email to have "fully disclosed ... overtures about that." **Interim Arbitration Award at 7 n.4.**

In light of the Arbitrator's findings, it is difficult to characterize Randzza's contention in his Motion that "[t]he Arbitrator effectively agreed that Randazza never intended to obtain the actual $75,000 for himself against the interests of Liberty" as other than delusional. The Arbitrator did include the following finding in footnote 4 of the IAA:

"In addition, except for admissions, anything which Mr. Randazza and his opposing counsel in the Oron litigation, Val Gurvitz, communicated to each other lacked credibility, because Mr. Randazza testified that he and Mr. Gurvitz routinely lied to each other in their settlement communications"

**Interim Arbitration Award at 4 and 7 n.4.** This had nothing to do with Randazza's claim to be pretending to negotiate for a bribe for himself. Rather, Randzza had attempted to mitigate the damage caused by his unethical bribe negotiations by claiming in his post-arbitration brief that Liberty was not harmed by his negotiations for an extra $75,000 for himself because Oron's counsel had already told him that his client wouldn't pay any more money to Liberty. **See Exhibit I, Randazza's Post-Arbitration Brief at 27:16-24.** Excelsior responded to this allegation by pointing out Randazza could not credibly rely

15.

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1  upon supposed assertions by his opposing counsel as Randazza had testified that both he

2  and the opposing counsel routinely lied to each other in settlement negotiations.  **See**

3  **Exhibit M, Excelsior's Post-Arbitration Reply Brief at 31:18-23.**[10]  Accordingly, the

4  Arbitrator did not make contradictory findings on this issue as Randazza now claims and

5  his findings regarding the bribe were not arbitrary and capricious.

6  ### 2. The Alleged Improper Legal Determinations

7  #### a. Randazza's California Wage and Hour/Labor Code Claims

8  Randazza's First and Second causes of action alleged violations of the California

9  Labor Code even though the alleged conduct occurred while Randazza lived and worked in

10  Nevada. In Claim One, Randazza claimed Excelsior failed to reimburse and indemnify him

11  for business expenses incurred in Nevada during 2012. In Claim Two, Randazza alleged

12  Excelsior failed to pay him his final wages in August 2012 in accordance with California

13  law, even though Randazza lived and worked in Nevada. Randazza admits he moved to

14  Nevada in mid-2011 to continue his role as General Counsel for Excelsior. **Exhibit C at**

15  **494:18-495:15; Exhibit G (Arb. Exhibit 302 at ¶ 21).** The evidence offered in support of

16  Claim One and Claim Two solely related to alleged conduct that occurred in Nevada to a

17  Nevada employee.  Randazza argued that the Governing Law clause in the Employment

18  Agreement specifying that California law will govern the interpretation of the Employment

19  Agreement, acted to import all of California's wage and hour laws to his employment in the

20  State of Nevada.  The Arbitrator disagreed and concluded that the California statutes

21  Randazza claimed were violated in Nevada did not apply extraterritorially and the

22  [10] As is typical of Randazza, he also intentionally misrepresents evidence at page 22 n.9 of his

23  Motion to Vacate. There he claims that the only expert as to California professional responsibility, his expert Ellen Peck, opined his negotiations for bribes were not improper. First, Ms. Peck was not

24  the only California professional responsibility expert.  Excelsior's expert Dennis Kennedy was qualified as an expert and testified as to both Nevada and California professional responsibility

25  issues. Mr. Kennedy's expert report as admitted into evidence is attached as **Exhibit J** hereto. Second, Ms. Peck as an expert on California professional responsibility did not offer an opinion

26  regarding the Oron negotiations, as they occurred in Nevada.  Randazza's Nevada professional liability expert, Joseph Garin testified that if the Arbitrator were to accept the premise that Randazza

27  actually intended or expected to receive the money he was negotiating for, then a personal interest did exist – meaning a violation of the rules of professional responsibility occurred.  Exhibit F at

28  1221:11-24.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

1    governing law provision did not affect these non-contractual claims.  Importantly, this  issue
2    was fully briefed on two separate occasions before the Arbitrator. Randazza now argues
3    that the Arbitrator manifestly disregarded the law when he allegedly misinterpreted and/or
4    misread the law in ruling that California labor law did not apply to Randazza's employment
5    in Nevada.  However, the Arbitrator correctly applied the law.  Moreover, even if he had
6    erred in its application, that is insufficient to establish a manifest disregard of the law.

7        When reviewing an award for manifest disregard for the law the Court's review is
8    extremely limited to determining whether "the arbitrator knew of the law and, if so,
9    consciously disregarded it, not whether the private arbitrator's interpretation of the law was
10   correct." *Clark Cnty. Educ. Ass'n*, 122 Nev. at 339.  There simply is no evidence that the
11   Arbitrator knew the law and recognized that it required a particular result but "simply
12   disregarded the law." *Bohlmann*, 120 Nev. at 547.  What is evident, is that the parties
13   briefed the issues of whether California law provided that its Labor Code did not apply
14   extraterritorially/outside of California.  The Arbitrator agreed with Excelsior's contention that
15   under California's doctrine of extraterritoriality, its wage and hour laws did not apply outside
16   its borders.  Thus, even if Randazza was correct in his contention that the Governing Law
17   provision acted to import all California laws into his employment relationship (which he is
18   not) he couldn't pick and choose which applied (i.e. contend its wage and hour laws applied
19   but not its doctrine of extraterritoriality).   After considering the initial briefing of the parties,
20   the Arbitrator issued an Order indicating that subject to reconsideration, he preliminarily
21   believed that California wage and hour law was not applied extraterritorially and that the
22   governing law "provision of the parties' employment contract for Claimant's services---
23   generally proving for the application of California substantive law---does not govern which
24   law applies to statutory wage-and-hour and other non-contractually-based claims in
25   arbitration." ***See Arbitrator's July 3, 2013 Order at pg. 2, attached hereto as Exhibit K.***
26   Then, post-arbitration, the parties briefed the issue once again and the Arbitrator again
27   considered and interpreted the legal authority before him in coming to his final conclusion
28   on this matter.  ***See Exhibit H, Excelsior's Post-Arbitration Brief at 9:10-11:20 for***

17.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702 862 8800

**substantial legal authority supporting the Arbitrator's decision.**

The Arbitrator specifically concluded as follows:

N. Mr. Randazza's California Labor Code-based claims— for Excelsior's failure to (1) pay him his final wages in August 2012 (2nd Claim) or (2) reimburse and indemnify his for business expenses incurred by him in during 2012 (1st Claim) — fail as a matter of law. The same is true for Mr. Randazza's claim for payment of all of his wage-related claims — including payment of raises, bonuses and repayment of his $25,000 loan. That is because — at all times relevant to those California Labor Code claims, since June 2011, Mr. Randazza worked and lived in Nevada, to which Mr. Randazza relocated, as did E/L, in order to continue as E/L's general counsel. As stated or indicated in a pretrial ruling bearing on the same issue, (1) the California Labor Code, presumptively, does not apply extraterritorially [footnote *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 12016 (2011); *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 U.S. Dist. LEXIS 104378 (N.D. Cal. 2012) (presumption against extraterritorial application of state law applies to unpaid wage claims under California Labor Code, plus "situs of the work" is the most important factor in determining extraterritoriality, trumping residency and where wages are paid)]. and does not apply to the facts and circumstances of this case, and relatedly, (2) that determination, concerning Mr. Randazza's non-contractual claims, is unaffected by the California-as-governing substantive-law provision of Mr. Randazza's employment agreement with Excelsior, which applies and controls only as to breach-of-contract claims and not, as in this instance, Mr. Randazza's statutory claims [footnote *See, e.g.*, Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010)].

**Interim Arbitration Award at 11-12.**

This is yet another instance of Randazza trying to challenge every aspect of the IAA regardless of whether there is merit or not, as clearly there is no evidence that the Arbitrator knew the law required a different result and chose to ignore that fact. There was no manifest disregard of the law.

Randazza also claims that the Arbitrator erred in finding that Randazza could not establish his first or second cause of action, because he allowed Randazza an offset from Excelsior's counter-claims in the amount of $25,000 (the same amount of money Randazza contributed to the litigation of the Oron case and required Mr. Gibson to sign an unethical promissory note regarding).[11] Absent any authority in the record or case law supporting his position, Randazza claims that by allowing this offset, the Arbitrator actually found Randazza a prevailing party on at least one of his claims and therefore the award must be

---

[11] For a full discussion of the evidence regarding the $25,000 promissory note **see Exhibit H, Excelsior's Post-Arbitration Brief at 45:9-28; 51:13-24; 12:14-13:1.**

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

modified to find Randazza a prevailing party. By allowing the offset in his discretion, the Arbitrator was not making Randazza a prevailing party on one of his claims, instead he noted that:

> While Mr. Randazza's obtaining Mr. [Gibson's] signature on the promissory note for Mr. Randazza's $25,000 loan to E/L for Hong Kong legal fees was rife with ethical infirmities, in the exercise of the Arbitrator's discretion, the Arbitrator will not void the underlying loan. However— again in the exercise of the Arbitrator's discretion—the Arbitrator will limit the benefit of that decision to allowing Mr. Randazza to assert an offset, under this paragraph, to any and all amounts awarded on E/L's counterclaims, up to a maximum amount of $25,000 (i.e., no interest) ...

**IAA at 22**. Accordingly, all the Arbitrator did was allow Randazza an offset against the recovery awarded to Excelsior and Liberty Media. The fact that the Arbitrator elected not to grant every remedy Excelsior requested does not make Randazza a prevailing party. *In re Fruehauf Trailer Corp.*, 414 B.R. 36, 42 (Bankr. D. Del. 2009)(a set-off is equitable in nature and can be calculated as the Court deems most equitable). Nowhere in the IAA is Randazza named a prevailing party and the Arbitrator specifically found that all of his wage-and-hour/reimbursement claims (whether California or Nevada based) failed as a matter of law. **IAA at 11-12**.

Even though the Arbitrator explicitly found that Randazza's first two claims failed as a matter of law, Randazza still claims the Arbitrator erred in also finding that "Randazza was properly compensated" for the items of damages he sought from his first and second causes of action. **IAA at 12**. Randazza complains that the Arbitrator's footnote which states "For example, Mr. Randazza's bonuses were to be based on net and gross amounts (which he acknowledged prior to the end of his employment), claimed compensation raises were discretionary. Whatever Mr. Randazza was paid as compensation and bonuses is subject to the remedy of disgorgement" fails to provide details for his findings on these topics. Randazza also accuses the Arbitrator of having no basis to deny the alleged raise he was owed and whether he was owed additional bonus amounts dependent upon whether they were to be calculated on the net or the gross (which was disputed by the parties).

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1    Randazza fails to allege what grounds this error would allow the IAA to be vacated

2    other than saying the Arbitrator made "erroneous" findings.    There is no evidence or

3    allegation of partiality, misconduct, or the arbitrator exceeding his powers.    Randazza also

4    does not appear to be claiming that the Arbitrator manifestly disregarded the law in some

5    manner.    Instead these alleged improper "findings" must be referring to factual findings.

6    Excelsior presented evidence at the hearing and provided a detailed summary of why

7    Randazza was adequately compensated under the law, even if his California labor claims

8    could survive.    ***See Exhibit H, Excelsior's Post-Arbitration Brief at 11:21-15:4***.    For

9    example, with respect to Randazza's claim that he is owed a raise, the CEO of Excelsior

10   testified that Randazza never advised him of such a requirement and in correspondence

11   with Gibson on August 16, 2012, Randazza admitted that he had advised Gibson that the

12   company was not obligated to give him a raise. **Exhibit G, Arb. Ex. 327.** Accordingly,

13   despite Randazza's subjective disagreement with the Arbitrator's finding it was supported

14   by the evidence and therefore not arbitrary or capricious.    It also cannot be forgotten that

15   the Arbitrator was not under an obligation to fully analyze these California claims because

16   he had already found that they failed as a matter of law.[12]

17                    **b.  *Randazza's Nevada 608.050 Claim Fails As a Matter of Law***

18                    Randazza claims the Arbitrator erred in finding that his claim for unpaid wages and

19   penalties under NRS 608.050 (Third Cause of Action) failed as a matter of law.    In its post-

20   arbitration brief, Excelsior set forth multiple reasons why Randazza had not established that

21   he was entitled to recovery under NRS 608.050—including that his claim failed as a matter

22   of law because there is no private right of action for violation of that statute.    ***See Exhibit H***

23   ***at 15:5-16:1***.  NRS § 608.050 allows the continuation of regular wages to an employee who

24   is not paid his or her regular wage when that wage becomes due after the employment

25   relationship terminates, for up to 30 days. *Orquiza v. Walldesign, Inc.*, No. 2:11-CV-1374

26   JCM CWH, 2012 WL 2327685, at *6 (D. Nev. June 19, 2012).    This statute only provides

27   _____

28   [12] Footnote 14 of Randazza's Opposition is not only convoluted but it is admittedly based entirely on assumptions and conjecture.

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1  for penalties—not the recovery of actual unpaid wages. These penalties "apply only to the

2  regular wages owed to an employee for the work performed between pay periods at the

3  time employment ended." *Id.* at 5 (emphasis added); *Evans v. Wal-Mart Stores, Inc.*, No.

4  2:10-CV-1224 JCM VCF, 2014 WL 298632, at *3-5 (D. Nev. Jan. 24, 2014) see also NRS

5  608.012 (specifically noting that a bonus is not within the definition of wages under Nevada

6  law). Accordingly, Randazza's allegation that the alleged unpaid $25,000 loan and the

7  various bonuses he claims he is owed give rise to this claim lacked merit. Additionally, this

8  statute applies only when an employee was discharged or laid off. NRS § 608.050

9  ("[w]henever an employer of labor shall discharge or lay off employees").

10        Even if the statute were applicable to the instant situation, case law holds that no

11  private right of action exists to enforce this statute. *McDonagh v. Harrah's Las Vegas, Inc.*,

12  No. 2:13-CV-1744 JCM CWH, 2014 WL 2742874, at *3 (D. Nev. June 17, 2014). In

13  actuality, enforcement of this statute, and many others in NRS Chapter 608, lies with the

14  Nevada Labor Commissioner—not private litigants. *Id.* The Arbitrator specifically agreed

15  that Mr. Randazza's claim for unpaid wages and penalties under NRS 608.050 failed as a

16  matter of law because "there is no private right of action for enforcement of that statute."

17  **IAA at 12**. Randazza disagrees with the Arbitrator's legal conclusion, but he has not

18  shown manifest disregard of the law (that the Arbitrator knew there was a private cause of

19  action and disregarded that law). Rather, the Arbitrator correctly concluded no private

20  cause of action exists. Excelsior cited and argued the *McDonagh* case which stands for

21  the proposition that no private right of action under NRS 608.050 exists. Randazza's

22  counsel offered no retort or contrary case law for this or the other propositions for why

23  Randazza's NRS 608.050 claim failed in either his Post-Arbitration Brief or his Post-

24  Arbitration Reply Brief. **Exhibit I at (Randazza Post-Arbitration Brief at 12-14) and**

25  **Exhibit L (Randazza Reply Brief at 14:24-15:10).** Given that, Randazza cannot show

26  that the arbitrator knew the law required a private right of action under NRS 608.050 but

27

28

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

21.

1  disregarded it anyway.[13]

2  ### c. *Unpaid Severance and Bonus (Breach of Contract)*

3  Randazza claimed at Arbitration that Excelsior breached his Employment Agreement

4  by not paying him a 12-week severance due if he was involuntarily terminated, a 25%

5  bonus on the Oron settlement, and a bonus off any additional settlements received since

6  his employment ended.  The evidence at the arbitration and Excelsior's Post-Arbitration

7  Brief detailed how Randazza failed to prove his breach of contract allegations because he

8  resigned his employment which excused Excelsior's obligation to pay a severance, he

9  prevented Excelsior from ever collecting the actual Oron settlement funds (until the

10  Arbitrator ordered them to be released in the IAA), and he committed a material breach of

11  the agreement which excuses Excelsior's performance.  **Exhibit H, Excelsior's Post-**

12  **Arbitration Brief at 16:2-21:18.**  Randazza presented no competent evidence that any

13  other settlements were ever received by the company. *Id.*

14  After weighing all the evidence, the Arbitrator rightfully determined:

15  P.    As to Mr. Randazza's contractual claims— which are governed by the
    Employment Agreement, including the provision that California law governs
16  its interpretation and enforcement, etc.— (1) Mr. Randazza is not entitled to a
    contractual severance payment, because he voluntarily resigned his
17  employment [footnote: See Pars. 5(A), (B) and (G), *supra*, concerning Mr.
    Randazza's having voluntarily ended his E/L employment, including via and
18  as evidenced by written and verbal and non-verbal conduct. Mr. Randazza
    was contractually entitled to payment equivalent to 12-week severance only if
19  his employment was involuntarily terminated.], (2) Mr. Randazza is not
    entitled to any payment for expenses in connection with the annual
20  International Trademark Association Conference, which he did not attend,
    and (3) Mr. Randazza's bonuses were to be paid on "net" amount, not "gross"
21  amounts, as contended by Mr. Randazza.

22  In the event, E/L has been legally excused from any obligation to make any
    further contractual payment, by reason of Mr. Randazza's material breaches
23  of contract with respect to the his obligations under the same contract, Mr.

---

24  [13] The only thing Randazza does offer is his attempt to distinguish the court's opinion in *McDonagh*, and his
25  citation to two cases Randazza never took the time to cite and provide to the Arbitrator. In that respect, the
    two cases cited by Randazza are untimely and should not be considered by the Court because the Arbitrator
26  could not have manifestly disregarded case law he was unaware of. Nonetheless, even if the Court were to
    considered those cases, it must be noted that while the NRS 608.050 claims survived dismissal in *Rivera v.*
27  *Peri & Sons Forms, Inc.*, 735 F.3d 892, 901 (9th Cir. 2013) and *Fetrow-Fix v. Harrah's Entm't, Inc.*, 2010 U.S.
    Dist. LEXIS 125625 (D. Nev. Nov. 16, 2010), the respective defendants in those cases did not argue that no
28  private right of action existed to enforce NRS 608.050. Accordingly, those cases are neither binding nor
    persuasive authority in support of the proposition Randazza now cites them for.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1    Randazza's employment agreement. That is so under contract law principles--
2    --separate and apart from equitable principles, which are also applicable to
     contract claims, including the equitable doctrine of unclean hands, which is
3    applicable to Mr. Randazza's contract claims.

**IAA at 12-13**.

4         As is the case throughout his brief, Randazza is purposely vague as to what grounds

5    he is challenging the Arbitrator's decision regarding his contractual claims.   Randazza

6    appears to be arguing once more that there is no factual support for the Arbitrator's finding

7    that he resigned.   As discussed at length above, Randazza is clearly misguided on that

8    point.

9         Randazza next argues that the Arbitrator erred in his determination that the bonuses

10   were to be calculated on Liberty's net recovery rather than his gross.   Evidence during the

11   Arbitration established that Randazza was not entitled to receive any Oron-related bonus

12   because of his misconduct in handling those matters.   Even if Randazza were entitled to

13   receive a bonus on the Oron settlement, he was only entitled to bonuses off the net of

14   settlement awards and not the gross amount he now claims he is owed.   Evidence was

15   further presented at arbitration that Randazza had also been paid on the net amount of

16   settlement proceeds and had actually distributed from his own trust account bonus

17   payments based upon the net settlement amount.   **Exhibit H, Excelsior's Post-**

18   **Arbitration Brief at 14:2-15:4 (summarizing evidence of Randazza acknowledging**

19   **that the Employment Agreement did not adequately address whether bonus should**

20   **be paid on net or gross) and Exhibit M, Excelsior's Post Arbitration Reply Brief at**

21   **3:20-4:8.**.

22        In an attempt to avoid the well settled rule that ambiguities in a contract are to be

23   construed against the drafter, during the hearing Randazza misrepresented his role as the

24   drafter of the employment agreement.   Although Randazza claimed Excelsior drafted the

25   Employment Agreement entered by the parties, the evidence showed Excelsior initially sent

26   a short offer letter and Randazza responded by the draft Employment Agreement.   **Exhibit**

27   **D at 666:25-668:7, 671:25-672:11, 673:17-674:4.**   In light of these facts, any ambiguity as

28

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702 862 8800

23.