1    to whether Randazza should be paid off the gross vs. the net, should be construed against

2    Randazza—which is why the Arbitrator found accordingly.

3        Finally, Randazza argues that the Arbitrator "exceeded his authority" when he

4    determined that Randazza committed a material breach which excused any further

5    contractual payment.    Randazza cannot even articulate what these further contractual

6    payments are or might be.    Nonetheless, he argues that the arbitrator undertook no

7    analysis of what alleged misconduct should deprive him of any potential bonuses that

8    would be due.  As noted previously, NRS 38.241(d)'s basis for vacating an award if an

9    arbitrator exceeds his powers is limited.  Courts must "presume that arbitrators are acting

10   within the scope of their authority." *Health Plan of Nevada, Inc.*, 120 Nev. at 697.    An

11   Arbitrator exceeds his powers only "when they address issues or make awards outside the

12   scope of the governing contract."    *Id.*    The Nevada Supreme Court has held that

13   "[a]llegations that the arbitrator misinterpreted the agreement or made factual or legal

14   errors do not support vacating an award as being in excess of the arbitrator's powers." *Id.*

15   Randazza presents no evidence that the Arbitrator was addressing an issue or making an

16   award outside the scope of the governing contract when he concluded that Randazza

17   materially breached the Employment Agreement.    Instead, Randazza's argument once

18   again appears to be an allegation that the Arbitrator made a factual or legal error.

19   Accordingly, Randazza cannot establish that he Arbitrator exceeded his power.

20       Randazza does not dispute that under California law when a party's failure to

21   perform a contractual obligation constitutes a material breach of the contract, the other

22   party may be discharged from its duty to perform under the contract. *Brown v. Grimes*, 192

23   Cal. App. 4th 265, 277, 120 Cal. Rptr. 3d 893, 902 (2011)(citing 1 Witkin, Summary of Cal.

24   Law (10th ed. 2005) Contracts, §§ 813, 814, p. 906 (Witkin)("*Material* failure of

25   consideration discharges the other party's duty").[14]  Even if Randazza is challenging the

26   decision on a factual basis, Excelsior's Post-Arbitration Brief summarized the evidence

27

28   [14] Plaintiffs concede that California law governed the parties' contractual claims against one another
     in light of the choice of law provision but deny that it governed any other causes of action.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800
24.

1    solicited at the hearing regarding how Randazza breached the Employment Agreement by

2    failing to comply with his ethical obligations, by spending excessive time on non-Excelsior

3    matters, and by failing to wind down his outside law practice as envisioned by the

4    agreement. **Excelsior Post-Arbitration Brief at 20:17-21:18; 72:11-15**. The evidence at

5    the hearing also established that Randazza breached the Employment Agreement by

6    failing to comply with many ethical obligations as detailed *infra* and in an the expert report

7    prepared by Dennis Kennedy. ***See* Exhibit J and Exhibit G, Arbitration Exhibit 332**

8    **(EMC000498-499)(noting Randazza is "bound to adhere to the professional ethical**

9    **standards imposed upon attorneys by state bar associations and under the common**

10   **law" and that his representation of other clients must be rendered without legal or**

11   **professional conflict with Excelsior)**. In light of the many breaches of fiduciary duties

12   established in this case and discussed herein, the Arbitrator's conclusion that Randazza

13   committed a material breach of the agreement cannot possibly be found arbitrary or

14   capricious under the common law.[15]

15                    ***d. Randazza Was Not Wrongfully Terminated or Retaliated Against***

16              At arbitration, Randazza was unable to prove his wrongful termination or retaliation

17   claims for multiple reasons. Excelsior summarized the legal and factual insufficiencies in

18   Randazza's wrongful termination and retaliation claims in its Post-Arbitration Brief. **Exhibit**

19   **H, Excelsior Post Arbitration Brief at 21:19-22:20 and 27:15-29:17**. In short, Randazza

20   cannot establish a wrongful termination claim because (1) Randazza resigned his

21   employment—thus he was not terminated; and (2) pursuant to Nevada law, wrongful

22   termination claims are rarely recognized and when they are, the plaintiff must demonstrate

23   that any protected conduct was the proximate cause of his discharge—meaning retaliatory

24   discharge cases may not be had on a "mixed motives theory." *Id.* at 21:19-22:20. With

25   Respect to Randazza's retaliation claim, the evidence at the hearing established that

26

27   [15] Randazza's claim that the Arbitrator could not have found Randazza to have unclean hands is
     meritless, but even if it weren't, the Arbitrator's finding that Randazza committed a material breach
28   is not dependent upon an unclean hands determination.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

Randazza could not show he engage in protected activity pursuant to Title VII or NRS 613. *Id.* at 27:15-29:17.  Randazza also could not establish that he was terminated (adverse employment action) or that his employment would not have ended **but for** making the complaints he did make (causal connection). *Id.*

The Arbitrator specifically noted how his determination that Randazza "voluntarily ended his employment" has a strong legal effect on several of Randazza's claims:

> While not accepting Mr. Randazza's "core contentions" concerning the end of his employment by E/L, the Arbitrator agrees with Mr. Randazza's assertion that "The nature of Mr. Randazza's departure from Excelsior is central to several of his causes of action, and crucial to the defenses Respondents raise" --- including whether there was a breach of contract, wrongful termination, constructive termination and/ or retaliatory termination. [Randazza's Post-Arbitration] Reply at p. 7:12-15. As also stated elsewhere herein, none of those claims were proven.

**IAA at 3 n.2.**

After analyzing the evidence the Arbitrator went on to conclude that:

> D. The ending of Mr. Randazza's employment E/L was not --- as contended by Mr. Randazza --- (1) constructive discharge, proximately caused by Mr. Gibson becoming distant and out-of-communication with Mr. Randazza, which made it difficult or impossible for Mr. Randazza to get needed instructions or direction in his employment by E/L as their general counsel, leading to Mr. Randazza's August 29, 2012 email of resignation from employment, or (2) retaliatory termination, which was caused by Mr. Randazza's having "expressed his feelings" of having been "upset, betrayed, offended, and "stressed" anything of a sexual nature whatsoever--- including, as highlighted during hearing, a pornographic video shot in Mr. Randazza's office in April, 2012 or a homosexual oral copulation allegedly performed by Mr. [Gibson] and another E/L executive in the backseat of Mr. Randazza's car, which allegedly greatly upset Mr. Randazza while he was driving his passengers back from a party aboard Mr. [Gibson's] boat on August 9, 2012.
> …
> …
> There was no E/L contrived pretext or any retaliation by E/L in connection with the cessation of Mr. Randazza's E/L employment, which was entirely voluntary on Mr. Randazza's part. For those reasons, the Arbitrator has determined that Mr. Randazza failed to sustain his burden of proof required to establish his claims of and relating to anything having to do with sex ---e.g., sexual harassment, hostile work environment, constructive termination, retaliatory termination, etc.

**IAA at 4-6.**

Randazza once again argues that the Arbitrator erred in finding that he voluntarily resigned—which was fatal to both his wrongful termination and retaliation claims.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702 862 8800

1    Randazza also argues that the Excelsior's termination of Randazza "may properly have

2    been deemed wrongful termination on the basis of sexual orientation and complaints of

3    harassment." Randazza's Opposition at 32:18-19.[16]  Randazza presents no evidence that

4    the Arbitrator exceeded his powers, acted with evident partiality, or engaged in misconduct

5    in finding Randazza could not establish his wrongful termination or retaliation claims.  As

6    has been the case throughout, Randazza appears to be basing his challenge on the fact

7    that the Arbitrator concluded that he had resigned—and that the end of Randazza's

8    employment had nothing to do with the sexual based allegations Randazza made in the

9    instant case.  As has been noted previously, there is ample evidence that Randazza

10   voluntarily ended his employment with the company.  Even if the Arbitrator had determined

11   that Randazza was terminated, there was sufficient evidence introduced during the

12   arbitration which shows the end of Randazza's employment was in no way related to the

13   sexual based allegations and alleged complaints he made to the Company.  Instead, the

14   deterioration in the employment relationship was due solely to the discovery of Randazza's

15   unethical self-dealing (i.e. negotiating bribes for himself).  **Exhibit H, Excelsior Post**

16   **Arbitration Brief at 21:19-22:20 and 27:15-29:17.**

17        Accordingly, Randazza has failed to present clear and convincing evidence to

18   establish any ground upon which these claims should be vacated.

19                    **e.  Randazza Failed to Establish His Hostile Work Environment Claim**

20        Randazza alleged at arbitration that he was sexually harassed when: (1) Excelsior

21   filmed a scene for a pornographic film in his office in April 2012 while he was out of town;

22   and (2) when Gibson allegedly performed oral sex on another person while riding in

23

24   [16] Randazza makes another throwaway argument that his wrongful termination claim could
     survive premised on Excelsior's alleged "intent to punish Randazza for obeying his ethical
25   duties."  Randazza's Opposition at 32:20-33:4.  As an initial matter, Randazza failed to
     present evidence regarding this alleged motive for wrongful conduct during the Arbitration
26   hearing.  Randazza also never argued this was a basis for his wrongful termination claim in
     either his Post-Arbitration Brief (Exhibit I) or his Post-Arbitration Reply Brief (Exhibit L).
27   Once again, the Arbitrator could not have erred on something that was never presented to
     him in the underlying arbitration.  Even if Randazza had presented evidence regarding this
28   theory during the arbitration Randazza can point to no evidence of the alleged motive he
     claims Excelsior acted with.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

27.

1   Randazza's vehicle after a company retreat to Lake Mead in August 2012. Randazza did

2   not prove his claim by a preponderance of the evidence because the evidence showed that

3   the scene was not offensive to Randazza, unwelcome, or in any way related to his status

4   as a straight male. In fact, the evidence showed that prior to the filming in his office (which

5   Randazza claimed to be highly offended by), Randazza had offered up his own personal

6   family residence for filming. Randazza had also purchased from the company a leather

7   couch used in porn scenes that he placed in his family home and boasted to visitors that it

8   had been used during porn scenes. Moreover, Randazza's own testimony was the only

9   evidence that the alleged sex act in his car even occurred. Finally, there was compelling

10  evidence presented at the Arbitration which indicated Randazza's sexual harassment

11  allegations were brought solely to embarrass and bully Plaintiffs, including one text

12  exchange by Randazza, in particular, that Excelsior was able to obtain via a forensic

13  examination of his company-issued iphone. Excelsior prepared a detailed analysis of the

14  evidence presented during the arbitration on these allegations in its post-arbitration brief.

15  **Exhibit H, Excelsior Post-Arbitration Brief at 22:21-27:14.**

16      The Arbitrator, having heard the evidence made the following detailed factual and

17  legal determinations:

18      [S]ince the outset of the arbitration, Mr. Randazza made highly-charged,
        sexually-based "core allegations" and his claimed strong reactions to them in
19      support of his statutory and contractual claims, which were in the main
        disproved or not proved. That failure of proof undermined and impaired Mr.
20      Randazza's credibility concerning all of his testimony and his claims and
        related contentions. The evidence established at hearing was that Mr.
21      Randazza intended that his allegations would induce Mr. [Gibson] to
        authorize a settlement financially favorable to Mr. Randazza, based on Mr.
22      Randazza's belief at the time— and ultimately proven incorrect—that Mr.
        [Gibson] would so settle, rather than have to litigate true or false allegations
23      relating to his own sexuality, sexual activity, and the pornographic nature of
        E/L's business. Mr. Randazza's miscalculation, as aforesaid, led to an
24      ultimately successful counterattack by E/L, via counterclaims in this arbitration,
        centering on ethical and legal challenges to Mr. Randazza's conduct as E/L's
25      general counsel and litigation counsel during his employment by E/L.

26      ...
        ...

27      J.    In addition to Mr. Randazza's disputed, disproved and unproved
        allegations of sexual conduct engaged in or authorized by is important
28      evidence which established that Mr. Randazza was not either (1) a target of

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1    any discriminatory or conduct which created a hostile work environment,
2    because of his being a heterosexual or "straight" male, or (2) offended by any
     of the sexually related conduct of which he has complained.

3    K.      Prior to and subsequent to agreeing to go "in house" as E/L's general
     counsel, Mr. Randazza was outside counsel to several companies engaged in
4    Internet pornography, including videos and stills available on openly
     homosexual websites. Since at least the date of the commencement of his
5    employment as E/L's inside general counsel through his last day of E/L
     employment, Mr. Randazza knew of and was not in any way uncomfortable
6    with Mr. [Gibson's] gay sexual orientation— which was also that of most, but
     not all, of E/L's other executives — and the frequent seasoning of business
7    and socially related conversation and written communications with crude gay
     and other sexual terms, references and allusions, which Mr. Randazza also
8    used [Footnote: For example, Mr. Randazza admitted that he used the term
     "butthurt" —which he alleged that Mr. Gideon used to demean his expression
9    of feelings about the pornographic filming in his office. In a series of texts
     about the shoot, Mr. Randazza texted, in a crude possible sexual/legal
10   "double entendre," "Don't jizz on my briefs." Mr. Randazza has admitted that
     "The Arbitrator has seen many texts and emails from Mr. Randazza with
11   informal, rough, vulgar content." Reply at p. 10:9-10. In making a different
     point, Mr. Randazza concedes by assertion that "Respondents [have]
12   conceded that jokes and banter were common in the office."]. Mr. Randazza
     was not embarrassed to be seen or filmed in full undress at a poolside
13   business-social event at [Gibson's] home. Mr. Randazza permitted and
     encouraged his children to have warm personal relationships with Mr.
14   [Gibson], who they called "Uncle."

15   L.      The evidence was that the only complaints which Mr. Randazza had
     concerning the pornographic filming in his offices in April 2012 —four months
16   before the end of his employment— were that (1) he was not given the
     courtesy of advance notice of the shoot and (2) after the shoot was completed,
17   Mr. Randazza's office was not restored to just the way it had been before the
     office was prepped for filming.
18
     The preponderance of disputed evidence was not that Mr. Randazza
19   complained to Mr. [Gibson] centering on or in any way reasonably relating to
     sexual discrimination or harassment or a hostile work environment based on
20   sex, including "male-on-male" sex, which has been recognized as a basis for
     a legal claim. Accordingly, allegedly involuntary termination of Mr. Randazza's
21   employment, based on Mr. Randazza's April 2012 complaint about the filming
     of pornography in his office — which did not constitute statutorily "protected
22   activity" —is not includible as a component for a statutory claim that he had
     been fired in retaliation for making that complaint. Mr. Randazza's
23   complaint about the allegedly personally offensive oral copulation of Mr. Gideon in the
     back seat of his car on August 9, 2012 was not genuinely or deeply felt and
24   was made primarily for tactical reasons. Therefore, the end of Mr. Randazza's
     employment was not and was not the product of anything retaliatory, in
25   violation of public policy (e.g., engaging in protected activity), as a matter of
     law.
26
     Moreover, the preponderance of the evidence is that Mr. Randazza had
27   advance notice of the filming of a pornographic video in his office and that he
     did not either object or indicate that the noticed shoot was in any way
28   objectionable or offensive to him. That evidence is the playful exchange of

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

texts between Messrs. Randazza and [Gibson]  concerning the intended shoot and the testimony of the director of the shoot, Chaz Vorrias, who testified that he advised Mr. Randazza of the shoot in advance and received no objection from Mr. Randazza.

M.      Contrary to the strong impression created by Mr. Randazza's pre-Arbitration Hearing narrative of allegations, there was no evidence that any photograph(s) of his wife or children or anything personal of or concerning Mr. Randazza or any member of his family, or in any way reasonably violative of their respective personal privacy, were used or visible in the video. The (possible) visibility of a painting on the wall of Mr. Randazza's office, which was painted by Mr. Randazza's wife, is not to the contrary.

In the circumstances, there was no action taken which was either statutorily offensive or hostile.

**IAA at 6-12.[17]**

Randazza complains that the Arbitrator erred in determining that his sexual harassment/hostile work environment claims had not been proven and argues that this determination evidences "unmistakable bias."  Randazza provides no evidence of or allegation of misconduct, allegations of the Arbitrator exceeding his powers in ruling on this claim, nor does he allege a manifest disregard of the law.  Instead, it appears once again that Randazza is simply disagreeing with the Arbitrator's decision—or claiming the evidence could not support such decision.  As detailed by Plaintiffs in their post-arbitration brief, there was an overwhelming amount of evidence that the Arbitrator could rely upon in finding Randazza had not met his burden of establishing a hostile work environment. **Exhibit H, Excelsior Post-Arbitration Brief at 22:21-27:14.**  The fact that Randazza disagrees with that result is not enough to evidence that the award was arbitrary or capricious under the common law standard to vacate.

The same can be said of Randazza's claim of bias, or "evident partiality" as it is referred to in NRS 38.241.  By way of reminder, evident partiality claims can only be proven if there is evidence of "actual bias" or if the Arbitrator failed to disclose something which may evidence actual bias. *Thomas*, 122 Nev. at 98.  Randazza provides no facts which

---

[17] Randazza's Opposition bizarrely claims that the scene filmed in his office "included urination on his desk." Once again, Randazza mischaracterizes evidence submitted at the arbitration. Not only was there no evidence introduced at the arbitration regarding urination on the desk of Mr. Randazza, but Randazza has never even made such an allegation until this filing.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

30.

1    indicate "improper motives" by the Arbitrator as required to vacate such a decision. *Id.* The

2    only evidence Randazza does cite to in support of his allegations of bias is that Arbitrator

3    ruled against him. In light of that fact, Randazza has not established a ground to vacate

4    the award on that or any other basis.

### f. The Arbitrator Correctly Determined that Randazza Breached His Fiduciary Duties and Committed Legal Malpractice

7    Randazza makes various arguments in an attempt to convince the Court that the

8    Arbitrator erred in his conclusion that Randazza breached fiduciary duties he owed to

9    Excelsior and Liberty and that some portions of the award lack a sufficient basis.

10    Randazza is again purposely vague as to what grounds he contends the Arbitrator's

11    decision be vacated. It should also be noted that Randazza makes multiple factual and

12    legal arguments which should not be considered by the Court because Randazza never

13    made or established at the arbitration or in any of his post-arbitration briefing.

14    Randazza's chief complaint is centered on a $275,000 award of actual damages that

15    the Arbitrator granted Plaintiffs because of various breaches Randazza engaged in.

16    Randazza claims the Arbitrator granted this award in manifest disregard of the law and

17    without any factual basis. Specifically, Randazza claims that the Arbitrator's legal

18    conclusion that proximate causation of damages was not required for monetary damages to

19    be awarded on a breach of fiduciary duty claim was error. The only cases Randazza cites

20    is three California cases which recite the barebones elements of a legal malpractice

21    claim—which in most instances recognizes causation and harm as elements of damages.

22    While the Arbitrator does conclude that "[e]thical and other violations of fiduciary duties do

23    not require 'fact of harm' to be shown by a preponderance of the evidence," his decision in

24    that regard relates to other "ethical" breaches of fiduciary duties in which the Arbitrator

25    correctly presumed "fact of harm" caused to Excelsior/Liberty by Randazza. **See IAA at**

26    **16, 19 n.17, 20 n.18.** Randazza attempts to misdirect this court to legal malpractice cases

27    when the Arbitrator's finding related to the breach of fiduciary duty claim. In that respect,

28    the Arbitrator did not manifestly disregard the law as he explained at length the legal

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

31.

1    authority for his position—and acknowledges that experts for both parties presented

2    conflicting interpretations of the law on that subject. **IAA at 15-17, 19 n.17, 20 n.18, 21.**

3    The Arbitrator's thorough consideration of varying case law and his interpretation of the

4    same does not amount to manifest disregard of the law.

5           Further, Randazza's challenge to the $275,000 award based upon a lack of factual

6    damages is also misguided because that award was based on actual damages incurred by

7    Excelsior. Excelsior presented evidence at the Arbitration which showed that because of

8    various forms of legal malpractice committed by Randazza during the course of the Oron

9    litigation, Oron not only appealed United States District Court Judge Navarro's Order

10    enforcing the settlement agreement, but on November 16, 2012 they also filed an

11    arbitration demand against Liberty. **Exhibit G (Arbitration Exhibit 334)**. The demand

12    alleged, amongst other things, that Randazza utilized a hacker to obtain privileged and

13    confidential documents/information for use in the litigation. **Exhibit G (Arbitration Exhibit**

14    **334 EMC000738); Exhibit D at 768:18-769:12.** Oron also alleged that in contravention of

15    the settlement agreement, Liberty did not dissuade others from bringing suit against Oron

16    and actually assisted another company in filing a "copycat" lawsuit against them. **Exhibit G**

17    **(Arbitration Exhibit 334 EMC000741).** As discussed above, Randazza was the sole

18    cause of both of these serious allegations made in the arbitration demand. Because of

19    these serious allegations, Excelsior's new counsel engaged in settlement discussions with

20    Oron and eventually Liberty was forced to resettle the Oron case for $275,000 (which was

21    half of the previous settlement amount of $550,000). **Exhibit D at 765:17-768:5, 768:18-**

22    **769:12.** At the time of the resettlement the entire $550,000 settlement was being held

23    hostage by Randazza in his trust account supposedly as disputed funds. Randazza agreed

24    to release $275,000 to Liberty so that amount could be paid back to Oron. *Id.* at 765:17-

25    **768:5, 768:18-769:1.** Randazza's malpractice and unethical behavior was the driving force

26    behind Liberty's agreement to resettle the case for half of what it had already been

27    awarded. *Id.* at 766:21-767:8, 770:4-770:8. Accordingly, Randazza's actions during the

28    Oron litigation undoubtedly caused Liberty actual damages in the amount of $275,000 (plus

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

1    interest from August 2012 to the present).

2         Randazza claims that no reasonable construction of the evidence could tie the

3    $75,000 negotiation to the $275,000 reduced settlement. In so doing, Randazza must be

4    claiming that the award should be vacated because it was arbitrary and capricious.

5    Unfortunately for Randazza, as noted above, there was factual support for the $275,000

6    that Excelsior/Liberty suffered in actual damages. **Excelsior Post-Arbitration Brief at**

7    **63:2-64:12.** Randazza is correct in that the Arbitrator does state that "E/L was damaged in

8    at least the amount of $275,000, by reason of the Oron resettlement, as a direct and

9    proximate result of events being set in motion by Mr. Randazza's violations of fiduciary duty

10   and other duties, by his having secretly negotiated a $75,000 bribe. **IAA at 18 ¶ T.**

11   However, that sentence refers to "violations of fiduciary duty"—meaning not a single

12   violation. *Id.*

13        The fact that the arbitrator did not specifically mention every violation of a fiduciary

14   duty relating to the Oron settlement that led to the resettlement is irrelevant. That is

15   especially true when the Arbitrator specifically recognized the severity of Randazza's

16   breach by utilizing a hacker to obtain privileged and confidential information regarding Oron

17   and causing Liberty to violate the Oron settlement agreement by aiding and encouraging

18   another party in their claims against Oron. ***See* IAA at 8 ("further damaging E/L's**

19   **recovery in the Oron litigation by knowingly forwarding illegally "hacked" computer**

20   **data to counsel for another company") and IAA at 18 (noting that the Nevada State**

21   **Bar's initial dismissal of the complaint against Randazza was irrelevant because**

22   **many of the issues and much of the evidence presented at the arbitration ... was not**

23   **available to be presented by E/L in support of its grievance (e.g., Mr. Randazza's**

24   **assisting Datatech, including forwarding fruits of a disclosed ... computer "hacker").**

25   It is important to note that Randazza is not claiming that there was no evidence of him

26   engaging in those acts which ultimately led to the resettlement—he simply seeks that the

27   award be vacated because of how the Arbitrator chose to draft the award. In so doing,

28   Randazza fails to show clear and convincing evidence that a ground exists to vacate the

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1 award.

2  Randazza also argues, for the first time, that the record is devoid of corroboration

3 that Liberty paid Oron $275,000—which he claims undermines Plaintiffs actual damages.

4 Randazza never raised this issue during the arbitration proceeding.   In light of that fact,

5 Randazza cannot claim that the Arbitrator's conclusion that Excelsior was damaged by that

6 repayment of those funds lacks evidentiary support.[18]   Regardless of Randazza's attempt

7 to make arguments he failed to raise at arbitration or in his post-arbitration briefing, there is

8 evidentiary support in the record for the Arbitrator's finding.  Mr. Gibson specifically testified

9 regarding the settlement at the hearing:

10  Q: Was the Brownstein firm able to eventually enter a new
     settlement agreement with Oron?
11  A: Yes, they were.
   Q: Under the new settlement terms, did the company agree to
12     forego half of the $550,000 settlement?
   A: Yes.
13  Q: So you resettled for $275,000; is that correct?
   A: That's correct.
14  Q: Did the company agree to release the other half, the other
     $275,000 back to Oron?
15  A: Yes, we did.  It came first to us, and then we transferred it to
     Oron.

16

17 **Exhibit D at 765:25-766:14.**  Plaintiffs also dispute Randazza's claim that Plaintiffs failed to

18 produce communications relating to the resettlement of the Oron agreement. Plaintiffs

19 produced the non-privileged communications to opposing counsel and prepared a privilege

20 log for those that were privileged.    Additionally, Plaintiffs produced and utilized the

21

22 [18] Randazza raises another new argument—that the provision of the original settlement agreement
23 between Oron and Liberty, in which Liberty agreed to dissuade others from bringing suit against
  Oron, violates public policy because it may have been construed to prevent Randazza from
representing other parties against Oron.  First, Randazza never raised this issue during the
24 arbitration or in his post-arbitration briefing, thus he cannot possibly argue that the Arbitrator
committed some manifest disregard of the law with respect to his findings.  Even so, the obvious
25 problem with Randazza's argument is that the settlement agreement was not a restriction of
anyone's right to practice.  The agreement simply stated that Liberty would dissuade others from
26 bringing suit against Oron.  Randazza's conduct prompted allegations that Liberty breached the
agreement by aiding and encouraging other parties to sue Oron.  Even if this provision were a
27 violation of the rules of professional conduct, a separate and independent basis existed for
resettling the Oron litigation—utilizing a hacker to improperly and likely unlawfully obtain confidential
28 and privileged information from Oron—making Randazza's argument moot.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

34.

1  executed resettlement agreement with Oron during the Arbitration hearing. **See Exhibit G**

2  **(Arbitration Exhibit 386).**

3       Finally, Randazza claims that the Arbitrator erred in awarding Plaintiffs pre-award

4  interest at a rate of 10 percent—which is higher than the rates recognized in NRS

5  99.040(1) or NRS 17.130(2).[19] As an initial matter, Randazza fails to explain how or why

6  NRS 99.040 or NRS 17.130 apply to the **Arbitrator's** granting of pre-award interest at the

7  rate he indicated.  The Nevada Supreme Court has noted that NRS 99.040 only applies to

8  damages awarded to party that relate to a sum "due" pursuant to a contract. *See BHY*

9  *Trucking, Inc. v. Hicks*, 102 Nev. 331, 333, 720 P.2d 1229, 1230-31 (Nev. 1986).  The

10  interest award on the $275,000 does not relate to a sum due pursuant to a contract.  While

11  NRS 17.130 applies to a Court's granting of post-award, prejudgment interest, and post

12  judgment interest, Randazza cites no authority for the proposition that the **Arbitrator** is

13  bound to follow NRS 17.130 when granting pre-award interest as part of the actual

14  arbitration award. *See Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d

15  1050, 1056 (9th Cir. 2013)(NRS 17.130 "permits courts to award post-award, prejudgment

16  interest running from the date of the arbitration award").  However, JAMS Employment

17  Arbitration Rules and Procedures Rule 24 provides: "The Award of the Arbitrator may

18  allocate attorneys' fees and expenses and interest (at such rate and from such date as the

19  Arbitrator may deem appropriate)..."

20       Randazza does not contest the fact that the Arbitrator has discretion to grant pre-

21  award interest. *See Mausbach v. Lemke*, 110 Nev. 37, 42, 866 P.2d 1146, 1150 (1994).

22  With that in mind, even if the Arbitrator should have followed the rate provided in NRS

23  17.130 – which Excelsior disputes - that does not mean the Arbitrator's error is grounds to

24  vacate the award.  Courts have declined to vacate awards even where Arbitrator's granting

25  of any interest was unpermitted by the law. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95,

---

[19] It cannot go unnoticed that the reason Randazza claims those statues apply is because the harm occurred in Nevada (resettlement of the Oron case occurred in Nevada).  That is precisely why Plaintiffs have contended—and the Arbitrator agreed—California law did not apply to Randazza's other statutory and common law claims pertaining to his work in Nevada.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

110-12 (2d Cir. 2006)(arbitrator's award of prejudgment interest on punitive damages claim when interest on punitive damages was unavailable pursuant to the law was not manifest disregard of the law when no evidence the arbitrator new of the law and the party opposing failed to alert the arbitrator of legal error); *Kenneth H. Hughes, Inc. v. Aloha Tower Dev., Corp.*, 654 F. Supp. 2d 1142, 1146-47 (D. Haw. 2009)(arbitrator did not manifestly disregard Hawaii law when he determined that pre-award interest in amount of $271,755.44 should be granted against Hawaii development agency even though Hawaii statute provided that no interest was allowed on any claim against the state up to the time of judgment); *Halliburton Energy Servs., Inc. v. NL Indus.*, 553 F. Supp. 2d 733, 770 (S.D. Tex. 2008)(granting prejudgment interest was not manifest disregard of the law, misconduct, or evidence that arbitrator exceeded his powers).  Randazza has made no attempt to alert the Arbitrator of his position that the interest is not in conformance with NRS 17.130, and accordingly, the Arbitrator cannot be said to have manifestly disregarded the law.

### g.  The Arbitrator Did Not Err In His Unjust Enrichment Determination

The evidence at arbitration showed that Randazza conducted pro-bono litigation while accepting salary from the Company, yet failed to disclose or turn over an award of $55,000 in attorney's fees he recovered in the pro-bono case.  Randazza had proposed the pro-bono project to Excelsior, which Excelsior accepted under the condition that Randazza comply with his Employment Agreement and represent the client as General Counsel of Excelsior.    Randazza's  Employment  Agreement  specifically  contemplated  that  when Randazza conducted pro-bono cases it would be under the auspices of Excelsior's legal department and that the work be done in a manner that would allow any benefits from the representation to flow to the company.   Randazza never disclosed the fee award he received for work on those pro bono matters.  Additionally, Randazza was unjustly enriched by the $5,000 contribution made by James Grady to benefit the Company in the Oron litigation.  Even though Excelsior was footing the entire bill for the Oron litigation, Randazza never informed Excelsior of the $5,000 contribution, never turned the money over to

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

36.

1  Excelsior, and at arbitration was unable to identify what he used those funds for (other than

2  to line his own pockets).   In light of these facts, the Arbitrator ordered that Randazza

3  reimburse Excelsior for the unjust enrichment he benefitted from.  **See complete**

4  **discussion in Excelsior's Post-Arbitration Brief at 71:11-72:10 (Exhibit H).**    After

5  considering the evidence presented, the Arbitrator concluded:

6        U.     Mr. Randazza was unjustly enriched in the amount of $60,000. Of that
       amount, $55,000 was paid to and received by Mr. Randazza's law firm, rather
7        than E/L, in connection with (1) Mr. Randazza's ostensibly pro bono
       representation in connection with the so-called "Righthaven cases," of which
8        E/L was generally aware and consented to (A) with the understanding and on
       the condition that Mr. Randazza was acting as a faithful, compensated E/L
9        employee, including in compliance with his employment agreement, with
       costs of the representation advanced by E/L, including compensation as
10       employees of Mr. Randazza and his legal assistant Erika Dillon, and (2)
       unaware that compensation was to be or actually paid to Mr. Randazza, via
11       his law firm, until after the fact, indeed after Mr. Randazza's resignation from
       E/L employment. Mr. Randazza also received $5,000 from James Grady, in
12       connection with E/L's Oron litigation. Although Mr. Randazza testified, without
       corroboration, that Mr. Grady's payment was used for Oron litigation
13       expenses, Mr. Randazza did not disclose the receipt of the Grady $5,000
       payment to E/L. In the circumstances, and under principles of unjust
14       enrichment, all compensation paid to or for the benefit of Mr. Randazza
       should have been paid directly to E/L or turned over to E/L by Mr. Randazza -
15       --neither of which was done, immediately or ever.

16  **IAA at 18-19.**

17       Randazza now argues that by finding he was unjustly enriched, the Arbitrator is

18  somehow piercing the corporate veil.  He also claims that the Arbitrator "misapprehended"

19  the facts and the law by finding unjust enrichment.    Randazza Opposition at 40:25.

20  Randazza's "piercing the veil" argument was never raised by Randazza at the arbitration

21  and, therefore, cannot be considered here.  "[I]t is well settled that a party may not sit idle

22  through an arbitration procedure and then collaterally attack that procedure on grounds not

23  raised before the arbitrators when the result turns out to be adverse." *Marino v. Writers*

24  *Guild of America, East, Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993), *cert. denied*, 510 U.S.

25  978, 114 S. Ct. 472, 126 L. Ed. 2d 423 (1994).  Even if it were considered, this argument

26  entirely misses the mark.  The Arbitrator did not find Randazza's law firm—a non-party to

27  this arbitration—liable for unjust enrichment as he attempts to characterize it.    The

28  Arbitrator found that Randazza was directly enriched to the tune of $60,000. **IAA at 18-19.**

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

The case Randazza cites in support his argument, *Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S. A.*, 312 F.2d 299, 300-01 (2d Cir. 1963), arose when an Arbitrator found a non-party to the arbitration liable, and the prevailing party attempted to confirm the judgment as against that non-party.  *Id.*  Randazza's case law is misguided and his argument is meritless.  The fact of the matter is, Randazza kept $60,000 that should have been turned over to his client; whether he decided to initially deposit the ill-gotten gains with his firm or anywhere else is irrelevant; the Arbitrator found he must pay that amount to Excelsior/Liberty as damages.

Finally, and as mentioned previously, Randazza's claim that the Arbitrator "misapprehended" the facts and the law in the instant case is not a ground to vacate the arbitration award.  Randazza fails to present clear and convincing evidence that the arbitrator manifestly disregarded some specific legal mandate, and as noted previously, there was substantial evidence in the record for the Arbitrator to come to his conclusion that Randazza was unjustly enriched.  ***See Exhibit H, Excelsior's Post-Arbitration Brief at 71:11-72:10; IAA at 18-19.***

### h. The Arbitrator Correctly Found That Randazza Spoliated Evidence and Committed an Act of Conversion

The IAA included a finding that Randazza deliberately spoliated evidence and committed conversion with respect to Excelsior's files, data, and equipment when Randazza caused both his company-issued laptop and the laptop of his legal assistant to be wiped of all data contained therein in the days leading up to his resignation.  The damning evidence was discussed in **Exhibit H, Excelsior's Post-Arbitration Brief at 5:18-9:7; 70:2-71:6**.  The evidence confirmed that Randazza purposely destroyed evidence off his computer by running data-wiping software on his computer on four different occasions from August 28-30, 2012. *Id.* The same software was run on Randazza's assistant's laptop on August 29, 2012.  *Id.*  As a result of the software being run, "[n]o deleted files could be recovered from the unallocated space of either device due to the use of [the software] Disk Utility Secure Erase." **Exhibit G (Arbitration Exhibit 305 at p. 3 of**

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

38.

41);  **Exhibit E at 978:20-981:19, 982:17-21, 985:5-8.**  Randazza attempted to justify his actions at Arbitration, as he does here, by claiming that he only ran the wiping software to protect his privacy and the privacy of his clients.[20]

The Arbitrator found Randazza's position to be incredible and meritless:

> In the circumstances, Mr. Randazza's generalized and unspecified claims of privacy --- in attempted justification of his ordered complete and multiple wipings of company-owned computers --- cannot be accorded weight or credibility. By the same token, that ordered conduct raises an inference that whatever was deleted was known and intended by Mr. Randazza to be harmful to him and any claims and contentions which he might make in any dispute with E/L --- i.e., deliberate spoliation, in addition to conversion.

> Mr. Randazza cannot escape liability for spoliation or conversion --or, additionally, violation of his fiduciary duties as an employee, executive and general counsel of E/L, by reason of the same conduct --- by claiming, as he has, that Respondents have not shown any specific or tangible injury by reason of his conduct in causing company-owned computers to be completely wiped of all data prior to their resisted and belated return. In the circumstances---and paraphrasing former Defense Secretary Donald Rumsfeld ---neither Respondent should bear any burden or responsibility to come forward with any evidence of damage, when they do not know what they do not know. As stated above---with his actual exclusive knowledge of what was on the computers' hard drives, before and because he ordered them to be completely wiped and, in the instance of his returned laptop, multiply wiped before ultimate return--- Mr. Randazza committed spoliation of evidence, as well as improper conversion of his employer's files, data and equipment and, in so doing, also violated his fiduciary duties owed to E/L.

**IAA at 17.**

Randazza claims the Arbitrator erred in concluding that he spoliated evidence and/or converted Excelsior's documents and files by deleting his laptop and uploading Excelsior documents to cloud-based serve which prevented them from accessing their own documents and data.[21]  As highlighted above, there was substantial evidence which

---

[20] Randazza also claims that neither Nevada nor California recognizes causes of action for spoliation and that Excelsior did not make such a claim.  Randazza is correct that spoliation is not a cause of action but Plaintiffs provided the Arbitrator with a significant amount of case authority which stands for the proposition that the Arbitrator could and should sanction Randazza for deliberate spoliation of evidence.  **Exhibit H, Excelsior's Post-Arbitration Brief at 5:18-9:7.**  JAMS Employment Arbitration Rule 29 also vests the Arbitrator with authority and discretion to sanction Randazza.  Randazza's argument that the rules don't require the parties to exchange discovery until the Arbitration commences is irrelevant to whether he spoliated evidence while on notice of the dispute between he and the Excelsior and was under an obligation to preserve.

[21] Randazz'a claim that he wiped his client's computers without their knowledge or consent in order to comply with the Rules of Professional Conduct by protecting attorney client privileged documents is ludicrous. Nothing in the those rules would condone or support such conduct.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1  allowed the Arbitrator to find that Randazza spoliated the evidence and committed

2  conversion. Randazza's attempt to reargue the facts does not supply this Court with

3  substantial evidence to conclude that the Arbitrator's findings in this respect were arbitrary

4  or capricious nor is there evidence that the Arbitrator manifestly disregarded the law.[22]

5      Finally, Randazza attempts to shift the blame off his own spoliation and argue that

6  the Arbitrator's sanctions are unfair because one of Excelsior's non-management

7  employees testified at the Arbitration that he no longer had communications between

8  himself and Randazza from 2012. With respect to Randazza's argument regarding the

9  employee's testimony, the Arbitrator noted: "Mr. Vorrias's admitted deletion of his emails

10  with Mr. Randazza was done without knowledge of their significance in connection with the

11  dispute underlying this arbitration and, in the event, is not attributable to either Excelsior or

12  Liberty, because he was not a managing agent of either entity."   **IAA at 11 n.8.**

13  Randazza's claim that by holding him, an experienced attorney, to a different standard than

14  a non-management employee of Excelsior with only limited knowledge of the instant

15  litigation was a double standard that cannot be condoned is entirely unpersuasive.

16  Nonetheless, even if such a decision was an error (it was not), it still would not be grounds

17  to vacate the award and Randazza provides no authority which indicates otherwise.

18              ***i. Disgorgement Was Appropriate***

19      The IAA awarded Excelsior $197,000.00 as disgorgement representing a small

20  portion of Randazza's employment compensation (including salary and bonuses) paid to

21  him during his employment. The disgorgement was based on Randazza's violations of

22  fiduciary duty owed to Excelsior/Liberty in connection with the TNAFlix litigation and

23  MegaUpload cases, during Randazza's concurrent representation of XVideos and/or XNXX

24

---

25  [22] Randazza also mischaracterizes the Interim Arbitration Award. He claims that the Arbitrator
26  "reserved his decision on damages for spoliation and/or conversion pending further evidentiary
   evidence of data destruction." Randazza's Opposition at 41:16-18. That statement couldn't be
   further from the truth. While the Arbitrator did state that the amount he will grant for the
27  conversion/spoliation (above and beyond the $3,215.98 Excelsior incurred in conducting a forensic
   examination of the laptops) was yet to be determined, his decision on the value of said award is not
28  conditioned upon either party presented additional evidence. **IAA at 23-24.**

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1    during his employment by Excelsior, and for spending excessive, undisclosed, time on non-

2    Excelsior/Liberty matters far beyond contractually-permitted time under his employment

3    agreement. **IAA at 24**. The parties provided extensive briefing to the Arbitrator regarding

4    the issue of whether or not disgorgement was an available remedy. Moreover, the parties'

5    experts also provided opinions and case citations for the Arbitrator to consider.

6        Randazza claims that the Arbitrator erred both legally and factually in granting the

7    remedy of disgorgement for his breaches of fiduciary duty and in finding he breached his

8    duty in the first place. Specifically, Randazza claims that there was (a) no precedent for

9    attorney fee disgorgement for the Arbitrator to rely upon; (b) there was no breach of

10   fiduciary duty, causation, or harm; (c) wage laws prohibit in-house counsel from disgorging

11   earnings; and (d) there was no actual harm or oppression, fraud, or malice warranting

12   disgorgement (which he claims is punitive-damage-like).

13       All of Randazza's arguments lack merit. Randazza does not allege the Arbitrator's

14   disgorgement award was the product of evident partiality, misconduct, or the Arbitrator

15   exceeding his powers. Instead, Randazza only states that the disgorgement order was

16   issued in manifest disregard of the facts and the law. Accordingly, Randazza appears to be

17   challenging this decision based on the two limited common law grounds to vacate the

18   award. Randazza fails to present clear and convincing evidence of either ground.

19       As an initial matter, Plaintiffs introduced a substantial amount of evidence to provide

20   a proper factual basis to establish Randazza's breaches of fiduciary duties and/or

21   malpractice. A summary of that evidence presented with regard to the TNAFlix litigation,

22   MegaUpload litigation, Randazza's concurrent representation of XVideos and/or XNXX

23   during his employment by Excelsior, and Randazza's excessive and undisclosed time

24   spent on non-Excelsior/Liberty matters far beyond contractually-permitted time under his

25   employment agreement can be found in **Exhibit H, Excelsior's Post-Arbitration Brief at**

26   **29:15-40:12; 53:4-57:11; 72:23-73:15; and Exhibit M hereto, Excelsior's Post-**

27   **Arbitration Reply Brief at 18:7-25:22**. Randazza's attempts to relitigate the facts before

28   this court is improper and should not be considered. The Arbitrator had a sufficient factual

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1    basis for his determination that Randazza breached his fiduciary duties to Excelsior/Liberty

2    and he presents no clear or convincing evidence that the Arbitrator's finding otherwise was

3    arbitrary or capricious.

4         With respect to the Arbitrator's alleged legal errors, there is zero evidence that the

5    Arbitrator manifestly disregarded the law.  Both parties retained legal ethics experts in this

6    case who gave conflicting opinion testimony regarding the applicability of disgorgement as

7    a potential remedy in general and its application to the instant case.  After the Arbitration

8    was completed, the parties then filed post-arbitration briefs and reply briefs to address the

9    legal and factual issues before the Arbitrator.  Both parties presented authority on whether

10   disgorgement was an appropriate remedy in this case.  A discussion of the legal analysis

11   on this topic presented by Excelsior can be found in **Exhibit H, Excelsior's Post-**

12   **Arbitration Brief at 64:13-70:1**.[23]  Having reviewed the authority submitted by both parties,

13   the Arbitrator interpreted the law and applied them to the facts of the instant case—

14   ultimately deciding that disgorgement of a portion (much less than Excelsior requested) of

15   Randazza's salary and bonuses was appropriate.  ***See IAA at 19-22 (including Footnotes***

16   ***17-20 which contain a detailed analysis of the Arbitrator's legal reasoning).***  The fact

17   that the Arbitrator ultimately interpreted the conflicting legal authority in favor of Plaintiffs is

18   not evidence that the Arbitrator manifestly disregarded the law.[24]  Even if this Court

19   believed, as Randazza claims, that the Arbitrator erred in his interpretation of the law such

20   an error would not be grounds to vacate the award.

21        Randazza raises, for the first time, an argument that the Arbitrator could not have

---

22   [23] It should also be noted that in addition to the authority cited in Excelsior's Post-Arbitration Brief on
23   this topic, a recently issued decision by the Georgia Court of Appeals also supports Excelsior's
     position. *Helms & Greene, LLC v. Willis*, 773 S.E.2d 491, 495 (Ga. Ct. App. 2015), *reconsideration*
24   *denied* (July 23, 2015)(law firm could proceed on its breach of fiduciary duty claim against its former
     managing member, who engaged in marketing activities for his separate business while employed
25   by the firm, even though law firm failed to demonstrate that it incurred damages or that managing
     member obtained benefit from his marketing activities, where law firm sought alternative remedy
26   that permitted recovery of compensation paid by law firm).
27   [24] It should also be noted that other than Randazza's subjective believe, his claim that the Arbitrator
     did not consider the factors to determine the extent of the forfeiture is entirely unsupported.  The
     fact that the Arbitrator did not explain every detail regarding how he came to his ultimate decision
28   does not mean his decision was in error or that he manifestly disregarded the law.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800                                42.

1  granted disgorgement to an in-house attorney because California labor laws prevent the

2  same. Randazza never raised this argument during the Arbitration or in his post-arbitration

3  briefing. *See Exhibits I and L.* Plaintiffs are unsure how Randazza can reasonably claim

4  the Arbitrator erred or manifestly disregarded a law which had nothing to do with the instant

5  dispute and was never even addressed with the Arbitrator.    Additionally, the law in

6  question, California Labor Code Section 221, is entirely inapplicable.  The purpose of that

7  law is to prevent "secret deductions or 'kickbacks' that made it appear as if an employer

8  was paying wages in accordance with an applicable contract or statute but in fact paying

9  less." *Steinhebel v. Los Angeles Times Commc'ns*, 126 Cal. App. 4th 696, 707, 24 Cal.

10  Rptr. 3d 351, 358 (2005). Randazza provides no authority for the proposition that an award

11  of disgorgement would violate the law or that it is in any way designed to prevent such a

12  result.

13        Finally, Randazza's claim that the Arbitrator erred in granting what Randazza

14  characterizes as punitive damages is also without merit.   The Arbitrator did not order

15  punitive damages—and nowhere in the Interim Arbitration Award does the Arbitrator

16  indicate he is ordering punitive damages.   Randazza likens disgorgement to punitive

17  damages because the Arbitrator noted that one of the rationales for why disgorgement or

18  fee forfeiture is necessary (especially in cases where harm is difficult to prove) is to deter.

19  The Texas Supreme Court explained the issue as follows:

20          To limit forfeiture of compensation to instances in which the principal sustains
            actual damages would conflict with both justifications for the rule. It is the
21          agent's disloyalty, not any resulting harm, that violates the fiduciary
            relationship and thus impairs the basis for compensation.  An agent's
22          compensation is not only for specific results but also for loyalty. Removing the
            disincentive of forfeiture except when harm results would prompt an agent to
23          attempt to calculate whether particular conduct, though disloyal to the
            principal, might nevertheless be harmless to the principal and profitable to the
24          agent. The main purpose of forfeiture is not to compensate an injured
            principal, even though it may have that effect. Rather, the central purpose of
25          the equitable remedy of forfeiture is to protect relationships of trust by
            discouraging agents' disloyalty.
26
27  *Burrow v. Arce*, 997 S.W.2d 229, 238 (Tex. 1999).  This reasoning can hardly be said to

28  transform the equitable remedy of disgorgement or forfeiture into punitive damages.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

43.

Further, this argument was never brought before the Arbitrator which means Randazza has zero evidence that the Arbitrator manifestly disregarded the law in his determination.

### j. Remittance of the Trust Funds and the Ordered Accounting Was Appropriate

The IAA requires Randazza to turn over to Plaintiffs all <u>Oron</u>-related client funds and, further, an additional $30,000 of non-Oron-related client funds of Plaintiffs—which funds have been held in Randazza's attorney trust account throughout the pendency of this dispute. The Arbitrator also ordered an accounting of that trust account to ensure compliance the ordered remittance of the trust fund dollars and to ensure no other Excelsior settlement amounts were received by Randazza that Excelsior is unaware of. The JAMS Employment Arbitration Rules & Procedures specifically provide:

> The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

**JAMS Employment Arbitration Rules & Procedures Rule 26.**

A brief history of the Oron settlement funds is necessary for the Court to understand the misrepresentations made by Randazza with respect to these funds. Prior to Randazza's resignation from the company in August 2012, Liberty settled a copyright infringement lawsuit against Oron. As part of that settlement, Oron agreed to pay $550,000 to Liberty in exchange for the release of its claims. The entire $550,000 was deposited into Randazza's attorney trust account prior to his resignation from Excelsior. While Randazza was an employee of Excelsior, his primary duty in that position was to litigate on behalf of Liberty. Randazza retained the funds in his trust account even after his resignation by resorting to self-help and claiming he had a right to hold those funds hostage as disputed funds based upon his bogus personal claims against Excelsior. Oron later filed an arbitration demand against Liberty and Liberty eventually re-settled with Oron and agreed to pay back $275,000 to Oron. Randazza released $273,000 of the $550,000 of Liberty's funds he was holding hostage because, admittedly, it exceeded the amount Randazza claimed was actually in dispute in the arbitration he filed against Excelsior/Liberty. *See*

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

44.

1   **Exhibit 5 to Randazza's Opposition to Plaintiffs' Request for an Order Shortening**
2   **Time and Motion for Continuance**.  Those funds were used by Liberty to satisfy the
3   resettlement with Oron.  Randazza still unlawfully retained the remaining approximately
4   $275,000 of Liberty's money in his trust account.  Earlier this year, those funds were
5   interplead (until resolution of the arbitration) to the state court where a separate lawsuit
6   between Randazza Legal Group and Excelsior/Liberty is currently pending.  **See Exhibit A**
7   **to Exhibit 6 to Randazza's Opposition to Plaintiffs' Request for an Order Shortening**
8   **Time and Motion for Continuance**.  Randazza has since stipulated to the release of the
9   entirety of the funds that had been interplead to the Court.

10          Randazza first claims that because the funds were not previous held in a personal
11  trust account, and were instead in Randazza's firm trust account, the Arbitrator lacks
12  authority to issue such an order absent a finding that the firm is an alter-ego of Randazza.[25]
13  Randazza did not raise this argument with the Arbitrator and it should not be considered
14  here.   Even if considered, this argument lacks merit.   The Arbitrator is not ordering
15  Randazza's firm to do anything.  However, Randazza, the person with independent control
16  over his trust account has been ordered to release the funds.  Moreover, Randazza was
17  improperly withholding his former's client monies on the basis of his own personal dispute
18  with it.  Had those funds not related to the instant dispute, Randazza never would have
19  stipulated to allow them to be released upon the Arbitrator's award being issued.  *Id.*
20  Excelsior/Liberty also respectfully suggests that Randazza has waived this argument by
21  already stipulating to release the entirety of the funds after the Arbitration Award was
22  issued.  As the Arbitrator was vested with broad discretion to fashion any remedy that was
23  just and equitable, his decision to order Randazza to release these funds and to submit the
24  trust account Randazza held these funds in to an accounting as a result of this dispute was
25
26
27
28

[25] Randazza also makes repetitive arguments regarding his position that to the extent such funds were wages owed to Randazza they cannot be returned to Excelsior pursuant to California law and that disgorgement is entirely impermissible.  As addressed previously, both of these arguments lack merit.

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

45.

1   not in manifest disregard of the law nor an act that exceeded his powers.[26]

2         Further, if something were factually incorrect or improper, as Randazza claims there

3   was regarding the additional $30,000 in settlement funds in his trust account, Randazza

4   would have opposed that request in his post-arbitration briefing or would have served upon

5   the Arbitrator a request to correct an error in the IAA pursuant to JAMS Rule 26. Randazza

6   did not oppose that evidence at the hearing or in his post-arbitration briefing, nor has he

7   made an application to the Arbitrator to correct his award. Instead, Randazza raises the

8   issue for the first time in his attempt to challenge the entire case before this Court. Such an

9   action is improper and Randazza provides no evidence of a ground upon which the IAA

10  could be vacated.

11        Finally, Randazza claims that the Arbitrator's requirement that Randazza pay

12  interest on the funds he was improperly holding in his trust account for nearly three years

13  was improper and a manifest disregard of the law because attorney trust accounts are not

14  required to be interest bearing accounts.[27] As noted previously, the Arbitrator specifically

15  took notice of the frivolousness of Randazza's claims and the improper purpose for which

16  he had been holding the funds in dispute. The Arbitrator refused to believe Randazza's

17  claims were brought in good faith. In light of that fact, the Arbitrator acted within his

18  discretion to grant the aforementioned interest on those funds as he clearly believed such

19  an award was just and equitable. **JAMS Employment Arbitration Rules & Procedures**

20  **Rule 26.** Randazza presents no evidence that the Arbitrator manifestly disregarding the

21  law in granting interest on the improperly retained funds.

22

23

---

24  [26] Randazza claims the Arbitrator provided no purpose for an accounting and that Plaintiff never
     requested an accounting in their counterclaims. Despite his claimed lack of notice, the accounting
25   ordered by the arbitrator was a remedy requested during arbitration testimony and by Plaintiffs in
     their post-arbitration brief. Randazza provided no opposition to this request in any of his post-
26   arbitration briefing. Further, the Arbitrator did indicate the purpose of the accounting—"to ensure
     compliance with Paragraph 4 hereof." Paragraph 4 of the Interim Arbitration Award (p. 24) relates
27   directly to the release Excelsior's funds (Oron or any other) from Randazza's trust account.
     [27] Randazza also argues that by setting the value of interest at 10 percent, the Arbitrator committed
28   manifest disregard of the law. As addressed previously, that argument is meritless.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

### k. Return of Company Issued Laptop

During the arbitration, Randazza offered testimony regarding a second laptop that Excelsior issued him during his employment (separate from the laptop he eventually did return which was wiped). Evidence at the Arbitration suggested that Randazza never returned that second laptop. **Exhibit B at 197:15-19; Exhibit D at 772:16-19.** The Arbitrator ordered Randazza to return the laptop within 10 days of the issuance of the IAA. Randazza has not complied with the requirement and has now taken the position that the computer from which he admittedly produced thousands upon thousands of pages of documentation during discovery is not actually company-owned computer. Randazza's counsel in the Arbitration later informed Excelsior that the laptop ordered to be returned was not a company-owned laptop and would not be returned. Excelsior responded to Randazza's counsel indicating that it had no wish to retain a computer that did not belong to it, but because Randazza had not disputed ownership in the post-arbitration briefing and because Excelsior/Liberty justifiably did not put much credence in Mr. Randazza's representations, it did expect the computer to timely be produced so that it could ensure it was the computer from which the documents had been produced and, if so, determine whether it was company property. Randazza countered offering to turn the computer over to a third party at his expense to determine ownership of the computer. Excelsior/Liberty refused wishing to handle the determination of ownership without Randazza's involvement, and Randazza, to date, has not produced the computer.

Randazza states he cannot return a computer that he claims "likely does not exist." Randazza claims that because the Arbitrator ordered him to return the computer, the Arbitrator's award is factually unsupported. Excelsior cited in its post-arbitration brief the testimony from the hearing in which Randazza admitted that he had a second computer which may not have been returned. Excelsior also specifically sought the return of the computer in its post-arbitration brief, yet, Randazza inexplicably failed to even dispute that he had such a laptop. Under the circumstances, Randazza cannot claim the Arbitrator had no basis in which to order return of the laptop. Additionally, Randazza has had ample time

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

47.

1    to inform the Arbitrator of such an error, if indeed an error had been committed, but he has

2    made no application to the Arbitrator requesting such a correction.  For these reasons,

3    Randazza lacks clear and convincing evidence that the Arbitrator exceeded his powers or

4    that his award was arbitrary or capricious.

5    *I.  Mr. Gibson is Not an Alter-Ego and Was Properly Dismissed*

6    Randazza's Arbitration Demand included a request that the Arbitrator enter a

7    declaration that Plaintiffs are alter egos of each other.  Randazza claims at various points

8    throughout his Opposition and Motion to Vacate that the Arbitrator made erroneous findings

9    and conclusions with respect to his alter-ego allegations.  The parties previously briefed the

10   alter-ego issue before the Arbitrator in 2013 when Randazza sought to obtain burdensome

11   and irrelevant discovery in an attempt to concoct his alter-ego claims.  After considering

12   that briefing, in January 2014, the Arbitrator entered an Order segmenting the alter-ego

13   claims from the claims for liability and damages until a later phase of the arbitration (if they

14   did not otherwise become moot – which they did because Plaintiffs prevailed on all claims

15   and counterclaims).  **See Exhibit N, hereto**.  Given that the IAA concluded that Randazza

16   was unable to establish any of his claims, the alter-ego allegation was properly dismissed.

17   *Id.*  For that very reason, the Arbitrator noted:

18       Except as otherwise stated or indicated by context, "E/L" shall be used to
19       reference Excelsior and Liberty,[28] collectively and interchangeably for
         convenience in this Interim Arbitration Award, only. Nothing should be inferred
20       or implied that there is any determination, or basis for any determination, that
         either or both of those entities are "alter egos" of Jason Gibson or of any
21       person or entity. Mr. Randazza failed to sustain his burden of proof that either
         Excelsior or Liberty were or are "alter egos" of Respondent Jason Gideon or
22       of any person or entity. Mr. Gideon will be dismissed as a party in this
         arbitration.

23   **Interim Arbitration Award at 2 n.1; *see also* 29 ¶ 9.**  This ruling is not contradictory as

24   Randazza now claims.  The Arbitrator specifically found that if Randazza was unable to

25

26   [28] Randazza claims the fact that the Arbitrator used the defined term "E/L" when referring the
     Excelsior or Liberty proves that the Arbitrator found Excelsior and Liberty to be alter-egos. Not only
27   is this argument unpersuasive, but it is contrary to the Arbitrator's specific pronouncement that
     "Nothing should be inferred or implied that there is any determination, or basis for any
28   determination, that either or both of those entities are 'alter egos.'"

1    establish his alter-ego claims, the issue of alter-ego liability or declaratory relief was moot.

2    Therefore he properly dismissed Mr. Gibson as a Defendant in the Arbitration and

3    Randazza has failed to provide evidence of a ground necessary to vacate the IAA on that

4    basis.

5         Randazza also argues that Liberty and Gibson could not have taken any money

6    under the IAA if they were not alter-egos of one another, because they were not parties to

7    the arbitration agreement.  What Randazza ignores, is the fact that he was the person to

8    file the Arbitration Demand and affirmatively name Mr. Gibson and Liberty as parties to the

9    arbitration.    **Exhibit O, hereto**.    Further, as Excelsior's full-time general counsel,

10    Randazza's primary job function was to represent/litigate on behalf of Liberty—which ties

11    any Liberty losses caused by Randazza during the scope of his employment directly to

12    Randazza's employment with Excelsior.  Finally, Randazza never raised as a defense in

13    the arbitration that Excelsior, Liberty, or Gibson could not recover on counterclaims

14    because they lacked standing to make the counterclaims that were asserted.  He also

15    never raised the issue in his post-arbitration briefing.  In light of that fact, Randazza cannot

16    now argue that the arbitrator manifestly disregarded the law or lacked factual support for

17    the findings and remedies he provided in the IAA.

18        **D. Randazza's Bias Claims Are Meritless**

19         Randazza asserts that there is evidence of bias in light of various findings the

20    Arbitrator made and noted in the IAA with respect to Randazza's credibility at the

21    arbitration.  Randazza complains that the Arbitrator could not discount his credibility based

22    on (1) his physical position and lack of eye contact during his testimony; (2) through the

23    varying factual assertions contained in his responses to bar complaints and a Charge of

24    Discrimination he filed; or (3) find that the frivolousness of Randazza's sexual based claims

25    had an impact on his credibility as a whole. However, the fact of the matter is Randazza's

26    lack of credibility was overwhelmingly evident.

27         As an initial matter, Randazza fails to articulate how these findings by the

28    Arbitrator indicate evident partiality on his part.  As noted previously, claims of evident

49.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

1   partiality fall into two categories: (1) actual bias and (2) nondisclosure of information.

2   *Thomas*, 122 Nev. at 98.  In nondisclosure cases, "evident partiality is established from the

3   *nondisclosure itself*, regardless of whether the [un]disclosed information [actually]

4   establishes [evident] partiality or bias." *Id.*  Randazza makes no claim that the Arbitrator

5   failed to disclose information which might indicate evident partiality.  With respect to actual

6   bias, Randazza also fails to present any evidence that the Arbitrator had improper motives

7   in making the findings he did.  *Woods*, 78 F.3d at 427.  The fact that the Arbitrator—the trier

8   of fact—found Randazza to not be credible is not a fact that indicates improper motives.

9          Randazza's mannerisms during the evidentiary hearing (in particular, during cross-

10  examination) in this matter were telling. [29]   The same can be said to the various

11  misrepresentations that were highlighted during his cross-examination.    Excelsior

12  summarized evidence which showed Randazza's lack of credibility in their Post-Arbitration

13  Brief to the Arbitrator.  **Exhibit H, Post-Arbitration Brief at 2:20-5:18**.  Randazza's

14  defense to the counterclaims brought against him depended almost entirely upon his own

15  self-serving testimony that although his actions may have appeared unethical, he engaged

16  in them in order to benefit Excelsior.  Setting aside the clear illogical nature of many of

17  Randazza's positions, his lack of credibility made it impossible for the Arbitrator to believe

18  his explanations.

19         The Arbitrator rightfully noted the areas in which he found Randazza's credibility to

20  be lacking:

21         [S]ince the outset of the arbitration, Mr. Randazza made highly-charged,
       sexually-based "core allegations" and his claimed strong reactions to them in
22     support of his statutory and contractual claims, which were in the main
       disproved or not proved.
23

24  _____

25  [29] Randazza attempts to confuse the Court by citing to instructions the Arbitrator gave to him
     regarding how to position himself during direct examination when he and his counsel made the
26   decision to remain in their same positions.  Had Randazza faced his counsel during direct
     examination, he would have been facing away from the Arbitrator and court reporter.  It was on
27   cross-examination that Randazza's positioning was notable for its bizarreness and indicative of his
     lack of credibility.  Randazza turned his body 90 degrees from his cross-examiner, even past the
28   point of facing the court reporter or Arbitrator, could not maintain eye contact with the cross-
     examiner and was in a hunched over position for the majority of cross-examination.

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

Mr. Randazza's credibility was also undermined by the variance between his testimony and positions at hearing and his written Nevada State Bar submission concerning the Oron litigation $75,000 bribe — including what, if anything, Mr. [Gibson] knew about it and when, and who solicited the bribe in the first instance.

...

...

Mr. Randazza's credibility was also undermined by the variance between his testimony and his EEOC submission. At hearing, Mr. Randazza admitted that the EEOC complaint contained errors, but tried to explain them away by saying that he did not prepare it. That is not a sufficient excuse or explanation, in the circumstances.

Resolving a credibility-related issue presented in the post-hearing briefs concerning asserted testimonial evasiveness implied by Mr. Randazza's body positioning and whether he had eye contact with the Arbitrator (as asserted by Mr. Randazza in his Reply), throughout his extensive testimony at hearing and primarily on crossexamination, the Arbitrator observed that Mr. Randazza sat sideways in his chair, relative to Claimant's counsel's table— with his back to (i.e., 180 degrees away from) his own counsel and 90 degrees away from Respondent's counsel — albeit with his seated body positioned toward the part of the wall behind and to Mr. Randazza's left from 6 where the Arbitrator was seated. Mr. Randazza almost always listened to questions and answered in that position —leaning well forward and looking down or straight ahead into "middle distance" in the direction of the wall behind where the Arbitrator was seated. Mr. Randazza rarely answered a question on cross-examination with sustained eye contact with either the questioning attorney or the Arbitrator.

**IAA at 6 and 6 n.4.**

Randazza's attempts to explain away the reason why he "failed to make eye contact with either the questioning attorney or the Arbitrator" on cross-examination is as unpersuasive as it is irrelevant. The same can be said for his claim that it was errors of counsel or of the EEOC for the litany of varying facts in his various submissions to the state bar organizations or agencies. There is one constant with respect to all of the inconsistent representations of fact introduced at the arbitration—Randazza himself. Randazza is the individual who provided the information to his attorneys and the EEOC who he claims are responsible for the errors. The Arbitrator made credibility determinations based upon the evidence before him. That Randazza disagrees with those determinations is irrelevant. Given that Randazza has failed to present clear and convincing evidence of evident partiality, there is no ground to vacate the IAA.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

## IV.    CONCLUSION

Randazza's "throw everything at the wall and see if anything sticks" approach to attempting to avoid confirmation and have the IAA vacated or modified evidence the lack of merit to his challenge to the arbitration proceeding.  Randazza's motion and opposition are devoid of any basis to vacate or modify any portion of the IAA.  Plaintiffs respectfully request that the Interim Arbitration Award be confirmed and Randazza's request to vacate or modify the award be denied in its entirety.

Dated:  August 24, 2015

Respectfully submitted,

WENDY MEDURA KRINCEK, ESQ.
ETHAN D. THOMAS, ESQ.
LITTLER MENDELSON, P.C.

Attorneys for Defendant
EXCELSIOR MEDIA CORPORATION

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1

**PROOF OF SERVICE**

2      I am a resident of the State of Nevada, over the age of eighteen years, and not a

3  party to the within action. My business address is 3960 Howard Hughes Parkway, Suite

4  300, Las Vegas, Nevada  89169.  On August 24, 2015, I served the within document(s):

5  ☒      Via Electronic Service pursuant to N.E.F.C.R Administrative Order: 14-2.

6
7  Mark A. Hutchinson, Esq.
   Timothy R. Koval, Esq.
8  Hutchinson & Steffen, LLC
   Peccole Professional Park
9  10080 W. Alta Drive, Suite 200
   Las Vegas, Nevada 89145

10

11

12      I declare under penalty of perjury that the foregoing is true and correct. Executed on

13  August 24, 2015, at Las Vegas, Nevada.

14

15                                    Erin J. Melwak

16  Firmwide:135253950.1 073131.1001

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800