WENDY MEDURA KRINCEK, ESQ., (Bar No. 6417)
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
Tel: (702) 862-8800
Fax: (702) 862-8811

Arthur Carvalho, Jr.  (Cal. Bar No. 125370)
Vaughn M. Greenwalt (Cal. Bar. No. 298481)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372
*Appearing Pro Hac Vice*

Attorneys for Creditors,
EXCELSIOR MEDIA CORP., and
LIBERTY MEDIA HOLDINGS, LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA | Case No.: BK-S-15-14956-abl<br><br>Chapter 11<br><br>Date:   November 25, 2015<br>Time:  1:30 p.m.<br>Courtroom 1 |

**EXCELSIOR MEDIA CORP.'S, AND LIBERTY MEDIA HOLDINGS, LLC.'S REPLY TO DEBTOR'S OPPOSITION TO MOTION TO MODIFY THE AUTOMATIC STAY TO ALLOW A PRE-PETITION ARBITRATION TO PROCEED TO JUDGMENT**

Debtor's opposition to Creditors Excelsior Media Corp's, and Liberty Media Holdings, LLC's ("E/L") motion for an order modifying the automatic stay pursuant to 11 U.S.C. § 362(d) (the "Lift Stay Motion") has revealed his true purpose in filing the bankruptcy petition – to have a

---

1

second bite of the apple and retry in bankruptcy court the claims already decided in the arbitration between he and E/L in the hope of obtaining a different result. Debtor admits that the purpose of the Petition is to prevent the enforcement of the award and to bring about a "more economical resolution of his financial issues" [Opposition ¶15] yet incongruously argues that the Lift Stay Motion (to continue the arbitration *initiated by Debtor*), is part of a divide and conquer strategy that has the purpose and effect of increasing the Debtor's costs. In fact, allowing E/L to conclude the arbitration will narrow the proceedings, save substantial costs and streamline the bankruptcy by limiting the Bankruptcy Court's determination to a later determination whether the judgment is non-dischargeable.

      The dispositive facts present here are that (a) the underlying arbitration was held pursuant to a contractual arbitration provision, (b) the arbitration was initiated by Debtor, (c) the arbitration proceeded through hearing and an interim award[1], (d) no core matters will be determined by the arbitrator or the state court in confirming the final award and (e) a retrial of the matters already decided in the arbitration would multiply the proceedings and increase the costs to the court, the estate and E/L. On these facts, the court must grant the Lift Stay Motion and allow the arbitration to be concluded and the final award confirmed to a judgment by the state court.

      **I.**      **The Remaining Arbitration Proceedings Do Not Involve Core Matters Not Already Decided By The Arbitrator And Should Be Allowed To Conclude.**

      The parties do not dispute the applicable legal analysis for the determination of a Lift Stay Motion to allow an arbitration to proceed. The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" 9 U.S.C. §§2-3. In light of this, the party that is opposing arbitration has the burden of proving "that Congress intended to preclude a waiver of judicial remedies for [the particular claim] at issue." *Shearson/Am. Express, Inc. v. McMahon*, 483 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 18 (1987). It is settled law in the Ninth Circuit that Congress did not intend to

---

[1] As detailed in E/L's moving brief, the arbitrator makes clear in the Interim Award that it "is intended to be in full settlement of all claims, issues, allegations and contentions, on the merits, submitted by any party against any adverse party in this arbitration." Exhibit 1 at p.26.

E/L's Reply re Motion
For Relief From Stay

create an exception to the FAA in the Bankruptcy Code. *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation)*, 671 F.3d 1011, 1020 (9th Cir.2012) ("Neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting."). Thus, the relevant inquiry is "whether there is an inherent conflict between the arbitration and the underlying purposes of the Bankruptcy Code" *Thorpe Insulation*, 671 F.3d at 1020. Whether the arbitration involves a determination of core versus non-core matters "though relevant, is not dispositive." *Id.* at 2021.

Debtor's opposition to the Lift Stay Motion relies primarily on *Akerman v. Eber (In re Eber),* 687 F.3d 1123, 1130 (9th Cir. 2012), arguing that E/L is impermissibly seeking to have the arbitrator decide core matters, in particular dischargeability. [Opp. ¶ 31.] However, not only is *In re Eber* inapposite on the facts, it opines that under facts as present here, a court **should** grant relief from stay to complete an arbitration already commenced.

In *In re Eber*, the creditors commenced an arbitration less than a month before the debtor filed the Chapter 7 bankruptcy case. The creditors first filed an adversary complaint seeking a determination that the debt was non-dischargeable. Months later, the creditors filed a lift stay motion asking to be able to proceed with the arbitration. Prior to the hearing on the lift stay motion, the debtor received his discharge. The court denied the lift stay motion. The trial on the adversary proceeding was held with the bankruptcy court finding that the plaintiffs had not proven the elements necessary to prevail under §523(a)(2), (4), and (6). On appeal from the denial of the lift stay motion the Court found that the bankruptcy court properly exercised its discretion under the facts of that case in determining that the arbitration would jeopardize a core bankruptcy proceeding.

In reaching its holding the court in *In Re Eber* carefully examined the case *In re Hermoyian* 435 B.R. 456 (E.D. Mich. 2010) which granted a lift stay motion to complete an arbitration:

> "Nor does this Court find persuasive Appellants' reliance on *In re Hermoyian*, 435 B.R. 456 (E.D.Mich.2010). While it is true Hermoyian also involved a creditor who first filed an adversary proceeding seeking a determination of nondischargeability of debt allegedly

3

E/L's Reply re Motion
For Relief From Stay

owed to him under § 523(a)(2), (4), and (6), and then filed a motion for relief from automatic stay to proceed with arbitration, the case is distinguishable for multiple reasons. *Id*. at 458.

In *Hermoyian* the creditor's motion for relief from the automatic stay alleged that he and the debtor were parties to a state court lawsuit involving various disputes between the creditor and debtor and a number of other business entities. *Id*. Moreover, the business relationship had extended over a lengthy period of time and involved multiple entities. *Id.* Just five days prior to trial, the creditor and debtor stipulated entry of an order providing that their disputes in the state court lawsuit would be submitted to arbitration. *Id.* While the arbitration with the debtor and creditor never began because the debtor filed for Chapter 7 bankruptcy first, the arbitration between the creditor and business entities had proceeded for four and a half days until the business entities filed bankruptcy petitions of their own. *Id.* at 459.

Therefore, although the bankruptcy court granted the creditor's motion for relief from the automatic stay to allow the parties to proceed with arbitration, judicial economy was served given the particular facts of the case. *Id.* at 459, 465–66. The arbitrator was already familiar with the facts surrounding the state court lawsuit because the arbitration between the debtor and the business entities had gone forward. In addition, the creditor and debtor stipulated to arbitration just prior to trial in an attempt to resolve their dispute. The same persuasive facts do not exist here where the bankruptcy judge was more familiar with the dispute between Ackerman and Kuriloff and Eber than an arbitrator in an arbitration that had not yet begun."

*In Re Eber, supra,* 687 F.3d at 1131-1132.

Here, as in *Hermoyian*, and unlike in *Eber*, the arbitration has already commenced. In fact, it has virtually concluded and what is left to do is to determine additional damages on the spoliation and conversion claims, an accounting to ensure compliance with the turnover order, costs and attorney's fees. Exhibit 1, pp. 23-25 ¶¶2, 5, 7 and 8. None of which are core issues. *Matter of Wood* 825 F2d 90, 97 (5th Cir. 1987)("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but … it is an 'otherwise related' or non-core proceeding."(emphasis in original)); *In re Harris Pine Mills* 44 F3d

1431, 1435 (9th Cir. 1995). Debtors arguments that these remaining issues will take time and money to resolve is irrelevant to the inquiry since this costs and time would be incurred regardless in what forum the determination is made. They are non-core issues which are ready for determination by the arbitrator who is in the best, most informed position to make them.

The findings already made in the Interim Award, while they may relate to the core matter of dischargeability, are binding on Debtor.[2]

*In re Wade*, 523 B.R. 594 (Bankr. W.D. Tenn. 2014), also relied on by Debtor, is inapposite for the same and other reasons. There, the debtor sought to compel arbitration of an adversary proceeding brought by a creditor in the bankruptcy case. The court upheld the trial court's denial of the motion on a number of grounds, including that, in the absence of controlling 6th Circuit law, that the Bankruptcy Code was intended to exclude any adjudicators other than the bankruptcy court from resolving claims against property of the estate. This is contrary to the law of the 9th Circuit laid down by the court in *In re Thorpe Insulation*, 671 F.3d at 1020 explained above. While the court also considered whether to exercise its discretion to compel arbitration it declined to do so after determining that judicial economy would not be served where there was an adversary proceeding already pending concerning the same issues and the arbitration had not yet commenced. These factors are not present here.

The final case relied on by Debtor is *In re Koper* 516 B.R. 707 (Bankr. E.D.N.Y. 2014). *In re Koper* is not instructive here since, like *In Re Eber* and *In re Wade,* it involved a motion to compel the arbitration of a matter that had not yet commenced and involved "substantially core" issues that were similar to the issues to be decided by the Bankruptcy court in two pending adversary proceedings. None of those factors are present here.

---

[2] The arbitration award, whether in its current, unconfirmed state, or when confirmed by the state court, will collaterally estop Debtor from denying the applicability exception for willful and malicious injury. *In re Molina*, 228 B.R. 248 (9th Cir. BAP 1998) (affirming bankruptcy court's finding that collateral estoppel applied to a confirmed prepetition arbitration award and that such award was nondischargeable under section 523(a)(6) of the Bankruptcy Code); *In re O'Neill*, 260 B.R. 122 (Bankr.E.D.Tex.2001) (giving preclusive effect to an unconfirmed prepetition arbitration award and finding such debt to be nondischargeable under section 523 of the Bankruptcy Code); *In re Marx*, 171 B.R. 218 (Bankr.N.D.Tex.1994)(same).

In contrast, the cases in which bankruptcy courts do exercise their discretion in determining that arbitrations may be permitted even in the context of dischargeability, all involve facts and circumstances similar or identical to those present here – where the arbitration has already commenced or concluded. *Sheinfeld v. Leeds (In re Sheinfeld),* No. 3:03–CV–2601–B, 2005 U.S. Dist. LEXIS 14547 (N.D.Tex. July 19, 2005), aff'd, 201 Fed.Appx. 998 (5th Cir.2005) (finding neither the district court nor the bankruptcy court made any reversible error in giving preclusive effect to an arbitration award where the bankruptcy court exercised its discretion in lifting the automatic stay and specifically referred the issue of liquidation to arbitration but not the issue of dischargeability); *Holland, et al. v. Zimmerman* (*In re Zimmerman)*, 341 B.R. 77, 81 (Bankr.N.D.Ga.2006) (modifying the stay to allow arbitrators to hear issues relating to liability and amount of damages as to claims under 11 U.S.C. § 523(a)(2), (4) and (6) for purpose of judicial economy where arbitration of the same claims within the exception of 11 U.S.C. § 523(a)(19) would not be inconsistent with nor jeopardize the objectives of the Bankruptcy Code); *In re Hermoyian*, 435 B.R. 456 (Bankr.E.D.Mich.2010) (finding that the determination of a debt owing by the debtor and the liquidation of the amount of that debt to be core proceedings in the context of 11 U.S.C. § 523 but finding no inherent conflict between arbitration of the limited matters regarding the existence and amount of a debt and the underlying policy to promptly adjudicate the dischargeability of such debt, especially where the chapter 7 trustee filed a no asset report and there is no conflict with the Code's policy of a centralized forum for claims resolution and orderly distribution of assets).

In the context of state court proceedings initiated prior to the bankruptcy case, the bankruptcy courts allow relief from stay for the same reasons of judicial economy. *Christensen v. Tucson Estates (In re Tucson Estates),* 912 F.2d 1162, 1169 (9th Cir. 1990) (stay lifted where bankruptcy filed on eve of state court trial in 6-year old case and resolution of issue was essential to evaluate bankruptcy case); *Packerland Packing Company v. Griffith Brokerage* (*In re Kemble)* 776 F.2d 802, 807(9th Cir. 1985) (relief from stay granted where bankruptcy filed on eve of state court

E/L's Reply re Motion
For Relief From Stay

trial after parties completed extensive discovery); *In re Neal* 176 B.R. 30, 33-34(Bnkr.D. Idaho 1994) (stay lifted for judicial economy to permit party to conclude state court battery action that had already been litigated extensively); *In re Westwood Broadcasting, Inc.* 35 B.R. 47, 49 (Bnkr.D.HI 1983) (stay lifted to permit plaintiffs to continue state court breach of contract action against debtor where discovery was complete and case was ready for trial).

Thus, the courts are essentially uniform in granting relief from stay to allow the completion of an arbitration or trial commenced and substantially completed prior to the filing of the bankruptcy case, even where that underlying action has or will decide facts and legal conclusions directly relevant to the determination of core matters such as dischargeability.

### II.    Concluding The Arbitration Will Not Multiply The Proceedings Or Increase The Costs To Be Incurred; Rather, It Is The Most Efficient Way To Proceed.

The Debtor acknowledges that E/L will file an adversary complaint for a determination that the debt owed to them is non-dischargeable.  The question this motion will answer is whether that complaint will require a re-trial of all of the issues already decided by the arbitrator.  The Debtor argues that to allow the almost completed arbitration to conclude would cost money, yet he ignores the cost to conduct a full retrial of a five-day arbitration in Bankruptcy Court.  He argues that he would have to pay his arbitration counsel to participate in the arbitration, while ignoring that he would have to pay his bankruptcy counsel to retry the case in Bankruptcy Court.  He argues that concluding the arbitration will likely delay the due and timely administration of his Chapter 11 case, while ignoring that the arbitration has already resolved many of the issues which will have to be decided in the bankruptcy case.

Debtors' stated concern that he may be held liable for E/L's attorney's fees and costs, including the JAMS arbitration costs has no bearing on the determination whether to allow it to proceed – those claims would exist in either forum.  [Opp. ¶7.]  Equally unavailing is Debtor' argument that cost and delay will result from the arbitrator's order for an accounting of Debtor's client trust account "to ensure compliance with" the order requiring Debtor to turn over all funds related to the

Oron matter in which Debtor represented E/L. IAA, Exhibit 1, pp24-25, ¶¶4,5. [Opp. ¶6.] It is fatuous for Debtor seek to avoid the import of an award because of the award requires certain action which necessarily entails certain cost. That is the nature of awards. Moreover, if the matter were re-tried in Bankruptcy Court, Debtor would be subject to the same form of award yet the cost and delay would be substantially greater than if the arbitration were allowed to conclude.

Debtor's unsupported contentions aside, logic dictates that to require a retrial in the Bankruptcy Court of all of the issues already resolved and the few remaining to be resolved in the arbitration will cost significantly more money, will take significantly more time and will significantly compound the proceedings.

The arbitration is essentially complete; all discovery has been completed, evidentiary hearings have been conducted, and the arbitrator has already issued an IAA which is final except for those few issues left to be determined. That IAA has preclusive effect on the parties. All that remains is for a final award to issue with a complete measure of damages, costs, and attorneys' fees, and for the awards to be confirmed by the State Court. These determinations are not core matters. And because the arbitrator is much more familiar with the facts and circumstances than the bankruptcy court and is in a much better suited to resolve the remaining issues, the most expeditious, economical and fair way to proceed is to allow the arbitration to conclude.

**III.    Conclusion.**

Under the facts and circumstances present here, the Court should grant the Lift Stay Motion and allow the arbitration to conclude and a judgment thereon obtained. E/L will separately seek an order determining that the judgment on the final arbitration award is nondischargeable.

Dated: November 18, 2015                                LANG, HANIGAN & CARVALHO, LLP

By: s/ Arthur Carvalho, Jr.
    Arthur Carvalho, Jr.
    Attorneys for Excelsior Media Corp., and
    Liberty Media Holdings, LLC.

8

E/L's Reply re Motion
For Relief From Stay