LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**LARSON & ZIRZOW, LLC**
**850 E. Bonneville Ave.**
**Las Vegas, Nevada 89101**
**Tel: (702) 382-1170 Fax: (702) 382-1169**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| In re:<br><br>MARC JOHN RANDAZZA,<br><br>Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11<br><br>Date: July 20, 2016<br>Time: 1:30 p.m. |
|---|---|

**DEBTOR'S MOTION TO APPROVE SETTLEMENT**
**PURSUANT TO BANKRUPTCY RULE 9019**

Marc John Randazza, as debtor and debtor-in-possession (the "Debtor"), in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby submits this motion (the "Motion") for entry of an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rule 9019(b) of the Local Rules of Bankruptcy Practice for United States District Court for the District of Nevada (the "Local Rules"), thereby approving the proposed Settlement Agreement and Release (the "Agreement"), attached hereto as **Exhibit 1**,

The proposed Agreement is by and among the Debtor, Marc J. Randazza P.A., a Florida professional association, d/b/a Randazza Legal Group ("MJR"), Randazza Legal Group, PLLC, a Nevada professional limited liability company ("RLG"), Ronald D. Green, Jr. ("Green"), and James Malcolm DeVoy IV ("DeVoy") (collectively, the "RLG Parties"), on the one hand, and Liberty Media Holdings, LLC d/b/a Corbin Fisher, a Nevada limited liability company ("Liberty"), Excelsior Media Corp., a Nevada corporation ("Excelsior"), and Jason Gibson

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

("Gibson") (collectively, the "LMH Parties"), on the other hand.

This Motion is made and based on the points and authorities herein, the *Declaration of Marc J. Randazza* filed in support hereof, the papers and pleadings on file in the Debtor's bankruptcy case and the related adversary proceedings, judicial notice of which is respectfully requested, and any arguments the Court may entertain at any hearing on this Motion.

## I. Jurisdiction and Venue

1. On August 28, 2015, the Debtor filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the Chapter 11 Case. The Debtor is authorized to operate his businesses and manage his properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Court has jurisdiction over this Motion as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408(1) and 1409(a). Pursuant to Local Rule 9014.2, the Debtor consents to the entry of final orders and judgments by the Bankruptcy Court as to this matter. The statutory bases for the relief requested herein are Bankruptcy Rule 9019 and Local Rule 9019.

## II. Factual Background

### A. The Relationships and Interactions Among the Parties.

3. The Debtor is an attorney licensed to practice law in Nevada, California, Florida, Arizona, and Massachusetts. The Debtor presently is a partner in RLG, which is a law practice. RLG represents clients on a wide array of First Amendment issues, copyright and trademark protection and infringement cases, defamation cases, domain name disputes and employment law matters. The Debtor previously operated a law practice under the name of MJR through the end of 2014, and MJR presently continues to provide arbitration, publication and education services. Green and DeVoy are attorneys licensed to practice law in Nevada and worked for RLG at relevant times for purposes of the Agreement.[1]

---

[1] For the avoidance of doubt, the Debtor is aware that certain of the factual assertions herein are disputed by Excelsior and Liberty. More information regarding the foregoing disputes is contained in the parties' various filings in the related nondischargeability proceeding, being Adversary No. 15-01193-abl, currently pending before the Court. Further, the Debtor acknowledges and agrees that Excelsior and Liberty's failure to object to any of the factual

4. Excelsior is alleged to be a digital video production and web delivery company. Liberty owns and operates Corbin Fisher, which is an American film studio with a focus in gay pornography, based in Las Vegas, Nevada that maintains a website at CorbinFisher.com, among other web properties. Excelsior and Liberty are affiliated companies, both of which are owned and operated by Gibson.

5. The Debtor was hired as General Counsel for Excelsior on or about June 10, 2009 as set forth in a written Employment Agreement. The said Employment Agreement makes no mention of the Debtor representing Liberty, but at the time I signed it, Debtor understood Liberty to be a wholly owned subsidiary of Excelsior.

6. In or about Fall 2010, the Debtor informed Excelsior and Liberty that Liberty's interests would be best served if Debtor prosecuted lawsuits and performed other legal work on behalf of Liberty through his firm, MJR. Excelsior is not a law firm, and thus the Debtor could not represent Liberty through Excelsior pursuant to Nev. R. Prof. Conduct 5.4. Excelsior and Liberty agreed and, in or around January 2011, MJR began filing and prosecuting copyright infringement lawsuits on Liberty's behalf. No formal written fee agreement was entered into between Liberty and MJR, but the parties communicated between them the scope and terms of the representation.

7. The legal services rendered by MJR on behalf of Liberty included the litigation of a copyright infringement action on behalf of Liberty against FF Magnat Ltd. d/b/a Oron.com (hereinafter "Oron") and the litigation itself (the "FF Magnat Litigation"). See Liberty Media Holdings, LLC v. FF Magnat Ltd. d/b/a Oron.com, No. 12-01057, 2012 WL 3255044 (D. Nev. Aug. 7, 2012). Green and DeVoy are alleged to have worked on the FF Magnat Litigation as associates at MJR.

8. On or about July 1, 2012, Liberty and Oron reached a settlement of the litigation between them. MJR thereafter successfully obtained an order enforcing the settlement agreement on behalf of Liberty. Liberty Media Holdings, LLC, 2012 WL 3255044.

---

assertions herein is not a waiver or acknowledgment by them that the Debtor's version of events is correct.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

9. Excelsior and Liberty falsely allege that, thereafter, the Debtor, acting through MJR, negotiated a new settlement agreement with Oron containing certain terms with which they disagreed. In truth, what actually happened was that Mr. Gibson became enraged at the amount of time it was taking for the funds to be collected, and insisted that the Debtor and MJR complete the task faster than the legal process would allow. In an effort to get money faster, Mr. Gibson insisted that the Debtor and MJR enter into new negotiations with Oron, notwithstanding that MJR had already secured an order enforcing a prior settlement. Thereupon, Oron, through counsel, proposed a new settlement agreement.

10. In fulfillment of his ethical obligations, the Debtor presented the draft of the proposed new agreement to Liberty, with a full opportunity for Liberty's principal, Gibson, to review the terms. The Debtor did not believe any new settlement was in order because Liberty had prevailed on a motion to enforce the original one, but Liberty's principal insisted on getting paid faster than the judicial process would normally allow.

11. Excelsior and Liberty did not enter into that new settlement and do not allege they did. Neither do Excelsior or Liberty claim that it was feasible for MJR to have achieved a resolution of the dispute with Oron superior to the July 1 agreement enforced in the August 7, 2012 decision.

12. Subsequently, at the end of August 2012, MJR, as counsel for Liberty, seized the settlement funds from Oron through court order. The following day, MJR proposed a distribution of the proceeds, however, Liberty disagreed with the proposed distribution.

13. At the conclusion of MJR's representation of Liberty in the FF Magnat Litigation, MJR claimed to be owed the sum of at least $81,433.98 in attorneys' fees. Liberty denied that it owed MJR any monies at all. Notably, in a hearing on July 26, 2013, the Hon. Gloria Navarro heard arguments by Liberty to that effect, and was incredulous as to Liberty's argument.

14. MJR was only required to deliver to Liberty those funds to which Liberty was actual entitled to receive, and which were not contested. See, e.g., Nev. R. Prof. Conduct 1.5(c) ("Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

the client and the method of its determination.”).

15. Thereupon, the Debtor recommended to Liberty that his firm, MJR, withdraw from representing Liberty in any **new** matters due to the dispute between the two. In response, Excelsior communicated that it would treat that recommendation as the Debtor's resignation from his General Counsel position and alleged that the Debtor did, in fact, resign. The Debtor disputed this contention then and continues to dispute it now.

16. Excelsior then refused to reimburse the Debtor for funds he had advanced ($25,000.00) on behalf of Liberty, as ordered by Excelsior, and refused to pay his remaining pay, including severance.

**B. The Arbitration Involving the Debtor Personally.**

17. In light of Excelsior's failure to pay Debtor his earned bonuses and reimbursements, the Debtor brought claims in Arbitration for contractual obligations owed by Excelsior as set forth in the Employment Agreement, as well as for wrongful termination, and in the alternative, constructive discharge and retaliation.

18. Excelsior brought counterclaims and, in a miscarriage of justice riddled with error and perjured testimony by Excelsior and its agents, Gibson, Chazz Vorrias, and Brian Dunlap, the Arbitrator found for Excelsior and entered an Interim Arbitration Award (the “IAA”). Notably, however, nothing in the IAA showed that Excelsior or Liberty suffered any actual harm at all on account of their claims of liability. The IAA omitted all causal nexus and fashioned an award based on whimsy, and reaches to dicta in a Texas case to control the matter – when the arbitration agreement commanded that California law applied.

19. In further contravention of the arbitration provision in the Employment Agreement, Excelsior and Liberty brought an action in the Eighth Judicial District Court, Clark County, Nevada (the “State Court”), being Case No. A-15-719901-C, to confirm and enforce the IAA. Debtor opposed the action and, in the alternative, cross-moved to vacate the IAA, however, prior to any proceedings, the Debtor filed his bankruptcy petition, thereby staying further proceedings in State Court.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

**C. The State Court Litigation Involving MJR.**

20. On December 9, 2012, MJR filed an action against Liberty in the Eighth Judicial District Court, Clark County, Nevada, being Case No. A-12-673275-C, therein alleging claims for monies due for legal services rendered in the FF Magnat Litigation (the "Fee Litigation"). On March 13, 2013, MJR filed its amended complaint in the Fee Litigation.

21. On March 28, 2013, Liberty answered the amended complaint in the Fee Litigation, and filed a counterclaim against MJR alleging malpractice claims against MJR arising out its representation of Liberty in the FF Magnat Litigation. The counterclaims brought by Liberty are related to of the allegations they asserted in the arbitration proceedings against the Debtor, and also now in the Nondischargeability Adversary (as hereinafter defined). Debtor is not personally a party to the Fee Litigation.

22. MJR tendered the Liberty counterclaim to its malpractice insurance carrier, Beasley Insurance Group ("Beasley").

**D. The Related Proceedings in the Chapter 11 Case Against the Debtor Personally.**

23. On October 28, 2015, Excelsior and Liberty filed their *Motion to Modify the Automatic Stay to Allow a Pre-Petition Arbitration to Proceed to Judgment* (the "Stay Relief Motion") [ECF No. 60], which requested that the Court allow the arbitration and confirmation proceedings against the Debtor personally to proceed. By order entered on December 18, 2015, the Court denied the request for stay relief (the "Denial of Stay Relief Order") [ECF No. 93].

24. On November 30, 2015, Excelsior and Liberty filed their original complaint the "Original Complaint") [ECF No. 83] objecting to the dischargeability of their alleged claims against the Debtor personally (the "Nondischargeability Adversary"), but never served it. The Original Complaint pled claims against the Debtor personally pursuant to sections 523(a)(2)(A) and (a)(4) of the Bankruptcy Code.

25. On December 29, 2015, Excelsior filed a *Proof of Claim* (the "Proof of Claim") in the Debtor's Chapter 11 Case against the Debtor personally in the stated amount of "in excess of $1,552,614.29," being Claim No. 8. Liberty did not file its own separate proof of claim, but is

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

listed as "another name the creditor used with the debtor" in Excelsior's Proof of Claim.[2] The Proof of Claim involves matters related to the counterclaim asserted in the Fee Litigation.

26. On January 22, 2016, Excelsior and Liberty filed a *Notice of Appeal* [ECF No. 99] from this Court's Denial of Stay Relief Order, however, the appeal was dismissed by order entered on February 24, 2016 [ECF No. 122]. As a result, the Denial of Stay Relief Order is a final order.

27. On February 10, 2016, which was almost two and a half months after Excelsior and Liberty filed their Original Complaint, they filed their amended Complaint, thereby asserting claims pursuant to not only sections 523(a)(2) and (a)(4), but also pursuant to section 523(a)(6). Excelsior and Liberty's Complaint contains the same allegations against the Debtor that had previously been alleged as against MJR in the Fee Litigation.

28. Excelsior and Liberty's Complaint contains many vague and conclusory allegations with little attention to the actual statutory elements required for nondischargeability. The Complaint also relies in large part on the IAA, even though that unconfirmed decision has no preclusive effect. Moreover, the IAA is rife with internal inconsistencies, contains remedies that are contrary to both California and Nevada law, and, on its face, demonstrates such manifest error and such a degree of substantive and procedural bias, that it should be discounted on its face. As such, both the Debtor's underlying liability, if any (as well as his counterclaims) against Excelsior and Liberty, as well as whether any of his potential liability is nondischargeable are both at issue in that separate adversary proceeding and is not in any way settled or released by way of the proposed Agreement.

29. On March 14, 2016, the Debtor filed his *Motion to Dismiss, or in the Alternative, for Partial Summary Judgment* (the "Motion to Dismiss") [Adv. ECF No. 19] Excelsior and Liberty's Complaint against him. On May 9, 2016, the Court heard oral argument on the Motion to Dismiss, and on June 10, 2016 entered an oral ruling granting the Motion to Dismiss as to various matters, but also allowing leave to submit a second amended complaint within 21 days.

[2] Gibson also has not asserted any Proof of Claim in the Debtor's Chapter 11 Case as well.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

**E. <u>The Proposed Settlement Agreement.</u>**

30. In late 2015 and early 2016, the Debtor was advised that the insurance carrier and/or underwriter that had issued/underwrote the policy for MJR had made the financial decision to settle the matter, rather than expend additional fees on litigation. Liberty and Beasley agreed to the terms of a proposed settlement of the Fee Litigation, pursuant to which MJR's insurance carrier will pay to Liberty the total sum of $205,000 in exchange for dismissals of the complaint and counterclaim in the Fee Litigation and other consideration as detailed in the Agreement. Rather than jeopardize coverage, or risk exhaustion of the policy through continued protracted litigation, the Debtor and MJR reluctantly agreed to the settlement Agreement, subject to this Court's approval.

31. By the terms of the Agreement, the parties thereto will mutually release each other for all claims between them <u>except for</u> the following:

> [C]laims, counterclaims, objections, offsets, setoffs, arguments, motions, appeals, or defenses the **Parties** have asserted or could assert against any of the other **Parties** with respect to the following: (a) the Judicial Arbitration and Mediation Service ("**JAMS**") arbitration captioned *Marc J. Randazza v. Excelsior Media, Liberty Media and Jason Gibson*, JAMS No. 1260002283 (the "**Arbitration**"), including also any effort to confirm or enforce (including against RLG or any other person or entity based upon an alter ego theory), challenge, vacate, modify, re-try, or dismiss any interim or final awards entered therein in any court of appropriate jurisdiction, and any appeals from any of the foregoing efforts, but in all events subject to any decisions or orders of the Bankruptcy Court with respect thereto, the Bankruptcy Code including the automatic stay pursuant to 11 U.S.C. § 362, and/or any appeals from any decisions by the Bankruptcy Court with respect thereto; (b) any proofs of claim filed in Randazza's Chapter 11 Case, including but not limited to Claim No. 8 filed on December 29, 2015; (c) the adversary proceeding filed against Randazza in his Chapter 11 Case on December 1, 2015, being case no. 15-1193-abl, as amended (the "**Adversary Proceeding**"). The Parties dispute the effect of this Agreement and the settlement payment on the liability, if any, that Randazza and his affiliates and entities (as those terms are defined in 11 U.S.C. § 101) may have, if any, to claim an offset, setoff or other discount or credit in the Adversary Proceeding, other Bankruptcy Court proceedings or otherwise as against their liability, if any, and agree to leave that matter to be adjudicated at a later date

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

by the Bankruptcy Court or other court of appropriate jurisdiction.

[Agreement, ¶ 4]. In short, the Agreement is an attempt to resolve MJR's alleged liability, if any, among others, and the Fee Litigation.

32. Because the Debtor is a party to the Agreement and is both releasing and being released from claims other than those reserved, the Agreement provides that it is conditioned upon the approval of the Bankruptcy Court in this matter. [Agreement, ¶8] If the Agreement is not approved, it shall have no force and effect.

33. The settlement funds are to be paid under MJR's insurance policy, which policy and the proceeds thereof are not an asset of the Debtor's bankruptcy estate. Debtor's interest in MJR itself, however, is an asset of his bankruptcy estate.

34. The insurance policy in question is a diminishing policy, meaning the defense costs reduce the net amount available, and thus it is in Liberty's and Excelsior's best interest to settle the matter and obtain what proceeds they can, because continued fighting could fully deplete the policy and leave them with nothing for their alleged claims, anemic as they are. As such, the principal driving force behind this proposed Agreement is not about the underlying potential liability, if any, of MJR (or the Debtor as well), which claims by Liberty and Excelsior are weak and questionable at best; rather, the Agreement at this juncture is essentially driven by the economic realities of the carrier offering to tender a substantial remaining portion of the policy given the applicable policy limits in full settlement and resolution of any alleged liability. For the avoidance of doubt, both MJR and the Debtor object that they owe the LMH Parties anything, however, the Debtor feels that he personally has little, if any, choice to refuse the Agreement. As such, the Debtor regrettably must seek approval of this Agreement notwithstanding his position that the claims asserted in the Fee Litigation, just like the claims asserted by Excelsior and Liberty in the Arbitration and now in the Nondischargeability Adversary (as hereinafter defined), are utterly without merit.

**III. Relief Requested**

35. By this Motion, the Debtor seeks entry of an order approving the Agreement, in all respects, and authorizing the parties thereto to execute and to carry out all of the terms thereof,

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

subject to the terms and conditions therein, and to take all such other actions as are necessary and appropriate to implement the Agreement. For the reasons herein, and notwithstanding his significant reservations to the Agreement, the Debtor believes entry into the Agreement is an appropriate exercise of his business judgment and is in the best interest of his estate and creditors.

## IV. Legal Argument

### A. Standard of Decision.

36. Federal Rule of Bankruptcy Procedure 9019 provides in relevant part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Compromise and settlement agreements have long been an inherent component of the bankruptcy process. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1958) (citing Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). In TMT Trailer, the Supreme Court held that a bankruptcy settlement must be "fair and equitable." Id.

37. A bankruptcy court may approve a settlement pursuant to Bankruptcy Rule 9019 where, based on its own independent judgment, the court determines that the settlement is "fair and equitable when comparing the claims being compromised against the likely rewards of litigation." In re Endoscopy Ctr. of S. Nevada, LLC, 451 B.R. 527, 535-36 (Bankr. D. Nev. 2011) (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 425 (1968); In re Churchfield, 277 B.R. 769, 773 (Bankr. E.D. Cal. 2002)).

38. In order to determine whether a proposed settlement is fair and equitable, the bankruptcy court should consider the following factors:

> (a) the probability of success in the litigation;
>
> (b) the difficulties, if any, to be encountered in the matter of collection;
>
> (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
>
> (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Robinson v. Kane (In re A&C Props.), 784 F.2d 1377, 1381 (9th Cir. 1986); In re Endoscopy Ctr.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

of S. Nev., LLC, 451 B.R. 527 (Bankr. D. Nev. 2011); In re Hyloft, Inc., 451 B.R. 104 (Bankr. D. Nev. 2011).

39.    The debtor is not necessarily required to satisfy each of these factors as long as the factors as a whole favor approval of the settlement.  See In re Pacific Gas and Elec. Co., 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004).  The settlement does not have to be the best the debtor could have possibly obtained; rather, the settlement must only fall "within the reasonable range of litigation possibilities."  In re Adelphia Commc'ns Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005).  In considering the factors, "a precise determination of likely outcomes is not required, since an exact judicial determination of the values at issue would defeat the purpose of compromising the claim."  In re Telesphere Commc'ns, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (internal quotations omitted).  Thus, rather than determining various issues of fact and law, the Court should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness."  In re Lion Capital Group, 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985) (internal quotations omitted); see also Suter v. Goedert, 396 B.R. 535, 548 (D. Nev. 2008) (quoting Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997)).  To require a more extensive analysis would defeat the purpose of Bankruptcy Rule 9019 because if courts were required to do more than canvass the issue, there would be no point compromising; the parties might as well go ahead and try the case.

**B.    Application.**

40.    This matter is somewhat unusual in that the Debtor is not actually a party to the Fee Litigation itself and has no direct stake in its outcome, other than, arguably, as a beneficiary of the release and other terms of the agreement and the effect of the Settlement Payment thereunder being made, and indirectly as an owner of MJR.  Further, it may serve to reduce his alleged direct liability, if any, but that is disputed by the LMH Parties and is not proposed to be adjudicated by way of this Motion or the proposed Agreement.  Nevertheless, the Debtor does receive a benefit from the Agreement by being included in the release given by LMH Parties and is in turn releasing any claims that he may have against the LMH Parties except those reserved.

41.    As to the first A&C Properties factor, the probability of success MJR's claims

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

against Liberty is high because MJR clearly performed valuable services on behalf of Liberty, as found by Judge Navarro. Thus, MJR is entitled to be paid for the valuable and favorable result it obtained in the FF Magnat Litigation, and regardless of the fact that its arrangement with Liberty was not a formal written agreement, as MJR could recover on other theories including but not limited to unjust enrichment. That having been said, the lack of a formal written agreement could arguably impair MJR's ability to collect. As to the claims of the LMH Parties against MJR for legal malpractice, such claims have a low probability of success given the lack of any provable legal malpractice as well as the lack of any actual damages incurred. However, as the LMH Parties acted improperly and caused the issuance of the adverse IAA, lightning may strike twice and it is possible that they could obtain another absurd and unfair result should the Fee Litigation proceed. As a result, settlement in the face of uncertainty is fair and equitable to mitigate risk.

42. As to the second A&C Properties factor, the difficulties of collection, although MJR is not in bankruptcy, its principal and manager, the Debtor is, and thus there is little value to that service business, an operating law firm, without his involvement. Additionally, given the Chapter 11 Case, even if Excelsior and Liberty could ever establish any claims against MJR, given the costs of defense will likely exceed the policy limits. Similarly, as MJR no longer has custody over the interpled funds in dispute, it has a low probability of success of collecting its fee.

43. As to the third A&C Properties factor, the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, the Fee Litigation would necessarily prove to be very expensive given what are essentially legal malpractice claims and fee disputes, and indeed the mere costs of prosecuting and defending such litigation is expected to exceed the diminishing policy limits for the insurance in question.

44. Finally, as to the fourth A&C Properties factor, being the interest of the creditors, there is little, if any. The MJR insurance policy and the proceeds thereof are not an asset of the Debtor's personal bankruptcy estate, although his interest in MJR is, and it is only MJR's fee and a policy issued in favor of MJR that is being compromised.

45. For all of the reasons set forth herein, the Agreement is fair, equitable, and in the

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

best interests of the Debtor's estate and creditors. The Debtor respectfully requests that the Court approve the Agreement as a reasonable compromise of the Parties' disputes.

**V. Reservation of Rights**

46. Nothing herein is intended or should be construed as a waiver of any arguments that the Debtor or his estate may have in the Nondischargeability Adversary or his Chapter 11 Case to challenge the validity, priority, extent or amount of any alleged claims, if any, as well as their alleged nondischargeability; any arguments in the Motion to Dismiss; any arguments or proceedings relative to Excelsior's Claim No. 8 filed on December 29, 2015; and/or any claims that either the Debtor's or his estate alleged liability, if any, is reduced or offset as a result of the settlement payment proposed to be made under the Agreement and the terms thereof. For the avoidance of doubt, notwithstanding anything herein to the contrary, nothing herein is intended to or should be construed as an alteration or amendment of the Agreement itself, and in the event of a conflict between this Motion and the terms of the Agreement, the terms of the Agreement shall control.

**VI. Conclusion**

WHEREFORE, the Debtor respectfully requests that the Court enter an order, in the form attached as **Exhibit 2**, (i) approving the Agreement, (ii) authorizing the parties to execute the Agreement and, subject to the terms and conditions therein, to carry out all of the terms thereof. The Debtor also requests such other and further relief as is just and proper.

Dated: June 14, 2016.

LARSON & ZIRZOW, LLC

By: *__/s/ Matthew C. Zirzow__*
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

# EXHIBIT "1"

EXHIBIT "1"

DocuSign Envelope ID: A8F1C152-B75F-47B3-A47C-97C1EC18A94A

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "**Agreement**") is entered into between **LIBERTY MEDIA HOLDINGS, LLC d/b/a CORBIN FISHER**, a Nevada limited liability company ("**Liberty**"), **EXCELSIOR MEDIA CORP.**, a Nevada corporation ("**Excelsior**"), and **JASON GIBSON** ("**Gibson**", and together with **Excelsior** and **Liberty,** collectively, the "**LMH Parties**"), on the one part, and **MARC J. RANDAZZA P.A.**, a Florida professional association, d/b/a RANDAZZA LEGAL GROUP ("**MJR**"), **RANDAZZA LEGAL GROUP, PLLC**, a Nevada professional limited liability company ("**RLG**"), **MARC J. RANDAZZA a/k/a MARCO RANDAZZA**, as debtor and debtor-in-possession ("**Randazza**"), **RONALD D. GREEN, JR.** ("**Green**"), and **JAMES MALCOLM DEVOY IV** ("**DeVoy**" and, together with **MJR**, **RLG**, and **Green**, collectively, the "**RLG Parties**"), on the other part. The **RLG Parties** and the **LMH Parties** may collectively be referred herein to as the "**Parties.**"

## RECITALS

WHEREAS, **MJR** filed an action in the Eighth Judicial District Court in and for Clark County, Nevada, bearing case number A-12-673275 against **Liberty** (the "**State Court Action**"), asserting certain claims for legal fees allegedly due and owing by **Liberty**;

WHEREAS, **Liberty** filed counterclaims against **MJR** in the **State Court Action** asserting certain claims for malpractice;

WHEREAS, on August 28, 2015, **Randazza** filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code in the U.S. Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**"), thereby commencing Case No. 15-14956-abl (the "**Chapter 11 Case**"), and is currently a debtor and debtor-in-possession therein;

WHEREAS, the **Parties**, without conceding or admitting liability, conclude that it serves their respective interests to avoid the expenditure of additional time, effort and resources in litigating the disputes that are a part of the **State Court Action**, and, ***with certain exceptions set forth in this Agreement***, any disputes that do or could exist as between some or all of the **LMH Parties** and the **RLG Parties**, and that they now wish to fully, finally and forever settle and compromise their claims in the **State Court Action** and disputes against each other; and

NOW, THEREFORE, in consideration of the following promises, terms, covenants and conditions set forth herein, and for other good and valuable consideration, the **Parties** hereby agree as follows:

## TERMS

1. **Settlement Payment.** The total sum of **TWO HUNDRED AND FIVE THOUSAND DOLLARS ($205,000.00)**, made payable to Liberty Media Holdings LLC by wire transfer by or on behalf of MJR no later than two business days after entry of an order approving this Agreement by the Bankruptcy Court pursuant to Paragraph 8, below. The wire transfer shall be directed as follows:

Liberty Initial JG Excelsior Initial RW MJR Initial MR Green Initial
Gibson Initial JG RLG Initial Randazza Initial MR DeVoy Initial JMD

DocuSign Envelope ID: A8F1C152-B75F-47B3-A47C-97C1EC18A94A

Release and Settlement Agreement
Randazza v. Liberty
Page 2 of 13

Wells Fargo Bank NA
Account: 3004
Routing: 0248

2. **Release by the RLG Parties.** Upon payment of the settlement payment set forth above, the **RLG Parties**, ***with the express exception of those matters addressed in Paragraph 4***, jointly and severally, on behalf of themselves, and to the extent they are legally capable of doing so, on behalf and their respective parent and sister corporations, subsidiaries, affiliates, affiliated entities, officers, directors, shareholders, administrators, agents, employees, servants, representatives, heirs, successors, assigns, representatives, insurers and reinsurers, as well as the respective heirs, predecessors, personal representatives, successors and assigns of any or all of them (the "**RLG Releasing Parties**"), fully, finally and forever release, acquit and forever discharge the **LMH Parties** and their parent and sister corporations, subsidiaries, affiliates, affiliated entities, officers, directors, shareholders, administrators, agents, employees, servants, attorneys, representatives, heirs, successors, assigns, representatives, insurers and reinsurers, as well as the respective heirs, personal representatives, successors and assigns of any or all of them (the "**LMH Released Parties**"), unless otherwise specifically exempted or reserved by this Agreement, from any and all claims, counterclaims, third party claims, demands, debts, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses and liabilities, damages, punitive damages, attorneys' fees of any kind or character whatsoever, known or unknown, suspected or unsuspected in contract or in tort, at law or in equity, pursuant to statute or common law, including without implied limitation, such claims and defenses as incapacity, fraud, mistake, and duress, which the **RLG Releasing Parties** ever had, now have or may have had against the **LMH Released Parties** on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen damage and the consequences therefore, including, but not limited to, all such claims arising out of, relating to or concerning the facts or circumstances in existence as of the date of this Agreement, or by reason of any matter, cause or thing whatsoever, which relates in whole or in part, directly or indirectly, to the facts, acts or omissions described or which could have been described in the claims, counterclaims, or proposed claims or counterclaims filed in the State Court Action.

3. **Release by the LMH Parties.** Upon receipt of the settlement payment set forth above, and ***with the express exception of those matters addressed in Paragraph 4***, the **LMH Parties**, jointly and severally, on behalf of themselves, and to the extent they are legally capable of doing so, on behalf and their respective parent and sister corporations, subsidiaries, affiliates, affiliated entities, officers, directors, shareholders, administrators, agents, employees, servants, representatives, heirs, predecessors, successors, assigns, representatives, insurers and reinsurers, as well as the respective heirs, personal representatives, successors and assigns of any or all of them (the "**LMH Releasing Parties**"), fully, finally and forever release, acquit and forever discharge the **RLG Parties** and their parent and sister corporations, subsidiaries, affiliates, affiliated entities, officers, directors, shareholders, administrators, agents, employees, servants, attorneys, trusts, representatives, heirs, successors, assigns, representatives, insurers and reinsurers, including but not limited to Beazley Insurance Group and/or Lloyds of London, as well as the respective heirs, personal representatives, successors and assigns of any or all of them

Liberty Initial ____ Excelsior Initial ____ MJR Initial ____ Green Initial ____
Gibson Initial ____ RLG Initial ____ Randazza Initial ____ DeVoy Initial ____

DocuSign Envelope ID: A8F1C152-B75F-47B3-A47C-97C1EC18A94A

(the "**RLG Released Parties**"), unless otherwise specifically exempted or reserved by this Agreement, from any and all claims, counterclaims, third party claims, demands, debts, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses and liabilities, damages, punitive damages, attorneys' fees of any kind or character whatsoever, known or unknown, suspected or unsuspected in contract or in tort, at law or in equity, pursuant to statute or common law, including without implied limitation, such claims and defenses as incapacity, fraud, mistake, and duress, which **the LMH Releasing Parties** ever had, now have or may have had against the **RLG Released Parties** on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen damage and the consequences therefore, including, but not limited to, all such claims arising out of, relating to or concerning the facts or circumstances in existence as of the date of this Agreement, or by reason of any matter, cause or thing whatsoever, which relates in whole or in part, directly or indirectly, to the facts, acts or omissions described or which could have been described in the claims, counterclaims, or proposed claims or counterclaims filed in the State Court Action.

4. **Reservation.** Nothing contained in this Agreement, nor the payment of the settlement payment, shall release any claims, counterclaims, objections, offsets, setoffs, arguments, motions, appeals, or defenses the **Parties** have asserted or could assert against any of the other **Parties** with respect to the following: (a) the Judicial Arbitration and Mediation Service ("**JAMS**") arbitration captioned *Marc J. Randazza v. Excelsior Media, Liberty Media and Jason Gibson*, JAMS No. 1260002283 (the "**Arbitration**"), including also any effort to confirm or enforce (including against RLG or any other person or entity based upon an alter ego theory), challenge, vacate, modify, re-try, or dismiss any interim or final awards entered therein in any court of appropriate jurisdiction, and any appeals from any of the foregoing efforts, but in all events subject to any decisions or orders of the Bankruptcy Court with respect thereto, the Bankruptcy Code including the automatic stay pursuant to 11 U.S.C. § 362, and/or any appeals from any decisions by the Bankruptcy Court with respect thereto; (b) any proofs of claim filed in Randazza's Chapter 11 Case, including but not limited to Claim No. 8 filed on December 29, 2015; (c) the adversary proceeding filed against Randazza in his Chapter 11 Case on December 1, 2015, being case no. 15-1193-abl, as amended (the "**Adversary Proceeding**"). The Parties dispute the effect of this Agreement and the settlement payment on the liability, if any, that Randazza and his affiliates and entities (as those terms are defined in 11 U.S.C. § 101) may have, if any, to claim an offset, setoff or other discount or credit in the Adversary Proceeding, other Bankruptcy Court proceedings or otherwise as against their liability, if any, and agree to leave that matter to be adjudicated at a later date by the Bankruptcy Court or other court of appropriate jurisdiction.

5. **No Admission of Liability.** It is specifically understood, acknowledged and agreed that the **State Court Action** has been a contested matter in all respects and that the execution of this **Agreement** shall not be deemed as an admission of liability on the part of any of the **Parties**, that the present settlement is in compromise of doubtful and disputed claims, and that the payment made is not to be construed as, or raise an inference of, an admission of liability on the part of the **Parties** hereby released, nor does it imply or raise an inference that the **Parties** will settle similar claims such as this in the future. The **Parties** deny liability and intend merely to avoid litigation and to buy their peace.

| | | | |
|---|---|---|---|
| Liberty Initial JWO | Excelsior Initial JWO | MJR Initial ____ | Green Initial ____ |
| Gibson Initial JG | RLG Initial ____ | Randazza Initial ____ | DeVoy Initial JMD |

DocuSign Envelope ID: A8F1C152-B75F-47B3-A47C-97C1EC18A94A

Release and Settlement Agreement
Randazza v. Liberty
Page 4 of 13

6. **No Admission of Insurance Coverage.** It is further understood that neither this Agreement nor the settlement described herein is to be construed as an admission of the existence of insurance coverage for the claim(s) made in the **State Court Action**, the **Arbitration**, the **Chapter 11 Case**, or the **Adversary Proceeding**; *provided*, *however*, that nothing herein is intended or should be constued as an admission by Randazza and his affiliates and entities (as those terms are defined in 11 U.S.C. § 101) that insurance coverage does not exist as well.

7. **Entire Understanding**. The **Parties** to this **Agreement** understand, acknowledge and agree that no promise, representation, warranty, inducement or agreement not herein expressed has been made to any party or its representatives, that this **Agreement** sets forth the entire understanding and agreement between the **Parties** and that the terms of this **Agreement** are contractual and not a mere recital. This **Agreement** supersedes any and all prior agreements, arrangements and understanding, written or oral, relating to the settlement of **State Court Action**. No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and signed by a legal representative of all of the **Parties** to this **Agreement**. The **LMH Parties** specifically acknowledge that the sum set forth herein is all of the money that the **LMH Parties** will receive from the **RLG Parties** as a result of the **State Court Action**, despite any costs or fees that may be claimed by their attorney or any other person or entity.

8. **Authority.** The **Parties** warrant and represent that no other persons or entities have any interest in the claims released herein. Except with respect to **Randazza** and the approval of the Bankruptcy Court as hereinafter referenced, the **Parties** further warrant and represent that the person(s) signing this **Agreement** on behalf of the **Parties** is(are) a duly authorized representative(s) of the **Parties**, is(are) authorized to sign **Agreement** on behalf of the **Parties** and that the undersigned agents or representatives of the **Parties** have full authority to settle the **State Court Action** and to enter into this **Agreement**. The **Parties** represent that the undersigned agents or representatives are twenty-one years of age or over, that they are suffering from no legal disabilities whatsoever, and that they are not suffering from any physical or mental disabilities which would disable, prevent or effect their ability to enter into and execute this Agreement. **Randazza** shall use his commercially reasonable best efforts to obtain approval from the Bankruptcy Court to enter into this **Agreement**, including by filing the motion and supporting documents attached hereto as Exhibit "A" within 2 business days of the full execution of this Agreement; *provided*, *however*, that the **Parties** understand and acknowledge that **Randazza** cannot guarantee that the **Bankruptcy Court** will approve this **Agreement**. ***The Parties further acknowledge and agree that such approval by the Bankruptcy Court is a condition precedent to this Agreement becoming effective. For the avoidance of any doubt, this Agreement shall have no force or effect unless and until the Bankruptcy Court enters a final and unstayed order approving this Agreement.*** In the event the **Bankruptcy Court** does not approve this **Agreement**, then (i) this **Agreement** will be null and void and of no force or effect; (ii) none of the **Parties** shall have any obligations to any other **Party** arising out of this **Agreement**; (iii) the **Parties'** respective rights and remedies with respect to all matters addressed by this **Agreement** will be fully reserved and the **Parties** will be restore to their respective positions, *status quo ante*, as of the date of the execution of this **Agreement**; (iv) this

Liberty Initial ____ Excelsior Initial ____ MJR Initial ____ Green Initial ____
Gibson Initial ____ RLG Initial ____ Randazza Initial ____ DeVoy Initial ____

DocuSign Envelope ID: A8F1C152-B75F-47B3-A47C-97C1EC18A94A

**Agreement** shall not be admissible in any proceeding except to the extent necessary to adjudicate the Parties' dispute set forth in the last sentance of Paragraph 4.

9. **Attorneys' Fees.** Subject to the reservation in Paragraph 4 hereof, the **Parties** understand and agree that each shall bear their own attorney's fees and costs arising from or in connection with the **State Court Action**, this **Agreement**, and all related matters.

10. **Dismissal.** The **Parties** expressly agree that upon payment of the settlement amount set forth above, they will direct their agents or attorneys to execute any and all documents necessary to ensure that, except as reserved in paragraph 4, above, all claims against the **Parties** are dismissed with prejudice, and that the above entitled **State Court Action** is dismissed in its entirety. Upon execution of this **Agreement**, the parties to the State Court Action shall notify the Court that they have conditionally settled the case and that they request that the action be stayed to allow time for the Agreement to become effective, as set forth above.

11. **Joint Agreement.** The **Parties** agree that this Agreement is the joint work product of all counsel for the **Parties**, and accordingly, no term or provision shall be more strictly construed against any one party.

12. **Severability.** In the event any part of this Agreement is found to be invalid or unenforceable, the **Parties** agree that such finding shall not cause the remaining portions of this agreement to be deemed invalid or unenforceable.

13. **Choice of Law**. The **Parties** agree that this Agreement shall be governed and construed in accordance with the laws of the State of Nevada.

14. **Original Documents**. The **Parties** agree that this Agreement may be executed in any number of counterparts and delivered by electronic means or facsimile, each of which shall be deemed an original but all of which shall constitute a single instrument.

15. **Headings**. All sections, titles, captions or headings contained in this Agreement are for convenience only and shall not affect the meaning or interpretation of this Agreement.

16. **Opportunity to Consult with Counsel.** The **Parties** specifically acknowledge that they have had an opportunity to consult with an attorney of their choice and that in executing the present **Agreement**, the **Parties** are relying solely upon their own judgment, belief and knowledge of the nature, extent and duration of their claimed damages and that no representations or statements about them made by the other party or their representatives have influenced or induced the **Parties** in making or executing this **Agreement**. In entering into this **Agreement**, the **Parties** further represent that they have relied upon the advice of their attorneys, who are their attorneys of choice, concerning the legal and income tax consequences of this Agreement; that the terms of this Agreement have been completely read and explained by their own attorney; and that they voluntarily accept those terms.

**[SIGNATURE BLOCKS ON THE FOLLOWING PAGES]**

Liberty Initial ____ Excelsior Initial ____ MJR Initial ____ Green Initial ____
Gibson Initial ____ RLG Initial ____ Randazza Initial ____ DeVoy Initial ____

DocuSign Envelope ID: A8F1C152-B75F-47B3-A47C-97C1EC18A94A

Release and Settlement Agreement
Randazza v. Liberty
Page 6 of 13

**THE UNDERSIGNED HAS READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND FULLY UNDERSTANDS IT.**

Signed, sealed, and delivered this 3 day of June, 2016.

in the presence of:

**LIBERTY MEDIA HOLDINGS, LLC d/b/a CORBIN FISHER**

BY: [signature]

Printed Name BRIAN J. DUNLAP

Title VICE PRESIDENT

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

**I HEREBY CERTIFY** that on this 3 day of June, 2016, Brian J Dunlap personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, in the state and county aforesaid, who is personally known to me or who has produced Drivers License as identification, and is known to be the person described in and who executed the foregoing Settlement Agreement and Mutual Release (consisting of this page and previous pages) and acknowledged to and before me that s/he has read and fully understands its contents, that s/he has thereby released all of claims, and that s/he duly executed the same in my presence as his/her free act and deed, and for the sole consideration therein expressed.

[signature]
NOTARY PUBLIC

[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]

JOHN R. MANCINI
Notary Public, State of Nevada
Nonresident
Appointment No. 13-10610-1
Appt. Expires Dec 5, 2016

Liberty Initial [initials] Excelsior Initial [initials] MJR Initial [initials] Green Initial [initials]
Gibson Initial JG RLG Initial [initials] Randazza Initial [initials] DeVoy Initial MD

DocuSign Envelope ID: A8F1C152-B75F-47B3-A47C-97C1EC18A94A

**THE UNDERSIGNED HAS READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND FULLY UNDERSTANDS IT.**

Signed, sealed, and delivered this 3 day of JUNE, 2016.

in the presence of:

**EXCELSIOR MEDIA CORP.**

BY: [signature]

Printed Name BRIAN J. DUNLAP

Title VICE PRESIDENT

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

**I HEREBY CERTIFY** that on this 3 day of June, 2016, Brian J Dunlap personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, in the state and county aforesaid, who is personally known to me or who has produced Drivers License as identification, and is known to be the person described in and who executed the foregoing Settlement Agreement and Mutual Release (consisting of this page and previous pages) and acknowledged to and before me that s/he has read and fully understands its contents, that s/he has thereby released all of claims, and that s/he duly executed the same in my presence as his/her free act and deed, and for the sole consideration therein expressed.

[signature]
NOTARY PUBLIC

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

JOHN R. MANCINI
Notary Public, State of Nevada
Nonresident
Appointment No. 13-10610-1
Appt. Expires Dec 5, 2016

Liberty Initial [initials] Excelsior Initial [initials] MJR Initial ____ Green Initial [initials]
Gibson Initial JG RLG Initial [initials] Randazza Initial ____ DeVoy Initial JMD

**THE UNDERSIGNED HAS READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND FULLY UNDERSTANDS IT.**

Signed, sealed, and delivered this _____ day of ____________________, 20___.

in the presence of:

**JASON GIBSON**
DocuSigned by:
Jason Gibson
Signature

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

**I HEREBY CERTIFY** that on this ____ day of __________, 2016, ______________________________ personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, in the state and county aforesaid, who is personally known to me or who has produced ________________ as identification, and is known to be the person described in and who executed the foregoing Settlement Agreement and Mutual Release (consisting of this page and previous pages) and acknowledged to and before me that s/he has read and fully understands its contents, that s/he has thereby released all of claims, and that s/he duly executed the same in my presence as his/her free act and deed, and for the sole consideration therein expressed.

______________________________
NOTARY PUBLIC

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

Liberty Initial ____ Excelsior Initial ____ MJR Initial _____ Green Initial ____
Gibson Initial JG Randazza Initial ____ RLG Initial ____ DeVoy Initial ____

**THE UNDERSIGNED HAS READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND FULLY UNDERSTANDS IT.**

Signed, sealed, and delivered this 31 day of May, 2016.

in the presence of:

**MARC J. RANDAZZA P.A.**
~~**d/b/A RANDAZZA LEGAL GROUP**~~ stet MJR

BY: [signature]

Printed Name Marc J. Randazza

Title president

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

**I HEREBY CERTIFY** that on this 31 day of May, 2016, Marc J. Randazza personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, in the state and county aforesaid, who is personally known to me or who has produced NVDL as identification, and is known to be the person described in and who executed the foregoing Settlement Agreement and Mutual Release (consisting of this page and previous pages) and acknowledged to and before me that s/he has read and fully understands its contents, that s/he has thereby released all of claims, and that s/he duly executed the same in my presence as his/her free act and deed, and for the sole consideration therein expressed.

[signature]
NOTARY PUBLIC

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

KIM MUHAMMAD
Notary Public, State of Nevada
Appointment No. 99-52700-1
My Appt. Expires Jul 18, 2018

Liberty Initial ____ Excelsior Initial ____ MJR Initial ____ Green Initial ____
Gibson Initial JG RLG Initial ____ Randazza Initial ____ DeVoy Initial ____

**THE UNDERSIGNED HAS READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND FULLY UNDERSTANDS IT.**

Signed, sealed, and delivered this 31 day of May, 2016.

in the presence of:

**RANDAZZA LEGAL GROUP, PLLC**

BY: ______________________

Printed Name Ronald D Green Jr.

Title Managing Member

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

**I HEREBY CERTIFY** that on this 31 day of May, 2016, Ronald D. Green JR. personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, in the state and county aforesaid, who is personally known to me or who has produced NV DL as identification, and is known to be the person described in and who executed the foregoing Settlement Agreement and Mutual Release (consisting of this page and previous pages) and acknowledged to and before me that s/he has read and fully understands its contents, that s/he has thereby released all of claims, and that s/he duly executed the same in my presence as his/her free act and deed, and for the sole consideration therein expressed.

NOTARY PUBLIC

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

KIM MUHAMMAD
Notary Public, State of Nevada
Appointment No. 99-52700-1
My Appt. Expires Jul 18, 2018

Liberty Initial ____ Excelsior Initial ____ MJR Initial ____ Green Initial ____
Gibson Initial ____ RLG Initial ____ Randazza Initial ____ DeVoy Initial ____

DocuSign Envelope ID: A8F1C152-B75F-47B3-A47C-97C1EC18A94A

**THE UNDERSIGNED HAS READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND FULLY UNDERSTANDS IT.**

Signed, sealed, and delivered this 31 day of May, 2016.

in the presence of:

**MARC J. RANDAZZA**

Signature

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

**I HEREBY CERTIFY** that on this 31 day of May, 2016, Marc J. Randazza personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, in the state and county aforesaid, who is personally known to me or who has produced NV DL as identification, and is known to be the person described in and who executed the foregoing Settlement Agreement and Mutual Release (consisting of this page and previous pages) and acknowledged to and before me that s/he has read and fully understands its contents, that s/he has thereby released all of claims, and that s/he duly executed the same in my presence as his/her free act and deed, and for the sole consideration therein expressed.

KIM MUHAMMAD
Notary Public, State of Nevada
Appointment No. 99-52700-1
My Appt. Expires Jul 18, 2018

NOTARY PUBLIC

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

Liberty Initial ____ Excelsior Initial ____ MJR Initial ____ Green Initial ____
Gibson Initial JG RLG Initial ____ Randazza Initial ____ DeVoy Initial JMD

**THE UNDERSIGNED HAS READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND FULLY UNDERSTANDS IT.**

Signed, sealed, and delivered this 31 day of May, 2016.

in the presence of:

**RONALD GREEN**

Signature

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

**I HEREBY CERTIFY** that on this 31 day of May, 2016, Ronald Green personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, in the state and county aforesaid, who is personally known to me or who has produced NVDL as identification, and is known to be the person described in and who executed the foregoing Settlement Agreement and Mutual Release (consisting of this page and previous pages) and acknowledged to and before me that s/he has read and fully understands its contents, that s/he has thereby released all of claims, and that s/he duly executed the same in my presence as his/her free act and deed, and for the sole consideration therein expressed.

NOTARY PUBLIC

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

KIM MUHAMMAD
Notary Public, State of Nevada
Appointment No. 99-52700-1
My Appt. Expires Jul 18, 2018

Liberty Initial ____ Excelsior Initial ____ MJR Initial ____ Green Initial ____
Gibson Initial ____ RLG Initial ____ Randazza Initial ____ DeVoy Initial ____

DocuSign Envelope ID: A8F1C152-B75F-47B3-A47C-97C1EC18A94A

Release and Settlement Agreement
Randazza v. Liberty
Page 13 of 13

**THE UNDERSIGNED HAS READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND FULLY UNDERSTANDS IT.**

Signed, sealed, and delivered this 1st day of June, 2016.

in the presence of:

**JAMES MALCOLM DEVOY**

Signature

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

**I HEREBY CERTIFY** that on this 1st day of June, 2016, James Malcolm DeVoy personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, in the state and county aforesaid, who is personally known to me or who has produced a Driver's License as identification, and is known to be the person described in and who executed the foregoing Settlement Agreement and Mutual Release (consisting of this page and previous pages) and acknowledged to and before me that s/he has read and fully understands its contents, that s/he has thereby released all of claims, and that s/he duly executed the same in my presence as his/her free act and deed, and for the sole consideration therein expressed.

NOTARY PUBLIC

JOHNNI JO FUSCH
Notary Public-State of Nevada
APPT. NO. 93-1989-1
My App. Expires October 06, 2018

Liberty Initial ____ Excelsior Initial ____ MJR Initial ____ Green Initial ____
Gibson Initial ____ RLG Initial ____ Randazza Initial ____ DeVoy Initial ____

EXHIBIT “2”

EXHIBIT “2”

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| In re:<br><br>MARC JOHN RANDAZZA,<br><br>Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11<br><br>Date: July 20, 2016<br>Time: 1:30 p.m. |
|---|---|

**ORDER GRANTING DEBTORS' MOTION TO AUTHORIZE AND APPROVE SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019**

Marc John Randazza, as debtor and debtor in possession (the "Debtor"), by and through his counsel, the law firm of Larson & Zirzow, LLC, having filed his *Motion to Approve Settlement Pursuant to Bankruptcy Rule 9019* (the "Motion") [ECF No. ___][1]; the Court having reviewed and considered the Motion; the Court having held a hearing on the Motion, and having entertained the

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meaning as in the Motion.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

arguments of counsel; the Court having placed its findings of fact and conclusions of law on the record as the hearing, which are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure; the Court having founds and determined that the Settlement Agreement is fair and equitable and in the best interests of the estate and all creditors and parties in interest; and good cause appearing;

**IT IS HEREBY ORDERED:**

1. The Motion is GRANTED and the Agreement is approved;

2. The parties are authorized and approved to execute the Agreement and to take any and all steps as may be necessary and appropriate to effectuate that settlement in accordance with its terms and conditions and without further order of the Court;

3. The Court reserves jurisdiction regarding the interpretation, implementation and effect of this Order and the Agreement.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

By: ________________________________
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

. . .

. . .

. . .

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

## LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #