1    Ogonna M. Brown, Esq. (NV Bar No. 7589)
     Email: obrown@nevadafirm.com
2    Andrea M. Gandara, Esq. (NV Bar No. 12580)      E-filed on: <u>January 9, 2017</u>
     Email: agandara@nevadafirm.com
3    HOLLEY DRIGGS WALCH
     FINE WRAY PUZEY & THOMPSON
4    400 South Fourth Street, Third Floor
     Las Vegas, Nevada 89101
5    Telephone:    702/791-0308
     Facsimile:     702/791-1912
6    *Attorney for Clay Douglass*

7

         **UNITED STATES BANKRUPTCY COURT**

8             **DISTRICT OF NEVADA**

9    In re:                 Case No. BK-S-15-14956-ABL
                            Chapter 11
10   MARC JOHN RANDAZZA aka
     MARCO RANDAZZA,
11                     **STIPULATION TO MODIFY THE**
            Debtor.            **AUTOMATIC STAY TO NAME DEBTOR**
12                     **NOMINALLY TO PURSUE INSURANCE**
                    **POLICY AND WAIVE THE 14-DAY**
13                     **STAY UNDER 4001(a)(3) WITH NO**
                    **ENFORCEMENT OF ANY JUDGMENT**
14                     **AGAINST DEBTOR**

15                     Judge: Hon. August B. Landis

16       This stipulation is made by and between Creditor Clay Douglass ("Mr. Douglass"), by

17 and through his counsel, Ogonna M. Brown, Esq. and Andrea M. Gandara, Esq. of the law firm

18 of Holley Driggs Walch Fine Wray Puzey and Thompson and Debtor, Marc John Randazza (the

19 "Debtor"), by and through his counsel, Larson & Zirzow, hereby stipulate and agree as follows:

20                           **RECITALS**

21       1.      On or about January 2012, Marc J. Randazza P.A. d/b/a Randazza Legal Group

22 ("MJRPA") obtained a Lawyers Professional Liability Declarations Policy from Kinsale

23 Insurance Company ("First Policy"). A true and correct copy of the declaration pages of the

24 First Policy is attached hereto as **Exhibit "1"**.

25       2.      On or about January 2014, MJRPA obtained a Lawyers Professional Liability

26 Insurance Policy from Imperium Insurance Company ("Second Policy"). A true and correct

27 copy of the declaration pages of the Second Policy is attached hereto as **Exhibit "2"**.

28

11264-01/1819767_2.doc

3.    On or about January 2015, MJRPA obtained a Lawyers Professional Liability Insurance Policy from Imperium Insurance Company ("Third Policy"). A true and correct copy of the declaration pages of the Third Policy is attached hereto as **Exhibit "3"**.

4.    On May 8, 2014, Mr. Douglass allegedly retained MJRPA to represent him in an arbitration commenced in the International Centre for Dispute Resolution ("ICDR") in the Matter of Serenivision, Inc. v. Vivera and Clayton Douglass, Case No. 50-20-1400-0207 (the "Arbitration").

5.    On May 22, 2015, a Final Award was entered in the Arbitration against Mr. Douglass (the "Arbitration Award"), a true and correct copy of which is attached hereto as **Exhibit "4"**.

6.    On August 28, 2015, the Debtor filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code in the U.S. Bankruptcy Court for the District of Nevada, pending as Case No. BK-S-15-14956-ABL (the "Chapter 11 Case").

7.    On December 11, 2015, Mr. Douglass filed a proof of claim in the Debtor's Chapter 11 Case alleging a claim for legal malpractice in the amount of $1,831,792.59 (the "Proof of Claim") arising out of or related to the Arbitration and/or the Arbitration Award, as well as interest, administrative fees and attorneys' fees. See Claim # 7.

## STIPULATION

**IT IS THEREFORE STIPULATED AND AGREED** that the automatic stay shall hereby be modified to allow Mr. Douglass to name Debtor nominally to pursue any and all applicable malpractice insurance policies held by MJRPA and/or the Debtor at all relevant times, and only those policies, arising from his alleged losses due to the Arbitration Award entered against Mr. Douglass and all alleged fees and costs associated with the Arbitration Award, including but not limited to, interest on the Arbitration Award, administrative fees and expenses, attorneys' fees and costs associated with the Arbitration Award;

**IT IS THEREFORE STIPULATED AND AGREED** that waiver of the 14-day stay is appropriate, as there is no basis for staying the enforcement of the order for 14-days, where Mr. Douglass is not seeking to recover any claims against the Debtor that would diminish the estate,

- 2 -

11264-01/1819767_2.doc

and Mr. Douglass is seeking to name Debtor nominally to allow Mr. Douglass to only proceed against any and all applicable malpractice insurance policies held by Debtor at all relevant times; and

**IT IS FURTHER STIPULATED AND AGREED** that Mr. Douglass does not seek to enforce any judgment against Debtor, to the extent any such judgment is obtained, and only seeks to pursue any and all recovery from any and all applicable malpractice insurance policies held by Debtor at all relevant times arising from Debtor's representation of Mr. Douglass in the Arbitration resulting in an adverse ruling against Mr. Douglass.

**IT IS FURTHER STIPULATED AND AGREED** that nothing herein is intended or should be construed as waiving or releasing any claims, arguments, or defenses: (1) the Debtor, MJRPA and/or his estate may have to disallow the Proof of Claim, any liability allegedly arising out of or related to the Arbitration, the Arbitration Award, or any claim(s) associated with, arising out of, or in any way related to all of the foregoing; (2) any applicable rights, claims or defenses of any holder(s) of any and all applicable malpractice insurance policies may have.

**IT IS FURTHER STIPULATED AND AGREED** and the parties hereto respectfully request that the Court enter the form of Order attached hereto as Exhibit 1, thereby approving this Stipulation and granting the relief requested herein.

**IT IS SO STIPULATED.**

DATED this _____ day of January, 2017.

**HOLLEY DRIGGS WALCH**
**FINE WRAY PUZEY & THOMPSON**


_____
Ogonna M. Brown, Esq. (NBN 7589)
Andrea M. Gandara, Esq. (NBN 12580)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

*Attorney for Clay Douglass*

**LARSON & ZIRZOW, LLC**


  /s/ Matthew C. Zirzow
_____
Matthew C. Zirzow, Esq. (NBN 7222)
Zachariah Larson, Esq. (NBN 7787)
850 East Bonneville Avenue
Las Vegas, Nevada 89101

*Attorneys for Debtor*

11264-01/1819767_2.doc

# EXHIBIT "1"

**KINSALE INSURANCE COMPANY**

6802 Paragon Place, Suite 350
Richmond, VA 23230

## LAWYERS PROFESSIONAL LIABILITY DECLARATIONS

| | |
|---|---|
| **Policy Number:** | 0100004449-0 |
| **Producer Number:** | 21101 |
| **Name and Address:** | B&B Protector dba Prof Liab Brokers |
| | 3101 W. Dr. Martin Luther King Jr. |
| | Tampa, FL 33607 |

| | |
|---|---|
| NAMED INSURED: | Marc J Randazza PA |
| | dba Randazza Legal Group |
| MAILING ADDRESS: | 2 South Biscayne Boulevard, Suite 2600 |
| | Miami, FL 33131 |
| POLICY PERIOD: | FROM 01/26/2012 TO 01/26/2013 at 12:01 AM at the address of the named insured as shown above |

| RETROACTIVE DATE | |
|---|---|
| Retroactive Date | 01/26/2011 at 12:01AM at the address of the named insured as shown above. |

| LIMITS OF INSURANCE | |
|---|---|
| Each Claim | $ 500,000 |
| Aggregate | $ 500,000 |

| DEDUCTIBLE(S) | |
|---|---|
| Each Claim | $ 25,000 |

| PREMIUM AND COMPANY FEES | | |
|---|---|---|
| **PREMIUM:** | $ | 12,750 |
| **COMPANY FEE:** | $ | 75 |
| **TOTAL (OF PREMIUM AND COMPANY FEE):** | $ | 12,825 |

| OPTIONAL EXTENDED REPORTING PERIOD | |
|---|---|
| 12 month(s) | 100% of Policy Premium |
| 24 month(s) | 150% of Policy Premium |
| 36 month(s) | 175% of Policy Premium |
| See SECTION IX of the Policy for details | |

| ENDORSEMENTS |
|---|
| Refer to ADF4001, SCHEDULE OF FORMS |

LAW1000 0110

## NOTICE—WHERE TO REPORT A CLAIM

It is important that you report claims or incidents (if incident reporting is permitted under your policy) in writing and directly to Kinsale Insurance Company. Reporting claims or incidents to your insurance agent or broker is not notice to Kinsale Insurance Company. Failure to report may jeopardize your coverage under the Policy. Our contact information is listed below.

**By E-mail:**
Newclaimnotices@kinsaleins.com

**By FAX:**
1-804-482-2762, Attention Claims Department

or

**By Mail:**
Kinsale Insurance Company
Attention: Claims Department
P. O. Box 17008
Richmond, Virginia 23226

**Street Address:**
6802 Paragon Place, Suite 350
Richmond, Virginia 23230

ADF9013 1011                                                                 Page 1 of 1

# EXHIBIT "2"

**Imperium Insurance Company**
A Stock Company
800 Gessner St. Suite 600
Houston, Texas 70024
1-800-203-1179

Hereinafter known as the Company

# Lawyers Professional Liability Insurance Policy Declarations

*THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE REVIEW THE POLICY CAREFULLY.*

*NOTICE:  EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR **COVERED ACTS** COMMITTED SUBSEQUENT TO THE **RETROACTIVE DATE**, IF APPLICABLE, FOR WHICH **CLAIMS** ARE FIRST MADE AGAINST **YOU** WHILE THE POLICY IS IN FORCE AND WHICH ARE REPORTED TO **US** NO LATER THAN SIXTY (60) DAYS AFTER THE TERMINATION OF THIS POLICY.  THE COVERAGE OF THIS POLICY DOES NOT APPLY TO **CLAIMS** FIRST MADE AGAINST **YOU** AFTER THE TERMINATION OF THIS POLICY UNLESS, AND IN SUCH EVENT ONLY TO THE EXTENT, AN **EXTENDED REPORTING PERIOD** OPTION APPLIES.*

POLICY NUMBER:    IFI 774619-00               Replacing:      New
                                                           Producer Code:

1.       NAMED INSURED:     Randazza Legal Group
          ADDRESS:            3625 S. Town Center Dr.
                                  Suite 150
                                  Las Vegas, NV 89135

2.       PERIOD OF INSURANCE: FROM:1/26/2014        TO:     1/26/2015
          12.01AM STANDARD TIME AT THE ADDRESS SHOWN IN ITEM 1 ABOVE.

3.       LIMITS OF LIABILITY

          (a)    $500,000                      EACH CLAIM
          (b)    $1,000,000                 in the AGGREGATE

4.       DEDUCTIBLE

          (a)    $25,000                       AGGREGATE

5.       PREMIUM US: $10,015.00

6.       RETROACTIVE DATE:   See Form

7.       Notice to insurer:

York Professional Liability Group.
YorkPro, Inc.
One Whitehall Street, 14th Floor, New York, NY, 10004
Email: yorkproclaims@yorkrsg.com
Phone: 646-313-4063 Fax: 646-224-8358

8.       Forms and endorsements attached at inception of coverage.  Refer to schedule of forms.

       IIC LP 20 28

*Page 1 of 1*

# EXHIBIT "3"

**Imperium Insurance Company**
A Stock Company
800 Gessner St. Suite 600
Houston, Texas 70024
1-800-203-1179

# Lawyers Professional Liability Insurance Policy Declarations

**Hereinafter known as the Company**

### *THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE REVIEW THE POLICY CAREFULLY.*

*NOTICE:  EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR **COVERED ACTS** COMMITTED SUBSEQUENT TO THE **RETROACTIVE DATE**, IF APPLICABLE, FOR WHICH **CLAIMS** ARE FIRST MADE AGAINST **YOU** WHILE THE POLICY IS IN FORCE AND WHICH ARE REPORTED TO **US** NO LATER THAN SIXTY (60) DAYS AFTER THE TERMINATION OF THIS POLICY.  THE COVERAGE OF THIS POLICY DOES NOT APPLY TO **CLAIMS** FIRST MADE AGAINST **YOU** AFTER THE TERMINATION OF THIS POLICY UNLESS, AND IN SUCH EVENT ONLY TO THE EXTENT, AN **EXTENDED REPORTING PERIOD** OPTION APPLIES.*

POLICY NUMBER:    IFI 774619-01

Replacing:    IFI 774619-00
Producer Code:

1.    NAMED INSURED:    Randazza Legal Group
       ADDRESS:              3625 S. Town Center Dr.
                                     Suite 150
                                     Las Vegas, NV 89135

2.    PERIOD OF INSURANCE: FROM:1/26/2015        TO:    1/26/2016
       12.01 AM STANDARD TIME AT THE ADDRESS SHOWN IN ITEM 1 ABOVE.

3.    LIMITS OF LIABILITY

       (a)    $500,000                          EACH CLAIM
       (b)    $1,000,000                       in the AGGREGATE

4.    DEDUCTIBLE

       (a)    $25,000                           AGGREGATE

5.    PREMIUM US: $13,443.00

6.    RETROACTIVE DATE:   See Form

7.    Notice to insurer:

                              HIIG Pro Claims
                     Imperium Insurance Company
           89 Headquarters Plaza, Suite 355 (North Tower)
                        Morristown, NJ 07960
                        hiigproclaims@hiig.com

8.    Forms and endorsements attached at inception of coverage.  Refer to schedule of forms.

       IIC LP 20 28

*Page 1 of 1*

# EXHIBIT "4"

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

IN THE MATTER OF

SERENIVISION, INC.,
　　　　　　　　　Claimant,
v.　　　　　　　　　　　　　　　　　　　　Case No. 50-20-1400-0207

VIVERA and CLAYTON DOUGLASS.
　　　　　　　　　Respondents.

---

## FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated August 19, 2009, having been duly sworn, having duly heard the proofs and allegations of the parties, having issued a Partial Final Award dated April 6, 2015, do AWARD as follows:

On March 9, 2015, an Evidentiary Hearing in this matter was convened in San Diego, California, and on April 6, 2015, a Partial Final Award was issued; that Award established a schedule by which Respondent Vivera would be permitted to make a submission regarding its liability and all parties could submit material regarding the matter of allocating fees, expenses, and costs. Now having considered the evidence presented, reviewed the written submissions of the parties, and received the arguments of counsel, it is my judgment that the following Final Award should be entered.

## PRELIMINARY MATTERS

1.　On March 4, 2014, Claimant electronically filed a Demand for Arbitration in this matter with the American Arbitration Association. The Demand sought recovery of damages for breach of contract, including late charges. The Demand named two residents of the United Kingdom as Respondents, and as a result, the case has been administered by the International Centre for Dispute Resolution, a division of the American Arbitration Association.

2.　The Demand for Arbitration alleged that it was made in accordance with a written agreement between Claimant and Respondent Vivera denominated an Insertion Order. By

1

explicit reference, that writing incorporated the terms of a Master Advertising Agreement, which provided in turn:

3. **"13. Dispute Resolution**
This Agreement shall be governed by the laws of the United States and the State of California without respect to choice of law rules. The Parties consent to have all disputes regarding this agreement resolved by binding arbitration before the American Arbitration Association, Commercial Division. The parties specifically waive any international treaties or other international law which may govern the court or location of resolution of any dispute between them. This provision was a bargained for relinquishment of both parties rights to jurisdiction in their respective states or countries. The Parties waive the personal service of any process upon them and agree that service may be completed by overnight mail (using a commercially recognized service) or by U.S. mail with delivery receipt to the address stated in this Agreement. Company shall be entitled to recover all reasonable costs of collection (including attorney's fees, in-house counsel costs, expenses and costs) incurred in attempting to collect payment from Advertiser. The prevailing party in any Arbitration shall be entitled to an award of attorney fees and costs for such arbitration."

4. The gravamen of the Demand was an allegation that Claimant performed advertising services for Respondent Vivera in accordance with the Insertion Order and Marketing Management Agreement, but Claimant has not been paid in full for services rendered. Claimant alleged that Respondent Douglass personally guaranteed payment when he signed the Insertion Order and now is liable for the unpaid balance on account.

5. On March 4, 2014, Claimant mailed a copy of the Demand to the two Respondents by overnight delivery addressed to the last known business address for Vivera. The Demand was received by Respondent Douglass.

6. On April 3, 2014, Respondent Clayton Douglass filed an Answering Statement generally denying the allegations of the Demand and requesting an award of attorney fees and costs. Despite having been provided the same notice Respondent Douglass received and acted upon, Respondent Vivera did not file an Answering Statement. Vivera did not appear in any proceedings and did not tender any submissions for my consideration.

7. In this arbitration, Claimant was represented by George W. M. Mull and Jeffrey Nicolai of Tackett, Mull and Nicolai LLP in Sacramento and San Francisco, California, respectively. Respondent Douglass was represented by Ronald Green and Mark Randazza of Randazza Legal Group of Las Vegas, Nevada.

8.  On June 17, 2014, counsel for the parties participated in an Administrative Conference with the International Centre for Dispute Resolution and agreed that the Commercial Arbitration Rules as amended and in effect as of October 1, 2013 of the American Arbitration Association ("AAA Commercial Rules") would apply in this matter. Counsel also agreed the case could be heard by a single arbitrator in San Diego, California. Based on the conversation at that time, the International Centre for Dispute Resolution was given to understand that Vivera and Mr. Douglass were one and the same Respondent, represented by Mr. Green. Accordingly, on September 5, 2014, Notice of Preliminary Hearing was sent by the Case Manager to Mr. Green as counsel for both Respondents; on October 3, 2014, the Notice of Hearing also was sent to Mr. Green as Respondents' counsel.

9.  On August 6, 2014, the International Centre for Dispute Resolution appointed me as the Arbitrator in this proceeding. I accepted that appointment, executed the oath of office, and made appropriate disclosures to the parties; there was no objection to my appointment by any party.

10.  On September 10, 2014, a telephonic Preliminary Hearing was conducted. At that time, Claimant was represented by Messrs. George Mull and Jeffrey Nicolai. I was given to understand that the Respondents both were represented by Ronald Green, and the Order issued after this hearing memorialized his appearance on behalf of the two Respondents. The parties agreed that the current Demand and Answering Statement sufficiently set forth the claims and defense. Acting on behalf of Respondent Douglass, Mr. Green affirmed his client's voluntary appearance and submission to the jurisdiction of this arbitration. Counsel agreed to meet and confer regarding Mr. Douglass' request that Claimant post security for payment of any award of attorney fees and costs in this matter, and Mr. Green stated his intention to file a formal motion for a bond in the event the parties were unable to agree. An Evidentiary Hearing was scheduled for March 9, 2015, in San Diego, California, with the concurrence of counsel.

11.  After issuance of the Preliminary Hearing Order noting Mr. Green's appearance on behalf of both Respondents, I was not advised by counsel that the Order was in error, and there is no record of the International Centre for Dispute Resolution having been advised that Mr. Green was unauthorized to accept service of Orders on behalf of Respondent Vivera. When a designated representative of a party responds and participates in further proceedings, notice is deemed to have been provided. AAA Commercial Rule 26.

12.  On February 18, 2015, counsel for Respondent Douglass advised me that the parties had been unable to agree on the posting of a bond as security for payment of fees and costs. Given the impending Evidentiary Hearing, Respondent Douglass' request for security was deemed an oral motion for relief, and an expedited hearing was scheduled for February 23, 2015. Claimant and Respondent Douglass submitted letter briefs regarding the Arbitrator's authority to require the posting of a bond in this case, and counsel made oral arguments. After consideration of the parties' positions, I determined that neither the parties' written agreements nor California law conferred power to require the posting of a bond by a California Claimant, and I entered an Order denying Respondent's motion. By Order dated February 25, 2015, which was served on all

3

counsel via email, I confirmed that the Evidentiary Hearing would proceed on Monday, March 9, 2015.

13. At the February 18, 2015 hearing, I advised counsel that in reviewing the Answering Statement filed by Mr. Green, it appeared to be on behalf of Respondent Douglass alone, and not on behalf of Vivera. At that time, Mr. Green confirmed for the first time that he only represented Mr. Douglass, and my prior Order noting his appearance on behalf of both Respondents had been in error.

14. On March 2, 2015, counsel for Respondent Douglass wrote me a letter, with copies to Claimant's counsel and the Case Manager at the International Centre for Dispute Resolution. That letter acknowledged the Evidentiary Hearing was scheduled for March 9, 2015, and that Mr. Douglass would be afforded an opportunity to raise any jurisdictional issues at that time. However, counsel stated that Mr. Douglass would not attend the Evidentiary Hearing and had instructed Messrs. Green and Randazza not to appear as well.

15. On March 9, 2015, an Evidentiary Hearing was convened in San Diego, California, at 9:00 A.M. Claimant was represented by Messrs. George Mull and Jeffrey Nicolai. Neither Respondent Douglass nor his counsel appeared; Respondent Vivera likewise failed to appear. The hearing proceeded in accordance with AAA Commercial Rule 31.

16. At the Evidentiary Hearing, Claimant called Mr. Chern Lee—Claimant's Chief Executive Officer—and Mr. Justin Tsang—Vice-President of Claimant—as witness and introduced documentary evidence in support of its claim. The Declaration of Mr. Douglass under penalty of perjury had been submitted by counsel as a supplement to Respondent's Prehearing Brief, and it too was considered. The proceedings were not reported, and the evidentiary hearing was recessed at 1:00 P.M. with the understanding that Claimant would be afforded time to proffer a calculation of pre-award interest. Claimant submitted a proposed calculation of late payment interest on March 18, 2015, at which point the evidentiary record conditionally was closed with respect to Respondent Douglass, subject to any submission regarding attorney fees and arbitration costs and expenses.

17. On March 16, 2015, I wrote counsel for Claimant and Respondent Douglass inviting further briefing on the question whether the amount of any indebtedness was liquidated or capable of ascertainment within the meaning of California Civil Code section 3287. Counsel for Claimant responded, but no submission was made on behalf of Respondent Douglass.

18. In my Partial Final Award of April 6, 2015, I noted that Respondent Vivera had not appeared or defended its interests in this matter, notwithstanding having received the Demand for Arbitration at the same time as Respondent Douglass. Applying AAA Commercial Rule 31, I determined that Vivera still should be permitted a reasonable opportunity to make a written submission regarding the amount of any liability owing to Claimant. To that end, I directed that

4

my Partial Final Award be transmitted to Vivera at it last known mailing address in the United Kingdom.

19. On April 7, 2015, the International Centre for Dispute Resolution sent a copy of my Partial Final Award via Federal Express to Vivera at that Respondent's last known business address. That package was delivered to Vivera on April 29, 2015, and an acknowledgement of delivery was signed by one J. Ones on behalf of Vivera. Notwithstanding, Vivera has not responded in defense of its position.

20. On April 9, 2015, Claimant filed an application for an award of fees, costs, and expenses; a copy of that application was served electronically upon counsel for Respondent Douglass. As of the date for this Final Award, Respondent Vivera has made no submission whatsoever regarding merits of Claimant's claim; neither Respondent has made any submission in opposition to Claimant's application for an award of fees, costs, and expenses as a prevailing party.

## THE PARTIES' DISPUTE

21. Claimant contends that in the summer of 2009, its representatives were introduced to Mr. Douglass and his colleague, Mitch Platt, both of whom were acting on behalf of Vivera at the time. After that meeting, Claimant and Vivera entered into an agreement called an Insertion Order. That agreement contemplated Claimant would place advertisements for Vivera's products with various internet publishers; Vivera would compensate Claimant for each product sale resulting from customers who were directed to Vivera's website by those advertisements. Claimant contends the parties performed in accordance with a Marketing Management Agreement that the Insertion Order incorporated by reference, but Vivera eventually ceased making timely payment for the advertising services Claimant had rendered. Claimant contends it is owed US$816,530.00, plus late payment penalties; this amount is allegedly owed by Vivera and Respondent Douglass, in the latter's case because he signed the Insertion Order, which Claimant contends incorporates a personal guaranty.

22. Not having filed an Answering Statement, the contentions of Respondent Vivera are unknown. However, Respondent Douglass has repeatedly denied any liability in this matter. His Answering Statement asserted that although he signed the Insertion Order, there was no Marketing Management Agreement appended to the document, nor was there a copy of the Marketing Management Agreement accessible on Claimant's website at the time. Mr. Douglass further asserted that on at least two occasions he was asked to the sign the Marketing Management Agreement, and he refused. For that reason, he did not personally guaranty payment by Vivera, and the claim against him should be dismissed.

23. Claimant's two witnesses testified that in early August 2009 they attended a trade show in New York City, where they were introduced to Messrs. Douglass and Platt, as well as one

5

Deepak Agarwal, who was reputed to own five large internet businesses and was well-known as a significant user of internet advertising. Messrs. Chern and Tsang were picked up at their hotel by a chauffeur-driven Rolls Royce; the driver had a direct security link used to afford passengers access to a penthouse suite in the St. Regis Hotel being used as a base of operations during the trade show by Agarwal, Douglass, and Platt. All three individuals presented as older and mature, sophisticated, experienced, successful businessmen, and Mr. Douglass particularly inspired trust and confidence by his demeanor. After discussing the possibility of Vivera utilizing Claimant's advertising services, Chern and Tsang left the meeting suitably impressed, and they were pleased to receive a follow up invitation to meet with Messrs. Douglass and Platt for breakfast later during the trade show. At the end of that second meeting, it was agreed Claimant would submit a specific proposal to Vivera, which did occur a few days later. The proposal took the form of the Insertion Order and the Marketing Management Agreement. When the Insertion Order was returned to Claimant with Mr. Douglass's signature, Mr. Tsang followed up with an inquiry about the Marketing Management Agreement, but there was no response. The parties proceeded to design and implement an advertising program, which commenced in early 2010. Messrs. Chern and Tsang again met with Respondent Douglass and Mr. Platt in New York during early 2010, and again Respondent Douglass displayed visible signs of affluence suggesting his business success. Claimant's two representatives were entertained lavishly by Messrs. Douglass and Platt that evening at an expensive night club. During ensuing months, the advertising volume continued to grow, and whenever questions arose about the amount of commission payable to Claimant, discussions led to invoice adjustments that were satisfactory to Vivera and Claimant. In the end, Vivera became slower and slower in making payments on account, and eventually the advertising relationship was terminated with a sizable balance due.

24. The following issues are presented for my determination:

    a. Is Respondent Vivera properly subject to the authority of the Arbitrator. Has reasonable effort been made to give it notice of these proceedings and afford it an opportunity to defend against Claimant's claims?

    b. Are the standard terms and provisions of the Master Advertising Agreement incorporated by reference into the Insertion Order?

    c. Did Respondent Douglass objectively manifest his agreement with the terms of the Insertion Order, which incorporated the provisions of the Master Advertising Agreement. And did he personally guaranty Vivera's performance under the parties' agreement?

    d. Did the conduct of Respondent Douglass and others acting on behalf of Vivera induce Claimant to rely on the belief that the terms and provisions of the Master Advertising Agreement were acceptable to Respondents?

e.   Did Claimant provide valuable advertising services to Vivera for which it has not been paid pursuant to the parties' agreement?

f.   What is the amount of money owed to Claimant for advertising services rendered to Vivera?

g.   Is formal presentment or demand on a guarantor a condition to Claimant's ability to pursue this claim against Respondent Douglass?

h.   Is Claimant entitled to pursue this claim even though it is in process of dissolution?

i.   Is Claimant entitled to recover pre-award interest on the amount owed to it?

j.   Is any party entitled to recover attorney fees, costs, and expenses?

## FINDINGS

25. Claimant is a dissolved, California business corporation; its principal place of business was in San Diego, California. At all times material, it was doing business under the name and style of "Pinnacle Dream Media."

26. Claimant was an online advertising agency that earned commissions by "bringing" customers to online vendors of products. Claimant's business model involved placing online advertisements on behalf of customers such as Vivera; the advertisements were placed for a fee with publishers of online material.

27. At all times material, Mr. Chern Lee was a principal and Chief Executive Officer of Claimant. He possesses expertise in computer operations and the technology of internet advertising. He personally prepared all invoices Claimant issued to Vivera.

28. At all times material, Mr. Justin Tsang was a Vice-President of Claimant with specific responsibility for business development, and he was the person who had day-to-day contact with Vivera. Mr. Tsang would forward invoices to Vivera after he received them in final form from Mr. Lee. Mr. Tsang no longer is employed by Mr. Lee's companies.

29. Mr. Lee and Mr. Tsang are both young technology professionals with modest business experience that corresponds to their relative youth. At the Evidentiary Hearing, they each presented as sincere, candid witnesses who were credible.

30. Vivera is business entity with limited liability; it was organized in accordance with the laws of the United Kingdom.  Vivera was in the business of selling diet pills and other health and beauty products online.  It is an entity separate and distinct from Respondent Douglass, and the initial understanding of International Centre for Dispute Resolution that Vivera and Mr. Douglass were one and the same party is not correct.

31. At all times material, Respondent Douglass was acting as a representative of Vivera, with apparent authority to act on its behalf.  He received a copy of the Demand for Arbitration individually and as a representative of Vivera.

32. Respondent Douglass and Mr. Platt were introduced to Messrs. Lee and Tsang in New York City at a trade show on August 8 or 9, 2009.  Mr. Douglass was identified as a business associate of a well-known internet advertiser, Deepak Agarwal, and Douglass presented himself as an affluent, successful, trustworthy businessman.

33. On August 13, 2009, Mr. Platt wrote an email message (Ex. 4) to Mr. Tsang stating:

> "Pleasure meeting with you in NY. We are excited about growing
> Pinnacle dream internationally. Please see below for next steps:
> 1. Creative assets
> a. We can work with your creative or mirror a design that
> you are currently using
> i. Please send over either links for mirroring or a
> design contact so we can coordinate our teams
> and begin the localization process.
> 2. IO [Insertion Order] - Let's arrange a call for tomorrow
> or early next week to discuss CPA [Cost Per Acquisition]
> and terms.
> 3. Let's get the ball rolling :)
>
> Please let me know if you have any questions.
> --
> Best,
> Mitch"

34. Mr. Tsang responded to Mr. Platt (Ex. 4):

> "Hey guys,
> It was a pleasure meeting you both as well. We will make it a
> priority to speak with you tomorrow to discuss CPA's and get and
> IO out of the way. There are 2 main offers that we want. First

8

would be Acai international and second would be colon
international.
.....
We are ready to jump on a call tomorrow if you guys are able to!
Thanks,
Justin"

35. On August 17, 2009, Mr. Tsang continued the email exchange with Vivera in a message
(Ex. 4) addressed to Respondent Douglass, Mr. Platt, and others, stating:

"Hey guys,
Just checking in! Should we maybe get on a call tomorrow to
discuss payouts etc? I can whip up an IO in no time - *I have
attached our master terms, so in the meantime before we get out
the price details and the payment schedules settled, we can get the
MMA* (sic) *out of the way.*
Thanks,
Justin"
(Emphasis added.)

36. On August 18, 2009, Mr. Platt responded to Mr. Tsang (Ex.36) and said:

"Hey Justin,

We will start at $42. As soon as you hit 1500 sales a day on a
consecutive basis we can move to $43. I have never started
anyone at $42 so confidentiality is important.

We out perform in conversions so I am confident you will be very
happy with your results. We are also creating exclusive offers for
you so the ball will be in your court to make the most of it. Of
course, we will invest along side (sic) you in tweaking the offers to
make sure they perform optimally.

My one reservation is that I could be offering you a higher CPA
than some of our current networks and get into a rob Peter to feed
Paul situation. Let's work together to avoid that from happening.

Germany is wide open so let's go get it.

Best,

Mitch"

37. Mr. Tsang responded later that day to Mr. Platt saying (Ex. 36):
"Hey Mitch,

9

> Ok cool I drafted up the IO once youve (sic) had a chance to sign it
> fax it back to me at 858-526-0785.
> Thanks,
> Justin"

38. On August 19, an employee of Vivera sent Mr. Tsang the Insertion Order "signed by Clay." (Ex. 36). Mr. Tsang signed the Insertion Order that bore the signature of Respondent Douglass and returned a copy to Vivera with an email message stating:

> "Appreciate it! Attached is the countersigned agreement…We have one document outstanding – thats (sic) the MMA (sic). I have attached that here as well :)
>
> Thanks,
>
> Justin"

39. The email message string with which Vivera returned the executed Insertion Order also contains a copy of the Master Advertising Agreement. (Ex. 36).

40. The Pinnacle Dream Media "Master Advertising Agreement" (Exs. 1 and 36) has been referred to in this matter as the "MMA."

41. The Insertion Order signed August 19, 2010, by Mr. Douglass on behalf of Vivera stated plainly and legibly: "The parties hereby incorporate as though fully set forth herein the Master Advertising Agreement appearing at http:/www.pinnacledream.com or which is attached hereto."

42. The Master Advertising Agreement was not attached physically to the Insertion Order document signed by Mr. Douglass.

43. At all times material, the Master Advertising Agreement was accessible and readable on the website of Pinnacle Dream Media. The material provisions of that Agreement, as found in Exhibit 1 and Exhibit 36, are identical.

44. During the period from late 2008 through the end of 2010, Claimant's computer systems only experienced 7 outages, the longest of which was 15 minutes. As long as that system was operational, the Master Advertising Agreement was readable as a PDF document on Claimant's web site.

45. Vivera and Mr. Douglass were in physical possession of the Master Advertising Agreement and had the ability to review its terms and conditions before Respondent Douglass signed the Insertion Order.

46. In all material respects, the version of the Master Marketing Agreement that was in Respondents' possession before Mr. Douglass signed the Insertion Order was identical to the copy of the Master Marketing Agreement appended to Claimant's Demand for arbitration.

47. On two separate occasions prior to the time he signed the Insertion Order, Respondent Douglass was requested by an unidentified person to sign the Master Advertising Agreement, which Claimant previously had forwarded to Vivera for review. On each occasion, Mr. Douglass declined to sign the Master Advertising Agreement during the time period when the Insertion Order was being negotiated and finalized. (Respondent's Prehearing Brief, p. 3 and Respondent's Declaration, para. 8.) Later, on August 19, 2009, he chose to sign the Insertion Order, which explicitly incorporated the terms of the Master Advertising Agreement by reference.

48. Neither Respondent Douglass nor any other representative of Vivera ever signed the Master Advertising Agreement.

49. Neither Respondent Douglass nor any other representative of Vivera ever told Claimant that Mr. Douglass refused to sign the Master Advertising Agreement, and no representative of Vivera ever told Claimant that the Company took any exception to any provisions, requested any changes in the master terms, or otherwise declined to have its relationship with Claimant governed the Master Advertising Agreement.

50. Beginning in December 2009 and continuing through May of 2010, Claimant regularly issued invoices that were delivered to Vivera by Mr. Tsang. Vivera made periodic payments on account, although the account balance never was paid in full after February 2010. (Exs. 2, 27, and 29).

51. From time to time, the number of customer leads reported by Claimant differed from Vivera's records, and after negotiations, adjustments were made to the invoices to reflect an agreed amount Vivera owed for advertising services rendered. None of the open invoices listed on Exhibit 2 ever where challenged by Vivera.

52. Claimant issued Credit Memoranda in February, March, and April 2011, reducing the account receivable balance due to US$816,530.00. (Exs. 2 and 5). April 5, 2011—the date of the last credit memo--is the first point in time the balance due was liquidated and certain.

53. Claimant extended unsecured credit to Vivera in reliance on the personal guaranty of Mr. Douglass, whom Mr. Lee viewed as a credible, accomplished businessman and an associate of a reputedly very successful internet advertiser, Deepak Agarwal. Mr. Lee particularly found Messrs. Douglass and Platt sophisticated and trustworthy based upon

the manner in which the two representatives of Vivera conducted themselves in Mr. Lee's presence.

## CONCLUSIONS

54. By his act of signing the Insertion Order, which stated plainly that the Master Advertising Agreement was incorporated by reference, Respondent Douglass, acting on behalf of Vivera and himself, agreed he and Vivera would be bound by the provisions of the Insertion Order and the Master Advertising Agreement.

55. Respondent Douglass submitted to arbitration in order to avoid defending a federal court lawsuit, and his voluntary conduct from the inception of this proceeding has demonstrated an intention to arbitrate Claimant's claim.

56. Paragraph 13 of the Master Advertising Agreement provides that federal law and California law are to govern the parties' agreement. No federal law has been cited by the parties as being applicable to the present dispute, and California substantive and procedural law is deemed controlling.

57. California law permits incorporating the provisions of extraneous documents into an agreement when the reference is clear, is called to the attention of the other party (who consents), and the incorporated terms are known or knowable. E.g., *DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 713 (2009). These requirements have been satisfied in this case. The Master Marketing Agreement was identified clearly as being incorporated by reference; the text of the document was in the possession of Vivera before Claimant submitted the Insertion Order; it is a reasonable inference that Mr. Douglass had to have read the Master Marketing Agreement in order for him to form the decision, as he says, to reject that Agreement at the time the Insertion Order still was being negotiated.

58. As a general proposition of California law, a party's manifestation of mutual assent to a contract offer is determined by objective facts. A party to a written agreement is bound by the unequivocal language of agreement, even if one has failed to read all provisions of writing. 1 Witkin, Summary of California Law 155, 157 (10th ed. 2005). An agreement should be interpreted in a way that gives effect to the parties' intentions at the time the writing was signed, and in determining that intention, one should look to the express, unambiguous language of the document. Civil Code section 1636, 1638.

12

59. Express, unambiguous terms in the Insertion Order and Master Marketing Agreement form a lawful agreement for the provision of internet advertising services between the parties.

60. Under California law, "A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another ...." Civil Code section 2787.

61. Claimant is not precluded from enforcing the personal guaranty of Respondent Douglass for failure to have acted earlier. "Mere delay on the part of a creditor to proceed against the principal, or to enforce any other remedy, does not exonerate a surety." Civil Code section 2823.

62. Prior demand or presentment to Vivera is not a precondition to enforcement of a guaranty in California. Civil Code section 2807.

63. Under California law, a dissolved corporation is permitted to prosecute a claim in litigation as part of the winding down process. Corporations Code section 2010(a).

64. Respondent Vivera has been provided notice of these proceedings by delivering a single copy of the Demand for Arbitration to both Respondents, receipt of which by Respondent Douglass was sufficient to prompt his personal appearance and participation in this proceeding. In addition, a copy of my Partial Final Award was served upon Respondent Douglass and also sent to Vivera at its last known address via Federal Express delivery, which was a reasonably practicably method of effecting further notice upon that Respondent. Vivera has been afforded a reasonable opportunity to defend its interests against liability for the Claim and responsibility for any allocation of attorney fees, costs, and expenses, but it has not done so.

65. Claimant is entitled to an award against Vivera and Clayton Douglass in the amount of US$816.530.00, plus the late payment penalty to which the parties agreed in the Master Advertising Agreement. That penalty is to be calculated at the rate of 18% from April 5, 2011, which is the date the amount of indebtedness was certain and uncontested. The late payment penalty owing as of March 10, 2015—the date immediately following the Evidentiary Hearing—is US$827,373.00.

66. Claimant is entitled to an award against Vivera and Clayton Douglass in the aggregate amount of US$1,643,903.00.

67. Claimant is entitled to post-award interest payable by Vivera and Clayton Douglass at the rate of 10% simple interest, commencing as of the day after the date of the Evidentiary Hearing—March 10, 2015.

13

68. Although its responsibility for post-award interest reasonably arguably might commence on the date of this Final Award, a consistent approach then would have Vivera obligated to pay pre-award interest at the higher rate of 18% from April 5, 2011—the date the indebtedness was fixed and certain—and at least until April 27, 2015—the date Vivera was afforded for the purpose of making any submission regarding its liability.  In fairness and practicality, however, it would be more appropriate for Vivera to be taxed with the lesser, post-award rate of interest (10%) commencing at the same date as Respondent Douglass—March 10, 2015.

69. Claimant is entitled to recover attorney fees, collection costs, and the expense of presenting its case at arbitration.  All administrative filing and case service or administrative fees of the International Centre for Dispute Resolution, together with the fees of the Arbitrator, should be borne jointly and severally by Respondents Vivera and Clayton Douglass.

70. Claimant's unopposed application for an award of attorney fees, costs, and expenses should be granted in part.  Its Application details the expenditure of time by Claimant's counsel with sufficient specificity, and counsel's hourly rates are facially reasonable.  The Application does not explain, however, some apparent duplication of effort between the two attorneys who prepared and presented Claimant's case, and a 10% reduction in the total attorney fee request is appropriate.  The costs and litigation expenses enumerated by Claimant's counsel are reasonable and should be allowed in full.

## FINAL AWARD

For the reasons stated above, I award as follows:

71. The Partial Final Award dated April 6, 2015 is incorporated by reference.

72. Within thirty days from the date this Final Award is transmitted to the parties, Respondents Vivera and Clayton Douglass (referred to as "Respondents"), jointly and severally shall pay to Serenivision, Inc., (referred to as "Claimant"), the sum of US$816,530.00 in damages, and US$827,373.00 in interest, totaling US$1,643,903.00.

73. Claimant is awarded post-award interest on the total award amount of US$1,643,903.00 at the rate of 10% simple interest commencing on March 10, 2015.

74. Within thirty days from the date this Final Award is transmitted to the parties, Respondents shall jointly and severally pay Claimant the sum of US$92,313.59 representing the awarded attorney fees, costs, and expenses.

75. The administrative fees and expenses of the International Centre for Dispute Resolution (ICDR) totaling US$9,500.00 and the compensation and expenses of the Arbitrator

14

totaling US$18,667.50 shall be borne jointly and severally by Respondents Vivera and Clayton Douglass.   Therefore, Respondents Vivera and Clayton Douglass shall reimburse Serenivision, Inc. the sum of US$18,833.75, representing that portion of those fees and expenses previously incurred by Serenivision, Inc.

76. This Final Award is in full settlement of all claims submitted to this Arbitration, and all other claims not expressly granted are denied.

77. I certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in San Diego, California, United States of America

Dated: May 22, 2015

_____

Charles H. Dick, Jr., Arbitrator

///

STATE OF CALIFORNIA    )

                              )    SS:

COUNTY OF SAN DIEGO    )


I, Charles H. Dick, Jr., do swear upon my oath as Arbitrator that I am the individual
described in and who executed this instrument, which is my Final Award.



_____

Charles H. Dick, Jr., Arbitrator

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF CALIFORNIA    )

COUNTY OF SAN DIEGO    )


Subscribed and sworn to before me on this 22d day May, 2015, by Charles H. Dick, Jr.,
who proved to me on the basis of satisfactory evidence to be the person who appeared
before me.


(seal)                              Signature _Sonja Wicker_____

SONJA WICKER
Commission # 1977606
Notary Public - California
San Diego County
My Comm. Expires Jun 4, 2016

16

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Holley Driggs Walch Fine Wray Puzey & Thompson, and that on the _9th_ day of January, 2017, I caused to be served a true and correct copy of STIPULATION TO MODIFY THE AUTOMATIC STAY TO NAME DEBTOR NOMINALLY TO PURSUE INSURANCE POLICY AND WAIVE THE 14-DAY STAY UNDER 4001(a)(3) WITH NO ENFORCEMENT OF ANY JUDGMENT AGAINST DEBTOR in the following manner:

☒    (ELECTRONIC SERVICE)   Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐    (UNITED STATES MAIL)   By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

☐    (OVERNIGHT COURIER)   By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐    (FACSIMILE)   That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

An employee of Holley Driggs Walch Fine Wray Puzey & Thompson

11264-01/1819767_2.doc