LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| In re:<br><br>MARC JOHN RANDAZZA,<br><br>Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11<br><br>Date:  OST PENDING<br>Time:  OST PENDING |
|---|---|

### DEBTOR'S MOTION TO AUTHORIZE AND APPROVE TRANSACTION OUTSIDE THE ORDINARY COURSE OF BUSINESS PURSUANT TO 11 U.S.C. § 363(b) RE: REFINANCING OF PROPERTY OWNED BY MAGNOLIA HOLDING 19, L.L.C.

Marc John Randazza, as debtor and debtor-in-possession (the "Debtor" or "Mr. Randazza"), in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby submits his motion (the "Motion") seeking authorization and approval to enter into two proposed loans to refinance an existing loan for a property owned by an entity in which his law firm is a part owner, and to take any and all other actions reasonably necessary to consummate this refinancing transaction. This Motion is made and based on the points and authorities herein, the *Declaration of Marc J. Randazza in Support of Debtor's Motion to Authorize and Approve Transaction Outside the Ordinary Course of Business Pursuant to 11 U.S.C. § 363(b) Re: Refinancing of Property Owned by Magnolia Holding 19, L.L.C.* (the "Randazza Declaration"), the papers and pleadings on file in the Debtor's bankruptcy case, judicial notice of which is respectfully requested, and any arguments the Court may entertain at any hearing on this Motion.

## I. Jurisdiction and Venue

1.  On August 28, 2015, the Debtor filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case"). The Debtor is authorized to operate his businesses and manage his properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed in this case, and no request has been made for the appointment of a trustee or examiner.

2.  The Court has jurisdiction over this Motion as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408(1) and 1409(a). Pursuant to Local Rule 9014.2, the Debtor consents to the entry of final orders and judgments by the Bankruptcy Court as to this matter.

## II. Statement of Facts

### A. Pre-Petition.

3.  The Debtor is an attorney licensed to practice law in Nevada, among various other jurisdictions. The Debtor presently is a partner in Randazza Legal Group PLLC, a Nevada professional limited liability company ("RLG"), which is a law practice with an address of 4035 S. El Capitan Way, Las Vegas, Nevada 89147. The Debtor and Ronald D. Green Jr. ("Mr. Green"), who is also a licensed Nevada attorney that works for RLG, are the managing members of RLG. The membership interests in RLG are as follows: the Debtor owns 80%, Mr. Green owns 10%, and Gill Sperlein owns 10%. In addition to its Las Vegas headquarters, RLG also maintains a presence in various other cities as well. RLG represents clients on a wide array of First Amendment issues, copyright and trademark protection and infringement cases, defamation cases, domain name disputes and employment law matters.

4.  The Debtor previously operated a law practice under the name of Marc J. Randazza, P.A., a Florida professional association ("MJRPA"), through the end of 2014, and MJRPA presently continues to provide arbitration, publication and education services. MJRPA is owned and controlled by the Debtor.

5.  RLG is a profitable enterprise, and the Debtor's salary from RLG is the principal

means that he uses to support himself, his wife, and their two children.

6. Magnolia Holding 19, L.L.C., a Nevada limited liability company ("Magnolia"), was an entity formed in 2014 for the purpose of acquiring an office building in which RLG could operate its law practice in Las Vegas. Pursuant to its operating agreement, Magnolia has been managed by two managers since 2015, Mr. Green and RLG. The membership interests in Magnolia are as follows: RLG owns 38.5%, Jennifer L. Randazza ("Mrs. Randazza"), who is the Debtor's wife, owns 38.5% as her sole and separate property, and Mr. Green owns the remaining 23%. During 2014 and Spring 2015, Magnolia searched for a building to acquire with intention of having RLG as a tenant, among possibly others.

7. Mrs. Randazza is not a debtor in this Chapter 11 Case, and the Debtor and Mrs. Randazza have been parties to a longstanding pre-nuptial agreement since 2009, which provides for them to own and hold their own sole and separate property. Prior to the parties' marriage and continuing during the course of their marriage, Mrs. Randazza amassed certain savings, which, pursuant to the parties' pre-nuptial agreement, are and remain her sole and separate property.

8. On May 22, 2015, Magnolia entered into a purchase agreement (the "Purchase Agreement") for an office building located at 4035 S. El Capitan Way, Las Vegas, Clark County, Nevada 89147, having APN 163-17-415-008 (the "Property") for a total purchase price of $875,000. Immediately upon entering into the Purchase Agreement, Magnolia made an earnest money deposit of $25,000, which later became nonrefundable upon the expiration of a short due diligence period. Additionally, the Purchase Agreement provided for an expedited closing.

9. At the time Magnolia entered into its Purchase Agreement for the Property, Mr. Randazza was a plaintiff and counter-defendant in a JAMS arbitration proceeding no. 1260002283 (the "Arbitration") against Liberty Media Holdings, LLC, a California limited liability company ("LMH") and Excelsior Media Corp., a Nevada corporation ("Excelsior").

10. On June 3, 2015, which was several weeks after Magnolia had entered into the Purchase Agreement to acquire the Property, and quite unexpectedly to Mr. Randazza, the arbitrator overseeing the Arbitration entered an Interim Arbitration Award (the "IAA") in favor of Excelsior and LMH.

3

11. On June 15, 2015, Excelsior and LMH filed a motion (the "Motion to Confirm") in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), thereby commencing Case No. A-15-719901-C (the "State Court Action"), which sought to confirm the IAA and have formal judgment entered against the Debtor. The Debtor opposed the Motion to Confirm and also sought to vacate or modify the IAA.

12. On or about June 30, 2015, Magnolia closed on the purchase of the Property.

13. Magnolia made a down payment for the purchase of the Property in the amount of $175,000, being 20% of the total purchase price, and it financed the $700,000 balance of the purchase price pursuant to a Loan Agreement dated as of June 25, 2015 (the "BofA Loan") with Bank of America, N.A. ("BofA"). BofA secured repayment of the BofA Loan by recording a deed of trust in the Official Records of the County Recorder, Clark County, Nevada (the "Official Records"). The BofA Loan was for a ten-year term, with an initial interest rate for the first year of 1.99%, and then increasing to 4.25% for the balance of the term until the maturity date in June 2025, with equal monthly payments for the first year of principal and interest of $3,547.61, and increasing to $4,179.25 beginning in the second year through maturity.

14. As additionally security for repayment of the BofA Loan, the Debtor and MJRPA executed personal guarantys thereof. As of the closing of Magnolia's purchase of the Property in June 2015, it obtained an appraisal of the Property indicating a fair market value of $875,000. The value of the Property has increased or remained stable in the year and a half since the BofA Loan has closed. Additionally, Magnolia's regularly monthly payments have also reduced the principal outstanding balance of the BofA Loan by approximately $40,000 as of the filing of this Motion.

15. The Property is well located and readily accessible, being situated just east of the I-215 West Flamingo exit. The Property has a lot size of 2.2 acres and is improved with a 5,277 square foot commercial Class B office building and ample on-site parking. The building includes two retail suites, a high-end reception environment, ten private offices, one master office with a private bath and shower, conference room, break room, general work room, two storage rooms, travertine flooring, and upscale modern architecture.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

16. Magnolia generates more than sufficient income by renting its space to RLG and certain of its remaining offices to other third-party, unaffiliated tenants to cover the payments on the BofA Loan.

17. Prior to the Nevada State Court ruling on the Motion to Confirm and related matters related to the IAA, and believing he had no other choice in order to protect his assets and family, Mr. Randazza filed this Chapter 11 Case, thereby staying the proceedings in Nevada State Court. As such, the IAA has never been confirmed and the Arbitration proceeding was never concluded.

**B.    Post-Petition.**

18. As set forth above, the Debtor is a guarantor under the BofA Loan. Pursuant to Paragraph 8.6 of the BofA Loan Agreement, BofA deemed the filing of Debtor's Chapter 11 Case as an "event of default" thereunder.

19. On October 28, 2015, Excelsior and LMH filed their *Motion to Modify the Automatic Stay to Allow a Pre-Petition Arbitration to Proceed to Judgment* (the "Stay Relief Motion") [ECF No. 60], which the Court denied by order entered on December 18, 2015 [ECF No. 93]. The Court's written order incorporated by reference the Court's oral findings and conclusions made on the record on December 15, 2015 [ECF No. 116].

20. Quite unnecessarily, BofA's counsel, Timothy R. Wheeler, Esq. from the New Jersey office of the law firm of Wilson, Elser Moskowitz Edelman & Dicker ("Wilson, Elser") appeared via telephone, but did not participate in, the hearing on the Stay Relief Motion held on November 25, 2015 [ECF No. 82]. Mr. Wheeler also attended the Court's oral ruling of that matter on December 15, 2015 via telephone as well [ECF No. 116].

21. On November 30, 2015, Excelsior and LMH filed their original complaint (the "Original Complaint") against the Debtor, Adv. No. 15-1193 (the "Adversary Proceeding") [ECF No. 83], which asserted claims for nondischargeability of their alleged debts pursuant to sections 523(a)(2)(A) and (a)(4) of the Bankruptcy Code.

22. On December 29, 2015, Excelsior filed a *Proof of Claim*, being Claim No. 8, in the Debtor's Chapter 11 Case in the stated amount of "in excess of $1,552,614.29" and based

1  upon the unconfirmed IAA.  LMH did not file its own separate proof of claim, but is listed as
2  "another name the creditor used with the debtor" in Excelsior's proof of claim.
3      23.   BofA has not filed a proof of claim in the Debtor's Chapter 11 Case, and the bar
4  date has now expired pursuant to LR 3003.
5      24.   On February 10, 2016, which was almost two and a half months after the Original
6  Complaint was filed, but never served, Excelsior and Liberty Media Holdings, LLC, a Nevada
7  limited liability company ("Liberty"), filed a *First Amended Complaint* (the "FAC") [ECF No.
8  120] in the Adversary Proceeding, thereby asserting claims pursuant to sections 523(a)(2), (4)
9  and (6) of the Bankruptcy Code.
10     25.   On March 14, 2016, the Debtor filed a motion to dismiss Excelsior and Liberty's
11 FAC or, in the alternative, for partial summary judgment [Adv. ECF No. 19], which was thereafter
12 fully briefing by the parties, and the Court held oral argument on the matter on May 9, 2016 [Adv.
13 ECF Nos. 23, 24, 37-39, 43-45 and 48].  On June 10, 2016, the Court issued its oral ruling [Adv.
14 ECF No. 55] (transcript), therein substantially granting the Debtor's motion to dismiss, but with
15 leave to replead.  A written order incorporating the Court's ruling was entered on June 16, 2016
16 (the "Dismissal Order") [Adv. ECF No. 52].  Again, quite unnecessarily, Mr. Wheeler attended
17 via telephone one or both the oral argument on the motions as to the FAC, as well as the Court's
18 oral ruling on the matter [Adv. ECF Nos. 51 and 55].
19     26.   Pursuant to Paragraph 9.8(c)(ii) of the Loan Agreement, BofA has demanded
20 Magnolia reimburse it for its attorneys' fees and costs incurred in connection with Debtor's
21 bankruptcy proceedings.  By June 2016, Magnolia and the Debtor were very concerned that
22 Wilson, Elser's billings on behalf of BofA to "monitor" the Chapter 11 Case and the Adversary
23 Proceeding, to which BofA was not even a party, were becoming exorbitant and unreasonable
24 and requested a payoff quote.  As of June 1, 2016, BofA's payoff statement to Magnolia indicated
25 that BofA, presumably via Wilson Elser, had amassed attorneys' fees of in excess of $11,000,
26 which expenses BofA asserted Magnolia had to pay pursuant to the terms and conditions of its
27 Loan Agreement.
28     27.   Since then, Wilson Elser has continued to increase its bill to "monitor" the

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Debtor's Chapter 11 Case, which BofA demands be paid by Magnolia, and continues to run up fees without providing itemized billing statements.

28. On July 7, 2016, and with leave of this Court, Excelsior and Liberty filed a *Second Amended Complaint* (the "SAC") [Adv. ECF No. 156] in the Adversary Proceeding. On August 8, 2016, the Debtor filed a motion to dismiss the SAC, again for failure to state a claim. [Adv. ECF No. 75]. On October 19, 2016, the Court entered a written order granting in part and denying in part the motion to dismiss the SAC [Adv. ECF Nos. 91 & 94], and therein dismissed the 523(a)(2)(A) claim with prejudice, but denied dismissal of the 523(a)(4) and (a)(6) claims.

29. On November 2, 2016, the Debtor filed his *Answer to the Second Amended Complaint and Counterclaims* against Excelsior, objecting to its Proof of Claim and asserting claims relative to unpaid salary, unpaid severance, unpaid bonus, and unreimbursed advance. [Adv. ECF No. 98].

30. On November 18, 2016, Magnolia received a demand letter from BofA, which indicated that BofA's counsel has amassed in excess of an astounding $22,000 in attorney's fees and costs to "monitor" the Debtor's Chapter 11 Case and Adversary Proceeding, simply because the Debtor was one of two guarantors on the BofA Loan to Magnolia. Magnolia provided various financial information and disclosures to BofA demonstrating Magnolia's financial wherewithal, however, BofA refused any negotiation and accelerated the loan balance and asserted that it would commence legal action by February 28, 2017 unless BofA was paid in full. As of January 31, 2017, the total principal balance on the BofA Loan was asserted to be only $658,897.25, but together with other fees and costs, including $22,477 for BofA's alleged legal fees and costs, BofA asserted that the total amount owing was $686,847.99. A true and correct copy of the BofA payoff statement is attached to the Randazza Declaration as **Exhibit 1**.

31. At this point, and believing it had no choice but to seek a refinancing of the BofA Loan given the unreasonable amounts of attorney's fees it was claiming apparently as a result of Wilson Elser's unnecessary billings, Magnolia began actively exploring obtaining replacement financing for the Property, and so as to remove BofA as the lender as quickly as possible. In this process, Magnolia approached no less than five (5) different institutional lenders. Unfortunately,

1  all of the institutional lenders refused to provide a loan in light of the pendency of the Debtor's
2  Chapter 11 Case, and even though Magnolia is solvent and indeed has always been profitable and
3  never missed any monthly loan payments to BofA.

4      32.    After Magnolia canvased the institutional loan market without success, and still
5  very motivated to remove BofA as a lender for the Property given the excessive billings and
6  threats of litigation from BofA in spite of being substantially oversecured, Magnolia began
7  potential refinancing discussions with various private lenders before eventually agreeing to
8  proceed with loans financed by a number of sources, including from Robert Atlas ("Mr. Atlas"),
9  who is an unaffiliated third party; Mrs. Randazza; from her sole and separate property; and Cathy
10 Brochey (the "Mrs. Brochey"), who is Mrs. Randazza's mother and thus who is also the Debtor's
11 mother-in-law (collectively, the "New Loans"). Neither Magnolia nor Mr. Randazza has any
12 prior business affiliation with Mr. Atlas or any of his businesses; rather, Mr. Randazza met Mr.
13 Atlas because their children attend the same school. In the aggregate, the New Loans are in a
14 sufficient amount to payoff BofA in full, and thus extinguish the BofA Loan and Deed of Trust
15 in full.

16     33.    Neither Mrs. Randazza nor Mrs. Brochey are creditors of the Debtor.

17     34.    Mrs. Brochey, along with her husband Dennis Brochey (collectively, the
18 "Brocheys"), borrowed from Mr. and Mrs. Randazza the original principal sum of $300,000, as
19 evidenced by a Secured Promissory Note and Mortgage (the "Mortgage"), which funds were used
20 to acquire a residence located at 10653 Agate Knoll Lane, Las Vegas, Nevada 89135. The
21 Brocheys have and continue to reside at the foregoing property, and the purchase was made in
22 order to allow them to live close to their grandchildren. The Mortgage was recorded in the
23 Official Records to secure repayment of the foregoing obligation, and requires the Brocheys to
24 repay this obligation in equal monthly installments of $1,372.38. To date, the Brocheys have
25 made all payments due on the Mortgage.

26 **C.    The Proposed Loans to Refinance Out BofA as Lender on the Property.**

27     35.    The proposed loan from Mr. Atlas to Magnolia is for an original principal amount
28 of $350,000, has a two year term, with an interest rate of 10% per annum, monthly principal and

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

interest payments of $4,625.28, an interest impound of $13,875.84, which is equal to three months of monthly payments, and has a balloon payment due on the maturity date equal to $304,812.56 (the "Atlas Loan"). Essentially, the Atlas Loan is a short term "bridge" loan. The Atlas Loan will be evidenced by a proposed form of Loan Agreement and Promissory Note, and will be secured by a first priority deed of trust and assignment of rents recorded against the Property in the Official Records. Critically, the Atlas Loan will not require any personal guaranty from the Debtor, RLG, or any other person. True and correct copies of the proposed loan and security documents for the Atlas Loan are attached to the Randazza Declaration as **Exhibit 2**.

36. Mrs. Randazza, from her sole and separate property, and Mrs. Brochey will together provide Magnolia a loan or loans for the balance necessary to takeout BofA over and above the Atlas Loan, which remaining loans will be in the aggregate of approximately $337,000. Critically, these New Loans from Mrs. Randazza and Mrs. Brochey will also not require any personal guaranty from the Debtor, RLG, or any other person. A true and correct copy of the proposed unsecured note in favor of Mrs. Randazza and Mrs. Brochey is attached to the Randazza Declaration as **Exhibit 3**.

### III. Relief Requested

37. By this Motion, the Debtor seeks entry of an order approving the New Loans in all respects, and authorizing the parties thereto, including but not limited to the proposed lenders and the escrow/title company conducting the transaction, to execute, record, and to carry out all of the terms thereof, subject to the terms and conditions therein, and to take any and all such other actions as are necessary and appropriate to implement the proposed refinancing transaction.

### IV. Legal Argument

38. The Debtor asserts that entering into the New Loans is a proper exercise of his business judgment (to the extent his personal business judgment is even directly implicated, as it is really a question or Magnolia's business judgment of which the Debtor is only a part owner through RLG) and thus should approved pursuant to section 363(b) of the Bankruptcy Code as a transaction outside the ordinary course of his business. Even if a proposed transaction is not in the ordinary course of the Debtor's business pursuant to section 363(c)(1) of the Bankruptcy

Code, section 363(b)(1) still allows the Court to approve a transaction after notice and a hearing. See 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . .").

39. In order to obtain approval of a transaction that is outside the ordinary course of a debtor's business pursuant to section 363(b)(1) of the Bankruptcy Code, a debtor need only demonstrate "some articulated business justification" for the proposed use, sale or leasing of property of the estate. Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (quoting In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986), and in turn citing Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069-71 (2d Cir. 1983)); see also In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) (citing all three of the foregoing cases for the same proposition and requiring that the proposed transaction "must be based on [a debtor's] reasonable business judgment").

40. In specifically examining the proposed transaction in question that is outside the ordinary course of the Debtor's business:

> [T]he bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

Walter, 83 B.R. at 20 (quoting In re Continental Air Lines, Inc., 780 F.2d at 1226).

41. Given the nature of the proposed refinancing transaction, there is an issue as to whether Court approval is even needed in the first place because the Debtor is not directly obligated on any of the New Loans, and indeed the net effect on the Debtor's estate is that he is being relieved of the personal guaranty to BofA. Regardless, and to the extent one is needed, a

reasonable business justification exists. Specifically, the New Loans provide a means to allow Magnolia, of which the Debtor's law firm, RLG, holds a membership interest, to retain the Property, thereby preserving substantial equity therein and also allowing RLG an ability to continue operating and thereby allow the Debtor to earn a salary. Additionally, the New Loans are to a solvent affiliate of the Debtor, the Debtor will not be a principal or co-obligor/guarantor, and this refinancing transaction has the effect of eliminating a significant amount of the Debtor's contingent personal guaranty claims, as well as stopping the accrual of unnecessary attorneys' fees and costs from the BofA Loan. In essence, this transaction actually relieves the Debtor of direct personal liability on his personal guaranty, while also still saving the Property. Finally, although part of the New Loans is from insiders and related parties, the terms of the loans from Mrs. Randazza and Mrs. Brochey are on favorable terms, and indeed such terms would be impossible from any other unrelated, third party lender given the Debtor is presently in bankruptcy.

42. The Debtor files this Motion out of an abundance of caution in order to obtain authorization and approval to allow the New Loans to take place, allow for the payoff of the existing lender, BofA, in order to allow the New Loans to proceed. For the avoidance of doubt, no party, including Magnolia, RLG, and/or the Debtor--will receive any cash out of this proposed refinancing; rather, it is principally motivated to remove BofA as the existing lender and to prevent it from taking any adverse actions against Magnolia, the Property or the Debtor, as well as to stop the accrual of Wilson, Elser's unnecessary attorney's fees and costs.

### V. Reservation of Rights

43. Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of Debtor's or any party's rights to dispute any claim pursuant to section 502 and/or 506(b) of the Bankruptcy Code; or (c) an approval or assumption of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment authorized pursuant to the Court's Order is not intended and should not be construed as an admission to any claim's validity or a waiver of rights to dispute such claim subsequently.

## VI. Conclusion

WHEREFORE, the Debtor respectfully requests that the Court enter an order, in the form attached as **Exhibit 1**, thereby authorizing and approving the proposed refinancing transaction for the New Loans, authorizing the parties to take all steps necessary to effectuate the proposed refinancing transaction, subject to the terms and conditions therein, to carry out all of the terms thereof. The Debtor also requests such other and further relief as is just and proper.

Dated: February 16, 2017.

LARSON & ZIRZOW, LLC

By:   /s/ Matthew C. Zirzow
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

# EXHIBIT "1"

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11<br><br>Date:<br>Time: |

**ORDER GRANTING DEBTOR'S MOTION TO AUTHORIZE AND
APPROVE TRANSACTION OUTSIDE THE ORDINARY COURSE OF
BUSINESS PURSUANT TO 11 U.S.C. § 363(b) RE: REFINANCING OF
PROPERTY OWNED BY MAGNOLIA HOLDING 19, L.L.C.**

Marc John Randazza, as debtor and debtor-in-possession (the "Debtor"), having filed his *Motion to Authorize and Approve Transaction Outside the Ordinary Course of Business Pursuant to 11 U.S.C. § 363(b) Re: Refinancing of Property Owned By Magnolia Holding 19, L.L.C.* (the

"Motion") [ECF No. ___];[1] the Court having reviewed and considered the Motion; the Court having held a hearing on the Motion, and having heard and considered the arguments of counsel; the Court having made its findings of fact and conclusions of law on the record at the hearing, which are incorporated herein by reference pursuant to Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 7052 and 9014; and good cause appearing;

**IT IS HEREBY ORDERED:**

1. The Motion is GRANTED;

2. The Debtor, Randazza Legal Group PLLC, and Magnolia Holding 19, L.L.C. are fully authorized and approved to the extent necessary pursuant to 11 U.S.C. § 363 to enter into the New Loans as set forth in the Motion in order to refinance the Property, and all parties thereto may take any and all actions as are necessary to effectuate those transactions; and

3. The Court reserves jurisdiction over the interpretation and implementation of this Order.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

By: /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

APPROVED / DISAPPROVED:

By: _____
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
JENNIFER WILLIS ARLEDGE, ESQ.
Nevada Bar No. 8729
300 S. 4th St., 11th Floor
Las Vegas, Nevada 89101

Attorneys for Bank of America

. . .

. . .

. . .

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meaning as set forth in the Motion.

2

## LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐    The court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

### ###