LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzklegal.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11<br><br>Date: N/A<br>Time: N/A |

**DECLARATION OF MARC JOHN RANDAZZA IN SUPPORT OF DEBTOR'S MOTION FOR ORDER TO SHOW CAUSE WHY STEPHEN HABERFELD AND JAMS, INC. SHOULD NOT BE COMPELLED TO COMPLY WITH THE ORDER APPROVING SETTLEMENT AGREEMENT AND/OR HELD IN CONTEMPT AND SANCTIONED FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY**

I, Marc John Randazza, hereby declare as follows:

1. I am over the age of 18 and mentally competent. This declaration is made and based upon my own personal knowledge and if called upon to testify regarding the matters herein, I would do so consistently herewith. I make this Declaration in support of the *Motion for Order to Show Cause Why Stephen Haberfeld and JAMS, Inc. Should Not be Compelled to Comply With the Order Approving Settlement Agreement and/or Held in Contempt and Sanctioned for Willful Violations of the Automatic Stay* (the "Motion"). I am the debtor and debtor in possession in the above-captioned bankruptcy case, and also a manager of Randazza Legal Group, PLLC, a Nevada professional limited liability company ("RLG"), and am an attorney licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada. All capitalized terms used herein shall have the same meaning as set forth in the Motion.

## I. Factual and Procedural Background

**A.    Pre-Petition Procedural History.**

2.    On or about June 10, 2009, Excelsior hired me as its General Counsel pursuant to an Employment Agreement (the "Employment Agreement").[1]  Marc J. Randazza, P.A., a Florida professional association, d/b/a Randazza Legal Group ("MJRPA"), also performed legal services for Liberty California as well.

3.    In 2012, certain disputes arose between the parties, including but not limited to under the Employment Agreement, and disputes related to in copyright infringement case titled as Liberty Media Holdings v. FF Magnat Ltd., No. 2:12-cv-01057 (D. Nev.) (the "Oron Litigation").

4.    In light of disputes over the termination from my job at Excelsior, on November 15, 2012, I initiated an arbitration proceeding with JAMS against Excelsior, Liberty California, and Mr. Gibson, being JAMS No. 1260002283 (the "Arbitration"), for obligations owed to me under the Employment Agreement, as well as for wrongful termination, and in the alternative, for constructive discharge and retaliation.  Excelsior also pled counterclaims in the Arbitration against me.

5.    Pursuant to Section 8 of the Employment Agreement, the Arbitration was conducted under the JAMS, Inc., Employment Arbitration Rules & Procedures (hereinafter "Arbitration Rules").[2]  The parties selected Arbitrator Haberfeld, a California lawyer who had also served for four year stint as a U.S. Magistrate Judge in the Central District of California.

6.    As a further result of the foregoing disputes, on December 9, 2012, MJRPA filed an action against Liberty California in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), being Case No. A-12-673275-C (the "MJRPA State Court Litigation"), therein alleging claims for money due for legal services rendered.  Liberty California

---

[1] The Excelsior Parties include Excelsior Media Corp. ("Excelsior"), Liberty Media Holdings, LLC, a California limited liability company ("Liberty California"), Liberty Media Holdings, LLC, a Nevada limited liability company ("Liberty Nevada"), and Jason Gibson ("Mr. Gibson").

[2] Available at https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_employment_arbitration_rules-2014.pdf (last visited June 25, 2018).

2

asserted various counterclaims against MJRPA in the MJRPA State Court Litigation as well.

7. On June 3, 2015, the Arbitrator entered an *Interim Arbitration Award* (the "IAA") in favor of Excelsior on certain items, but left various other matters unresolved and to be completed with further proceedings thereafter.

8. On June 15, 2015, certain of the Excelsior Parties filed a motion in the Nevada State Court, thereby commencing Case No. A-15-719901-C (the "State Court Confirmation Proceedings"), which sought to confirm the IAA and have formal judgment entered against me. I opposed this request and also sought, in the alternative, to vacate or modify it. As extensively set forth in my Opposition to the Excelsior Parties' Motion to Confirm (as hereinafter defined) filed with this Court [Adv. ECF No. 125], I asserted that were significant injustices and inconsistencies with the IAA entered by Arbitrator Haberfeld.

9. On the Petition Date, and thus prior to the Nevada State Court hearing argument and ruling on the pending matters in the State Court Confirmation Proceedings, and also prior to the Arbitration continuing any further beyond the IAA with respect to the remaining matters still unresolved therein, I filed my Chapter 11 Case, thereby immediately and automatically staying those proceedings by operation of section 362 of the Bankruptcy Code. Both the Nevada State Court and the JAMS Parties were advised of the existence of my Chapter 11 Case and the imposition of the automatic stay.

10. Critically, the Arbitrator never entered a final arbitration award in the Arbitration, but rather only the IAA, which was only an interim award leaving numerous matters unresolved. Additionally, no court, whether the Nevada State Court, this Bankruptcy Court, or otherwise, has ever confirmed the IAA, and, as hereinafter explained, this Court specifically refused to confirm the IAA and made substantial findings and conclusions why it was inappropriate to do so.

**B.  Post-Petition.**

    **1.  The Various Contested Matters and the Adversary Proceeding.**

11. On October 28, 2015, Excelsior and Liberty California filed their *Motion to Modify the Automatic Stay to Allow a Pre-Petition Arbitration to Proceed to Judgment* (the "Stay Relief Motion") [ECF No. 60], wherein they argued that the Court should grant them relief from the

3

automatic stay to allow them to return to Nevada State Court and seek confirmation of the IAA, and otherwise proceed with the remainder of the Arbitration. Excelsior and Liberty California attached copies of the IAA and my Employment Agreement to their Stay Relief Motion. On December 18, 2015, the Court entered a written order denying the Stay Relief Motion [ECF No. 93], which incorporated the Court's prior ruling on December 15, 2015 [ECF No. 116 (transcript)]. Thus, at all times since, the Arbitration has remained stayed.

12. On December 29, 2015, Excelsior filed a *Proof of Claim* (the "Proof of Claim") in the stated amount of "in excess of $1,552,614.29." [Claim No. 8].

13. On November 30, 2015, Excelsior and Liberty California (collectively, the "Plaintiffs") filed their original complaint against me (the "Original Complaint") [Adv. ECF No. 1], which asserted claims for nondischargeability pursuant to sections 523(a)(2)(A) and (a)(4) of the Bankruptcy Code, thereby commencing the Adversary Proceeding.

14. On February 10, 2016, which was almost two and a half months after the Plaintiffs filed their Original Complaint, but neglected to serve it, Excelsior and Liberty Nevada filed their *First Amended Complaint* (the "FAC") [Adv. ECF No. 11], thereby asserting claims for nondischargeability against me pursuant to sections 523(a)(2), (4), and (6) of the Bankruptcy Code. The filing of the FAC rendered moot the claims by Liberty California in the Original Complaint.

15. On March 14, 2016, I filed a motion to dismiss the FAC or, in the alternative, for partial summary judgment [Adv. ECF No. 19], which was thereafter fully briefed by the parties. [Adv. ECF Nos. 23, 24, 37-39, 43-45 and 48]. In the foregoing briefing, I argued, among other matters, that collateral estoppel did not apply to the IAA because it was unconfirmed, and that under applicable caselaw, unconfirmed arbitration awards lacked preclusive effect as a matter of law [Adv. ECF No. 19, pp. 6-8; ECF No. 42, pp. 7-16].

16. On June 16, 2016, the Court entered a written order granting my motion to dismiss the FAC, but with leave allowing the plaintiffs to replead [Adv. ECF No. 52], which also incorporated by reference the Court's oral ruling on the matter on June 10, 2016 [Adv. ECF No. 55 (transcript)].

17. On July 7, 2016, Excelsior and Liberty Nevada filed their *Second Amended*

*Complaint* (the "SAC") [Adv. ECF No. 58], which alleged the same nondischargeability claims pursuant to section 523(a) of the Bankruptcy Code as alleged in the FAC. On August 8, 2016, I filed a motion to dismiss the SAC, which was then fully briefed by the parties. [Adv. ECF Nos. 75, 85-86.] On October 19, 2016, the Court entered an order granting my motion to dismiss the SAC, in part [Adv. ECF No. 91], which incorporated by reference the Court's oral ruling made on the record on October 18, 2016 [Adv. ECF No. 94 (transcript)]. In particular, the Court dismissed Plaintiffs' section 523(a)(2) claim with prejudice, because there was no basis for a claim for false pretenses, a false representation, or actual fraud committed by me.

18. On July 22, 2016, the Bankruptcy Court entered an order (the "MJRPA Settlement Order") [ECF No. 157], thereby approving a Settlement Agreement and Mutual Release (the "MJRPA Settlement Agreement"), involving, among other parties, the Excelsior Parties, MJRPA, RLG and me. The MJRPA Settlement Agreement provided that the MJRPA State Court Litigation was dismissed with prejudice in exchange for a payment of $205,000 paid made by MJRPA's professional liability insurance carrier, and without any admission of liability. The MJRPA Settlement Agreement also contained a purported limited carveout of the impact of that agreement on certain parts of the Adversary Proceeding.

19. On November 2, 2016, I filed my *Answer* to the surviving claims of the SAC, and *Counterclaims* [Adv. ECF No. 98], which Counterclaims included an objection to Excelsior's Proof of Claim per section 502 of the Bankruptcy Code (the First Claim for Relief), and various other counterclaims for sums due and owing under my Employment Agreement (the Second through Fifth Claims for Relief, which are all for breach of contract).

20. On December 5, 2016, Plaintiffs filed their *Answer* to my Counterclaims and response to my objection to their Proof of Claim [Adv. ECF No. 103].

21. On December 22, 2016, the Plaintiffs filed their *Motion for Order Confirming Interim Arbitration Award* (the "Motion to Confirm") [ECF No. 104], which requested that the Bankruptcy Court confirm the IAA. I thereafter filed a comprehensive opposition to the Motion to Confirm the IAA [Adv. ECF No. 125], and also later filed an accompanying declaration [Adv. ECF No. 137], and various requests for judicial notice [Adv. ECF Nos. 138, 150 and 175] in

support.

22. On April 10, 2017, I filed a *Motion for Partial Summary Judgment* as to the SAC (the "MPSJ") [Adv. ECF No. 147], which was fully briefed by the parties [Adv. ECF Nos. 165 and 172].

23. On June 8, 2017, the Court entered its written order denying the Plaintiffs' Motion to Confirm the IAA [Adv. ECF No. 181], thereby refusing to confirm the IAA. The Court's written order incorporated the Court's prior oral ruling on June 6, 2017 [Adv. ECF No. 195 (transcript)] where the Court made thorough findings and conclusions why it was refusing to confirm the IAA.

24. On June 8, 2017, the Court also entered its *Order Scheduling Trial and Continuing Scheduling Conference* (the "Scheduling Order") [Adv. ECF No. 183], which, among other matters, set this Adversary Proceeding for trial in April 2018.

25. On August 2, 2017, the Court entered an *Order* granting in part and denying in part my MPSJ, thereby dismissing Liberty Nevada's nondischargeability claims, but permitting Excelsior's remaining claims in the SAC to proceed. [Adv. ECF No. 199].

26. On August 3, 2017, the Court entered a *Judgment* [Adv. ECF No. 201] in my favor and against Liberty Nevada, thereby confirming the dismissal of all of Liberty Nevada's nondischargeability claims against me.

**2.      The Settlement Agreement and Relevant Events Thereafter.**

27. Subsequently, the Parties engaged in a settlement dialogue, which discussions included several telephone calls of counsel, and written settlement correspondence and email. The proposed Settlement Agreement was the product of substantial and lengthy good faith and arm's length negotiations among the parties,[3] and after substantial briefing before the Bankruptcy Court, as well as significant proceedings in the Arbitration. Both sides were represented by experienced and knowledgeable counsel throughout the various stages of the litigation, both pre and post-petition, as well as in these settlement negotiations in particular.

28. From my perspective, this Court's rulings essentially gutted the Plaintiffs' case

---

[3] See ECF No. 234, Tr. of Feb. 13, 2018 Hrg. at p. 14:18-15:1.

6

against me -- and thus, by natural extension, the theories behind the Arbitrator's IAA -- thus leaving the Excelsior Parties with little realistic or practical choice but to settle for a small settlement payment in the interests of just getting this matter concluded and moving on, which settlement payment was substantially less than the hundreds of thousands of dollars each side had spent litigating with each other in both the Arbitration and in the Bankruptcy Court.

29. Of central importance to the instant Motion, the Settlement Agreement provided that "the Parties shall execute and file with the applicable courts or arbitration stipulations to dismiss with prejudice the Arbitration . . . in the forms as attached hereto as Exhibit 1-4." Settlement Agreement § 7 (emphasis added). Exhibit 1 to the Settlement Agreement, which was physically attached to the Settlement Agreement when it was filed with the Court, was a *Stipulation and Order to Dismiss Arbitration with Prejudice* (the "Arbitration Dismissal Stipulation"). Id. at 33-35. Among the terms in the Arbitration Dismissal Stipulation was that the IAA be vacated and deemed "null, void and without effect." Id. at 35.

30. I went so far as to prepare and attach as exhibits all of the relevant settlement effectuation documents to the Settlement Agreement, including but not limited to the Arbitration Dismissal Stipulation, not only because the forms in which those documents would be entered were a material factor in my decision to enter into the Settlement Agreement, but also because I wanted to make sure that there would be no misunderstandings as to how such matters would be handled out by the parties if the Court were to approve the Settlement Agreement.

31. Critically also, the Arbitration Dismissal Stipulation, and vacatur of the IAA set forth therein, worked hand-in-hand with numerous other provisions of the Settlement Agreement to effectuate the Parties' intent and purpose in entering into the "no fault" resolution set forth therein. First, the Settlement Agreement expressly stated that it was making no admissions of liability as to any of the theories pleaded by the Parties, and rather was simply a way for both sides as a way to end their very long, expensive and time-consuming disputes. See Settlement Agreement, Recital O.

32. Second, the Settlement Agreement provided that "[n]othing in this Agreement is intended or should be construed as imposing any obligations on the Parties to pay or reimburse

any fees or costs in the Arbitration." Id. § 7. In other words, the Parties wanted to make sure that in no way were they subjecting themselves back into any proceedings in the Arbitration in any shape or form whatsoever.

33. Third, the Settlement Agreement was also carefully tailored to provide that it did not impair any state bar disciplinary proceedings, id. § 9, because I recognized that such proceedings, at least to the extent they impacted my licensure, were likely subject to the "police or regulatory power" exception to the automatic stay in section 362(b)(4) of the Bankruptcy Code. In other words, I made significant efforts to make sure that the Settlement Agreement properly respected the jurisdiction of the Bankruptcy Court and the State Bar, being the only two judicial and/or administrative bodies that had and continue to have jurisdiction over him and the now settled disputes with the Excelsior Parties.

34. Fourth, the Settlement Agreement further provided that any disputes between the Parties arising out of the Agreement would be brought in the Bankruptcy Court, or to the extent the Bankruptcy Court lacks or refuses jurisdiction over such dispute, the Nevada State Court. Id. § 20. In other words, notably absent from the dispute resolution provisions of the Settlement Agreement was any resort to the Arbitration to resolve any remaining matters, except for entry of the Arbitration Dismissal Stipulation, thereby further confirming the intent of the Parties that they would not be returning to the Arbitration proceedings for any substantive purpose whatsoever other than to dismiss that proceeding and vacate the IAA with prejudice.

35. Fifth, and subject to a limited exception not relevant herein, the Settlement Agreement provided that it was "a novation of and supercedes and replaces any prior claims, rights, remedies and/or obligations of the Parties." Id. § 21. This provision is also broad enough to be read as a means to disposing of and superceding the Arbitration and the IAA in favor of the written Settlement Agreement among the Parties.

36. Sixth, the general release provided by the Excelsior Parties to me, among other parties, as part of the Settlement Agreement, specifically referenced that it was releasing and discharging any and all matters arising out of the Arbitration, including but not limited to the IAA, as well as the State Court Confirmation Proceedings, and any claims for exception to my

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

bankruptcy discharge pursuant to section 523(a) of the Bankruptcy Code. <u>Id.</u> § 6. This concept that there would no admission of any wrongdoing by me was repeated in the provision governing the Settlement Payment itself, which was carefully tailored to provide that only that payment itself would be excepted from discharge, and indeed excepted from discharge by consent pursuant to section 727(a)(10) of the Bankruptcy Code, and not pursuant to section 523(a) of the Bankruptcy Code.

37.    In short, the Settlement Agreement was carefully and deliberately crafted to avoid either side from being able to "bootstrap" or "spin" the ultimate result into anything other than a neutral, "no fault" resolution, so that the parties could move on and go their separate ways, and the vacatur of the IAA is a critical part of that overriding concept and construct. In fact, the vacatur of the IAA was so central to the ultimate resolution of the matter that I would not have agreed to the Settlement Agreement if it did not include such a provision.

38.    On January 5, 2018, I filed a *Motion to Approve Settlement Agreement* [Adv. ECF No. 211], which sought to Bankruptcy Court approve the Settlement Agreement, together with the attached effectuation stipulations. The hearing on the unopposed motion was held on February 13, 2018 [Adv. ECF No. 217]. At that hearing, my counsel highlighted, *inter alia*, that the Settlement Agreement provided for the resolution of the Arbitration, and how important that specific resolution was to the overall Settlement Agreement. [ECF No. 234, Tr. of Feb. 13, 2018 Hrg. at p. 14:2-9]. The Court entered extensive oral findings and conclusions in support of its approval of the Settlement Agreement and entry of the Settlement Order. In particular, Court admonished the parties that it was by no means a "rubber stamp" of approval of whatever settlement the parties were able to reach, and instead that the Court undertook its own separate and independent review of the proposed compromise, and the totality of the facts and circumstances involved, in order to come to its ultimate decision that the resolution was fair and equitable, and in the best interests of not just the parties, but also the bankruptcy estate and all creditors and parties in interest.

39.    On February 14, 2018, the Court entered the Settlement Order, thereby approving the Settlement Agreement [Adv. ECF No. 218]. As set forth in the Settlement Order, the

Settlement Agreement was approved "as a fair and equitable settlement," the "parties to the Settlement Agreement are . . . directed to implement the Settlement Agreement . . . <u>including all exhibits attached thereto</u>," and that "[t]he Court reserves jurisdiction over the interpretation and implement of the Settlement Agreement and this Order."  [Adv. ECF No. 218 (emphasis added)].  The Settlement Order is a final, effective and enforceable order of this Court, and is not subject to any appeal or stay pending appeal.

40. The parties forwarded the Arbitration Dismissal Stipulation to JAMS, which forwarded it to Arbitrator Haberfeld on May 29, 2018.

41. On June 13, 2018, the parties received an email indicated that Arbitrator Haberfeld refused to endorse the Arbitration Dismissal Stipulation at that juncture, and instead issued what he called an *Order to Show Cause Whether or Not Interim Arbitration Award Should be Subject to Vacatur, With Prejudice, as Requested by Settling Parties* (the "<u>Arbitration OSC</u>"), a copy of which is attached as **Exhibit 1**.  The Arbitration OSC purports to command the parties to "Show Cause why requested vacatur in the parties' stipulation should or should not be granted," setting a July 24, 2018 hearing on JAMS's premises and requiring written submissions (under California civil procedure, for some unknown reason) by June 28, 2018.  <u>Id.</u>  In the absence of written submissions, Arbitrator Haberfeld asserts that he will decide the issue without hearing requested by July 3, 2018, and will merely determine whether the Arbitration should be dismissed, without the stipulated vacatur of the IAA.  <u>Id.</u>

## II. Application

42. I filed the Motion because I believe the Arbitrator's OSC has put me in an impossible and untenable legal position.  For example, if I engage in the Arbitration as contemplated by the Arbitrator's OSC by seeking to justify that which this Bankruptcy Court has already approved via the Settlement Order, then I am concerned that I could be accused of having waived the provisions of the Settlement Agreement, the Settlement Order, and/or protections of the automatic stay by "returning to the fray," or somehow consenting to the Arbitrator's improper and unauthorized attempts to reassert jurisdiction.

43. The JAMS Parties willfully violated the clear and unambiguous Settlement Order.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

As set forth above, the Settlement Order approving the Settlement Agreement requires implementation of it, including the entry of all exhibits attached to, which included the Arbitration Dismissal Stipulation. Arbitrator Haberfeld's failure to endorse the Arbitration Dismissal Stipulation therefore constitutes a violation of the Settlement Order. Further, Arbitrator Haberfeld's statement that he would dismiss the Arbitration, but without vacatur of the IAA, if the parties do not convince him why such a vacatur is appropriate, is not substantial compliance with the Settlement Order, and is instead directly contrary to the express term of the Settlement Order and the Settlement Agreement. Although the Court's existing and fully effective Settlement Order does need to be justified, especially after the Court has already entered its order, as previously explained, there are numerous reasons why the vacatur of the IAA must be effectuated.

44. Vacatur of the IAA was an integral and critical part of the Settlement Agreement. Such relief will permit me to move forward with my life and my career, which is not only for my own benefit and consistent with the "fresh start" principles of the Bankruptcy Code, but also for the benefit of the remaining creditors of my estate as a whole via my forthcoming chapter 11 plan of reorganization. Multiple unscrupulous opposing attorneys have sought to use the IAA for tactical advantage in litigation against clients of my firm, even in actions where I myself have not entered an appearance. I have also suffered untoward media attention as a result of the IAA, and vacatur of the IAA will help to rehabilitate my image. See, e.g., Kelly Weill, "The Lawyer Fighting for the Fringes, From Porn to Neo-Nazis," The Daily Beast (June 12, 2018), available at https://www.thedailybeast.com/the-lawyer-fighting-for-the-fringes-from-porn-to-neo-nazis. In fact, inclusion of a provision providing for the vacatur of the IAA was of such great importance to me and my reorganization that I would not have agreed to a settlement that did not provide such relief. Further, as previously set forth at length, vacatur of the IAA works in conjunction with numerous other provision of the Settlement Agreement, and a failure to vacate that decision runs counter to the basic underlying intent and spirit of that resolution.

45. As a result of the JAMS Parties' actions and failures to act, which is both in contempt of the Court's Settlement Order, and in willful violation of the automatic stay in the Chapter 11 Case, I have been forced to incur substantial additional attorneys' fees and costs in filing and

prosecuting this Motion. I can furnish proof of my attorneys' fees and costs incurred with respect to this proceeding at the Court's direction.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: June 25, 2018.

               /s/ Marc John Randazza
               MARC JOHN RANDAZZA

# **EXHIBIT 1**

Hon. Stephen E. Haberfeld (Ret.)
JAMS
555 W. 5th St., 32nd Fl.
Los Angeles, CA 90013
Tel: (213) 253-9704

Arbitrator

# JAMS

| | |
|---|---|
| MARC J. RANDAZZA,<br><br>        Claimant,<br><br>vs.<br><br>EXCELSIOR MEDIA CORP., etc., et al.,<br><br>        Respondents.<br><br>And Related Counterclaims. | JAMS No. 1260002283<br><br>ORDER TO SHOW CAUSE WHETHER OR NOT INTERIM ARBITRATION AWARD SHOULD BE SUBJECT TO VACATUR, WITH PREJUDICE, AS REQUESTED BY SETTLING PARTIES |

    On May 29, 2018, JAMS forwarded to the Arbitrator a stipulation signed by counsel for all parties to the arbitration. The stipulation included a request and proposed "decision" for vacatur of the Arbitrator's June 3, 2015 Interim Arbitration Award on the merits in this matter, with prejudice --- which the settling parties would have rendered "null, void and of no legal effect" --- as well as a request to dismiss the arbitration, with prejudice.

    Except for the requested dismissal of the arbitration, including all claims and counterclaims, with prejudice --- which is not inconsistent with JAMS Employment

Arbitration Rule 13(a), which governs this arbitration --- it is not appropriate for the Arbitrator to approve or accept the settling parties' stipulation or to sign the requested decision or order on the current record.[1] California Code of Civil Procedure 128(a)(8);

---

[1] The purpose and function of rules of professional ethical conduct for lawyers is "to protect the public and to promote respect and confidence in the legal profession." See e.g., California Rules of Professional Conduct Rule 1-100 (promulgated by the State Bar of California and approved by the California Supreme Court).

The requested vacatur of the Interim Arbitration Award on the merits sought by the settling parties in their joint request appears to be based solely on vacatur being a condition of settlement, and further appears to bear the earmarks of an attempted erasure of carefully and soundly arrived-at arbitral determinations, proven by Excelsior on matters infused with the public interest --- including strong public policy to protect the public and respect for the legal profession.

In the circumstances, the question must be asked, whether it is permissible and appropriate for the Arbitrator and the JAMS arbitral process to be made complicit in implementing an apparent "it's as if it never happened" condition of settlement, via vacatur of a merits award, to render "null, void and of no legal effect" serious misconduct by Mr. Randazza, in violation of his professional ethical duties, which are infused with public interest --- and thereby vitiate and suppress both truth and protection of future victims and the public.

The essence of the Interim Arbitration Award of June 3, 2015 --- the determinations of which have remained correct, just and arrived at with considerable care, based on the evidence adduced during multi-day evidentiary sessions of the Merits Hearing in this matter --- remains as follows:

Mr. Rendazza --- as in-house general counsel and chief trial counsel of his employer/client Excelsior Media Corp. --- engaged in serious ethical conflicts of interest for undisclosed pecuniary gain, via solicited bribes - against the financial and legal interests of his client/employer --- to the undisclosed prospective advantage of Excelsior's litigation-settling competitors in the internet pornography industry, by "conflicting himself" out of representation of his employer/client in its anticipated future litigation against those settling Excelsior competitors. See IAA, Par. 5Q. In addition, to his greatly undermined credibility (duty of candor), preparatory to his departure from employment by and representation of Excelsior, Mr. Randazza engaged in spoliation of evidence, via deliberately having his and his legal assistant's corporate laptops "wiped" clean of data. See IAA, Par. 5Q & n. 4.

The proven serious ethical violations by Mr. Randazza were the bedrock on which Excelsior's state-based counterclaims for Mr. Randazza's violations of fiduciary duty and other serious claims of attorney misconduct were built and successfully maintained --- notwithstanding Mr. Randazza's proven express threat to his client/employer and its principal to assert and press false and true sexual allegations of the principal's sexual orientation and conduct, via this arbitration, unless Mr. Randazza extracted a financial settlement very favorable to him, collateral to the merits of any employment-related claim which he asserted, but which he failed to prove at trial.

Hardisty v. Hinton & Alfert, 124 Cal.App.4th 999 (2004) ("Hardisty")("[Under CCP 128(a)(8), as amended in 1999] [t]he parties must now submit memoranda of points and authorities and declarations and other documentary evidence persuasively demonstrating that reversal of the judgment in question will not adversely affect nonparties or the public, erode public trust, or reduce the incentive for pretrial settlement, and the courts must now fully consider and weigh these factors on a case-by-case basis.") ; U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994) (exceptional circumstances must be shown to justify vacatur, mootness by reason of settlement, alone, not sufficient to warrant such an unusual action as vacatur); Izumi Seimitsu Kogyo Kabushiki Kaisah v. U.S. Phillips Corp., 510 U.S. 27 (1993) (Stevens, J., dissenting).

    The Arbitrator hereby issues this Order to Show Cause why requested vacatur in the parties' stipulation should or should not be granted ("OSC") and sets July 24, 2018, 9:00 a.m. (PT), JAMS' Los Angeles Resolution Center, 555 W. 5th St., 32nd Fl., Los Angeles, CA 90013, as the date, time and place for an in-person evidentiary hearing on this OSC.

    Pre-hearing declarations and other documents and memoranda, meeting the requirements of Local Rule 8, referenced in Hardisty --- plus true and correct copies of (A) the Settlement Agreement referenced in the settling parties' stipulation and the U.S. Bankruptcy Court's February 14, 2018 order approving that agreement and (B) the Bankruptcy Court's findings and conclusions stated at hearing on Mr. Randazza's apparently unopposed motion for approval of the settlement, which the Bankruptcy Court generally incorporated by reference in its February 14, 2018 written order --- shall be received by the Arbitrator by June 28, 2018, 4:00 p.m. (PT).

    If the Arbitrator does not timely receive the declarations, memoranda and other documentation required under the immediately preceding paragraph of this OSC, the Arbitrator will treat this OSC as an order to show cause whether all claims and counterclaims brought by all parties should simply be dismissed with prejudice --- without inclusion of the requested decision or order re requested vacatur of the Interim

OSC RE JOINTLY REQUESTED VACATUR OF INTERIM ARBITRATION AWARD

Arbitration Award --- which OSC will be decided without hearing, unless requested in writing received by the Arbitrator by July 3, 2018, 4:00 p.m. (PT). In the latter event, the in-person hearing noticed above will be held on the date and at the time and place hereinabove set forth.

It is hereby also ordered that --- if any future filing is made with the U.S. Bankruptcy Court concerning or germane to the Interim Arbitration Award by or on behalf of any of the settling parties --- accompanying and/or concurrently with any such filing, the settling parties are hereby ordered (A) to also file with that court a Request for Notice re this OSC --- referencing this OSC and attaching thereto as a referenced exhibit a true and correct copy of this OSC --- accompanied by a proof of service, showing service of the Request for Notice on JAMS and the Arbitrator and, further, (B) to file with JAMS in this arbitration a proof of service of the immediately foregoing Bankruptcy Court filings.

**IT IS SO ORDERED.**

Dated: June 11, 2018

_____
STEPHEN E. HABERFELD
Arbitrator

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Randazza, Marc J. vs. Excelsior Media Corp., Liberty Media Holdings LLC, Jason Gibson
Reference No. 1260002283

I, Mirra Jhang, not a party to the within action, hereby declare that on June 13, 2018, I served the attached ORDER TO SHOW CAUSE WHETHER OR NOT INTERIM ARBITRATION AWARD SHOULD BE SUBJECT TO VACATUR, WITH PREJUDICE, AS REQUESTED BY SETTLING PARTIES on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Los Angeles, CALIFORNIA, addressed as follows:

Kenneth P. White Esq.
Nannina L. Angioni Esq.
Henry L. Whitehead Esq.
Brown & White, LLP
333 South Hope St.
36th Floor
Los Angeles, CA   90071-1406
Phone: 213-613-0500
kwhite@brownwhitelaw.com
nangioni@brownwhitelaw.com
hwhitehead@brownwhitelaw.com
   Parties Represented:
   Marc J. Randazza

Wendy M. Krincek Esq.
Ethan D. Thomas Esq.
Littler Mendelson
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV   89109
Phone: 702-862-8800
wkrincek@littler.com
edthomas@littler.com
   Parties Represented:
   Excelsior Media Corp.
   Jason Gibson
   Liberty Media Holdings

Mishell Taylor Esq.
Littler Mendelson
501 W. Broadway
Suite 900
San Diego, CA   92101-3577
Phone: 619-232-0441
mtaylor@littler.com
   Parties Represented:
   Excelsior Media Corp.

I declare under penalty of perjury the foregoing to be true and correct. Executed at Los Angeles, CALIFORNIA on June 13, 2018.

_____
Mirra Jhang
mjhang@jamsadr.com