Jessica R. MacGregor, Esq., Ca Bar No. 168777
*(Pro Hac Vice Pending)*
Long & Levit LLP
465 California Street, 5th Floor
San Francisco, CA  94104
Telephone:  415-397-2222
Facsimile:  415-397-6392
Email:  jmacgregor@longlevit.com

Lawrence A. Jacobson, Esq., Ca Bar No. 057393
*(Pro Hac Vice Pending)*
Cohen and Jacobson, LLP
66 Bovet Road, Suite 285
San Mateo, CA  94402
Telephone:  650-261-6280
Facsimile:  650-368-6221
Email:  laj@cohenandjacobson.com

*Attorneys for JAMS, Inc. and Stephen Haberfeld*

Jeanette E. McPherson, Esq., NV Bar No. 5423
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: 702-228-7590
Facsimile: 702-892-0122
E-Mail:  bkfilings@s-mlaw.com

*Local Counsel for JAMS, Inc. and Stephen Haberfeld*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>Debtor. | Case No. BK-S-15-14956-ABL<br><br>Chapter 11<br><br>**OPPOSITION TO ORDER TO SHOW CAUSE WHY STEPHEN HABERFELD AND JAMS, INC. SHOULD NOT BE COMPELLED TO COMPLY WITH THE ORDER APPROVING SETTLEMENT AGREEMENT AND/OR HELD IN CONTEMPT AND SANCTIONED FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY**<br><br>Hearing Date:  July 31, 2018<br>Hearing Time:  1:30 p.m. |

JAMS, Inc. ("JAMS") and Hon. Stephen E. Haberfeld (Ret.) ("Judge Haberfeld") (JAMS and Haberfeld collectively referred to herein as the "JAMS Parties") hereby file their Opposition To Order To Show Cause Why Stephen Haberfeld And JAMS, Inc. Should Not Be Compelled To Comply With The Order Approving Settlement Agreement And/Or Held In Contempt And Sanctioned For Willful Violations Of The Automatic Stay ("Opposition").  This Opposition is

Response to Order To Show Cause V3.doc

1

made and based upon 11 U.S.C. § 362, Fed.R.Bankr. P. 9019, the Points and Authorities set forth herein, the Declaration of Jessica MacGregor, the pleadings on file of which the JAMS Parties respectfully request that this Court take judicial notice, and any oral argument made at the time of the hearing on this matter.

## I.  INTRODUCTION

This OSC arises out of an invitation made to Hon. Stephen E Haberfeld (Ret.) to take adjudicative action in *Randazza v. Excelsior Media Corp*, JAMS No. 1260002283 (the "Arbitration") – to vacate an Interim Arbitration Award ("IAA") upon a finding of good cause.[1] When Judge Haberfeld responded to the request by issuing an OSC, the Debtor failed to alert him to his position that the automatic stay was in effect. Instead, the Debtor filed this OSC seeking to sanction Judge Haberfeld and his sponsoring organization, JAMS, and later refused to withdraw it even after Judge Haberfeld withdrew the OSC he issued. Thus, Debtor's OSC appears to be the product of Debtor's desire to punish the Arbitrator who found Debtor had engaged in multiple serious ethical breaches.

The JAMS Parties ask that this OSC be denied. There is significant confusion regarding whether the automatic stay was lifted as to the arbitration, indeed, inasmuch the court "authorized and directed" the Debtor to seek the Arbitrator's order, it appears it was. If so, the Arbitrator did not violate the stay by responding to the Parties' request for vacatur. On the other hand, if the stay is in effect, the Arbitrator lacks jurisdiction to enter any order in the Arbitration, including the one the Parties seek, in which case, it would appear Debtor could obtain an order dismissing the Arbitration from this Court. Because neither Judge Haberfeld nor JAMS are parties to the Settlement Agreement or included in the Court's order approving settlement, Debtor's request to

---

[1] "Under Fed. R. Evid. 201 [which is made applicable by made applicable by Fed. R. Bankr. P. 9017], a court may take judicial notice of 'matters of public record.'" *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)). Furthermore, "federal courts have the authority to take judicial notice of proceedings in other courts, either within or without the federal system, provided those proceedings are directly related to the matters presently at issue." *In re Allegheny*, 86 B.R. 466, 469 (Bankr. W.D. Pa. 1988) (collecting cases). *See also In re Fin. Partners, Ltd.*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (same).

compel their compliance with the Agreement should likewise be denied.

## II.     POINTS AND AUTHORITIES

### A.     Facts

#### 1.     **The Arbitration**

Debtor commenced the Arbitration, asserting claims for wrongful termination. Excelsior and other named Respondents counter-claimed. After five consecutive days of in-person evidentiary sessions, Judge Haberfeld issued the IAA against the Debtor and in favor of Excelsior and other Respondents. (MacGregor Declaration, Exhibit 1). Sometime thereafter, Debtor commenced this Chapter 11 Bankruptcy. JAMS and Judge Haberfeld are not parties to this bankruptcy proceeding. They did not request special notice and the JAMS Parties are not on the Debtor's mailing matrix.

#### 2.     **The Court's Order Approving Settlement – Authorization to Initiate Acts in Arbitration**

The Debtor filed a Motion to Approve Settlement Agreement and Release with Excelsior Media Corp., Liberty Media Holdings, LLC and Jason Gibson Per Fed.R.Bankr.P. 9019 (the "Settlement Motion") pertaining to settlement he reached with Excelsior on January 5, 2018 (Adv. ECF 211). The Parties to the settlement agreed amongst themselves to seek vacatur of the IAA. Their stipulation seeking such relief was attached as an exhibit to the settlement agreement for which court approval was sought. (OSC, ¶40) The JAMS Parties were not parties to the Settlement Agreement and the Debtor did not serve them with the Settlement Motion and supporting pleadings. (See ECF No. 215).

On February 14, 2018, the Court entered an Order Granting Debtor's Motion to Approve Settlement Agreement and Release with Excelsior Media Corp., Liberty Media Holdings, LLC and Jason Gibson Per Fed. R. Bankr. P. 9019 (the "Settlement Order") authorizing the parties to the Settlement Agreement to "implement the Settlement Agreement in accordance with its terms and conditions, including all exhibits attached thereto and payments set forth therein." (ECF No. 219). The Settlement Order is silent as to the JAMS Parties. Thus, the JAMS Parties are strangers to the Settlement Motion and to the Settlement Order.

### 3. The Parties Submit a Proposed Order to Judge Haberfeld Decision Vacating the IAA For Good Cause Shown

On about May 29, 2018, Judge Haberfeld received a "Stipulation and Order to Dismiss Arbitration with Prejudice" ("Stipulation"). (MacGregor Dec., Exhibit 4, July 2, 2018 Order Withdrawing OSC). The Stipulation consisted of the settling parties' stipulation and accompanying requested written "Decision" of the Arbitrator that the arbitration be dismissed with prejudice and, further, that the June 3, 2015 IAA be vacated, also with prejudice, to be rendered "null, void and unenforceable" --- all based on a requested arbitral determination of "good cause shown." The Stipulation and requested Decision bore the JAMS arbitration caption and case reference number for this arbitration. *Id.* As previously stated, no moving or supporting pleadings pertaining to the Settlement Motion had been served upon the JAMS Parties prior to the submission of the Stipulation that had apparently been attached to the Settlement Motion. *Id*.

### 4. Based on a Reasonable and Good Faith Belief the Stay Did Not Apply, Judge Haberfeld Issues an OSC

On June 1, 2018, at 3:54 p.m. Judge Haberfeld's case manager emailed Ms. Krincek (counsel for Excelsior) and inquired as follows:

> Good afternoon Ms. Krincek,
>
> Judge Haberfeld is in receipt of the parties' Stipulation and Order to Dismiss Arbitration with Prejudice in the above matter. **He asked me to inquire whether the automatic stay was lifted and if so, was it lifted based on a written document (ie dismissal of BK)?** Also Judge Haberfeld requests a copy of the settlement agreement that is referenced in stipulation submitted to him.
>
> Can you please advise of the above at your convenience? Should you have any questions, please let me know. Thank you.

*Id*. (emphasis added).

Ms. Krincek responded promptly, explaining:

> Hi Reggie: I'm asking my assistant Erin to find the motion to the BK court to approve **settlement and dismiss the BK proceeding and forward it to you along with the order dismissing the matter in BK court**, the settlement agreement is attached to the motion/stipulation as an exhibit.

*Id*. (emphasis added).

On about June 7, 2018, the case manager forwarded the Bankruptcy Court's Settlement Order to Judge Haberfeld. *Id*.

Because the Stipulation expressly requested Judge Haberfeld's written decision as well as his determination in his "Decision" to order vacatur of the IAA, with prejudice, based on his arbitral independent finding of "good cause shown," that request for performance of independent acts to be taken by him supported his reasonable and good faith beliefs and conclusion that (a) this JAMS arbitration was not subject to an automatic stay, (b) the Parties were requesting Judge Haberfeld to make a finding of "good cause shown," and (c) the Parties were requesting that he take such acts as he considered to be appropriate in responding to the request. *Id*.

On June 11, 2018 --- based on Ms. Krincek's June 1, 2018 email and the other reliable evidence provided to him in connection with the Stipulation, and his reasonable and good faith belief, based thereon, that the arbitration was not stayed --- Judge Haberfeld responded to the settling parties' stipulated requests for written decision addressed to him in the Stipulation by signing an OSC Whether or Not Interim Arbitration Award Should be Subject to Vacatur, With Prejudice, As Requested by Settling Parties (the "Arbitration OSC").  (MacGregor Dec. Exhibit 2) The parties were served with the June 11, 2018 OSC on the day it issued.  Judge Haberfeld's Arbitration OSC was founded on California Code of Civil Procedure §128(a)(8), which provides:

> An appellate court shall not reverse or vacate a duly entered judgment upon an agreement or stipulation of the parties unless the court finds both of the following:
> (A)  There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal.
> (B)  The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement.

The OSC also cited to two cases*: Hardisty v. Hinton & Alfert*, 124 Cal.App.4th 999 (2004); and, *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994).  Both cases teach that regardless of parties' agreements, courts are required to explore whether a stipulated vacatur or reversal will "adversely affect nonparties or the public, erode public trust, or reduce the

/ / /

/ / /

5

incentive for pretrial settlement." *Hardisty*, at p. 1006.[2] (MacGregor Dec., Exhibit 2)

From June 11, 2018 through June 24, 2018, no settling party or counsel for a settling party contacted either JAMS or Judge Haberfeld to inform or even suggest to either of them (a) that the automatic stay was or might still be in effect, or (b) that JAMS or Judge Haberfeld were subject to any order of the Bankruptcy Court containing any directive to either or both of them. (MacGregor Dec., Exhibit 4)

On June 25, 2018, Mr. Randazza's counsel filed a motion in the Bankruptcy Court, naming the JAMS Parties, seeking an OSC to compel the JAMS Parties to take the actions requested in the Stipulation, which had been approved by the Bankruptcy Court on February 14, 2018 pursuant to the Settlement Order, to have the Court Clerk or the Court do so, and/or to hold the JAMS Parties in contempt for having violated the automatic stay.

On June 28, 2018, counsel for the JAMS Parties contacted Debtor's counsel to attempt to resolve the confusion surrounding the requested order and the assertion of a stay violation. Debtor's counsel terminated the call less than a minute after it began. (MacGregor Dec., ¶¶6-7; Exhibits 3 and 4). He thereafter made proposals to resolve the dispute, but indicated they were privileged settlement communications. They will not be repeated here for that reason. (MacGregor Dec.,¶8)

On July 2, 2018, Judge Haberfeld issued an order withdrawing the June 11 OSC without prejudice, setting forth the history of the request for order. (MacGregor Dec., Exhibit 4) On July 3, counsel for JAMS wrote to Debtor's counsel and asked that the OSC be withdrawn in light of: 1) the withdrawal of the June 11 OSC; 2) the court's order directing counsel to initiate acts taken before Judge Haberfeld suggested that the stay was not operative as to the Arbitration; 3) Debtor's recognition that Judge Haberfeld was empowered to withdraw as arbitrator under JAMS Rule 28(c) in lieu of entering the requested vacatur order; and 4) the Bankruptcy Court's jurisdiction to

---

[2]*Hardisty* set forth the history of CCP §128(a)(8), which it explained was enacted in response to Justice Kennard's dissent in *Neary v. Regents of the University of California* (1992) 3 Cal.4th 273. As detailed in *Hardisty*, "the erosion of public trust likely to result from an appearance that the nullification of a judgment can be purchased, and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlements" underpinned Justice

Response to Order To Show Cause V3.doc

6

enter the order Debtor sought from Judge Haberfeld. Debtor refused to withdraw the OSC. (MacGregor Dec., Exhibit 6) Debtor's counsel refused to do so. (MacGregor Dec., Exhibit 7).

### B.      Memorandum of Law

#### 1.      The Debtor Has Improperly Sought An Injunction Against The JAMS Parties

The Settlement Order is obviously an enforceable order. However, the Debtor incorrectly interprets the Setttlement Order to be broader than it is. The Debtor has essentially sought an injunction against the JAMS Parties, without seeking their agreement or taking the appropriate steps to obtain an injunction.

Injunctive relief against entities who are not parties to a settlement agreement should not be included as part of an order granting a motion to approve a settlement agreement. *See e.g., In re Stratesec, Inc.*, 375 B.R. 1 (Bankr. D. D.C. 2007). *See also See In re SportStuff, Inc.*, 430 B.R. 170 (8th Cir. BAP 2010)("[a] "settlement" between only two parties to a multi-party lawsuit is not a settlement, and the procedure to approve a compromise under Fed. R. Bankr.P. 9019(a) cannot be used to impose an injunction on the non-settling parties."). Injunctive relief must be sought through an adversary proceeding. Fed.R.Bankr. P. 7001. Further, beyond seeking injunctive relief, a debtor "must establish that subject matter jurisdiction exists to entertain a request for such injunctive relief." *In re Stratesec, Inc.*, 375 B.R. at 4.

The JAMS Parties were not parties to the Settlement Agrement and were not noticed with the Settlement Agreement. Further, the Debtor has not sought an injunction authorizing the JAMS Parties to take the requested actions.

#### 2.      The Debtor's Position Regarding the Automatic Stay is Contradictory or, at a Minimum, Creates Confusion as to Whether the Stay Was Applicable or, if Applicable, Was Lifted Pursuant to the Settlement Order

Debtor's entire discussion regarding the applicability of the stay to the submission of the request initiated by the parties to Judge Haberfeld consists of ten lines that appear at page

---

Kennard's dissent in *Neary* and the subsequent enactment of the statute. *Hardisty* at page 1006.

1   12, line 19 through page 13, line 2, most of which consists of string citations, as follows.

2       (a)    In paragraph 43, the Motion quotes Section 362 for its proposition that the filing of a bankruptcy petition operates as a stay of the commencement or continuation of actions "against the debtor"; and

5       (b)    In paragraph 44, the Motion cites cases for the proposition that "Where the debtor is the plaintiff, defendant counterclaims and cross-claims against the debtor are also stayed," citing *In re Miller*, 397 F.3d 726 (9th Cir. 2005)

8   (See ECF No. 236).

*In re Miller* is an often-cited case for the proposition that:

> The automatic stay is applicable only to proceedings against the debtor. *See Parker*, 68 F.3d at 1136 ('Section 362 should be read to stay all appeals in proceedings that were originally brought against the debtor . . . .') (emphasis omitted) (alteration in original) (parallel citation omitted) (quoting *Ingersoll-Rand Fin. Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1426 (9th Cir. 1987)). 'This rule finds its source in the language of section 362, which extends the automatic stay to the continuation, as well as the commencement, of an action against the debtor.' Id. (emphasis in the original).

Thus, the import of the *Miller* case is that actions initiated by the Debtor, such as the Arbitration, are not subject to the automatic stay.

Debtor's pleading does not discuss the fact that Mr. Randazza, the Debtor, is the person who commenced the Arbitration which was a proceeding by him, not against him. Therefore, absent any counter-claim, i.e., Debtor's second point above, the stay is wholly inapplicable. The JAMS Parties acknowledge two points with respect to the counterclaims:, i.e., that prosecution of counterclaims is stayed by the automatic stay and that the Chapter 11 Debtor cannot unilaterally waive the operation of the stay because the court must consider the potential effect upon the estate and other parties in interest.

Nonetheless, and ironically, Mr. Randazza's own arguments compel the conclusion that no stay of the counter-claims is operative. In paragraph 39 of the Settlement Motion, and in paragraph 38 of Mr. Randazza's Declaration in Support of Debtor's Motion for Order to Show Cause, counsel for the Debtor argues, and the Debtor swears under oath, respectively, the following:

Response to Order To Show Cause V3.doc

8

> The Court entered extensive oral findings and conclusions in support of its approval of the Settlement Agreement and entry of the Settlement Order. In particular, Court admonished the parties that it was by no means a 'rubber stamp' of the approval of whatever settlement the parties were able to reach, and instead that the Court undertook its own separate and independent review of the proposed compromise, and the totality of the facts and circumstances involved, in order to come to its ultimate decision that the resolution was fair and equitable, and in the best interests of not just the parties, but also the bankruptcy estate and all creditors and parties in interest."

(Settlement Motion at 11:17-22, Randazza Declaration at 9:19-26)

Accordingly, by the Debtor's own argument, the stay – as might be applicable to counterclaims – is not operative as the Bankruptcy Court "authorized and directed" both the Debtor and his adversary to initiate the acts taken before Judge Haberfeld, i.e., requesting that Judge Haberfeld make a determination of "good cause" and issue a "Decision" regarding dismissal and *vacatur*, and the Bankruptcy Court did so after considering the effect upon the estate, its creditors, and all parties in interest. Thus, the Debtor admits that no stay applied to the request and no violation of the stay could have, or did, occur and cannot take a contrary position.

### C. The June 11 OSC Was Issued Based on a Reasonable and Good Faith Interpretation of the Request For Entry of Order Upon a Finding of Good Cause Precluding any Finding of Violation of the Automatic Stay or Contempt of any Order

As discussed above, the Debtor's position is sufficiently contradictory and confusing that neither Judge Haberfeld nor JAMS could be found to have willfully violated either the automatic stay or the Settlement Order.

Further, the facts demonstrate a reasonable and good faith interpretation of, and belief with respect to, the documents, information and events that belie any willful violation within the legal standards pertaining to violation of stay or Settlement Order.

#### 1. Violation of the Automatic Stay is Not Determined on a "Strict Liability" Basis

In *Vahlsing v. Commercial Union Ins. Co., Inc.,* 928 F.2d 486, 489-90 (1st Cir. 1991), the court distinguished between an act in violation of the stay being void *ab initio* and the culpability of the actor as being two different issues with different standards of analysis and

consequences. Accordingly, if, under one of the Debtor's alternative contentions a stay was in place and the issuance of the Arbitration OSC constituted a violation, that circumstance would render the issuance of the Arbitration OSC void but that conclusion would not lead to a corresponding determination that the actor was culpable for any damage or assessment of fees.

The court provided the following analysis:

> But there is a difference between the *effect* of *actions* taken in violation of the stay, and the *culpability* of the *actors* who take such acts. The actions may be void *ab initio, see In re Advent Corp.*, 24 Bankr. 612, 614 (Bankr. App. 1st Cir. 1982), *but see Sikes v. Global Marine, Inc.*, 881 F.2d 176, 179 (5th Cir. 1989) (acts violating stay are voidable rather than void), but the actor's culpability is a question to be settled by reference to some extrinsic legal standard, whether it is the "willfulness" requirement of 11 U.S.C. § 362(h), or the various common-law and statutory theories under which Vahlsing chose to bring suit.
>
> Violation of the stay, in other words, is not a strict liability tort.

*Id*. (emphasis in original).

Neither Judge Haberfeld nor JAMS would be "culpable" simply upon a finding that the issuance of the Arbitration OSC constituted a stay violation.

### 2. A Party's Knowledge of the Stay is Subjective, Even if Unreasonable "Returns to the Fray"

In *In re Taggart*, 888 F.3d 438 (9th Cir. 2018), the Ninth Circuit Court of Appeals recently reviewed the standards for evaluating the knowledge of, and willfulness of any violation of, the stay issued in a bankruptcy case. While the *Taggart* analysis involved the permanent discharge stay rather than the pre-discharge automatic stay, the analysis of the knowledge and willfulness issues is the same.

In *Taggart*, after receiving his discharge, the Debtor initiated further proceedings in a state court litigation that had been pending prior to the commencement of the Debtor's bankruptcy case. The Debtor failed to accomplish his objective in the state court that authorized the filing of motions for prevailing party attorneys fees. After the defendants filed a motion for allowance of fees, the Debtor re-opened his bankruptcy case and filed a motion to hold the defendants/creditors in contempt for violation of the discharge injunction. The Bankruptcy Court granted the Debtor's motion and held the defendants/creditors in contempt.

Response to Order To Show Cause V3.doc

10

The Bankruptcy Appellate Panel reversed the Bankruptcy Court and the Ninth Circuit Court of Appeals affirmed the Bankruptcy Appellate Panel. In doing so, the Ninth Circuit stated:

> As noted above, a bankruptcy court may hold a party in contempt for knowingly violating the discharge injunction. *Zilog*, 450 F.3d at 1007. We have adopted a two-part test for determining the propriety of a contempt sanction in the context of a discharge injunction: "[T]o justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. *Bennett*, 298 F.3d at 1069.
>
> Only the first prong of the test is at issue here. **To satisfy the first prong, knowledge of the applicability of the injunction must be proved as a matter of fact and may not be inferred simply because the creditor knew of the bankruptcy proceeding**. *Zilog*, 450 F.3d at 1007-08; *see also Dyer*, 322 F.3d at 1191-92 (rejecting an attempt to infer knowledge of the automatic stay based on knowledge of the bankruptcy proceedings in the context of a contempt ruling). **Additionally, the creditor's good faith belief that the discharge injunction does not apply to the creditor's claim precludes a finding of contempt, even if the creditor's belief is unreasonable**. *Zilog*, 450 F.3d at 1009 n.14 ("To the extent that the deficient notices [from the bankruptcy court and opposing counsel] led the [creditors] to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness.")." (Emphasis supplied)

Under this current standard for determination of knowledge and willfulness as articulated by the Ninth Circuit Court of Appeals in April, 2018, Judge Haberfeld's good faith belief based on the nature of the request made by the parties and information he received regarding the status of the bankruptcy that the stay did not apply to the request presented to him by the Debtor "precludes a finding of contempt" based upon violation of the stay.

   **3. Even in the Event of an Actual and Intentional Violation of the Stay, An Award of Damages is Inappropriate and Unwarranted for "Technical" or "Inconsequential" Violations**

As established above, neither Judge Haberfeld nor JAMS actually or intentionally violated the automatic stay. But even in the unlikely event the Court determines otherwise, in this instance, the Arbitrator's act that the Debtor criticizes as being contemptuous, i.e., the issuance of an order for briefing and evidence to do precisely what the Debtor asked him to do, caused no damage but only allowed the Debtor to enable Judge Haberfeld to make the Decision and the finding of good cause as requested. Stated differently, neither Judge Haberfeld nor JAMS undertook any act to gain any advantage with respect to the Debtor, the Debtor's bankruptcy

estate, or any parties in interest in the bankruptcy case that would invoke the purpose of the stay in preventing harm to the Debtor. In such instances, the courts reject efforts by debtors to utilize the automatic stay offensively as a sword.

In *McHenry v. Key Bank* (*In re McHenry*), 179 B.R. 165, 168-69 (9th Cir. BAP 1995), the court explained the distinction between enforcement of the stay against a person attacking the debtor or the estate, on one hand, and the debtor or the representative of the bankruptcy estate seeking to utilize the stay offensively:

> The first reason is that not every violation of the section 362 automatic stay should result in punishment to the offender. As here, certain section 362 stay violations are technical in nature and need no punishment to deter further violations. Instances involving no actual damages to the entity offended by a violation, are, and will be, rare, and it is not likely creditors will intentionally run the risk of such liability. The automatic stay afforded by section 362 is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment.
> The second basis of our concern is the lack of a measure for punitive damages where no actual damage has been sustained by the offended party. The incurrence of actual damage, a measurable event, serves as a basis for a determination of an appropriate punitive damage award. Where there is no actual damage, such measure does not exist.

Judge Haberfeld caused no damage by his attempt to respond appropriately to the Debtor's request for Decision based upon a finding of good cause to be made by him.

### 4. The Moving Party in a Motion for Contempt for Violation of the Stay Must Adduce Evidence to Support All Requisite Elements by Clear and Convincing Evidence

Not only must the moving party seeking a contempt remedy demonstrate all of the elements of a knowing, willful, and intentional violation of the stay or other order that caused damage to the debtor or the bankruptcy estate based upon the standards and guidelines discussed above, but the moving party must do so by clear and convincing evidence. The Ninth Circuit expressed the burden of proof in contempt matters in *Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1190-1191 (9th Cir. 2003) simply as follows:

> The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.

This statement of the burden of proof not only articulates the clear and convincing evidence standard, but also states the requisite requirement for a "specific and definite order of the court."

While the operative effect of the automatic stay as a definite order is normally clear, the applicability of the stay and/or the lifting of the stay are confused subjects as discussed above. With respect to the Settlement Order, it is silent as to the JAMS and simply authorizes the Debtor to seek the entry of a proposed order that was attached to a settlement agreement. Neither Judge Haberfeld nor JAMS were subject to any "specific and definite order" directed to or against them.

## CONCLUSION

Neither Judge Haberfeld nor JAMS committed any violation of the stay or any other court order, and neither caused any damage to the Debtor. Rather, the Debtor has caused substantial confusion by arguing that the stay was applicable such that Judge Haberfeld's actions constituted a violation and arguing conversely that he was not only compelled to act pursuant to the Settlement Order but that he is subject to contempt for failing to commit the act of entering an order that recites his finding of good cause. The confusion is compounded by Debtor's assertion that the stay precluded Judge Haberfeld's adjudicative action (i.e. finding good cause for vacatur).

Judge Haberfeld and JAMS request that this Bankruptcy Court deny the OSC re Contempt and enter an order either (1) specifically determining that the automatic stay does not apply and authorizing them to conduct such proceedings as is determined appropriate in response to the request for dismissal and vacatur; or (2) specifically determining that the automatic stay does apply and instructing the Arbitrator not to proceed with any action whatsoever in the Arbitration;

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Response to Order To Show Cause V3.doc

13

or (3) determining as a matter of Bankruptcy Court jurisdiction that the IAA be deemed dismissed and vacated and authorizing the Arbitrator and JAMS to close the Arbitration case without further orders.

Dated: July 12, 2018.

/s/ Jessica R. MacGregor
Jessica R. MacGregor, Esq. *(Pro Hac Vice Pending)*
Long & Levit LLP
465 California Street, 5th Floor
San Francisco, CA 94104

-and-

Lawrence A. Jacobson, Esq. *(Pro Hac Vice Pending)*
Cohen and Jacobson, LLP
66 Bovet Road, Suite 285
San Mateo, CA 94402

*Attorneys for JAMS, Inc. and Stephen Haberfeld*

-and-

Jeanette E. McPherson, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308

*Local Counsel for JAMS, Inc. and Stephen Haberfeld*

Response to Order To Show Cause V3.doc