1  Jessica R. MacGregor, Esq., Ca Bar No. 168777   Lawrence A. Jacobson, Esq., Ca Bar No. 057393
   *(Pro Hac Vice Pending)*                          *(Pro Hac Vice Pending)*
2  Long & Levit LLP                                  Cohen and Jacobson, LLP
   465 California Street, 5th Floor                   66 Bovet Road, Suite 285
3  San Francisco, CA  94104                          San Mateo, CA  94402
   Telephone:  415-397-2222                          Telephone:  650-261-6280
4  Facsimile:  415-397-6392                           Facsimile:  650-368-6221
   Email:  jmacgregor@longlevit.com                  Email:  laj@cohenandjacobson.com
5
6  *Attorneys for JAMS, Inc. and Stephen Haberfeld*

7  Jeanette E. McPherson, Esq., NV Bar No. 5423
   Schwartzer & McPherson Law Firm
8  2850 South Jones Boulevard, Suite 1
   Las Vegas, Nevada 89146-5308
9  Telephone: 702-228-7590
   Facsimile: 702-892-0122
10 E-Mail:  bkfilings@s-mlaw.com

11

12 *Local Counsel for JAMS, Inc. and Stephen Haberfeld*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re: | Case No. BK-S-15-14956-ABL |
|---|---|
| MARC JOHN RANDAZZA, | Chapter 11 |
| Debtor. | **DECLARATION OF JESSICA R. MACGREGOR** |

I, Jessica R. MacGregor, declare as follows:

1.     If called as a witness herein, I would and could testify competently to the following:

2.     I am an attorney admitted by the State Bar of California to practice law since December 1993.

3.     I am outside counsel for JAMS, Inc. and Judge Haberfeld in the instant matter. I have a request for admission pro hac vice pending.

4.     Attached hereto as **Exhibit 1** is a true and correct copy of the Interim Arbitration Award issued by Judge Haberfeld in *Randazza v. Excelsior Media Corp*, JAMS No. 1260002283 (the "Arbitration").

5.     Attached hereto as **Exhibit 2** is a true and correct copy of the June 11, 2018 OSC

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    issued by Judge Haberfeld in the Arbitration.

2        6.    On June 28, 2018, I attempted to telephonically meet and confer with Debtor's

3    counsel regarding this OSC.  Less than one minute into our call, and before I had an opportunity to

4    present the relevant facts, Debtor's counsel cut me off and ultimately hung up on me.

5        7.    True and correct copies of email correspondence with Debtor's counsel are

6    attached hereto as **Exhibits 3 and 4**.

7        8.    On June 29, 2018 Debtor's counsel made a proposal to resolve the dispute, which

8    he stated was confidential.  For this reason, I do not include the substance of the proposal in this

9    declaration or attach his correspondence.

10        9.    Attached hereto as **Exhibit 5** is a true and correct copy of a July 2, 2018 Order

11    issued by Judge Haberfeld in the Arbitration withdrawing the June 11, 2018 OSC without

12    prejudice.

13        10.    Attached hereto as **Exhibit 6** is a true and correct copy of my July 3, 2018

14    correspondence to Debtor's counsel in which I continued to seek resolution of this OSC.

15        11.    Attached hereto as **Exhibit 7**, is a true and correct copy of Debtor's counsel's July

16    5, 2018 correspondence.

17        I declare under penalty of perjury that the foregoing is true and correct, and that this

18    declaration was executed on this 12th day of July 2018 at San Francisco, California.

19

20                                        /s/ Jessica R. MacGregor _____
                                        Jessica R. MacGregor
21

22

23

24

25

26

27

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Declaration of J MacGregor Re Response to Order To Show Cause.doc

# Exhibit 1

Hon. Stephen E. Haberfeld
JAMS

555 W. 5th St. , 32nd Fl.
Los Angeles, CA 90013
Tel: 213-253-9704
Fax: 213-620-0100

Arbitrator

JAMS

| | |
|---|---|
| MARC J. RANDAZZA, | ) JAMS No. 1260002283 |
| Claimant, | ) INTERIM ARBITRATION AWARD |
| v. | ) |
| EXCELSIOR MEDIA CORP., a Nevada Corp.; LIBERTY MEDIA HOLDINGS, LLC, a California limited liability company; and JASON GIBSON, individually | ) |
| Respondents. | ) |

I, THE UNDERSIGNED ARBITRATOR --- in accordance with the arbitration provision in Section 8 of the Contract For Employment Agreement As General Counsel Between Marc J. Randazza and Excelsior Media Corp., dated June 6/10, 2009 ("employment agreement"), and based upon careful consideration of the evidence, the parties' written submissions and applicable law, and good cause appearing --- make the following findings, conclusions, determinations ("determinations") and this Interim Arbitration Award, as follows:

<u>DETERMINATIONS</u>

1.      The determinations in this Interim Arbitration Award include factual determinations by the Arbitrator, which the Arbitrator has determined to be true and necessary to this award.  To the extent that the Arbitrator's determinations differ from any party's positions, that is the result of determinations as to relevance, burden of proof considerations, and the weighing of the evidence.

2.      The Arbitrator has jurisdiction over the subject matter and over the parties to the arbitration which are as follows:  Claimant and Counter-Respondent Marc J. Randazza ("Mr. Randazza"), Respondents and Counterclaimants Excelsior Media Corp. ("Excelsior"), Liberty Media Holdings, LLC ("Liberty"), and Respondent Jason Gibson. [1]

3.      On February 9, 10, 11, 12 and 13, 2015, the Arbitrator held in-person evidentiary sessions on the merits of the parties' respective claims, counterclaims and contentions. All witnesses who testified did so under oath and subject to cross-examination.  All offered exhibits were received in evidence.

4.      This Interim Arbitration Award is timely rendered.  See Order of June 1, 2015.

5.      The following is a summary of the Arbitrator's principal merits determinations:

_____

[1] Except as otherwise stated or indicated by context, "E/L" shall be used to reference Excelsior and Liberty, collectively and interchangeably for convenience in this Interim Arbitration Award, only.  Nothing should be inferred or implied that there is any determination, or basis for any determination, that either or both of those entities are "alter egos" of Jason Gibson or of any person or entity.  Mr. Randazza failed to sustain his burden of proof that either Excelsior or Liberty were or are "alter egos" of Respondent Jason Gideon or of any person or entity.  Mr. Gideon will be dismissed as a party in this arbitration. See Interim Arbitration Award, Par. 9, at p. 29, <u>infra</u> .

      A.     Mr. Randazza voluntarily ended his employment by Excelsior and Liberty.

      B.     Mr. Randazza's employment by Excelsior and Liberty was not involuntarily terminated by Excelsior, Liberty or at all.[2]

      C.     Whether or not Mr. Randazza's employment by E/L was terminated voluntarily by Mr. Randazza or involuntarily by E/L, the principal proximate cause for the ending of Mr. Randazza's employment was Mr. Randazza's breaches of fiduciary duty and the covenant of good faith and fair dealing, implied in his employment agreement, as an employee, executive and general counsel of E/L. The precipitating events which led to the end of Mr. Randazza's employment was Mr. Gideon's having first learned on August 13, 2012 that Mr. Randazza had been involved in and successfully concluded negotiations for a bribe in the amount of $75,000, to be paid to Mr. Randazza by the other side in connection with resolution of high-importance litigation, commonly referred to as the "Oron litigation," which had been initiated and pursued on behalf of E/L by Mr. Randazza, as E/L's counsel of record. The first indication of that was Mr. Gideon's noticing a provision included in an execution copy of an Oron settlement agreement, presented to him for signature by Mr. Randazza on that date, and Mr. Gideon's inquiring of Mr. Randazza about that provision.

      After initial contacts with Mr. Randazza concerning what Mr. Gideon discovered in the Oron settlement agreement, communications and relations between Messrs. Gideon and Randazza noticeably chilled during Mr. Randazza's remaining employment, which ended on August 29, 2012.

---

[2] While not accepting Mr. Randazza's "core contentions" concerning the end of his employment by E/L, the Arbitrator agrees with Mr. Randazza's assertion that "The nature of Mr. Randazza's departure from Excelsior is central to several of his causes of action, and crucial to the defenses Respondents raise" --- including whether there was a breach of contract, wrongful termination, constructive termination and/or retaliatory termination. Reply at p. 7:12-15. As also stated elsewhere herein, none of those claims were proven.

The chilled relations, including greatly reduced communication, was in stark contrast with the custom and practice of Messrs. Gibson and Randazza, practically right up to August 13, 2012, being in regular, frequent, cordial and occasionally sexually-peppered communication with each other by face-to-face meetings, texting and emails.

That Mr. Gideon's reaction was not feigned or a pretext for anything asserted by Mr. Randazza in his competing narrative are shown by the following:

1.    A sudden and significant reduction of those previously primarily electronic (i.e., email and text) communications --- beginning only after Mr. Gideon learned of the $75,000 bribe --- with Mr. Randazza sending Mr. Gideon unresponded-to emails attempting to attempting to salvage and revive his communications and relationship with Mr. Gideon.

2.    Mr. Randazza beat a hasty retreat, in an attempt to salvage the situation by offering to pay the bribe money over to E/L, when initially confronted by Mr. Gideon concerning the "bribe" provision in the Oron settlement agreement, presented for Mr. Gideon's signature.

3.    Mr. Gideon did not timely sign the execution copy of the Oron settlement agreement, as negotiated and presented to him by Mr. Randazza.

D.    The ending of Mr. Randazza's employment E/L was not --- as contended by Mr. Randazza --- (1) constructive discharge, proximately caused by Mr. Gibson becoming distant and out-of-communication with Mr. Randazza, which made it difficult or impossible for Mr. Randazza to get needed instructions or direction in his employment by E/L as their general counsel, leading to Mr. Randazza's August 29, 2012 email of resignation from employment, or (2) retaliatory termination, which was caused by Mr. Randazza's having "expressed his feelings" of having been "upset, betrayed, offended, and

4

stressed" anything of a sexual nature whatsoever --- including, as highlighted during hearing, a pornographic video shot in Mr. Randazza's office in April, 2012 or a homosexual oral copulation allegedly performed by Mr. Gideon and another E/L executive in the backseat of Mr. Randazza's car, which allegedly greatly upset Mr. Randazza while he was driving his passengers back from a party aboard Mr. Gideon's boat on August 9, 2012.

       E.      The immediately foregoing Determination's repeated use of the word "allegedly" is because it is not necessary to resolve a conflict of evidence as to whether the alleged sexual act in Mr. Randazza's car actually occurred or the degree of upset it caused Mr. Randazza, if it actually occurred.  That is because the Arbitrator has determined that --- contrary to Mr. Randazza's central contentions in this arbitration --- the factual and legal cause of the end of Mr. Randazza's employment had nothing whatsoever to do with anything having to do with alleged sexual activity in Mr. Randazza's car --- alone or taken together with a pornographic shoot which, without dispute, occurred in his office, without prior notice to Mr. Randazza, but which the evidence shows did not occur as alleged, was not strongly or even negatively reacted to by Mr. Randazza as initially alleged and did not, as shot or shown, include a photograph of Mr. Randazza's family, as initially presented by Mr. Randazza.

       The foregoing determination includes that anything relating to sex --- including in connection with a filmed video in Mr. Randazza's E/L office or in the back seat of his car --- had nothing whatsoever to do with any decision --- which the Arbitrator has determined was neither made or considered --- to terminate Mr. Randazza's E/L employment. 2012.  There was no E/L contrived pretext or any retaliation by E/L in connection with the cessation of Mr. Randazza's E/L employment, which was entirely voluntary on

/////
/////

5

Mr. Randazza's part.[3] For those reasons, the Arbitrator has determined that Mr. Randazza failed to sustain his burden of proof required to establish his claims of and relating to anything having to do with sex --- e.g., sexual harassment, hostile work environment, constructive termination, retaliatory termination, etc.

      F.     As stated above --- and as picked up and amplified later in the Determinations portion of this Award --- since the outset of the arbitration, Mr. Randazza made highly-charged, sexually-based "core allegations" and his claimed strong reactions to them in support of his statutory and contractual claims, which were in the main disproved or not proved. That failure of proof undermined and impaired Mr. Randazza's credibility concerning all of his

/////

/////

/////

testimony and his claims and related contentions.[4] The evidence established at hearing was that Mr. Randazza intended that his allegations would induce

---

[3] The same is true with respect to Mr. Randazza's contention(s) that Mr. Gideon's discovery of Mr. Randazza having been involved with and negotiating a $75,000 "bribe" in connection with a settlement of the Oron litigation was a pretext for an earlier-formed intention by Mr. Gideon to end Mr. Randazza's E/L employment.

[4] Mr. Randazza's credibility was also undermined by the variance between his testimony and positions at hearing and his written Nevada State Bar submission concerning the Oron litigation $75,000 bribe --- including what, if anything, Mr. Gideon knew about it and when, and who solicited the bribe in the first instance.

    Mr. Randazza's credibility was also undermined by the variance between his testimony and his EEOC submission. At hearing, Mr. Randazza admitted that the EEOC complaint contained errors, but tried to explain them away by saying that he did not prepare it. That is not a sufficient excuse or explanation, in the circumstances.

    Resolving a credibility-related issue presented in the post-hearing briefs concerning asserted testimonial evasiveness implied by Mr. Randazza's body positioning and whether he had eye contact with the Arbitrator (as asserted by Mr. Randazza in his Reply), throughout his extensive testimony at hearing and primarily on cross-examination, the Arbitrator observed that Mr. Randazza sat sideways in his chair, relative to Claimant's counsel's table --- with his back to (i.e., 180 degrees away from) his own counsel and 90 degrees away from Respondent's counsel --- albeit with his seated body positioned toward the part of the wall behind and to Mr. Randazza's left from

Mr. Gideon to authorize a settlement financially favorable to Mr. Randazza, based on Mr. Randazza's belief at the time --- and ultimately proven incorrect --- that Mr. Gideon would so settle, rather than have to litigate true or false allegations relating to his own sexuality, sexual activity, and the pornographic nature of E/L's business. Mr. Randazza's miscalculation, as aforesaid, led to an

---

where the Arbitrator was seated. Mr. Randazza almost always listened to questions and answered in that position --- leaning well forward and looking down or straight ahead into "middle distance" in the direction of the wall behind where the Arbitrator was seated. Mr. Randazza rarely answered a question on cross-examination with sustained eye contact with either the questioning attorney or the Arbitrator.

The Arbitrator has determined, based on the evidence, that Mr. Randazza solicited the bribe in the first instance, attempted to negotiate with Oron's counsel ways and means whereby it would be concealed from and not become known by E/L, and disclosed it to E/L, per Mr. Gideon, for the first time only on August 13, 2012, when the settlement documentation prepared and presented for Mr. Gideon's signature on behalf of E/L by Oron's counsel surfaced a $75,000 retainer payment to Mr. Randazza.

The Arbitrator has further determined that E/L never gave Mr. Randazza permission or consent to solicit, negotiate or accept the $75,000 bribe,* or any bribe or any other payment other than payment of all proceeds being solely for the benefit of and deposited to the account of his clients/principals, E/L.

[*On August 13, 2013, Mr. Gideon handwrote an arrow and "Who gets this" next to the $75,000 payment provision in the copy of the execution copy of the Oron settlement agreement presented to him by Mr. Randazza. The Arbitrator credits that notation as being first notice to and genuine surprise expressed by Mr. Gideon about any Oron settlement payment not being made directly to E/L.

[That notation also was the genesis of a rapid unraveling of the theretofore close professional and personal relationship, symbolized by Mr. Gideon's sharply reducing communications with Mr. Randazza and Mr. Randazza's repeated and ultimately unsuccessful efforts to salvage his situation, by attempting to re-establish direct contact with Mr. Gideon. As previously stated, the Arbitrator has not accepted Mr. Randazza's central contention and narrative that this state of affairs, triggered on August 13, 2012, was manufactured by Mr. Gideon and served as a convenient or other pretext for an earlier-decided termination of Mr. Randazza's employment.]

The Arbitrator has not accepted that E/L's knowledge of or informed consent to any such situation can be implied by non-objection and silence in response to an unspecific, Delphic allusion in one of Mr. Randazza's emails prior to August 13, 2012 or to Mr. Randazza's after-the-fact, self-serving reference to alleged earlier communications, wherein Mr. Randazza claimed in the later email to have "fully disclosed...overtures about that."

In addition, except for admissions, anything which Mr. Randazza and his opposing counsel in the Oron litigation, Val Gurvitz, communicated to each other lacked credibility, because Mr. Randazza testified that he and Mr. Gurvitz routinely lied to each other in their settlement communications.

ultimately successful counterattack by E/L, via counterclaims in this arbitration, centering on ethical and legal challenges to Mr. Randazza's conduct as E/L's general counsel and litigation counsel during his employment by E/L. Mr. Randazza's alleged misconduct consisted of engaging in ethically-prohibited negotiations with adverse parties, including concerning monetary "bribes" to "conflict (Mr. Randazza) out" from future litigation, further damaging E/L's recovery in the <u>Oron</u> litigation by knowingly forwarding illegally "hacked" computer data to counsel for another company, without authorization and in contravention of an E/L settlement agreement, engaging in other prohibited conflicts of interest, including representing competitors of E/L, not disclosing and not obtaining informed written client consents from E/L where actual or potential conflicts of interest arose, working and not disclosing that he was working as a practicing lawyer on non-E/L matters during his employment significantly in excess of what was contractually permitted, spoliation of evidence to cover up the foregoing and his undisclosed intention to resign from E/L's employment, including via planning and causing the deletion of legal files and other relevant data from E/L-owned computers, taking control of client funds, in form of <u>Oron</u> litigation settlement proceeds, and refusing to unconditionally release the same to E/L.

G.      As stated above, Mr. Randazza voluntarily ended his employment by E/L. The principal evidence of that consisted of (1) Mr. Randazza's August 29, 2012 email to Mr. Gideon, (2) days before sending Mr. Gideon his August 29 email, Mr. Randazza cleaned out his personal belongings from his office, (3) shortly after Noon on August 28 --- and more than 24 hours before sending his August 29 email to Mr. Gideon --- Mr. Randazza had his corporate laptop computer "wiped" the first of four times during his last week of employment, and (4) before that, Mr. Randazza was overheard to say "Fuck this shit, I quit," following a company "happy hour" event.

8

H.     In his August 29, 2012 email to Mr. Gideon, Mr. Randazza stated that he could no longer represent the Company, i.e., E/L. [5] In the circumstances then known, Mr. Gideon and other E/L executives with whom he consulted reasonably, and not hastily,[6] concluded from their review of Mr. Randazza's August 29, 2012 email that Mr. Randazza had resigned from his employment. Their conclusion was proven accurate by facts which became known after Mr. Randazza's departure.  Any actions taken by them based on that reasonable belief did not result in any involuntary termination of Mr. Randazza's E/L employment.

I.     The lack of absolute, unquestionable, pristine clarity in     Mr. Randazza's August 29, 2012 carefully worded and crafted email that he     was resigning his employment was deliberate.

J.     In addition to Mr. Randazza's disputed, disproved and unproved allegations of sexual conduct engaged in or authorized by is important evidence which established that Mr. Randazza was not either (1) a target of any discriminatory or conduct which created a hostile work environment, because of his being a heterosexual or "straight" male, or (2) offended by any of the sexually-related conduct of which he has complained.

K.     Prior to and subsequent to agreeing to go "in house" as E/L's general counsel, Mr. Randazza was outside counsel to several companies engaged in Internet pornography, including videos and stills available on openly homosexual websites.  Since at least the date of the commencement of his employment as E/L's inside general counsel through his last day of E/L employment, Mr. Randazza knew of and was not in any way uncomfortable with Mr. Gideon's gay sexual orientation --- which was also that of most, but not all,

---

[5] Mr. Randazza also said he could "potentially" work to wind up his E/L pending matters.   The Arbitrator interprets the inclusion of that to be part of Mr. Randazza's crafted effort to both resign and leave open his attempt to engage Mr. Gideon directly.
[6] The Arbitrator has not accepted Mr. Randazza's assertion that "Respondents hastily decided to call that [August 29, 2012 email] a resignation." Mr. Randazza's Reply at p. 7:20-21.

of E/L's other executives --- and the frequent seasoning of business and socially-related conversation and written communications with crude gay and other sexual terms, references and allusions, which Mr. Randazza also used.[7]  Mr. Randazza was not embarrassed to be seen or filmed in full undress at a poolside business-social event at Mr. Gideon's home.  Mr. Randazza permitted and encouraged his children to have warm personal relationships with Mr. Gideon, who they called "Uncle."

      L.     The evidence was that the only complaints which         Mr. Randazza had concerning the pornographic filming in his offices in April 2012 --- four months before the end of his employment --- were that (1) he was not given the courtesy of advance notice of the shoot and (2) after the shoot was completed, Mr. Randazza's office was not restored to just the way it had been before the office was prepped for filming.

      The preponderance of disputed evidence was not that Mr. Randazza complained to Mr. Gideon centering on or in any way reasonably relating to sexual discrimination or harassment or a hostile work environment based on sex, including "male-on-male" sex, which has been recognized as a basis for a legal claim.   Accordingly, allegedly involuntary termination of Mr. Randazza's employment, based on Mr. Randazza's April 2012 complaint about the filming of pornography in his office --- which did not constitute statutorily "protected activity" --- is not includible as a component for a statutory claim that he had been fired in retaliation for making that complaint.  Mr. Randazza's complaint about the allegedly personally offensive oral copulation of Mr. Gideon

---

[7] For example, Mr. Randazza admitted that he used the term "butthurt" --- which he alleged that Mr. Gideon used to demean his expression of feelings about the pornographic filming in his office.  In a series of texts about the shoot, Mr. Randazza texted, in a crude possible sexual/legal "double entendre," "Don't jizz on my briefs."  Mr. Randazza has admitted that "The Arbitrator has seen many texts and emails from Mr. Randazza with informal, rough, vulgar content." Reply at p. 10:9-10. In making a different point, Mr. Randazza concedes by assertion that "Respondents [have] conceded that jokes and banter were common in the office."

in the back seat of his car on August 9, 2012 was not genuinely or deeply felt and was made primarily for tactical reasons. Therefore, the end of Mr. Randazza's employment was not and was not the product of anything retaliatory, in violation of public policy (e.g., engaging in protected activity), as a matter of law.

Moreover, the preponderance of the evidence is that Mr. Randazza had advance notice of the filming of a pornographic video in his office and that he did not either object or indicate that the noticed shoot was in any way objectionable or offensive to him. That evidence is the playful exchange of texts between Messrs. Randazza and Gideon concerning the intended shoot and the testimony of the director of the shoot, Chaz Vorrias, who testified that he advised Mr. Randazza of the shoot in advance and received no objection from Mr. Randazza.[8]

M.    Contrary to the strong impression created by Mr. Randazza's pre-Arbitration Hearing narrative of allegations, there was no evidence that any photograph(s) of his wife or children or anything personal of or concerning Mr. Randazza or any member of his family, or in any way reasonably violative of their respective personal privacy, were used or visible in the video. The (possible) visibility of a painting on the wall of Mr. Randazza's office, which was painted by Mr. Randazza's wife, is not to the contrary.

In the circumstances, there was no action taken which was either statutorily offensive or hostile.

N.    Mr. Randazza's California Labor Code-based claims --- for Excelsior's failure to (1) pay him his final wages in August 2012 (2nd Claim) or (2) reimburse and indemnify his for business expenses incurred by him in during 2012 (1st Claim) --- fail as a matter of law. The same is true for Mr. Randazza's

---

[8] Mr. Vorrias testimony was not unfair surprise, Mr. Vorrias's admitted deletion of his emails with Mr. Randazza was done without knowledge of their significance in connection with the dispute underlying this arbitration and, in the event, is not attributable to either Excelsior or Liberty, because he was not a managing agent of either entity.

claim for payment of all of his wage-related claims --- including payment of raises, bonuses and repayment of his $25,000 loan. That is because --- at all times relevant to those California Labor Code claims, since June 2011, Mr. Randazza worked and lived in Nevada, to which Mr. Randazza relocated, as did E/L, in order to continue as E/L's general counsel. As stated or indicated in a pretrial ruling bearing on the same issue, (1) the California Labor Code, presumptively, does not apply extraterritorially,[9] and does not apply to the facts and circumstances of this case, and relatedly, (2) that determination, concerning Mr. Randazza's  non-contractual claims, is unaffected by the California-as-governing-substantive-law provision of Mr. Randazza's employment agreement with Excelsior, which applies and controls only as to breach-of-contract claims and not, as in this instance, Mr. Randazza's statutory claims.[10]

In the event, Mr. Randazza was properly compensated for all services as to which he has asserted statutory and contractual claims.[11]

O.      Mr. Randazza's claim for unpaid wages and penalties under Nevada NRS Sec.608.050 (3rd Claim) fails as a matter of law, because there is no private right of action for enforcement of that statute.  It is therefore not necessary to decide whether the a claim has been stated under that statute.

P.      As to Mr. Randazza's contractual claims --- which are governed by the Employment Agreement, including the provision that California law governs its interpretation and enforcement, etc. --- (1) Mr. Randazza is not entitled to a contractual severance payment, because he voluntarily resigned his

---

[9] Sullivan v. Oracle Corp. , 51 Cal.4th 1191, 12016 (2011); Wright v. Adventures Rolling Cross Country, Inc., 2012 U.S. Dist. LEXIS 104378 (N.D. Cal. 2012) (presumption against extraterritorial application of state law applies to unpaid wage claims under California Labor Code, plus "situs of the work" is the most important factor in determining extraterritoriality, trumping residency and where wages are paid).
[10] See, e.g., Narayan v. EGL, Inc. , 616 F.3d 895, 899 (9th Cir. 2010).
[11]  For example, Mr. Randazza's bonuses were to be based on net and gross amounts (which he acknowledged prior to the end of his employment), claimed compensation raises were discretionary. Whatever Mr. Randazza was paid as compensation and bonuses is subject to the remedy of disgorgement.

employment,[12] (2) Mr. Randazza is not entitled to any payment for expenses in connection with the annual International Trademark Association Conference, which he did not attend, and (3) Mr. Randazza's bonuses were to be paid on "net" amount, not "gross" amounts, as contended by Mr. Randazza. In the event, E/L has been legally excused from any obligation to make any further contractual payment, by reason of Mr. Randazza's material breaches of contract with respect to the his obligations under the same contract, Mr. Randazza's employment agreement. That is so under contract law principles --- separate and apart from equitable principles, which are also applicable to contract claims, including the equitable doctrine of unclean hands, which is applicable to Mr. Randazza's contract claims.

Q.    Turning to E/L's counterclaims, Mr. Randazza owed fiduciary duties to E/L, because he was their in-house general counsel and their attorney of record in judicial civil actions, and an E/L executive and employee. As such, Mr. Randazza owed E/L, as his clients, employers and principals, the highest duty of loyalty and honesty in the performance of his professional and executive obligations. That duty --- among other things --- included legal and ethical duties of acting honestly and solely for the benefit of his clients/employers/principals, avoiding acting inconsistently with those duties, and where actual or potential conflicts of interests existed to make full written disclosure of the same and to obtain informed written consents from his clients/principals as to each and every such conflict of interest. Each and all of Mr. Randazza's ethical duties owed to his principals/clients was a legal fiduciary duty owed to them. Mr. Randazza violated those fiduciary duties owed by him to E/L, as his principals/clients/employers --- including by the following:

---

[12] See Pars. 5(A), (B) and (G), supra, concerning Mr. Randazza's having voluntarily ended his E/L employment, including via and as evidenced by written and verbal and non-verbal conduct. Mr. Randazza was contractually entitled to payment equivalent to 12-week severance only if his employment was involuntarily terminated.

13

(1) engaging in negotiations for monetary bribes to be paid to him --- including the "Oron $75,000" which Mr. Gideon noticed, without Mr. Randazza's affirmative disclosure of it ---- which would result in his being "conflicted out" of future litigation or any disputes with parties then and/or in the future with

/////
/////
/////

interests adverse to E/L's interests (e.g., Oron, TNA),[13] (2) taking control for his personal benefit of, and refusing to relinquish control over, Oron settlement funds --- all of which ought to have been for the benefit and under the direction and control of his principals/clients E/L, before and after the end of his employment and representations on behalf of E/L --- (3) Mr. Randazza's ordering and causing the deliberate "wiping" of his and legal assistant's corporate laptops, as an integral part of his planned resignation as E/L's General

---

[13] It is irrelevant that none of Mr. Randazza's negotiations concerning bribes --- including the Oron bribe --- resulted in an actual bribe payment. See Mr. Randazza's Reply at pp.4:24-5:1: "Yet despite years of discovery in this matter, Respondents have not been able to point to a single 'bribe' paid to Mr. Randazza, or a single consummated deal between him and the opposing party."* The Arbitrator has accepted, as an admission by Mr. Randazza that "he repeatedly engaged in these 'bribe' negotiations," but the Arbitrator has not accepted Mr. Randazza's testimony and further contention that he did so "because they were par for the course in dealing with counsel for infringers and because engaging in them was the best way to soften up the other side and get more money for respondents." Id., at p. 5:2-5.
   In this arbitration, Mr. Randazza has established a virtually unbroken pattern of asserting a legal/fiduciary variant of the sports cliché, "No harm, no foul." The Arbitrator has not accepted those assertions --- including, for example, a professional or fiduciary duty has been violated, whether spoliation has been committed, etc.

14

Counsel and outside counsel of record, and (4) Mr. Randazza's continuing and undisclosed (and thus unconsented-to) legal work for clients (e.g., Bang Bros., XVideos, XNXX, Porn Garian, Titan Media, Kink), whose interests were actually and potentially adverse to E/L's interests.[14]

R.    The Arbitrator respectfully disagrees with Mr. Randazza's expert witnesses, who respectively testified that, under both Nevada and California rules of ethics and/or professional responsibility, there were no violations of fiduciary duty, if and because they concluded that there was no resulting harm.

The "fact of damage" or proximate cause is not an essential element of either "duty" or "breach of duty" --- but rather a separate element of a claim or cause of The Arbitrator's disagreement with Mr. Randazza's expert witnesses centers

Whether or not Mr. Randazza's breaches of fiduciary duty proximately resulted in damages sustained by Excelsior, Liberty or both of them --- as a matter of sound public policy --- Mr. Randazza should not be allowed to retain any pecuniary or legal benefit resulting from or closely connected to those breaches.

For example, Mr. Randazza has included in his defense of his admitted deletion of files and other legal information via multiple wipings of company-owned computers the assertion that Respondents have not been able to show any damage resulting from those multiple wipings.   This is another of Mr. Randazza's assertions in this arbitration of "No harm, no foul" --- which the Arbitrator has not accepted, primarily because of the violations of duties constituting and/or including fiduciary duties.  Ethical and other violations of

---

[14] Mr. Randazza's legal work for non-E/L clients --- independent of the violations of Mr. Randazza's ethical and fiduciary duties --- were significantly beyond the contractually-permitted scope under his employment agreement.  The Arbitrator may award the equivalent to amounts of funds ordered to be immediately turned over by Mr. Randazza to E/L. See Interim Arbitration Award, Par.

fiduciary duties do not require "fact of harm" to be shown by a preponderance of the evidence or otherwise.

Moreover, in the circumstances of (1) multiple ethical violations having been shown to have been committed by Mr. Randazza --- including negotiating for and in the instance of the Oron settlement agreeing to a "bribe" to be conflicted out of future litigation with adverse settling parties and other conflicts of interest --- and (2) Mr. Randazza's ethical challenges shown in this arbitration, there should be a presumption of "fact of harm" caused to E/L by Mr. Randazza's conduct and, additionally, a presumption of Mr. Randazza's intention to harm his clients by wiping everything off of his and his legal assistant's company-owned computers.

As E/L's inside general counsel and employee, Mr. Randazza had a legal and fiduciary duty --- no later than when his employment ceased, regardless of whether or not with or without cause and/or by whom ended --- to deliver every file and other piece of data and/or information --- complete, intact and undeleted, unmodified and immediately accessible and usable by E/L. That included all files and data stored on the computers entrusted to Mr. Randazza and his legal assistant Erika Dillon for their use by and on behalf of E/L. Because of his noncompliance, indeed resistance to compliance with those duties, they continued and continue to the day of the rendering of this award --- including beyond Mr. Randazza's belated and resisted turnover of one of the laptop computers --- because another laptop entrusted to Mr. Randazza remains unreturned. Those continuing fiduciary duties owed by him to E/L exist, including by reason of his exclusive control over the computers and thus superior knowledge of what was on each computer's hard drive before and after he had everything on the returned laptops completely and multiply deleted --- including prior and in contemplation of his planned resignation on August 29, 2012.

16

In the circumstances, Mr. Randazza's generalized and unspecified claims of privacy --- in attempted justification of his ordered complete and multiple wipings of company-owned computers --- cannot be accorded weight or credibility. By the same token, that ordered conduct raises an inference that whatever was deleted was known and intended by Mr. Randazza to be harmful to him and any claims and contentions which he might make in any dispute with E/L --- i.e., deliberate spoliation, in addition to conversion.

Mr. Randazza cannot escape liability for spoliation or conversion --- or, additionally, violation of his fiduciary duties as an employee, executive and general counsel of E/L, by reason of the same conduct --- by claiming, as he has, that Respondents have not shown any specific or tangible injury by reason of his conduct in causing company-owned computers to be completely wiped of all data prior to their resisted and belated return. In the circumstances --- and paraphrasing former Defense Secretary Donald Rumsfeld --- neither Respondent should bear any burden or responsibility to come forward with any evidence of damage, when they do not know what they do not know. As stated above --- with his actual exclusive knowledge of what was on the computers' hard drives, before and because he ordered them to be completely wiped and, in the instance of his returned laptop, multiply wiped before ultimate return --- Mr. Randazza committed spoliation of evidence, as well as improper conversion of his employer's files, data and equipment and, in so doing, also violated his fiduciary duties owed to E/L.

S.    The closure of the Nevada State Bar's file on the grievance filed by E/L has not been given any weight in this arbitration. The reasons for that are manifold, several of the most significant of which include the following: (1) the State Bar did not reach the merits of E/L's grievance, (2) even if it would have, the standard of evaluation would have been "clear and convincing evidence," rather than the standard applicable in this arbitration of "preponderance of the evidence," (3) Mr. Randazza's response to E/L's grievance contained at least one

17

material misrepresentation acknowledged during an evidentiary session in this arbitration (that he stopped representing XVideos in 2009), (4) the Nevada State Bar closed its file with an express statement that it has "no authority to take any action which could affect the outcome of any civil disputes or litigation, (5) many of the issues and much of the evidence presented in this arbitration (identities of represented entities, retainer and billing records, emails, etc.) was not available to be presented by E/L in support of its grievance (e.g., Mr. Randazza's assisting Datatech, including via forwarding fruits of a disclosed (unnamed) computer "hacker").

T.    E/L was damaged in at least the amount of $275,000, by reason of the Oron resettlement, as a direct and proximate result of events being set in motion by Mr. Randazza's violations of fiduciary duty and other duties, by his having secretly negotiated a $75,000 bribe to conflict himself out from suing Oron in the future.

U.    Mr. Randazza was unjustly enriched in the amount of $60,000. Of that amount, $55,000 was paid to and received by Mr. Randazza's law firm, rather than E/L, in connection with (1) Mr. Randazza's ostensibly pro bono representation in connection with the so-called "Righthaven cases," of which E/L was generally aware and consented to (A) with the understanding and on the condition that Mr. Randazza was acting as a faithful, compensated E/L employee, including in compliance with his employment agreement, with costs of the representation advanced by E/L, including compensation as employees of Mr. Randazza and his legal assistant Erika Dillon, and (2) unaware that compensation was to be or actually paid to Mr. Randazza, via his law firm, until after the fact, indeed after Mr. Randazza's resignation from E/L employment.[15] Mr. Randazza also received $5,000 from James Grady, in connection with E/L's Oron litigation. Although Mr. Randazza testified, without corroboration, that

---

[15] Of the $60,000 paid and received, (A) $55,000 was court-awarded attorneys' fees, which were paid to Mr. Randazza's law firm, and (B) $5,000 was paid by James Grady.

Mr. Grady's payment was used for <u>Oron</u> litigation expenses, Mr. Randazza did
not disclose the receipt of the Grady $5,000 payment to E/L.  In the
circumstances, and under principles of unjust enrichment, all compensation paid
to or for the benefit of Mr. Randazza should have been paid directly to E/L or
turned over to E/L by Mr. Randazza --- neither of which was done, immediately
or ever.

     V.     Mr. Randazza materially breached his employment agreement with
Excelsior by (1) acting as an attorney in connection with the TNAFlix litigation
and the MegaUpload case, his concurrent representation of XVideos and/or
XNXX during his employment by Excelsior and (2) spending significantly
excessive time on non-Excelsior/Liberty matters beyond contractually-permitted
time under his employment agreement with Excelsior and by failing to wind
down his non-Excelsior/Liberty legal activities, as also provided in Mr.
Randazza's employment agreement.[16]

      The extent of Mr. Randazza's contractual material breaches made
them also breaches of fiduciary duty --- regardless of whether or not those
breaches of fiduciary duty were conflicts of interests, as some were.

     W.     Disgorgement of compensation paid by E/L to Mr. Randazza is an
available remedy, which is appropriate in the circumstances of Mr. Randazza's
clear and serious violations of fiduciary duty owed to E/L, and within the
Arbitrator's discretion, based on the evidence in this arbitration.[17]

---

[16] Mr. Randazza materially breached his employment agreement with Excelsior by
maintaining a private law practice, with billed hours shown to be in excess of that
permitted by that agreement, performing non-E/L legal services during the time he
could and should have been performing services as E/L's General Counsel, and by
failing or refusing, consistent with ethical duties and requirements, to reduce and taper
off to zero his professional services for clients other than his employer, E/L.

    The extent of Mr. Randazza's contractual material breaches made them also breaches
of fiduciary duty --- regardless of whether or not those breaches of fiduciary duty were
conflicts of interests, as some were.

[17]  See <u>Burrow v. Arce</u>, 997 S.W.2d 229 (Tex. 1999) ("<u>Burrow</u>")(remedy of
forfeiture/disgorgement upheld, including court discretion to determine whether some
or all compensation paid to attorney who breached fiduciary duty of loyalty owed to

/////

/////

/////

There is no requirement that causation or "fact of damage" be shown.[18]  There is

no valid reason to distinguish between an executive who is "in house" general

---

client to be forfeited or disgorged, where clear and serious violation(s) of fiduciary duty shown).

[18] That is because, among other reasons, one of the primary purposes of a remedy like forfeiture/disgorgement for breaches of fiduciary duty is to deter, not reward and to remove incentives of fiduciary disloyalty --- including by denying the benefits of disloyalty, regardless of provable or even actual harm to the principal, including after payment of compensation.  As the Texas Supreme Court pertinently stated in Burrow in connection with the remedy of forfeiture/disgorgement as a deterrent and disincentive for an attorney or other agent to breach of fiduciary duty:

> "Pragmatically, the possibility of forfeiture of compensation discourages an agent
> from taking personal advantage of his position of trust in every situation,
> no matter the circumstances, whether the principal may be injured or not.
> The remedy of forfeiture removes any incentive for an agent to stray from his duty of
> loyalty based on the possibility that the principal will be unharmed or may have
> difficulty proving the existence of amount of damages."

The California cases cited by Claimant are distinguishable. Frye v. Tenderloin Housing Clinic, Inc., 38 Cal.4th 23 (2006)("Frye"), Slovensky v. Friedman, 142 Cal.App. 4th 1518 (2006) ("Slovensky").  The appellate court's conclusion in Slovensky was based on its misreading and/or misstatement of the Supreme Court's holding and the basis and reasoning for its holding in Frye --- which was, in effect, a "one-off" opinion strongly driven by the facts and public policy considerations articulated and emphasized by the Supreme Court in the opinion.  The Slovensky court's mistake is highlighted by its reliance on what it called the "Frye rule" --- which was no such thing, or at least not as stated and relied on by the court in Slovensky.

There would be little or no reason for the remedy of disgorgement, if there was a so-called "Frye rule" as misstated by the Slovensky court and urged by Mr. Randazza. If fact of damage and extent of damages must be proven by a preponderance of the evidence, in order to obtain disgorgement, that remedy would be rendered duplicative of the remedy of compensatory damages, except in name only.  Moreover, the strong public policy to deter and remove any incentive for clear and serious violations of fiduciary duty - where injury to the client or other principal might be difficult or impossible to prove, as a matter of compensable damages -  would be severely undermined.

In Frye , the California Supreme Court appears to have been offended by the plaintiff/client's overreach in the circumstances.  The Court determined not that the remedy of disgorgement was legally unavailable but, rather, that its application --- in the

20

counsel and other corporate executives with respect to the availability of the remedy of forfeiture/disgorgement of compensation for breaches of fiduciary duty.[19]  While it might be less easy to determine the appropriate amount of disgorgement --- because, for example, the compensation paid is not a fixed percentage, as in an all-or-nothing legal or brokerage contingency fee arrangement,  contractual hourly arrangements, etc. --- that is not a disqualifying factor or consideration.   Considerations of proportionality and non-overlap with an award under other remedies are applicable.

Disgorgement will be applied to E/L-paid compensation received by Mr. Randazza in connection with litigation and other engagements on behalf of non-E/L clients --- in material breach of contract, while employed by E/L and beyond the significantly limited scope of his employment agreement (in terms of subject matter and time) and/or, in all events, in violation of his professional and fiduciary duties owed to his principal/client/employer, E/L. See Par. 1(V), above.

None of the expert witnesses who testified concerning breaches of legal ethics and fiduciary duties by attorneys and remedies for such breaches opined that disgorgement is unavailable in all instances.  The Arbitrator had the

---

special context of a technical failure to properly register for the practice of law by a public interest non-profit organization, engaged in what the Court considered to be important, worthy public interest work, expressly supported by the Court (including by affirming very substantial statutory attorneys' fees awards, as stated in that opinion) --- was "grossly disproportionate to the wrongdoings" of the defendant there and therefore "would constitute a totally unwarranted windfall" to the plaintiff there. 38 Cal.4th, at p. 50.  Frye, therefore, is distinguishable from the facts of this case.

Because the basis for its opinion was wrong, Slovensky is distinguishable or, more aptly, inapplicable to Mr. Randazza's proven clear and serious ethical and fiduciary breaches in this case.

[19] See Zakibe v. Ahrens & McCarron, Inc., 28 S.W.3d 373, 385-386 (Mo. Ct. App. 2000) (executive's breaches of fiduciary duty resulted affirmed forfeiture of his right to "all compensation, including bonuses and severance pay to which he may have been entitled"); Riggs Investment Management Corp. v. Columbia Partners, LLC, 966 F. Supp. 1250, 1266-1267 (DDC 1997) (former chairman and CEO of corporation forfeited all salary, bonuses and other compensation paid from the time disloyal action began, as determined by the appellate court, to date of end of employment six months later).

sense, however, that Mr. Joseph Garin came close to opining that causation
and/or "fact of damage" caused by an assumed breach of an ethical/fiduciary
duty is or should be a prerequisite to the imposition of disgorgement, with which
opinion the Arbitrator respectfully disagrees (if that is Mr. Garin's opinion).[20]  In
so opining, Mr. Garin (as did Mr. Randazza's California expert witness, Ms. Ellen
Peck) testified that --- based on information provided by Mr. Randazza --- there
was not a single instance of an ethical violation, with which the Arbitrator also
respectfully agrees, based on all of the evidence adduced at hearing.

See Burrow v. Arce, 997 S.W.2d 229 (Tex. 1999) and Restatement of
Agency 3d, Sec. 8.01 comment d(2).

X.    While Mr. Randazza's obtaining Mr. Gideon's signature on the
promissory note for Mr. Randazza's $25,000 loan to E/L for Hong Kong legal
fees was rife with ethical infirmities, in the exercise of the Arbitrator's discretion,
the Arbitrator will not void the underlying loan.  However --- again in the
exercise of the Arbitrator's discretion --- the Arbitrator will limit the benefit of
that decision to allowing Mr. Randazza to assert an offset, under this paragraph,
to any and all amounts awarded on E/L's counterclaims, up to a maximum
amount of $25,000 (i.e., no interest) --- which right of offset shall be conditional
upon Claimant's transfer to Respondent Liberty of all Oron settlement-related
and other E/L funds held in Claimant's attorney trust account,[21] plus interest at
the legal rate of ten percent (10%) per annum from August 29, 2012.

Y.    E/L are the prevailing parties in this arbitration.  As such one or
both of Respondents is or may be entitled to contractual attorneys fees under the
employment agreement.[22]

---

[20] Mr. Garin conceded, on cross-examination, that Section 37 of the Restatement 3rd of
The Law Governing Lawyers does not say that a showing of actual monetary loss is
required for disgorgement of attorney compensation.
[21] See Interim Arbitration Award, Pars. 4 & 5, at p. 28, infra.
[22] See Interim Arbitration Award, Pars. 8 at pp. 28-29, infra.

22

INTERIM ARBITRATION AWARD

Based upon careful consideration of the evidence, the applicable law, the parties' written submissions, the Determinations hereinabove set forth, and good cause appearing, the Interim Arbitration Award in this arbitration is as follows:

1.    Claimant and Counter-Respondent Marc J. Randazza ("Claimant") shall take nothing by any of his claims set forth in his Amended Arbitration Demand.

2.    Claimant shall pay Respondent(s) the following sums and amounts, as and for monetary damages in connection with Respondents' counterclaims.   Said amounts are exclusive and non-duplicative of any amount separately and additionally awarded to Respondents as part of the remedy of disgorgement.  See below.

Said amount includes the amount of $275,000, plus pre-award interest from August 13, 2012, at the legal rate of ten percent (10%) per annum, as and for monetary damages in connection with the resettlement of the Oron litigation, as a direct and proximate result of Claimant's violations of fiduciary duty in connection with his negotiating for a $75,000"bribe" (to conflict him out of future representation against Oron) as part of the resolution of the Oron litigation.

Said amount will include the amount of $60,000, by which amount Claimant was unjustly enriched --- in that Claimant (via his law firm), rather than either Respondent received (A) $60,000 in connection with Claimant's ostensibly pro bono representation in connection with the Righthaven cases, while compensated for Claimant's time spent on the representation as employee, in the course of his employment, as to which representation the costs were advanced by Claimant's employer, and (B) received from James Grady in connection with the Oron litigation.

Said amount will include the amount of $3,215.98 --- as and for Respondents' expenses reasonably incurred in connection with QUIVX forensic

23

examination and attempted restoration of data on employer-owned laptop computers and an iPhone used and returned, as applicable, by Claimant and Erika Dillon.  In addition, an amount yet to be determined, in the exercise of the Arbitrator's discretion, will be awarded for Claimant's spoliation and conversion of Excelsior's and Liberty's files and other data contained on employer-owned laptop computers entrusted to Claimant and Erika Dillon during their employment by Respondents or either of them.  The additional amount awarded will be set forth in a further and/or amended interim arbitration award and/or in the final arbitration award.

3.    Claimant shall pay Respondent Excelsior the amount of $197,000.00 --- as and for disgorgement of an appropriate amount of Claimant's employment compensation (including salary and bonuses) paid under his employment agreement).

The awarded amount under this paragraph is non-duplicative of and does not overlap with any amount award as monetary damages under any other paragraph of this Interim Award.

The amount awarded under this paragraph does not include disgorgement based on Claimant's post-employment violations of fiduciary duty.  That is because it appears to the Arbitrator that they are instances of Respondents having rights without a remedy --- as the limits of case law on disgorgement do not extend to post-employment violations of fiduciary duty.

Disgorgement shall be based on Claimant's violations of fiduciary duty ---including as acting as an attorney in connection with the TNAFlix litigation and the MegaUpload case, Claimant's concurrent representation of XVideos and/or XNXX during his employment by Excelsior and spending excessive, undisclosed, time on non-Excelsior/Liberty matters far beyond contractually-permitted time under his employment agreement.

4.    Claimant is hereby ordered forthwith (i.e., within ten (10) days of the date of the issuance of this Interim Arbitration Award) to turn over to

Respondents all <u>Oron</u>-related funds and, further, an additional $30,000 of non-<u>Oron</u>-related client funds of Respondents --- which funds have been held in Claimant's attorney trust account --- plus pre-award interest at the legal rate of ten percent (10%) per annum from August 29, 2012.

5.    An accounting of Claimant's attorney trust account is hereby ordered --- including to ensure compliance with Paragraph 4 hereof. The accounting shall be performed by a qualified third-party accountant and/or accounting firm appointed and/or approved by the Arbitrator. The cost and expense of which shall be borne solely by Claimant --- although Respondents may advance the funds necessary for the accounting, subject to ordered reimbursement by Claimant. Claimant is hereby ordered to cooperate fully with the ordered accounting.

6.    Claimant is hereby ordered to return the as-yet-unreturned company-owned laptop to Respondents' counsel forthwith --- and in no event later than ten (10) days from the date of the issuance of this Interim Arbitration Award.

7.    Respondent shall be awarded as damages or costs reasonably incurred with this litigation, expenses reasonably incurred by QVIX or similarly qualified expert vendor --- up to a maximum of $3,500 --- in connection with the vendor's performance of successful and/or attempted retrieval of data a report to the Arbitrator of what, if anything was deleted from the computer and when.

8.    Respondents and Counterclaimants Excelsior Media Corp. and Liberty Media Holdings, LLC shall be afforded the right in this arbitration to establish their rights --- if any, and according to proof --- to contractual attorney's fees and costs.

Counsel for the parties are ordered to immediately commence and diligently conduct and conclude meet-and-confer communications and to submit to the Arbitrator within ten (10) days of the issuance of this Interim Arbitration

Award an emailed proposed briefing and hearing schedule for any application for contractual attorney's fees and costs.

       9.      Respondent Jason Gideon will be dismissed as a party to this arbitration.

      Subject to further order and/or a further and/or amended interim arbitration award, and the Final Arbitration Award, this Interim Arbitration Award, including the Determinations hereinabove set forth, is intended to be in full settlement of all claims, issues, allegations and contentions, on the merits, submitted by any party against any adverse party in this arbitration.  Subject to the immediately preceding sentence, claims and requests for relief not expressly granted in this Interim Arbitration Award are hereby denied.

Dated: June 3, 2015

                                           STEPHEN E. HABERFELD
                                              Arbitrator

26

# Exhibit 2

Hon. Stephen E. Haberfeld (Ret.)
JAMS
555 W. 5th St., 32nd Fl.
Los Angeles, CA 90013
Tel: (213) 253-9704

Arbitrator

**JAMS**

| | |
|---|---|
| MARC J. RANDAZZA,<br><br>              Claimant,<br><br>     vs.<br><br>EXCELSIOR MEDIA CORP., etc., et al.,<br><br><br>              Respondents.<br>_____<br><br><br>And Related Counterclaims.<br><br><br> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | JAMS No. 1260002283<br><br><br>ORDER TO SHOW CAUSE WHETHER<br>OR NOT INTERIM ARBITRATION<br>AWARD SHOULD  BE SUBJECT TO<br>VACATUR, WITH PREJUDICE, AS<br>REQUESTED BY SETTLING PARTIES |

On May 29, 2018, JAMS forwarded to the Arbitrator a stipulation signed by counsel for all parties to the arbitration.  The stipulation included a request and proposed "decision" for vacatur of the Arbitrator's June 3, 2015 Interim Arbitration Award on the merits in this matter, with prejudice --- which the settling parties would have rendered "null, void and of no legal effect" --- as well as a request to dismiss the arbitration, with prejudice.

Except for the requested dismissal of the arbitration, including all claims  and counterclaims, with prejudice --- which is not inconsistent with JAMS Employment

Arbitration Rule 13(a), which governs this arbitration --- it is not appropriate for the Arbitrator to approve or accept the settling parties' stipulation or to sign the requested decision or order on the current record.[1] California Code of Civil Procedure 128(a)(8);

---

[1] The purpose and function of rules of professional ethical conduct for lawyers is "to protect the public and to promote respect and confidence in the legal profession." See e.g., California Rules of Professional Conduct Rule 1-100 (promulgated by the State Bar of California and approved by the California Supreme Court).

The requested vacatur of the Interim Arbitration Award on the merits sought by the settling parties in their joint request appears to be based solely on vacatur being a condition of settlement, and further appears to bear the earmarks of an attempted erasure of carefully and soundly arrived-at arbitral determinations, proven by Excelsior on matters infused with the public interest --- including strong public policy to protect the public and respect for the legal profession.

In the circumstances, the question must be asked, whether it is permissible and appropriate for the Arbitrator and the JAMS arbitral process to be made complicit in implementing an apparent "it's as if it never happened" condition of settlement, via vacatur of a merits award, to render "null, void and of no legal effect" serious misconduct by Mr. Randazza, in violation of his professional ethical duties, which are infused with public interest --- and thereby vitiate and suppress both truth and protection of future victims and the public.

The essence of the Interim Arbitration Award of June 3, 2015 --- the determinations of which have remained correct, just and arrived at with considerable care, based on the evidence adduced during multi-day evidentiary sessions of the Merits Hearing in this matter --- remains as follows:

Mr. Rendazza --- as in-house general counsel and chief trial counsel of his employer/client Excelsior Media Corp. --- engaged in serious ethical conflicts of interest for undisclosed pecuniary gain, via solicited bribes - against the financial and legal interests of his client/employer --- to the undisclosed prospective advantage of Excelsior's litigation-settling competitors in the internet pornography industry, by "conflicting himself" out of representation of his employer/client in its anticipated future litigation against those settling Excelsior competitors. See IAA, Par. 5Q. In addition, to his greatly undermined credibility (duty of candor), preparatory to his departure from employment by and representation of Excelsior, Mr. Randazza engaged in spoliation of evidence, via deliberately having his and his legal assistant's corporate laptops "wiped" clean of data. See IAA, Par. 5Q & n. 4.

The proven serious ethical violations by Mr. Randazza were the bedrock on which Excelsior's state-based counterclaims for Mr. Randazza's violations of fiduciary duty and other serious claims of attorney misconduct were built and successfully maintained --- notwithstanding Mr. Randazza's proven express threat to his client/employer and its principal to assert and press false and true sexual allegations of the principal's sexual orientation and conduct, via this arbitration, unless Mr. Randazza extracted a financial settlement very favorable to him, collateral to the merits of any employment-related claim which he asserted, but which he failed to prove at trial.

2

Hardisty v. Hinton & Alfert , 124 Cal.App.4th 999 (2004) ("Hardisty")("[Under CCP 128(a)(8), as amended in 1999] [t]he parties must now submit memoranda of points and authorities and declarations and other documentary evidence persuasively demonstrating that reversal of the judgment in question will not adversely affect nonparties or the public, erode public trust, or reduce the incentive for pretrial settlement, and the courts must now fully consider and weigh these factors on a case-by-case basis.") ; U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994) (exceptional circumstances must be shown to justify vacatur, mootness by reason of settlement, alone, not sufficient to warrant such an unusual action as vacatur); Izumi Seimitsu Kogyo Kabushiki Kaisah v. U.S. Phillips Corp., 510 U.S. 27 (1993) (Stevens, J., dissenting).

The Arbitrator hereby issues this Order to Show Cause why requested vacatur in the parties' stipulation should or should not be granted ("OSC") and sets July 24, 2018, 9:00 a.m. (PT), JAMS' Los Angeles Resolution Center, 555 W. 5th St., 32nd Fl., Los Angeles, CA 90013, as the date, time and place for an in-person evidentiary hearing on this OSC.

Pre-hearing declarations and other documents and memoranda, meeting the requirements of Local Rule 8, referenced in Hardisty --- plus true and correct copies of (A) the Settlement Agreement referenced in the settling parties' stipulation and the U.S. Bankruptcy Court's February 14, 2018 order approving that agreement and (B) the Bankruptcy Court's findings and conclusions stated at hearing on Mr. Randazza's apparently unopposed motion for approval of the settlement, which the Bankruptcy Court generally incorporated by reference in its February 14, 2018 written order --- shall be received by the Arbitrator by June 28, 2018, 4:00 p.m. (PT).

If the Arbitrator does not timely receive the declarations, memoranda and other documentation required under the immediately preceding paragraph of this OSC, the Arbitrator will treat this OSC as an order to show cause whether all claims and counterclaims brought by all parties should simply be dismissed with prejudice --- without inclusion of the requested decision or order re requested vacatur of the Interim

Arbitration Award --- which OSC will be decided without hearing, unless requested in writing received by the Arbitrator by July 3, 2018, 4:00 p.m. (PT). In the latter event, the in-person hearing noticed above will be held on the date and at the time and place hereinabove set forth.

It is hereby also ordered that --- if any future filing is made with the U.S. Bankruptcy Court concerning or germane to the Interim Arbitration Award by or on behalf of any of the settling parties --- accompanying and/or concurrently with any such filing, the settling parties are hereby ordered (A) to also file with that court a Request for Notice re this OSC --- referencing this OSC and attaching thereto as a referenced exhibit a true and correct copy of this OSC --- accompanied by a proof of service, showing service of the Request for Notice on JAMS and the Arbitrator and, further, (B) to file with JAMS in this arbitration a proof of service of the immediately foregoing Bankruptcy Court filings.

**IT IS SO ORDERED.**

Dated: June 11, 2018

_____
STEPHEN E. HABERFELD
Arbitrator

OSC RE JOINTLY REQUESTED VACATUR OF INTERIM ARBITRATION AWARD

# Exhibit 3

| | |
|---|---|
| **From:** | MacGregor, Jessica |
| **Sent:** | Thursday, June 28, 2018 12:57 PM |
| **To:** | Matt Zirzow |
| **Subject:** | RE: Randazza adv. JAMS |

Mr. Zirzow, I called you in good faith in an attempt to seek a resolution of the current issues, which, as I said at the outset of our call, I believe arise out of a lack of information provided to JAMS. When we began the call, you told me you had 20 minutes free. After less than one minute, you cut me off about mid-way into my second sentence, refusing to listen to me at all and dismissing anything I said as "argument". When I explained I was placing the current issues in context, you told me I was wasting your time and hung up on me.

It is regrettable that you have no interest in attempting to resolve the issues you raised in your OSC through a good faith telephonic meet and confer.

Best,


Jessica Rudin MacGregor
Partner
**LONG & LEVIT LLP**
465 California Street, 5th Fl.
San Francisco, CA 94104
415.438.4478 Direct Dial
415.397.2222 Main
415.397.6392 Fax




**From:** Matt Zirzow [mailto:mzirzow@lzklegal.com]
**Sent:** Thursday, June 28, 2018 12:47 PM
**To:** MacGregor, Jessica
**Subject:** Randazza adv. JAMS

Ms. McGregor: I am extremely disappointed in your recent call to me. I am not interested in arguing with you about this matter, which you appear inclined to do via telephone, but rather a resolution. I find your client's actions simply inexcusable, and your attempt to argue them does us neither of us any good. If you have a specific proposal, kindly provide it to me and in writing, as unfortunately telephone calls with you appear to descend into nothing but unnecessary arguments.

# Exhibit 4

| | |
|---|---|
| **From:** | MacGregor, Jessica |
| **Sent:** | Thursday, June 28, 2018 4:08 PM |
| **To:** | Matt Zirzow |
| **Subject:** | RE: Randazza adv. JAMS |

Mr. Zirzow, I do not agree with your characterization. In fact, I've been practicing for nearly 25 years and I have never had any counsel cut me off mid-sentence in the first minute of a meet and confer effort until our call this afternoon.

But your conduct does not affect my willingness to meet and confer with you. I will be sending correspondence.

Best,


Jessica Rudin MacGregor
Partner

**LONG & LEVIT LLP**

465 California Street, 5th Fl.
San Francisco, CA  94104
415.438.4478 Direct Dial
415.397.2222 Main
415.397.6392 Fax



**From:** Matt Zirzow [mailto:mzirzow@lzklegal.com]
**Sent:** Thursday, June 28, 2018 3:53 PM
**To:** MacGregor, Jessica
**Subject:** RE: Randazza adv. JAMS

Ms. McGregor: Your email is a mischaracterization of our telephone conversation of earlier today, but more importantly, your email ignores the very clear statement in my original email that Mr. Randazza would certainly consider a potential resolution of the Bankruptcy Court's OSC, but that given what I believe is your unfortunate argumentative demeanor on the telephone, if any resolution is going to happen, it will need to happen in writing and over email, and not on the telephone. For the avoidance of doubt, if JAMS has a specific proposal to resolve this matter, please email that to me in writing as soon as possible and we will consider it. Please understand, however, that any resolution will have to include a vacatur of Arbitrator Haberfeld's Interim Arbitration Award (and his more recent OSC entered in the Arbitration as well). I await the JAMS Parties' written proposal, otherwise, I assume you have a copy of Mr. Randazza's Application for OSC and the Bankruptcy Court's OSC, and we will proceed accordingly before the Nevada Bankruptcy Court.

Further, I write to separately address Arbitrator Haberfeld's own OSC entered in the Arbitration, which as you know, Mr. Randazza maintains was entered in violation of the automatic stay in his bankruptcy case, among other issues. As you are presumably aware, in the Arbitration OSSC, Arbitrator Haberfeld purported to set a deadline of

1

today for Mr. Randazza to brief and "justify" why the Arbitration should dismissed with the vacatur of the Interim Arbitration Award, as opposed to just a straight dismissal of the Arbitration (and without a vacatur of the IAA). Pursuant to the automatic stay, Mr. Randazza will not, at this time, comply with the Arbitrator's June 28, 2018 deadline in Arbitration OSC requiring such further briefing, and please further be advised that to the extent Arbitrator Haberfeld takes additional action in the Arbitration such as his threat to dismiss without a vacatur of the Interim Arbitration Award as a result of any failure to brief matters or justify the vacatur, Mr. Randazza will still proceed with his own OSC in the Bankruptcy Court, as he believes such actions by Arbitrator Haberfeld will also be in violation of the automatic stay and in contempt of the Settlement Order. The foregoing having been said, as a courtesy to the Arbitrator, Mr. Randazza did previously email a copy of the Settlement Motion, which included the Settlement Agreement, and the Settlement Order to JAMS, as requested in the Arbitration OSC, and we assume you have been provided with copies of these as well. If you need any of these documents sent to you, please advise. In other words, whatever misunderstandings the JAMS Parties claim may have previously existed, all of the foregoing filings should erase any such alleged confusion, and should leave no doubt in the JAMS Parties' minds that they should comply as demanded in Mr. Randazza's OSC application filed in the Bankruptcy Case.

**From:** MacGregor, Jessica [mailto:jmacgregor@longlevit.com]
**Sent:** Thursday, June 28, 2018 12:57 PM
**To:** Matt Zirzow <mzirzow@lzklegal.com>
**Subject:** RE: Randazza adv. JAMS

Mr. Zirzow, I called you in good faith in an attempt to seek a resolution of the current issues, which, as I said at the outset of our call, I believe arise out of a lack of information provided to JAMS. When we began the call, you told me you had 20 minutes free. After less than one minute, you cut me off about mid-way into my second sentence, refusing to listen to me at all and dismissing anything I said as "argument". When I explained I was placing the current issues in context, you told me I was wasting your time and hung up on me.

It is regrettable that you have no interest in attempting to resolve the issues you raised in your OSC through a good faith telephonic meet and confer.

Best,


Jessica Rudin MacGregor
Partner
**LONG & LEVIT LLP**
465 California Street, 5th Fl.
San Francisco, CA 94104
415.438.4478 Direct Dial
415.397.2222 Main
415.397.6392 Fax



**From:** Matt Zirzow [mailto:mzirzow@lzklegal.com]
**Sent:** Thursday, June 28, 2018 12:47 PM
**To:** MacGregor, Jessica
**Subject:** Randazza adv. JAMS

2

Ms. McGregor:  I am extremely disappointed in your recent call to me.  I am not interested in arguing with you about this matter, which you appear inclined to do via telephone, but rather a resolution.  I find your client's actions simply inexcusable, and your attempt to argue them does us neither of us any good.  If you have a specific proposal, kindly provide it to me and in writing, as unfortunately telephone calls with you appear to descend into nothing but unnecessary arguments.

# Exhibit 5

Hon. Stephen E. Haberfeld (Ret.)
JAMS
555 W. 5th St., 32nd Fl.
Los Angeles, CA 90013
Tel: (213) 253-9704

Arbitrator


JAMS


| | |
|---|---|
| MARC J. RANDAZZA, | )   JAMS No. 1260002283 |
| Claimant, | ) |
| | ) |
| vs. | )   ORDER WITHDRAWING JUNE 11, 2018 |
| EXCELSIOR MEDIA CORP., etc., et al., | )   ORDER TO SHOW CAUSE |
| | ) |
| Respondents. | ) |
| | ) |
| ——————————————— | ) |
| And Related Counterclaims | ) |

/ / / / /

/ / / / /

On about May 29, 2018, the assistant to Littler Mendelson partner Wendy Krincek, Esq., principal lead arbitration counsel for Excelsior Media Corp. and the other respondents and counterclaimants, submitted to JAMS Assistant Manager Reggie Joseph who, as case manager for this arbitration, forwarded to the Arbitrator, a "Stipulation and Order to Dismiss Arbitration with Prejudice" ("Stipulation"). The Stipulation consisted of the settling parties' stipulation and accompanying requested written "Decision" of the Arbitrator that this arbitration be dismissed with prejudice and, further, that the June 3, 2015 Interim Arbitration Award ("IAA") be vacated, also with prejudice, to be rendered "null, void and unenforceable" --- all based on a requested arbitral determination, also included in the "Decision," of "good cause shown."  The Stipulation and requested Decision bore the JAMS arbitration caption and case reference number for this arbitration.

No moving or supporting pleadings pertaining to the Motion to Approve Settlement Agreement and Release with Excelsior Media Corp., Liberty Media Holdings, LLC and Jason Gibson Per Fed.R.Bankr.P. 9019 ("Settlement Motion") had been served upon JAMS or the Arbitrator prior to the submission of the Stipulation that had apparently been attached to the Settlement Motion.

On June 1, 2018, at 3:54 p.m. Mr. Joseph emailed Ms. Krincek and inquired as follows:

"Good afternoon Ms. Krincek,

"Judge Haberfeld is in receipt of the parties' Stipulation and Order to Dismiss Arbitration with Prejudice in the above matter. **He asked me to inquire whether the automatic stay was lifted and if so, was it lifted based on a written document (ie dismissal of BK)?** Also Judge Haberfeld requests a copy of the settlement agreement that is referenced in stipulation submitted to him.

"Can you please advise of the above at your convenience? Should you have any questions, please let me know. Thank you"  [**bold** added for emphasis here only]

Five minutes later, at 3:59 p.m. on June 1, 2018, Ms. Krincek responded to Mr. Joseph's inquiry concerning the automatic stay having been lifted, as follows:

"Hi Reggie:  I'm asking my assistant Erin to find the motion to the BK court to approve **settlement and dismiss the BK proceeding and forward it to you along with the order dismissing the matter in BK court,** the settlement agreement is attached to the motion/stipulation as an exhibit.  [**bold** added for emphasis here only]

According to Littler Mendelson emails to Mr. Joseph --- shortly after sending Mr. Joseph her June 1, 2018 responsive email about Mr. Randazza's motion "to approve settlement and dismiss the BK proceeding...[and] the order dismissing the matter in BK court," Ms. Krincek went on vacation.   On about June 7, 2018, Mr. Joseph forwarded to the Arbitrator the Bankruptcy Court's February 14, 2018 Order approving the settling parties' settlement, which Mr. Joseph also received from Ms. Krincek's assistant.

Because the Stipulation expressly requested the Arbitrator's written decision as well as his determination in his "Decision" to order vacatur of the IAA, with prejudice, based on his arbitral independent finding of "good cause shown," that request for performance of independent acts to be taken by the Arbitrator supported his reasonable and good faith beliefs and conclusion  that (a) this JAMS arbitration was not subject to an automatic stay, (b) the Parties were requesting the Arbitrator to make a finding of "good cause shown," and (c) the Parties were requesting that the Arbitrator take such acts as he considered to be appropriate in responding to the request.

On June 11, 2018 --- based on Ms. Krincek's June 1 email, responding to the Arbitrator's diligent inquiry via Mr. Joseph, and other apparently reliable evidence provided to him in connection with the Stipulation, and the Arbitrator's reasonable and good faith belief, based thereon, that the arbitration was not stayed --- the Arbitrator responded to the settling parties' stipulated requests for written decision addressed to him in the Stipulation by signing an OSC Whether or Not Interim Arbitration Award Should be Subject to Vacatur, With Prejudice, As Requested by Settling Parties.

From the June 11, 2018 date of emailed issuance of the Arbitrator's OSC through June 24, 2018, no settling party or counsel for a settling party contacted either JAMS or the Arbitrator to inform or even suggest to either of them either (a) that the automatic

stay was or might still be in effect or (b) that JAMS or the Arbitrator were subject to any order of the Bankruptcy Court containing any directive to either or both of them.

On June 25, 2018, Mr. Randazza's counsel filed a motion in the Bankruptcy Court, naming JAMS and the Arbitrator, seeking an OSC to compel JAMS and the Arbitrator to take the actions requested in the Stipulation, which had been approved by the Bankruptcy Court on February 14, 2018, to have the Court Clerk or the Court do so, and/or to hold JAMS and the Arbitrator in contempt for having violated the automatic stay.

In light of the incomplete and seemingly conflicting information provided to the Arbitrator by the settling parties with respect to, *inter alia*, the status of the bankruptcy case, the applicability or not of the automatic stay, the operative effect (if any) of the Order granting the Settlement Motion upon JAMS or the Arbitrator, the parties' intent with respect to the acts to be taken by the Arbitrator in response to their "request," the Debtor having initiated the Order to Show Cause proceeding in the Bankruptcy Court, the Arbitrator hereby withdraws the June 11, 2018 JAMS Order to Show Cause without prejudice.

**IT IS SO ORDERED.**

Dated: June 29, 2018

_____
STEPHEN E. HABERFELD
Arbitrator

4

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Randazza, Marc J. vs. Excelsior Media Corp., Liberty Media Holdings LLC, Jason Gibson
Reference No. 1260002283

I, Stephanie Barraza, not a party to the within action, hereby declare that on July 02, 2018, I served

the attached ORDER WITHDRAWING JUNE 11, 2018 ORDER TO SHOW CAUSE on the parties in the

within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon

fully prepaid, in the United States Mail, at Los Angeles, CALIFORNIA, addressed as follows:

Wendy M. Krincek Esq.
Ethan D. Thomas Esq.
Littler Mendelson
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89109
Phone: 702-862-8800
wkrincek@littler.com
edthomas@littler.com
    Parties Represented:
    Excelsior Media Corp.
    Jason Gibson
    Liberty Media Holdings

Kenneth P. White Esq.
Nannina L. Angioni Esq.
Henry L. Whitehead Esq.
Brown White & Osborn, LLP
333 S. Hope St.
40th Floor
Los Angeles, CA  90071-1406
Phone: 213-613-0500
kwhite@brownwhitelaw.com
nangioni@brownwhitelaw.com
hwhitehead@brownwhitelaw.com
    Parties Represented:
    Marc J. Randazza

Mishell Taylor Esq.
Littler Mendelson
501 W. Broadway
Suite 900
San Diego, CA  92101-3577
Phone: 619-232-0441
mtaylor@littler.com
    Parties Represented:
    Excelsior Media Corp.

        I declare under penalty of perjury the foregoing to be true and correct. Executed at Los Angeles,
CALIFORNIA on  July 02, 2018.

Stephanie Barraza
SBarraza@jamsadr.com

# Exhibit 6

## LONG & LEVIT LLP

ATTORNEYS AND COUNSELORS AT LAW

Jessica R. MacGregor
*Partner*

jmacgregor@longlevit.com
Direct Dial: 415-438-4478

July 3, 2018

S1380.068

**VIA ELECTRONIC MAIL ONLY**

Matthew C. Zirzow, Esq.
Larson Zirzow & Kaplan, LLC
850 East Bonneville Avenue
Las Vegas, Nevada 89101

Re:  *Randazza v. Excelsior Media Corp., et al.*

Dear Mr. Zirzow:

We write in a continued effort to meet and confer with you regarding the OSC you filed naming
JAMS and the Hon. Stephen Haberfeld (Ret.). When I attempted to engage in a telephonic meet
and confer with you last Thursday, you told me you had twenty minutes available, but cut me off
less than a minute into the beginning of our discussion, dismissing prefatory statements I made
as "argumentative." After I attempted to continue our discussion, you hung up on me.
Thereafter you made a proposal to resolve this dispute by proposing Judge Haberfeld enter
various orders dictated by you and your client in the arbitration. The proposal would seem to be
at odds with the position you assert in the OSC: that because of the automatic stay Judge
Haberfeld lacks jurisdiction to act in the arbitration. Nevertheless, following a recitation of the
history of this dispute, we suggest a possible resolution.

Judge Haberfeld is the arbitrator in *Randazza v. Excelsior Media Corp. et al*, JAMS Reference
No. 1260002283 (the "Arbitration"). He issued an Interim Arbitration Award ("IAA") on June
3, 2015.

Based on the history you set forth in a June 25, 2018 OSC, it appears that sometime after the
issuance of the IAA, your client filed for bankruptcy protection in Nevada. Neither JAMS nor
Judge Haberfeld is a party to or has an interest in that bankruptcy matter and neither receives
notice of filings in that proceeding. You filed a motion for approval of a settlement reached
between your client and the Respondents in the Arbitration. You represent that the parties
agreed to stipulate to the dismissal of the Arbitration and vacatur of the IAA. You did not serve
JAMS or Judge Haberfeld with a copy of this motion at the time it was filed.

DOCS\PENDING-PENDING\866492.1

465 California Street . 5th Floor . San Francisco, CA 94104 . Tel: 415-397-2222 . Fax: 415-397-6392 . www.longlevit.com

Matthew C. Zirzow, Esq.
July 3, 2018
Page 2

On February 14, 2018, Judge Landis entered an order granting Mr. Randazza's unopposed Motion to Approve the Settlement. The Order is silent as to JAMS and Judge Haberfeld.

On May 29, 2018, Judge Haberfeld received a document from Excelsior's counsel styled as a "Stipulation and Order to Dismiss Arbitration with Prejudice" ("Stipulation"). We note that this Stipulation appears to be an exhibit to the Motion to Approve the Settlement. It was not expressly referenced in Judge Landis' order nor was its provisions expressly incorporated therein. The Stipulation and its attached Order were on a JAMS caption. Because the request sought Judge Haberfeld's decision as well as his determination that the order requested was based on his finding of "good cause shown" it created the appearance that the JAMS arbitration was not subject to the automatic stay or any direct order of the Bankruptcy Court. Similarly, no orders of the Bankruptcy Court commanding dismissal of the Arbitration or commanding JAMS or Judge Haberfeld to dismiss the case and vacate the IAA, were submitted as none appear to have been issued.

Following receipt of the Stipulation and Order, Judge Haberfeld's case manager inquired regarding the automatic stay. He received information from Excelsior's counsel that the bankruptcy had been dismissed, which again, created the impression the automatic stay was no longer in effect.

On June 11, 2018, based on the evidence suggesting the arbitration was not stayed Judge Haberfeld responded to the request being made of him by issuing an OSC Whether or Not Interim Arbitration Award Should be Subject to Vacatur, With Prejudice, As Requested by Settling Parties.

Two weeks passed during which you never contacted JAMS or Judge Haberfeld to advise them it was your view the OSC was in violation of the automatic stay and you never once made an request during this period that JAMS withdraw the OSC. Instead, you appear to have devoted your efforts solely to drafting your own OSC naming Judge Haberfeld and JAMS, which you filed on June 25, 2018. In that OSC your client seeks, among other things, an order holding JAMS and Judge Haberfeld in contempt for violating the automatic stay, an order directing JAMS to vacate the IAA and dismiss the arbitration, and sanctions.

After JAMS and Judge Haberfeld received the OSC, it contacted you through this office in attempt to resolve issues arising out this set of confusing circumstances.

While all appearances indicate the absence of any stay with respect to the "request" by your client, there is, at a minimum, a legitimate issue regarding whether the automatic stay remains in place as to the arbitration.

Your discussion in the Debtor's "Legal Argument" section of his Motion for Order to Show Cause regarding application of, and allegations concerning violations of, the automatic stay is curious, at best.

Matthew C. Zirzow, Esq.
July 3, 2018
Page 3

The entire discussion regarding the applicability of the stay to the submission of the request initiated by your client and his adversary to the Arbitrator consists of ten (10) lines that appear at page 12, line 19 through page 13, line 2, most of which consists of string citations. The Debtor's Legal Argument asserts two grounds for application of the stay:

      (a)     In paragraph 43, the Motion quotes Section 362 for its proposition that the filing of a bankruptcy petition operates as a stay of the commencement or continuation of actions "against the debtor" and

      (b)     In paragraph 44, the Motion cites cases for the proposition that "Where the debtor is the plaintiff, defendant counterclaims and cross-claims against the debtor are also stayed," citing *In re Miller*, 397 F.d 726 (9th Cir. 2005).

*In re Miller* is an often-cited case for the proposition that:

> The automatic stay is applicable only to proceedings against the debtor. *See Parker, 68 F.3d at 1136* ('*Section 362* should be read to stay all appeals in proceedings that were originally brought against the debtor . . . .') (emphasis omitted) (alteration in original) (parallel citation omitted) (quoting *Ingersoll-Rand Fin. Corp. v. Miller Mining Co., 817 F.2d 1424, 1426 (9th Cir. 1987))*. 'This rule finds its source in the language of *section 362*, which extends the automatic stay to the *continuation*, as well as the *commencement*, of an action against the debtor.' *Id.* (emphasis in the original).

Thus, the import of the *Miller* case is that actions initiated by the Debtor, such as the Arbitration, are not subject to the automatic stay.

Your pleading does not discuss the fact that Mr. Randazza, the Debtor, is the person who commenced the Arbitration which was a proceeding by him, not against him.

Absent any counterclaim, i.e., your second point above, the stay is wholly inapplicable. JAMS and the Arbitrator acknowledge two points with respect to the counterclaims, i.e., that prosecution of counterclaims is stayed by the automatic stay and that the Chapter 11 Debtor cannot unilaterally waive the operation of the stay because the court must consider the potential affect upon the estate and other parties in interest.

Nonetheless, and ironically, Mr. Randazza's own arguments compel the conclusion that no stay of the counterclaims is operative. In paragraph 39 of the Settlement Motion, and in paragraph 38 of Mr. Randazza's Declaration in Support of Debtor's Motion for Order to Show Cause, counsel for the Debtor argues, and the Debtor swears under oath, respectively, the following:

Matthew C. Zirzow, Esq.
July 3, 2018
Page 4

> The Court entered extensive oral findings and conclusions in
> support of its approval of the Settlement Agreement and entry of
> the Settlement Order.  In particular, Court admonished the parties
> that it was by no means a 'rubber stamp' of the approval of
> whatever settlement the parties were able to reach, and instead that
> the Court undertook its own separate and independent review of
> the proposed compromise, and the totality of the facts and
> circumstances involved, in order to come to its ultimate decision
> that the resolution was fair and equitable, and in the best interests
> of not just the parties, but also the bankruptcy estate and all
> creditors and parties in interest."  (Settlement Motion at 11:17-22,
> Randazza Declaration at 9:19-26)

Accordingly, by the Debtor's own argument, the stay – as might be applicable to counterclaims –
is not operative as the Bankruptcy Court "authorized and directed" both the Debtor and his
adversary to initiate the acts taken before the Arbitrator, i.e., requesting that the Arbitrator make
a determination of "good cause" and issue a "Decision" regarding dismissal and *vacatur*, and the
Bankruptcy Court did so after considering the effect upon the estate, its creditors, and all parties
in interest.

Thus, the Debtor admits that no stay applied to the request and no violation of the stay could
have, or did, occur.

Notwithstanding this robust position, JAMS and Judge Haberfeld have no interest in engaging in
motion practice.  Judge Haberfeld has already withdrawn the OSC he issued on June 11, 2018.

The parties' request for entry of an order dismissing the arbitration and vacating the IAA remains
an open issue; however, an OSC is not necessary to resolve it, since, as you admit in Paragraph
61 of the OSC, JAMS Rule 28(c) applies.  That rule provides:

> If, at any stage of the Arbitration process, all Parties agree upon a
> settlement of the issues in dispute and request the Arbitrator to
> embody the agreement in a Consent Award, the Arbitrator shall
> comply with such request, *unless the Arbitrator believes the terms
> of the agreement are illegal or undermine the integrity of the
> Arbitration process.  If the Arbitrator is concerned about the
> possible consequences of the proposed Consent Award, he or she
> shall inform the Parties of that concern and may request additional
> specific information from the Parties regarding the proposed
> Consent Award.  The Arbitrator may refuse to enter the proposed
> Consent Award and may withdraw from the case.*

In his now withdrawn OSC Judge Haberfeld explained the reasons why he believes the term of
your agreement to vacate the IAA is against public policy.  Under Rule 28(c), he is prepared to
withdraw as arbitrator.  In the event of the Arbitrator's withdrawal, and assuming that Mr.

DOCS\PENDING-PENDING\866492.1

Matthew C. Zirzow, Esq.
July 3, 2018
Page 5

Randazza continues to advocate that the automatic stay remains operative, JAMS would appear to lack the jurisdiction, or at least the procedural prerogative, to appoint a new arbitrator. Therefore, under those circumstances, it would appear to be appropriate for you to seek an order from the Bankruptcy Court dismissing the arbitration and vacating the IAA (relief you propose at paragraph 63 of the June 25, 2018 OSC).

Please advise by close of business on July 5, whether you will withdraw your June 25, 2018 OSC in the event of Judge Haberfeld's withdrawal as arbitrator.

Very truly yours,

Jessica R. MacGregor

JRM:lm
cc:     Kenneth P. White, Esq. (via electronic mail only)
        Nannina L. Angioni, Esq. (via electronic mail only)
        Henry L. Whitehead, Esq. (via electronic mail only)
        Wendy M. Krincek, Esq. (via electronic mail only)
        Ethan D. Thomas, Esq. (via electronic mail only)
        Mishell Taylor, Esq. (via electronic mail only)

DOCS\PENDING-PENDING\866492.1

# Exhibit 7



**LARSON**
**ZIRZOW**
**KAPLAN**

850 E. BONNEVILLE AVE. LAS VEGAS, NV 89101
PHONE (702) 382-1170 ✦ FAX (702) 382-1169

July 5, 2018

**VIA EMAIL**
Jessica Rudin MacGregor, Esq.
Long & Levit LLP
465 California Street, 5th Fl.
San Francisco, CA 94104

      Re:    Marc J. Randazza adv. JAMS, Inc. and Arbitrator Stephen Haberfeld
               <u>In re Randazza</u>, Case No. BK-S-15-14956-abl (Bankr. D. Nev.)

Mrs. MacGregor:

        I am in receipt of your letter dated Tuesday, July 3, 2018, which was sent after my email proposal to you dated Friday, June 29, 2018. Your letter apparently rejects my June 29th proposal to resolve this matter in favor of an alternative proposal, however, as hereinafter explained, your alternative proposal is not agreeable to Mr. Randazza because it does not ultimately resolve the central matter at issue: how will the Arbitration be dismissed and the Interim Arbitration Award (the "<u>IAA</u>") be vacated as already directed by the Bankruptcy Court?

        As an initial matter, I will not address in depth our unfortunate initial telephone call because I have already addressed that matter with you in previous emails, which emails you also already responded to, so I'm not sure why you continue to reference that matter (and also misstate what actually happened on that call as well) in your July 3rd letter. Suffice it to say, there is no excuse for the lack of professionalism you showed me on that call by losing your temper and yelling at me when all I indicated was that I did not have the inclination or time to argue with you point by point, and instead would prefer to discuss a potential resolution. I trust we can move beyond that matter to more substantive issues.

        Second, this letter will also not engage in a point-by-point argumentative response to your July 3rd letter, and for the same reasons I would not do so on the telephone, and instead focus on the salient issues and a potential resolution. For the avoidance of doubt, however, Mr. Randazza' rejects the attempts to rationalize or justify the JAMS Parties' conduct, especially considering that, had there been any question at any point in the process, a simple telephone call or email to Mr. Randazza's counsel (or indeed a simple PACER search of Mr. Randazza's bankruptcy docket) could have easily removed any alleged confusion--to the extent there ever really was any in the first place. Instead, and just like in the unconfirmed and now discarded IAA, Arbitrator Haberfeld again chose to personally attack Mr. Randazza quite unnecessarily with his Arbitration OSC, and even through the Arbitrator's opinions of him and/or his conduct are *completely irrelevant* now in light of the Bankruptcy Court's approval of the global Settlement Agreement.

1

Third, your letter incorrectly asserts that the JAMS Parties never had any notice of Mr. Randazza's bankruptcy filing and of the automatic stay. That assertion is clearly incorrect, and in fact, there are multiple notices to the JAMS Parties of those matters from at least several sources. As such, and contrary to your letter, the JAMS Parties had ample notice of Mr. Randazza's bankruptcy case and of the automatic stay. Moreover, any suggestion to the contrary defies logic—are the JAMS Parties really maintaining that they had no idea of Mr. Randazza's bankruptcy case, and just let the unfinished Arbitration proceeding remain idly open without any progress for more than two years?

Finally, and most importantly, I will address your proposed alternative resolution as stated in your July 3rd letter. In particular your letter states that Arbitrator Haberfeld believes the vacatur of the IAA (which has already been directed by the Bankruptcy Court) is against public policy, and further that the Arbitrator is "prepared to withdraw" from the Arbitration as a result of that belief rather than enter such a stipulated order (again, which stipulated order was approved and directed by the Bankruptcy Court). To be sure, Arbitrator Haberfeld has not *actually* withdrawn from the Arbitration; rather, per your letter he is apparently *refusing* to withdraw unless and until Mr. Randazza *first* seeks a withdrawal (and indeed apparently a *complete* withdrawal) of the Bankruptcy Court's OSC.

The principal problem with the JAMS Parties' proposal is that Mr. Randazza's application for OSC filed with the Bankruptcy Court and the Bankruptcy Court's OSC were premised on two different theories—not only a violation of the automatic stay (which was asserted in particular as to the JAMS Parties' entry of the Arbitration OSC), but also, and indeed more centrally, a request to enforce and/or compel enforcement of the Bankruptcy Court's Settlement Order, including the dismissal of the Arbitration and the vacatur of the IAA. As such, the JAMS Parties' proposal that Mr. Randazza seeks a complete withdrawal of the Bankruptcy Court's OSC proceedings is unworkable. How is Mr. Randazza to achieve the dismissal of the Arbitration and vacatur of the IAA as directed by the Bankruptcy Court and as requested in the Bankruptcy Court OSC proceedings if those OSC proceedings are dismissed?

Further, Arbitrator Haberfeld's Order Withdrawing his OSC dated June 29, 2018, although a limited step in the right direction (albeit only after Mr. Randazza had to spend the time and money seeking to compel it with the Bankruptcy Court, and thus after the JAMS Parties created the situation the parties now find themselves), also states that it is "without prejudice," thus allowing the Arbitrator or another ill-advised replacement arbitrator, if any, to still later re-enter the same or a similar Arbitration OSC. As a result, this proposal leaves Mr. Randazza in the same predicament of potentially having to compel enforcement with the Bankruptcy Court's Settlement Order and Settlement Agreement, including in particular, the dismissal of the Arbitration and the vacatur of the IAA. In other words, your suggested alternative proposal ultimately does not actually and fully resolve the central issue: how will the Arbitration be dismissed and the IAA vacated fully and finally as directed by the Bankruptcy Court if the OSC proceedings before the Bankruptcy Court seeking such relief are withdrawn as you insist?

If the JAMS Parties wish to resolve the pending matter, they must withdraw the Arbitration OSC *with prejudice* and execute *without alteration* the stipulation of dismissal as approved by the

2

Bankruptcy Court. To be sure, however, Mr. Randazza reminds the JAMS Parties of his previous offer, subject to the Excelsior Parties' approval, that the stipulated dismissal of the Arbitration (and vacatur of the IAA) could potentially be modified to clarify that it is being entered at the Bankruptcy Court's direction, and so as to remove any apparent imprimatur of approval by the JAMS Parties. Again, Arbitrator Haberfeld's opinions of Mr. Randazza or the Bankruptcy Court-approved Settlement Agreement are *completely irrelevant*, and thus the entire situation the Arbitrator has created here with his improvident actions, and which he is continuing to perpetuate with his intransigence, is entirely avoidable and resolvable. Barring the foregoing, given the situation the JAMS Parties have created here, and indeed which they are perpetuating, Mr. Randazza does not see any other choice but to proceed with the pending hearing before the Bankruptcy Court to effectuate the relief, including the vacatur of the IAA, which that Court has already approved.

For the avoidance of doubt, Mr. Randazza continues to want to resolve these disputes with the JAMS Parties and will certainly consider any further proposals they may have, however, at the same time, in light of the lack of an acceptable resolution, Mr. Randazza must continue to reserve any and all rights and remedies he may have against the JAMS Parties as set forth in his OSC filings with the Bankruptcy Court, and fully expects that matter to be briefed and proceed as directed by the Bankruptcy Court unless we can resolve this matter in short order.

Very truly yours,

MATTHEW C. ZIRZOW, ESQ.
mzirzow@lzklegal.com

3