LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzklegal.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170
Fax:  (702) 382-1169

Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>        Debtor. | Case No: BK-S-15-14956-abl<br>Chapter 11<br><br>Combined Hearing:<br>Date:   November 7, 2018<br>Time:  1:30 p.m. |

**[PROPOSED] DISCLOSURE STATEMENT TO ACCOMPANY
DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

# TABLE OF CONTENTS

Page

I.    INTRODUCTION...................................................................................................1

II.   INFORMATION REGARDING THE PLAN AND DISCLOSURE
      STATEMENT .......................................................................................................1

III.  GENERAL OVERVIEW OF THE PLAN...........................................................2

      A.   General Overview...................................................................................2
      B.   Treatment of Administrative Claims......................................................2
      C.   Class 1:  Specialized Loan Servicing Secured Claim. ..........................3
      D.   Class 2:  Other Secured Claims. ............................................................3
      E.   Class 3:  Priority Non-Tax Claims. .......................................................3
      F.   Class 4:  Excelsior Parties Claims. ........................................................4
      G.   Class 5:  Jennifer Randazza Claims. ......................................................4
      H.   Class 6:  General Unsecured Claims......................................................4
      I.   Elimination of Vacant Classes. ..............................................................5

IV.   SUMMARY OF VOTING PROCESS .................................................................5

      A.   Who May Vote to Accept or Reject the Plan. ........................................5
      B.   Summary of Voting Requirements. .........................................................5

V.    INFORMATION ABOUT DEBTOR'S BUSINESS AND CHAPTER 11
      CASE ....................................................................................................................5

      A.   Initial Proceedings in the Chapter 11 Case. ..........................................5
      B.   The Litigation and Settlements with the Excelsior Parties. ..................6

           1.   The Litigation and Insurance Settlement. ..................................6
           2.   The State Bar of Nevada Proceedings.........................................8
           3.   The Global Settlement with the Excelsior Parties. ....................8

      C.   The Various Litigation with Crystal L. Cox. ........................................10
      D.   The Refinancing and Sale of the Magnolia Property. ..........................12
      E.   The Marital Settlement Agreement with Jennifer Randazza. ...............13
      F.   The Mediation and Settlement with Clayton Douglas. ........................13
      G.   The JAMS and Arbitration Order to Show Cause. ...............................14
      H.   The Debtor's Current Status. ................................................................15

VI.   DETAILED DESCRIPTION OF THE PLAN ....................................................15

      A.   Means of Implementing the Plan. .........................................................15

           1.   Revesting of Assets.....................................................................15
           2.   Notice of Effectiveness...............................................................15
           3.   No Governance Action Required. ...............................................15

      B.   Executory Contracts and Unexpired Leases. ........................................15

           1.   Executory Contracts and Unexpired Leases. ..............................15
           2.   Approval of Assumption or Rejection. .......................................16
           3.   Cure of Defaults..........................................................................16

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax:  (702) 382-1169

i

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

|   |   | 4. | Objection to Cure Amounts. | 16 |
|   |   | 5. | Confirmation Order. | 17 |
|   |   | 6. | Post-Petition Date Contacts and Leases. | 17 |
|   |   | 7. | Bar Date for Rejection Damages Claims. | 17 |
|   | C. | | Manner of Distribution of Property Under the Plan. | 17 |
|   | D. | | Conditions to Confirmation of the Plan. | 17 |
|   |   | 1. | Conditions to Confirmation. | 17 |
|   |   | 2. | Conditions to Effectiveness. | 17 |
|   |   | 3. | Waiver of Conditions. | 18 |
| VII. | | | RISK FACTORS | 18 |
|   | A. | | Debtor Has No Duty to Update. | 18 |
|   | B. | | Information Presented is Based on Debtor's Records and is Unaudited. | 18 |
|   | C. | | Projections are Not Assured and Actual Results Will Vary. | 18 |
|   | D. | | No Legal or Tax Advice is Provided to You by this Disclosure Statement. | 18 |
|   | E. | | No Admissions Made. | 19 |
|   | F. | | No Waiver of Right to Object or to Recover Transfers and Estate Assets. | 19 |
|   | G. | | Bankruptcy Law Risks and Considerations. | 19 |
|   |   | 1. | Confirmation of the Plan is Not Assured. | 19 |
|   |   | 2. | The Effective Date Might Be Delayed or Never Occur. | 19 |
|   |   | 3. | Allowed Claims in the Various Classes May Exceed Projections. | 19 |
|   |   | 4. | No Representations Outside of this Disclosure Statement Are Authorized. | 20 |
|   | H. | | Risks Related to Debtor's Business Operations. | 20 |
|   | I. | | Risks Related to State Bar Attorney Disciplinary Proceedings. | 20 |
| VIII. | | | POST EFFECTIVE DATE OPERATIONS AND PROJECTIONS | 20 |
|   | A. | | Summary of Title to Property and Dischargeability. | 20 |
|   |   | 1. | Vesting of Assets. | 20 |
|   |   | 2. | Preservation of Avoidance Actions and Litigation Claims. | 20 |
|   |   | 3. | Discharge and Potential Administrative Closure. | 21 |
|   |   | 4. | Exculpation. | 21 |
|   | B. | | Post-Confirmation Reporting and Quarterly Fees to the U.S. Trustee. | 22 |
|   | C. | | Certain Federal Income Tax Consequences. | 22 |
| IX. | | | CONFIRMATION OF THE PLAN | 23 |
|   | A. | | Confirmation of the Plan. | 23 |
|   | B. | | Objections to Confirmation of the Plan. | 23 |
|   |   | 1. | Best Interest of Creditors and Liquidation Analysis. | 24 |
|   |   | 2. | Feasibility. | 25 |

|  |  | 3. | Accepting Impaired Class. | 25 |
|  |  | 4. | Acceptance of Plan. | 25 |
|  |  | 5. | Confirmation Over a Dissenting Class. | 25 |
|  | C. | Allowed Claims. |  | 26 |
|  | D. | Impaired Claims. |  | 26 |
|  | E. | Voting Procedures. |  | 27 |
|  |  | 1. | Submission of Ballots. | 27 |
|  |  | 2. | Incomplete Ballots. | 27 |
|  |  | 3. | Withdrawal of Ballots. | 27 |
|  |  | 4. | Questions and Lost or Damaged Ballots. | 27 |
| X. | ALTERNATIVES TO THE PLAN |  |  | 27 |
|  | A. | Debtor's Considerations. |  | 27 |
|  | B. | Alternative Plans of Reorganization. |  | 28 |
|  | C. | Liquidation Under Chapter 7. |  | 28 |
| XI. | AVOIDANCE ACTIONS |  |  | 28 |
| XII. | RECOMMENDATION AND CONCLUSION |  |  | 29 |

## APPENDIX

Exhibit "1"        Debtor's Plan of Reorganization

Exhibit "2"        Debtor's Projected Disposable Income

Exhibit "3"        Liquidation Analysis

Exhibit "4"        Randazza Marital Settlement Documents

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

iii

I.    **INTRODUCTION**

On August 28, 2015 (the "Petition Date"), Marc John Randazza (the "Debtor" or "Mr. Randazza") filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada, Las Vegas (the "Bankruptcy Court"), thereby commencing case number BK-S-15-14956-abl (the "Chapter 11 Case"). Debtor has prepared this Disclosure Statement (the "Disclosure Statement")[1] in connection with the solicitation of votes on Debtor's *Plan of Reorganization* (the "Plan") to treat the Claims of Creditors of Debtor. The various exhibits to this Disclosure Statement included in the Appendix are incorporated into and are a part of this Disclosure Statement. The Plan is attached hereto as **Exhibit 1.** After having reviewed the Disclosure Statement and the Plan, any interested party desiring further information may contact:

LARSON ZIRZOW & KAPLAN, LLC
Attn: Matthew C. Zirzow, Esq.
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
(702) 382-1170 Telephone
(702) 382-1169 Facsimile
Email: mzirzow@lzklegal.com

Interested parties may also obtain further information from the Bankruptcy Court at its PACER website: http://www.nvb.uscourts.gov (PACER account required), or from the Clerk of Court, the United States Bankruptcy Court for the District of Nevada, Foley Federal Building and U.S. Courthouse. 300 Las Vegas Boulevard South, Las Vegas, Nevada 89101.

II.    **INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT**

The objective of a chapter 11 case is the confirmation (*i.e.*, approval by the bankruptcy court) of a plan of reorganization for a debtor. A plan describes in detail (and in language appropriate for a legal contract) the means for satisfying the claims against a debtor. After a plan has been filed, the holders of such claims that are impaired (as defined in section 1124 of the Bankruptcy Code) are permitted to vote to accept or reject the plan. Before a debtor or other plan proponent can solicit acceptances of a plan, section 1125 of the Bankruptcy Code requires the debtor or other plan proponent to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable those parties entitled to vote on the plan to make an informed judgment about the plan and whether they should accept or reject the plan.

The purpose of this Disclosure Statement is to provide sufficient information about Debtor and the Plan to enable Creditors to make an informed decision in exercising their rights to accept or reject the Plan. After the appropriate Persons have voted on whether to accept or reject the Plan, there will be a hearing on the Plan to determine whether it should be confirmed. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including but not necessary limited to section 1129 of the Bankruptcy Code. The Bankruptcy Court will also receive and consider a ballot summary that

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Plan.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

will present a tally of the votes of Classes accepting or rejecting the Plan cast by those entitled to vote.  Once confirmed, the Plan will be treated essentially as a contract binding on all Creditors and other parties-in-interest in the Chapter 11 Case.

**THIS DISCLOSURE STATEMENT IS NOT THE PLAN.  FOR THE CONVENIENCE OF CREDITORS, THE PLAN IS SUMMARIZED IN THIS DISCLOSURE STATEMENT.  IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN WILL CONTROL.**

Unless otherwise specifically noted, the financial information in this Disclosure Statement has not been subject to audit.  Instead, this Disclosure Statement was prepared from information compiled from records maintained in the ordinary course of Debtor's business.  Debtor has attempted to be accurate in the preparation of this Disclosure Statement.  Other than as stated in this Disclosure Statement, Debtor has not authorized any representations or assurances concerning Debtor and its operations or the value of his assets.  Therefore, you should scrutinize any information received from any third-party and you assume any risk resulting from reliance upon such unauthorized information.  In deciding whether to accept or reject the Plan, you should therefore not rely on any information relating to Debtor or the Plan other than that contained in this Disclosure Statement or in the Plan itself.

## III.    GENERAL OVERVIEW OF THE PLAN

### A.    General Overview.

The following is a general overview of the provisions of the Plan, and is qualified in its entirety by reference to the provisions of the Plan itself.  The Plan's treatment of each Class of Claims is summarized in the following table:

| Class | Description | Treatment |
|-------|-------------|-----------|
| Class 1 | Specialized Loan Servicing Secured Claim | Unimpaired.  No solicitation required. |
| Class 2 | Other Secured Claims | Unimpaired.  No solicitation required. |
| Class 3 | Priority Non-Tax Claims | Unimpaired.  No solicitation required. |
| Class 4 | Excelsior Parties Claims | Impaired.  Solicitation required. |
| Class 5 | Jennifer Randazza Claims | Impaired.  Solicitation required. |
| Class 6 | General Unsecured Claims | Impaired.  Solicitation required. |

### B.    Treatment of Administrative Claims.

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Claims are not designated as a Class.  The Holders of such unclassified Claims shall be paid in full under the Plan consistent with the requirements of section 1129(a)(9)(A) of the Bankruptcy Code and are not entitled to vote on the Plan.  The amount of Administrative Claims incurred, but unpaid as of the Confirmation Hearing is estimated to be $220,000, and is comprised of the following: (i) estimated fees and costs of approximately $210,000.00 incurred by Debtor's general reorganization counsel, Larson Zirzow & Kaplan, LLC; (ii) estimated fees and costs of approximately $10,000.00 incurred by Debtor's bookkeeper.  The foregoing total amount is an estimate only.

2

Each Allowed Administrative Claim shall be paid by Reorganized Debtor (or otherwise satisfied in accordance with its terms) upon the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; or (iv) such date as the Holder of such Claim and Reorganized Debtor shall agree upon.

**C.    Class 1: Specialized Loan Servicing Secured Claim.**

Class 1 is comprised of the Allowed Secured Claim of Specialized Loan Servicing, which includes outstanding principal of approximately $310,000.00 and as secured in the Debtor's residence located at 10955 Iris Canyon Lane, Las Vegas, Nevada 89135. Except to the extent that the Holder of a Class 1 Claim agrees to a less favorable treatment, and consistent with section 1123(b)(5) of the Bankruptcy Code, Specialized Loan Servicing shall be satisfied by treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled, including without limitation retaining any and all Liens in and to its Collateral and its Claim to the extent provided in its promissory note, deed of trust, and any and all other related loan and security documents. Class 1 is Unimpaired. The Holder of Allowed Class 1 Claim is not entitled to vote to accept or reject the Plan.

**D.    Class 2: Other Secured Claims.**

Class 2 consists of any Allowed Other Secured Claims. Except to the extent that a Creditor with an Allowed Other Secured Claim agrees to less favorable treatment, each holder of an Other Secured Claim shall be considered to be in its own separate subclass within Class 2 and each such subclass shall be deemed to be a separate Class for purposes of the Plan. Except to the extent that the holder of an Allowed Claim in Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in Class 2 shall be satisfied by, at the option of the Debtor: (i) payment in Cash by the Debtor in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court. Creditors in Class 2 are Unimpaired under the Plan. Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

**E.    Class 3: Priority Non-Tax Claims.**

Class 3 consists of all Priority Non-Tax Claims. Except to the extent that a Creditor with an Allowed Priority Non-Tax Claim agreed to less favorable treatment, each Allowed Priority Non-Tax Claim shall be paid in full by the Reorganized Debtor upon the latest of: (i) the first Business Day after the Effective Date; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the holder of such Claim and, prior to the Effective Date, Debtor, and after the Effective Date, the Reorganized Debtor, shall agree. Each Holder of a

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Priority Non-Tax Claim shall also receive on account of such Holder's Allowed Priority Non-Tax Claim payment of post-petition interest calculated at the Federal Judgment Rate unless there is an applicable contractual interest rate, in which case interest shall be paid at the contractual interest rate so long as (i) a contractual interest rate was set forth in a timely filed proof of claim or (ii) the Holder of such Claim provides written notice of such contractual interest rate to the Debtor's counsel on or before the Effective Date, and subject to the Debtor's and any other Person's right to verify or object to the existence of the asserted contractual rate of interest. Creditors in Class 3 are Unimpaired under the Plan. Holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan.

### F.      Class 4:  Excelsior Parties Claims.

Class 4 consists of the Allowed Claims of the Excelsior Parties against the Debtor. Except to the extent that the Excelsior Parties agree to less favorable treatment, Holders of Class 4 Allowed Excelsior Parties Claims will receive payment in full of their Allowed Claims in accordance with the Excelsior Settlement Agreement, in full satisfaction, settlement, release and exchange for such Allowed Excelsior Parties Claims. Confirmation of this Plan shall not alter, amend or impair the terms, conditions, rights, obligations, claims and responsibilities of the parties to the Excelsior Settlement Agreement, and that document is incorporated in full into this Plan by reference. Class 4 is Impaired under the Plan. Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

### G.      Class 5:  Jennifer Randazza Claims.

Class 5 consists of Allowed Jennifer Randazza Claims against Debtor. Except to the extent that Jennifer Randazza agrees to less favorable treatment, Holders of Class 5 Allowed General Unsecured Claims shall receive, in full satisfaction of their Allowed Claims, the payments as set forth in the Randazza Marital Settlement Documents. Confirmation of this Plan shall not alter, amend or impair the terms, conditions, rights, obligations, claims and responsibilities of the Debtor and Jennifer Randazza pursuant to the Randazza Marital Settlement Documents, and those documents are incorporated in full into this Plan by reference. Class 5 is Impaired under the Plan. Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

### H.      Class 6:  General Unsecured Claims.

Class 6 consists of Allowed General Unsecured Claims against Debtor. Except to the extent that a Creditor with an Allowed General Unsecured Claim agrees to less favorable treatment, Holders of Class 6 Allowed General Unsecured Claims may receive, in full satisfaction of their Allowed Claims, their Pro Rata share of the Debtor's monthly plan payments, if and only to the extent payments are made pursuant to the Plan pursuant to section 1129(a)(15) of the Bankruptcy Code. The Debtor does not anticipate making payments to General Unsecured Creditors in Class 6 of the Plan unless the Holder of an Allowed General Unsecured Claim files an objection to this Plan pursuant to section 1129(a)(15) of the Bankruptcy Code. If a Holder of an Allowed General Unsecured Claim in Class 6 Files a timely written objection to Confirmation of the Plan and pursuant to section 1129(a)(15) of the Bankruptcy Code, then the Debtor will either, at his option and in his sole and absolute discretion:  (a) pay in full the Allowed General Unsecured Claim from funds that are not property

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

of the Estate, or (b) make payments of his Projected Disposable Income beginning by no later than the first day of the month of the second month following the Effective Date of the Plan, and continuing each and every months thereafter for a period of five (5) years, which funds, if any, shall be distributed Pro Rata to all Holders of Allowed General Unsecured Claims. Class 6 is Impaired under the Plan. Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

### I.    Elimination of Vacant Classes.

Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## IV.    SUMMARY OF VOTING PROCESS

### A.    Who May Vote to Accept or Reject the Plan.

Generally, holders of allowed claims that are "impaired" under a plan are permitted to vote on the plan. A claim is defined by the Bankruptcy Code and the Plan to include a right to payment from a debtor. The solicitation of votes on the Plan will be sought only from those Holders of Allowed Claims whose Claims are impaired and which will receive property or rights under the Plan. As explained more fully below, to be entitled to vote, a Claim must be both "Allowed" and "Impaired."

### B.    Summary of Voting Requirements.

In order for the Plan to be confirmed, the Plan must be accepted by at least one noninsider, impaired class of claims, excluding the votes of insiders. A class of claims is deemed to have accepted a plan when allowed votes representing at least two-thirds (2/3) in amount and a majority in number of the claims of the class actually voting cast votes in favor of a plan. Debtor is soliciting votes from Holders of Allowed Claims in Classes 4 (Excelsior Party Claims), Class 5 (Jennifer Randazza Claims), and Class 6 (General Unsecured Claims). Debtor has the right to supplement this Disclosure Statement as to additional Impaired Classes, if any.

**A VOTE FOR ACCEPTANCE OF THE PLAN BY THOSE HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE IS MOST IMPORTANT. DEBTOR ASSERT THAT THE TREATMENT OF CREDITORS UNDER THE PLAN IS THE BEST ALTERNATIVE FOR CREDITORS, AND THUS DEBTOR RECOMMENDS THAT THE HOLDERS OF ALLOWED CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN DO VOTE IN FAVOR OF THE PLAN.**

## V.    INFORMATION ABOUT DEBTOR'S BUSINESS AND CHAPTER 11 CASE

### A.    Initial Proceedings in the Chapter 11 Case.

On September 11, 2015, the Debtor filed his initial bankruptcy Schedules and Statement

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

5

of Financial Affairs, which were later amended on various occasions.  On October 8, 2015, the Debtor's 341 first meeting of creditors was concluded.  By order entered on October 29, 2015, the Bankruptcy Court approved the Debtor's retention and employment of Larson & Zirzow, LLC n/k/a Larson Zirzow & Kaplan, LLC as his general reorganization counsel, and December 14, 2015, entered an order approving Sequence, Inc. as Debtor's accountant.  No request was made for the appointment of a trustee or examiner, and no official committees were formed in the case.  The Debtor claimed various exemptions on his bankruptcy Schedules, which were not objected to, and thus those exemptions are allowed on a final basis.

**B.    The Litigation and Settlements with the Excelsior Parties.**

**1.    The Litigation and Insurance Settlement.**

On or about June 10, 2009, Excelsior Media Corp., a Nevada corporation ("Excelsior") hired Mr. Randazza as its General Counsel pursuant to the terms and conditions as set forth in an Employment Agreement (the "Employment Agreement").  Marc J. Randazza, P.A., a Florida professional association, d/b/a Randazza Legal Group ("MJRPA"), also performed legal services for Liberty Media Holdings, LLC, a since dissolved California limited liability company ("Liberty California"), which was an affiliate of Excelsior.  Later in the following course of events, Liberty Media Holdings, LLC, a Nevada limited liability company ("Liberty Nevada"), which was an apparent affiliate of Liberty California, and Jason Gibson, an individual and insider of the foregoing companies ("Mr. Gibson"), were also involved in disputes with Mr. Randazza.  Excelsior, Liberty California, Liberty Nevada, and Mr. Gibson are sometimes hereinafter collectively referred to as the "Excelsior Parties."

In 2012, certain disputes arose between one or more of the parties, including but not limited to under Mr. Randazza's Employment Agreement, and disputes related to a litigation proceeding involving FF Magnat Ltd., d/b/a Oron.  As a result of these disputes, on November 15, 2012, Mr. Randazza initiated an arbitration proceeding against Excelsior, being JAMS No. 1260002283 (the "Arbitration") for various claims, and certain of the Excelsior Parties counterclaimed against him in the Arbitration.  As a further result of the foregoing disputes, on December 9, 2012, MJRPA filed an action against Liberty California in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), being Case No. A-12-673275-C (the "MJRPA State Court Litigation"), therein alleging claims for money due for legal services rendered.  Liberty California thereafter asserted various counterclaims against MJRPA in the MJRPA State Court Litigation as well.

On June 3, 2015, the Arbitrator in the Arbitration entered an *Interim Arbitration Award* (the "IAA"), which decided certain matters between the parties, but left other matters unresolved and pending further determination.  Mr. Randazza vehemently disagreed with Arbitrator Haberfeld's findings and conclusions in the IAA, and asserts that Arbitrator Haberfeld demonstrated bias, exceeded his powers, and made manifest errors of law and findings of fact.

On June 15, 2015, certain of the Excelsior Parties commenced an action in Nevada State Court, Case No. A-15-719901-C (the "State Court Confirmation Proceedings"), thereby seeking to confirm the IAA.  Mr. Randazza opposed confirmation of the IAA and also sought to vacate or modify the IAA in those same proceedings.  Prior to the Nevada State Court hearing or ruling on the parties' pending requests, and also prior to the Arbitration proceeding further or the IAA ever

6

being confirmed, Mr. Randazza filed his voluntary chapter 11 bankruptcy petition, thereby staying all pending proceedings by operation of section 362 of the Bankruptcy Code.

On November 30, 2015, certain of the Excelsior Parties commenced an adversary proceeding against Mr. Randazza in the Chapter 11 Case, being adversary proceeding no. 15-1193 (the "Excelsior Adversary Proceeding"), which, as later amended, asserted claims against Mr. Randazza to except from discharge their claimed debts owing from Mr. Randazza. In the Excelsior Adversary Proceeding, Mr. Randazza disputed both that he owed the Excelsior Parties any monies and also that to the extent he did owe any such monies, whether such claims were non-dischargeable in his Chapter 11 Case.

On December 14, 2015, the Court entered an order denying certain of the Excelsior Parties' request for relief from the automatic stay in order to proceed with the State Court Confirmation Proceedings and further proceedings in the Arbitration, thereby requiring the parties to proceed in Bankruptcy Court.

On December 29, 2015, Excelsior filed a *Proof of Claim*, being Claim No. 8 (the "Excelsior Proof of Claim") in the Debtor's Chapter 11 Case in the stated amount of in excess of $1,552,614.29. Certain of the Excelsior Parties also sought relief from the automatic stay in order to try and allow the State Court Confirmation Proceedings and the Arbitration to continue, however, by order dated December 18, 2015, the Bankruptcy Court denied such a request.

On July 7, 2016, a *Second Amended Complaint* (the "Second Amended Complaint") was filed by certain of the Excelsior Parties in the Excelsior Adversary Proceeding.

On July 22, 2016, the Bankruptcy Court entered an order (the "MJRPA Settlement Order"), thereby approving a Settlement Agreement and Mutual Release (the "MJRPA Settlement Agreement"), involving, among other parties, certain of the Excelsior Parties, Mr. Randazza, MJRPA, and Randazza Legal Group, PLLC, a Nevada professional limited liability company ("RLG"). The MJRPA Settlement Agreement provided that the MJRPA State Court Litigation was dismissed with prejudice in exchange for a payment of $205,000 paid made by MJRPA's professional liability insurance carrier, and without any admission of liability. Mr. Randazza and his related entities continued to dispute that they had any liability as part of the MJRPA Settlement Order, and further asserted that this settlement and settlement payment from the insurance carrier was simply an exhaustion of the remaining available insurance coverage proceeds and as a way for the insurance carrier to exit the situation.

By order dated October 19, 2016, the Bankruptcy Court dismissed, in part, the Second Amended Complaint filed by certain of the Excelsior Parties. On November 2, 2016, Mr. Randazza filed his *Answer* to the surviving claims in the Excelsior Adversary Proceeding, and Counterclaims (the "Counterclaims"), which Counterclaims included an objection to the Excelsior Proof of Claim filed in the Chapter 11 Case, and various other counterclaims for sums due and owing under his Employment Agreement and/or for breach of contract.

On March 14, 2017, certain of the Excelsior Parties obtained an order authorizing an examination of Mr. Randazza pursuant to Fed. R. Bankr. P. 2004 in his Chapter 11 Case, and on May 9, 2017, issued various subpoenas in conjunction therewith to Mr. Randazza for testimony and documents in that same case (collectively, the "Discovery Requests").

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

7

By order dated June 8, 2017, the Bankruptcy Court denied the Excelsior Parties' request that the IAA be confirmed in the Excelsior Adversary Proceeding.  By order dated August 2, 2017, the Bankruptcy Court granted Mr. Randazza summary judgment, in part, as to the Second Amended Complaint, thereby dismissing Liberty Nevada's nondischargeability claims, and on August 3, 2017, the Court entered a *Judgment* in favor of Mr. Randazza and against Liberty Nevada, thereby confirming the dismissal of all of Liberty Nevada's nondischargeability claims against him.

### 2.    The State Bar of Nevada Proceedings.

Subsequent to a grievance being filed by Mr. Gibson, on January 25, 2016, as amended on December 16, 2016, the Office of Bar Counsel for the State Bar of Nevada (the "Office of Bar Counsel"), filed a complaint, thereby commencing Case No. OBC15-0747 against Mr. Randazza before the State Bar of Nevada, Southern Nevada Disciplinary Board (the "Disciplinary Proceeding").  On June 5, 2018, Mr. Randazza entered into a *Conditional Guilty Plea in Exchange for a Stated Form of Discipline* (the "Plea") with the Office of Bar Counsel, thereby concluding the Disciplinary Proceeding, subject to the review and approval thereof by the Nevada Supreme Court.  On July 23, 2018, the matter was docketed as *In the Matter of Discipline of Marc J. Randazza, Bar No. 12265*, in the Nevada Supreme Court as Case No. 76453 for final approval of the Plea.  As of the filing of this Disclosure Statement, the Plea remains pending for approval before the Nevada Supreme Court.

The Plea includes Mr. Randazza pleading guilty to minor violations of Nevada Rules of Professional Conduct 5.6 and 1.8(a) as to certain interactions with Liberty California.  As and for the stated form of discipline, the Plea provided the following: (a)  Mr. Randazza would be suspended from the practice of law for twelve (12) months, *with the suspension stayed*, and to begin on the date the Nevada Supreme Court's order approving the Plea, such that his ability practice law will be uninterrupted during this time; (b) Mr. Randazza will be placed on an eighteen (18) month term of probation, with such probation also to begin on the date of the Nevada Supreme Court's order approving the Plea; (c) Mr. Randazza is required to "stay out of trouble" during the term of his probation, meaning that he will have no new grievance arising out of any new conduct during his probation resulting in the imposition of actual discipline; (d) Mr. Randazza is to complete twenty (20) hours of continuing legal education creditors during his probation all on ethics; (e) Mr. Randazza will seek the advice and approval of an independent and unaffiliated ethics attorney in the relevant jurisdiction before obtaining any conflicts of interest waivers during his probationary period; (f) Mr. Randazza will pay the costs of the bar proceedings in the amount of $2,500.00; (g) if Mr. Randazza violates any terms of his Plea, that will be grounds for the State Bar to seek tim impose the stayed portion of the suspension.

### 3.    The Global Settlement with the Excelsior Parties.

Subsequently, the Parties engaged in a settlement dialogue, which ultimately resulted in a global settlement agreement (the "Excelsior Settlement Agreement").  On February 14, 2018, the Bankruptcy Court entered an order approving the Excelsior Settlement as a fair and equitable settlement, which settlement order is a final, effective and enforceable order, and is not subject to any appeal or stay pending appeal.

The essential terms of the Excelsior Settlement Agreement are as follows.  First, Mr.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Randazza agreed to pay the Excelsior Parties the total principal sum of $40,000.00 (the "Settlement Payment") in equal monthly payments of $1,000.00 per month commencing on March 5, 2018, and by the fifth day of each and every month thereafter until the entire Settlement Sum is paid in full.  The Settlement Sum shall not accrue interest, and there shall be no penalty for any prepayment.

Second, Excelsior shall have an allowed general unsecured proof of claim in the amount of the Settlement Payment in the Chapter 11 Case, which claim, and only that claim (not the entire previous Excelsior Proof of Claim), is nondischargeable in the Chapter 11 Case by Mr. Randazza's waiver and consent thereto pursuant to section 727(a)(10) of the Bankruptcy Code. Nothing in the Excelsior Settlement Agreement was intended or should be construed as an admission or finding as to any theory of nondischargeabilty against Mr. Randazza pursuant to section 523(a) of the Bankruptcy Code.

Third, the Excelsior Parties and Mr. Randazza, and all of their related parties, exchanged mutual global releases, except for the obligations in the Excelsior Settlement Agreement itself.

Fourth, the parties agreed to various dismissals to effectuate the Excelsior Settlement Agreement, including a dismissal of the Excelsior Adversary Proceeding, a stipulation and order to modify the Excelsior Proof of Claim to the amount per the settlement, dismissal of the State Court Confirmation Proceeding, a withdrawal of the Discovery Requests, and a dismissal of the Arbitration and a vacatur of the IAA with prejudice.

Fifth, the Excelsior Settlement Agreement provides that nothing therein is intended or should be construed as impairing any applicable state bar's or office of bar counsel's pending or potential attorney disciplinary proceedings against Mr. Randazza arising out of any disputes between the Parties; *provided*, *however*, that the Excelsior Parties acknowledge and agree that any and all disputes between the parties to the Excelsior Settlement Agreement, including, but not limited to, those disputes that gave rise to Mr. Gibson's filing of the Bar Complaint with the Nevada State Bar, have been fully and finally resolved to the Excelsior Parties' satisfaction by way of this Agreement.  Notwithstanding the foregoing, the Excelsior Settlement Agreement further provided that nothing therein shall be construed to limit, in any way, the Excelsior Parties' cooperation with the Nevada State Bar in connection with the Nevada Disciplinary Proceedings.  The Excelsior Parties further agreed that to the extent they are awarded and receive any fine, restitution, or other payment or consideration arising out of any state bar disciplinary proceedings against Mr. Randazza, that such sum(s) shall be offset against any amounts that may remain owing on the Settlement Payment, with any additional balance in excess of the remaining Settlement Payment paid to Mr. Randazza within three (3) business days of receipt.

Sixth, the Excelsior Settlement Agreement provided that nothing therein is intended or should be construed as altering or affecting the Insurance Settlement as approved by the Bankruptcy Court previously, and the foregoing shall continue in full force and effect, without change.

Finally, the Excelsior Settlement Agreement provided that that agreement, and the monies paid and other consideration given by any of the parties thereunder would not constitute an admission of fault, wrongdoing or liability.

9

Since the execution and approval of the Excelsior Settlement Agreement, Mr. Randazza has been paying all sums due and owing pursuant thereto.

## C.    The Various Litigation with Crystal L. Cox.

On November 28, 2012, Mr. Randazza, as well as his wife at the time, Jennifer Randazza ("Mrs. Randazza") on behalf of themselves and their minor daughter (collectively, the "Randazzas"), filed a *Complaint* (the "2040 Complaint") against Crystal L. Cox ("Ms. Cox") in the United States District Court for the District of Nevada (the "District Court"), thereby commencing Case No. 2:12-cv-2040-JAD-PAL (the "2040 Case"). The 2040 Complaint arose out of Ms. Cox's registration and use of certain infringing internet domain names involving the Randazzas. The Randazzas' 2040 Complaint alleged the following claims for relief: (a) violation of individual cyberpiracy protections - 15 U.S.C. § 8131; (b) cybersquatting - 15 U.S.C. § 1125(d); (c) right of publicity - NRS 597.810; (d) common law right of publicity; (e) common law right of intrusion upon seclusion; and (f) civil conspiracy.

On January 3, 2013, Ms. Cox filed a counterclaim against Mr. Randazza, among many others. The Randazzas filed a motion to strike or, alternatively, to dismiss. Thereafter, Ms. Cox filed an amended counterclaim, which the Randazzas again moved to strike. On February 22, 2013, District Court Judge Gloria Navarro granted the Randazzas' motion to strike the amended counterclaim. In spite of the foregoing, however, the District Court did allow Ms. Cox to refile her allegations as a separate complaint in another case as hereinafter set forth.

On April 25, 2013, Ms. Cox also filed a non-specific motion for reconsideration of the striking of her counterclaim in the 2040 Case. On February 14, 2014, after reassignment of the 2040 Case to District Court Judge Jennifer A. Dorsey, the District Court granted in part Ms. Cox's motion for reconsideration, thereby permitting Ms. Cox to file a counterclaim against Mr. Randazza.

On February 24, 2014, Ms. Cox filed a new counterclaim against Mr. Randazza. On March 12, 2014, Mr. Randazza moved to dismiss and to strike Ms. Cox's new counterclaim. On May 21, 2014, Judge Dorsey denied the Randazzas' motion to strike and only granted their motion to dismiss Ms. Cox's counterclaims in part. The District Court also granted leave for Ms. Cox to again attempt amendment of her counterclaims against Mr. Randazza.

On June 2, 2014, Ms. Cox again sought leave to amend her counterclaim, which the parties briefed. On July 8, 2014, the District Court denied Ms. Cox's motion for leave and dismissed her abuse of process counterclaim, but permitted her claims for defamation and legal malpractice against Mr. Randazza to proceed. As a result of the foregoing, Ms. Cox's only counterclaims remaining in the 2040 Case against Mr. Randazza were for legal malpractice as plead in her February 21, 2014 counterclaim and for defamation, but as modified and edited by the Court's May 21, 2014 Order. Ms. Cox's remaining counterclaims are referred to herein as the "2040 Counterclaims."

On September 9, 2015, Ms. Cox filed a *Proof of Claim* (the "Cox Proof of Claim"), being claim No. 4-1, in Mr. Randazza's Chapter 11 Case in the amount of $10,000,000.00, and on September 30, 2015, she filed what she called an *Objection to Discharge of Debt* (the "Discharge Objection") in Mr. Randazza's Chapter 11 Case, which made the same allegations as referenced

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

10

in her 2040 Counterclaims pled in the 2040 Case, and sought to have her alleged claims held nondischargeable in Mr. Randazza's Chapter 11 Case.

On October 5, 2016, Mr. Randazza instituted Adversary Proceeding No. 16-1111 ("Adversary 16-1111") against Ms. Cox in the Bankruptcy Court, thereby objecting to the Cox Proof of Claim, a claim for declaratory relief dismissing her Discharge Objection, and claims for abuse of process and civil extortion.  Ms. Cox failed to answer or otherwise plead to Mr. Randazza's complaint.

On October 19, 2016, Mr. Randazza filed a motion to refer the entire 2040 Case to this Court, which the District Court, Judge Dorsey, granted in part on December 2, 2016, by referring only Ms. Cox's 2040 Counterclaims to this Court, not the entire 2040 Case, thus leaving Mr. Randazza's claims against Mr. Cox still pending before the District Court.  The referred 2040 Counterclaim was thereafter docketed in the Bankruptcy Court as Adversary Proceeding No. 17-1005 ("Adversary 17-1005"), and thus as a separate adversary proceeding from Adversary 16-1111.

On December 6, 2017, the Bankruptcy Court entered an order granting Mr. Randazza's motion for entry of a default judgment in Adversary 16-1111 against Ms. Cox (the "Default Order") and a *Judgment by Default* (the "Default Judgment") , which held, among other matters, as follows:  (a) disallowing the Cox Proof of Claim in full; (b) dismissing Ms. Cox's Discharge Objection filed against Mr. Randazza with prejudice; and (c) regarding Mr. Randazza's claim for abuse of process against Ms. Cox, awarding Mr. Randazza compensatory damages in the amount of $411,582.59 and punitive damages in the amount of $41,158.00, for a total judgment in favor of Mr. Randazza and against Ms. Cox in the amount of $452,740.59.  Mr. Randazza is considering potential collection activities against Ms. Cox on the Default Judgment, however, the potential for recovery from her is unknown and potentially uncertain.

On April 26, 2018, the United States Bankruptcy Appellate Panel for the Ninth Circuit entered an order dismissing an appeal Ms. Cox had filed from various of the Bankruptcy Court's decisions.  On April 30, 2018, the Bankruptcy Court entered an order in Adversary 16-1111 granting Mr. Randazza's motion to dismiss or strike Ms. Cox's motion to reconsider the Default Judgment and request to set aside the default he had obtained against her.  Also on April 30, 2018, the Bankruptcy Court entered an order granting Mr. Randazza's motion for summary judgment in Adversary 17-1005, thereby dismissing her 2040 Counterclaim with prejudice, and further granting Mr. Randazza's request that Ms. Cox's asserted claims be dismissed with prejudice due to her failure to appear or prosecute the action pursuant to the Court's prior order in the case.

As a result of the foregoing, all bankruptcy-related matters involving Ms. Cox are fully and finally concluded in Mr. Randazza's favor pursuant to final orders of the Bankruptcy Court, and the only matters that remain between the parties are Mr. Randazza's own claims against Ms. Cox that remain pending in the 2040 Case pending in District Court, and a related appeal before the United States Court of Appeals for the Ninth Circuit arising out of the District Court's prior decision involving that matter.  Mr. Randazza may continue pursuing such matters against Ms. Cox and/or any others responsible.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

11

**D.** **The Refinancing and Sale of the Magnolia Property.**

Magnolia Holding 19, L.L.C., a Nevada limited liability company ("Magnolia"), was an entity formed in 2014 for the purpose of acquiring an office building in which RLG could operate its law practice in Las Vegas. Pursuant to its operating agreement, Magnolia had been managed by two managers since 2015, Ronald D. Green Jr. ("Mr. Green"), who is also a licensed Nevada attorney that worked for RLG, and RLG itself. The membership interests in Magnolia were as follows: RLG owned 38.5%, Mrs. Randazza owned 38.5% as her sole and separate property, and Mr. Green owned the remaining 23%. Mrs. Randazza is not a debtor in this Chapter 11 Case, and the Debtor and Mrs. Randazza had been parties to a longstanding pre-nuptial agreement since 2009, which provides for them to own and hold their own sole and separate property. Prior to the parties' marriage and continuing during the course of their marriage, Mrs. Randazza amassed certain savings, which, pursuant to the parties' pre-nuptial agreement, were and remained her sole and separate property.

On or about June 30, 2015, Magnolia closed on the purchase of an office building located at 4035 S. El Capitan Way, Las Vegas, Clark County, Nevada 89147, having APN 163-17-415-008 for a total purchase price of $875,000 (the "Magnolia Property"). Magnolia made a down payment for the purchase of the Property, and it financed the balance of the purchase price with a loan (the "BofA Loan") with Bank of America, N.A. ("BofA"). BofA secured repayment of the BofA Loan by recording a deed of trust on the Magnolia Property in the Official Records of the County Recorder, Clark County, Nevada. As additionally security for repayment of the BofA Loan, the Debtor and MJRPE executed personal guarantys thereof.

Pursuant to the BofA Loan documents, BofA deemed the Debtor's filing of his Chapter 11 Case as an "event of default" thereunder. Quite unnecessarily, BofA's counsel with the law firm of Wilson, Elser Moskowitz Edelman & Dicker, thereafter appeared via telephone at numerous hearings in the Debtor's nondischargeability and related proceedings involving the Excelsior Parties. Pursuant to the BofA loan documents, BofA then demanded Magnolia reimburse it for its attorneys' fees and costs incurred in connection with Debtor's bankruptcy proceedings, which eventually became exorbitant and unreasonable. On November 18, 2016, Magnolia received a demand letter from BofA, which indicated that BofA's counsel has amassed in excess of an astounding $22,000 in attorney's fees and costs to "monitor" the Debtor's Chapter 11 Case, simply because the Debtor was one of two guarantors on the BofA Loan to Magnolia. Magnolia provided various financial information and disclosures to BofA demonstrating Magnolia's financial wherewithal, however, BofA refused any negotiation and accelerated the loan balance and asserted that it would commence legal action by February 28, 2017 unless BofA was paid in full.

At this point, and believing it had no choice but to seek a refinancing of the BofA Loan given the unreasonable amounts of attorney's fees it was claiming apparently as a result of BofA's counsel's unnecessary billings, Magnolia began actively exploring obtaining replacement financing for the Property, and so as to remove BofA as the lender as quickly as possible. On March 1, 2017, the Court entered an order authorizing and approving a replacement loan to takeout BofA from a number of sources, including from Robert Atlas ("Mr. Atlas"), who is an unaffiliated third party, Mrs. Randazza from her sole and separate property, and Cathy Brochey ("Mrs. Brochey"), who is Mrs. Randazza's mother. Essentially, the loan from Mr. Atlas was a

12

short term "bridge" loan, and critically, unlike the BofA loan, did not require any personal guaranty from the Debtor, RLG, or any other person. The Magnolia Property was later sold on or about March 26, 2018 and the loans referenced above were repaid in full.

### E.    The Marital Settlement Agreement with Jennifer Randazza.

As a result of various disputes and differences, Mr. Randazza and his wife, Mrs. Randazza, chose to live separate and apart from one another. On November 30, 2017, Mr. Randazza and his wife entered into a Marital Settlement Agreement, as later amended on December 8, 2017, and again on May 24, 2018 (collectively, the "Randazza Marital Settlement Agreement"), a true and correct copy of which is attached as **Exhibit 4**. The Randazza Martial Settlement Agreement provided for a full and final adjustment of their property rights, interests and claims against each other, including all issues regarding the case and custody of their two minor children, as well as their support and maintenance of the parties, with each party releasing and forever discharging the other, subject to approval of the applicable Nevada state court and the Bankruptcy Court of such agreement.

The principal terms of the Randazza Marital Settlement Agreement that are relevant to this Chapter 11 Case, including the following: (a) the Randazzas will share joint physical custody on an equal time share basis of their two minor children; (b) Mr. Randazza is to pay $2,230.00 per month as child support, among other health and medical obligations, until the children turn eighteen; (c) as alimony, Mrs. Randazza is to receive $2,000.00 per month for the first 12 months, then $1,500.00 per month for the next 12 months, then $1,000.00 per month for the 12 months after that, subject to potential reduction, and other terms and conditions; (d) the Randazzas also engaged in an equitable split of their remaining property. The foregoing is only a generally summary, and is qualified in its entirety by the terms and conditions of the Randazza Marital Settlement Agreement.

On December 26, 2017, the Randazza submitted a *Joint Petition for Summary Decree of Divorce* to the Family Court of the Eight Judicial District Court, Clark County, Nevada (the "Family Court"), and on December 29, 2017, the Family Court entered a *Decree of Divorce* (the "Randazza Divorce Decree"). The final approval of the Randazza Marital Settlement Agreement remains subject to final approval of the Bankruptcy Court, which is being sought as part of the Plan.

### F.    The Mediation and Settlement with Clayton Douglas.

On December 22, 2015, Clayton Douglas ("Mr. Douglas") filed a proof of claim (the "Douglas Proof of Claim") in the Debtor's Chapter 11 Case, being Claim No. 7, in the amount of $1,832,792.59 as a general unsecured claim. The Douglas Proof of Claim was based on Mr. Randazza's representation, through his law firm, of Mr. Douglas, with respect to an arbitration matter in the International Centre for Dispute Resolution in the matter of Serenivision, Inc. v. Vivera and Mr. Douglas, Case No. 50-20-1400-0207, which resulted in a Final Award of $1,755,050.34 against Mr. Douglas on May 22, 2015 (the "Douglas Arbitration Decision"). In particular, the Proof of Claim asserted a claim for legal malpractice as a result of the Douglas Arbitration Decision.

On January 12, 2017, the Court entered an order approving a stipulation between the

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

13

parties, thereby allowing Mr. Douglas to proceed to name the Debtor nominally to pursue any and all applicable malpractice insurance policies and/or insurance coverage that may exist as a result of the Douglas Arbitration Decision and/or the Douglas Proof of Claim.  On or about February 8, 2018, the California Second District Court of Appeals affirmed the Douglas Arbitration Decision.

After the confirmation of the Douglas Arbitration Decision in California, and because of the availability of certain potential insurance coverage, Mr. Douglas and Mr. Randazza engaged in a mediation regarding the Douglas Proof of Claim, which mediation eventually led to a proposed settlement and resolution of the Douglas Proof of Claim through a payment of $50,000.00 from available insurance, and without any payment from the Debtor.  In June 2018, the parties entered into a Release and Settlement Agreement (the "Douglas Settlement Agreement"), which is subject to approval by the Bankruptcy Court.  In August 2018, the Debtor filed a motion to approve the Douglas Settlement Agreement, which remained pending as of the filing of this Disclosure Statement.  Pursuant to the Douglas Settlement Agreement, the parties agreed to exchange mutual general releases in exchange for the insurance company's payment to Mr. Douglas of the foregoing settlement sum.  As a result, subject to the Court's approval of the Douglas Settlement Agreement, the Douglas Proof of Claim will be satisfied in full, and shall be expunged from the Debtor's Chapter 11 Case.

### G.    The JAMS and Arbitration Order to Show Cause.

Pursuant to the Excelsior Settlement Agreement as approved by the Bankruptcy Court, counsel for the Excelsior Parties forwarded the form of dismissal order (the "Arbitration Dismissal Order") to JAMS and the arbitrator of the Arbitration, Stephen Haberfeld ("Arbitrator Haberfeld") on or about May 29, 2018.  On June 13, 2018, the parties received an email indicated that Arbitrator Haberfeld refused to endorse the Arbitration Dismissal Order, and instead issued what he called  an *Order to Show Cause Whether or Not Interim Arbitration Award Should be Subject to Vacatur, With Prejudice, as Requested by Settling Parties* (the "Arbitration OSC").

Mr. Randazza asserted that Arbitrator Haberfeld's refusal to enter the Arbitration Dismissal Order, thereby dismissing the Arbitration and vacating the IAA entered therein, was not in compliance with and indeed in contempt of the Excelsior Settlement Order, and further that Arbitrator Haberfeld's entry of the Arbitration OSC was in violation of the automatic stay in his Chapter 11 Case.  On June 25, 2018, Mr. Randazza filed an application for an order to show cause with the Bankruptcy Court seeking the foregoing relief against JAMS and Arbitrator Haberfeld, which matter remains pending as of the filing of this Disclosure Statement.  On June 26, 2018, the Bankruptcy Court entered an order to show cause (the "Bankruptcy Court OSC") directing JAMS and Arbitrator Haberfeld to respond to the mater.  On June 29, 2018, Arbitrator Haberfeld entered an Order Withdrawing June 11, 2018 Order to Show Cause, which withdrew his prior Arbitration OSC, but without prejudice.  On August 2, 2018, and pursuant to stipulation between Debtor, JAMS, and Arbitrator Haberfeld, the Bankruptcy Court entered an order directing the dismissal of the Arbitration and the vacatur of the IAA as previously approved in the Excelsior Settlement Order.  As a result, the IAA has no legal force and effect, and the Arbitration has been closed with no further proceedings therein to occur.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

14

### H. The Debtor's Current Status.

The Debtor is and remains an attorney licensed to practice law in various jurisdictions. The Debtor continues to work for the law firm of RLG, which has various offices including but not limited to 2764 Lake Sahara Drive, Suite 109, Las Vegas, Nevada 89117. The Debtor continues to draw a salary as compensation from RLG.

## VI. DETAILED DESCRIPTION OF THE PLAN

### A. Means of Implementing the Plan.

#### 1. Revesting of Assets.

On and after the Effective Date, all of Debtor's assets shall vest in Reorganized Debtor. As permitted by section 1123(a)(5)(B) of the Bankruptcy Code, on the Effective Date, all of Debtor's Assets, including the Litigation Claims and right, title, and interest being assumed by Reorganized Debtor in the assumed Executory Contracts shall vest in Reorganized Debtor. Thereafter, Reorganized Debtor may operate his business and may use, acquire, and dispose of such property free and clear of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. Except as specifically provided in the Plan or the Confirmation Order, as of the Effective Date, all property of Reorganized Debtor shall be free and clear of all Claims.

#### 2. Notice of Effectiveness.

When all of the steps for effectiveness have been completed, Reorganized Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential Holders of Administrative Claims known to Reorganized Debtor (whether or not disputed), a notice of Effective Date of Plan. The notice of Effective Date of Plan shall include notice of the Administrative Claim Bar Date.

#### 3. No Governance Action Required.

As of the Effective Date: (i) the adoption, execution, delivery, and implementation or assignment of all contracts, leases, instruments, releases, and other agreements related to or contemplated by the Plan; and (ii) the other matters provided for under or in furtherance of the Plan involving corporate action to be taken by or required of Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by Debtor.

### B. Executory Contracts and Unexpired Leases.

#### 1. Executory Contracts and Unexpired Leases.

Except for Executory Contracts and Unexpired Leases specifically addressed in the Plan or set forth on the schedule of assumed Executory Contracts and Unexpired Leases attached as Schedule 5.1 to the Plan (which may be supplemented and amended up to the date that the Bankruptcy Court enters the Confirmation Order), all Executory Contracts and Unexpired Leases

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

that exist on the Confirmation Date shall be deemed rejected by Debtor on the Effective Date. Debtor, up to the Effective Date, may modify the schedule of rejected executory contracts, with notice to the non-debtor party to the contract affected by such modification.

**2.      Approval of Assumption or Rejection.**

Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to section 365(a) of the Bankruptcy Code, of the assumption by Reorganized Debtor of each Executory Contract and Unexpired Lease to which Debtor is a party that is not listed on Schedule 5.1, not otherwise provided for in the Plan, and neither assigned, assumed and assigned, nor rejected by separate order of the Bankruptcy Court prior to the Effective Date; and (ii) rejection by Debtor of each Executory Contract and Unexpired Lease to which Debtor is a party that is not listed on Schedule 5.1.  Upon the Effective Date, each counter party to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to an assumption contemplated by section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption.  To the extent applicable, all Executory Contracts or Unexpired Leases of Reorganized Debtor assumed pursuant to Section 5 shall be deemed modified such that the transactions contemplated by the not be a "change of control," regardless of how such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by confirmation of the Plan.

**3.      Cure of Defaults.**

Reorganized Debtor shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to Section 5 of the Plan upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by Debtor, and after the Effective Date, Reorganized Debtor; or (iii) the fourteenth (14th) Business Day after the entry of a Final Order resolving any dispute regarding: (a) a Cure amount; (b) the ability of Reorganized Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code; or (c) any matter pertaining to assumption, assignment, or the Cure of a particular Executory Contract or an Unexpired Lease.

**4.      Objection to Cure Amounts.**

Any party to an Executory Contract or Unexpired Lease who objects to the Cure amount determined by Debtor to be due and owing must file and serve an objection on Debtor's counsel no later than thirty (30) days after the Effective Date.  Failure to file and serve a timely objection shall be deemed consent to the Cure amounts paid by in accordance with Section 5 of the Plan.  If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of Reorganized Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

### 5.    Confirmation Order.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions described in Section 5 of the Plan pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  Notwithstanding the forgoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease, the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption by Debtor.

### 6.    Post-Petition Date Contacts and Leases.

Executory Contracts and Unexpired Leases entered into and other obligations incurred after the Petition Date by Debtor shall be assumed by Debtor on the Effective Date.  Each such Executory Contract and Unexpired Lease shall be performed by Debtor or Reorganized Debtor, as applicable, in the ordinary course of its business.

### 7.    Bar Date for Rejection Damages Claims.

All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than thirty (30) days after the Effective Date. Any Claim not filed within such time shall be forever barred.

### C.    Manner of Distribution of Property Under the Plan.

Reorganized Debtor shall be responsible for making the distributions described in the Plan.  Except as otherwise provided in the Plan or the Confirmation Order, the Cash necessary for Reorganized Debtor to make payments pursuant to the Plan may be obtained from existing Cash balances, Debtor's earnings and/or other exempt assets.

Reorganized Debtor shall maintain a record of the names and addresses of all Holders of Allowed General Unsecured Claims as of the Effective Date for purposes of mailing Distributions to them.  Reorganized Debtor may rely on the name and address set forth in Debtor's Schedules and/or Proofs of Claim as being true and correct unless and until notified in writing.

### D.    Conditions to Confirmation of the Plan.

### 1.    Conditions to Confirmation.

The Confirmation Order shall have been entered and be in form and substance reasonably acceptable to Debtor.

### 2.    Conditions to Effectiveness.

The following are conditions precedent to occurrence of the Effective Date: (1) The Confirmation Order shall be a Final Order, except that Debtor reserves the right to cause the

17

Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order; (2) No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal; and (3) All documents necessary to implement the transactions contemplated by the Plan shall be in form and substance reasonably acceptable to Debtor.

### 3.    Waiver of Conditions.

Debtor, in his sole discretion, may waive any and all of the other conditions set forth in the Plan and specifically <u>Sections 9.1 and 9.2</u> of the Plan without leave of or order of the Bankruptcy Court and without any formal action.

## VII.    <u>RISK FACTORS</u>

In addition to risks discussed elsewhere in this Disclosure Statement, the Plan involves the following risks, which should be taken into consideration.

### A.    Debtor Has No Duty to Update.

The statements in this Disclosure Statement are made by as of the date hereof, unless otherwise specified herein.  The delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date.  Debtor has no duty to update this Disclosure Statement unless ordered to do so by the Bankruptcy Court.

### B.    Information Presented is Based on Debtor's Records and is Unaudited.

While Debtor has endeavored to present information fairly and accurately in this Disclosure Statement, there is no assurance that Debtor's books and records upon which this Disclosure Statement is based are complete and accurate.  The financial information contained herein has not been audited.

### C.    Projections are Not Assured and Actual Results Will Vary.

Certain information in this Disclosure Statement is, by nature, forward looking, and contains estimates and assumptions which might ultimately prove to be incorrect, and projections which may differ materially from actual future results.  There are uncertainties associated with all assumptions, projections, and estimates, and they should not be considered assurances or guarantees of the amount of Claims in the various Classes that will be allowed.  The allowed amount of Claims in each Class, as well as Administrative Claims, could be significantly more than projected, which in turn, could cause the value of Distributions to be reduced or to be tendered over a longer period of time than anticipated.

### D.    No Legal or Tax Advice is Provided to You by this Disclosure Statement.

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice.  Each Creditor should consult his, her, or its own legal counsel and accountant as to legal, tax, and other matters concerning his, her, or its Claim.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

### E.    No Admissions Made.

Nothing contained herein shall constitute an admission of any fact or liability by any party (including Debtor) or shall be deemed evidence of the tax or other legal effects of the Plan on Debtor or on Holders of Claims.

### F.    No Waiver of Right to Object or to Recover Transfers and Estate Assets.

A Creditor's vote for or against the Plan does not constitute a waiver or release of any claims or rights of Debtor (or any other party in interest) to object to that Creditor's Claim, or recover any preferential, fraudulent, or other voidable transfer or Estate assets, regardless of whether any claims of Debtor or his Estate is specifically or generally identified herein.

### G.    Bankruptcy Law Risks and Considerations.

#### 1.    Confirmation of the Plan is Not Assured.

Confirmation requires, among other things, a finding by the Bankruptcy Court that it is not likely there will be a need for further financial reorganization and that the value of distributions to dissenting members of Impaired Classes of Creditors would not be less than the value of distributions such Creditors would receive if Debtor filed for liquidation under chapter 7 of the Bankruptcy Code.

Although Debtor believe that the Plan will not be followed by a need for further financial reorganization and that dissenting members of Impaired Classes of Creditors will receive distributions at least as great as they would receive in a liquidation under chapter 7, there can be no assurance that the Bankruptcy Court will conclude that this test has been met.

Although Debtor believes the Plan satisfies all additional requirements for Confirmation, the Bankruptcy Court might not reach that conclusion.  It is also possible that modifications to the Plan will be required for confirmation and that such modifications would necessitate a resolicitation of votes if the modifications are material.

#### 2.    The Effective Date Might Be Delayed or Never Occur.

There is no assurance as to the timing of the Effective Date or that it will occur.  If the conditions precedent to the Effective Date have not occurred or been waived within the prescribed time frame, the Confirmation Order will be vacated.  In that event, the Holders of Claims would be restored to their respective positions as of the day immediately preceding the Confirmation Date, and Debtor's obligations generally would remain unchanged as of such day.

#### 3.    Allowed Claims in the Various Classes May Exceed Projections.

Debtor has projected the amount of Allowed Claims in each Class in the Best Interests Analysis.  Certain Classes, and the Classes below them in priority, could be affected by the allowance of Claims in an amount that is greater than projected.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

19

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**4.     No Representations Outside of this Disclosure Statement Are Authorized.**

No representations concerning or related to Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with this Disclosure Statement should not be relied upon by you in arriving at your decision.

**H.     Risks Related to Debtor's Business Operations.**

If the Chapter 11 Case continues for a prolonged period of time, the proceedings could adversely affect Debtor's business and operations.  The longer the Chapter 11 Case continues, the more likely it is that parties and clients could lose confidence in Debtor's ability to successfully reorganize his business, the Debtor will be required to spend a significant amount of time and effort dealing with the reorganization instead of focusing exclusively on business operations, and the Debtor will be required to incur substantial costs for professional fees and other expenses associated with the proceedings.

**I.     Risks Related to State Bar Attorney Disciplinary Proceedings.**

As of the filing of the Disclosure Statement, the Debtor remains subject to Disciplinary Proceedings before the Office of Bar Counsel.  Although the Please has been tendered to the Nevada Supreme Court for approval, there is no guarantee that the Court will approve the Plea to resolve that proceeding, and if it does not, then other or additional discipline could be imposed against Mr. Randazza, which could interfere with his ability to practice law, and thus to earn a living as needed in order to pay his obligations under the Plan and related documents.

**VIII.     POST EFFECTIVE DATE OPERATIONS AND PROJECTIONS**

**A.     Summary of Title to Property and Dischargeability.**

**1.     Vesting of Assets.**

Subject to the provisions of the Plan, pursuant to Section 4.1 of the Plan and as permitted by section 1123(a)(5)(B) of the Bankruptcy Code, all of Debtor's assets shall be transferred to Reorganized Debtor on the Effective Date.  As of the Effective Date, all such property shall be free and clear of all Liens and Claims except as otherwise provided herein.  On and after the Effective Date, Reorganized Debtor may operate his business and may use, acquire, and dispose of property and compromise or settle any Claim without the supervision of or approval of the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or the Confirmation Order.

**2.     Preservation of Avoidance Actions and Litigation Claims.**

In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, all Litigation Claims shall be assigned and transferred to

20

Reorganized Debtor pursuant to <u>Section 4.1</u> of the Plan. Notwithstanding the foregoing, on and after the Effective Date, the prosecution of the Litigation Claims lies in the sole and absolute discretion of Reorganized Debtor.

There may also be other Litigation Claims which currently exist or may subsequently arise that are not set forth in this Disclosure Statement because the facts underlying such Litigation Claims are not currently known or sufficiently known by Debtor. The failure to list any such unknown Litigation Claim in the Disclosure Statement is not intended to limit the rights of Debtor or Reorganized Debtor to pursue any unknown Litigation Claim to the extent the facts underlying such unknown Litigation Claim become more fully known in the future. Furthermore, any potential net proceeds from Litigation Claims identified in the Disclosure Statement or any notice filed with the Bankruptcy Court, or which may subsequently arise or otherwise be pursued, are speculative and uncertain.

Unless Litigation Claims against any individual or entity are expressly waived, relinquished, released, compromised, or settled by the Plan or any Final Order, Debtor expressly reserves for his benefit, and the benefit of Reorganized Debtor, all Litigation Claims, including, without limitation, all unknown Litigation Claims for later adjudication and therefore no preclusion doctrine (including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches) shall apply to such Litigation Claims after the confirmation or consummation of the Plan.

In addition, Debtor expressly reserves for his benefit, and the benefit of Reorganized Debtor, the right to pursue or adopt any claims alleged in any lawsuit in which Debtor is a defendant or an interested party, against any individual or entity, including plaintiffs and co-defendants in such lawsuits.

### 3.    Discharge and Potential Administrative Closure.

Confirmation of the Plan does not discharge the Debtor of any debts until the Bankruptcy Court grants him a Discharge pursuant to section 1141(d)(5) of the Bankruptcy Code. Notwithstanding the foregoing, for the avoidance of doubt, nothing herein is intended or should be construed as granting any Creditor relief from Bankruptcy Rules 4004(a) and 4007(c), and the deadline for filing a complaint for exception to or denial of the Debtor's discharge or of the dischargeability of any debt or Claim pursuant to sections 523(c) and 727 of the Bankruptcy Code.

After the Effective Date, but prior to the entry of a Discharge, the Debtor may seek to administratively close his Chapter 11 Case and prior to completion of his Plan payments and without prejudice to his seeking to reopen the Chapter 11 Case at a later date, and without the payment of any reopening fee pursuant to 28 U.S.C. § 1930 to the Clerk of Court, in order to seek the entry of a Discharge at the appropriate time.

### 4.    Exculpation.

***Neither the Debtor nor any of his Representatives shall have or incur any liability to any Holder of a Claim against the Debtor, or any other party-in-interest, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter***

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1    ***11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, except and
2    solely to the extent such liability is based on fraud, gross negligence or willful misconduct.
     The Debtor and his Representatives shall be entitled to reasonably rely upon the advice of
3    counsel with respect to any of their duties and responsibilities under the Plan or in the context
     of the Chapter 11 Case.  No Holder of a Claim against Debtor, or any other party-in-interest,
4    including their respective Representatives, shall have any right of action against the Debtor or
5    any of his Representatives, for any act, omission, transaction or other occurrence in
     connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of
6    confirmation of the Plan, the consummation or administration of the Plan, except to the
     extent arising from fraud, gross negligence or willful misconduct.  Nothing in this Section
7    shall be deemed an exculpation by the Debtor or any of his Representatives for any acts,
     omissions, transactions, events or other occurrences taking place after the Effective Date.***

8    **B.     Post-Confirmation Reporting and Quarterly Fees to the U.S. Trustee.**

9
10   Prior to the Effective Date, Debtor, and after the Effective Date, Reorganized Debtor,
     shall pay all quarterly fees payable to the U.S. Trustee consistent with the sliding scale set forth
11   in 28 U.S.C. § 1930(a)(6) and the applicable provisions of the Bankruptcy Code and Bankruptcy
12   Rules.  These fees accrue throughout the pendency of the Chapter 11 Case, until entry of a final
     decree. U.S. Trustee fees paid prior to confirmation of the Plan will be reported in operating
13   reports required by sections 704(8), 1106(a)(1), and 1107(a) of the Bankruptcy Code, as well as
     the U.S. Trustee Guidelines.  All U.S. Trustee quarterly fees accrued prior to confirmation of the
14   Plan will be paid on or before the Effective Date pursuant to section 1129(a)(12) of the
     Bankruptcy Code.  All U.S. Trustee fees accrued post-confirmation will be timely paid on a
15   calendar quarterly basis and reported on post-confirmation operating reports.  Final fees will be
     paid on or before the entry of a final decree in the Chapter 11 Case.
16
     **C.     Certain Federal Income Tax Consequences.**
17
18   **THE FOLLOWING SUMMARY DOES NOT CONSTITUTE EITHER A TAX
     OPINION OR TAX ADVICE TO ANY PERSON.   NO REPRESENTATIONS
19   REGARDING THE EFFECT OF IMPLEMENTATION OF THE PLAN ON
     INDIVIDUAL CREDITORS ARE MADE HEREIN OR OTHERWISE.  RATHER, THE
20   TAX DISCLOSURE IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.  ALL
     CREDITORS ARE URGED TO CONSULT THEIR RESPECTIVE TAX ADVISORS
21   REGARDING THE TAX CONSEQUENCES OF THE PLAN.**

22   Creditors and any Person affiliated with the foregoing are strongly urged to consult their
     respective tax advisors regarding the federal, state, local, and foreign tax consequences which
23   may result from the confirmation and consummation of the Plan.  This Disclosure Statement
     shall not in any way be construed as making any representations regarding the particular tax
24   consequences of the confirmation and consummation of the Plan to any Person.  This Disclosure
     Statement is general in nature and is merely a summary discussion of potential tax consequences
25   and is based upon the Internal Revenue Code of 1986, as amended (the "IRC"), and pertinent
26   regulations, rulings, court decisions, and treasury decisions, all of which are potentially subject to
     material and/or retroactive changes. Under the IRC, there may be federal income tax
27   consequences to Debtor, his Creditors, and/or any Persons affiliated therewith as a result of

28

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

22

confirmation and consummation of the Plan.

Upon the confirmation and consummation of the Plan, the federal income tax consequences to Creditors and their affiliates arising from the Plan will vary depending upon, among other things, the type of consideration received by the Creditor in exchange for its Claim, whether the Creditor reports income using the cash or accrual method of accounting, whether the Creditor has taken a "bad debt" deduction with respect to its Claim, whether the Creditor received consideration in more than one tax year, and whether the Creditor is a resident of the United States.  If a Creditor's Claim is characterized as a loss resulting from a debt, then the extent of the deduction will depend on whether the debt is deemed wholly worthless or partially worthless, and whether the debt is construed to be a business or nonbusiness debt as determined under the 26 U.S.C. § 166, and/or other applicable provisions of the Internal Revenue Code.

**CREDITORS SHOULD CONSULT THEIR TAX ADVISOR REGARDING THE TAX TREATMENT (INCLUDING FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES) OF THEIR RESPECTIVE ALLOWED CLAIMS.    THIS DISCLOSURE IS NOT A SUBSTITUTE FOR TAX PLANNING AND SPECIFIC ADVICE FOR PERSONS AFFECTED BY THE PLAN.**

## IX.    CONFIRMATION OF THE PLAN

### A.    Confirmation of the Plan.

Pursuant to section 1128(a) of the Bankruptcy Code, the Bankruptcy Court will hold hearings regarding confirmation of the Plan at the U.S. Bankruptcy Court, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101, on **November 7, 2018, at 1:30 p.m.**  To the extent necessary, the Bankruptcy Court will schedule additional hearing dates.

### B.    Objections to Confirmation of the Plan.

Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to confirmation of a plan.  Any objections to confirmation of the Plan must be in writing, must state with specificity the grounds for any such objections, and must be timely filed with the Bankruptcy Court and served upon Debtor's counsel at the following address:

LARSON ZIRZOW & KAPLAN, LLC
Attn: Matthew C. Zirzow, Esq.
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
(702) 382-1170 Telephone
(702) 382-1169 Facsimile
Email: mzirzow@lzklegal.com

For the Plan to be confirmed, the Plan must satisfy the requirements stated in section 1129 of the Bankruptcy Code.  In this regard, the Plan must satisfy, among other things, the following requirements.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1

### 1.    Best Interest of Creditors and Liquidation Analysis.

Pursuant to section 1129(a)(7) of the Bankruptcy Code, for the Plan to be confirmed, it must provide that Creditors will receive at least as much under the Plan as they would receive in a liquidation of Debtor under chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test with respect to each impaired Class requires that each Holder of an Allowed Claim of such Class either: (i) accepts the Plan; or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if Debtor liquidated under chapter 7 of the Bankruptcy Code. The Bankruptcy Court will determine whether the value received under the Plan by the Holders of Allowed Claims in each Class of Creditors equals or exceeds the value that would be allocated to such Holders in a liquidation under chapter 7 of the Bankruptcy Code. Debtor believes that the Plan meets the Best Interest Test and provides value which is not less than that which would be recovered by each such holder in a chapter 7 bankruptcy proceeding.

Generally, to determine what Holders of Allowed Claims in each impaired Class would receive if Debtor were liquidated, the Bankruptcy Court must determine what funds would be generated from the liquidation of Debtor's Assets and properties in the context of a chapter 7 liquidation case, which for unsecured creditors would consist of the proceeds resulting from the disposition of the Debtor's Assets, including the unencumbered Cash held by Debtor at the time of the commencement of the liquidation case. Such Cash amounts would be reduced by the costs and expenses of the liquidation and by such additional Administrative Claims and Priority Claims as may result from the termination of Debtor's business and the use of chapter 7 for the purpose of liquidation.

In a chapter 7 liquidation, Holders of Allowed Claims would receive distributions based on the liquidation of the non-exempt assets of Debtor. Such assets would include the same assets being collected and liquidated under the Plan. However, the net proceeds from the collection of property of the Estate available for distribution to Creditors would be reduced by any commission payable to the chapter 7 trustee and the trustee's attorney's and accounting fees, as well as the administrative costs of the chapter 11 estate (such as the compensation for chapter 11 professionals). The Estate has already absorbed much of the cost of realizing upon Debtor's Assets. In a chapter 7 case, the chapter 7 trustee would be entitled to seek a sliding scale commission based upon the funds distributed by such trustee to creditors, even though Debtor has already incurred some of the expenses associated with generating those funds. Accordingly, there is a reasonable likelihood that Creditors would "pay again" for the funds accumulated by Debtor because the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed from the Estate.

It is further anticipated that a chapter 7 liquidation would result in significant delay in the payment, if any, to Creditors. Among other things, a chapter 7 case could trigger a new bar date for filing Claims that would be more than ninety (90) days following conversion of the Chapter 11 Cases to chapter 7. Hence, a chapter 7 liquidation would not only delay distribution but raises the prospect of additional claims that were not asserted in the Chapter 11 Case. Moreover, Claims that may arise in the chapter 7 case or result from the Chapter 11 Case would be paid in full from the Assets before the balance of the Assets would be made available to pay pre-chapter 11 Allowed Priority Claims and Allowed General Unsecured Claims.

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

The distributions from the Assets would be paid Pro Rata according to the amount of the aggregate Claims held by each Creditor. Debtor believes that the most likely outcome under chapter 7 would be the application of the "absolute priority rule." Under that rule, no junior Creditor may receive any distribution until all senior Creditors are paid in full, with interest.

As set forth in the Liquidation Analysis and accompanying notes annexed hereto as **Exhibit 3**, Debtor has determined that confirmation of the Plan will provide each Holder of a Claim in an Impaired Class with no less of a recovery than he/she/it would receive if Debtor were liquidated under a chapter 7. The Liquidation Analysis sets forth Debtor's best estimates as to value and recoveries in the event that the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code and Debtor's Assets are liquidated. In a chapter 7 case, the chapter 7 trustee must liquidate the Debtor's non-exempt assets and distribute the proceeds thereof to holders of allowed claims.

As evidenced by the Liquidation Analysis and the accompanying notes annexed thereto, the value provided under the Plan to the Holders of Claims in the Impaired Classes is equal to or better than they would receive under a chapter 7 liquidation. Thus, Debtor strongly encourages all Impaired Classes to vote in favor of confirmation of the Plan.

### 2. Feasibility.

The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of Debtor (the "Feasibility Test"). For the Plan to meet the Feasibility Test, the Bankruptcy Court must find by a preponderance of the evidence that Debtor will possess the resources and earnings necessary to meet his obligations under the Plan. As demonstrated by the previous discussion of Debtor's financial condition, Debtor's employment generates cash flow to meet his payment obligations under the Plan, and any shortfalls will be covered by the Debtor's use of exempt assets. As a result of the foregoing, Debtor is confident that he can establish, and that the Bankruptcy Court will find, that the Plan is feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code.

### 3. Accepting Impaired Class.

Since various Classes of Claims are impaired under the Plan, for the Plan to be confirmed, the Plan must be accepted by at least one impaired Class of Claims (not including the votes of Debtor's insiders).

### 4. Acceptance of Plan.

For an impaired Class of Claims to accept the Plan, those representing at least two-thirds (2/3) in amount and a majority (1/2) in number of the Allowed Claims voted in that Class must be cast for acceptance of the Plan.

### 5. Confirmation Over a Dissenting Class.

If there is less than unanimous acceptance of the Plan by Impaired Classes of Claims, the Bankruptcy Court nevertheless may confirm the Plan at Debtor's request. Section 1129(b) of the

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Bankruptcy Code provides that if all other requirements of section 1129(a) of the Bankruptcy Code are satisfied and if the Bankruptcy Court finds that: (i) the Plan does not discriminate unfairly; and (ii) the Plan is fair and equitable with respect to the rejecting Class(es) of Claims impaired under the Plan, the Bankruptcy Court may confirm the Plan despite the rejection of the Plan by dissenting impaired Class of Claims.

Debtor will request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Impaired Class of Claims that does not vote to accept the Plan. Debtor believes that the Plan satisfies all of the statutory requirements for Confirmation, that Debtor has complied with or will have complied with all the statutory requirements for Confirmation of the Plan, and that the Plan is proposed in good faith. At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the statutory requirements for Confirmation.

### C.    Allowed Claims.

You have an Allowed Claim if: (i) you or your representative timely file a proof of Claim and no objection has been filed to your Claim within the time period set for the filing of such objections; (ii) you or your representative timely filed a proof of Claim and an objection was filed to your Claim upon which the Bankruptcy Court has ruled and Allowed your Claim; (iii) your Claim is listed by Debtor in his Schedules or any amendments thereto (which are on file with the Bankruptcy Court as a public record) as liquidated in amount and undisputed and no objection has been filed to your Claim; or (iv) your Claim is listed by Debtor in his Schedules as liquidated in amount and undisputed and an objection was filed to your Claim upon which the Bankruptcy Court has ruled to Allow your Claim.

Under the Plan, the deadline for filing objections to Claims is one hundred eighty (180) calendar days following the Effective Date. If your Claim is not an Allowed Claim, it is a Disputed Claim and you will not be entitled to vote on the Plan unless the Bankruptcy Court temporarily or provisionally allows your Claim for voting purposes pursuant to Bankruptcy Rule 3018. If you are uncertain as to the status of your Claim or if you have a dispute with Debtor, you should check the Bankruptcy Court record carefully, including the Debtor's Schedules, and you should seek appropriate legal advice. Debtor and his professionals cannot advise you about such matters.

### D.    Impaired Claims.

Impaired Claims include those whose legal, equitable, or contractual rights are altered by the Plan, even if the alteration is beneficial to the Creditor, or if the full amount of the Allowed Claims will not be paid under the Plan. Holders of Claims that are not impaired under the Plan are deemed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code and Debtor need not solicit the acceptances of the Plan of such unimpaired Claims. As such, only Holders of Claims in Impaired Classes 4, 5 and 6 under the Plan are entitled to vote.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**E.      Voting Procedures.**

**1.      Submission of Ballots.**

All Creditors entitled to vote will be sent a Ballot, together with instructions for voting, a copy of this approved Disclosure Statement, and a copy of the Plan.  You should read the Ballot carefully and follow the instructions contained therein.  Please use only the Ballot that was sent with this Disclosure Statement.  You should complete your Ballot and return it as follows:

LARSON & ZIRZOW, LLC
Attn: Matthew C. Zirzow, Esq.
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
(702) 382-1170 Telephone
(702) 382-1169 Facsimile
Email: mzirzow@lzklegal.com

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS LISTED ABOVE BY <u>OCTOBER 22, 2018</u>.**

**2.      Incomplete Ballots.**

Unless otherwise ordered by the Bankruptcy Court, Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will be counted as a vote to accept the Plan.

**3.      Withdrawal of Ballots.**

A Ballot may not be withdrawn or changed after it is cast unless the Bankruptcy Court permits you to do so after notice and a hearing to determine whether sufficient cause exists to permit the change.

**4.      Questions and Lost or Damaged Ballots.**

If you have any questions concerning these voting procedures, if your Ballot is damaged or lost, or if you believe you should have received a Ballot but did not receive one, you may contact Debtor's counsel as listed above regarding the submission of Ballots.

**X.      <u>ALTERNATIVES TO THE PLAN</u>**

**A.      Debtor's Considerations.**

Debtor believes that the Plan provides Creditors with the best and most complete form of recovery available.  As a result, Debtor believes that the Plan serves the best interests of all Creditors and parties-in-interest in the Chapter 11 Case.  Debtor believes not only that the Plan, as described herein, fairly adjusts the rights of various Classes of Creditors and enables the Creditors to realize the greatest sum possible under the circumstances, but also that rejection of the Plan in favor of some theoretical alternative method of reconciling the Claims of the various

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Classes will not result in a better recovery for any Class.

**B.      Alternative Plans of Reorganization.**

Under section 1121 of the Bankruptcy Code, a debtor has an exclusive period of one hundred twenty (120) days and an additional vote solicitation period of sixty (60) days from the entry of the order for relief during which time, assuming that no trustee has been appointed by the Bankruptcy Court, only a debtor may propose and confirm a plan.  After the expiration of the initial one hundred eighty (180) day period, and any extensions thereof, Debtor, or any other party-in-interest, may propose a different plan provided the exclusivity period is not further extended by the Bankruptcy Court.  In the case at hand, any exclusivity provisions in favor of the Debtor have expired, and any other creditor is entitled to file a plan.

**C.      Liquidation Under Chapter 7.**

If a plan cannot be confirmed, a Chapter 11 case may be converted to a case under chapter 7, in which a chapter 7 trustee would be elected or appointed to liquidate the assets of debtor for distribution to their creditors in accordance with the priorities established by the Bankruptcy Code.  As previously stated, Debtor believes that a liquidation under chapter 7 would result in a substantially reduced recovery of funds by his Creditors because of:  (i) additional Administrative Expenses involved in the appointment of a chapter 7 trustee for Debtor and attorneys and other professionals to assist such chapter 7 trustee; (ii) additional expenses and Claims, some of which may be entitled to priority, which would be generated during the chapter 7 liquidation.  Accordingly, Debtor believes that all Holders of Claims will receive a smaller distribution under a chapter 7 liquidation.

**XI.      AVOIDANCE ACTIONS**

A bankruptcy trustee (or the entity as debtor-in-possession) may avoid as a preference a transfer of property made by a debtor to a creditor on account of an antecedent debt while a debtor was insolvent, where that creditor receives more than it would have received in a liquidation of the entity under chapter 7 of the Bankruptcy Code had the payment not been made, if: (i) the payment was made within ninety (90) days before the date the Chapter 11 Cases were commenced; or (ii) if the creditor is found to have been an "insider" as defined in the Bankruptcy Code, within one (1) year before the commencement of the Chapter 11 Cases.  A debtor is presumed to have been insolvent during the ninety (90) days preceding the commencement of the case.

A bankruptcy trustee (or the entity as debtor-in-possession) may avoid as a fraudulent transfer a transfer of property made by a debtor within two (2) years (and under applicable Nevada law, four (4) years) before the date the Chapter 11 Cases were commenced if: (i) debtor received less than a reasonably equivalent value in exchange for such transfer; and (ii) was insolvent on the date of such transfer or became insolvent as a result of such transfer, such transfer left debtor with an unreasonably small capital, or debtor intended to incur debts that would be beyond debtor's ability to pay as such debts matured.  In addition, this reachback may be extended further to within one (1) year of reasonable discovery of the facts underlying the transfer and its actual fraudulent nature.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

As applied to the case at hand, there are no pending avoidance actions commenced by the Debtor as of the filing of this Plan, and none intended to be filed, and the Debtor also does not believe there are any preference, fraudulent transfer or similar avoidance actions, however, regardless of the foregoing, the Debtor expressly reserves the right to commence any appropriate actions pursuant to chapter 5 of the Bankruptcy Code.

## XII.    RECOMMENDATION AND CONCLUSION

In the Debtor's opinion, the Plan provides the best possible recovery for all Creditors as a whole, and therefore he recommends that all Creditors who are entitled to vote on the Plan vote to ACCEPT the Plan.

Dated:  September 13, 2018.

*/s/ Marc J. Randazza*
MARC J. RANDAZZA

Prepared and submitted:

By:  */s/ Matthew C. Zirzow*
LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# EXHIBIT 1

LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzklegal.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170
Fax:  (702) 382-1169

Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

MARC JOHN RANDAZZA,

              Debtor.

Case No: BK-S-15-14956-abl
Chapter 11

Combined Hearing:
Date:   November 7, 2018
Time:  1:30 p.m.

## [PROPOSED] DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**TABLE OF CONTENTS**

Page

1.  DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF
    TIME.............................................................................................................................1

    1.1. Definitions.........................................................................................................1

            1.1.1. Administrative Claim.........................................................................1
            1.1.2. Administrative Claim Bar Date. ........................................................1
            1.1.3. Allowed..............................................................................................1
            1.1.4. Assets. ................................................................................................2
            1.1.5. Avoidance Actions. ...........................................................................2
            1.1.6. Bankruptcy Code. ..............................................................................2
            1.1.7. Bankruptcy Court. .............................................................................2
            1.1.8. Bankruptcy Rules. .............................................................................2
            1.1.9. Bar Date ............................................................................................2
            1.1.10. Business Day. ...................................................................................3
            1.1.11. Cash...................................................................................................3
            1.1.12. Causes of Action. .............................................................................3
            1.1.13. Chapter 11 Case. ..............................................................................3
            1.1.14. Claim. ...............................................................................................3
            1.1.15. Claim Objection Deadline ...............................................................3
            1.1.16. Claims Register. ...............................................................................3
            1.1.17. Class. ................................................................................................3
            1.1.18. Confirmation. ...................................................................................3
            1.1.19. Confirmation Date. ..........................................................................3
            1.1.20. Confirmation Hearing. .....................................................................3
            1.1.21. Confirmation Order. .........................................................................4
            1.1.22. Creditor. ...........................................................................................4
            1.1.23. Cure. .................................................................................................4
            1.1.24. Debtor. ..............................................................................................4
            1.1.25. Disallowed Claim.............................................................................4
            1.1.26. Disclosure Statement. ......................................................................4
            1.1.27. Disputed. ..........................................................................................4
            1.1.28. Distribution. .....................................................................................4
            1.1.29. Distribution Record Date. ................................................................4
            1.1.30. Effective Date. .................................................................................4
            1.1.31. Estate.................................................................................................5
            1.1.32. Excelsior Parties...............................................................................5
            1.1.33. Excelsior Settlement Agreement......................................................5
            1.1.34. Executory Contract. ..........................................................................5
            1.1.35. Federal Judgment Rate. ....................................................................5
            1.1.36. File. ...................................................................................................5
            1.1.37. Final Decree. ....................................................................................5
            1.1.38. Final Order. ......................................................................................5
            1.1.39. General Unsecured Claim. ................................................................5

i

1.1.40. Holder. ...............................................................................6
1.1.41. Impaired. ...........................................................................6
1.1.42. Insider. ..............................................................................6
1.1.43. Jennifer Randazza. ..............................................................6
1.1.44. Jennifer Randazza Claims. ...................................................6
1.1.45. Lien. .................................................................................6
1.1.46. Litigation Claims. ...............................................................6
1.1.47. MJRPA ..............................................................................6
1.1.48. Other Secured Claims. .........................................................6
1.1.49. Permitted Encumbrances. ....................................................6
1.1.50. Person. ...............................................................................7
1.1.51. Petition Date. .....................................................................7
1.1.52. Plan. .................................................................................7
1.1.53. Priority Non-Tax Claim. ......................................................7
1.1.54. Priority Tax Claims. ............................................................7
1.1.55. Professional. ......................................................................7
1.1.56. Professional Fees. ...............................................................7
1.1.57. Professional Fee Claim. .......................................................7
1.1.58. Projected Disposable Income. ...............................................7
1.1.59. Proof of Claim ...................................................................7
1.1.60. Pro Rata. ...........................................................................7
1.1.61. Randazza Marital Settlement Documents. ...............................8
1.1.62. Reorganized Debtor. ...........................................................8
1.1.63. Representatives. ..................................................................8
1.1.64. RLG. .................................................................................8
1.1.65. Schedules. .........................................................................8
1.1.66. Secured. ............................................................................8
1.1.67. Unexpired Lease. ................................................................8
1.1.68. Unimpaired. ......................................................................8
1.1.69. Unsecured Claim. ...............................................................8
1.1.70. U.S. Trustee Fees. ...............................................................8

1.2. Computation of Time. ..............................................................8
1.3. Rules of Interpretation. ............................................................9
1.4. Exhibits and Plan Schedules. .....................................................9

2. TREATMENT OF UNCLASSIFIED CLAIMS ....................................9

2.1. Treatment of Administrative Claims. ...........................................9

2.1.1. Generally. ...........................................................................9
2.1.2. Requests for Payment. ...........................................................9

2.2. Priority Tax Claims. ................................................................10

3. DESIGNATION OF CLASSES OF CLAIMS. ....................................10

3.1. Overview. .............................................................................10

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

ii

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

3.2. Summary of Classification. ................................................................10
3.3. Class 1: Specialized Loan Servicing Secured Claim. .............................10

    3.3.1. Claims in Class. ....................................................................10
    3.3.2. Treatment. ...........................................................................11
    3.3.3. Impairment and Voting. .........................................................11

3.4. Class 2:  Other Secured Claims. ......................................................11

    3.4.1. Claims in Class. ....................................................................11
    3.4.2. Treatment. ...........................................................................11
    3.4.3. Impairment and Voting. .........................................................11

3.5. Class 3:  Priority Non-Tax Claims. ..................................................11

    3.5.1. Claims in Class. ....................................................................11
    3.5.2. Treatment. ...........................................................................11
    3.5.3. Interest. ................................................................................11
    3.5.4. Impairment and Voting. .........................................................12

3.6. Class 4: Excelsior Parties Claims. ...................................................12

    3.6.1. Claims in Class. ....................................................................12
    3.6.2. Treatment. ...........................................................................12
    3.6.3. Impairment and Voting. .........................................................12

3.7. Class 5: Jennifer Randazza Claims. ..................................................12

    3.7.1. Claims in Class. ....................................................................12
    3.7.2. Treatment. ...........................................................................12
    3.7.3. Impairment and Voting. .........................................................12

3.8. Class 6: General Unsecured Claims. .................................................12

    3.8.1. Claims in Class. ....................................................................12
    3.8.2. Treatment. ...........................................................................13
    3.8.3. Impairment and Voting. .........................................................13

3.9. Elimination of Vacant Classes. ........................................................13

4. PLAN IMPLEMENTATION .................................................................13

4.1. Plan Implementation Occurring on Effective Date. .............................13
4.2. Reorganized Debtor. ......................................................................13
4.3. Notice of Effectiveness. ..................................................................13
4.4. Operations and Management of Reorganized Debtor. ...........................13
4.5. Source of Payments. ......................................................................14
4.6. Final Decree. ...............................................................................14
4.7. Administrative Closure. ..................................................................14

4.8. Effectuating Documents, Further Transactions ................................................14

5. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..............................................14

5.1. Executory Contracts and Unexpired Leases. ...............................................14
5.2. Approval of Assumption or Rejection. .......................................................14
5.3. Cure of Defaults. ...........................................................................................15
5.4. Objection to Cure Amounts. .......................................................................15
5.5. Confirmation Order. .....................................................................................15
5.6. Post-Petition Date Contracts and Leases. ...................................................16
5.7. Rejection Damages Bar Date. .....................................................................16
5.8. Modifications, Amendments, Supplements, Restatements, or Other
    Agreements. ..................................................................................................16
5.9. Reservation of Rights. ..................................................................................16

6. MANNER OF DISTRIBUTION OF PROPERTY UNDER THE PLAN ...........................16

6.1. Distributions on Account of Claims Allowed as of the Effective Date. ..................16
6.2. Manner of Payment Under the Plan. ...........................................................16
6.3. Whole Dollars. ...............................................................................................16
6.4. Escheat. ..........................................................................................................16
6.5. Delivery of Distributions. ............................................................................17

    6.5.1. Record Date for Distributions. .....................................................17
    6.5.2. Delivery of Distributions in General. ..........................................17
    6.5.3. Distributions Not Subject to Legal Process. ...............................17
    6.5.4. Returned Distributions. ................................................................17
    6.5.5. Disputed Distributions. ................................................................18
    6.5.6. Setoffs. ............................................................................................18
    6.5.7. Withholding Taxes. .......................................................................18
    6.5.8. No Recourse. ..................................................................................18

7. PROCEDURES FOR RESOLVING DISPUTED CLAIMS ............................................19

7.1. Objection to and Resolution of Claims. ......................................................19
7.2. Payments. .......................................................................................................19
7.3. Contingent Claims. ........................................................................................19
7.4. Estimation of Claims. ....................................................................................19

8. RESERVATION OF RIGHTS ..................................................................................19

8.1. Withdrawal of Plan; Rights if Plan Not Confirmed; Effective Date Does Not
    Occur. .............................................................................................................19
8.2. No Admissions or Waiver. ............................................................................20

9. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE .........20

9.1. Conditions to Confirmation. ........................................................................20
9.2. Conditions to Occurrence of Effective Date. .............................................20

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10. EFFECT OF CONFIRMATION OF PLAN ..............................................................21

    10.1. Discharge. ............................................................................................21
    10.2. Exculpation. .........................................................................................21
    10.3. Modification of Debt Instruments.........................................................21
    10.4. Judgments Void. ..................................................................................21
    10.5. No Effect on Insurance Settlement. ......................................................21
    10.6. Approval of Randazza Marital Settlement Agreement. ..........................22
    10.7. Revesting of Assets in Debtor..............................................................22
    10.8. Preservation of Causes of Action. ........................................................22
    10.9. Maintenance of Administrative Claim Status. ......................................22
    10.10. Disallowance of Claims Not Allowed and Tardy Proofs of Claim.........22
    10.11. No Limitation on Effect of Confirmation. ...........................................23

11. RETENTION OF JURISDICTION ....................................................................23

    11.1. Retention of Jurisdiction.....................................................................23
    11.2. Jurisdiction Unaffected. .......................................................................24
    11.3. Failure of Bankruptcy Court to Exercise Jurisdiction............................24

12. MISCELLANEOUS PROVISIONS ...................................................................25

    12.1. Modification of the Plan. .....................................................................25
    12.2. Notices to Debtor. ...............................................................................25
    12.3. Notices to Creditors. ...........................................................................26
    12.4. Headings. .............................................................................................26
    12.5. Non-Severability of Plan Provisions. ...................................................26
    12.6. Waiver or Estoppel. .............................................................................26
    12.7. Governing Law. ...................................................................................26
    12.8. Successors and Assigns.........................................................................26
    12.9. Modification of Payment Terms. ..........................................................26
    12.10. Effectuating Documents; Further Transactions; Timing........................27
    12.11. Exemption from Transfer Taxes. ..........................................................27
    12.12. Default Under Plan. .............................................................................27

        12.12.1. Creditor Action Restrained. ....................................................27
        12.12.2. Obligations to Each Class Separate. .........................................27
        12.12.3. Material Default Defined. ........................................................27
        12.12.4. Remedies Upon Material Default. ............................................28
        12.12.5. Claims Not Affected by Plan. ..................................................28
        12.12.6. Effect of Conversion to Chapter 7. ..........................................28

    12.13. Cramdown............................................................................................28
    12.14. Fees and Reporting to the United States Trustee. ..................................28
    12.15. Entire Agreement. ...............................................................................29

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

v

Marc John Randazza, as debtor and debtor-in-possession, hereby proposes this plan of reorganization for the resolution of his outstanding Claims.[1]  All Creditors and other parties-in-interest should refer to the Disclosure Statement for a discussion of Debtor's history, assets, historical financial data, and for a summary and analysis of the Plan and certain related matters. All Holders of Claims against the Debtor are encouraged to read the Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject the Plan.  Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article 12 to the Plan, Debtor expressly reserves the right to alter, amend, strike, withdraw, or modify the Plan one or more times before its substantial consummation.

## 1.   DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**1.1. Definitions.**  For the purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Section 1.1.  Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority.  Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.  As used in the Plan, the following terms shall have the meanings specified below:

**1.1.1. Administrative Claim.**  A Claim for any cost or expense of administration of the Chapter 11 Case allowed pursuant to sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate; (b) compensation and reimbursement of expenses for legal, financial advisory, accounting, and other services, including but not limited to, Allowed Professional Fees, pursuant to sections 327, 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges payable pursuant to 28 U.S.C. § 1930; and (d) all Bankruptcy Court approved requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case, pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code or otherwise.

**1.1.2. Administrative Claim Bar Date.**  The deadline for filing requests for allowance and payment of Administrative Claims, including but not limited to Professional Fees, which shall be thirty (30) days after the Effective Date.

**1.1.3. Allowed.**  With reference to any Claim against the Debtor:  (a) any Claim against the Debtor that has been listed in his Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been Filed; (b) any Claim allowed (i) under the Plan, (ii) by Final Order, or (iii) as to which the liability of Debtor and the amount thereof are determined by a final order of a court of

---

[1] All capitalized terms herein shall have the meanings as ascribed to them in Section 1.1 of the Plan.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1

competent jurisdiction other than the Bankruptcy Court; or (c) as to which a Proof of Claim has been timely Filed in a liquidated amount with the Bankruptcy Court, pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or has been Filed with leave of the Bankruptcy Court after notice and a hearing, provided that no objection to the allowance of such Claim or motion to expunge such Claim has been interposed by any party in interest before any final date for the filing of such objections or motions set forth in the Plan, the Confirmation Order or other order of the Bankruptcy Court.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any valid and enforceable claim that Debtor may hold against the Holder thereof, to the extent such Claim may be validly offset, recouped, or otherwise reduced under applicable law.

**1.1.4.  Assets.**  All of the assets, property, interests, real and personal, tangible and intangible, wherever situated, of Debtor, as they exist as of the Effective Date, and to the extent provided by the applicable provisions of the Bankruptcy Code, including without limitation sections 541 and 1115(a) of the Bankruptcy Code.

**1.1.5.  Avoidance Actions.**  Any actions commenced, or that may be commenced before or after the Effective Date, pursuant to sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code.

**1.1.6.  Bankruptcy Code.**  The Bankruptcy Reform Act of 1978, title 11 of the United States Code, as amended from time to time, as applicable to these Chapter 11 Case, as now in effect or hereafter amended.

**1.1.7.  Bankruptcy Court.**  The United States Bankruptcy Court for the District of Nevada having jurisdiction over the Chapter 11 Case, and to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code and/or the General Order of the United States District Court for the District of Nevada pursuant to section 151 of title 28 of the United States Code, the United States District Court for the District of Nevada.

**1.1.8.  Bankruptcy Rules.**  Collectively, the Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Case, the Local Rules of Bankruptcy Practice for the United States District Court for the District of Nevada, both as are now in effect or hereafter amended.

**1.1.9.  Bar Date**  In the case of non-governmental Creditors, December 30, 2015, which is the date established by the Bankruptcy Court by which such Creditors are required to file proofs of claim with respect to pre-petition Claims including Claims asserted pursuant to section 503(b)(9) of the Bankruptcy Code, except with respect to Administrative Claims, Claims arising from the rejection of any Executory Contracts and Unexpired Leases, and Claims that were scheduled by Debtor as undisputed, non-contingent, and unliquidated.  In the case of governmental Creditors, February 24, 2016, which is the date established by the Bankruptcy Court by which such Creditors are required to file proofs of claim with respect to pre-petition Claims, including but not limited to Priority Tax Claims.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**1.1.10. Business Day.**  A day, other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.1.11. Cash.**  The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, negotiable instruments, wire transfers of immediately available funds,  or other cash equivalents.

**1.1.12. Causes of Action.**  Any Claim, Avoidance Action, cause of action, controversy, demand, right,   action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

**1.1.13. Chapter 11 Case.**  The case under chapter 11 of the Bankruptcy Code involving the Debtor, having case number BK-S-15-14956-abl, including all adversary proceedings pending in connection therewith.

**1.1.14. Claim.**  Any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date or relating to any event that occurred before the Effective Date, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.1.15. Claim Objection Deadline.**  The date that is 180 days from the Effective Date for all Claims, which deadline may be extended by Reorganized Debtor upon request after notice and a hearing.

**1.1.16. Claims Register.**  The official register of Claims maintained by the Court in the Debtor's Chapter 11 Case.

**1.1.17. Class.**  A category of Holders of Claims as classified in the Plan.

**1.1.18. Confirmation.**  The entry by the Bankruptcy Court of the Confirmation Order on the docket in the Chapter 11 Case.

**1.1.19. Confirmation Date.**  The date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**1.1.20. Confirmation Hearing.**  The hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

3

**1.1.21. Confirmation Order.**  The order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.1.22. Creditor.**  Any Holder of a Claim, whether or not such Claim is Allowed.

**1.1.23. Cure.**  The distribution on the Effective Date or as soon thereafter as practicable of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to section 365(b) of the Bankruptcy Code, or with respect to any other debt instrument, in an amount equal to: (i) all unpaid monetary obligations due under such Executory Contract or Unexpired Lease or required to pay to bring current the debt instrument and thereby reinstate the debt and return to the pre-default conditions to the extent such obligations are enforceable under the Bankruptcy Code or applicable non-bankruptcy law; and (ii) with respect to any debt instrument, if a claim arises from the Debtor's failure to perform any non-monetary obligation as set forth in sections 1124(2)(C) and 1124(2)(D) of the Bankruptcy Code, payment of the dollar amount that compensates the Holder of such a Claim for any actual pecuniary loss incurred by such Holder as a result of any such failure and the dollar amount of the Claim that is established by the Holder's sworn declaration and accompanying admissible evidence filed with the Bankruptcy Court on or before the deadline ordered by that Court for the filing of objections to the Disclosure Statement.

**1.1.24. Debtor.**  Marc John Randazza, a/k/a Marco Randazza, as debtor in this Chapter 11 Case.

**1.1.25. Disallowed Claim.**  Any Claim or portion thereof that has been disallowed by a Final Order of the Bankruptcy Court.

**1.1.26. Disclosure Statement.**  The disclosure statement that relates to the Plan, including all exhibits and schedules thereto, as may be amended, supplemented or modified from time to time, that is prepared  and distributed in accordance with, among other matters, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.1.27. Disputed.**  A Claim (including any Administrative Claim, Priority Claim or Secured Claim), or any portion thereof, that is:  (a) listed in the Schedules as disputed, contingent, or unliquidated; or (b) subject to an objection interposed by Debtor, Reorganized Debtor, or any party-in-interest entitled to file and prosecute such objection in the Chapter 11 Case, if at such time such objection remains unresolved.

**1.1.28. Distribution.**  Any distribution made by Debtor or Reorganized Debtor to the Holders of Allowed Claims pursuant to the terms of the Plan.

**1.1.29. Distribution Record Date.**  The Confirmation Date unless the Bankruptcy Court establishes a different date in the Confirmation Order.

**1.1.30. Effective Date.**  The latest to occur of:  (i) the first Business Day that is at least fourteen (14) days after the Confirmation Date and on which no stay of the

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Confirmation Order is in effect; and (i) the first (1st) Business Day on which all of the conditions set forth in Section 9 have been satisfied or waived.

**1.1.31. Estate.** The estate of Debtor that was created by the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.1.32. Excelsior Parties.** Collectively, Excelsior Media Corp., a Nevada corporation; Liberty Media Holdings, LLC, a dissolved California limited liability company; Liberty Media Holdings, LLC, a Nevada limited liability company; Jason Gibson, an individual; and any of the foregoing parties' officers, directors, shareholders, managers, members, employees, agents, representatives, attorneys, insurers, affiliates, insiders, partnerships, corporations, limited liability companies, heirs, predecessors, successors, and/or assigns.

**1.1.33. Excelsior Settlement Agreement.** The Settlement Agreement and Release by and between the Debtor, on the one hand, and the Excelsior Parties, on the other hand, as approved by the Bankruptcy Court per an order entered pursuant to Bankruptcy Rule 9019 on February 14, 2018.

**1.1.34. Executory Contract.** A contract to which a Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

**1.1.35. Federal Judgment Rate.** The rate of interest on judgments as provided for by 28 U.S.C. § 1961 as of the Confirmation Date.

**1.1.36. File.** To file with the Bankruptcy Court in the Chapter 11 Case.

**1.1.37. Final Decree.** An order of the Bankruptcy Court closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code.

**1.1.38. Final Order.** An order, judgment or other decree of the Bankruptcy Court and entered on the docket of such court: (a) that has not been reversed, stayed, modified, amended, revoked, varied or set aside, and as to which (i) any right to appeal or seek certiorari, review, stay or rehearing has been waived, or (ii) the time to appeal or seek certiorari, review, stay or rehearing has expired and no appeal or petition for certiorari, review, stay or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, stay or rehearing has been filed, and (i) such appeal or petition for certiorari, review, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, stay or rehearing was sought, and (ii) the time to appeal further or seek certiorari, review, stay or rehearing has been waived or expired and no such further appeal or petition for certiorari, review, stay or rehearing is pending; *provided, however*, that no order or judgment shall fail to be a "Final Order" hereunder solely because of the possibility that a motion pursuant to sections 502(j) or 1144 of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be Filed with respect to such order or judgment.

**1.1.39. General Unsecured Claim.** A Claim that is not secured by a charge against or interest in property in which the Estate has an interest and is not an unclassified

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Claim, Administrative Claim, Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, Excelsior Parties Claims, or Jennifer Randazza Claims.  General Unsecured Claims shall also include all Claims arising under section 502(g) of the Bankruptcy Code.

**1.1.40. Holder.**  Any Person holding a Claim against the Debtor.

**1.1.41. Impaired.**  Means impairment within the meaning of section 1124 of the Bankruptcy Code.

**1.1.42. Insider.**  Shall include any person having such meaning as set forth in section 101(31) of the Bankruptcy Code.

**1.1.43. Jennifer Randazza.**  Jennifer Randazza f/k/a Jennifer Brochey, who is the Debtor's former spouse.

**1.1.44. Jennifer Randazza Claims.**  Any and all Claims held or controlled by Jennifer Randazza against the Debtor or his Estate, including but not necessarily limited to pursuant to the Randazza Marital Settlement Documents, and inclusive of any alimony, maintenance, child support, support, equalization payment, as well as any adjustments, modifications, amendments or revisions to the foregoing, or in any way related to the Estate, the marital community estate, the Debtor's sole and separate property, and/or the Debtor's children, as well as any claims for nondischargeability pursuant to section 523 of the Bankruptcy Code.

**1.1.45. Lien.**  A charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.1.46. Litigation Claims.**  All rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that Debtor or the Estate may have against any person, including but not limited to those listed on <u>Schedule 1.1.46</u> hereto.  Failure to list a Litigation Claim on <u>Schedule 1.1.46</u> shall not constitute a waiver or release by Debtor or Reorganized Debtor of such Litigation Claim.

**1.1.47. MJRPA**  Marc J. Randazza, P.A., a Florida professional association.

**1.1.48. Other Secured Claims.**  Any Allowed Secured Claim other than the Secured Claims in Classes 1 and 2 of this Plan.

**1.1.49. Permitted Encumbrances.**  Includes the following: (i) Liens for *ad valorem* taxes not yet due and payable, (ii) easements, restrictions, conditions and limitations of record that affected the title to any real property as of the Petition Date, (iii) any Liens securing Other Secured Claims that are reinstated or assumed by Debtor (as applicable), and (iv) liens arising in favor of any applicable authority pursuant to NRS chapter 318 or other applicable law to secure water or sewer service, inspection and/or related fees.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

6

**1.1.50. Person.**    Any individual, corporation, partnership, limited liability company, joint venture, association, trust or organization, unincorporated organization or government, governmental agency, governmental unit or political subdivision, or any other entity.

**1.1.51. Petition Date.**    August 28, 2015, the date on which the Debtor filed its voluntary petitions for relief under chapter 11 of the Bankruptcy Code thereby commencing the Chapter 11 Case.

**1.1.52. Plan.**    This chapter 11 plan of reorganization, including all documents referenced herein and all exhibits, supplements, appendices and schedules hereto or thereto, either in its present form or as the same may be altered, amended or modified from time to time pursuant to the Bankruptcy Code or Final Order.

**1.1.53. Priority Non-Tax Claim.**    Any Claim, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority under section 507(a) of the Bankruptcy Code.

**1.1.54. Priority Tax Claims.**    Any Claim that is entitled to priority under sections 502(i) or 507(a)(8) of the Bankruptcy Code.  Priority Tax Claims do not include *ad valorem* property tax Claims if such Claims under applicable state law are Secured by a Lien on Debtor's Assets.

**1.1.55. Professional.**    A Person:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court, pursuant to section 503(b) of the Bankruptcy Code.

**1.1.56. Professional Fees.**    All reasonable fees and expenses incurred by Professionals and allowed by the Bankruptcy Court.

**1.1.57. Professional Fee Claim.**    Any Claim for compensation or reimbursement of fees and expenses as may be requested by a Professional to the extent such Professional is required to apply to the Bankruptcy Court for payment of such Claim pursuant to sections 326, 327, 328, 330 or 331 of the Bankruptcy Code and the terms of the Plan.

**1.1.58. Projected Disposable Income.**    The final amount set forth on **Exhibit 2** to the Disclosure Statement, or such other amount as may be determined by the Bankruptcy Court at the Confirmation Hearing.

**1.1.59. Proof of Claim.**    A Proof of Claim Filed against Debtor in the Chapter 11 Case.

**1.1.60. Pro Rata.**    With respect to an amount of Cash or other consideration to be paid or distributed on a particular date to a Holder of an Allowed Claim, that such Distribution shall be made in accordance with the ratio, as of such date, of the amount

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

7

such Allowed Claim is to the aggregate of the amounts of Claims in the Class to which such Allowed Claim belongs.

**1.1.61. Randazza Marital Settlement Documents.**  The Marital Settlement Agreement by and between the Debtor and Jennifer Randazza made and entered into on November 30, 2017, as may be amended and corrected from time to time, including without limitation by the Marital Settlement Agreement Addendums dated as of December 8, 2017 and May 24, 2018, as well as any further amendments to the foregoing that those parties shall mutually agree to and both execute from time to time.

**1.1.62. Reorganized Debtor.**  Debtor, or any successor thereto, as reorganized debtor pursuant to the Plan on or after the Effective Date.

**1.1.63. Representatives.**  With respect to a given Person, its past and current directors, officers, shareholders, managers, members, partners, employees, agents, attorneys, professionals, contractors and other representatives.

**1.1.64. RLG.**  Randazza Legal Group, PLLC, a Nevada professional limited liability company.

**1.1.65. Schedules.**  The schedules of assets and liabilities, the list of Holders of Interests and the statements of financial affairs Filed by Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

**1.1.66. Secured.**  When referring to a Claim:  (a) secured by a Lien on property in which the Estate have an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a secured Claim.

**1.1.67. Unexpired Lease.**  A lease of non-residential real property to which the Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

**1.1.68. Unimpaired.**  With respect to a Claims or Interest, leaving unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest.

**1.1.69. Unsecured Claim.**  Any Claim that is neither Secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court as a Priority Tax Claim or Priority Non-Tax Claim.

**1.1.70. U.S. Trustee Fees.**  Any fees payable pursuant to 28 U.S.C. § 1930.

**1.2. Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

8

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**1.3. Rules of Interpretation.**   Any term used in the Plan that is not defined in the Plan, either in this Article or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to an existing document, schedule, or exhibit Filed or to be Filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date in accordance with the terms hereof; (c) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; (d) the words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (e) the word "all" shall mean "any and all;" (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, including that the terms "includes," "shall include," and "including" are not limiting; (h) reference to a pleading, request, or document being "Filed" means duly and properly filed with the Bankruptcy Court as reflected on the docket of the Bankruptcy Court; (i) all exhibits and schedules to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when they are Filed; (j) any service or notice provided for in the Plan shall be provided at the addresses specified herein; (k) except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent the exhibits provide otherwise, the rights, duties and obligations under the Plan shall be governed, construed and enforced in accordance with the laws of the State of Nevada; and (l) to the extent a reference or description in the Disclosure Statement is inconsistent with the terms or conditions of the Plan, the terms and conditions of the Plan, as applicable, shall govern over the reference contained in the Disclosure Statement.

**1.4. Exhibits and Plan Schedules.**   All exhibits and schedules attached to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

## 2. TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.  Treatment of Administrative Claims.**

**2.1.1. Generally.**   Each Allowed Administrative Claim shall be paid by the Reorganized Debtor (or otherwise satisfied in accordance with its terms) upon the latest of: (i) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (ii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; or (iii) such date as the holder of such Claim and, prior to the Effective Date, Debtor, and after the Effective Date, Reorganized Debtor, shall agree upon.  The Debtor or Reorganized Debtor, as the case may be, reserves any and all defenses or offsets to challenge any Administrative Claims.  Holders of Administrative Claims are not entitled to vote on confirmation of the Plan.

**2.1.2. Requests for Payment.**  All requests for payment of Administrative Claims against Debtor and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date or the Holders thereof shall be forever barred from asserting such Administrative Claims against Debtor and the

Reorganized Debtor.  All Professional Fees applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees. Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no professional shall be required to file fee applications with the Bankruptcy Court and Reorganized Debtor may pay all professionals in the ordinary course for fees and expenses incurred after the Effective Date.

**2.2. Priority Tax Claims.**  Each Allowed Priority Tax Claim, if any, will be paid in full by the Reorganized Debtor on the later of: (i) the fourteenth (14th) Business Day after the date on which an order allowing such Claim becomes a Final Order; or (ii) such other time as is agreed to by the holder of such Claim and Debtor prior to the Effective Date or the Reorganized Debtor after the Effective Date.  Holders of Priority Tax Claims are not entitled to vote on confirmation of the Plan.

## 3. DESIGNATION OF CLASSES OF CLAIMS.

**3.1. Overview.**  Pursuant to the Plan and in accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except Administrative Claims and Priority Tax Claims) are placed in the Classes described below.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim qualifies within the description of such other Classes.  A Claim is also classified in a particular Class only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. With respect to Classes of Claims described as Unimpaired under the Plan, except as otherwise provided under the Plan, nothing shall affect the rights and legal and equitable defenses of Debtor and Reorganized Debtor regarding such Claims classified as Unimpaired under the Plan, including but not limited to, all rights in respect of legal and equitable defenses to setoff or recoupment against such Claims.

**3.2. Summary of Classification.**

| Class | Description | Treatment |
|-------|-------------|-----------|
| Class 1 | Specialized Loan Servicing Secured Claim | Unimpaired.  No solicitation required. |
| Class 2 | Other Secured Claims | Unimpaired.  No solicitation required. |
| Class 3 | Priority Non-Tax Claims | Unimpaired.  No solicitation required. |
| Class 4 | Excelsior Parties Claims | Impaired.  Solicitation required. |
| Class 5 | Jennifer Randazza Claims | Impaired.  Solicitation required. |
| Class 6 | General Unsecured Claims | Impaired.  Solicitation required. |

**3.3. Class 1: Specialized Loan Servicing Secured Claim.**

**3.3.1. Claims in Class.**  Class 1 consists of the Allowed Secured Claim of Specialized Loan Servicing secured by the Debtor's personal residence located at 10955 Iris Canyon Lane, Las Vegas, Nevada 89135.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**3.3.2. Treatment.** Except to the extent that the Holder of a Class 1 Claim agrees to a less favorable treatment, and consistent with section 1123(b)(5) of the Bankruptcy Code, Specialized Loan Servicing shall be satisfied by treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled, including without limitation retaining any and all Liens in and to its Collateral and its Claim to the extent provided in its promissory note, deed of trust, and any and all other related loan and security documents.

**3.3.3. Impairment and Voting.** Class 1 is Unimpaired. The Holder of Allowed Class 1 Bank Secured Claim is not entitled to vote to accept or reject the Plan.

**3.4. Class 2:  Other Secured Claims.**

**3.4.1. Claims in Class.** Class 2 consists of any Allowed Other Secured Claims.

**3.4.2. Treatment.** Except to the extent that a Creditor with an Allowed Other Secured Claim agrees to less favorable treatment, each holder of an Other Secured Claim shall be considered to be in its own separate subclass within Class 2 and each such subclass shall be deemed to be a separate Class for purposes of the Plan. Except to the extent that the holder of an Allowed Claim in Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in Class 2 shall be satisfied by, at the option of the Debtor: (i) payment in Cash by the Debtor in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

**3.4.3. Impairment and Voting.** Creditors in Class 2 are Unimpaired under the Plan. Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

**3.5. Class 3:  Priority Non-Tax Claims.**

**3.5.1. Claims in Class.** Class 3 consists of all Priority Non-Tax Claims.

**3.5.2. Treatment.** Except to the extent that a Creditor with an Allowed Priority Non-Tax Claim agreed to less favorable treatment, each Allowed Priority Non-Tax Claim shall be paid in full by the Reorganized Debtor upon the latest of: (i) the first Business Day after the Effective Date; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; or (iv) such date as the holder of such Claim and, prior to the Effective Date, Debtor, and after the Effective Date, the Reorganized Debtor, shall agree.

**3.5.3. Interest.** Each Holder of a Priority Non-Tax Claim shall also receive on account of such Holder's Allowed Priority Non-Tax Claim payment of postpetition

11

interest calculated at the Federal Judgment Rate unless there is an applicable contractual interest rate, in which case interest shall be paid at the contractual interest rate so long as (i) a contractual interest rate was set forth in a timely filed proof of claim or (ii) the Holder of such Claim provides written notice of such contractual interest rate to the Debtor's counsel on or before the Effective Date, and subject to the Debtor's and any other Person's right to verify or object to the existence of the asserted contractual rate of interest.

**3.5.4. Impairment and Voting.**  Creditors in Class 3 are Unimpaired under the Plan.  Holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan.

## 3.6. Class 4: Excelsior Parties Claims.

**3.6.1. Claims in Class.**  Class 4 consists of the Allowed Claims of the Excelsior Parties against the Debtor.

**3.6.2. Treatment.**  Except to the extent that the Excelsior Parties agree to less favorable treatment, Holders of Class 4 Allowed Excelsior Parties Claims will receive payment in full of their Allowed Claims in accordance with the Excelsior Settlement Agreement, in full satisfaction, settlement, release and exchange for such Allowed Excelsior Parties Claims.  Confirmation of this Plan shall not alter, amend or impair the terms, conditions, rights, obligations, claims and responsibilities of the parties to the Excelsior Settlement Agreement, and that document is incorporated in full into this Plan by reference.

**3.6.3. Impairment and Voting.**  Class 4 is Impaired under the Plan. Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

## 3.7. Class 5: Jennifer Randazza Claims.

**3.7.1. Claims in Class.**  Class 5 consists of Allowed Jennifer Randazza Claims against Debtor.

**3.7.2. Treatment.**  Except to the extent that Jennifer Randazza agrees to less favorable treatment, Holders of Class 5 Allowed General Unsecured Claims shall receive, in full satisfaction of their Allowed Claims, the payments as set forth in the Randazza Marital Settlement Documents.  Confirmation of this Plan shall not alter, amend or impair the terms, conditions, rights, obligations, claims and responsibilities of the Debtor and Jennifer Randazza pursuant to the Randazza Marital Settlement Documents, and those documents are incorporated in full into this Plan by reference.

**3.7.3. Impairment and Voting.**  Class 5 is Impaired under the Plan.  Holders of Class 5Claims are entitled to vote to accept or reject the Plan.

## 3.8. Class 6: General Unsecured Claims.

**3.8.1. Claims in Class.**  Class 6 consists of Allowed General Unsecured Claims against Debtor.

12

**3.8.2. Treatment.**  Except to the extent that a Creditor with an Allowed General Unsecured Claim agrees to less favorable treatment, Holders of Class 6 Allowed General Unsecured Claims may receive, in full satisfaction of their Allowed Claims, their Pro Rata share of the Debtor's monthly plan payments, if and only to the extent payments are made pursuant to the Plan pursuant to section 1129(a)(15) of the Bankruptcy Code.  The Debtor does not anticipate making payments to General Unsecured Creditors in Class 6 of the Plan unless the Holder of an Allowed General Unsecured Claim files an objection to this Plan pursuant to section 1129(a)(15) of the Bankruptcy Code.  If a Holder of an Allowed General Unsecured Claim in Class 6 Files a timely written objection to Confirmation of the Plan and pursuant to section 1129(a)(15) of the Bankruptcy Code, then the Debtor will either, at his option and in his sole and absolute discretion:  (a) pay in full the Allowed General Unsecured Claim from funds that are not property of the Estate, or (b) make payments of his Projected Disposable Income beginning by no later than the first day of the month of the second month following the Effective Date of the Plan, and continuing each and every months thereafter for a period of five (5) years, which funds, if any, shall be distributed Pro Rata to all Holders of Allowed General Unsecured Claims.

**3.8.3. Impairment and Voting.**  Class 6 is Impaired under the Plan.  Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

**3.9. Elimination of Vacant Classes.**  Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## 4. **PLAN IMPLEMENTATION**

**4.1. Plan Implementation Occurring on Effective Date.**   On the Effective Date, without any further action by Debtor or Reorganized Debtor, all of the Debtor's Assets shall vest in Reorganized Debtor, subject to the terms and conditions of the Plan, and the following events shall occur in the following sequence:

**4.2. Reorganized Debtor.**  On and after the Effective Date, Reorganized Debtor shall retain all licenses necessary to its operations that existed as of the Petition Date.

**4.3. Notice of Effectiveness.**  When all of the steps contemplated by Section 6.1 have been completed, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential holders of Administrative Claims known to the Reorganized Debtor (whether or not disputed), a Notice of Effective Date of Plan. The Notice of Effective Date of Plan shall include notice of the Administrative Claim Bar Date.

**4.4. Operations and Management of Reorganized Debtor.**  From the Effective Date, the Reorganized Debtor shall continue to operate any business and manage any property, with full authority to make all decisions and take all actions to effectuate the Plan.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**4.5. Source of Payments.**  Payments and distributions under the Plan will be funded by the Debtor from his personal income, which consists principally of his salary and distributions from RLG.  The Debtor may also seek to liquidate exempt assets or borrow monies to fund payments or distributions under the Plan as well.

**4.6. Final Decree.**  Notwithstanding otherwise applicable law, the Chapter 11 Case shall be closed and a Final Decree entered as soon as possible after the occurrence of the Effective Date, unless and until:  (a) all adversary proceedings and contested matters pending before the Bankruptcy Court have been resolved by a Final Order; and (c) all Claims have either:  (i) become Allowed Claims and payments have begun in accordance with the treatment to be given such Allowed Claim pursuant to the Plan; (ii) been disallowed by a Final Order or deemed to be a Disallowed Claim, in accordance with the terms of the Plan; (iii) been assumed by Debtor, or (iv) reinstated.

**4.7. Administrative Closure.**  After the Effective Date, but prior to the entry of a Discharge, the Debtor may seek to administratively close his Chapter 11 Case and prior to completion of his Plan payments and without prejudice to his seeking to reopen the Chapter 11 Case at a later date, and without the payment of any reopening fee pursuant to 28 U.S.C. § 1930 to the Clerk of Court, in order to seek the entry of a Discharge at the appropriate time.

**4.8. Effectuating Documents, Further Transactions.**  On and after the Effective Date, Debtor is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of Debtor, as applicable, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

## 5. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1. Executory Contracts and Unexpired Leases.**  Except for Executory Contracts and Unexpired Leases specifically addressed in the Plan or set forth on the schedule of Assumed Executory Contracts and Unexpired Leases attached as Schedule 5.1 hereto (which may be supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order and thereafter pursuant to Section 5.3 of the Plan), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed rejected by Reorganized Debtor on the Effective Date.

**5.2. Approval of Assumption or Rejection.**  Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to section 365(a) of the Bankruptcy Code, of the assumption by the Debtor of each Executory Contract and Unexpired Lease to which the Debtor are a party and which is listed on Schedule 5.1, not otherwise provided for in the Plan and neither assumed, assumed and assigned, nor rejected by separate order prior to the Effective Date; and (ii) assumption by the Debtor of each Executory Contract and Unexpired Lease to which the Debtor are a party listed on Schedule 5.1. Upon the Effective Date, each counter party to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to assumption contemplated by section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption. To the extent applicable, all Executory Contracts or Unexpired Leases of Reorganized Debtor assumed pursuant to this Section 5 shall

14

be deemed modified such that the transactions contemplated by the Plan shall not be a "change of control," however such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by the Confirmation of the Plan. Also, to the extent applicable, all Executory Contracts or Unexpired Leases of the Debtor assumed pursuant to this <u>Section 5</u> shall be assigned to Reorganized Debtor on the Effective Date, and such assignment shall not be a "change of control," however such term may be defined in the relevant Executory Contract or Unexpired Lease, and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by the Confirmation of the Plan.

**5.3. Cure of Defaults.**    The Debtor or Reorganized Debtor shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to this <u>Section 5</u> upon the latest of (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court or agreed upon by the Debtor, and after the Effective Date, Reorganized Debtor; or (iii) the first Business Day following the fourteenth (14th) day after the entry of a Final Order resolving any dispute regarding (a) a Cure amount; (b) the ability of the Debtor or the Reorganized Debtor to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code; *provided*, *however*, that upon resolution of a dispute over a Cure amount, Reorganized Debtor may reject the Executory Contract or Unexpired Lease notwithstanding a previous listing as assumed; or (c) any other disputed matter pertaining to assumption, assignment or the Cure of a particular Executory Contract or an Unexpired Lease. <u>Schedule 5.1</u> to the Plan lists the Debtor's proposed Cure amounts, if any, that will be paid as provided for above, which may be amended up to and including the commencement of the Confirmation Hearing.

**5.4. Objection to Cure Amounts.**    Any party to an Executory Contract or Unexpired Lease who objects to the Cure amounts listed on <u>Schedule 5.1</u> to the Plan must file and serve an objection on the Debtor's counsel no later than the deadline set by the Bankruptcy Court for filing Plan objections.  Failure to file and serve a timely objection shall be deemed consent to the Cure amounts listed on <u>Schedule 5.1</u>. Any Cure amounts shall be the responsibility of Reorganized Debtor.  If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of Reorganized Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption, except as provided in <u>Section 5.1</u> of the Plan.

**5.5. Confirmation Order.**    The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions and rejections described in this <u>Section 5</u> of the Plan, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.  Notwithstanding the foregoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease (or if the time period for a non-Debtor to object to the Cure has not yet lapsed), the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption by the Debtor.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**5.6. Post-Petition Date Contracts and Leases.**  Each such Executory Contract and Unexpired Lease shall be performed by the Debtor or Reorganized Debtor, as applicable, in the ordinary course of business.

**5.7. Rejection Damages Bar Date.**  All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease rejected by operation of the Plan shall be filed no later than twenty one (21) days after the Effective Date. Any Claim not filed within such time shall be forever barred.

**5.8. Modifications, Amendments, Supplements, Restatements, or Other Agreements.**  Unless otherwise provided, each Executory Contract and Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such matter, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.  Modifications, amendments, supplements, and restatements to pre-petition Executory Contracts and Unexpired Leases that have been executed by Debtor during the Chapter 11 Case shall not be deemed to alter the pre-petition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**5.9.  Reservation of Rights.**  Neither the exclusion nor inclusion of any contract or lease, nor anything contained in the Plan, shall constitute an admission by Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

# 6. MANNER OF DISTRIBUTION OF PROPERTY UNDER THE PLAN

**6.1. Distributions on Account of Claims Allowed as of the Effective Date.**  Distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Effective Date, as otherwise set forth in the Plan, or on the first date thereafter as is reasonably practicable.

**6.2. Manner of Payment Under the Plan.**  Distributions of Cash to be made by the Debtor or Reorganized Debtor pursuant to the Plan shall be made, at the discretion of the Debtor or Reorganized Debtor, by check drawn on the Debtor's or Reorganized Debtor's bank account, by wire transfer, or by any other means.

**6.3. Whole Dollars.**  Any other provision of the Plan to the contrary notwithstanding, no payments of cents will be made.  Whenever any payment of cents would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down).

**6.4. Escheat.**  Holders of Allowed Claims shall have ninety (90) days from the check date to negotiate Distribution checks issued by the Debtor or Reorganized Debtor under the terms of the Plan, otherwise payment on such checks may at the Debtor's or Reorganized Debtor's sole

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

discretion be stopped and the funds shall escheat to the Debtor or Reorganized Debtor and shall be promptly distributed to Debtor or Reorganized Debtor in accordance with section 347 of the Bankruptcy Code.

**6.5. Delivery of Distributions.**

**6.5.1. Record Date for Distributions.**  On the Distribution Record Date, the Claims Register shall be closed and any Person responsible for making Distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Reorganized Debtor shall make Distributions to the transferee only to the extent practical and in any event only if the relevant transfer forms contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

**6.5.2. Delivery of Distributions in General.**  Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, Distributions to all Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Debtor or Reorganized Debtor:

**6.5.2.1.** In accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004;

**6.5.2.2.** To the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if Debtor has been notified in writing of a change of address);

**6.5.2.3.** To the addresses set forth in any written notices of address changes delivered to Debtor after the date of any related Proof of Claim;

**6.5.2.4.** To the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtor or Reorganized Debtor have not received a written notice of change of address; or

**6.5.2.5.** To any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.

**6.5.3. Distributions Not Subject to Legal Process.**  Except as otherwise provided in the Plan, Distributions under the Plan, made on account of Allowed Claims, shall not be subject to levy, garnishment, attachment, or like legal process. Each Holder of an Allowed Claim shall have and receive the benefit of the Distributions in the manner set forth in the Plan.  Absent willful misconduct or gross negligence, Debtor and Reorganized Debtor, as applicable, shall not incur any liability on account of any Distributions made under the Plan.

**6.5.4. Returned Distributions.**  In the case of Distributions to the Holders of Allowed Claims that are returned to the Debtor or Reorganized Debtor due to an incorrect or incomplete address, the Debtor or Reorganized Debtor shall retain any such returned

17

Distribution in a segregated account established by the Debtor or Reorganized Debtor to keep track of any returned Distributions. Unless the Holder of the Allowed Claim relating to any such returned Distribution contacts the Debtor or Reorganized Debtor (or his designee) within three (3) months from the date on which such Distribution was returned and provides the Debtor or Reorganized Debtor (or his designee) with acceptable proof of identity and an accurate address, such Holder shall forfeit all rights thereto, and to any and all future Distributions or rights under the Plan. In such event, the Claim for which such Distributions was issued shall be treated as a Disallowed Claim and the Distribution on account of such Disallowed Claim shall promptly be distributed to Debtor.

**6.5.5. Disputed Distributions.** In the event of any dispute between or among Holders of Claims as to the right to any Holder of a Claim to receive or retain any Distribution to be made to such Holder under the Plan, the Debtor or Reorganized Debtor, in lieu of making such Distribution to such Holder, may make it instead into an escrow account for payment as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves. Any such Holder who fails to raise such dispute by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed Distribution by the Debtor or Reorganized Debtor shall be deemed to have forever waived any right to dispute such Distribution or to enjoin, impair or otherwise restrict the use of any such Distribution.

**6.5.6. Setoffs.** The Debtor or Reorganized Debtor may, but shall not be required to, set-off against any Distributions to be made pursuant to the Plan to a Holder of an Allowed Claim, Claims of any nature whatsoever that Debtor may have, or may have had, against such Holder that have not been previously released, but neither the failure to do so, nor the allowance of any Claim held by such Holder shall constitute a waiver or release by the Debtor or Reorganized Debtor of any such Claim Debtor may have, or may have had, against such Holder.

**6.5.7. Withholding Taxes.** The Debtor or Reorganized Debtor shall be entitled to deduct any applicable federal or state withholding taxes from any payments made with respect to Allowed Claims, as appropriate, and shall otherwise comply with section 346 of the Bankruptcy Code.

**6.5.8. No Recourse.** Except as specifically set forth herein, no recourse shall ever be had, directly or indirectly, against officer, director, agent, attorney, accountant or other professional for the Reorganized Debtor, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking obligation, covenant or agreement whatsoever executed by the Reorganized Debtor under the Plan, or by reason of the creation of any indebtedness by the Reorganized Debtor under the Plan for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Reorganized Debtor, whether in writing or otherwise, shall be enforceable only against and be satisfied only by the Reorganized Debtor and the Assets.

18

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

# 7. PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**7.1. Objection to and Resolution of Claims.** Except as to applications for allowance of compensation and reimbursement of expenses under sections 330, 331 and/or 503 of the Bankruptcy Code, Debtor shall, on and after the Effective Date, have the exclusive right to make and file objections to Claims. On and after the Effective Date, Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to any Claims and compromise, settle or otherwise resolve Disputed Claims without approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, Debtor and, on and after the Effective Date, Debtor, shall file all objections to Claims that are the subject of Proofs of Claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses with respect to Professional Fee Claims) and serve such objections upon the Holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred eighty (180) days after the Effective Date or such later date as may be approved or extended by the Bankruptcy Court.

**7.2. Payments.** Payments and Distributions to each Holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provision of the Plan with respect to the Class of Creditors to which the respective Holder of an Allowed Claim belongs. Without limiting the generality of the foregoing, Debtor shall not be required to object to any Claim irrespective of whether such Claim is Allowed or Disputed, whether in whole or in part.

**7.3. Contingent Claims.** Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan. The Holder of a contingent Claim will only be entitled to a Distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

**7.4. Estimation of Claims.** Debtor shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether Debtor previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on the amount of such Claim, Debtor may elect to pursue any supplemental proceedings to object to the allowance of such Claim.

# 8. RESERVATION OF RIGHTS

**8.1. Withdrawal of Plan; Rights if Plan Not Confirmed; Effective Date Does Not Occur.** Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If Debtor revokes or withdraws the Plan, or if Confirmation of the Plan or the Effective Date does not ultimately occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan

(including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests by or against Debtor or any Person; (b) prejudice in any manner the rights of Debtor or any other Person in any further proceedings involving Debtor; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by Debtor or any other Person.

**8.2. No Admissions or Waiver.**  Without limiting the generality of any similar provision in the Plan, notwithstanding anything in the Plan to the contrary, nothing contained in the Plan or in the Disclosure Statement shall be deemed an admission by Debtor or any Person with respect to any matter set forth herein.  If Confirmation of the Plan or the Effective Date does not ultimately occur, no statement contained in the Plan or in the Disclosure Statement may be used or relied on in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 Case against Debtor.  Debtor reserves any and all of their rights as against all Persons and Entities in the event Confirmation of the Plan or the Effective Date does not ultimately occur.

## 9. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**9.1. Conditions to Confirmation.**  As a condition precedent to the Confirmation of the Plan, the Confirmation Order shall be in form and substance reasonably acceptable to the Debtor.

**9.2. Conditions to Occurrence of Effective Date.**    The following are conditions precedent to the occurrence of the Effective Date:

**9.2.1.**  The Confirmation Order shall be a Final Order, except that Debtor reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order, under circumstances that would moot such appeal;

**9.2.2.**  No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal;

**9.2.3.**  All documents necessary to implement the transactions contemplated by the Plan shall be in form and substance reasonably acceptable to the Debtor;

**9.2.4.**  Sufficient Cash and other assets are set aside, reserved and withheld to make the distributions required by the Bankruptcy Code and the Plan; and

**9.2.5.**  Debtor, in his sole discretion, may waive the Final Order condition in Section 9.2.1 above at any time from and after the Confirmation Date.  In that event, Debtor will be entitled to render any or all performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived; including, but not limited to, the right to perform under any circumstances which would moot any appeal, review or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review or other challenge.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

20

## 10. EFFECT OF CONFIRMATION OF PLAN

**10.1. Discharge.**  Confirmation of this Plan does not discharge the Debtor of any debts until the Bankruptcy Court grants him a Discharge pursuant to section 1141(d)(5) of the Bankruptcy Code.  Notwithstanding the foregoing, for the avoidance of doubt, nothing herein is intended or should be construed as granting any Creditor relief from Bankruptcy Rules 4004(a) and 4007(c), and the deadline for filing a complaint for exception to or denial of the Debtor's discharge or of the dischargeability of any debt or Claim pursuant to sections 523(c) and 727 of the Bankruptcy Code.

**10.2. Exculpation.**  *Neither the Debtor nor any of his Representatives shall have or incur any liability to any Holder of a Claim against the Debtor, or any other party-in-interest, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct.  The Debtor and his Representatives shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under the Plan or in the context of the Chapter 11 Case.  No Holder of a Claim against Debtor, or any other party-in-interest, including their respective Representatives, shall have any right of action against the Debtor or any of his Representatives, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation or administration of the Plan, except to the extent arising from fraud, gross negligence or willful misconduct.  Nothing in this Section shall be deemed an exculpation by the Debtor or any of his Representatives for any acts, omissions, transactions, events or other occurrences taking place after the Effective Date.*

**10.3. Modification of Debt Instruments.**  On the Effective Date, all instruments evidencing indebtedness of Debtor held by Holders of Claims that are Impaired by the Plan or have been paid in full pursuant thereto shall be deemed modified or canceled as against Debtor as set forth in the Plan.

**10.4. Judgments Void.**  Except for (a) any decision of the Nevada Supreme Court with respect to the Plea with the Office of Bar Counsel in the Disciplinary Proceeding, and/or other professional disciplinary proceedings related thereto, and (b) the Randazza Divorce Decree, any judgment, decision, order, recommendation, finding, conclusion, or arbitration award obtained before the Effective Date in any court other than the Bankruptcy Court shall be null and void, and without legal or precedential effect whatsoever as a determination of the Debtor's liability with respect to any debt or Claim treated by the Plan.

**10.5. No Effect on Insurance Settlement.**  Nothing in this Plan is intended or should be construed as altering or affecting the Settlement Agreement and Mutual Release (the "Insurance Settlement") dated as of June 3, 2016 and involving certain of the Excelsior Parties, the Debtor, MJRPA, and RLG, among others, and which the Bankruptcy Court approved by order entered on July 22, 2016 as ECF No. 157.  The terms and conditions of the foregoing settlement agreement and related order of the Bankruptcy Court are incorporated herein by reference, and shall continue in full force and effect.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**10.6. Approval of Randazza Marital Settlement Agreement.** The entry of the Confirmation Order on this Plan shall also constitute the Bankruptcy Court's approval of the Randazza Marital Settlement Documents as fair and equitable, and its authorization and direction that they be effectuated according to their terms and conditions.

**10.7. Revesting of Assets in Debtor.** Except as otherwise expressly provided herein or in the Confirmation Order, on the Effective Date, but retroactive to the Confirmation Date, without any further action, Reorganized Debtor will be vested with all of the property of the Estate, wherever situate, free and clear of all Claims, Liens (except for Liens provided or authorized pursuant to the Plan and Permitted Encumbrances). Without limiting the generality of the foregoing, on and after the Effective Date, Debtor shall be vested with all of the property of the Estate, wherever situated, free and clear of any Claims based on any form of successor liability or similar or related theory of liability. On and after the Effective Date, (i) Debtor shall be free of any restrictions imposed by the Bankruptcy Code or Bankruptcy Court, may operate his business and may use, acquire or dispose of assets including the Assets free of any restrictions imposed by the Bankruptcy Code and the Bankruptcy Rules and without supervision or approval by the Bankruptcy Court, other than the obligations set forth in the Plan, or the Confirmation Order. Without limiting the generality of the foregoing and except as otherwise expressly provided herein or in the Confirmation Order, any Causes of Action, will be preserved and retained solely for Debtor's commencement, prosecution, use and benefit.

**10.8. Preservation of Causes of Action.** Pursuant to section 1123(b) of the Bankruptcy Code, Debtor shall retain and reserve the right to enforce all rights to commence and pursue Causes of Action whether arising prior to or after the Petition Date, and whether pending as of or Filed after the Effective Date, in any court or other tribunal. Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan, or any Final Order, Debtor on behalf of themselves expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action upon Confirmation or the Effective Date. No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that Debtor, will not pursue any and all available Causes of Action against them. Debtor expressly reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.

**10.9. Maintenance of Administrative Claim Status.** Notwithstanding entry of the Confirmation Order or any Discharge granted to Debtor consistent with the other provisions of this Plan and applicable law, Allowed Administrative Claims shall maintain their administrative priority status under section 507(a)(2) of the Bankruptcy Code until paid in full.

**10.10. Disallowance of Claims Not Allowed and Tardy Proofs of Claim.** The occurrence of the Effective Date shall operate to disallow any Unsecured Claims that either have not been Allowed by such date, including but not limited to any claims listed on the Debtor's Schedules as amended, as disputed, contingent or unliquidated, or which are the subject of a Proof of Claim that was filed after the Bar Date, which tardy Proofs of Claim shall further be deemed automatically expunged without further order of the Court as of the Effective Date.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

22

**10.11. No Limitation on Effect of Confirmation.**  Nothing contained in the Plan or the Disclosure Statement will limit, waive or restrict in any way the effect of Confirmation as set forth in section 1141 of the Bankruptcy Code.  Confirmation will bind Debtor, all Creditors, and other parties in interest to the provisions of the Plan, whether or not the Claim of such Creditor is Impaired under the Plan and whether or not such Creditor has accepted the Plan and whether or not a proof of Claim has been filed or deemed to have been filed under sections 501 or 1111(a) of the Bankruptcy Code, or such Claim is allowed under section 502 of the Bankruptcy Code.

## 11. RETENTION OF JURISDICTION

**11.1.   Retention of Jurisdiction.**   Except to the extent otherwise expressly set forth herein, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following the Confirmation Date for the following purposes, it being expressly intended that such retention of jurisdiction shall in all cases hereafter set forth, extend to any actions or proceedings commenced prior or subsequent to the Confirmation Date and/or the Effective Date whether by Debtor, or the parties specified herein:

**11.1.1.** To hear and determine any objections to the allowance of Claims, including any objections by Debtor with respect to any Claims which have been reinstated or assumed in accordance with the terms of the Plan;

**11.1.2.** To determine any and all applications for compensation for any Professionals and similar fees to the extent made specifically subject to a hearing under the Plan and applicable provisions of the Bankruptcy Code;

**11.1.3.** To determine any and all applications for the rejection or assumption and assignment of Executory Contracts or for the rejection or assumption and assignment, as the case may be, of Unexpired Leases to which Debtor is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

**11.1.4.** To modify the Plan pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

**11.1.5.** To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan;

**11.1.6.** To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Bankruptcy Court entered in the Chapter 11 Case;

**11.1.7.** To adjudicate all controversies concerning the classification of any Claim;

**11.1.8.** To liquidate damages in connection with any disputed, contingent or unliquidated Claim;

**11.1.9.** To adjudicate all Claims to a security or ownership interest in any of the Assets, or in any proceeds thereof;

23

**11.1.10.** To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by Debtor;

**11.1.11.** To determine all questions and disputes regarding recovery of and entitlement to any property of Debtor, or in any proceeds thereof;

**11.1.12.** To adjudicate all Causes of Action with respect to which Debtor is a party, whether or not such Claim or controversy is raised or filed before or after the Effective Date;

**11.1.13.** To determine issues and disputes concerning entitlement to Distributions to be made under and pursuant to the Plan;

**11.1.14.** To enter any order, including injunctions, necessary to enforce the title, rights and powers of Debtor's limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary or appropriate;

**11.1.15.** To determine such other matters as may be provided for in the Confirmation Order and the Plan, or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

**11.1.16.** To enter a Final Decree closing the Chapter 11 Case;

**11.1.17.** To enforce the provisions of any Administrative Claim Bar Date entered by the Bankruptcy Court;

**11.1.18.** To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof;

**11.1.19.** To determine issues and disputes with respect to the Refinanced Secured Loan Documents arising after the Effective Date; and

**11.1.20.** Without limiting the generality of any of the foregoing, to hear and determine matters concerning state, local, and federal taxes in accordance with sections 345, 505, and 1146 of the Bankruptcy Code.

**11.2.   Jurisdiction Unaffected.**   The occurrence of the Effective Date and/or the entry of a Final Decree shall not divest the Bankruptcy Court of any jurisdiction otherwise retained under this Article 11 or the Confirmation Order.

**11.3.   Failure of Bankruptcy Court to Exercise Jurisdiction.**   If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising under, arising in or related to the Bankruptcy Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## 12. MISCELLANEOUS PROVISIONS

### 12.1. Modification of the Plan.

12.1.1 Debtor may alter, amend or modify the Plan at any time before the entry of the Confirmation Order, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and Debtor shall have complied with section 1125 of the Bankruptcy Code. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if Debtor modifies the Plan before Confirmation.

12.2.2 Debtor may also seek to alter, amend or modify the Plan at any time after Confirmation so long as (i) the Plan has not been substantially consummated, (ii) as altered, amended or modified the Plan satisfies the conditions of section 1122 and 1123 of the Bankruptcy Code, and (iii) the Bankruptcy Court authorizes the proposed modification after notice and a hearing under section 1129 of the Bankruptcy Code.

12.2.3 A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder. Prior the Effective Date, Debtor may make appropriate technical non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of Holders of Claims.

12.2.4 Debtor further reserve the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

12.2.5 Debtor reserve the right, in accordance with the Bankruptcy Code, to amend, amend or modify the Plan before or after the Confirmation Date, including making any amendments or modifications to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

### 12.2. Notices to Debtor.

12.2. Notices to Debtor. Except as otherwise set forth below, all notices, requests, elections or demands in connection with the Plan, including any change of address of any Holder of a Claim for the purposes of receiving any Distributions under the Plan, shall be in writing and shall be delivered personally, by facsimile, electronic mail, overnight courier, or mailed by first class mail. Such notice shall be deemed to have been given when received or, if mailed by first class mail, five (5) Business Days after the date of mailing, or if express mailed, the next Business Day following the date of mailing and addressed to the following:

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

| | |
|---|---|
| If to Debtor: | Marc John Randazza, Esq. |
| | c/o Randazza Legal Group, PLLC |
| | 2764 Lake Sahara Dr., Suite 109 |
| | Las Vegas, Nevada 89117 |
| | Email:  mjr@randazza.com |
| | |
| With a Copy to: | Larson Zirzow & Kaplan, LLC |
| | Attn: Matthew C. Zirzow, Esq. |
| | 850 E. Bonneville Ave. |
| | Las Vegas, Nevada 89101 |
| | Email:  mzirzow@lzklegal.com |

**12.3.  Notices to Creditors.**  All notices and requests to Holders of Claims of any Class shall be sent to them at their known address or if a Proof of Claim has been filed, to the address on their Proof of Claim.  Any Holder of a Claim of any Class may designate in writing any other address for purposes of this Section, which designation shall be effective upon receipt.

**12.4.  Headings.**  The headings used in the Plan are inserted for convenience only and do not constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

**12.5.  Non-Severability of Plan Provisions.**  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of Debtor and any other Person affected by such provision; and (c) nonseverable and mutually dependent.

**12.6.  Waiver or Estoppel.**  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with Debtor or his counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

**12.7.  Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release or other agreement entered into in connection with the Plan or in any document which remains unaltered by the Plan, the rights, duties and obligations of Debtor and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law provisions.

**12.8.  Successors and Assigns.**  The rights and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**12.9.  Modification of Payment Terms.**  The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Allowed Claim at any time after the Effective Date upon the prior written consent of the holder whose Allowed Claim treatment is being adversely affected.

26

**12.10. Effectuating Documents; Further Transactions; Timing.** The Debtor and the Reorganized Debtor are each authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued, transferred or canceled pursuant to the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously. The Debtor and the Reorganized Debtor are authorized and directed to do such acts and execute such documents as are necessary to implement the Plan.

**12.11. Exemption from Transfer Taxes.** Pursuant to section 1146(c) of the Bankruptcy Code, (i) the issuance, distribution, transfer or exchange of Estate property; (ii) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with the Plan or the Confirmation Order; (iii) the making, assignment, modification or recording of any lease or sublease; or (iv) the making, delivery or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, Confirmation Order or any transaction contemplated above, or any transactions arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**12.12. Default Under Plan.**

**12.12.1. Creditor Action Restrained.** The confirmed Plan is binding on every Creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to Secured Claims, no Creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in Material Default under the Plan, except as provided in Section 12.12.5 below.

**12.12.2. Obligations to Each Class Separate.** Debtor's obligations under the Plan are separate with respect to each Class of Creditors. Default in performance of an obligation due to members of one Class shall not by itself constitute a default with respect to members of other Classes. For purposes of this Section 12.11, the holders of all Administrative Claims shall be considered to be a single class, the holders of all Priority Claims shall be considered to be a single class, and each non-debtor party to an assumed Executory Contract or Unexpired Lease shall be considered to be a separate class.

**12.12.3. Material Default Defined.** Except with respect to defaults in the Excelsior Settlement Agreement, the Randazza Marital Settlement Documents, or the Insurance Settlement, which defaults shall be governed by the terms and conditions of those respective agreements, in the event the Debtor fails to timely perform any of the obligations set forth in the Plan from and after the Effective Date, the applicable Creditor or party-in-interest shall notify the Debtor and the Debtor's counsel of the default in writing in accordance with the notice provisions herein. If Debtor fails within thirty (30)

calendar days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the Bankruptcy Court an extension of time to cure the default, which shall be given for good cause shown if the cure reasonably requires more than thirty (30) days to cure and the Debtor initiates reasonable steps to begin such cure and completes all reasonable and necessary steps to cure sufficient to produce compliance as soon as reasonably practical; or (iii) to obtain from the Bankruptcy Court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected Class. If the Debtor fails to timely cure the default as provided above, the applicable Creditor shall be free to pursue any and all rights and remedies it may have under the contract(s) between the parties and/or applicable law, as modified by this Plan, and without further action by or proceedings before the Bankruptcy Court.

**12.12.4. Remedies Upon Material Default.** Upon Material Default, any member of a Class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to chapter 7; or (ii) without further order of the Court has relief from automatic stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

**12.12.5. Claims Not Affected by Plan.** Upon confirmation of the Plan, and subject to Section 12.11(c), any Creditor whose Claims are left Unimpaired under the Plan may, notwithstanding Sections 12.12.1 through Section 12.12.4, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D) of the Bankruptcy Code.

**12.12.6. Effect of Conversion to Chapter 7.** If the case is at any time converted to one under chapter 7, property of the Debtor shall not vest in the chapter 7 bankruptcy estate or be under the control of any chapter 7 trustee appointed to administer such case to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from chapter 13 to chapter 7, but rather shall be retained by the Debtor or Reorganized Debtor as the case may be as his sole and exclusive property notwithstanding such conversion.

**12.13. Cramdown.** In the event that any Impaired Class is determined to have rejected the Plan in accordance with section 1126 of the Bankruptcy Code, the Debtor may invoke the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan. Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**12.14. Fees and Reporting to the United States Trustee.** Prior to the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor, is obligated to pay the Office of the U.S. Trustee all U.S. Trustee Fees. All U.S. Trustee Fees accruing prior to Confirmation of the Plan will be paid on or before the Effective Date pursuant to section 1129(a)(12) of the Bankruptcy Code. All U.S. Trustee Fees accruing post-Confirmation are due on a calendar quarter basis and will be reported on post-confirmation quarterly reports as required by the U.S. Trustee Guidelines. Until the entry of the Final Decree and case closing, the Debtor shall File, not later than twenty (20) days after the end of the calendar quarter which occurs after the entry of the Confirmation Order, and every calendar quarter thereafter, a report of the action taken by the Reorganized Debtor and the progress made toward consummation of the confirmed Plan.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

28

1    U.S. Trustee Fees continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed.

2

3    **12.15. Entire Agreement.**  The Plan, as described herein, the Disclosure Statement and exhibits thereto, set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents.  No party hereto shall be bound by any terms, conditions, definitions, understandings or representations with respect to the subject matter hereof, other than as in expressly provided for herein or as may hereafter be agreed by the parties in writing.

4

5

6    Dated:  September 13, 2018.

7

8    _/s/ Marc J. Randazza_____
       MARC J. RANDAZZA

9

10   Prepared and submitted:

11   By:  _/s/ Matthew C. Zirzow_____
       LARSON ZIRZOW & KAPLAN, LLC
12   ZACHARIAH LARSON, ESQ.
       Nevada Bar No. 7787
13   MATTHEW C. ZIRZOW, ESQ.
       Nevada Bar No. 7222
14   850 E. Bonneville Ave.
       Las Vegas, Nevada 89101
15

16   Attorneys for Debtor

17

18

19

20

21

22

23

24

25

26

27

28

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170  Fax:  (702) 382-1169

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCHEDULE 1.1.46**

**PRESERVED LITIGATION CLAIMS**

All defined terms used herein shall have the meanings set forth in the Plan.  The following is a non-exhaustive list of potential parties against whom the Debtor, and/or the Reorganized Debtor may hold Litigation Claims.  The Debtor and Reorganized Debtor reserve their right to modify this list to amend or add parties or causes of action, but disclaim any obligation to do so.  The following Litigation Claims held by the Debtor are expressly reserved and retained:

1.	All actions relating to any tax refunds from the Internal Revenue Service, Department of the Treasury, or any applicable state or local taxing authorities, including but not limited to in Nevada, California, Florida, Connecticut, Massachusetts, due and owing or that may be due and owing to the Debtor, or otherwise arising under, out of, in connection with or related thereto.

2.	Avoidance Actions and Litigation Claims arising out of transactions involving, concerning, or related to the Debtor.

3.	Any and all claims or judgments against Crystal Cox, Elliot Bernstein, or any parties acting in coordination or conspiracy with the foregoing.

4.	Any and all rights or claims with respect to any insurance policy, including without limitation for damages or the recovery of or reimbursement of any attorneys' fees and costs incurred in any matters.

5.	Any and all claims that may have accrued against the Excelsior Parties from and after the effective date of the Excelsior Settlement Agreement.

6.	All other rights, privileges, claims, actions, or remedies, whether arising at law or in equity.

7.	Unless Avoidance Actions or Litigation Claims against any Person are expressly waived, relinquished, released, compromised, or settled by the Plan or any Final Order, the Debtor expressly reserves for his benefit, and the benefit of Reorganized Debtor, all Avoidance Actions and Litigation Claims, and therefore no preclusion doctrine (including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Avoidance Actions or Litigation Claims after the Effective Date of the Plan.  In addition, the Debtor expressly reserves for his benefit, and the benefit of Reorganized Debtor, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Person, including plaintiffs and co-defendants in such lawsuits.

## SCHEDULE 5.1

### EXECUTORY CONTRACTS AND UNEXPIRED
### LEASES PROPOSED TO BE ASSUMED

| Counterparty | Description | Proposed Cure |
|---|---|---|
| None. | | $0.00 |

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

# EXHIBIT 2

**Marc Randazza - Projected Disposable Income for Chapter 11 Plan**

*Monthly Income*

| | |
|---|---|
| Net Salary from Randazza Legal Group (Net of Payroll Deductions) | $17,500.00 |
| **Total Monthly Income** | **$17,500.00** |

*Montly Expenses*

| | |
|---|---|
| Home Mortgage - First | $3,800.00 |
| Home | |
|     Maintenance | $500.00 |
|     HOA | $320.00 |
|     Insurance | $250.00 |
|     Property Taxes | $800.00 |
|     Security Alarm | $100.00 |
| Utilities | |
|     Power, Heat, Gas | $600.00 |
|     Phone, Cable, Internet | $200.00 |
|     Water, Sewer, Garbage | $500.00 |
| Food/Groceries/Household Supplies | $1,000.00 |
| Childcare and Children's Education | $2,000.00 |
| Clothing/Laundry/Dry Cleaning | $500.00 |
| Personal Care Products & Services | $500.00 |
| Medical/Dental | $200.00 |
| Transportation (Gas & Maintenance) | $400.00 |
| Entertainment, Recreation, Newspapers | $500.00 |
| Charitable/Religious Donations | $200.00 |
| Insurance | |
|     Health | $500.00 |
|     Vehicle | $400.00 |
| Vehicle Payment | $0.00 |
| Alimony | $2,000.00 |
| Child Support | $2,230.00 |
| **Total Monthly Expenses** | **$17,500.00** |

*Projected Disposable Income (Monthy)*                    *$0.00*

# EXHIBIT 3

**LIQUIDATION ANALYSIS - MARC RANDAZZA**

**ASSETS**

| Description | Net Liquidation Value | Exemption Claimed | Exempt Portion | Non-Exempt Portion | Notes |
|---|---|---|---|---|---|
| 10955 Iris Canyon Lane, Las Vegas, NV 89135 (Residence) | $495,000.00 | NRS 21.090(1)(l) | $495,000.00 | $0.00 | 1 |
| 2015 Toyota Sienna | $20,000.00 | NRS 21.090(1)(f) | $0.00 | Not Included | 2 |
| 2013 BMW 550i (Misuraca Trust) | $18,000.00 | NRS 21.090(1)(cc) | $18,000.00 | $0.00 | 3 |
| Checking & Savings Accounts | $15,000.00 | NRS 21.090(1)(g) | $11,250.00 | $3,750.00 | |
| Household Goods & Furnishings | $7,595.00 | NRS 21.090(1)(b) | $7,595.00 | $0.00 | |
| Clothing | $500.00 | NRS 21.090(1)(b) | $500.00 | $0.00 | |
| Jewelry (Wedding Rings) | $5,000.00 | NRS 21.090(1)(a) | $5,000.00 | $0.00 | 4 |
| Firearms | $500.00 | NRS 21.090(1)(i) | $500.00 | $0.00 | |
| Education IRA/Qualified State Tuition Plan | $46,429.00 | NRS 21.090(1)(r) | $46,429.00 | $0.00 | |
| IRA/401(k) | $188,021.00 | NRS 21.090(1)(r) | $188,021.00 | $0.00 | |
| Randazza Legal Group Pension | $338,473.00 | NRS 21.090(1)(r) | $338,473.00 | $0.00 | |
| Randazza Legal Group, PLLC | $30,000.00 | N/A | $0.00 | $30,000.00 | 5 |
| Marc J. Randazza, P.A. (Florida) | $0.00 | N/A | $0.00 | $0.00 | 6 |
| Litigation Claims | | | | | |
| adv. Alexandra Melody Mayers a/k/a Monica Foster | $0.00 | N/A | $0.00 | $0.00 | 7 |
| adv. Crystal L. Cox and Eliot Bernstein | $0.00 | N/A | $0.00 | $0.00 | 8 |
| Copyright/Trademark - The Legal Satyricon | $1,000.00 | N/A | $0.00 | $1,000.00 | |
| **Total:** | **$1,165,518.00** | | **$1,110,768.00** | **$34,750.00** | |

**PAYMENT OF CLAIMS**

| Type of Claim | Claim Amount | Recovery Under Plan | Recovery Under Plan | Recovery in Liquidation | Notes |
|---|---|---|---|---|---|
| **Secured Claims** | | | | | |
| Class 1 - Specialized Home Mortgage (Residence) | $330,000.00 | $330,000.00 | 100.00% | 100.00% | |
| Class 2 - Other Secured Claims | $0.00 | $0.00 | 100.00% | 100.00% | |
| **Total Secured Claims** | **$330,000.00** | | | | |
| | | | | | |
| **Administrative Claims** | | | | | |
| Theoretical Chapter 7 Trustee Fees | $5,000.00 | N/A | Not Applicable | 100.00% | 9 |
| Theoretical Chapter 7 Professional Fees & Expenses | $15,000.00 | N/A | Not Applicable | 100.00% | 10 |
| Chapter 11 Professional Fees & Expenses | $240,000.00 | $240,000.00 | 100.00% | 6.15% | 11 |
| **Total Administrative Claims** | **$260,000.00** | | | | |
| | | | | | |
| **Priority Claims** | | | | | |
| Priority Tax Claims (Unclassified) | $0.00 | $0.00 | 100.00% | 100.00% | |
| Class 3 - Priority Non-Tax Claims | $0.00 | $0.00 | 100.00% | 100.00% | |
| **Total Priority Claims** | **$0.00** | | | | |
| | | | | | |
| **Unsecured Claims** | | | | | |
| Class 4 - Excelsior Parties Claims | $2,300,000.00 | $40,000.00 | 1.74% | 0.00% | 12 |
| Class 5 - Jennifer Randazza Claims | Unknown | Per Agreement | Per Agreement | 0.00% | 13 |
| Class 6 - General Unsecured Claims | $228,000.00 | $34,750.00 | 15.24% | 0.00% | 14 |
| **Total General Unsecured Claims** | **$2,528,000.00** | | | | |

## Notes To Chapter 7 Liquidation Analysis

For purposes of this chapter 7 liquidation analysis, it is assumed hypothetically that the Plan could not ultimately be confirmed at a Confirmation Hearing held on October 15, 2018 and on that same date (the "Conversion Date"), the Chapter 11 Case was converted to a proceeding under chapter 7 of the Bankruptcy Code (the "Chapter 7 Case"). In connection with the hypothetical commencement of the Chapter 7 Case, it is assumed that on or about the Conversion Date, a chapter 7 trustee is appointed to, among other things, manage the liquidation process, complete a claims analysis, defend against causes of action and/or claims asserted against the Debtor, and distribute liquidation proceeds and other assets ultimately realized in accordance with the priorities established by the Bankruptcy Code. This chapter 7 liquidation analysis should be read in conjunction with the Disclosure Statement and all undefined, capitalized terms shall have the meaning ascribed to them in the Disclosure Statement and Plan.

1.     Total value of resident of $825,000 - $330,000 secured debt owed to Specialized = $495,000 in net equity.

2.     Property retained by Debtor's ex-spouse, Jennifer Randazza, as part of Randazza Marital Settlement Agreement. Vehicle value all or nearly all exempt in any event.

3.     Vehicle owned by Misuraca Trust, and vehicle value entirely exempt.

4.     Property retained by Debtor's ex-spouse, Jennifer Randazza, as part of Randazza Marital Settlement Agreement.

5.     Value is approximate liquidation value of Debtor's membership interest in operating law firm, including a percentage of used furniture, fixtures and equipment, as well as readily collectible accounts receivable, less an allowance for doubtful accounts.

6.     Entity is largely non-operational.

7.     Debtor does not believe such claims are readily collectible, but reserves all rights.

8.     Debtor does not believe such claims are readily collectible, but reserves all rights.

9.     Estimated chapter 7 trustee fees pursuant to the commission scale in section 326 of the Bankruptcy Code.

10.     Debtor assumes that a chapter 7 trustee would retain and employ counsel pursuant to section 327(a) of the Bankruptcy Code to assist in the review of the matter.

11.     Estimated as of July 2018, and net of payment of allowed interim professional fees and ordinary course administrative expenses. Amount is net of retainers applied and amounts already paid to professionals for interim compensation. Amount does not less out potential recoveries for insurance for reimbursement of fees and costs incurred, which requests remain pending.

1

12.  Total settlement payment to be paid by the Debtor pursuant to the Excelsior Settlement Agreement as approved by the Bankruptcy Court.

13.  But for the Randazza Marital Settlement Agreement, Mrs. Randazza would presumably have legal and equitable claims to the marital community estate, as well as potential nondischargeable claims pursuant to sections 523(a)(5) and/or (a)(15) of the Bankruptcy Code. Mr. Randazza was not a debtor in the Chapter 11 Case, and her sole and separate property is not property of the Debtor's bankruptcy estate.

14.  Per the allowed amounts in the Debtor's filed Schedules and that have not been marked as disputed, contingent or unliquidated, and per filed Proofs of Claim.

CLAIMS

| Claimant Name | Description of Claim | Claim Amount Per Schedules | Disputed on Schedules? | Proof of Claim Number | Filed Proof of Claim | Current Allowed Amount |
|---|---|---|---|---|---|---|
| **SCHEDULE D - SECURED** | | | | | | |
| Specialized Loan Service | Mortgage on Residence | $372,869.00 | | 6 | $371,219.03 | $330,000.00 |
| **SCHEDULE E - PRIORITY** | | | | | | |
| None | | | | | | |
| **SCHEDULE F - GENERAL UNSECURED** | | | | | | |
| American Express | Charge Account | $3,209.00 | Y | 5 | $1,051.54 | $0.00 |
| American Express | Charge Account | $28.00 | Y | | | $0.00 |
| American Express | Charge Account | $0.00 | Y | | | $0.00 |
| Amica Mutual Insurance Company | Insurer Roca Labs v. Randazza | Unknown | Y | | | $0.00 |
| Brian Tannebaum | Legal Fees | $20,000.00 | Y | | | $0.00 |
| Barclays Bank Delaware | Charge Account | $3,861.14 | | | | $3,861.14 |
| Brown White & Osborn Attorneys | Legal Fees | $28,392.86 | Y | | | $0.00 |
| Century Link | Utility Bill | $134.89 | | | | $134.89 |
| Champion Movers | Collections | $525.00 | Y | | | $0.00 |
| Citibank | Charge Account | $3,000.00 | Y | | | $0.00 |
| Clark County Water Reclamation | Utility Bill | $247.21 | | | | $247.21 |
| Comenity Capital/Virgam | Business Debt | $1,382.00 | Y | | | $0.00 |
| J. Malcolm DeVoy, Esq. | Former Employee | Unknown | | | | $0.00 |
| Hutchison & Steffen Attorneys | Legal Fees | $29,656.40 | | | | $29,656.40 |
| Internal Revenue Service | 2009 Taxes | N/A | | 2 | $6,287.93 | $6,287.93 |
| Jennifer Randazza | Ex-Spouse - Marital & Support | Unknown | | | | Unknown |
| Kain Spielman, P.A. | Business Legal Fees | $10,315.00 | | | | $10,315.00 |
| Las Vegas Valley Water District | Utility Bill | $438.98 | | | | $438.98 |
| Law Office of April S. Goodwin, P.A. | Legal Fees | Unknown | | | | $0.00 |
| Law Offices of Clyde DeWitt | Business Legal Fees | $25,000.00 | Y | | | $0.00 |
| Luke Charles Lirot, PA | Business Legal Fees | Unknown | | 1 | $20,359.45 | $20,359.45 |
| Mcydsnb | Charge Account | $0.00 | | | | $0.00 |
| Northwest Territorial Mint/Ross Hansen | Possible Business Claim | Unknown | Y | | | $0.00 |
| NV Energy | Utility Bill | $375.54 | | | | $375.54 |

**CLAIMS**

| | | | | | |
|---|---|---|---|---|---|
| Roca Labs, Inc. | Litigation Claims | $1,000,000.00 | Y | | $0.00 |
| Ronald D. Green, Esq. | Possible lawsuit/indemnity claim | Unknown | | | $0.00 |
| Jim Schutt | Possible Business Claim | Unknown | Y | | $0.00 |
| Southwest Gas Corporation | Utility Bill | $112.27 | | | $112.27 |
| Tony Coe | Business | $15,000.00 | Y | | $0.00 |
| Walters Law Group | Business Legal Fees | $77,102.08 | | | $77,102.08 |
| Weide & Miller, Ltd. | Business Legal Fees | Unknown | | 3 | $78,783.59 | $78,783.59 |
| **Total General Unsecured (Schedule F)** | | | | | | **$227,674.48** |
| | | | | | | |
| **Disallowed or Settled** | | | | | | |
| Crystal L. Cox | Litigation Claims | $10,000,000.00 | Y | | $10,000,000.00 | $0.00 |
| Clay Douglas | Litigation Claims | Unknown | Y | 7 | $1,831,792.59 | $0.00 |
| Excelsior Parties | Arbitration | $1,000,000.00 | Y | 4 | $1,552,614.00 | $40,000.00 |

# EXHIBIT 4

## MARITAL SETTLEMENT AGREEMENT

THIS AGREEMENT made and entered into this *30* day of *November* 2017, by and between MARC RANDAZZA ("Marc"), a resident of the County of Clark, State of Nevada, and JENNIFER RANDAZZA ("Jennifer"), a resident of the County of Clark, State of Nevada.

### W I T N E S S E T H:

WHEREAS, the parties to this Agreement were married on the 17th day of May, 2008, and ever since said date have been and now are husband and wife.

WHEREAS, there are two minor children of this marriage: N██ R██████, *[Redacted]* date of birth ██████████ 2008 and A██ R██████, date of birth ███████ 2010.

WHEREAS, in consequence of disputes and numerous differences, the parties hereto intend to continue to live separate and apart one from the other.

WHEREAS, it is the mutual wish and desire of the parties that a full and final adjustment and settlement of their property rights, interests and claims against each other be had, settled and determined at the present time by this Agreement, including all issues regarding the care and custody of their minor children, as well as their support and maintenance, as well as the support and maintenance of the parties, with each party releasing and forever discharging the other from any liability for support and maintenance other than as set forth herein, said provisions for support being an inseparable part of this property settlement, and being subject to the approval and order of the court in the divorce action in the Eighth Judicial District Court, Clark County, Nevada, Case Number *t S A*          .

WHEREAS, due to Marc's Bankruptcy, the terms of this Agreement may be subject to approval by the Bankruptcy Court.

WHEREAS, given the status of Marc's Bankruptcy case and ongoing bar prosecution, Marc's financial future is uncertain and significant contingent liabilities

1

MR                                                    JR

exist which might otherwise affect the outcome of the parties' divorce case as to the division of property and provision of support.

WHEREAS, despite this uncertainty, the parties wish to enter into the following agreements and indemnifications as a resolution of all pending issues and claims.

NOW, THEREFORE, in consideration of the foregoing facts and the mutual agreements and covenants herein contained, it is covenanted, agreed and promised by each party hereto as follows:

**1.0    INCORPORATION OF RECITALS**

The recitals above set forth are incorporated herein as a part of this Agreement.

**2.0    LIVING SEPARATE AND APART**

As of the date of this Agreement, Jennifer and Marc agree that at all times hereafter, it shall be lawful for each party to continue to live separate and apart from the other free from the marital control, interference, restraint, and authority of the other whatsoever, either directly or indirectly, as if each party were single and unmarried, and any property acquired as of the date of this Agreement shall be each party's separate property.

**3.0    CHILD CUSTODY**

3.1    The parties will share joint legal custody of the minor children.   Joint Legal Custody entails the following:

> Neither parent shall do anything which shall estrange the child from the other parent nor impair the natural development of the child's love and respect for each of the parents, nor disparage the other parent or undermine the parental authority or discipline of the other's household. Additionally, each parent shall instruct their respective family and friends that no disparaging remarks are to be made regarding the other parent in the presence of the child. Neither parent shall use contact with the child as a means of obtaining information about the other parent. The parents shall consult and cooperate with each other in substantial questions relating to religious upbringing, educational programs, significant changes in social environment, and health care of the child. Neither parent shall in any way indoctrinate the children into any religious belief.

2

MR

JR

The parents shall have access to medical and school records pertaining to the child and shall jointly consult, when possible, with any and all professionals involved with the child.

The parents agree that the children have been raised to date with no organized religion, and that they shall continue to be so unless the parents jointly agree otherwise.

All schools, health care providers, day care providers, and counselors shall be, when possible, selected by the parties jointly. The parties agree that the children shall be enrolled in the public schools in Essex County, Massachusetts for the 2018-2019 school year and thereafter unless the parties jointly agree otherwise. There is a preference for the Manchester-Essex or Hamilton-Wenham school districts, but this is not mandatory.

Each parent shall be empowered to obtain emergency health care for the child without the consent of the other parent. Each parent shall notify the other parent as soon as reasonably possible of any illness requiring medical attention, or any emergency involving the child.

Each parent shall provide the other parent, upon receipt, information concerning the well-being of the child, including, but not limited to, copies of report cards; school meeting notices; vacation schedules; class programs; requests for conferences; results of standardized or diagnostic tests; notice of activities involving the child; samples of school work; order forms for school pictures; and all communications from health care providers. The parents shall also exchange the names, addresses and telephone numbers of all schools, health care providers, regular day care providers, and counselors who have contact with their child.

Each parent shall provide the other parent, upon receipt, information concerning school, athletic, church, and social events in which the child participates. Both parents may participate in activities for the child, such as open houses, attendance at an athletic event, etc.

Each parent shall provide the other parent with the address and telephone number at which the minor child resides, and shall notify the other parent within 30 days prior to any change of address and provide the telephone number as soon as it is assigned.

Each parent shall provide the other parent with a travel itinerary and, whenever reasonably possible, telephone numbers at which the child can be reached whenever the child will be away from the parent's home for any period in excess of 2 nights or more.

Each parent shall be entitled to reasonable and liberal telephone, text, skype, or other communication with the child. Each parent is restrained

3

MR

JR

from unreasonably interfering with the child's right to privacy during such telephone conversations.

Day to day decisions including but not limited to bedtime, homework and day-to-day social activities customary for the age of the child and maturity, shall be made by the parent having actual physical custody of the child. That parent shall consult with the noncustodial parent in an effort to establish a mutually agreed upon policy regarding such day-to-day decisions.

All major decisions affecting the child's growth and development, including, but not limited to choice of school, course of study, extent of travel away from home, choice of camp, major medical treatment, lessons, psychotherapy, psychoanalysis or like treatment, part or full time employment, purchase or operation of a motor vehicle, specifically hazardous sports or activities, contraception and sex education and decisions relating to actual or potential litigation involving the child directly or as a beneficiary, other than custody, shall be considered major decisions and shall be considered and discussed in depth by and agreed to by both parties.

3.2     The parties shall share joint physical custody on an equal time share basis. The parties agree that due to the age of the children, that they will be flexible with the actual time share with the understanding that it is in the best interests of the children to spend an equal amount of time in the care of both parents. In the event of a dispute, the default time share shall be one parent Monday and Tuesday, the other parent Wednesday and Thursday, with alternating weeks of Friday, Saturday, and Sunday. If the parties can not agree on who gets which days, then it shall be settled by a coin toss.

3.3     The parties agree to equally share all major holidays by alternating each holiday each year. In the event of a dispute, the parties agree to mediate a full holiday parenting plan prior to seeking any Court involvement. However, the parties agree that the children shall spend Thanksgiving and Christmas 2017 in Las Vegas (unless the parties agree otherwise) and that they will spend Christmas 2018 with Jennifer. Christmas and Christmas Eve are separate holidays, and thus the children will spend alternating Christmas and Christmas Eve with each parent (unless the parties agree

MR

JR

otherwise).  The parties agree that any deviation from the alternating schedule does not create any future deviation.

3.4    The parties agree that by June 15, 2018, the children will be relocated to Essex County Massachusetts.  Once this relocation occurs, any further relocations must be by mutual agreement of the parties.  The parties agree that unless the children reside on Cape Ann, Massachusetts, regardless of their residence, the children shall spend at least 30 days over each summer vacation in Gloucester, Massachusetts (these days need not be consecutive) unless both parties mutually agree otherwise.  Unless there is an unexpected life-threatening situation or a death, Marc gets the children for St. Peter's Fiesta, including Sunday night.

3.5    In the event that Jennifer attempts to frustrate any efforts to move the children to Essex County, Massachusetts by July 1, 2018, all financial obligations to Jennifer from Marc of any kind shall be terminated (however, this does not include child support, which is an obligation to the children).  Further, the parties agree that the children shall live in Essex County, Massachusetts for at least three years.

In the event that Jennifer attempts to frustrate any efforts to move the children to Essex County, Massachusetts or to keep them there, the marital settlement funds in this agreement to Jennifer shall be reduced by $50,000 for each of these three years.  Therefore, if the attempt is between June 15, 2018 and June 15, 2019, Jennifer must rebate $150,000 to Marc.  If the attempt is between June 15, 2019 and June 15, 2020, Jennifer must rebate $100,000 to Marc.  If the attempt is between June 15, 2020 and June 15, 2021, Jennifer must rebate $50,000 to Marc.

The funds payable to Jennifer will be as follows, but as described further below, $350,000 prior to the move, with the $150,000 remaining in Ryan Hamilton's trust account, to be disbursed only upon the move to Essex County Massachusetts.  However,

5

MR                                                                                      JR

should Jennifer require some or any of those funds prior in order to buy a residence in Essex County, Massachusetts, the funds may be withdrawn for that purpose.

If the funds are taken for that reason, Marc may enforce the rebate by placing a lien (or equivalent encumbrance) on any real property that Jennifer may purchase for the three year period, with each year diminishing the lien by $50,000. Jennifer consents to and acknowledges Marc continuing lien right on any real property Jennifer may purchase for the three year period.

## 4.0    CHILD SUPPORT

4.1    Based upon Jennifer's and Marc's current income, Marc will pay child support, of $1115 per child per month starting as soon as the parties no longer co-habitate.

4.2    Marc shall continue to maintain the children's health insurance (medical, dental, and vision) for three years. After three years, the parties shall equally share this cost. However, at any time should Jennifer secure employment that offers health insurance for family members for free or for a lower cost than it costs RLG / Marc, she shall be obligated to accept that benefit. If her access to insurance is cheaper than RLG/Marc then the parties shall share the expense equitably. If RLG is paying for the kids' insurance, then it is deemed to be Marc paying it.

4.3    The children's unreimbursed medical expenses, including psychiatric, orthodontic, dental and optical costs, which are not covered by said insurance, shall be equally borne by the parties. The parties will abide by the "30/30" rule for unreimbursed medical expenses as follows: Any party incurring an out-of-pocket expense relating to the children will provide a copy of any paperwork regarding that visit within 30 days of the visit, along with a request for contribution for the other parent's respective share of any out-of-pocket payment actually made by that parent, to the other party. Upon receipt of a request for contribution for the other parent's respective share of any out-of-pocket expense by a party on behalf of the children, the other party will reimburse the requesting party in the amount requested within 30 days of receipt of the request for contribution. Upon receipt of reimbursement from any insurance carrier by either party, and if the other party previously paid a portion of the payment resulting in the reimbursement, the party receiving the reimbursement shall divide said reimbursement according to each parent's respective share, with the other party within 30 days of receipt of same.

4.4    Provisions for child support shall continue until such time as each child attains the age of eighteen (18) years, or until such child is otherwise emancipated, whichever occurs first, at which time child support obligations shall terminate.

MR

6

JR

4.5    Until June 1, 2018, Marc will pay for the children's activities and extra-curricular expenses. Thereafter, the parties agree that all educational and extra-curricular expenses for the minor children will be equally borne by the parties provided the parties mutually agree on the expenses in advance.

4.5    36 months of child support shall be held in trust to ensure no gaps in payment and no changed circumstances. The parties agree that for at least these 36 months, neither party may petition for "changed circumstances."

## 5.0    Future Support

5.1    Marc agrees that Jennifer may continue to be employed by Randazza Legal Group for up to 36 months after the date of this Agreement at a salary of $50,000 per year until she secures a mortgage on a home in Essex County, Massachusetts. Jennifer agrees that she will work at least 20 hours per week at Randazza Legal Group (RLG) until the administration of the July 2018 Massachusetts Bar Exam. Thereafter, she shall be obligated to work a full 40 hours per week to be entitled to continued employment. She shall be entitled to 1 week off after the bar exam.

Jennifer agrees to use all best efforts to secure employment outside of RLG. "All best efforts" shall be interpreted as if she were seeking unemployment from a state agency. If Jennifer fails, at the sole discretion of RLG, to make best efforts to find outside employment, her employment with RLG may be terminated after she is given a 2 week notice and cure warning.

If Jennifer becomes employed elsewhere and makes less than $50,000 per year salary, she may work part-time at RLG, so long as there is no legal or professional conflict in accordance with the rules of professional conduct, in order to augment her salary so that she makes a total of $50,000 per year. Accordingly, should she secure employment at $40,000 per year, the RLG part time salary opportunity will be $10,000 per year.

After the Summer 2018 results are announced, the $50,000 per year salary shall be reduced to $35,000 per year, whether she passes or fails (or fails to take) the exam.

7

MR

JR

Under no circumstances shall the amount or duration of these obligations be otherwise modifiable or exceed 36 months from the date of this agreement.

5.2     This employment above shall terminate in the event of Jennifer's remarriage, cohabitation, Jennifer's death, or the death of Marc. All of the alimony / employment, insurance and all other obligations to Jennifer shall cease if there is any attempt to move the children out of Essex County, Massachusetts, or if they do not move there in the first place. To be specific, Marc's obligations to the children shall not change even if his obligations to Jennifer do.

5.3     Marc shall also provide Jennifer, through his law firm, with health insurance for three years or until she becomes employed elsewhere, whichever first occurs. This shall cease upon any attempt to move the children out of Essex County, Massachusetts, or if they do not move there in the first place, or any of the conditions in paragraph 5.2 occur.

5.4     Marc will also continue to pay, through his law firm, the cost of the remaining 10 law school credits for Jennifer to complete her J.D. degree.

5.5     Marc will continue to pay for the family Gym membership until the parties relocate from Clark County.

5.6     Marc will continue to pay Jennifer's car payment until she passes the MA bar exam. In the event that Jennifer does not pass the MA bar after two attempts, this obligation shall cease. At that time, Marc will be responsible for ½ of the remaining balance on the loan. If she does not take the MA bar exam, then no car payments will be due.

5.7     In the event that Marc is suspended from the practice of law, Jennifer agrees to remain an employee of Randazza Legal Group until the conclusion of the suspension, and to become the "Randazza" in "Randazza Legal Group." In the event

8

Jennifer fails to take the MA bar exam, or fails to honor this obligation, she must repay Randazza Legal Group the cost of her law school tuition totaling $90,000.00.

5.8    In the event that continued employment becomes untenable due to the parties being in personal conflict, the parties may modify this agreement in order to provide for alimony instead of employment by RLG. However, in recognition of the fact that the employment requires labor and services, and alimony will not, the amounts will be as follows:  $2,000 per month for the first 12 months following the date of this agreement, $1,500 per month for the 12 months thereafter, and $1,000 per month for the 12 months thereafter.  However, these alimony payments will end if Jennifer secures employment making in excess of $50,000 per year.

This option shall not be exercised as a "bail out" in the event that Jennifer fails to live up to her obligations and is terminated as an employee of RLG for cause.  Jennifer shall have until January 15, 2018 to improve her performance to an acceptable level, and may not be terminated for cause before that date, unless she does something illegal or that threatens the clients or the practice.

If she is terminated for a failure to live up to her obligations as an employee, no further support will be available.  "Failure to live up to her obligations" shall mean a failure to perform as required, failure to complete tasks, failure to report to work, etc. This decision will be made by a partner-level RLG attorney other than Marc (Ron Green).  If Jennifer disagrees with the termination for cause determination the parties agree that Ryan Hamilton shall be empowered to arbitrate the decision.  However, no matter why she is terminated, RLG will never challenge her right to unemployment compensation.  If RLG does so, she shall be entitled to alimony payments equal to the amount she would have received from unemployment.

**5.9  - RLG Clients**

MR

9

JR

If any RLG clients that were clients of RLG prior to Jennifer passing the bar become clients of Jennifer's or any firm that Jennifer works for, Jennifer agrees she is obligated to pay RLG a fee split / referral fee in the amount of 65% of any fees generated in the first year a client is no longer represented by RLG 55% the second year and 45% in the 3rd year. Thereafter, the fee split shall be 33% of all fees generated from such clients or derivative clients, in perpetuity.

However, should Marc/RLG wish to refer a client to Jennifer, Jennifer is free to refuse to accept the client unless there is a mutually agreeable referral arrangement.

## 6.0    PROPERTY AWARDED TO JENNIFER AS HER SOLE AND SEPARATE PROPERTY

6.1    The commercial building located at 4035 S. El Capitan Way, Las Vegas NV shall be sold as soon as commercially feasible, and Jennifer shall be entitled to an immediate distribution of $350,000 of the proceeds, which shall be her sole and separate property. As discussed above, the next $150,000 shall be placed in trust with Ryan Hamilton, Esq., who will hold them and distribute them as discussed above.

6.2    Given that Jennifer's parents have loaned $250,000 to Magnolia Holdings, and that Marc and Jennifer have lent her parents approximately $300,000, with a present balance of about $250,000 these loans shall "wash out" through a later agreement – but the sum is that both loans shall be forgiven in exchange for one another.

As of the date of this agreement, Jennifer shall have as her sole and separate property, free of any claims of Marc, all right, title and interest, and the sole ownership in and to, the following

a.  The $500,000 described above, with the sole exception of the $150,000 encumbered by the "Essex County Requirement."

b.  Any individual bank account(s) she has in her own name.

c.  Any funds that she has placed with other people, namely (but not limited to) her mother, Cathy Brochey.

10



d.  All of her retirement accounts.

e.  ½ of the furniture and furnishings contained in the martial residence.

f.  Her clothing, jewelry, and personal property, with the exception of a white gold "Trinacria" medallion which shall be returned to Marc.

g.  Her Toyota Sienna automobile.

h.  Any and all intellectual property she creates or created other than anything related to, relied upon, or owned by RLG, Magnolia Holdings, or Marc J. Randazza, PA.

## 7.0    PROPERTY AWARDED TO MARC AS HIS SOLE AND SEPARATE PROPERTY

Marc shall have as his sole and separate property, free of any claims of Jennifer, all right, title and interest, and the sole ownership in and to, the following:

a.  The marital residence located at 10955 Iris Canyon Lane, Las Vegas NV subject to the mortgage thereon.

b.  Any proceeds from the sale of the commercial building, over and above Jennifer's share.

c.  Any individual bank account(s) he may establish in his own name.

d.  His business, receivables and all the good will known as Randazza Legal Group.

e.  All shares in the business known as Magnolia Holdings (subject to Jennifer's receipt of her distributions of $350,000 and $150,000)

f.  All shares in the business known as Marc J. Randazza PA.

g.  His retirement accounts.

h.  His BMW Automobile.

i.  His clothing, jewelry, and personal property.

j.  Any and all intellectual property he creates or created whether related to RLG, any other business or personal endeavors.

11

MR

JR

**8.0    DEBTS AND OBLIGATIONS TO BE ASSUMED BY MARC AS HIS SOLE AND SEPARATE OBLIGATIONS**

Marc shall assume and pay the following debts, and shall indemnify and hold Jennifer harmless therefrom, and release him from any claims, liabilities, obligations, litigation or income tax liability associated with:

a.    Any debt currently in Marc's name alone.

b.    Any liability associated with those debts which are currently the subject of his Bankruptcy.

c.    Any liability to his attorneys.

d.    Any debts or obligations associated with the assets awarded to him above.

e.    Any debt Marc incurs after the date of divorce in his own name.

f.    Marc's charges made on Jennifer's Citibank credit card, or charges Jennifer makes on this card, at Marc's request.

**9.0    DEBTS AND OBLIGATIONS TO BE ASSUMED BY JENNIFER AS HER SOLE AND SEPARATE OBLIGATIONS**

Jennifer shall assume and pay the following debts, and shall indemnify and hold Marc harmless therefrom, and release him from any claims, liabilities, obligations, litigation or income tax liability associated with:

a.    Any debts in Jennifer's name alone.

b.    The obligations associated with what has been awarded to her above.

c.    Any debts or obligations associated with the assets awarded to her above.

d.    Any debt Jennifer has herself incurred, which is known or unknown, from the date of marriage forward.


MR

12

JR

**10.0    Confidentiality**

The parties agree that all matters shared between them throughout the marriage in a confidential manner will remain so in perpetuity. To the extent that they have already disclosed any such matters, they will report to whom they may have disclosed confidential marital communications and will take efforts to ensure that those parties do not further disclose any such communications. The parties agree that they will continue to maintain all marital privileges and will not, unless compelled to by court order by a court having jurisdiction over them, and after exhausting all appeal rights, testify against the other for any reasons whatsoever.

**11.0    TAX PROVISIONS**

The parties will file separate taxes for 2017 (either as divorced or as married filing separately) and each year thereafter. Marc shall claim all of his income and deductions and Jennifer shall claim hers. Marc shall claim the dependent exemption for the minor children for as long as he pays child support. Should the circumstances change, and Jennifer pays child support, then the parties will re-adjust this deduction.

**12.0    PROPERTY ACQUIRED IN FUTURE TO BE SEPARATE PROPERTY**

Any and all property acquired or created by either of said parties hereto after the as of the date the parties ceased to co-habitate, in their own names, or in the name of an entity formed by either person shall be the sole and separate property of the one so acquiring the same, and each of said parties hereby respectively grants to the other all such future acquisitions of property as the sole and separate property of the one so acquiring the same. This includes (without limiting the general nature of the separate property) Jennifer's rights in her law degree, which despite being paid for by Marc / RLG, Marc releases all rights to it, and to any content created by her for it.

**13.0    RIGHT TO DISPOSE OF PROPERTY BY WILL**

Each party shall have an immediate right to dispose of or bequeath by will his or her respective interests in and to any and all property belonging to him or her from and

13

MR

JR

after the date hereof, and such right shall extend to all of the aforesaid future acquisitions of property as well as to all property set over to either of the parties hereto under this Agreement.

**14.0    WAIVER OF INHERITANCE RIGHTS**

Each hereby waive any and all right to the estate of the other left at his or her death and forever quitclaim any and all right to share in the estate of the other by the laws of succession, and said parties hereby release one to the other all rights to inherit from the other.

**15.0    MUTUAL RELEASE OF OBLIGATIONS AND LIABILITIES**

It is hereby mutually understood and agreed by and between the parties hereto that this Agreement is deemed to be a final, conclusive and integrated settlement agreement between the parties; that each party hereby releases the other party from and waives all rights and claims against the other party appurtenant to or arising out of the parties' marriage except as expressly specified herein whether or not now known or discovered in the future; each party hereto hereby releases and covenants not to sue the other party for any and all claims, liabilities and obligations created by or arising from the future acts and duties of the other, and that each party hereby releases the other party from any and all liabilities, future accounts, or debts or obligations of any kind or character incurred by the other except as hereinbefore provided; it being understood that this instrument is intended to settle finally and conclusively the rights of the parties hereto in all respects arising out of their marital relationship, including but not limited to alimony, division of property and attorneys' fees and costs, except as otherwise expressly provided herein. Notwithstanding the foregoing, this Agreement shall not serve as a bar, waiver or release of a party's rights to in the future sue the other party to enforce his or her rights under this Agreement.  Furthermore, each party shall indemnify and hold harmless the other party from any claims or damages arising from a party's breach of his

14

MR                                                                                                                    JR

or her respective obligations under this Agreement, and this Agreement shall not serve as a bar, waiver or release of a party's right to enforce his or her right to said indemnification and to be held harmless.

**16.0    EXECUTION OF NECESSARY DOCUMENTS**

Jennifer and Marc agree to execute all legal documents, certificates of title, quitclaim deeds, bills of sale, stock transfers, deeds and any other instruments or documents necessary in order to effectuate transfer of any and all interest either may have in and to the property hereby conveyed and/or transferred to the other as herein above specified in this Agreement within ten (10) days of presentation of same for such signature to the party's counsel of record.  Should either party fail to execute any of said documents to transfer interest to other, then it is agreed that this Agreement and the parties' decree of divorce shall constitute a full and complete transfer of the interest of one to the other, as herein above provided, it is further agreed that pursuant to NRCP 70, the clerk of the court, shall be deemed to have hereby been appointed and empowered to sign, on behalf of the non-signing party, any of the said documents of transfer which have not been executed by the party otherwise responsible for such, and it is further agreed that this Agreement and the parties' decree of divorce shall constitute and operate as such properly executed document and the County Assessor and County Recorder and any and all other public and private officials are hereby authorized and directed to accept this Agreement and the parties' decree of divorce, or a properly certified copy thereof, in lieu of the document regularly required for such conveyance or transfer.

**17.0    ACCEPTANCE OF AGREEMENT AND ADVICE OF COUNSEL**

17.1    Each party hereto acknowledges that he or she has read the foregoing Agreement and fully understands the contents thereof and accepts the same as equitable and just and that there has been no promise, agreement or understanding of either of the parties to the other except as hereinabove set forth, which has been relied upon by either

15

MR

JR

as a matter of inducement to enter into this Agreement, and each party hereto has had the opportunity to be independently advised by his or her attorney and or tax advisors as to the legal effect of the execution of this Agreement.

17.2    Each party hereto stipulates with the other that he or she has had the opportunity for legal representation in negotiations for and in the preparation of the Agreement by counsel of his or her own choosing.

17.3    Each party to this Agreement hereby acknowledges that they have entered into this Agreement without undue influence or coercion, or misrepresentation, or for any other cause except as herein specified.

## 18.0    KNOWLEDGE, DISCLOSURE AND WAIVERS

18.1    Marc and Jennifer each acknowledged that he or she has full knowledge of the assets, liabilities and financial status of the other at the time of this Agreement.

18.2    Each party warrants that he or she has made full disclosure of all the assets and debts of the parties hereto.

18.3    Each party enters into this Agreement having an opportunity, with the advice of counsel, to obtain adequate and sufficient knowledge of the extent and approximate present value of the community property, and to the extent of having declined to examine and/or investigate further, has thereby waived and does hereby waive and relinquish the right to do so.   The parties agree that, based upon the nature of the assets and debts being awarded to/assumed by each party, the terms set forth herein, which may or may not result in an equal division of property, are a fair and equitable resolution of the matters.

18.4    Each party has ascertained and weighed all the facts, conditions and circumstances likely to influence their judgment herein; that all matters embodied herein as well as all questions pertinent hereto have been satisfactorily explained; that they have individually given due consideration to such matters in question; that individually, each

16

clearly understands and consents to all the provisions here of; and that they are entering into this Marital Settlement Agreement, freely, voluntarily, without duress, and with full knowledge of the consequences thereof. Each party voluntarily and expressly waives any right to further discovery and disclosure of the property, earnings and financial obligations of the other party beyond the discovery previously conducted and disclosures provided prior to and within this Agreement.

18.5    The parties further acknowledge and agree that they are fully aware of and understand the contents, legal effect and consequences of this Agreement; that they enter into this Agreement freely, voluntarily, free from duress, fraud, undue influence, coercion or misrepresentation of any kind, and with full knowledge of the consequences thereof.

## 19.0    AGREEMENT TO BE A SEPARATE AND INDEPENDENT CONTRACT

The provisions of this Agreement shall be submitted for approval to the Court in this proceeding for divorce, but shall not be incorporated nor merged by the Court in its Decree, but shall survive said Decree.  This Agreement shall determine the property rights of the parties, including the rights of each party to alimony/spousal support.  The provisions hereof shall not be subject to modification or change at any time hereafter by any court or otherwise, except by a written agreement executed by both parties hereto with the same formality as this Agreement.  The same shall be subject to enforcement through the contempt powers of the Family Court without the need for the filing of an independent lawsuit.

## 20.0    ENTIRE AGREEMENT

This Agreement contains the entire agreement and understanding of the parties concerning the subject matter hereof, and no other representations, promises or agreements concerning the subject matter of this Agreement shall be of any force or effect. This Agreement may not be changed, modified, or terminated orally, and any

17

MR

JR

change, modification, or termination may only be made by a written instrument executed by both parties with the same formality as this Agreement.

## 21.0   NO PARTY DEEMED DRAFTER

The parties agree that this Agreement is the product of the parties' joint efforts, that neither party shall be deemed to be drafter of this Agreement and that, in the event this Agreement is ever construed by a court of law or equity, such court shall not construe this Agreement or any provision hereof against either party as the drafter of the Agreement.  Jennifer and Marc hereby acknowledge that both parties have contributed substantially and materially to the preparation of this Agreement, and that this Agreement is the product of joint efforts by the parties.

## 22.0   WAIVER

No waiver of anyone of the provisions hereof shall work a continuing waiver or a waiver of any subsequent breach.

## 23.0   BINDING EFFECT

This Agreement shall be binding upon, and inure to the benefit of, the respective agents, representatives, heirs, assigns and successors-at-law of the parties hereto.

## 24.0   GOVERNING LAW

This Agreement and the rights of the parties hereto shall be governed and interpreted in all respects by the law applied to contracts made and wholly to be performed within the State of Nevada.

## 25.0   CUMULATIVE EFFECT

The parties' rights and remedies hereunder shall be cumulative, and the exercise of one or more shall not preclude the exercise of any other(s).

## 26.0   EQUALIZATAION PAYMENT


MR

18

JR

Given the significant debt being assumed by Marc herein, the fact that Marc has taken more than ½ of the community property is acknowledged and agreed to by Jennifer as fair and equitable, given that she is taking none of the debts or liabilities.

**27.0    INVALIDITY**

Should any term, provision, clause, paragraph or subparagraph of this Agreement be declared void or voidable for any reason whatsoever, then and in spite of such event, the remaining terms and provisions of this Agreement shall not be affected, and shall continue in full force and effect as if such event had not occurred.

**28.0    EFFECTIVE DATE OF AGREEMENT**

The effective date of this Agreement is 30 Nov, 2017.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands to this Agreement the year and date above written.

_____          _____
JENNIFER RANDAZZA               MARC RANDAZZA

TREY ROTHELL
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 16-2764-1
My Appt. Expires July 10, 2020

Witness

_____
CATHY BROCHEY

TR Acknowledgements On following page

MR

JR

19

## ACKNOWLEDGMENT

STATE OF NEVADA )
) ss.
COUNTY OF CLARK )

On this 30th day of November , 2017, before me the undersigned Notary Public in and for said County and State, personally appeared JENNIFER RANDAZZA, known to me to be the person described in and who executed the foregoing MARITAL SETTLEMENT AGREEMENT, and who acknowledged to me that she did so freely and voluntarily and for the uses and purposes therein mentioned.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC



TREY ROTHELL
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 16-2764-1
My Appt. Expires July 10, 2020

## ACKNOWLEDGMENT

STATE OF NEVADA )
) ss.
COUNTY OF CLARK )

On this 30th day of November, 2017, before me the undersigned Notary Public in and for said County and State, personally appeared MARC RANDAZZA, known to me to be the person described in and who executed the foregoing MARITAL SETTLEMENT AGREEMENT, and who acknowledged to me that he did so freely and voluntarily and for the uses and purposes therein mentioned.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC

TREY ROTHELL
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 16-2764-1
My Appt. Expires July 10, 2020

20

MR

JR

## MARITAL SETTLEMENT AGREEMENT ADDENDUM

THIS AGREEMENT made and entered into this ___8___ day of _Decenber_ 2017, by and between MARC RANDAZZA ("Marc"), a resident of the County of Clark, State of Nevada, and JENNIFER RANDAZZA ("Jennifer"), a resident of the County of Clark, State of Nevada modifies their prior Marital Settlement Agreement and amends and supersedes paragraphs 5.0 to 5.8 of the agreement signed November 30, 2017.

**5.0     Future Support**

5.1     Alimony will be paid as follows:  $2,000 per month for the first 12 months following the date of this agreement, $1,500 per month for the 12 months thereafter, and $1,000 per month for the 12 months thereafter.  However, these alimony payments are intended to equalize Jennifer's gross income to $50,000 per year.  Therefore, if she is employed outside of RLG and has a salary of (for example) $40,000 per year, then the alimony payments will be reduced to $10K per year.  However, there is a preference for Jennifer to work for RLG/Marc as an equalization payment over alimony.  Alimony would only kick in if she is terminated from RLG involuntarily.  If she is terminated involuntarily from RLG and can collect unemployment, alimony payments shall be reduced by the amount of unemployment benefits she receives.  However, if RLG terminates her, she shall be entitled to alimony payments (reduced by unemployment insurance payments).

5.2     Alimony or employment obligations shall terminate in the event of Jennifer's remarriage, cohabitation, Jennifer's death, or the death of Marc.  All of the alimony / employment, insurance and all other obligations to Jennifer shall cease if there is any attempt to move the children out of Essex County, Massachusetts, or if they do not move there in the first place.  To be specific, Marc's obligations to the children shall not change even if his obligations to Jennifer do.

1

5.3    Jennifer may continue to be employed by Randazza Legal Group at a present salary of $26,000 per year. Her salary may not be reduced until the Summer 2018 bar exam results are announced, unless she is terminated for cause from RLG. To be entitled to this employment, Jennifer agrees that she will work at least 20 hours per week at Randazza Legal Group (RLG) until the administration of the July 2018 Massachusetts Bar Exam. Thereafter, she shall be obligated to work a full 40 hours per week to be entitled to continued employment. She shall be entitled to 1 week off after the bar exam. For her to be terminated for cause, the decision shall be made by Ron Green, (or another partner at RLG who is not Marc, in the event that Ron is no longer there). If there is a dispute about whether the termination was justified, the matter shall be arbitrated by Ryan Hamilton or another mutually agreed upon person.

5.3    Jennifer agrees to use all best efforts to secure employment outside of RLG. "All best efforts" shall be interpreted as if she were seeking unemployment from a state agency. If Jennifer fails, at the sole discretion of RLG, to make best efforts to find outside employment, her employment with RLG may be terminated after she is given a 2 week notice and cure warning.

5.4    If Jennifer becomes employed elsewhere and makes less than $50,000 per year salary, she may work part-time at RLG, so long as there is no legal or professional conflict in order to augment her salary so that she has a total gross income of $50,000 per year. Accordingly, should she secure employment at $40,000 per year, the RLG part time salary opportunity will be at least $10,000 per year. In this scenario, alimony payments would not be due, as the preference is for work over alimony. However, if RLG declines to pay her more than $5,000/yr in this scenario, she would be entitled to $5,000/yr in alimony.

5.5    After the Summer 2018 bar results are announced, the $26,000 per year salary shall be reduced to $17,500 per year, whether she passes or fails (or fails to take)

2

the exam. Under no circumstances shall the amount or duration of these obligations for alimony or continued employment be otherwise modifiable or exceed 36 months from the date of this agreement. Alimony payments will *not* change based on the bar exam. The same conditions apply in this "after the bar exam" period as in paragraph 5.4, with the total gross income guarantee being $35,000 a year (total alimony + salary). However, the parties note that the combination of alimony plus salary in part of 2018 could be as high as $41,600, and in 2019 could be $35,500, and in 2020 it could be $29,500 (combined alimony + salary).

5.6    Marc shall also provide Jennifer with health insurance for three years or until she becomes employed elsewhere, whichever first occurs. This (and all alimony and employment obligations) shall cease upon any attempt to move the children out of Essex County, Massachusetts, or if they do not move there in the first place by July 1, 2018, or any of the conditions in paragraph 5.2 occur.

5.7    Marc will also continue to advance, through his law firm, the cost of the remaining 10 law school credits for Jennifer to complete her J.D. degree. If Jennifer requires an additional credit in order to make a schedule that is more convenient for Marc / RLG, then Marc / RLG will pay that cost.

5.5    Marc will continue to pay for the family Gym membership until the parties relocate from Clark County.

5.6    Marc will continue to pay Jennifer's car payment until she passes the MA bar exam. In the event that Jennifer does not pass the MA bar after two attempts, this obligation shall cease. At that time, Marc will be responsible for ½ of the remaining balance on the loan. If she does not take the MA bar exam, then no car payments will be due.

5.7    In the event that Marc is suspended from the practice of law, Jennifer agrees to remain an employee of Randazza Legal Group until the conclusion of the

3

MR

JR

suspension, and to become the "Randazza" in "Randazza Legal Group."  In the event Jennifer fails to take the MA bar exam, or fails to honor this obligation, she must repay Randazza Legal Group the cost of her law school tuition totaling $90,000.00.

5.8    Should Jennifer, in working for RLG, generate a net profit for the firm, either through billable hours or through origination of work for other timekeepers, she shall be entitled to earn more – on a basis consistent with other lawyers at the firm.  This shall be no less than 20% of her collected billables.

JENNIFER RANDAZZA

Witness

CATHY BROCHEY

**ACKNOWLEDGMENT**

STATE OF NEVADA        )
                                          ) ss.
COUNTY OF CLARK      )

On this 8th day of December, 2017, before me the undersigned Notary Public in and for said County and State, personally appeared JENNIFER RANDAZZA, known to me to be the person described in and who executed the foregoing MARITAL SETTLEMENT AGREEMENT, and who acknowledged to me that she did so freely and voluntarily and for the uses and purposes therein mentioned.

WITNESS my hand and official seal.

NOTARY PUBLIC

MARC RANDAZZA

Acknowledgement on next page

TREY ROTHELL
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 16-2764-1
My Appt. Expires July 10, 2020

MR                                    4                                    JR

## ACKNOWLEDGMENT

STATE OF NEVADA     )
                           ) ss.

COUNTY OF CLARK     )

On this _____ day of _____, 2017, before me the undersigned Notary Public in and for said County and State, personally appeared MARC RANDAZZA, known to me to be the person described in and who executed the foregoing MARITAL SETTLEMENT AGREEMENT, and who acknowledged to me that he did so freely and voluntarily and for the uses and purposes therein mentioned.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC

TREY ROTHELL
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 16-2764-1
My Appt. Expires July 10, 2020

5

MR

JR

## MARITAL SETTLEMENT AGREEMENT ADDENDUM

THIS AGREEMENT made and entered into this 24th day of MAY 2018, by and between MARC RANDAZZA ("Marc"), a resident of the County of Clark, State of Nevada, and JENNIFER RANDAZZA ("Jennifer"), a resident of the County of Clark, State of Nevada modifies their prior Marital Settlement Agreement and amends and supersedes paragraphs 5.0 to 5.8 of the agreement signed November 30, 2017 as well as the Addendum signed on 8 December 2017.

This Addendum is entered into in order to re-clarify, reaffirm, and acknowledge the parties' rights and obligations in lieu of the fact that Jennifer will no longer be employed by Randazza Legal Group after 31 May 2018, and thus some portions of the original agreement and the addendum are unnecessarily complicated and others have already been satisfied.   To the extent that this Second ddendum is different from the original MSA or the Addendum of 8 December 2017, this Second Addendum shall control.

### 5.0    Future Support

5.1    Alimony will be paid as follows:  $2,000 per month in 2018, $1,500 per month in 2019, and $1,000 per month in 2020.  However, these alimony payments phase out to $0 if Jennifer is employed or otherwise has gross income of $50,000 per year in 2018 and $35,000 per year in 2019 and 2020.  If she earns through other sources less than these amounts, then the alimony payments shall only be reduced to ensure that she has no less than $50,000 per year gross income in 2018 and no less than $35,000 in 2019-2020.

5.2    Alimony or employment obligations shall terminate in the event of Jennifer's remarriage, cohabitation, or other parties' death.   All of the alimony / employment, insurance and all other obligations to Jennifer shall cease if there is any attempt to move the children out of Essex County, Massachusetts, or if they do not move

MR

1


JR

there in the first place. To be specific, Marc's obligations to the children shall not change even if his obligations to Jennifer do.

5.3     Deleted.

5.3     Jennifer agrees to use all best efforts to secure employment. "All best efforts" shall be interpreted as if she were seeking unemployment from a state agency. (double numbering of 5.3 duplicated from 8 December addendum)

5.4     Deleted.

5.5     Under no circumstances shall the amount or duration of these obligations for alimony be otherwise modifiable or exceed 36 months from the date of this agreement. Alimony payments will *not* change based on the bar exam.

5.6     Marc shall also provide Jennifer with health insurance for 3 years from the date of the original Marital Settlement Agreement or until she becomes employed, whichever first occurs. This (and all alimony and employment obligations) shall cease upon any attempt to move the children out of Essex County, Massachusetts, or if they do not move there in the first place by July 1, 2018, or any of the conditions in paragraph 5.2 occur.

5.7     Deleted as all law school credits were paid for.

5.5     Marc has paid for the family gym memberships, but this obligation will end May 31, 2018.

5.6     Marc has paid off his portion of the car loan as provided for in a separate document entitled "Marital Settlement Agreement Partial Modification / Partial Accord and Satisfaction." If Marc defaults under that separate agreement, then the original term from the 8 December Addendum shall be reinstated.

5.7     In the event that Marc is suspended from the practice of law, Jennifer agrees to become an employee of Randazza Legal Group until the conclusion of the suspension, and to become the "Randazza" in "Randazza Legal Group." In the event

MR

2


JR

Jennifer fails to take the MA bar exam, or fails to honor this obligation, she must repay Randazza Legal Group the cost of her law school tuition totaling $90,000.00.

5.8     Should Jennifer, in working for RLG, generate a net profit for the firm, either through billable hours or through origination of work for other timekeepers, she shall be entitled to earn more – on a basis consistent with other lawyers at the firm. This shall be no less than 20% of her collected billables.

_____          _____
JENNIFER RANDAZZA                              MARC RANDAZZA

## ACKNOWLEDGMENT

STATE OF NEVADA          )
                                       ) ss.
COUNTY OF CLARK        )

On this 24th day of May_____, 2018, before me the undersigned Notary Public in and for said County and State, personally appeared JENNIFER RANDAZZA, known to me to be the person described in and who executed the foregoing MARITAL SETTLEMENT AGREEMENT, and who acknowledged to me that she did so freely and voluntarily and for the uses and purposes therein mentioned.
        WITNESS my hand and official seal.

_____
NOTARY PUBLIC

TREY ROTHELL
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 16-2764-1
My Appt. Expires July 10, 2020

## ACKNOWLEDGMENT

STATE OF NEVADA          )
                                       ) ss.
COUNTY OF CLARK        )

On this 24th day of May___, 2018, before me the undersigned Notary Public in and for said County and State, personally appeared MARC RANDAZZA, known to me to be the person described in and who executed the foregoing MARITAL SETTLEMENT AGREEMENT, and who acknowledged to me that he did so freely and voluntarily and for the uses and purposes therein mentioned.
        WITNESS my hand and official seal.

_____
NOTARY PUBLIC

TREY ROTHELL
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 16-2764-1
My Appt. Expires July 10, 2020

3

MR                                                                    JR