LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzklegal.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-15-14956-abl |
| | Chapter 11 |
| MARC JOHN RANDAZZA, | |
| Debtor. | Date: October 17, 2018 |
| | Time: 11:00 a.m. |

## DEBTOR'S MOTION TO APPROVE SETTLEMENT WITH
## CLAYTON DOUGLASS PURSUANT TO FED. R. BANKR. P. 9019

     Marc John Randazza, as debtor and debtor in possession ("Mr. Randazza" or "Debtor"), hereby respectfully submits his motion (the "Motion") seeking to authorize and approve a Settlement Agreement and Release (the "Settlement Agreement") with Clayton Douglass ("Mr. Douglass"), pursuant to Fed. R. Bankr. P. 9019. This Motion is made and based on the points and authorities herein, the dockets in Mr. Randazza's underlying bankruptcy case (the "Chapter 11 Case"), judicial notice of which is respectfully requested, the *Declaration of Marc J. Randazza* (the "Randazza Declaration") filed in supported hereof, and any arguments of counsel made at the time of any hearing on this Motion.

. . .

. . .

. . .

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**I.  Jurisdiction and Venue**

1.      On August 28, 2015 (the "Petition Date"), Mr. Randazza filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case").  Mr. Randazza is authorized to operate his business and manage his property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no official committees have been formed in the Chapter 11 Case.

2.      The Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1).  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Pursuant to Local Rule 9014.2, Mr. Randazza consents to the entry of final orders and judgments by the bankruptcy judge in this matter.  Venue is proper for this Chapter 11 Case in this District pursuant to 28 U.S.C. § 1408(1) and for this Motion pursuant to 28 U.S.C. § 1409(a).

**II.  Factual and Procedural Background**

3.      Vivera is a company that sold diet pills and health and beauty products online.[1]

4.      Serenivision, Inc. d/b/a Pinnacle Dream Media, offered internet advertising services.

5.      On August 29, 2009, Clayton Douglass signed an "Insertion Order" on behalf of Vivera to procure Serenivision's services.

6.      The Insertion Order incorporated by reference a Master Advertiser Agreement ("MAA") with a weblink (URL) to access the MAA.

7.      The MAA was a more comprehensive document governing the advertising services.

8.      The MAA contained, inter alia, a provision requiring all disputes to be resolved by binding arbitration and a provision setting forth that the person signing the Insertion Order

---

[1] The facts set forth ¶¶ 3-12, 14-16, and 18 are taken from Douglass v. Serenivision, Inc., No. B277574, 2018 Cal. App. LEXIS 107 (Ct. App. Feb. 8, 2018).  Judicial notice of this reported decision may be taken pursuant to Fed. R. Evid. 201, and a copy of the decision is attached hereto as **Exhibit 1**.

personally guaranteed payment.

9.      By April 2011, Vivera owed Serenivision $816,530 under the Insertion Order.

10.      In the Spring of 2014, Mr. Douglass allegedly retained the law firm of Marc J. Randazza, P.A. ("MJRPA") to represent him in an arbitration commenced in the International Centre for Dispute Resolution ("ICDR") in the Matter of *Serenevision, Inc. v. Vivera and Clayton Douglass*, Case No. 50-20-1400-0207 (the "Arbitration").

11.      On or about May 22, 2015, a Final Award was entered in the Arbitration against Mr. Douglass (the "Arbitration Award"), a true and correct copy of which appears at ECF No. 170-4.

12.      On October 2, 2015, Mr. Douglass filed a petition against Serenivision in the Los Angeles Superior Court to vacate the arbitration award, for declaratory relief, and for compensatory damages and punitive damages on the ground that the contract was illegal and subject to rescission.

13.      On December 11, 2015, Mr. Douglass filed his *Proof of Claim* in Mr. Randazza's Chapter 11 Case, being Claim No. 7 (the "Douglas Claim"), for alleged amounts arising out of or related to the Arbitration and/or the Arbitration Award.  More specifically, the Douglass Claim asserts "Malpractice" based on "Losses due to Arbitration Award" in the amount of $816,530, along with interest, fees, and expenses, for a total claim of $1,831,792.59.  The Douglass Claim is silent as to the alleged errors and/or omissions of Debtor that are claimed to constitute malpractice and it is silent as to how those errors or omissions caused the debt claimed.

14.      On January 5, 2016 and April 7, 2016, Serenivision filed a cross-petition to confirm the Final Award.

15.      On July 5, 2016, the Superior Court denied Mr. Douglass's petition to vacate and allowed the petition to confirm finding:  (a) the petition to vacate was untimely filed; (b) the arbitrator had jurisdiction over the claim; and (c) the arbitrator's finding that Mr. Douglass was liable for Vivera's debt was not in excess of the arbitrator's powers.

16.      On September 12, 2016, Mr. Douglass filed an appeal to the California Second District Court of Appeal.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

3

17.     On January 9, 2017, Debtor and Mr. Douglass entered into a *Stipulation to Modify the Automatic Stay to Name Debtor Nominally to Pursue Insurance Policy and Waive the 14-day Stay under 4001(a)(3) with no Enforcement of Any Judgment Against Debtor* [ECF No. 170], which the Court approved by order entered on January 12, 2017 [ECF No. 171].  In spite of the foregoing, Mr. Douglass never filed any such action naming Debtor, nominally or otherwise.

18.     On February 8, 2018, the California Second District Court of Appeal issued a decision affirming the judgment of the Superior Court in its entirety.  A copy of this decision is attached hereto as Exhibit 1 and judicial notice of it is requested.

19.     On May 14, 2018, Debtor and Mr. Douglass submitted their dispute regarding the allowance of the Douglas Claim and related potential insurance coverage to voluntary mediation. The proposed Settlement Agreement herein is the product of good faith and arm's length negotiations between the parties, before and during the mediation.  Both sides were represented by experienced and knowledgeable counsel throughout this litigation, both pre and post-petition, as well as in these settlement negotiations in particular.  The Settlement Agreement makes no admissions of liability as to any of the theories pleaded by the Parties, and rather is agreed to by both sides as a way to end their very long, expensive and time-consuming disputes.

### III.  Legal Argument

**A.     Standard of Decision.**

20.     The Bankruptcy Court may approve a compromise or settlement between a debtor and another party pursuant to Fed. R. Bankr. P. 9019(a).  Compromise and settlement agreements have long been an inherent component of the bankruptcy process.  See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1958) (citing Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)).  In TMT Trailer, the Supreme Court held that a bankruptcy settlement must be fair and equitable.  Id.

21.     In order to determine whether a proposed settlement is fair and equitable, the bankruptcy court should consider the following factors:

(a)     the probability of success in the litigation;

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

(b)     the difficulties, if any, to be encountered in the matter of collection;

(c)     the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d)     the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

See Robinson v. Kane (In re A&C Props.), 784 F.2d 1377, 1381 (9th Cir. 1986); see also In re Endoscopy Ctr. of S. Nev., LLC, 451 B.R. 527 (Bankr. D. Nev. 2011); In re Hyloft, Inc., 451 B.R. 104 (Bankr. D. Nev. 2011).

22.     The debtor is not necessarily required to satisfy each of these factors as long as the factors as a whole favor approval of the settlement. See In re Pacific Gas and Elec. Co., 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). The settlement does not have to be the best the debtor could have possibly obtained; rather, the settlement must only fall "within the reasonable range of litigation possibilities." In re Adelphia Commc'ns Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005).

23.     In considering the factors, "a precise determination of likely outcomes is not required, since an exact judicial determination of the values at issue would defeat the purpose of compromising the claim." In re Telesphere Commc'ns, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (internal quotations omitted). When determining whether a settlement should be approved the Court "'need not rule upon disputed facts and questions of law, but only canvas the issues.'" Suter v. Goedert, 396 B.R. 535, 548 (D. Nev. 2008) (quoting Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997)). To require a more extensive analysis would defeat the purpose of Fed. R. Bankr. P. 9019. Id. ("if courts were required to do more than canvass the issue, 'there would be no point compromising; the parties might as well go ahead and try the case'") (citations omitted). An examination of each of the four (4) A&C Properties factors as applied to the proposed Settlement Agreement in the case at hand follows.

**B.     Application.**

    **1.     Probability of Success.**

24.     Analyzing the probability of success involves an analysis of each side's remaining

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

claims and potential remedies.  Mr. Randazza asserts that Mr. Douglass a low probability of success in his claim for a variety of reasons.

25.    In Nevada, "legal malpractice is premised upon an attorney-client relationship, a duty owed to the client by the attorney, breach of that duty, and the breach as proximate cause of the client's damages." Semenza v. Nev. Med. Liability Ins. Co., 765 P.2d 184, 185 (Nev. 1988); see also Morgano v. Smith, 879 P.2d 735, 737 n.2 (Nev. 1994) (requiring proximate causation). To the extent California law may apply, the same elements govern.  See Budd v. Nixen, 491 P.2d 433 (Cal. 1971) ("In order to establish a cause of action for legal malpractice the plaintiff must demonstrate: (1) breach of the attorney's duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a proximate causal connection between the negligent conduct and the resulting injury; and (3) actual loss or damage resulting from the negligence.")

26.    The Douglass Claim has a low probability of success because he does not and cannot allege breach or proximate causation.

27.    The Douglass Claim lacks any allegation as to the nature of the alleged breach of duty by Mr. Randazza.  Mr. Randazza cannot speculate as to the nature of the alleged malpractice committed by any attorney at MJRPA, let alone himself.  In the absence of such allegation, the Douglass Claim could not stand.

28.    Moreover, the recent decision by the Second District Court of Appeals demonstrates that there could not be any proximate causation between the representation by MJRPA and Mr. Douglass's loss in the Arbitration.

29.    Mr. Douglass averred in a sworn declaration that he signed the Insertion Order at issue.  See Randazza Decl., Ex. 1, at ¶¶ 4-6.[2]

30.    In fact, it was not until after the termination of representation that Mr. Douglass's successor counsel, on June 17, 2015, first suggested that Mr. Douglass would recant that sworn declaration and newly claim he had not, in fact, signed it.  See id. Ex. 2.

---

[2] Pursuant to Fed. R. Evid. 201, the Court may take judicial notice of the arbitration record.  See Sabbagh v. Charles Schwab & Co., 01 Civ. 4824 (WHP)(KNF), 2002 U.S. Dist. LEXIS 14679, at *8 n.1 (S.D.N.Y. Aug. 9, 2002).

31.    Serenivision proved that the MAA "was accessible and readable on the website of Pinnacle Dream Media" and that Mr. Douglass was "in physical possession of the Master Advertising Agreement and had the ability to review its terms and conditions" before signing the Insertion Order.  [ECF No. 170, p. 21, ¶¶ 43-45].

32.    California law permitted the MAA to be incorporated by reference, citing *DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 713 (2009).  Id. at 23, ¶ 57.

33.    The personal guaranty clause of the MAA was binding on Mr. Douglass.  Id. at 24, ¶ 61.

34.    Vivera, as guaranteed by Mr. Douglass, owed Serenivision $816,530, plus a late payment penalty of $827,373, plus interest and attorneys' fees and costs.  Id. at 24-25, ¶¶ 65, 67 & 70.

35.    The Second District Court of Appeal, on review, found:

> The Master Agreement provides that "[a]ll payments are personally guaranteed by the individual executing the" Insertion Order. Because Douglass admitted that he signed the Insertion Order and thereby accepted its terms, he "executed" that Order and is contractually bound as a guarantor of Vivera's outstanding debt. (See Transdyn/Cresci JV v. City and County of San Francisco (1999) 72 Cal. App .4th 746, 757-758 [85 Cal. Rptr. 2d 512][signature and execution synonymous].)  Douglass's acts, coupled with the pertinent contractual terms, take him outside of the default rule that "'a guarantor who is not a signatory to a contract containing an arbitration clause is not bound by the arbitration clause.'" (Grundstad v. Ritt (7th Cir. 1997) 106 F.3d 201, 204.) Douglass has not challenged the arbitrator's findings that Vivera is liable to Serenivision or the arbitrator's calculation of the amount due.  Consequently, we have no basis to disturb the arbitrator's order holding Douglass liable to Serenivision for Vivera's debt.

Douglass v. Serenivision, Inc., 20 Cal. Ap. 5th 376, 393-94, 229 Cal. Rptr. 3d 54, 68-69 (Ct. App. Feb. 8, 2018).

36.    Although Mr. Douglass contested the arbitrability of the dispute and his liability as personal guarantor, he identified no errors, *i.e.,* no breach, by Mr. Randazza or MJRPA.

37.    Further, there is a complete absence of proximate causation.  There is no allegation, nor could there be, that Mr. Randazza or MJRPA caused Mr. Douglass to sign the Insertion Order

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

containing the personal guarantee or caused Vivera to incur the underlying debt personally guaranteed by Mr. Douglass.  Although Mr. Douglass asserted that he was unaware of the personal guarantee, the overwhelming evidence and the law showed that such was binding upon him once he signed the insertion order.

38.     No attorney could have prevailed at that arbitration given those facts.

39.     Mr. Douglass was advised in writing by MJRPA prior to the arbitration hearing that a failure to participate in the proceeding would likely result in the entry of a default judgment against him.  See Randazza Decl., Ex. 3.

40.     Thereupon, Mr. Douglass, fully informed of the likely consequences, explicitly directed MJRPA not to participate in the arbitration hearing.  See id. Ex. 4.

41.     Mr. Douglass was given a final opportunity to review the correspondence informing the arbitrator that he would not be appearing.  Mr. Douglass lodged no objection thereto.  See id. Ex. 5.

42.     Although Mr. Douglass's new attorney, in June 2015, after the arbitration award was issued, raised the question as to the validity of Mr. Douglass's signature on the Insertion Order, it is a factual matter Mr. Douglass never previously identified to MJRPA, thus Debtor could not have counseled him on the matter, directed arbitration strategy thereon, or present evidence thereof to the arbitrator.

43.     In addition, although Mr. Douglass recanted his prior sworn statement that the signature was his, newly claiming it was affixed by a person in another city, Mr. Douglass conspicuously omitted argument that the person who affixed his signature lacked authority to do so.  See Randazza Decl., Ex. 6.  The mere mechanical act of affixing an authorized signature does not invalidate the signature, even if the authorization to do so is oral.  See Kadota Fig Asso. of Producers v. Case-Swayne Co., 73 Cal. App. 2d 815, 820-21, 167 P.2d 523, 527 (1946).

44.     Mr. Douglass was fully aware his signature was affixed to the Insertion Order.  See Randazza Decl., Ex. 7.  Thus, he would be deemed to have adopted or ratified it and he is estopped from denying it.  See Refinite Sales Co. v. Fred R. Bright Co., 119 Cal. App. 2d 56, 62, 258 P.2d 1116, 1119 (Cal. 4th Dist. Ct. App. 1953).

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

45.     As a result, whether Mr. Douglass signed the Insertion Order himself, or his signature was affixed by an authorized third party, Mr. Douglass was faced with an Insertion Order that expressly incorporated a personal guaranty and agreement to arbitrate, the terms of which were proven, by competent evidence at arbitration, to have been available to Mr. Douglass when the Insertion Order was signed.

46.     As a result, whatever Mr. Douglass might claim to have been the breach of duty, it would not have changed the outcome. Since Mr. Douglass always would have lost at arbitration (or in court), neither Mr. Randazza nor MJPRA proximately caused his damages.  Thus, the Douglass Claim has a low probability of success.

47.     As such, given the probability of success of Mr. Randazza, as well as the significant limitations on Mr. Douglass's probabilities of success, this first factor weighs strongly in favor of approval of the Settlement Agreement.

## 2.     Collection Difficulties.

48.     Mr. Randazza is obviously presently a debtor in bankruptcy, and thus there would be difficulties in collecting any sum.  As such, the difficulties in collection also strongly favor approval of the Settlement Agreement, especially given that the Settlement Payment amount is only $50,000, and is proposed to be paid by Mr. Randazza's professional liability insurance carrier, with no funds coming from the Debtor's bankruptcy estate, and with a full extinguishment and release of the Douglas Claim against the Debtor's bankruptcy estate.  This Settlement Payment is obviously substantially less than what was originally alleged by Mr. Douglass.  As such, this second factor also weighs heavily in favor of approving the Settlement Agreement.

## 3.     The Complexity, Expense, Inconvenience and Delay of the Litigation.

49.     The litigation of this dispute would be exceedingly complex, expensive, time consuming, and result in significant delays.  Mr. Douglass has seen fit to litigate these matters at multiple state court levels and there is no reason to believe he would not litigate vigorously here. Going forward, the parties were looking at very expensive litigation involving numerous depositions and exhibits, various dueling expert witnesses, likely dispositive motion practice, and a lengthy evidentiary hearing.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

50.     Second, the litigation may prove to be very complex with very lengthy and extensive motion practice and legal briefing on various areas of law, given the nature of the disputes, the parties, and the counsel involved.  Similarly, such would delay Mr. Randazza's ability to proceed with a Chapter 11 Case and plan confirmation proceedings.  Although there is always the potential for claims estimation proceedings for purposes of determination the confirmability of a chapter 11 plan, there is no guaranty that the Court would have allowed such a process in this case and/or that the estimated amount would have necessarily been at the amount that would have allowed Mr. Randazza to confirm a plan of reorganization notwithstanding the continued pendency of a contested matter.  All of the foregoing indicates that the matters at issue involve complex, expensive and delaying matters that strongly weigh in favor of a compromise.

**4.     The Paramount Interest of the Creditors.**

51.     Finally, the proposed Settlement Agreement is in the best interest of the creditors because it finally resolves the Douglass Claim, thus resolving one of the largest remaining general unsecured claims asserted in the Debtor's Chapter 11 Case.  As such, the Settlement Agreement achieves the best result by providing an actual final resolution of the Mr. Douglass's claim, thus removing this impediment to plan confirmation and Mr. Randazza's ultimate exit from bankruptcy. For the avoidance of doubt, no admission of liability or nondischargebility is made or implied by the Settlement Agreement, and it is merely a means to bring about a timely resolution, as both parties have obviously spent substantially more in attorneys' fees and costs contesting the issues among them and such fees and costs far outweigh the settlement amount herein to a significant degree.  All of the remaining creditors in the Chapter 11 Case hold general unsecured claims, and other matters have reduced other large claims, thus allowing Mr. Randazza to proceed with plan confirmation.  As such, the Settlement Agreement is in the best interest of all creditors of the estate.

. . .

. . .

. . .

**LARSON ZIRZOW & KAPLAN, LLC**
**850 E. Bonneville Ave.**
**Las Vegas, Nevada 89101**
**Tel: (702) 382-1170   Fax: (702) 382-1169**

## IV.  Conclusion

WHEREFORE, Mr. Randazza respectfully requests that the Court enter an order in the form as attached as **Exhibit 2**, thereby authorizing and approving the Settlement Agreement as a fair and equitable compromise pursuant to Fed. R. Bankr. P. 9019.  Mr. Randazza also requests such other and further relief as is just and proper.

Dated:  September 14, 2018.

By:    /s/ Matthew C. Zirzow
LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzklegal.com
850 E. Bonneville Ave.

Attorneys for Debtor

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

# EXHIBIT 1

20 Cal.App.5th 376
Court of Appeal,
Second District, Division 2, California.

Clayton DOUGLASS, Plaintiff and Appellant,
v.
SERENIVISION, INC., Defendant and Respondent.

B277574
|
Filed 2/8/2018

**Synopsis**
**Background:** Following personal guarantor's action to
vacate arbitration award, prevailing company petitioned
to confirm the award. The Superior Court, Los Angeles
County, No. Bc596779, Michael P. Linfield, J., granted
petition to confirm the award and denied action to vacate
it. Guarantor appealed.

**Holdings:** The Court of Appeal, Hoffstadt, J., held that:

[1] guarantor's action to vacate award was untimely;

[2] guarantor consented to arbitrator as proper person to
decide whether arbitration clause applied to dispute; and

[3] arbitrator did not exceed powers in determining that
arbitration clause reached dispute.

Affirmed.

West Headnotes (32)

[1] **Alternative Dispute Resolution**
 👈 **Trial or hearing**
 There is a strong presumption that
 courts should determine the jurisdiction of
 arbitrators; parties may nevertheless agree
 to let an arbitrator decide his or her own
 jurisdiction, at least if their agreement to do so
 is clear and unmistakable.

Cases that cite this headnote

[2] **Alternative Dispute Resolution**
 👈 **Application or petition**
 **Alternative Dispute Resolution**
 👈 **Time for proceeding**
 Personal guarantor's petition to vacate
 arbitration award in favor of company that
 sells health products online, regarding internet
 advertising services, was untimely, although
 guarantor asked trial court to vacate award
 in his timely response to company's petition
 to confirm award, where guarantor's response
 was not served and filed within requisite
 timeframe of receiving copy of award. Cal.
 Civ. Proc. Code §§ 1285, 1288.

Cases that cite this headnote

[3] **Alternative Dispute Resolution**
 👈 **Application or petition**
 **Alternative Dispute Resolution**
 👈 **Time for proceeding**
 If the party who lost in the arbitration does
 not serve and file a petition to vacate or a
 response to a petition to confirm within the
 100-day period from the date of service of the
 award, the award must be treated as final. Cal.
 Civ. Proc. Code § 1288.2.

Cases that cite this headnote

[4] **Constitutional Law**
 👈 **Judicial rewriting or revision**
 It is not for the Court of Appeal to rewrite
 statutes.

Cases that cite this headnote

[5] **Courts**
 👈 **Of cause of action or subject-matter**
 **Courts**
 👈 **Waiver of Objections**
 **Estoppel**
 👈 **Particular applications**

229 Cal.Rptr.3d 54, 18 Cal. Daily Op. Serv. 1405, 2018 Daily Journal D.A.R. 1379

Parties may not confer subject matter jurisdiction upon a court by consent, waiver, or estoppel because court's jurisdiction is defined by Constitution or Legislature, not by litigants.

Cases that cite this headnote

**[6]**    **Alternative Dispute Resolution**
    👉 Nature and Extent of Authority

The subject matter jurisdiction of an arbitrator is purely a product of contract.

Cases that cite this headnote

**[7]**    **Alternative Dispute Resolution**
    👉 Nature and Extent of Authority

To say that an arbitrator's subject matter jurisdiction cannot be conferred by consent is incorrect.

1 Cases that cite this headnote

**[8]**    **Alternative Dispute Resolution**
    👉 Scope and Standards of Review

**Alternative Dispute Resolution**
    👉 Questions of law or fact

On appeal from an order confirming an arbitration award, the Court of Appeal reviews the trial court's order de novo and its factual findings for substantial evidence.

Cases that cite this headnote

**[9]**    **Alternative Dispute Resolution**
    👉 Contractual or consensual basis

**Alternative Dispute Resolution**
    👉 Disputes and Matters Arbitrable Under Agreement

Arbitration is a matter of contract between the parties, and, as such, whether particular disputes are subject to arbitration is strictly a matter of the parties' consent.

Cases that cite this headnote

**[10]**   **Alternative Dispute Resolution**

**Alternative Dispute Resolution**
    👉 Disputes and Matters Arbitrable Under Agreement

In cases involving private arbitration, the scope of arbitration is a matter of agreement between the parties.

1 Cases that cite this headnote

**[11]**   **Alternative Dispute Resolution**
    👉 Evidence

The default presumption—and it is a strong one—is that the parties intend courts, not arbitrators, to decide disputes about arbitrability, for example, whether there is an enforceable arbitration agreement or whether it applies to the dispute at hand.

Cases that cite this headnote

**[12]**   **Alternative Dispute Resolution**
    👉 Arbitrability of dispute

The parties are free to designate the arbitrator as the one to decide whether a particular dispute is subject to arbitration, although they must do so clearly and unmistakably if they wish to rebut the default presumption to the contrary.

Cases that cite this headnote

**[13]**   **Alternative Dispute Resolution**
    👉 Construction

When deciding whether the parties agreed to arbitrate a certain matter, including arbitrability itself, courts generally should apply ordinary state-law principles that govern the formation of contracts.

Cases that cite this headnote

**[14]**   **Alternative Dispute Resolution**
    👉 Contractual or consensual basis

**Stipulations**
    👉 Matters which may be subject of stipulation

Parties may expressly agree to arbitrate: (1) in a contract signed before dispute arises,

although they always retain the power to mutually broaden or narrow the scope of their earlier agreement; or (2) in a binding stipulation to arbitrate entered into after a dispute has arisen.

Cases that cite this headnote

**[15]** **Alternative Dispute Resolution**
👉 In general;formation of agreement
**Alternative Dispute Resolution**
👉 Waiver or Estoppel

Parties may enter into an implied in fact agreement to arbitrate through their conduct, which may additionally be deemed to estop them from denying such an agreement.

Cases that cite this headnote

**[16]** **Alternative Dispute Resolution**
👉 Evidence

On the one hand, consent to arbitration or to the arbitrator's power to decide arbitrability will not be inferred solely from a party's conduct of appearing in the arbitral forum to object to the arbitrator's exercise of jurisdiction, at least if the party makes that objection prior to participating in the arbitration; on the other hand, consent to arbitration or to the arbitrator's power to decide arbitrability will be inferred from a party's conduct of litigating an issue up to the point of submitting it for decision in the arbitral forum, at least if the party does so without objection.

2 Cases that cite this headnote

**[17]** **Alternative Dispute Resolution**
👉 Waiver or Estoppel

Personal guarantor consented to arbitrator as proper person to decide whether arbitration clause applied to dispute with company that sells health products online regarding internet advertising services, although guarantor claimed to condition consent on the company posting a bond, where guarantor willingly and without objection participated in arbitration

proceedings for over ten months, he attempted to back out of arbitration shortly before evidentiary hearing, and he did not communicate his conditions on participating until arbitrator ruled against his request that company post bond.

Cases that cite this headnote

**[18]** **Alternative Dispute Resolution**
👉 Objections and exceptions to award, and waiver thereof

A claimant may not voluntarily submit his claim to arbitration, await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrator to act.

1 Cases that cite this headnote

**[19]** **Alternative Dispute Resolution**
👉 Waiver or Estoppel

By their conduct, litigants can waive their right to litigate in an arbitral forum, and can waive their right to litigate in a particular judicial forum by waiving their right to object to personal jurisdiction.

Cases that cite this headnote

**[20]** **Alternative Dispute Resolution**
👉 Suing or participating in suit

The test for assessing whether a party, through her conduct in litigating in a judicial forum, has thereby waived her right to litigate in arbitral forum is stringent, and the onerousness of this test implements the strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.

Cases that cite this headnote

**[21]** **Alternative Dispute Resolution**
👉 Suing or participating in suit

The test for assessing whether a party, through his conduct in litigating in arbitral forum, has thereby waived his right to litigate in a judicial forum is less onerous than waiving

229 Cal.Rptr.3d 54, 18 Cal. Daily Op. Serv. 1405, 2018 Daily Journal D.A.R. 1379

right to litigate in arbitral forum because the strong public policy favoring arbitration is not militating against a finding of waiver.

Cases that cite this headnote

[22]     Alternative Dispute Resolution
         👉 Suing or participating in suit

The test for assessing whether a party, through its conduct in litigating in one judicial forum, has thereby waived its right to object to that forum on personal jurisdiction grounds is not onerous; indeed, the simple act of filing an answer constitutes a waiver, undoubtedly because the type of forum, that is judicial, is not changing.

Cases that cite this headnote

[23]     Alternative Dispute Resolution
         👉 Suing or participating in suit

Although there is no single test for establishing waiver of one's right to arbitrate, relevant factors include whether: (1) the party's actions are inconsistent with the right to arbitrate because he substantially invoked the litigation machinery of a court, such as by filing a cross-claim without asking for a stay or seeking discovery not available in the arbitral forum, particularly if the parties were well into preparation of a lawsuit before he notified the opposing party of an intent to arbitrate; (2) the party has unreasonably delayed in seeking arbitration, that is, whether the party waited until close to the trial date to assert his right to arbitrate, especially if that delay affected, misled, or prejudiced the opposing party; and (3) the party has acted in bad faith or with willful misconduct.

Cases that cite this headnote

[24]     Alternative Dispute Resolution
         👉 Suing or participating in suit

The filing of a lawsuit or the mere participation in litigation is not enough to effect a waiver of one's right to arbitrate; some judicial litigation of the merits is required.

Cases that cite this headnote

[25]     Alternative Dispute Resolution
         👉 Waiver of Objections

A party's participation in an arbitral forum does not constitute a waiver if it is preceded by an objection.

1 Cases that cite this headnote

[26]     Alternative Dispute Resolution
         👉 Scope and Standards of Review

Where the parties have agreed to have an arbitrator decide whether their dispute is subject to arbitration, the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that the parties have agreed to arbitrate.

Cases that cite this headnote

[27]     Alternative Dispute Resolution
         👉 Error of judgment or mistake of law
         Alternative Dispute Resolution
         👉 Mistake of fact and miscalculation
         Alternative Dispute Resolution
         👉 Scope and Standards of Review

As a general rule, courts cannot review an arbitrator's decision for errors of fact or law; this extremely narrow standard of review means that the Court of Appeal must accord substantial deference to the arbitrator's own assessment of his contractual authority.

Cases that cite this headnote

[28]     Alternative Dispute Resolution
         👉 Actions exceeding arbitrator's authority

Arbitrator did not exceed his powers in determining that arbitration clause in agreement reached dispute between personal guarantor and company that sells health products online regarding internet advertising contract, although guarantor did not sign

Douglass v. Serenivision, Inc., 20 Cal.App.5th 376 (2018)

229 Cal.Rptr.3d 54, 18 Cal. Daily Op. Serv. 1405, 2018 Daily Journal D.A.R. 1379

the agreement itself, where guarantor signed contract, contract incorporated agreement by reference, and agreement subjected all disputes regarding the agreement to binding arbitration.

Cases that cite this headnote

[29]  **Contracts**
      👉 Matters annexed or referred to as part of contract

One contract may incorporate the terms of another, and an incorporation is valid as long as (1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties.

Cases that cite this headnote

[30]  **Alternative Dispute Resolution**
      👉 Operation and Effect

Personal guarantor was liable in arbitration proceeding to company that sells health products online regarding unpaid balance for internet advertising services that primary obligor failed to pay, where guarantor signed documents binding him to pay primary obligor's debts and to arbitration, and guarantor did not challenge arbitrator's findings or calculation of amount due.

Cases that cite this headnote

[31]  **Alternative Dispute Resolution**
      👉 Actions exceeding arbitrator's authority

An arbitrator does not exceed his powers merely by erroneously deciding a contested issue of law or fact.

Cases that cite this headnote

[32]  **Alternative Dispute Resolution**
      👉 Persons affected or bound

A guarantor who is not a signatory to a contract containing an arbitration clause is not bound by the arbitration clause.

See 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 554 et seq.

Cases that cite this headnote

**\*\*58**  APPEAL from a judgment of the Superior Court of Los Angeles County. Michael P. Linfield, Judge. Affirmed. (Los Angeles County Super. Ct. No. BC596779)

**Attorneys and Law Firms**

Hochfelsen & Kani and Steven I. Hochfelsen, Newport Beach, for Plaintiff and Appellant.

Phillips, Spallas & Angstadt and Michael R. Halvorsen, Los Angeles, for Defendant and Respondent.

**Opinion**

HOFFSTADT, J.

[1]     **\*380**     There is a "strong presumption that courts should determine the jurisdiction of arbitrators." (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 249, 205 Cal.Rptr.3d 359, 376 P.3d 506 (*Sandquist* ).) Parties may nevertheless agree to let an arbitrator decide his or her own jurisdiction, at least if their agreement to do so is " 'clear [ ] and unmistakabl[e].' " (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (*Howsam* ).) Does a party clearly and unmistakably consent to have an arbitrator decide his own jurisdiction when that party does not object to the arbitrator's jurisdiction in its answer to the arbitration petition, informs the arbitrator that it is "voluntarily" "submit[ing]" to the arbitrator's jurisdiction, appears at multiple prehearing conferences, formally asks the arbitrator to impose a bond requirement on the opposing party, and only after the arbitrator denies that request tells the arbitrator that its submission to jurisdiction was conditional on obtaining that bond? On these facts, we conclude that such conduct does constitute clear and unmistakable consent to allow the arbitrator to decide the issue of his own jurisdiction. We further conclude that the party's challenge to the **\*381**  arbitrator's jurisdiction is untimely and that his

challenges to the arbitrator's assessment of his jurisdiction and to the ultimate arbitration award are without merit. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The Contract*
On August 19, 2009, Vivera, a company that sold diet pills and other health and beauty products online, signed an Adverting Insertion Order (Insertion Order) with Pinnacle Dream Media, a company that offered "internet advertising services."

The Insertion Order "incorporate[d] as though fully set forth herein" a Master Advertiser Agreement (Master Agreement) and provided a weblink to access the Master Agreement; a hard copy of the Master Agreement was not attached. The **\*\*59** Master Agreement is a more comprehensive document designed to "govern the placement and delivery of advertising" set forth in Insertion Orders. Among other things, the Master Agreement provided that (1) "the Parties consent to have all disputes regarding this agreement resolved by binding arbitration," and that any "prevailing party in any Arbitration shall be entitled to an award of attorney fees and costs for such arbitration," and (2) "[a]ll payments are personally guaranteed by the individual executing the [Insertion Order] or secured by the assets of [Pinnacle Dream Media's customer]."

The Insertion Order was "Accepted" by Vivera and bears the printed name and signature of plaintiff Clayton Douglass (Douglass).

By April 2011, Vivera had an unpaid balance with Pinnacle Dream Media totaling $816,530.

#### B. *The Arbitration Proceedings*
In March 2014, defendant Serenivision, Inc. (Serenivision) filed a demand for arbitration against Vivera and Douglass seeking damages of $816,530 plus late penalties and interest. Serenivision had been doing business as Pinnacle Dream Media.

In April 2014, Douglass filed an answer in response to the demand. In his answer, Douglass admitted that he had

signed the Insertion Order "as Vivera's representative," but denied any liability for Vivera's debt because he **\*382** had "refused to" sign the Master Agreement and thus never "agree[d] to personally guarantee any amounts owed ... by Vivera." He also alleged that Vivera's products were "fraudulent," thereby rendering the Insertion Order unenforceable because its subject matter was unlawful.

In September 2014, Douglass appeared at a preliminary hearing before the arbitrator, at which time he reaffirmed he was "appear[ing] voluntarily and submit[ting] to the jurisdiction of this Arbitrator."

In early November 2014, Douglass wrote a letter to Serenivision's counsel. In that letter, Douglass explained that he was "voluntarily" appearing in the arbitration because he was "trying to avoid the additional time and expense" of litigating the same matter in "a federal lawsuit." Douglass then stated that he would "decline to participate in the arbitration" if Serenivision did not agree to post a bond to cover the costs of attorney's fees Douglass might collect, under the terms of the Master Agreement, as the prevailing party in the arbitration.

On February 18, 2015, just 19 days before the matter was set for an evidentiary hearing before the arbitrator, Douglass wrote a letter to the arbitrator: (1) relaying his prior statements to Serenivision that he would voluntarily participate in the arbitration only if Serenivision posted a bond; (2) informing the arbitrator that Serenivision had refused to post a bond; and (3) stating that "[a] bond is necessary for this action to proceed or for this tribunal to exercise jurisdiction." The arbitrator construed the letter as an expedited request for an order requiring Serenivision to post a bond, and denied that motion a week later.

On March 2, 2015, Douglass wrote the arbitrator a letter "terminat[ing] his voluntary appearance" before the arbitrator. Douglass explained that he had been "willing to participate in this arbitration" because it would be "more cost-efficient" than litigating "before a court"; indicated that his "voluntary appearance" had been "conditioned ... on the posting of a bond by [Serenivision]"; and declared that he would "no longer" participate because the arbitrator had not required a bond to be posted. Douglass proclaimed he would **\*\*60** make no further appearances in the arbitration proceedings.

229 Cal.Rptr.3d 54, 18 Cal. Daily Op. Serv. 1405, 2018 Daily Journal D.A.R. 1379

True to his word, Douglass did not appear at the evidentiary hearing a week later. The arbitrator allowed Serenivision to present its case, and Serenivision called witnesses and introduced documentary evidence.

On May 22, 2015, the arbitrator issued a written order. The arbitrator ruled that Douglass had consented to having the arbitrator decide the question of his own jurisdiction by participating in the arbitration proceeding for months **\*383** as a way "to avoid defending a federal court lawsuit"; that the arbitrator had jurisdiction over Serenivision's claim because Douglass signed the Insertion Order, which incorporated the Master Agreement (and its arbitration clause) by reference; and that Douglass, under the terms of the Master Agreement, was liable as the guarantor of Vivera's debt to Serenivision, which with penalties, interest, attorney's fees, and costs came to a total of $1,755,050.34, with additional interest accruing at a rate of 10 percent as of March 10, 2015.

Douglass's counsel was served with this order on May 30, 2015.

## II. Procedural Background

On October 2, 2015, 125 days after he was served with the arbitrator's order, Douglass filed a lawsuit against Serenivision (1) to vacate the arbitration award, (2) for declaratory relief, and (3) for $1 million in compensatory damages and for punitive damages on the ground that the Insertion Order and Master Agreement were illegal and hence subject to rescission.

On January 5, 2016, and again on April 7, 2016, Serenivision filed a petition to confirm the arbitrator's award.

Douglass filed a response to Serenivision's first petition on February 2, 2016. Contrary to what he pled in his answer to the arbitration demand, Douglass in his response claimed that (1) he never signed the Insertion Order, and offered testimony from a handwriting expert that the signature on the Insertion Order was not his; (2) he had no interest in Vivera whatsoever and just had a "partial interest in a company that processed payments to Vivera"; and (3) he had told the arbitrator from the outset that his participation in the arbitration was conditioned on Serenivision posting a bond.

In a 17-page minute order, the trial court granted Serenivision's petition to confirm the arbitration award and denied Douglass's competing claim to vacate it. [1] As an initial matter, the court ruled that Douglass's petition was untimely because it was filed more than 100 days after he was served with the arbitration award, but agreed to address Douglass's challenge to the arbitrator's jurisdiction in light of language contained in *National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1723-1724, 1 Cal.Rptr.2d 570 (*National Union*) stating that "[s]ubject matter jurisdiction, in this case meaning the arbitrators' authority or power to adjudicate a certain type of fee dispute, cannot be conferred by consent, waiver, or estoppel." The court then found that Douglass had "agreed to have the arbitrator decide the jurisdiction question" because he "expressed a willingness to participate in **\*384** [the] arbitration" and "only attempted to withdraw months later" when "the arbitrator ruled against imposing a bond." "Simply put," the court reasoned, "one cannot agree to arbitration, with the proviso that the arbitrator rule in your favor on certain preliminary issues." The court went on to conclude that the arbitrator **\*\*61** had jurisdiction over the dispute and that the arbitrator's finding that Douglass was liable for Vivera's debt was not in excess of the arbitrator's powers.

Douglass filed this timely appeal.

## DISCUSSION

Douglass argues that the trial court erred in confirming the arbitrator's award. Serenivision asserts that we need not reach Douglass's challenge because his challenge to the award was untimely. We address the timeliness issue first.

### I. Timeliness of Douglass's Challenge

[2] "Any party to an arbitration in which an award has been made may petition the court to ... vacate [the arbitrator's] award" (Code Civ. Proc., § 1285), [2] but any such petition must "be served and filed not later than 100 days after" that party was served with a signed copy of the award (*id.*, § 1288). Douglass did not file his petition to vacate until October 2, 2015, which is 125 days after he was served with the award on May 30, 2015. His petition was untimely.

Douglass raises three arguments in response, none of which has merit.

First, he asserts that he was not properly served with the arbitrator's award on May 30, 2015. However, this assertion is directly contrary to the allegation in his petition that "the signed award was served on counsel for [Douglass] on May 30, 2015." This allegation is a "judicial admission" that Douglass "may not ... contradict[ ]." (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 456, 154 Cal.Rptr.3d 87.)

**[3]** **[4]** Second, Douglass contends he should be able to challenge the arbitrator's award because he asked the trial court to vacate the arbitrator's award in his timely response to Serenivision's first petition to confirm. To be sure, "[a] response to a petition" to confirm an award "may request the court to ... vacate the award" (§ 1285.2), but a response containing such a request **\*385** is only timely if it is "served and filed not later than 100 days" after the responding party was served with a signed copy of the award (§ 1288.2). (Accord, *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 745, 60 Cal.Rptr.3d 134 [" 'If [the party who lost in the arbitration does] not serve and file a petition to vacate *or a response to [a] petition to confirm* within the 100-day period from the date of service of the award ..., the award must be treated as final' " (italics added) ], quoting *Klubnikin v. California Fair Plan Assn.* (1978) 84 Cal.App.3d 393, 398, 148 Cal.Rptr. 563.) If the rule were otherwise, a party who missed the initial 100-day deadline would be able to resurrect any otherwise time barred challenge by filing a timely response to a petition to confirm. Because a party has four years to file a petition to confirm an arbitration award (§ 1288), accepting Douglass's argument would effectively turn the statute's 100-day deadline into a 1,560-day deadline (that is, four years plus 100 days). As our Supreme Court has said time and again, "[i]t is not for us to rewrite ... statute[s]." (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 657, fn. 7, 214 Cal.Rptr.3d 494, 389 P.3d 1242.)

Lastly, Douglass argues that he is challenging the arbitrator's jurisdiction and such a jurisdictional challenge may be raised at any time, including for the first **\*\*62** time on appeal. For support, he—like the trial court —cites the following language from *National Union*: "Subject matter jurisdiction, in this case meaning the arbitrators' authority or power to adjudicate a certain type of fee dispute, cannot be conferred by consent, waiver, or estoppel." (*National Union, supra,* 235 Cal.App.3d at pp. 1723-1724, 1 Cal.Rptr.2d 570.)

**[5]** **[6]** **[7]** Of course, parties may not confer subject matter jurisdiction *upon a court* by consent, waiver, or estoppel because our jurisdiction is defined by our Constitution or our Legislature, not by litigants. (*People v. Chadd* (1981) 28 Cal.3d 739, 757, 170 Cal.Rptr. 798, 621 P.2d 837 [" 'the power of the courts to proceed'— i.e., their jurisdiction over the subject matter—cannot be conferred by the mere act of a litigant, whether it amounts to consent, waiver, or estoppel"]; *People v. Tindall* (2000) 24 Cal.4th 767, 776, fn. 6, 102 Cal.Rptr.2d 533, 14 P.3d 207 [same].) By contrast, and as discussed more fully below, the subject matter jurisdiction *of an arbitrator* is purely a product of contract (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (*First Options* ) ["arbitration is simply a matter of contract"] ), which by definition turns on the parties' mutual *consent* (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 8, 10 Cal.Rptr.2d 183, 832 P.2d 899 (*Moncharsh* ) ). To say that an arbitrator's subject matter jurisdiction "cannot be conferred by consent" is accordingly incorrect. (Accord, *Hydrothermal Energy Corp. v. Fort Bidwell Indian Community Council* (1985) 170 Cal.App.3d 489, 497, 216 Cal.Rptr. 59 [" 'unlike a court of law, an arbitrator may herein decide any issue which the parties willingly present to it' "].) *National Union*'s language makes sense when it is read in context, **\*386** as *National Union* was addressing the scope of an arbitrator's jurisdiction fixed by a statute (there, Business and Professions Code section 6200 et seq.) (*National Union, supra,* 235 Cal.App.3d at p. 1722, 1 Cal.Rptr.2d 570); but to the extent that language is read out of context to say that an arbitrator's subject matter jurisdiction cannot be enlarged by consent when that jurisdiction is *solely* a matter of contract, we disagree with *National Union*.

For these reasons, Douglass's petition to vacate was untimely.

## II. Propriety of Order Confirming Arbitration Award

**[8]** Douglass's challenge to the trial court's order confirming the arbitration award entails three analytically distinct questions: (1) did the parties consent to have the arbitrator decide whether the Master Agreement's arbitration clause applies to Serenivision's demand?; (2) if

so, did the arbitrator decide that question correctly?; and (3) if so, did the arbitrator exceed his powers in ultimately concluding that Douglass owed Serenivision more than $1.7 million? We will address each issue separately. In so doing, we review the trial court's order de novo and its factual findings for substantial evidence. (*ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP* (2017) 9 Cal.App.5th 885, 900, 215 Cal.Rptr.3d 492.)

### A. *Was the Arbitrator the Proper Person to Decide Whether the Arbitration Clause Applies to This Dispute?*

**[9]** **[10]** **[11]** **[12]** Arbitration "is ... a matter of contract between the parties" (*First Options, supra*, 514 U.S. at p. 943, 115 S.Ct. 1920), and, as such, whether particular disputes are subject to arbitration " 'is strictly "a matter of [the parties'] consent" ' " (*Sandquist, supra*, 1 Cal.5th at p. 252, 205 Cal.Rptr.3d 359, 376 P.3d 506, quoting **\*\*63** *Granite Rock Co. v. Teamsters* (2010) 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567). (Accord, *Moncharsh, supra*, 3 Cal.4th at p. 8, 10 Cal.Rptr.2d 183, 832 P.2d 899 ["In cases involving private arbitration, '[t]he scope of arbitration is ... a matter of agreement between the parties' "], quoting *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323, 197 Cal.Rptr. 581, 673 P.2d 251.) The default presumption—and it is a "strong" one—is that " 'the parties intend courts, not arbitrators, to decide ... disputes about "arbitrability," ' " e.g., whether there is an enforceable arbitration agreement or whether it applies to the dispute at hand." (*Sandquist*, at pp. 251-252, 205 Cal.Rptr.3d 359, 376 P.3d 506, quoting *BG Group, PLC v. Republic of Argentina* (2014) 572 U.S. ——, ——, 134 S.Ct. 1198, 1206, 188 L.Ed.2d 220, 228; *Howsam, supra*, 537 U.S. at p. 84, 123 S.Ct. 588.) However, the parties are free to designate the arbitrator as the one to decide whether a particular dispute is subject to arbitration (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 551-552, 21 Cal.Rptr.3d 322; *Fidelity & Cas. Co. v. Dennis* (1964) 229 Cal.App.2d 541, 543, 40 Cal.Rptr. 418 **\*387** *Dennis* )), although they must do so "clearly and unmistakably" if they wish to rebut the default presumption to the contrary (*Howsam*, at pp. 83-84, 123 S.Ct. 588; *First Options*, at p. 944, 115 S.Ct. 1920).

**[13]** "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability [itself] ), courts generally ... should apply ordinary state-law principles that govern the formation of contracts." (*First Options, supra*, 514 U.S. at p. 944, 115 S.Ct. 1920.) Under California's law of contracts, a contract may be express (that is, either written or oral) or implied in fact (that is, one whose "existence and terms ... are manifested by conduct"). (Civ. Code, §§ 1619-1621; *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1178, 134 Cal.Rptr.3d 779, 266 P.3d 287.)

**[14]** Applying these principles, parties may expressly agree to arbitrate: (1) in a contract signed before any dispute arises, although they always retain the power to mutually broaden or narrow the scope of their earlier agreement (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1437, 111 Cal.Rptr.3d 468 ["A submission agreement may restrict or broaden the issues contemplated by the arbitration clause"]; *O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110, 308 P.2d 9 (*O'Malley*) [" 'The powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission' "]; *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 382, 36 Cal.Rptr.2d 581, 885 P.2d 994 ["the arbitrator's powers may be restricted by the limitation of issues submitted"] ); or (2) in a binding stipulation to arbitrate entered into after a dispute has arisen (*Caro v. Smith* (1997) 59 Cal.App.4th 725, 729, 69 Cal.Rptr.2d 306 (*Caro* ) [parties "stipulate[d] to binding arbitration"]; *Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 431 & fn. 1, 22 Cal.Rptr.2d 376).

**[15]** **[16]** Alternatively, and most pertinent here, parties may enter into an implied in fact agreement to arbitrate through their conduct (which may additionally be deemed to estop them from denying such an agreement). (See *Cabrera v. Plager* (1987) 195 Cal.App.3d 606, 613, fn. 8, 241 Cal.Rptr. 731 ["appearance at the arbitration hearing and participation therein without raising any objection to the jurisdiction of the arbitrator estops them from challenging it afterwards"].) On the one hand, consent to arbitration (or to the arbitrator's power to decide arbitrability) will not be inferred solely from a party's **\*\*64** conduct of appearing in the arbitral forum to object to the arbitrator's exercise of jurisdiction, at least if the party makes that objection "prior to participat[ing]" in the arbitration. (*International Film Investors v. Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 706, 199 Cal.Rptr. 690 (*International* Film ) ); *First Options, supra*, 514 U.S. at p. 946, 115 S.Ct. 1920 [written objection; no consent]; **\*388** *Keller Construction Co.*

Douglass v. Serenivision, Inc., 20 Cal.App.5d 376 (2018)

Case 15-14956-abl Doc 272 Entered 09/14/18 17:09:26 Page 22 of 30
229 Cal.Rptr.3d 54, 18 Cal. Daily Op. Serv. 1405, 2018 Daily Journal D.A.R. 1379

*v. Kashani* (1990) 220 Cal.App.3d 222, 225, fn. 2, 269 Cal.Rptr. 259 ["merely appear[ing] [to] articulate[ ] ... objection to arbitration"; no consent]; *George Day Const. v. United Broth. of Carpenters* (9th Cir. 1984) 722 F.2d 1471, 1475 [if a party "reserve[s] the question of arbitrability for initial determination in a judicial forum"; no consent].) On the other hand, consent to arbitration (or to the arbitrator's power to decide arbitrability) will be inferred from a party's conduct of litigating an issue up to the point of submitting it for decision in the arbitral forum, at least if the party does so without objection. (*Dennis, supra*, 229 Cal.App.2d at p. 544, 40 Cal.Rptr. 418 [party "twice submitted on [the] merits"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 790, 79 Cal.Rptr.2d 273 [party "participated in the arbitration without objection"]; *George Day Const.*, at p. 1475 [when "the arbitrability issue is argued along with the merits, and ... submitted to the arbitrator for decision, it becomes readily apparent that the parties have consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability"]; *Cabrera*, at p. 613, fn. 8, 241 Cal.Rptr. 731.)

[17] Whether a party's conduct constitutes consent is necessarily fact specific, and this case presents the question: Has a party clearly and unequivocally consented to have an arbitrator decide whether a dispute is subject to arbitration when that party: (1) files an answer that does not object to the arbitrator's power to decide that issue; (2) tells the arbitrator that he is "voluntarily" "submit[ting]" to the arbitral forum to avoid the higher cost of litigating issues in federal court; (3) appears, again without objection, at multiple prehearing conferences; (4) formally asks the arbitrator to impose a bond on the opposing party; and (5) only after the arbitrator refuses to require a bond, and on the eve of the evidentiary hearing, purports to rescind his voluntary participation on the ground that a bond was a condition precedent to his participation? We conclude that the answer is "yes," and do so for three reasons.

First, Douglass's conduct establishes, under the above-cited precedent, his consent to have the arbitrator decide which disputes are arbitrable. Although Douglass did not litigate in the arbitral forum to the point of submitting the issue to the arbitrator, he willingly and without objection participated in the arbitration proceedings for over 10 months (from April 2014 when he filed his answer to March 2015 when he withdrew from

the arbitration proceedings); he availed himself of the arbitrator's authority when he asked the arbitrator to issue an order requiring Serenivision to post a bond; and he purported to rescind his voluntarily participation a few weeks before the evidentiary hearing and only after the arbitrator issued a ruling he did not like. What is more, Douglass's participation in the arbitration was no accident. As he told both the arbitrator and Serenivision, he was making a conscious and tactical decision to participate in the arbitration forum because it was cheaper. We also note that he was seeking to avail himself of the **\*389** attorney's fees award only available in the arbitral forum; indeed, he was seeking a bond specifically in anticipation of such an award. This extent of voluntarily participation in an arbitration **\*\*65** where one of the primary issues is whether the dispute was arbitrable, without any objection or reservation and done for tactical reasons, constitutes clear and unmistakable evidence of Douglass's consent to have the arbitrator decide that issue. (Accord, *International Film, supra*, 152 Cal.App.3d at p. 706, 199 Cal.Rptr. 690 [objection "prior to participation" required].) Because we may infer Serenivision's consent to have the arbitrator decide this issue from the fact that it filed an arbitration demand, there was mutual consent.

[18] Second, allowing Douglass to back out of the arbitral forum on the proverbial eve of the evidentiary hearing runs afoul of the principle that "[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrator to act." (*University of San Francisco Faculty Assn. v. University of San Francisco* (1983) 142 Cal.App.3d 942, 954, 191 Cal.Rptr. 346; see also *O'Malley, supra*, 48 Cal.2d at p. 110, 308 P.2d 9 [a party "may not agree to arbitrate a question and then, if the decision goes against it, litigate the question in another proceeding"].) Such conduct constitutes " 'gamesmanship' " insofar as it allows a party " 'both to have his cake and eat it too.' " (*Caro, supra*, 59 Cal.App.4th at p. 731, 69 Cal.Rptr.2d 306; *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1343, 83 Cal.Rptr.2d 340.) Courts are disinclined, and rightly so, to reward such "inequitable" conduct. (*Caro*, at p. 731, 69 Cal.Rptr.2d 306.)

[19] Third, our conclusion that Douglass's conduct in this case qualifies as consent affirms that the test for waiving resolution of an issue in a judicial forum by conduct fits

where it should in the hierarchy of tests used to evaluate waiver of other fora through one's conduct. By their conduct, litigants can waive their right to litigate in an arbitral forum (*Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 781-782, 191 Cal.Rptr. 8, 661 P.2d 1088 (*Christensen* ); *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1204, 8 Cal.Rptr.3d 517, 82 P.3d 727 (*St. Agnes* ) ), and can waive their right to litigate in a particular judicial forum (by waiving their right to object to personal jurisdiction) (*Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 419, 112 Cal.Rptr.3d 482 (*Air Machine* ) ).

**[20]  [21]  [22]**  However, the tests for waiver by conduct in these different contexts vary in their stringency, and do so for policy reasons. The test for assessing whether a party, through her conduct in litigating in a judicial forum, has thereby waived her right to litigate an in arbitral forum is the most stringent, and the onerousness of this test implements the " ' "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' " (*St. Agnes, supra,* 31 Cal.4th at p. 1204, 8 Cal.Rptr.3d 517, 82 P.3d 727.) The test for assessing **\*390** whether a party, through his conduct in litigating in an in arbitral forum, has thereby waived his right to litigate in a judicial forum is less onerous because the "strong public policy" favoring arbitration is not militating against a finding of waiver. And the test for assessing whether a party, through its conduct in litigating in one judicial forum, has thereby waived its right to object to that forum on personal jurisdiction grounds is the least onerous. Indeed, the simple act of filing an answer constitutes a waiver (*Air Machine, supra,* 186 Cal.App.4th at pp. 419-420, 112 Cal.Rptr.3d 482; *Goodwine v. Superior Court* (1965) 63 Cal.2d 481, 484, 47 Cal.Rptr. 201, 407 P.2d 1; § 1014), undoubtedly because the type of forum (i.e., judicial) is not changing.

**[23]  [24]  \*\*66**  Were we to conclude that Douglass's conduct did not constitute a waiver of his right to a judicial forum, we would effectively make the test for such waivers more stringent than the test for waiver of the right to an arbitral forum because Douglass's conduct, as explained next, constitutes a waiver under that more stringent test. Although "there is no 'single test' for establishing waiver" of one's right to arbitrate (*Christensen, supra,* 33 Cal.3d at p. 782, 191 Cal.Rptr. 8, 661 P.2d 1088), relevant factors include whether: (1) " ' "the party's actions are inconsistent with the right to arbitrate" because he ' ' ' 'substantially

invoked' " ' " ' " ' 'the litigation machinery' " ' " of a court (such as by filing a cross-claim without asking for a stay or seeking discovery not available in the arbitral forum), particularly if the parties " ' " 'were well into preparation of a lawsuit' before [he] notified the opposing party of an intent to arbitrate" ' "; (2) the party " ' "has unreasonably delayed" in seeking arbitration' " (that is, whether the party waited until " ' "close to the trial date" ' " to assert his right to arbitrate), especially if that delay " ' " 'affected, misled, or prejudiced' the opposing party" ' "; and (3) the party has acted in 'bad faith' or with 'willful misconduct.' " (*St. Agnes, supra,* 31 Cal.4th at p. 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727; *Christensen,* at p. 782, 191 Cal.Rptr. 8, 661 P.2d 1088.) Under this precedent, the filing of a lawsuit or the " 'mere participation in litigation' " is not enough to effect a waiver; some " ' "judicial *litigation* of the merits" ' " is required. (*Christensen,* at pp. 782-783, 191 Cal.Rptr. 8, 661 P.2d 1088; *St. Agnes,* at p. 1203, 8 Cal.Rptr.3d 517, 82 P.3d 727.)

Douglass's conduct constitutes a waiver under this test because he substantially invoked the machinery of the arbitral forum in asking the arbitrator for relief, delayed until the eve of the evidentiary hearing his proclamation that his voluntary participation was conditional, and purposefully availed himself of the cheaper arbitral forum until the arbitrator made a ruling he did not like. Were we nevertheless to conclude that Douglass's conduct did not constitute a waiver of his right to a judicial forum, we would make the test for waiving a judicial forum more onerous than the test for waiving an arbitral forum, and would consequently upset the carefully crafted, policy-based hierarchy for evaluating when one's conduct waives the right to litigate in a particular forum.

**\*391**  Douglass offers three arguments in response.

First, he asserts that the never signed the Master Agreement, that the Master Agreement was never incorporated by reference into the Insertion Order, and that he never signed the Insertion Order. Even if we accept these assertions as true, they are irrelevant to our conclusion that Douglass has, by virtue of his subsequent conduct before the arbitrator *alone*, consented to having the arbitrator decide the issue of arbitrability.

Second, Douglass argues that his consent to having the arbitrator decide the question of arbitrability was conditioned on Serenivision posting a bond, and this

condition was never met. To be sure, parties may make their promises conditional on the occurrence of a condition precedent (Civ. Code, § 1439; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 592, 209 Cal.Rptr.3d 151), including their consent to arbitration (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313-314, 24 Cal.Rptr.2d 597, 862 P.2d 158 [right to arbitration may be made conditional on a timely demand] ). But here, Douglass did not inform Serenivision in writing that his participation was conditional until seven months after unconditionally answering the arbitration demand, **\*\*67** and did not inform the arbitrator in writing until a few weeks before the evidentiary hearing. Douglass contests this timeline. Directing us to his attorney's later-filed declaration, Douglass says he gave the arbitrator oral notice at a status conference (held five months after he unconditionally answered) that his participation was going to be conditional, but the arbitrator's contemporaneous minutes from that conference reflect that Douglass was "appear[ing] voluntarily and submit[ting] to the jurisdiction of this Arbitrator"; no conditions or qualifications were reported. The trial court was well within its rights to reject a self-serving subsequent declaration in favor of the arbitrator's contemporaneous record. If we accept the trial court's factual findings (as we must where, as here, they are supported by substantial evidence), Douglass's notice of the conditional nature of his participation did not occur until his conduct had already established his unconditional consent to have the arbitrator decide the question of arbitrability. Douglass's belated attempt to retroactively impose a condition at that point in time was too little, too late.

[25] Lastly, Douglass contends that he sufficiently preserved his objection to the arbitrator's power to decide the question of arbitrability because he registered objections to his participation from the outset. As noted above, a party's participation in an arbitral forum does not constitute a waiver if it is preceded by an objection. (*International Film, supra,* 152 Cal.App.3d at p. 706, 199 Cal.Rptr. 690); (*First Options, supra,* 514 U.S. at p. 946, 115 S.Ct. 1920.) In this case, however, there was no timely objection. Douglass raised no objection in his answer and, months later, reaffirmed he was "appear [ing] voluntarily and submit[ting] to the **\*392** jurisdiction of this Arbitrator." Although Douglass now takes the position, in the declarations he and his counsel

submit, that he had objected from the beginning, the trial court had ample basis to find those declarations not to be credible: Those declarations contradict the arbitrator's contemporaneous order indicating Douglass's participation was unconditional, and the declarations contain other statements (such as Douglass's denial that he ever signed the Insertion Order and his disclaimer of any relationship to Vivera) that directly conflict with other contemporaneous evidence (such as Douglass's admission, in his answer, that he signed the Insertion Order on behalf of Vivera). (E.g., *People v. Lenix* (2008) 44 Cal.4th 602, 614, 80 Cal.Rptr.3d 98, 187 P.3d 946 [" 'determinations of credibility and demeanor lie " 'peculiarly within a trial judge's province' " ' "].) We would make the same credibility call as the trial court.

In sum, the arbitrator had the power to decide whether the disputes before him were subject to arbitration.

### B. *Did the Arbitrator Err in Concluding That This Dispute is Subject to Arbitration?*

[26]    [27]    Where, as here, the parties have agreed to have the arbitrator decide whether their dispute is subject to arbitration, "the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that the parties have agreed to arbitrate." (*First Options, supra,* 514 U.S. at p. 943, 115 S.Ct. 1920, italics omitted.) As a "general rule," courts "cannot ... review[ ]" "an arbitrator's decision ... for errors of fact or law." (*Moncharsh, supra,* 3 Cal.4th at p. 11, 10 Cal.Rptr.2d 183, 832 P.2d 899; § 1286.2, subd. (a); 9 U.S.C. § 10.) This " 'extremely narrow' " standard of review means that we must "accord 'substantial **\*\*68** deference to the arbitrator['s] own assessment[ ] of [his] contractual authority.' " (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 541, 104 Cal.Rptr.2d 686.)

[28]    [29]    We conclude that the arbitrator did not exceed his powers in determining that the arbitration clause in the Master Agreement reaches this dispute. That clause makes "*all* disputes regarding" the Master Agreement subject to "binding arbitration." The Master Agreement, including the arbitration clause, is incorporated by reference into the Insertion Order. One contract may incorporate the terms of another (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 66, 159 Cal.Rptr.3d 444), and an incorporation is valid as long as "(1) the reference is

clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties" ( **\*393** *DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 713, 97 Cal.Rptr.3d 856). Here, the one-page Insertion Order stated that it was "incorporat[ing]" "fully" the Master Agreement in a prominent location and font and provided the exact web address to access the Master Agreement. Douglass admitted that he signed the Insertion Order on behalf of Vivera under the word, "Accepted." Because this dispute involves the collection of an unpaid balance incurred pursuant to the Insertion Order, it falls squarely within the terms of the arbitration clause incorporated into the Insertion Order.

Douglass's various arguments to the contrary lack merit. He argued to the arbitrator that he never signed the Master Agreement (and argued to the trial court that he refused to sign the Master Agreement), but his signature on the Master Agreement is unnecessary to incorporate its terms because he signed and thereby affirmatively "accepted" the terms of the Insertion Order, which expressly incorporated the Master Agreement's provisions. Douglass argued to *the trial court* that he never signed the Insertion Order and never received a copy of the Master Agreement. Of course, *the arbitrator* could not have erred in not considering an argument never presented to him. Moreover, these arguments either directly contradict what Douglass told the arbitrator (namely, that he *did* sign the Insertion Order)[3] or directly contradict evidence Serenivision submitted authenticating the version of the Master Agreement available at their website at the time the Insertion Order was signed. The trial court was well within its province to resolve these factual disputes in favor of the arbitrator's decision.

### C. *Did the Arbitrator Err in Concluding That Douglass was Liable as a Guarantor for Vivera's Unpaid Balance on the Insertion Order?*

**[30]    [31]** The only pertinent basis for overturning the arbitrator's award in this case is that the arbitrator "exceeded [his] powers." (§ 1286.2, subd. (a)(4).) It is well settled, however, that an arbitrator does "not exceed [his]

powers merely by erroneously deciding a contested issue of law or fact." (*Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at p. 366, 36 Cal.Rptr.2d 581, 885 P.2d 994.)

**[32]** The arbitrator did not commit any errors of law or fact, let alone exceed his powers. As discussed above, the terms of the Master Agreement were incorporated into the Insertion Order. The Master **\*\*69** Agreement provides that "[a]ll payments are personally guaranteed by the individual executing the" Insertion Order. Because Douglass admitted that he signed the Insertion **\*394** Order and thereby accepted its terms, he "executed" that Order and is contractually bound as a guarantor of Vivera's outstanding debt. (See *Transdyn/Cresci JV v. City and County of San Francisco* (1999) 72 Cal.App.4th 746, 757-758, 85 Cal.Rptr.2d 512 [signature and execution synonymous].) Douglass's acts, coupled with the pertinent contractual terms, take him outside of the default rule that " 'a guarantor who is not a signatory to a contract containing an arbitration clause is not bound by the arbitration clause.' " (*Grundstad v. Ritt* (7th Cir. 1997) 106 F.3d 201, 204.) Douglass has not challenged the arbitrator's findings that Vivera is liable to Serenivision or the arbitrator's calculation of the amount due. Consequently, we have no basis to disturb the arbitrator's order holding Douglass liable to Serenivision for Vivera's debt.

### DISPOSITION

The judgment is affirmed. Serenivision is entitled to its costs on appeal.

We concur:

LUI, P. J.

CHAVEZ, J.

### All Citations

20 Cal.App.5th 376, 229 Cal.Rptr.3d 54, 18 Cal. Daily Op. Serv. 1405, 2018 Daily Journal D.A.R. 1379

Footnotes

1    The court denied as moot Serenivision's demurrer to Douglass's complaint.

229 Cal.Rptr.3d 54, 18 Cal. Daily Op. Serv. 1405, 2018 Daily Journal D.A.R. 1379

2      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3      This admission renders irrelevant Douglass's challenge to the admissibility of additional evidence that he was the signatory to the Insertion Order.

---

**End of Document**                                      © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 2

1

2

3

4

5

6

7 LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
8 Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
9 MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
10 E-mail: mzirzow@lzklegal.com
850 E. Bonneville Ave.
11 Las Vegas, Nevada 89101
Tel: (702) 382-1170
12 Fax: (702) 382-1169

13

14 Attorneys for Debtor

15                    **UNITED STATES BANKRUPTCY COURT**
16                      **FOR THE DISTRICT OF NEVADA**

17 In re:                                    Case No.: BK-S-15-14956-abl
                                            Chapter 11
18 MARC JOHN RANDAZZA,

19           Debtor.                          Date:  October 17, 2018
                                            Time:  11:00 a.m.
20

21      **ORDER GRANTING DEBTOR'S MOTION TO APPROVE SETTLEMENT**
        **WITH CLAYTON DOUGLASS PURSUANT TO FED. R. BANKR. P. 9019**
22

23           Marc John Randazza, as debtor and debtor in possession (the "Debtor"), having filed his

24 *Motion to Approve Settlement with Clayton Douglass Pursuant to Fed. R. Bankr. P. 9019* (the

25 "Motion") [ECF No. ____],[1] which sought to authorize and approve that certain Settlement

26 Agreement and Release (the "Settlement Agreement") among the parties thereto; the Court having

27

28 _____
   [1] Unless otherwise indicated, all capitalized terms herein shall have the same meaning as set forth in the Motion.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

reviewed and considered the Motion and the accompanying evidence; no oppositions to the Motion having been filed; the Court having held a hearing on the Motion, and having heard and considered the arguments of counsel; the Court having made its findings of fact and conclusions of law at the hearing, which are incorporated herein by reference pursuant to Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 7052 and 9014; and good cause appearing;

**IT IS HEREBY ORDERED:**

1.      The Motion is GRANTED.

2.      The Settlement Agreement is APPROVED as a fair and equitable settlement pursuant to Fed. R. Bankr. P. 9019.

3.      Pursuant to the terms of the Settlement Agreement, the Douglass Claim, being Proof of Claim No. 7 in the Debtor's Chapter 11 Case, is EXPUNGED.

4.      The Parties to the Settlement Agreement are authorized and directed to implement that agreement in accordance with its terms and conditions.

5.      The Court reserves jurisdiction over the interpretation and implementation of the Settlement Agreement and this Order.

**IT IS SO ORDERED.**


PREPARED AND SUBMITTED:

By: _____
LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
Email:  zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
Email:  mzirzow@lzklegal.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐  The court has waived the requirement set forth in LR 9021(b)(1).

☐  No party appeared at the hearing or filed an objection to the motion.

☒  I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.

☐  I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169