LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>                   Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11<br><br>Date:  October 17, 2018<br>Time:  11:00 a.m. |

**DECLARATION OF MARC JOHN RANDAZZA IN SUPPORT OF**
**DEBTOR'S MOTION TO APPROVE SETTLEMENT WITH**
**CLAYTON DOUGLASS PURSUANT TO FED. R. BANKR. P. 9019**

I, Marc John Randazza, do hereby declare under penalty of perjury as follows:

1.    I am over the age of eighteen and I have personal knowledge of the facts in this matter, except where stated upon information and belief, and if called to testify, I could and would testify to the following statements set forth herein.  I am the debtor and debtor in possession in the above-captioned bankruptcy case and make this Declaration in support of the *Motion to Approve Settlement with Clayton Douglass Pursuant to Fed. R. Bankr. P. 9019* (the "Motion").[1]

. . .

. . .

. . .

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as in the Motion.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**Background Facts**

2.      On December 11, 2015, Mr. Douglass filed his *Proof of Claim* in my Chapter 11 Case, being Claim No. 7 (the "Douglas Claim"), for alleged amounts arising out of or related to the Arbitration and/or the Arbitration Award.  More specifically, the Douglass Claim asserts "Malpractice" based on "Losses due to Arbitration Award" in the amount of $816,530, along with interest, fees, and expenses, for a total claim of $1,831,792.59.  The Douglass Claim is silent as to the alleged errors and/or omissions by me that are claimed to constitute malpractice and it is silent as to how those errors or omissions caused the debt claimed.

3.      On January 9, 2017, Mr. Douglass and I entered into a *Stipulation to Modify the Automatic Stay to Name Debtor Nominally to Pursue Insurance Policy and Waive the 14-day Stay under 4001(a)(3) with no Enforcement of Any Judgment Against Debtor* [ECF No. 170], which the Court approved by order entered on January 12, 2017 [ECF No. 171].  In spite of the foregoing, Mr. Douglass never filed any such action naming me, nominally or otherwise.

4.      On May 14, 2018, Mr. Douglass and I submitted our dispute regarding the allowance of the Douglas Claim and related potential insurance coverage to voluntary mediation.  The proposed Settlement Agreement herein is the product of good faith and arm's length negotiations between the parties, before and during the mediation.  Both sides were represented by experienced and knowledgeable counsel throughout this litigation, both pre and post-petition, as well as in these settlement negotiations in particular.  The Settlement Agreement makes no admissions of liability as to any of the theories pleaded by the Parties, and rather is agreed to by both sides as a way to end their very long, expensive and time-consuming disputes.

**Application of Settlement Approval Factors**

**Probability of Success.**

5.      Analyzing the probability of success involves an analysis of each side's remaining claims and potential remedies.  Mr. Douglass a low probability of success in his claim for a variety of reasons.

6.      The Douglas Claim has a low probability of success because he does not and cannot allege breach or proximate causation.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

7.      The Douglass Claim lacks any allegation as to the nature of the alleged breach of duty by me.  I cannot speculate as to the nature of the alleged malpractice committed by any attorney at MJRPA, let alone by me.  In the absence of such allegation, the Douglass Claim could not stand.

8.      Moreover, the recent decision by the 2nd District Court of Appeals demonstrates that there could not be any proximate causation between the representation by MJRPA and Mr. Douglass' loss in the arbitration.

9.      Mr. Douglass averred in a sworn declaration that he signed the Insertion Order at issue.  A true and correct copy of Mr. Douglass' declaration submitted in the Arbitration is attached as **Exhibit 1**.

10.      In fact, it was not until after the termination of representation that Mr. Douglass' successor counsel, on June 17, 2015, first suggested that Mr. Douglass would recant that sworn declaration and newly claim he had not, in fact, signed it.  A true and correct copy of this correspondence from counsel is attached as **Exhibit 2**.

11.      Although Mr. Douglass contested the arbitrability of the dispute and his liability as personal guarantor, he identified no errors, *i.e.,* no breach, by MJRPA or me.

12.      Further, there is a complete absence of proximate causation.  There is no allegation, nor could there be, that MJRPA or I caused Mr. Douglass to sign the Insertion Order containing the personal guarantee or caused Vivera to incur the underlying debt personally guaranteed by Mr. Douglass.  Although Mr. Douglass asserted that he was unaware of the personal guarantee, the overwhelming evidence and the law showed that such was binding upon him once he signed the insertion order.

13.      No attorney could have prevailed at that arbitration given those facts.

14.      Mr. Douglass was advised in writing by MJRPA prior to the arbitration hearing that a failure to participate in the proceeding would likely result in the entry of a default judgment against him.  A true and correct copy of correspondence directed from counsel to Mr. Douglass is attached as **Exhibit 3**.

15.      Thereupon, Mr. Douglass, fully informed of the likely consequences, explicitly

directed MJRPA not to participate in the arbitration hearing.  A true and correct copy of email correspondence regarding the foregoing is attached as **Exhibit 4**.

16.     Mr. Douglass was given a final opportunity to review the correspondence informing the arbitrator that he would not be appearing.  Mr. Douglass lodged no objection thereto.  A true and correct copy of email correspondence regarding the foregoing is attached as **Exhibit 5**.

17.     Although Mr. Douglass' new attorney, in June 2015, after the arbitration award was issued, raised the question as to the validity of Mr. Douglass' signature on the Insertion Order, it is a factual matter Mr. Douglass never previously identified to MJRPA, thus I could not have counseled him on the matter, directed arbitration strategy thereon, or present evidence thereof to the arbitrator.

18.     In addition, although Mr. Douglass recanted his prior sworn statement that the signature was his, newly claiming it was affixed by a person in another city, Mr. Douglass conspicuously omitted argument that the person who affixed his signature lacked authority to do so.  A true and correct copy of Mr. Douglass' request for reconsideration in the Arbitration establishing the foregoing is attached as **Exhibit 6**.

19.     Mr. Douglass was fully aware his signature was affixed to the Insertion Order.  A true and correct copy of email correspondence establishing the foregoing is attached as **Exhibit 7**.  Thus, he would be deemed to have adopted or ratified it and he is estopped from denying it.

20.     As a result, whether Mr. Douglass signed the Insertion Order himself, or his signature was affixed by an authorized third party, Mr. Douglass was faced with an Insertion Order that expressly incorporated a personal guaranty and agreement to arbitrate, the terms of which were proven, by competent evidence at arbitration, to have been available to Mr. Douglass when the Insertion Order was signed.

21.     As a result, whatever Mr. Douglass might claim to have been the breach of duty, it would not have changed the outcome. Since Mr. Douglass always would have lost at arbitration (or in court), neither MJPRA nor I proximately caused his damages.  Thus, the Douglass Claim has a low probability of success.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**LARSON ZIRZOW & KAPLAN, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

22. As such, given my probability of success, as well as the significant limitations on Mr. Douglass' probabilities of success, this first factor weighs strongly in favor of approval of the Settlement Agreement.

**Collection Difficulties.**

23. I am obviously presently a debtor in bankruptcy, and thus there would be difficulties in collecting any sum. As such, the difficulties in collection also strongly favor approval of the Settlement Agreement, especially given that the Settlement Payment amount is only $50,000, and is proposed to be paid by my and/or my law firm's professional liability insurance carrier, with no funds coming from my bankruptcy estate, and with a full extinguishment and release of the Douglas Claim against my bankruptcy estate. This Settlement Payment is obviously substantially less than what was originally alleged by Mr. Douglass. As such, this second factor also weighs heavily in favor of approving the Settlement Agreement.

**The Complexity, Expense, Inconvenience and Delay of the Litigation.**

24. The litigation of this dispute would be exceedingly complex, expensive, time consuming, and result in significant delays. Mr. Douglass has seen fit to litigate these matters at multiple state court levels and there is no reason to believe he would not litigate vigorously here. Going forward, the parties were looking at very expensive litigation involving numerous depositions and exhibits, various dueling expert witnesses, likely dispositive motion practice, and a lengthy evidentiary hearing.

25. Second, the litigation may prove to be very complex with very lengthy and extensive motion practice and legal briefing on various areas of law, given the nature of the disputes, the parties, and the counsel involved. Similarly, such would delay my ability to proceed with a Chapter 11 Case and plan confirmation proceedings. Although there is always the potential for claims estimation proceedings for purposes of determination the confirmability of a chapter 11 plan, there is no guaranty that the Court would have allowed such a process in this case and/or that the estimated amount would have necessarily been at the amount that would have allowed me to confirm a plan of reorganization notwithstanding the continued pendency of a contested matter. All of the foregoing indicates that the matters at issue involve complex, expensive and

delaying matters that strongly weigh in favor of a compromise.

**The Paramount Interest of the Creditors.**

26.    Finally, the proposed Settlement Agreement is in the best interest of creditors because it finally resolves the Douglass Claim, thus resolving one of the largest remaining general unsecured claims asserted in my Chapter 11 Case.  As such, the Settlement Agreement achieves the best result by providing an actual final resolution of the Mr. Douglass' claim, thus removing this impediment to plan confirmation and my ultimate exit from bankruptcy.  For the avoidance of doubt, no admission of liability or nondischargebility is made or implied by the Settlement Agreement, and it is merely a means to bring about a timely resolution, as both parties have obviously spent substantially more in attorneys' fees and costs contesting the issues among them and such fees and costs far outweigh the settlement amount herein to a significant degree.  All of the remaining creditors in the Chapter 11 Case hold general unsecured claims, and other matters have reduced other large claims, thus allowing me to proceed with plan confirmation.  As such, the Settlement Agreement is in the best interest of all creditors of the estate.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  September 14, 2018.

  */s/ Marc J. Randazza*
MARC JOHN RANDAZZA

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# EXHIBIT 1

**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**
**IN THE MATTER OF**

**SERENIVISION, INC.**
            Claimant,

v.                                          Case No. 50-20-1400-0207

**VIVERA** and **CLAYTON DOUGLASS**
            Respondents.

## Declaration of Clayton Douglass

        I, Clayton Douglass, declare under penalty of perjury as follows:

1.        I am over the age of eighteen (18) years and have enver been convicted of a felony or crime involving fraud or dishonesty. I have first-hand knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.        I am a respondent in this Arbitration.

3.        At all times relevant to this arbitration prior to early 2010, I was a representative of Respondent Vivera.

4.        On or about August 19, 2009, I signed the Advertising Insertion Order ("IO") between Claimant Serenivision, Inc. d/b/a Pinnacle Dream Media ("PDM") and Vivera on behalf of Vivera.

5.        Other than executing the IO, I had no role in any alleged contractual relationship between Vivera and PDM.

6.        The IO I received and executed did not have the Master Advertising Agreement ("MAA") at issue in this arbitration attached to it.

7.        The Uniform Resource Locator ("URL") provided in the IO allegedly linking to the MAA is currently linked to a generic pay-per-click page and not to the MAA.

8.    During negotiations with PDM over the IO, I was shown the MAA on at least two occasions, and expressly refused to sign it on both occasions.

9.    I never at any point agreed to personally guaranty any amounts owed to PDM by Vivera under the IO or the alleged MAA. I never would have agreed to execute any contract on Vivera's behalf that contained a personal guaranty.

10.    The MAA attached to Claimant's Complaint in this arbitration is not the same document shown to me during negotiations over the IO, and I had not seen such agreement until I was mailed a copy of the Arbitration Demand.

11.    The MAA emailed to me during negotiations over the IO has never been produced by PDM in this arbitration.

12.    In early 2010 I terminated my relationship with Vivera.

13.    At no point following the execution of the IO did PDM approach me with regard to paying any debt allegedly owed by Vivera to PDM.

14.    Until being served with the Arbitration Demand, I had not spoken or corresponded with anyone from PDM since terminating my relationship with Vivera.

15.    I am aware that PDM has made efforts to collect amounts allegedly owed from Vivera from other individuals who were associated with Vivera, but never from me.


I declare under penalty of perjury that the foregoing is true and correct.

Dated this __ day of February, 2015.

_Clay Douglass_
_____
Clayton Douglass

# EXHIBIT 2

From: **Steve Hochfelsen** steve@hockani.com 
Subject: Re: Serenivision, Inc. V. Clayton Douglass - Case 50-20-1400-0207
Date: June 17, 2015 at 6:23 PM
To: Ron Green rdg@randazza.com
Cc: dkani@hockani.com, **Marc Randazza** mjr@randazza.com

He told us that he didn't sign it.  Remember that the purpose of bringing it up now is not to have the Arbitrator determine it.  I just want to be in the position where, if we raise it in Court, and the judge asks, "did you raise this with the Arbitrator?"  We can say "yes."  It can obviously be proved with a handwriting expert.  Just like I think that there's a strong case regarding the statute of frauds.  I think we can argue that, holding him liable on a guarantee that he did not sign, but was incorporated into an IO that was signed, is essentially trying to make him a surety without a writing "subscribed by the party to be charged" providing for a suretyship.  But, that is something we raise later in Court, not now with the Arbitrator.

Frankly, our position is simply that the Arbitrator had no jurisdiction to make <u>any</u> order in the absence of a Court proceeding first deciding jurisdiction.

Steve Hochfelsen

**HOCHFELSEN | KANI** LLP
*Litigation Attorneys*

Steven I. Hochfelsen, Esq. | Phone: (714)907-0697 | 895 Dove Street, Suite 300
Litigation Attorney | Fax: (714)489-2182 | Newport Beach, CA 92660
steve@hockani.com

On 6/17/2015 5:32 PM, Ron Green wrote:
This is the first we have heard that Clay didn't actually sign the IO. Was he aware that someone signed it on his behalf? You may want to include some type of explanation as to why that is being brought up for the first time now.

_____

**Ronald D. Green\* | Randazza Legal Group**
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Email: rdg@randazza.com

Firm Offices - Las Vegas | Philadelphia | San Francisco | Miami

_____

\* Licensed to practice law in Nevada.

On Jun 16, 2015, at 3:52 PM, Steve Hochfelsen <steve@hockani.com> wrote:

Thanks.

<image001.png>
On 6/16/2015 3:51 PM, Ron Green wrote:
OK. I'll take a look at it tonight and make sure Marc reviews it ASAP.

_____

**Ronald D. Green\* | Randazza Legal Group**
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Email: rdg@randazza.com

Firm Offices - Las Vegas | Philadelphia | San Francisco | Miami

_____

\* Licensed to practice law in Nevada.

Licensed to practice law in Nevada.

On Jun 16, 2015, at 3:50 PM, Steve Hochfelsen <steve@hockani.com> wrote:

Well, we're hoping to do it ASAP. There's no real deadline, but we want to do it before the other side files an action and attempts to enforce. We just want to be able to tell the Court that we raised this in front of the arbitrator.

<image001.png>
On 6/16/2015 3:44 PM, Ron Green wrote:
I'd imagine Marc and I will both want to take a look at it. He is out of the office today. What is your timing looking like with regard to filing/submitting to the arbitrator?

_____

**Ronald D. Green\*** | **Randazza Legal Group**
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Email: rdg@randazza.com

Firm Offices - Las Vegas | Philadelphia | San Francisco | Miami

_____

\* Licensed to practice law in Nevada.

On Jun 16, 2015, at 3:42 PM, Steve Hochfelsen <steve@hockani.com> wrote:

<Motion for Reconsideration.pdf>

---

 This email has been checked for viruses by Avast antivirus software.
www.avast.com

---

 This email has been checked for viruses by Avast antivirus software.
www.avast.com

---

 This email has been checked for viruses by Avast antivirus software.
www.avast.com

# EXHIBIT 3



Ronald D. Green
*Partner*
Licensed in NV

*Privileged and Confidential Communication*

**February 26, 2014**

<u>Via Email Only</u>
<claydouglass@gmail.com>

Clayton Douglass

*Re: Douglass adv. Serenivision, Inc. d/b/a Pinnacle Dream Arbitration*

Dear Clay:

As you have likely heard from Gokce, after approximately 7 months, we finally received an order from the arbitrator, Charles Dick, regarding our bond request. It was denied. Unfortunately, given our past interactions with the arbitrator, his decision is not surprising. After all, he delayed making any ruling regarding the bond from the time of his appointment last August until today. Instead, he instructed the parties to work the issue out amongst themselves even after it became apparent that Pinnacle Dream's counsel's goal was to delay the arbitrator's decision.

Mr. Dick's rationale for denying our bond request was two-fold, and both reasons were troubling. First, he held that the Master Advertising Agreement (the "MAA") required that he decide the case using California law and did not state that he could issue equitable relief. Second, he opined that he was unsure whether the State of California would permit him to issue an attorneys' fees and costs bond under these circumstances.

Discounting that it took him over half a year to reach this conclusion, his rationale is unsound. Most troublingly, he is using the MAA to adjudicate what your rights are in this arbitration even though you never signed the document and rejected it each and every time it was transmitted to you. While his order pays lip service to allowing you to challenge the MAA's applicability during the arbitration itself, preliminarily, he is already treating it like a valid, enforceable document. Take note that this is despite the fact that his Preliminary Order acknowledged that you were participating in this case voluntarily.

Mr. Dick additionally appears to misunderstand his role in the arbitration. Arbitrators have broad powers to issue equitable relief to parties. In fact, the relevant law suggests that they have even more leeway to grant equitable relief than a judge. Given that you were not a party to the MAA and that Pinnacle Dream's lawyers told us that Pinnacle Dream was a non-functioning entity that would never satisfy an attorneys' fee award, requiring a bond before allowing Pinnacle Dream to proceed should have been a no-brainer, particularly since the arbitrator held in a Preliminary Order that you had appeared in the arbitration voluntarily in order to avoid the expense of a federal lawsuit.

Douglass adv. Pinnacle Dream
Page 2 of 3



Unfortunately, the arbitrator did not agree. We cannot say why with any certainty. However, given that it took him over half a year to make a decision, we could certainly speculate that he was searching for a compromise position in order to remain in the good graces of both parties, who are jointly paying his hourly fees. He may have been favoring the Claimant, who was based in California, over a foreign Respondent. Of course, he also may just not be particularly smart. Whatever the case may be, he has proven himself to be extremely ineffective as an arbitrator.

We discussed these issues with Gokce, as well as other ancillary issues.[1] She informed us that you would prefer to simply walk away from the arbitration and revoke your voluntary participation in the arbitration. This action should not come as a particular surprise to Claimant or the arbitrator, as we have stated for months that you would walk away if a bond was not granted.

We do support your decision to walk away, despite the fact that conventional legal wisdom screams otherwise. We do not feel that Pinnacle Dream has been proceeding in good faith or that the arbitrator has demonstrated a minimum level of competence necessary to adjudicate this dispute. However, you must be advised that, **it is likely that the arbitrator will issue a default judgment against you if you walk away**. We have discussed the issue with Gokce, and she informs us that you are not particularly worried about Pinnacle Dream enforcing the judgment in Europe. It is our understanding that your Spanish lawyer advised you that it would take quite a few years for them to even begin the process and that enforcing the award would almost certainly be against public policy in Spain since you never signed the MAA.

We are preparing a draft letter to the American Arbitration Association explaining your position and your decision to revoke your consent to participate. We are working on a draft of that correspondence and will transmit it to you shortly. Please let us know if you approve of its contents and discuss it, and this letter with your Spanish counsel. We will, of course, be available to assist with any ancillary matters for as long as you need our services.

---

[1] The most important ancillary issues at the moment are the arbitrator's expressed willingness to allow you to appear electronically as long as your counsel was present and to challenge the arbitrator's jurisdiction at the beginning of the arbitration hearing. Of course, both of these things would require that the arbitration take place and that you continue to pay our attorneys' fees, and the arbitrator's fees to both prepare for and participate in the arbitration. Moreover, given that the jurisdictional challenge would not occur until all parties had prepared and attended the arbitration, we have serious doubts with regard to how seriously he was taking our extremely valid jurisdiction challenge.

Douglass adv. Pinnacle Dream
Page 3 of 3



Despite the frustrations of dealing with discourteous and unprofessional opposing counsel and a weak arbitrator, it has been our pleasure to work with you and your team on this matter. We look forward to working with you in the future.

Sincerely,

Ronald D. Green

cc:    Gokce Yilmaz (gokce.yilmaz@vendoservices.com)
       Thierry Arrondo-Perez (thierry.arrondo@vendoservices.com)

# EXHIBIT 4

**From:** **Clay Douglass** claydouglass@gmail.com
**Subject:** Re: Douglass adv. Serenivision - Correspondence
**Date:** February 27, 2015 at 7:41 AM
**To:** Ron Green rdg@randazza.com
**Cc:** Gokce Yilmaz gokce.yilmaz@vendoservices.com, Thierry Arrondo Perez thierry.arrondo@vendoservices.com, Marc Randazza mjr@randazza.com, **Staff One** rlgstaff1@randazza.com



Thanks Ron. Disappointing indeed. Please move forward with the plan you have developed with Gokce and Thierry.

On Fri, Feb 27, 2015 at 3:45 AM, Ron Green <rdg@randazza.com> wrote:

Dear Clay:

Attached, please find correspondence regarding the arbitration in the Serenivision d/b/a Pinnacle Dream matter. Marc and I are available to discuss at your convenience if you have any questions.

Thanks.

_____

**Ronald D. Green\* | Randazza Legal Group**
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Email: rdg@randazza.com

Firm Offices - Las Vegas | Philadelphia | San Francisco | Miami

_____

\* Licensed to practice law in Nevada.

# EXHIBIT 5

From: **Gokce Yilmaz** gokce.yilmaz@vendoservices.com
Subject: Re: Douglass adv. Serenivision - Correspondence
Date: March 2, 2015 at 10:53 AM
To: **Ron Green** rdg@randazza.com
Cc: **Clay Douglass** claydouglass@gmail.com, **Thierry Arrondo Perez** thierry.arrondo@vendoservices.com, **Marc Randazza** mjr@randazza.com, **Staff One** rlgstaff1@randazza.com



Hi Ron,
We have reviewed it and we are all in agreement to move forward with it.

Best regards
Gökçe

On Monday, March 2, 2015, Ron Green <rdg@randazza.com> wrote:
> Hello all. I'm just following up on the letter below to inquire whether you've had a chance to review and have any revisions/questions. Thanks!

_____

**Ronald D. Green\* | Randazza Legal Group**
3625 South Town Center Drive | Las Vegas, NV 89135
Tel: 702-420-2001 | Email: rdg@randazza.com

Firm Offices - Las Vegas | Philadelphia | San Francisco | Miami

_____

\* Licensed to practice law in Nevada.

Begin forwarded message:

**Subject: Re: Douglass adv. Serenivision - Correspondence**
**From:** Ron Green <rdg@randazza.com>
**Date:** February 27, 2015 at 7:03:32 PM PST
**Cc:** Clay Douglass <claydouglass@gmail.com>, Gokce Yilmaz <gokce.yilmaz@vendoservices.com>, Thierry Arrondo Perez <thierry.arrondo@vendoservices.com>, Staff One <rlgstaff1@randazza.com>
**To:** Marc Randazza <mjr@randazza.com>


--

Best,
Gokce Yilmaz Matthijssen
CFO
gokce.yilmaz@vendoservices.com
www.vendoservices.com
Mobile ES:   +34.607.487.444
Mobile TR:   +90 538 270 86 70
Fax:         +34.933.028.354
Skype:    gokce.yilmaz



 @vendostore

IMPORTANT: This email message is intended only for the use of the individual to whom, or entity to which, it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are NOT the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please notify me immediately. Thank you.

# EXHIBIT 6



June 16, 2015

Copy By Email To: chd@charlesdicklaw.com
Charles H. Dick, Jr.
600 West Broadway, Suite 1200
San Diego, CA 92101

      **Re:**     **<u>Serenivision, Inc. v. Vivera, et al.</u>: Request For Reconsideration Of Arbitration Award**

Dear Mr. Dick:

This firm represents Clay Douglass with regard to the matters referenced herein. On or about May 22, 2015, arbitrator Charles H. Dick purported to issue a default arbitration award against Mr. Douglass in the case of <u>Serenivision, Inc. v. Vivera, et al.</u>, Case No. 50-20-1400-0207.

In the purported award, the Arbitrator stated erroneously that Mr. Douglass had agreed to the jurisdiction of the arbitrator, which was not true, as well as making certain findings of fact which also were untrue. Mr. Douglass hereby requests that the Arbitrator reconsider, and vacate, his award. This Request for Reconsideration is given out of courtesy to the arbitrator. It is made to enable him to review all of the pertinent facts and to correct his erroneous "Final Award." It does not constitute Mr. Douglass' submission to jurisdiction.

## RELEVANT FACTS

The relevant facts of this case are as follows.

Charles H. Dick, Jr.
June 16, 2015
Page 2

On or about March 5, 2014, the law firm of Tackett, Mull, Nikolai, LLP sent a demand to

Mr. Douglass, and to Vivera, Inc., to arbitrate this matter on behalf of its "client," Serenivision,

Inc.  Serenivision is a dissolved corporation.  Vivera, Inc. also no longer exists.

The demand to arbitrate was made pursuant to an unsigned contract referred to as a

"Master Advertiser Agreement" ("MAA") between "Pinnacle Dream Media"[1] and Vivera.  The

MAA was a proposal for Pinnacle Dream Media to provide internet advertising for Vivera's

products, which consisted of various nutritional supplements and herbal products.  The unsigned

MAA allegedly contained an arbitration clause[2], although no evidence was ever presented that

the MAA was available for review by anybody at Vivera.

The Plaintiff attempted to hold Mr. Douglass liable both to the arbitration clause of the

unsigned MAA, and to an alleged personal guaranty in the unsigned MAA on the theory that an

Insertion Order ("IO") signed with Mr. Douglass' signature on August 19, 2009 incorporated the

unsigned MAA by reference[3].

Despite not being a party to any arbitration agreement, in order to promote expedience,

---

[1]	The Plaintiff claims that Serenivision is entitled to assert the benefits of the MAA, despite the fact that it is not identified as a party anywhere in the agreement, and that the agreement itself is unsigned.

[2]	The Arbitration clause in the MAA stated that "the parties" to the MAA would submit their disputes to arbitration, but the only parties to the agreement were Vivera and Pinnacle Dream Media.  Mr. Douglass was never a party to the MAA.

[3]	In fact, Mr. Douglass did not actually sign the IO.  Rather, it was signed by an unknown employee at Vivera in the United Kingdom who signed Mr. Douglass' name.  If necessary, Mr. Douglass can present evidence in court through a handwriting expert who can testify that the signature on the IO is not his.

Charles H. Dick, Jr.
June 16, 2015
Page 3

Mr. Douglass offered to submit to arbitral jurisdiction, <u>but only on condition</u> that the Plaintiff be required to post a bond to cover any losses and fees incurred by Mr. Douglass in connection with the arbitration[4]. The arbitrator considered this request, and then denied it.

Immediately thereafter, on March 2, 2015, Mr. Douglass, through counsel, submitted a letter to the arbitrator that, given the refusal to require such a bond, he would not submit to arbitration jurisdiction in this matter. This letter made clear that, since the submission to arbitration jurisdiction was conditional, and since the condition was not met, Mr. Douglass would not submit to jurisdiction. He therefore clearly withdrew from the arbitration.

The arbitrator then, in the absence of any submission of Mr. Douglass to jurisdiction and in the absence of any participation by him in the arbitration, proceeded to enter a "default" award against him. The award failed to reference any evidence in support of its findings, and erroneously stated that Mr. Douglass had:

1.     Voluntarily appeared and submitted to arbitral jurisdiction; and

2.     Signed the IO Order

In fact, Mr. Douglass neither voluntarily submitted to arbitration jurisdiction, nor did he sign the IO order. Moreover, the jurisdictional issues that he raised prior to the issuance of the

---

[4]     This condition was made clear both in Mr. Douglass' initial communications with the arbitrator, again on February 6, 2015 when his arbitration brief was submitted: "Mr. Douglass has predicated his <u>conditional</u> participation on Claimant posting a bond. . ." (<u>Respondent's Arbitration Brief</u> dated 2/6/2015, at p. 5, §2.2, emphasis in original), and finally on March 2, 2015, when his counsel submitted his letter withdrawing from participation in the arbitration on the ground that the condition had not been met: "Mr. Douglass was willing to participate in this arbitration . . . . However, he conditioned that voluntary appearance on the posting of a bond by PDM. . . . (Correspondence dated 3/2/2015 from M. Randazza to C. Dick, p. 2).

Charles H. Dick, Jr.
June 16, 2015
Page 4

award clearly establish that the Arbitrator had no authority to enter any award in this matter.

<u>**UNDERLYING FACTS OF THE CASE**</u>

Clay Douglass was neither an employee nor an owner of Vivera.  Nor was he an officer, director or managing agent.  Rather, he had a partial interest in a company that processed payments to Vivera.  As such, when the IO was signed, his name was placed on the order because of his involvement with billing.  He is a resident of Barcelona, Spain, and was a resident of that City at the time the IO was signed in the United Kingdom.

When Pinnacle Dream submitted the MAA to Vivera, it was one of many agencies that were retained to conduct advertising for the company.  As noted previously, the MAA that was sent to Vivera was different from the one that was presented in connection with the arbitration.  However, it was different enough and its terms were onerous enough that nobody at Vivera was willing to agree to its terms.

The MAA expressly provided that it only applied to Insertion Orders "to which these terms and conditions are attached."  It provided that it was entered into between "Pinnacle Dream Media" and Vivera.  There is no corporation or limited liability company with the name "Pinnacle Dream Media."  Serenivison claims to have used that name, but no evidence of such use was provided.

Paragraph 6(l) of the MAA further provides that:

"All payments are personally guaranteed by the individual executing the IO **or** secured by the assets of the advertiser."

Charles H. Dick, Jr.
June 16, 2015
Page 5

MMA, ¶6(l) (emphasis added).  There is no indication of the circumstances under which Pinnacle
would abandon security through the assets of the advertiser and pursue payment through a
personal guarantee by "the individual executing the IO."  This ambiguous clause was drafted, and
contained in a form contract prepared by Pinnacle Dream Media.

On August 19, 2009, an employee of Vivera signed the IO by affixing Mr. Douglass'
name to it, and emailed the completed IO to the Plaintiff.

Plaintiff then began marketing Vivera products by creating unauthorized statements,
making claims in violation of FTC regulations.  Ultimately, Plaintiff's statements in violation of
law caused the UK Government to shut down Vivera.

Plaintiff then attempted to collect under the MAA from the shut down company, and
made demands to various former employees and officers of the company.  When it could not
obtain any money from them, it attempted to collect from Mr. Douglass under the erroneous
assumption that he signed the IO.  Having no ownership in Vivera, not having received anything
of value from Vivera and not having signed any agreement to arbitrate or to guarantee Vivera's
debts, Mr. Douglass refused to pay anything.

Plaintiff then attempted to initiate this arbitration against the nonexistent Vivera and Mr.
Douglass.  Mr. Douglass offered to participate in this arbitration on condition that Plaintiff post a
bond to cover his fees and costs in connection therewith.  It was determined by the arbitrator that
Plaintiff did not have to post any bond, so Mr. Douglass withdrew his participation.  The
"default" award was a result.

Charles H. Dick, Jr.
June 16, 2015
Page 6

## ARGUMENT

### A.    The Arbitrator Had No Jurisdiction To Determine Whether Mr. Douglass, A Nonsignatory To The MAA, Was Bound By The Arbitration Clause In Its Terms.

A court, rather than the arbitrator, must determine challenges to arbitration based on defenses to the arbitration clause itself … so-called "questions of arbitrability." Howsam v. Dean Witter Reynolds, Inc. (2002) 537 U.S. 79, 84, 123 S.Ct. 588; First Options of Chicago, Inc. v. Kaplan (1995) 514 U.S. 938, 943, 115 S.Ct. 1920.  "Questions of arbitrability" refer to those "narrow circumstances" where contracting parties would likely have expected a court to decide the dispute. Howsam v. Dean Witter Reynolds, Inc., supra, 537 U.S. at 83-84, 123 S.Ct. at 592

A gateway dispute about whether parties are bound by a given arbitration clause raises a "question of arbitrability" for a court, not the arbitrator, to decide. First Options of Chicago, Inc. v. Kaplan, supra, 514 U.S. at 943-946, 115 S.Ct. at 1924-1925 (court should decide whether arbitration contract bound parties who did not sign it); John Wiley & Sons, Inc. v. Livingston (1964) 376 U.S. 543, 546-547, 84 S.Ct. 909, 912-913 (court should decide whether arbitration agreement survived a corporate merger and bound resulting corporation)[5].

---

[5]    Unless the parties clearly and unmistakably provide otherwise, the question whether they agreed to arbitrate the particular dispute is to be decided by the court, not the arbitrator. First Options of Chicago, Inc. v. Kaplan (1995) 514 U.S. 938, 944, 115 S.Ct. 1920; see Howsam v. Dean Witter Reynolds, Inc. (2002) 537 U.S. 79, 83-84, 123 S.Ct. 588; Smith v. Jem Group, Inc. (9th Cir. 2013) 737 F.3d 636, 639-640 (accord).  The same is true under California law: "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." Dream Theater, Inc. v. Dream Theater (2004) 124 Cal.App.4th 547, 553, 21 Cal.Rptr.3d 322 (internal quotes omitted);

Charles H. Dick, Jr.
June 16, 2015
Page 7

Here, it was undisputed that Mr. Douglass did not sign the MAA – it was also undisputed that the MAA was never signed by Vivera or anyone associated with it.  Plaintiff contended that, since the IO incorporated the entire, unsigned MAA by reference, all nonsignatories to the MAA were bound by the Arbitration Clause in the MAA.  This is, essentially, an argument that persons who did not sign the Arbitration Clause should be bound by it. That argument, as a matter of law, must be determined by the Court, and not by the Arbitrator.  <u>First Options of Chicago, Inc. v. Kaplan</u>, <u>supra</u>[6].

> **B.      The Arbitrator Had No Jurisdiction To Enter Any Award In The Absence of Mr. Douglass' Participation In The Arbitration.**

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>AT & T Technologies v. Communications Workers</u> (1986) 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (citations omitted).

"[T]he question of arbitrability is for judicial determination '[u]nless the parties clearly and unmistakably provide otherwise.'" <u>Dream Theater, Inc. v. Dream Theater</u> (2004) 124 Cal.App.4th 547, 552, 721 Cal.Rptr.3d 322 (citation omitted).

Here, Mr. Douglass very clearly informed the Arbitrator that he did not submit to

---

<u>Chin v. Advanced Fresh Concepts Franchise Corp.</u> (2011) 194 Cal.App.4th 704, 709, 123 Cal.Rptr.3d 547, 552.

[6]      "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." <u>Dream Theater, Inc. v. Dream Theater</u> (2004) 124 Cal.App.4th 547, 553, 21 Cal.Rptr.3d 322.

Charles H. Dick, Jr.
June 16, 2015
Page 8

arbitration jurisdiction, both in his arbitration brief and in his March 2, 2015 letter to the

Arbitrator.  Thus, jurisdiction over Mr. Douglass first had to be determined before any arbitration

could proceed.

Without dispute, there is no provision in the Arbitration Clause in the MAA assigning to

the Arbitrator the right to determine whether a party is subject to arbitration jurisdiction, nor is

there any provision allowing the Arbitrator to determine arbitrability.  Thus, regardless of

whether Mr. Douglass, a nonsignatory to the MAA, can be held to its terms, the question of

whether he was subject to arbitration jurisdiction must first be determined by the Court.  Dream

Theater, Inc., supra.  Only after jurisdiction is determined could the Arbitrator have entered any

valid award.  No such determination was made here, and therefore any purported "default" award

against him was invalid.

### C.    Mr. Douglass Cannot Be Deemed To Consent To An Agreement To Arbitrate Disputes Between "The Parties" To The MAA Where He Was Not A Party To The MAA.

Here, there is no agreement to arbitrate in the MAA by anybody other than the parties to

the MAA itself.  No such agreement is made between persons, such as Mr. Douglass, who were

not parties to the MAA.  Rather, only the parties agreed to resolution of their disputes by

arbitration:

> "The Parties consent to have all disputes regarding this agreement resolved by
> binding arbitration. . . ."

MAA, ¶ 13 (emphasis added).

Charles H. Dick, Jr.
June 16, 2015
Page 9

Parties cannot be forced into arbitration if they never agreed to put their dispute into the process. Air Line Pilots Ass'n v. Miller (1998) 523 U.S. 866, 879-880, 118 S.Ct. 1761. As was previously raised with the Arbitrator, a contract compelling arbitration is a "necessity" in order to require the parties to arbitrate. Badie v. Bank of America (1998) 67 Cal. App. 4th 779, 788 (citing Victoria v. Superior Court, (1985) 40 Cal. 3d 734, 739). Persons cannot be compelled "to accept arbitration of controversies which they have not agreed to arbitrate." Id. (citing Victoria, supra, 40 Cal. 3d at 744).

Because it is a matter of contract law, arbitration agreements are interpreted pursuant to contract law. Sy First Family Ltd. Partnership v. Cheung (1999) 70 Cal.App.4th 1334, 1341, 83 Cal.Rptr.2d 340 ("The stipulation [to arbitrate] is an agreement and subject to the ordinary rules employed to interpret contracts.").

One of the most basic of these rules is that an ambiguity in a contract is interpreted against the drafter of the contract. Cal. Civ. Code §1654 (Westlaw 2015). This provision is applicable to ambiguous arbitration clauses. See Baker v. Sadick (1984) 162 Cal.App.3d 618, 625, 208 Cal.Rptr. 676; Player v. Geo. M. Brewster & Son, Inc. (1971) 18 Cal.App.3d 526, 533, 96 Cal.Rptr. 149.

More directly to the point, because an agreement to arbitrate constitutes a waiver of the constitutional right to jury trial, if the arbitration clause does not clearly indicate a party's intent to arbitrate the particular controversy involved, an agreement to arbitrate will not be found. Titan Group, Inc. v. Sonoma Valley County Sanitation Dist. (1985) 164 Cal.App.3d 1122, 1127-1128,

Charles H. Dick, Jr.
June 16, 2015
Page 10

211 Cal.Rptr. 62 ("In case of doubt, therefore, the issue should be resolved in favor of preserving

a litigant's right to trial by jury") This is true despite any judicial policy favoring arbitration.

Wheeler v. St. Joseph Hospital (1976) 63 Cal.App.3d 345, 356, 133 Cal.Rptr. 775 ("the policy

favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate."); accord

Freeman v. State Farm Mut. Auto. Ins. Co. (1975) 14 Cal.3d 473, 481, 121 Cal.Rptr. 477.

In addition, "[h]owever broad may be the terms of a contract, it extends only to those

things concerning which it appears that the parties intended to contract." Civ.Code, § 1648

(Westlaw 2015).

Here, as the contractual arbitration clause above provides, only Vivera and "Pinnacle

Dream Media" agreed to arbitrate their disputes. Mr. Douglass never agreed, in any form, to

arbitrate his disputes or to waive his rights to a jury trial. For this reason, it was improper to

attempt to enforce an arbitration clause against him.

**D.** **It Was Unconscionable For A Contract That Was Not Signed By Mr. Douglass To Require Him, A Resident of Barcelona, Spain, To Arbitrate In California.**

The Arbitrator also had no jurisdiction to determine this proceeding because no Court had

yet determined that due process of law allowed the arbitration to proceed in California. It is for

the court, not the arbitrator, to decide whether an arbitration clause in a standardized franchise

agreement with a venue clause not consistent with the defendant's residence is unconscionable

Nagrampa v. MailCoups, Inc. (9th Cir. 2006) 469 F.3d 1257, 1270 (en banc) (Court must decide

whether arbitration clause that required a California resident to travel to Boston for arbitration of

Charles H. Dick, Jr.
June 16, 2015
Page 11

any dispute was unconscionable under California law).

Here, Mr. Douglass is a resident of Barcelona, Spain, and has been in residence there since prior to August 2009. Consequently, an arbitration clause in the unsigned MAA that allows arbitration in California is unconscionable[7]. The unconscionability of the clause is not within the Arbitrator's jurisdiction, and must be determined by a Court. Nagrampa v. MailCoups, Inc., supra.

**E.    Where Mr. Douglass Raised A Claim That The MAA Was Unenforceable Because of Plaintiff's Illegal Conduct, That Question Had To Be Resolved By A Court, Not The Arbitrator.**

Claims that a contract is illegal must be determined by a judge, not the arbitrator, because such claims raise questions of public policy. Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street (1983) 35 Cal.3d 312, 316-317, 197 Cal.Rptr. 581, fn. 2; see Hotels Nevada, LLC v. Bridge Banc, LLC (2005) 130 Cal.App.4th 1431, 1437, 30 Cal.Rptr.3d 903 (no violation of FAA resulted when arbitrator, consistent with arbitration clause requiring application of California law, stayed arbitration and referred matter to court to decide illegality issue);

---

[7]    Under California law, "(i)f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, . . . or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ.C. § 1670.5(a) (Westlaw 2015) (emphasis added); see Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745; Murphy v. Check 'N Go of Calif., Inc. (2007) 156 Cal.App.4th 138, 141, 67 Cal.Rptr.3d 120 (trial court properly determined unconscionablility issues and denied motion to compel arbitration); see also Ontiveros v. DHL Express (USA), Inc. (2008) 164 Cal.App.4th 494, 503-505, 79 Cal.Rptr.3d 471.

Charles H. Dick, Jr.
June 16, 2015
Page 12

Duffens v. Valenti (2008) 161 Cal.App.4th 434, 456, 74 Cal.Rptr.3d 311.

Here, in his arbitration brief, Mr. Douglass raised the claim that the MAA and IO were

illegal and therefore unenforceable, because of Plaintiff's violation of FTC Regulations in its

attempted compliance therewith.  This, in and of itself, should have prevented the arbitrator from

making any ruling until the question of illegality was resolved by a Court, and the failure to do so

also renders the award invalid and unenforceable.  South Bay Radiology Medical Assocs. v.

W.M. Asher, Inc. (1990) 220 Cal.App.3d 1074, 1080, 269 Cal.Rptr. 15 (arbitrator has no power

to make award under illegal contract)[8].

**F.     Mr. Douglass Cannot Be Held To The Arbitration Clause In The MAA Based On The Claim That He Signed The IO Because The Existence Of The Arbitration Clause MAA Was Not Clearly Referenced In The IO.**

Here, there was a reference in the IO to the MAA, but no MAA was attached.  While the

IO contains a reference to a webpage supposedly containing the MAA, there is no document at

the referenced webpage.  Moreover, Mr. Douglass made clear that an earlier version of the MAA

had been sent to him, which he refused to sign, and that the earlier version was different from the

one presented in connection with the arbitration.  This situation results in an inability to

incorporate the terms of the MAA into the IO.

"For the terms of another document to be incorporated into the document executed by the

---

[8]     Contract illegality, being essentially a judicial question, may be raised at any stage of the proceeding—i.e., even for the first time in proceedings to vacate the award. South Bay Radiology, supra.

Charles H. Dick, Jr.
June 16, 2015
Page 13

parties the reference must be clear and unequivocal, the reference must be called to the attention

of the other party and he must consent thereto, and the terms of the incorporated document must

be known or easily available to the contracting parties." <u>Shaw v. Regents of University of</u>

<u>California</u> (1997) 58 Cal.App.4th 44, 54, 67 Cal.Rptr.2d 850 (citations omitted).

In <u>Chan v. Drexel Burnham Lambert Inc.</u> (1986) 178 Cal.App.3d 632, 641, 223 Cal.Rptr.

838, a Defendant attempted to incorporate an arbitration agreement into a separate agreement

signed by the parties.  The court found that the arbitration provisions were not sufficiently

incorporated by reference where the contract did not clearly refer to and identify "the

incorporated document wherein the arbitration clause appeared." (Id. at p. 642, 223 Cal.Rptr.

838.)  There, the Court noted: "the right to select a judicial forum, vis-a-vis arbitration, is a '

'substantial right,' not lightly to be deemed waived."  <u>Chan v. Drexel Burnham Lambert Inc.</u>,

<u>supra</u>, 178 Cal.App.3d at 643[9].

The Court noted that, while "each case must turn on its facts," California law is clear:

> "For the terms of another document to be incorporated into the document
> executed by the parties the reference must be clear and unequivocal, the reference
> must be called to the attention of the other party and he must consent thereto, and
> the terms of the incorporated document must be known or easily available to the

_____

[9]  Chan involved a stockbroker who, as part of an application to be a securities agent, had agreed to abide by the statutes and rules of the three stock trading organizations to which his application would be submitted. One of the stock trading organizations promulgated a rule requiring arbitration. Because the application did not specifically identify the rule where the arbitration clause was located by name, the court found the reference amorphous, and held that because the contract did not guide the reader to the incorporated document, it failed to "clearly and unequivocally " refer to the incorporated document. <u>Id.</u>, at p. 643, 223 Cal.Rptr. 838.

Charles H. Dick, Jr.
June 16, 2015
Page 14

contracting parties.' "

Chan v. Drexel Burnham Lambert Inc., supra, 178 Cal.App.3d at 641.  Here, the standard was not

met.  The MAA was not attached to the IO, and there was simply a general reference to an MAA

with an internet link that, for all intents and purposes: 1) was unavailable; 2) was different from

the MAA presented at the arbitration and arguably had no arbitration clause; and 3) did not point

out the fact that an arbitration agreement was included therein.

Thus, irrespective of the fact that Mr. Douglass never saw the MAA and did not sign it or

the IO, it could not have been incorporated by reference into the IO.

**CONCLUSION**

For all of the above reasons, the Arbitrator should reconsider and vacate his "final award"

until jurisdictional issues are properly presented to and determined by a Court.

Very Truly Yours,

Steven I. Hochfelsen

cc:    Mia Levi (via email)
         George Mull (via email)
         Jeffrey Nicolai (via email)

# EXHIBIT 7



Melissa Goldstein <mag@randazza.com>

---

## Fwd: CPA Vivera
1 message

---

**Ron Green** <rdg@randazza.com>                                    Fri, Mar 14, 2014 at 10:26 AM
To: Melissa Goldstein <mag@randazza.com>, Vanessa Acosta-Nunez <vma@randazza.com>

Ronald D. Green, Jr.
**Randazza Legal Group**

3625 South Town Center Drive
Las Vegas, NV 89135
Tel: 702.420.2001
Fax: 702.420.2003
Email: rdg (at) randazza (dot) com

Offices: Las Vegas & Miami
http://www.randazza.com

---

The information contained in this message may be privileged, confidential, and/or exempt from disclosure under applicable law. The information is only intended for the use of the individual(s) or entity named above. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or reproduction of any information contained herein or attached to this message is strictly prohibited. If you have received this email in error, please immediately notify the sender and destroy the original transmission and its attachments in their entirety, whether in electronic or hard copy format, without reading them. Thank you.

---

*Licensed in Nevada only.

Begin forwarded message:

> **From:** Gokce Yilmaz <gokce.yilmaz@vendoservices.com>
> **Subject: Fwd: FW: FW: CPA Vivera**
> **Date:** March 14, 2014 at 8:19:46 AM PDT
> **To:** Ron Green <rdg@randazza.com>, Marc Randazza <mjr@randazza.com>
> **Cc:** Thierry Arrondo <thierry.arrondo@vendoservices.com>
>
> Dear Marc, Ron,
>
> Please find below the correspondence with Justin from Pinnacle Dream. This is the one where they send over the Master Advertising Agreement and we do not get back to them. I have searched all inbox and I cannot find it at least. As we mentioned during our call, if they had received one signed, they would have reproduced it in the letter anyway.
>
> Best regards
> Gokce

---

> **From:** Justin Tsang [mailto:justin@pinnacledream.com]
> **Sent:** miércoles, 19 de agosto de 2009 19:00

**To:** Gokce
**Cc:** 'Clay Douglass'; 'Mitch Platt'
**Subject:** Re: FW: CPA Vivera


Gokce,

Appreciate it! Attached is the countersigned agreement... We have one document outstanding - thats the MMA  I have attached that here as well :)

Thanks,

Justin

Gokce wrote:

> Hello Justin,
>
>
> I am attaching the Advertising Insertion Order signed by Clay. Please let me know if you need anything else.
>
>
> Best regards,
>
> Gokce Yilmaz
>
>
> **From:** Justin Tsang <justin@pinnacledream.com>
>
> **Date:** August 19, 2009 2:04:31 AM GMT+02:00
>
> **To:** Mitch Platt <mitch.platt@localbillinglimited.com>
>
> **Subject: Re: CPA Vivera**
>
>
> Hey Mitch,
>
> Ok cool I drafted up the IO  once youve had a chance  to sign it fax it back to me at:
> 1-858-526-0785
>
> Thanks,
>
> Justin
>
> Mitch Platt wrote:
>
>
> Hey Justin,
>
>
>> We will start at $42.  As soon as you hit 1500 sales a day on a consecutive basis we can move to $43.  I have never started anyone at $42 so confidentiality is

important.

We out perform in conversions so I am confident you will be very happy with your results.  We are also creating exclusive offers for you so the ball will be in your court to make the most of it.  Of course, we will invest along side you in tweaking the offers to make sure they perform optimally.

My one reservation is that I could be offering you a higher CPA than some of our current networks and get into a rob Peter to feed Paul situation.  Let's work together to avoid that from happening.

Germany is wide open so let's go get it.

--

Best,

Mitch

Mitch Platt

EU +34.677.488.366

US +1.415.692.5431

Fax:+34.933.028.355

IMPORTANT:  This email message is intended only for the use of the individual to whom, or entity to which, it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are NOT the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please notify me immediately.  Thank you.

--
Justin Tsang
justin@pinnacledream.com
O: 858-880-9209

F: 858-430-3174
C: 858-822-9379
AIM: jtags79
MSN: jtags@hotmail.com

--

Justin Tsang

justin@pinnacledream.com

O: 858-880-9209

F: 858-430-3174

C: 858-822-9379

AIM: jtags79

MSN: jtags@hotmail.com

--

Best,
Gokce
Gokce Yilmaz Matthijssen
Controller
gokce.yilmaz@vendoservices.com

Mobile ES:   +34.607.487.444
Mobile TR:   +90 538 270 86 70
Fax:         +34.933.028.354
Skype:    gokce.yilmaz

IMPORTANT: This email message is intended only for the use of the individual to whom, or entity to which, it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are NOT the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please notify me immediately.  Thank you.