LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzklegal.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11<br><br>Date: October 17, 2018<br>Time: 11:00 a.m. |

## SUPPLEMENT TO DEBTOR'S MOTION TO APPROVE SETTLEMENT WITH CLAYTON DOUGLASS PURSUANT TO FED. R. BANKR. P. 9019

Marc John Randazza, as debtor and debtor in possession, hereby supplements his previously filed *Motion to Approve Settlement With Clayton Douglass Pursuant to Fed. R. Bankr. P. 9019* **(**the "Motion") [ECF No. 272], and related Declaration in support [ECF No. 273] with a copy of the proposed Settlement Agreement referenced therein, which was inadvertently omitted from the Motion. Attached as **Exhibit 1** is a copy of the Settlement Agreement.

Dated: September 17, 2018.

By: /s/ Matthew C. Zirzow
LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzklegal.com
850 E. Bonneville Ave.

Attorneys for Debtor

# EXHIBIT 1

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("Release Agreement") is dated as of this \_\_\_\_\_ day of June, 2018 ("Effective Date"), by and between CLAYTON DOUGLASS aka CLAY DOUGLASS ("Claimant"), and MARC JOHN RANDAZZA aka MARCO RANDAZZA ("Respondent"), Claimant and Respondent are collectively referred to as the "Parties" and each as a "Party."

## RECITALS

**WHEREAS**, on or about May 8, 2014, Respondent, through his law firm, entered into a Legal Services Fee Agreement with Claimant with respect to an Arbitration matter in the International Centre for Dispute Resolution in the matter of *Serenivision, Inc. v. Vivera and Clayton Douglass*, Case No. 50-20-1400-0207 ("Arbitration").

**WHEREAS**, on May 22, 2015, a Final Award of $1,755,050.34 ("Arbitration Award") was entered in the Arbitration against Claimant, with additional interest accruing thereon at a rate of 10 percent as of March 10, 2015, and said arbitration award was affirmed by the California Second District Court of Appeals on February 8, 2018.

**WHEREAS**, on August 28, 2015, Respondent commenced a proceeding under Chapter 11 of Title 11 of the United States Code (Case No. 15-14956-ABL) with the U.S. Bankruptcy Court, District of Nevada (the "Bankruptcy Proceeding").

**WHEREAS**, on or about December 11, 2015, Claimant filed a Proof of Claim (Proof of Claim No. 7) in the Bankruptcy Proceeding for the amount of $1,831,792.59, alleging a claim for legal malpractice arising out of or related to the Arbitration and/or Arbitration Award (the "Proof of Claim").

**WHEREAS**, at a voluntary mediation on May 14, 2018, before the Hon. Justice Nancy Saitta (Ret.), the Parties agreed to settle their disputes.

**WHEREAS**, pursuant to this Release and Settlement Agreement, the Parties indicate their desire to fully and finally settle all Claims, acknowledging that settlement is in the best interest of the Parties.

## DEFINITIONS

"Release Agreement" means this Release and Settlement Agreement.

"Claim" or "Claims" means any and all claims, including the claim for legal malpractice indicated in Claimant's Proof of Claim as described above, unknown claims, causes of action of any type (whether common law, statutory, regulatory or administrative, and whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured)

demands, disputes, damages, costs, losses, detriments, interest, expenses, penalties, attorneys' fees, actions, debts, controversies, suits, and choses in action, whether known or unknown, including but not limited to the Proof of Claim, as of the date of this Release Agreement.

"Unknown Claims" means any Claim or Claims the Parties do not know or suspect to exist at the time of the release, which might have affected the terms of this Release Agreement.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants contained in this Release Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1. **Incorporation of Recitals; Definitions.** The recitals stated above are incorporated into this Release Agreement and made a part of this Release Agreement as if fully set forth herein. Capitalized terms shall have the meaning given unless undefined. Captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Release Agreement.

2. **Consideration.** As part of the consideration for this Release Agreement, Respondent shall cause to be paid the sum of FIFTY THOUSAND & 00/100 DOLLARS ($50,000.00) to Claimant. Payment should be payable within Thirty (30) days from the date of entry of a final order approving this Release Agreement by the Bankruptcy Court and receipt of a completed IRS form W9 for payee, to the trust account of, and delivered to, Claimant's attorney, Ogonna M. Brown of Holley Driggs Walch Fine Wray Puzey & Thompson to be held on behalf of Claimant. In exchange for the foregoing consideration and the release by Respondent below, Claimant provides a reciprocal release and, to the extent permitted by law, Claimant shall vote in favor of any plan of reorganization for Respondent.

Settlement Consideration to be wired to the wiring instructions attached hereto as **Exhibit "1"**. Any change to wiring instructions must be confirmed via telephone to Jon Fieldman at (312) 961-3844.

3. **Releases.**

    **3(a).** Upon receipt of the entire payment under this Release Agreement, the Claimant agrees and hereby releases and forever discharges Respondent and his respective officers, directors, heirs, successors, assigns, parent, subsidiaries, affiliated corporations, administrators, officers, directors, appointees, beneficiaries, partners, agents, insurers and employees, including, but not limited to, Marc J. Randazza, Ronald Green, Randazza Legal Group, PLLC, and Marc J. Randazza, P.A., from all Claims, debts, dues, causes of action, demands, liens, liabilities, proceedings, duties, covenants (whether implied or express), contracts, agreements, sums of money, grievances, executions, rights and liabilities of every kind and nature whatsoever, including claims for indemnity or other relief over, arising from, incidental to, in consequence, or of related to

work performed by Respondent. It is the intent of this Release Agreement to provide the broadest release and discharge possible under the law, and the release herein shall bar all claims arising out of any events, actions or facts that took place or occurred prior to the effective date of this Release Agreement. All Parties acknowledge they are aware that if they discover facts different from or in addition to the facts that they now know or believe to be true with respect to the Claims, it is nevertheless their intention to settle finally any and all Claims that now exist or may hereafter exist among them. This general release is binding upon and for the benefit of each of the Parties and their respective predecessors, successors, assigns, subsidiaries, related entities, affiliates, partners, directors, officers, employees, principals, attorneys, agents, representatives, and insurer(s), and all persons acting on behalf of, through, under or in concert with them.

**3(b).** Upon Claimant's receipt of the entire payment under this Release Agreement, the Respondent agrees and hereby releases and forever discharges Claimant and his respective officers, directors, heirs, successors, assigns, parent, subsidiaries, affiliated corporations, administrators, officers, directors, appointees, beneficiaries, partners, agents, insurers and employees from all Claims, debts, dues, causes of action, demands, liens, liabilities, proceedings, duties, covenants (whether implied or express), contracts, agreements, sums of money, grievances, executions, rights and liabilities of every kind and nature whatsoever, including claims for indemnity or other relief over, arising from, incidental to, in consequence, or of related to Claimant. It is the intent of this Release Agreement to provide the broadest release and discharge possible under the law, and the release herein shall bar all claims arising out of any events, actions or facts that took place or occurred prior to the effective date of this Release Agreement. All Parties acknowledge they are aware that if they discover facts different from or in addition to the facts that they now know or believe to be true with respect to the Claims, it is nevertheless their intention to settle finally any and all Claims that now exist or may hereafter exist among them. This general release is binding upon and for the benefit of each of the Parties and their respective predecessors, successors, assigns, subsidiaries, related entities, affiliates, partners, directors, officers, employees, principals, attorneys, agents, representatives, and insurer(s), and all persons acting on behalf of, through, under or in concert with them.

**4.     Entire Payment.** The Parties agree that the payment and other consideration made pursuant to this Release Agreement will and does settle any and all disputes and Claims between the Parties, and is the complete and entire payment required by this Release Agreement and the agreement among the Parties.

**5.     Assignment of Claims.** The Parties hereby warrant that they are the present owners of their respective Claims and disputes and have not assigned their Claims or disputes to any third parties.

**6.     Non-Admission.** The settlement of the Proof of Claim and all Claims between the Parties is voluntary and does not constitute an admission that Respondent has violated any law, committed any tort, breached any agreement, or committed any wrongdoing whatsoever. Neither this Release Agreement, nor any of its terms, provisions,

attachments, nor any of the negotiations of proceedings associated with it shall be offered or received in evidence as giving rise to a presumption, concession, or admission of any liability, fault, or wrongdoing on the part of Respondent.

    **7.**    **Advice of Counsel.** Each Party and signatory to this Release Agreement has reviewed the Release Agreement independently, has had the opportunity to consult and, in fact, has consulted his, their, or its own legal counsel, is fully informed of the terms and effect of this Release Agreement, and has not relied in any way on any inducement, representation, or advice of any other Party in deciding to enter into this Release Agreement.

    **8.**    **Governing Law.** This Release Agreement and the rights and obligations hereunder shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to the principles of the conflicts of laws thereof.

    **9.**    **Entire Agreement.** This Release Agreement constitutes the entire understanding between the Parties with respect to settlement of any and all Claims. All other negotiations, statements and representations, written and/or oral, are merged into this Release Agreement. This Release Agreement is the final expression of the agreement of the Parties and may not be amended, modified, changed or contradicted except by a writing signed by all Parties.

    **10.**    **Severability.** Any term or provision of this Release Agreement which is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Release Agreement or affecting the validity or enforceability of any of the terms or provisions of this Release Agreement in any other jurisdiction. If any provision of this Release Agreement is so broad as to be unenforceable, that provision shall be interpreted to be only so broad as is enforceable.

    **11.**    **Confidentiality and Non-Disparagement.** Other than as required by law of for legitimate business purposes, the Parties shall not directly or indirectly disclose to any third party any of the terms of settlement and/or the contents of this Release Agreement without the prior written consent of the other Parties. Notwithstanding the foregoing, any Party may disclose this Release Agreement as well as documentation and/or information sufficient to show the actual or asserted costs, expenses or damages to taxing authorities and to its attorneys, accountants, and insurers. The parties may also disclose this Release Agreement as part of a motion for approval of it in the Bankruptcy Proceeding. To the extent permitted by law, the Parties shall not, directly or through others, make any oral or written statement that disparages, defames or places in a false or negative light the other Party or any person or entity released with such Party.

    **12.**    **Counterparts.** This Release Agreement may be executed in two or more separate counterparts, and by facsimile, each of which, when executed, shall be an original, and all of which together shall constitute one and the same Release Agreement, notwithstanding that all Parties may not have executed the same counterpart, and each

Party may execute a separate signature page which may be appended to form one or more duplicate originals of this Release Agreement.

**13.  Authority.**  Subject to Paragraph 15, each of the signatories hereto represents and warrants that they are fully authorized to enter into this Release Agreement on behalf of the person or entity for which they execute the Release Agreement. Claimant shall support any request by Respondent to obtain approval from the Bankruptcy Court of this Release Agreement.

**14.  Costs and Attorneys' Fees.**  The Parties agree that the prevailing party in any action to enforce the terms of this Release Agreement shall be entitled to recover all of its reasonable attorney's fees and costs incurred in such action.

**15.  Bankruptcy Court Approval.**  The effectiveness of this Release Agreement is contingent upon the entry of a final order by the Bankruptcy Court approving this Agreement (the "Settlement Order"). Within three (3) business days of Respondent's receipt of all signatures on this Release Agreement, he shall file a motion with the Bankruptcy Court presiding over the Bankruptcy Proceeding seeking to authorize and to approve this Release Agreement pursuant to Fed. R. Bankr. P. 9019 and/or other applicable authority (the "Settlement Motion"), and the Parties shall use their commercially reasonable best efforts to obtain the Bankruptcy Court's approval of this Release Agreement and the entry of the Settlement Order.

**16.  Effect of Non-Approval.**  If the Bankruptcy Court declines to approve this Release Agreement in its totality and without material change for any reason, fails to enter the Settlement Order and/or the Settlement Order does not become a final order on or before August 1, 2018, and despite the Parties' commercially reasonable best efforts to obtain such approval, then (i) this Release Agreement will be null and void and of no force or effect; (ii) no Party shall have any obligations to any other Party arising out of this Release Agreement; and (iii) the Parties' respective rights and remedies with respect to all matters addressed by this Release Agreement will be fully reserved and the Parties will be restored to their respective positions as of the Effective Date.

**17.  Satisfaction of Proof of Claim.**  Within five (5) business days of Claimant's receipt of the entire settlement payment pursuant to this Release Agreement, and confirmation of the same in readily available funds, the Claimant shall file a notice of withdrawal of its Proof of Claim with prejudice with the Bankruptcy Court.

REMAINDER OF THIS PAGE INTENTIONALLY BLANK

15. **Construction.** The Parties agree that the language of this Release Agreement shall, for any and all purposes, be construed as a whole, according to its fair meaning, not strictly for or against any Party, and without regard to the identity or status of any person or persons who drafted all or any part of this Release Agreement. The Parties intend that this Release Agreement be construed in favor of the final and binding means for resolving any and all disputes between the Parties and their respective predecessors, successors, assigns, subsidiaries, related entities, affiliates, partners, directors, officers, employees, principals, attorneys, agents, representatives, and insurers, and all persons acting on behalf of, through, under or in concert with them relating to the Claims.

IN WITNESS WHEREOF, intending to be legally bound hereby, the Parties have executed this Release Agreement as of the day and year written above.

**WE HEREBY CERTIFY THAT WE HAVE READ THIS RELEASE AND SETTLEMENT AGREEMENT AND RELEASE AND FULLY UNDERSTAND IT.**

**Claimant:**
By: *Clay Douglass*
CLAYTON DOUGLASS
aka CLAY DOUGLASS

**Respondent:**
By: _____
MARC JOHN RANDAZZA
aka MARCO RANDAZZA

**Approved As To Form and Content:**

Dated this 6th day of July May, 2018.

HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON

Ogonna M. Brown, Esq.
400 South Fourth Street, Suite 300
Las Vegas, Nevada 89101
*Attorneys for Claimant*

Dated this ___ day of May, 2018.

LIPSON NEILSON, P.C.

_____
Joseph P. Garin, Esq.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
*Attorneys for Respondent*

15. **Construction.** The Parties agree that the language of this Release Agreement shall, for any and all purposes, be construed as a whole, according to its fair meaning, not strictly for or against any Party, and without regard to the identity or status of any person or persons who drafted all or any part of this Release Agreement. The Parties intend that this Release Agreement be construed in favor of the final and binding means for resolving any and all disputes between the Parties and their respective predecessors, successors, assigns, subsidiaries, related entities, affiliates, partners, directors, officers, employees, principals, attorneys, agents, representatives, and insurers, and all persons acting on behalf of, through, under or in concert with them relating to the Claims.

IN WITNESS WHEREOF, intending to be legally bound hereby, the Parties have executed this Release Agreement as of the day and year written above.

**WE HEREBY CERTIFY THAT WE HAVE READ THIS RELEASE AND SETTLEMENT AGREEMENT AND RELEASE AND FULLY UNDERSTAND IT.**

**Claimant:**

By: _____
CLAYTON DOUGLASS
aka CLAY DOUGLASS

**Respondent:**
By: *[DocuSigned by: Marc Randazza]*
MARC JOHN RANDAZZA
aka MARCO RANDAZZA

**Approved As To Form and Content:**

Dated this ___ day of May, 2018.

HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON

_____
Ogonna M. Brown, Esq.
400 South Fourth Street, Suite 300
Las Vegas, Nevada 89101
*Attorneys for Claimant*

Dated this ___ day of May, 2018.

LIPSON NEILSON, P.C.

*[signature]*
Joseph P. Garin, Esq.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
*Attorneys for Respondent*