LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzklegal.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170
Fax:  (702) 382-1169

Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-15-14956-abl |
| | Chapter 11 |
| MARC JOHN RANDAZZA, | |
| | <u>Confirmation Hearing:</u> |
| Debtor. | Date:  November 7, 2018 |
| | Time:  1:30 p.m. |

## DEBTOR'S BRIEF IN SUPPORT OF CONFIRMATION OF CHAPTER 11 PLAN OF <u>REORGANIZATION AND FINAL APPROVAL OF DISCLOSURE STATEMENT</u>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LARSON ZIRZOW & KAPLAN, LLC**
**850 E. Bonneville Ave.**
**Las Vegas, Nevada 89101**
**Tel: (702) 382-1170   Fax: (702) 382-1169**

# TABLE OF CONTENTS

**Page**

I.    Jurisdiction and Venue ....................................................................................... 1

II.   Factual and Procedural Background ................................................................... 1

III.  Plan Confirmation Standards .............................................................................. 3

    A.    Confirmation Standards Generally. ........................................................... 3

    B.    11 U.S.C. § 1129(a)(1): Plan Compliance With the Bankruptcy Code. ......... 4

        1.    11 U.S.C. § 1122: Classification of Claims. ..................................... 4

        2.    11 U.S.C. § 1123(a):  Mandatory Plan Requirements. ......................... 7

        3.    11 U.S.C. § 1123(b): Permissive Plan Provisions. ............................ 9

    C.    11 U.S.C. § 1129(a)(2):  Proponent Compliance With the Bankruptcy Code..... 10

    D.    11 U.S.C. § 1129(a)(3):  Good Faith. ....................................................... 13

    E.    11 U.S.C. § 1129(a)(4):  Payments for Services Reasonable. ..................... 14

    F.    11 U.S.C. § 1129(a)(5):  Disclosure of Management and Insiders............... 15

    G.    11 U.S.C. § 1129(a)(6):  Regulatory Approvals. ...................................... 15

    H.    11 U.S.C. § 1129(a)(7):  Best Interests Test. ........................................... 15

    I.    11 U.S.C. § 1129(a)(8):  Class Acceptance. ............................................. 17

    J.    11 U.S.C. § 1129(a)(9):  Administrative and Priority Claims. .................... 18

    K.    11 U.S.C. § 1129(a)(10):  One Consenting Impaired Class......................... 18

    L.    11 U.S.C. § 1129(a)(11):  Feasibility........................................................ 18

    M.    11 U.S.C. § 1129(a)(12):  U.S. Trustee's Fees Paid. ................................ 19

    N.    11 U.S.C. § 1129(a)(13):  No Retiree Benefits.......................................... 21

    O.    11 U.S.C. § 1129(a)(14):  Current on Domestic Support Obligations............... 21

    P.    11 U.S.C. § 1129(a)(15):  Required Contributions for an Individual Debtor....... 21

    Q.    11 U.S.C. § 1129(a)(16):  Non-Profit Transfers. ...................................... 22

    R.    The Plan Complies with Various Other Miscellaneous Requirements............... 22

    S.    11 U.S.C. § 1129(b):  The Plan May be Crammed Down on Class 4. ............... 23

        1.    11 U.S.C. § 1129(b)(1):  The Plan Does Not Discriminate Unfairly........ 23

        2.    11 U.S.C. § 1129(b)(2):  The Plan is Fair and Equitable........................ 24

    T.    Approval of the Randazza Marital Settlement Agreement. ........................... 25

        1.    Overview of the Randazza Divorce and Proposed Agreement................... 25

        2.    Standard of Decision on Approval of Settlements.................................... 26

        3.    Bankruptcy Code Provisions Relevant to Divorce. ............................... 27

        4.    Application...................................................................................... 28

IV.   Conclusion ....................................................................................................... 30

**LARSON ZIRZOW & KAPLAN, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

i

Marc John Randazza, as debtor and debtor in possession (the "Debtor"), submits his brief (the "Brief") in support of confirmation of his *Chapter 11 Plan of Reorganization* (the "Plan") [ECF No. 269] and final approval of his accompanying *Disclosure Statement* (the "Disclosure Statement") [ECF No. 268]. Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Plan. This Brief is made and based on the following points and authorities, the dockets in the Debtor's underlying chapter 11 bankruptcy case and related adversary proceedings, judicial notice of which are requested, the *Declaration of Marc J. Randazza in Support of Confirmation of Chapter 11 Plan of Reorganization and Final Approval of Disclosure Statement*, and any arguments of counsel made at the time of the hearing.

## I. Jurisdiction and Venue

1. On August 28, 2015 (the "Petition Date"), the Debtor filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing his bankruptcy case (the "Chapter 11 Case"). The Debtor is authorized to operate his business and manage his property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committees have been formed in the Chapter 11 Case.

2. The Court has subject matter jurisdiction to consider and determine confirmation of the Plan and final approval of the Disclosure Statement pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). Confirmation of the Plan and final approval of the Disclosure Statement are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Local Rule 9014.2, the Debtor consents to the entry of final orders and judgments by the bankruptcy judge in this matter. Venue is proper pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

## II. Factual and Procedural Background

3. The Debtor is a manager of Randazza Legal Group and an attorney licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada. He focuses his legal practice on litigating First Amendment, trademark and copyright infringement, defamation, free speech, intellectual property and similar litigation.

4. On September 13, 2018, the Debtor filed his proposed Disclosure Statement and

**LARSON ZIRZOW & KAPLAN, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**LARSON ZIRZOW & KAPLAN, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1    Plan, an *ex parte* motion for conditional approval of the Disclosure Statement (the "Procedures

2    Motion") [ECF No. 270], and an attorney certification in support [ECF No. 271].

3         5.     On September 17, 2018, the Court entered an order (the "Procedures Order") [ECF

4    No. 274] granting the Debtor's Procedures Motion, thereby approving the Debtor's Disclosure

5    Statement on a conditional basis pursuant to LR 3017 as containing adequate information, and,

6    among other matters, scheduled the following dates and deadlines: (a) October 22, 2018 as the

7    deadline for all creditors and parties in interest to file objections and for receipt of completed

8    ballots voting on the Debtor's proposed Plan; (b) October 31, 2018 as the deadline for filing any

9    replies to any objections, and for the filing of the ballot summary regarding the ballots cast by

10    creditors on the Plan; and (c) November 7, 2018 at 1:30 p.m. as the combined hearing on final

11    approval of the Disclosure Statement and confirmation of the Plan.

12         6.     The Disclosure Statement, Plan, Procedures Order, and notice of the final combined

13    hearing were validly and timely served [ECF Nos. 277 and 280].

14         7.     No creditor or party in interest filed a timely written objection to final approval of

15    the Debtor's Disclosure Statement or to confirmation of the Debtor's Plan; however, the Debtor

16    has agreed to make one minor modification to his Plan to satisfy a concern expressed by the Office

17    of the United States Trustee (the "UST"), which modification is set discussed in conjunction with

18    the analysis herein of section 1129(a)(12) of the Bankruptcy Code. The Debtor proposes to include

19    this modification as part of the confirmation order should his Plan be confirmed.

20         8.     As set forth in the Debtor's separately filed Ballot Summary, the Debtor has

21    multiple impaired classes voting in favor of the Plan, including specifically Class 4 (Excelsior

22    Party Claims) and Class 6 (General Unsecured Claims). In fact, the only impaired class that has

23    not accepted the Plan is Class 5 (Jennifer Randazza Claims), which are the claims of the Debtor's

24    ex-spouse, however, this is due to her not voting either way on the Plan.

25         9.     As an update to the Disclosure Statement, on October 10, 2018, the Nevada

26    Supreme Court entered an order approving the Debtor's Conditional Guilty Plea in the Nevada

27    State Bar Disciplinary Proceeding in exchange for the agreed form of discipline as set forth in the

28    Disclosure Statement. See Disclosure Statement § V(B)(2); In re Marc Randazza, No. 76453,

2018 WL 5095812 (Nev. Oct. 10, 2018).  At the time the Disclosure Statement originally was filed, the matter was pending and the Nevada Supreme Court has not yet approved the Conditional Guilty Plea.  Since that time, however, the Court has approved it and thus it is final and thus the risk that that Court would not accept the proposal has been mitigated.  Accordingly, the Debtor's professional discipline in Nevada has been finalized and will not interfere with his practice of law or his ability to perform under his Plan.  Debtor does not know what other jurisdictions in which he is barred may do with respect to the decision.

10.    Second, since approval of the Disclosure Statement, on October 18, 2018, the Court entered an order [ECF No. 286] approving the Douglass Settlement Agreement with Clay Douglass, thereby fully resolving matters with that claimant, including the full satisfaction and expungement of the Douglass Proof of Claim.  See Disclosure Statement § V(F).

11.    Finally, on October 18, 2018, the Debtor's general reorganization counsel, Larson Zirzow & Kaplan ("LZK"), filed its *Second and Final Fee Application as General Reorganization Counsel for the Debtor for the Allowance of Compensation for Services Rendered and the Reimbursement of Expenses Incurred* (the "Final Fee Application") [ECF No. 284].  The Final Fee Application seeks the allowance of all other fees and costs incurred for the Debtor's entire Chapter 11 Case in the final amount of not less than $268,267.50 in fees and $20,871.15 in expenses, for a total amount of $289,138.65.  The Final Fee Application updates the estimated amount of professional fee claims in the Debtor's Disclosure Statement.  See Disclosure Statement, § III(B).

### III.  Plan Confirmation Standards

**A.    Confirmation Standards Generally.**

The Debtor has the burden of demonstrating that his Plan satisfies section 1129 of the Bankruptcy Code by a preponderance of the evidence.  See Liberty Nat'l Enters. v. Ambanc LaMesa Ltd. P'ship (In re Ambanc LaMesa Ltd. P'ship), 115 F.3d 650, 653 (9th Cir. 1997).  The Court may confirm a chapter 11 plan if the plan proponent proves by a preponderance of the evidence either:  (1) that all applicable requirements of section 1129(a) of the Bankruptcy Code have been met; or (2) if the only condition to confirmation that is not satisfied is section 1129(a)(8), that the plan satisfies the cramdown standards under section 1129(b); that is, that the plan does not

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

discriminate unfairly against, and is fair and equitable with regard to, each impaired class that has not accepted the plan.  Zachary v. Cal. Bank & Trust, 811 F.3d 1191, 1194 (9th Cir. 2016).

Generally, when a plan of reorganization satisfies each of the requirements contained in section 1129(a) of the Bankruptcy Code, the court shall confirm the plan without considering section 1129(b).  See In re Art & Architecture Books of the 21st Century, Case No. 2:13-bk-14135-RK, 2016 WL 1118743, *6 (Bankr. C.D. Cal. Mar. 18, 2016) (citing United States v. Arnold & Baker Farms (In re Arnold & Baker Farms), 177 B.R. 648 (B.A.P. 9th Cir. 1994), aff'd, 85 F.3d 1415 (9th Cir. 1996)).  Section 1129(b) only applies if a class whose claims or interests are impaired does not accept the plan as required by section 1129(a)(8).  A plan of reorganization need only satisfy the requirements of section 1129(b) with respect to classes that voted against the plan. Art & Architecture, 2016 WL 1118743 at *6 (citing Kane v. Johns-Mansville Corp. (In re Johns-Mansville Corp.), 843 F.2d 636, 650 (2d Cir. 1988)).

**B.    11 U.S.C. § 1129(a)(1): Plan Compliance With the Bankruptcy Code.**

Section 1129(a)(1) of the Bankruptcy Code requires that a plan must "[c]omply with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(1).  "(T)he legislative history of subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this subsection to mean provisions of Chapter 11 that concern the form and content of reorganization plans . . ."  In re Johns-Mansville Corp., 843 F.2d at 648-649.  To determine plan compliance with section 1129(a)(1) of the Bankruptcy Code, reference must be made to the requirements of sections 1122 and 1123, which govern classification of claims and contents of plans, respectively.  See In re G-I Holdings, Inc., 420 B.R. 216 (D.N.J. 2009); In re Journal Register Co., 407 B.R. 520, 531-32 (Bankr. S.D.N.Y. 2009); H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978).  An analysis of both of these subsections follows.

**1.    11 U.S.C. § 1122: Classification of Claims.**

Apart from an administrative-convenience exception under section 1122(b) not relevant here, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  Section 1122(a) requires only that claims must be "substantially similar" to be placed into the same class.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

4

1    It prevents dissimilar claims from being placed into the same class, but it does not prevent

2    substantially similar claims from being placed into different classes.  Zante, Inc. v. Delgado (In re

3    Zante, Inc.), 467 B.R. 216, 218 (D. Nev. 2012) (citing Class Five Nev. Claimants v. Dow Corning

4    Corp. (In re Dow Corning Corp.), 280 F.3d 648, 661 (6th Cir. 2002)).  "To the contrary, the

5    bankruptcy court has substantial discretion to place similar claims in different classes."  Zante,

6    Inc., 467 B.R. at 218-19; see also Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC),

7    465 B.R. 525, 536-37 (B.A.P. 9th Cir. 2012), aff'd, 578 F. App'x 644 (9th Cir. 2014).

8        A claim that is substantially similar to other claims may be classified separately under a

9    chapter 11 plan, and even though section 1122(a) does not say so expressly.  See In re Rexford

10   Props., LLC, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016) (citing Barakat v. Life Ins. Co. of Va. (In

11   re Barakat), 99 F.3d 1520, 1524-25 (9th Cir. 1996)).  Whether claims are "substantially similar"

12   under section 1122(a) is a question of fact.  Bankruptcy courts have broad latitude in making the

13   "substantially similar" determination, which is reviewed for clear error.  In re Zante, Inc., 467 B.R.

14   at 218 (citing Steelcase, Inc. v. Johnston (In re Johnston), 21 F.3d 323, 327 (9th Cir. 1994)).  To

15   determine whether claims are substantially similar, "bankruptcy court judges must evaluate the

16   nature of each claim, i.e., the kind, species, or character of each category of claims."  Rexford

17   Props., 558 B.R. at 361 (quoting Johnston, 21 F.3d at 327).

18       In determining whether separate classification of substantially similar claims is appropriate

19   in the context of section 1122 of the Bankruptcy Code, a plan proponent must demonstrate a

20   "legitimate business or economic justification" for the separate classification.  Rexford Props., 558

21   B. R. at 363 (citing Barakat, 99 F.3d at 1526).  Placing a creditor's claim in a class separate from

22   a class comprised of other substantially similar claims constitutes impermissible "gerrymandering"

23   when it is done for the sole purpose of obtaining acceptance of a class of creditors under a plan.

24   Id.  Subject to the foregoing limitations, bankruptcy courts have the discretion to approve a

25   debtor's proposed classification scheme.  Id. at 361 (citing Johnston, 21 F.3d at 327-28)) (other

26   internal citations omitted).

27       As applied to the case at hand, the Debtor's Plan classifies his creditors into the following

28   six (6) classes:  Class 1 (Specialized Loan Servicing Secured Claim), Class 2 (Other Secured

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

5

Claims), Class 3 (Priority Non-Tax Claims), Class 4 (Excelsior Parties Claims); Class 5 (Jennifer Randazza Claims); Class 6 (General Unsecured Claims).  See Plan, Art. III.  In particular, the Debtor's Plan has three (3) different classes of general unsecured claims:[1]  Class 4 (Excelsior Parties Claims), Class 5 (Jennifer Randazza Claims), and Class 6 General Unsecured Claims. There are legitimate business or economic justifications for the separate classification of Classes 4 and 5, separate and apart from the general "catchall" of general unsecured claims in Class 6 because Classes 4 and 5 represent claims provided for in negotiated settlement agreements with those claimants after significant litigation, and because they both involve actual or potentially nondischargeable claims.

First, Class 4 (Excelsior Parties Claims) involves an effectuation and performance of the Excelsior Settlement Agreement that this Court approved post-petition, and after the Debtor had substantial and lengthy litigation with the Excelsior Parties, both pre-petition and post-petition. The Excelsior Settlement Agreement also provided for the Debtor's agreement that the $40,000 Settlement Payments thereunder would be excepted from the discharge by consent pursuant to section 727(a)(10) of the Bankruptcy Code.  See Disclosure Statement, pp. 6-10; Plan § 3.6. Moreover, prior to that settlement, the Excelsior Parties had actually commenced substantial and protracted nondischargeability litigation against the Debtor pursuant to section 523(a)(2)(A), (4) and (6) of the Bankruptcy Code, which was actively and intensely litigated for some time.

Second, Class 5 (Jennifer Randazza Claims) involves the claims of the Debtor's ex-spouse, who, although never having sued the Debtor for nondischargeability, presumably had such potential claims given her relationship with the Debtor and their having several children together during the marriage.  See Disclosure Statement, p. 13; Plan § 3.7.  The Randazza Marital Settlement Agreement attached to the Debtor's Disclosure Statement and sought to be approved as part of the Plan confirmation proceedings resolves all claims with Jennifer Randazza, and was negotiated in good faith and at arm's length between those parties while each was represented by their own separate and experienced family law counsel.  The separate classification of claims on

---

[1] Class 2 (Other Secured Claims) is vacant and thus is deemed eliminated pursuant to Plan § 3.9.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

the basis that they are nondischargeable and/or involved in substantial litigation is not unfairly discriminatory.  See In re Engen, 561 B.R. 523 (Bankr. D. Kan. 2016) (chapter 13 case involving student loans; collecting cases); Johnson, 21 F.3d at 328 (finding it proper to separately classify unsecured claim which is being hotly disputed in separate litigation).  Likewise, the fact that domestic support obligations are involved in the Randazza Marital Settlement Agreement, which may have some priority pursuant to section 507(a) of the Bankruptcy Code, in part, is also a proper legal justification for the separate classification of them as well.

By contrast, the General Unsecured Claims in the "remainder" class of Class 6 include all other remaining non-priority general unsecured claims, which are not parties to court-approved settlement agreements, and which claimants did not have actual or potential nondischargeability arguments pursuant to section 523(a) of the Bankruptcy Code, and which also did not involve significant and expensive litigation.  The foregoing are valid business or economic justifications for the separate classification of general unsecured claims proposed by the Debtor's Plan, and separate and apart from Classes 4 and 6.  Accordingly, the Plan complies with section 1122 of the Bankruptcy Code.

## 2.    11 U.S.C. § 1123(a):  Mandatory Plan Requirements.

Section 1123(a) of the Bankruptcy Code sets forth eight (8) requirements with which the proponent of every chapter 11 plan must comply.  As demonstrated herein, the Plan fully complies with each of these enumerated requirements.

Section 1123(a)(1) requires that a plan designate classes of claims and equity interests subject to section 1122 of the Bankruptcy Code.  In addition to Administrative Claims and Priority Tax Claims, which need not be designated, Article III of the Plan designates six (6) Classes of Claims.  Accordingly, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

Section 1123(a)(2) requires a plan to specify any class of claims that is not impaired under a plan.  In accordance therewith, Article III of the Plan specifies that Class 1 (Specialized Loan Servicing Secured Claim) and Class 3 (Priority Non-Tax Claims) are unimpaired under the Plan.  Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

Section 1123(a)(3) requires a plan to specify the treatment of impaired classes of claims.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Article III of the Plan sets forth the treatment of Class 4 (Excelsior Party Claims), Class 5 (Jennifer Randazza Claims), and Class 6 (General Unsecured Claims), each of which constitutes an impaired class under the Plan. Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

Section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to less favorable treatment than other class members. Article III of the Plan specifies the treatment of Claims in each respective Class and, as required by section 1123(a)(4), provides for the same treatment by the Debtor for each Claim in each respective Class, unless the holder of a particular Claim has agreed to a less favorable treatment of such Claim, as required by section 1123(a)(4) of the Bankruptcy Code.

Section 1123(a)(5) requires that a plan provide "adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Articles IV and X of the Plan, among others, provides adequate means for implementation as required by section 1123(a)(5) of the Bankruptcy Code. See id. Art. IV and X. Accordingly, the Plan, together with the documents and agreements set forth in the Plan, provide the means for implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code.

Section 1123(a)(6) prohibits the issuance of nonvoting equity securities, and requires amendment of a debtor's charter to so provide. This section also requires that a corporate charter provide an appropriate distribution of voting power among the classes of securities possessing voting power. Section 1123(a)(6) is inapplicable in the case at hand because the Debtor is an individual and no such securities are being issued under the Plan in any event.

Section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7). Section 1123(a)(7) is inapplicable in the case at hand because the Debtor is an individual, and the Plan does not appoint any officers, directors or trustees in any event.

Section 1123(a)(8) of the Bankruptcy Code provides that in the case of an individual debtor, the plan must "provide for the payment to creditors under the plan of all or such portion of

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan."  11 U.S.C. § 1123(a)(8).  Section 4.5 of the Plan provides for the payment to creditors of all or such portion of earning from personal services performed by the Debtor after the commencement of the case or other future income as is necessary for the execution of the Plan.  Accordingly, the Plan satisfies section 1123(a)(8) of the Bankruptcy Code.

### 3.    11 U.S.C. § 1123(b): Permissive Plan Provisions.

Section 1123(b) of the Bankruptcy Code sets forth the permissive provisions that may be incorporated into a chapter 11 plan.  As demonstrated below, the Debtor's incorporation of such permissive provisions in the Plan is consistent with section 1123(b).

Section 1123(b)(1) of the Bankruptcy Code provides that a plan "may impair or leave unimpaired any class of claims, secured or unsecured, or of interests."  As contemplated by section 1123(b)(1), Article III of the Plan described the treatment for the following Classes of unimpaired Classes of Claims:  Class 1 (Specialized Loan Servicing Secured Claim), and Class 3 (Priority Non-Tax Claims); and for the following impaired Classes of Claims:  Class 4 (Excelsior Party Claims), Class 5 (Jennifer Randazza Claims), and Class 6 (General Unsecured Claims).

Section 1123(b)(3)(A) of the Bankruptcy Code allows a plan to provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."  11 U.S.C. § 1123(b)(3)(A).  As permitted by section 1123(b)(3)(A), the Debtor's Plan proposes to approve the Randazza Marital Settlement Agreement, which resolved the claims of Jennifer Randazza, the Debtor's ex-spouse.  See Plan §§ 1.1.43, 1.1.44, 1.1.61, 3.7, and 10.6.[2]  An analysis of why the Randazza Marital Settlement Agreement constitutes a fair and equitable settlement agreement that should be approved pursuant to Fed. R. Bankr. P. 9019 appears separately in this Brief.

The Plan does not provide for the sale, transfer, or assignment of all or substantially all of the Debtor's property and, therefore, section 1123(b)(4) of the Bankruptcy Code is not applicable.

---

[2]  The Plan also separately incorporates and further effectuates the previously approved Excelsior Settlement Agreement as well, via the treatment of Class 5 (Excelsior Party Claims).  See Plan §§ 1.1.32, 1.1.33, and 3.6.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1    Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan "may provide for the

2   retention and enforcement by the debtor" of certain claims or interests.  As permitted by section

3   1123(b)(3)(B) of the Bankruptcy Code, the Plan reserves Litigation Claims in favor of the Debtor.

4   See Plan §§ 1.1.46, 10.7, and 10.8.

5    The Plan does not provide for the modification of the rights of holders of secured claims,

6   and, therefore, section 1123(b)(5) of the Bankruptcy Code in not applicable to this case.

7    Section 1123(b)(5) of the Bankruptcy Code provides that a plan may "modify the rights of

8   holders of secured claims, other than a claim secured only by a security interest in real property

9   that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the

10  rights of holders of any class of claims." 11 U.S.C. § 1123(b)(5).  Further, the claim of Specialized

11  Loan Servicing (Class 1) that is secured in the Debtor's house located at 10955 Iris Canyon Lane,

12  Las Vegas, Nevada, the claim is unimpaired.

13   Section 1123(b)(6) of the Bankruptcy Code is a "catchall" provision, which permits

14  inclusion in a plan of any appropriate provision as long as such provision is not inconsistent with

15  applicable sections of the Bankruptcy Code.  The remaining provision of the Debtor's Plan are

16  fully compliant with the Bankruptcy Code.

17   In sum, the Plan properly invokes various permissive plan provisions consistent with

18  section 1123(b) of the Bankruptcy Code as well.

19  **C.    11 U.S.C. § 1129(a)(2):  Proponent Compliance With the Bankruptcy Code.**

20   Section 1129(a)(2) of the Bankruptcy Code requires a plan proponent to "compl[y] with

21  the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2).  Section 1129(a)(2)

22  is intended to encompass the disclosure and solicitation requirements under section 1125.  See Art

23  & Architecture, 2016 WL 1118743 at *7-*12; In re Trans World Airlines, Inc., 185 B.R. 302, 313

24  (Bankr. E.D. Mo. 1995); H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978).

25   Section 1125(b) of the Bankruptcy Code requires the transmission to creditors of a written

26  disclosure statement containing "adequate information." 11 U.S.C. § 1125(b). Section 1125(a)(1),

27  in turn, defines "adequate information" as follows:

28    [I]nformation of a kind, and in sufficient detail, as far as is

10

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information; . . .

11 U.S.C. § 1125(a)(1).

Section 1125(a)(2) of the Bankruptcy Code continues by defining an "investor typical of holders of claims or interests of the relevant class" as an investor having the following:

(A)    a claim or interest of the relevant class;

(B)    such a relationship with the debtor as the holders of other claims or interests of such class generally have; and

(C)    such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.

11 U.S.C. § 1125(a)(2).

Case law has developed a non-exhaustive list of criteria that may be considered in evaluating the sufficiency or the adequacy of a proposed disclosure statement, which may include the following:  (a) the events which led to the filing of a bankruptcy petition; (b) a description of the available assets and their value; (c) the anticipated future of the company; (d) the source of information stated in the disclosure statement; (e) a disclaimer; (f) the present condition of the debtor while in chapter 11; (g) the scheduled claims; (h) the estimated return to creditors under a chapter 7 liquidation; (i) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (j) the future management of the debtor; (k) the chapter 11 plan or a summary thereof; (l) the estimated administrative expenses, including attorneys' and accountants' fees; (m) the collectability of accounts receivable; (n) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1  the chapter 11 plan; (o) information relevant to the risks posed to creditors under the plan; (p) the

2  actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

3  (q) litigation likely to arise in a nonbankruptcy context; (r) tax attributes of the debtor; and (s) the

4  relationship of the debtor with affiliates.  See In re Metrocraft Pub. Servs., Inc., 39 B.R. 567, 568

5  (Bankr. N.D. Ga. 1984); see also In re Pac. Shores Dev., Inc., 2011 WL 778205, *4 (Bankr. S.D.

6  Cal. Feb. 25, 2011) (citing In re Reilly, 71 B.R. 132, 134 (Bankr. D. Mont. 1987)).

7        The foregoing list, however, is neither meant to be comprehensive, nor required; rather, the

8  court must decide what is appropriate in each specific case.  The determination of "adequate

9  information" for disclosure statement purposes is made on a case-by-case basis.  See Computer

10  Task Grp., Inc. v. Brotby (In re Brotby), 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003).  The bankruptcy

11  court does not conduct an independent investigation, but instead relies on its reading for "apparent

12  completeness and intelligibility[.]"  Id. at 194.

13        As applied in the case at hand, the Debtor's proposed Disclosure Statement contains the

14  information required by Official Form 25B, including:  (a) a statement regarding Debtor's

15  background pre-petition [Disclosure Statement § V]; (b) a discussion of the reason for the

16  bankruptcy filing [id.]; (c) a summary of proceedings to date in the bankruptcy case [id.]; (d) a

17  summary of assets [id. Ex. 3 (Liquidation Analysis)]; (e) a description of unclassified claims,

18  including estimated amounts of administrative and priority claims [id. § III(B) and (E)]; (f) a

19  description of claims by class, including an estimate of the amount of claims in each class as

20  reflected by the schedules and proofs of claim on file [id. § III]; (g) a summary of the treatment of

21  unclassified and classified claims under the proposed plan [id. § III]; (h) a discussion of the means

22  of implementing the proposed plan [id. § VI(A)]; (i) a summary of risk factors [id. §§ V(B)(2) and

23  VII]; (j) a discussion of the tax consequences of the proposed plan [id. § VIII(D)]; (k) a summary

24  of the treatment of executory contracts under the proposed plan [id. § VI(B)]; (l) a liquidation

25  analysis [id. Ex. 3]; and (m) a statement as to how the proponent intends to achieve the payments

26  proposed [id. § V(H)].  In addition, the information contained in the Disclosure Statement contains

27  adequate information pursuant to section 1125(a) because it contains all of the information

28  generally required by the case law applying that provision.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1    In sum, the information contained in the Debtor's Disclosure Statement contains all of the

2    information required by section 1125(a) of the Bankruptcy Code, and thus can be approved on a

3    final basis.  Accordingly, the Plan satisfies section 1129(a)(2) of the Bankruptcy Code.

4    **D.**    **11 U.S.C. § 1129(a)(3):  Good Faith.**

5    Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith

6    and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  Section 1129(a)(3) does not

7    define "good faith."  Platinum Cap., Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314 F.3d

8    1070, 1074 (9th Cir. 2002).  The good faith determination pursuant to section 1129(a)(3) of the

9    Bankruptcy Code is based on the "totality of the circumstances."  Id. (citations omitted).

10    "[B]ankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into

11    account the particular features of each . . . plan."  Id. at 1075.  "A plan is proposed in good faith

12    where it achieves a result consistent with the objectives and purposes of the Code."  Id. (citations

13    omitted); In re Sagewood Manor Assocs. LP, 223 B.R. 756, 761-62 (Bankr. D. Nev. 1998).  The

14    objectives and purposes of the Bankruptcy Code, and chapter 11 in particular, have been described

15    as including, among other matters, "to maximize the value of the bankruptcy estate," Toibb v.

16    Radloff, 501 U.S. 157, 163 (1991), and "to satisfy creditors' claims," United States v. Whiting

17    Pools, Inc., 462 U.S. 198, 203 (1983).  See Sagewood Manor, 223 B.R. at 762.

18    Moreover, that a creditor's contractual rights are adversely affected does not by itself

19    warrant a bad faith finding.  "In enacting the Bankruptcy Code, Congress made a determination

20    that an eligible debtor should have the opportunity to avail itself of a number of Code provisions

21    which adversely alter creditors' contractual and nonbankruptcy rights."  Sylmar Plaza, L.P., 314

22    F.3d at 1074-75 (citing In re PPI Enters., Inc., 228 B.R. 339, 344-45 (Bankr. D. Del. 1998), aff'd,

23    324 F.3d 197 (3d Cir. 2003)).  "[T]he fact that a debtor proposes a plan in which it avails itself of

24    an applicable Code provision does not constitute evidence of bad faith."  PPI Enters., 228 B.R. at

25    347 (stating that it is not bad faith to take advantage of a particular provision of the Code for the

26    purpose of capping the amount of a creditor's claim).  While the protection of creditors' interests

27    is an important purpose under chapter 11, the Supreme Court has made it clear that successful

28    debtor reorganization and maximization of the value of the estate are the primary purposes of

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1    chapter 11 relief.  Sylmar Plaza, L.P., 314 F.3d at 1074-75 (citing Bonner Mall P'ship v. US

2    Bancorp Mortg. Co. (In re Bonner Mall P'ship), 2 F.3d 899, 916 (9th Cir. 1993)).

3        The good faith requirement does not depend on a debtor's subjective intent, but rather

4    "encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings."

5    Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828-29 (9th Cir. 1994).  Generally, a plan is not

6    filed in good faith if it represents an attempt "to unreasonably deter and harass creditors" and to

7    "achieve objectives outside the legitimate scope of the bankruptcy laws."  Id.

8        The foregoing objectives are fully evident with the Plan in the case at hand.  The Plan is

9    the final consummation of years of expensive and protracted litigation involving the Excelsior

10    Parties, and also finally effectuates the marital separation of the Randazzas per the Randazza

11    Marital Settlement Agreement.  Further, the bankruptcy proceedings also provided a forum for the

12    resolution of other disputes as detailed in the Disclosure Statement, including with Clay Douglass,

13    and provides for distributions or potential distributions to various other creditors.  Moreover, there

14    are no allegations in the case at hand evidencing the typical situations where courts have found a

15    lack of good faith.  See In re Trans Max Techs., 349 B.R. 80, 88-89 (Bankr. D. Nev. 2006).

16        The second prong of section 1129(a)(3) of the Bankruptcy Code requires that the Plan "not

17    be proposed by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  The term "law" as used in

18    this section, includes state law, and applies not to the substantive provision of a plan itself but

19    rather to the means employed in proposing a plan.  See In re Food City, Inc., 110 B.R. 808, 810

20    (Bankr. W.D. Tex. 1990).  The Plan does not, nor are there any allegations that the Plan somehow

21    runs afoul of applicable state law.  Accordingly, the Plan satisfies section 1129(a)(3) of the

22    Bankruptcy Code.

23        Finally, pursuant to Fed. R. Bankr. P. 3020(b)(2), because no objection is timely filed on

24    this basis, the Court may determine that the Plan has been proposed in good faith and not by any

25    means forbidden by law without receiving evidence on such issues.

26    **E.    11 U.S.C. § 1129(a)(4):  Payments for Services Reasonable.**

27        Section 1129(a)(4) requires that all payments of professional fees made from estate assets

28    be subject to review and approval by the court.  Section 1129(a)(4) of the Bankruptcy Code has

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

14

been construed to require that all payments of professional fees made from estate assets be subject to review and approval by the Bankruptcy Court as to their reasonableness.  In re Idearc Inc., 423 B.R. 138, 163-64 (Bankr. N.D. Tex. 2009); Art & Architecture, 2016 WL 111874,3 at *15; In re Elsinore Shore Assocs., 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that the requirements of section 1129(a)(4) of the Bankruptcy Code were satisfied where the plan provided for payment of only "allowed" administrative expenses).  Consistent with the foregoing, the Plan provides that all such fees and expenses, as well as all other accrued fees and expenses of estate professionals through the Effective Date, remain subject to final review by the Court for reasonableness pursuant to section 330 of the Bankruptcy Code.  See Plan §§ 1.1.1(b), 1.1.55, 1.1.56, and 2.1.  Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

**F.      11 U.S.C. § 1129(a)(5):  Disclosure of Management and Insiders.**

Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the  reorganized debtor. Section 1129(a)(5) is inapplicable in the case at hand because the Debtor is an individual, and, in any event, the Plan does not propose to appoint any directors, officers, or voting trustees.

**G.      11 U.S.C. § 1129(a)(6):  Regulatory Approvals.**

Section 1129(a)(6) of the Bankruptcy Code is inapplicable to the case at hand because the Debtor does not charge rates that are regulated by a governmental agency.

**H.      11 U.S.C. § 1129(a)(7):  Best Interests Test.**

Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and interest holders, and specifically, that each holder of an impaired claim has either accepted the plan, or "will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date."  11 U.S.C. § 1129(a)(7)(A)(i) and (ii).

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1    The best interests test focuses on individual dissenting creditors rather than classes of

2    claims. See Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle P'ship, 526 U.S. 434, 441

3    n.13 (1999). In order to satisfy the "best interest test," the court must find that each dissenting

4    creditor will receive or retain value, as of the effective date of the plan, that is not less than the

5    amount it would receive if the debtor were liquidated. See Art & Architecture, 2016 WL 1118743

6    at *17 (citing 203 N. La Salle St. P'ship, 526 U.S. at 442, and United States v. Reorganized CF &

7    I Fabricators, Inc., 518 U.S. 213, 228 (1996)). In doing so, the court must take into consideration

8    the applicable rules of distribution of the estate under chapter 7, as well as the probable costs

9    incident to such liquidation." In re Adelphia Commc'ns Corp., 368 B.R. 140, 252 (Bankr.

10    S.D.N.Y. 2007). This element only applies to nonaccepting holders of impaired claims. See M &

11    I Thunderbird Bank v. Birmingham (In re Consol. Water Utils., Inc.), 217 B.R. 588, 592 (B.A.P.

12    9th Cir. 1998) (citing Bell Rd. Inv. Co. v. M. Long Arabians (In re M. Long Arabians), 103 B.R.

13    211, 216 (B.A.P. 9th Cir. 1989)).

14    Plan payments made by an individual chapter 11 debtor that are derived from post-

15    confirmation earnings, even those required by section 1129(a)(15), can be used to meet the best

16    interest of creditors test found in section 1129(a)(7). See In re Brown, 498 B.R. 486, 506 (Bankr.

17    E.D. Pa. 2013). Even a plan that provides no distribution to unsecured creditors may satisfy the

18    best interests test. See Rand v. Porsche Fin. Servs., Inc. (In re Rand), No. AZ-10-1160-BaPaJu,

19    2010 WL 6259960 (B.A.P. 9th Cir. Dec. 7, 2010).

20    As applied in the case at hand, of all the valid ballots received by holders of impaired claims

21    voting on the Debtor's Plan, only one (1)--American Express--voted to reject the Plan, which is a

22    claim in Class 6 (General Unsecured Claims). Moreover, Class 5 (Jennifer Randazza Claims) did

23    not vote and thus is also deemed a non-acceptance as well. Neither of these parties filed a timely

24    written objection to confirmation of the Plan asserting that the Plan failed to meet the "best interest

25    of creditors" test in section 1129(a)(7) of the Bankruptcy Code. As the Debtor's Liquidation

26    Analysis demonstrates, Class 5 (Jennifer Randazza Claims) is not any worse off under the Plan as

27    compared with a chapter 7 liquidation as the Plan seeks to approve the Randazza Marital

28    Settlement Agreement providing for the full payment over time of her claims. Likewise, the

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1    Liquidation Analysis demonstrates that the holders of claims in Class 6 (General Unsecured

2    Claims) are no worse off under the Debtor's Plan as compared with a chapter 7 liquidation,

3    especially when factoring in the amount of potential priority claims owing to Mrs. Randazza, and

4    the costs and expenses of a chapter 7 liquidation.  See Zante, Inc., 467 B.R. at 219 ("Because

5    nothing is not less than nothing, the Plan satisfied § 1129(a)(7) without amendment.").

6    Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code as to Classes 5 and 6.

7    **I.      11 U.S.C. § 1129(a)(8):  Class Acceptance.**

8         Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims and interests

9    either has accepted a plan or is not impaired under a plan.  See Texaco, 84 B.R. at 909.  The

10   requirement of section 1129(a)(8) is the only condition precedent included in section 1129(a) that

11   is not necessary for confirmation.  "If a plan satisfies the confirmation criteria set forth in section

12   1129(a), including the requirement that if a class of claims is impaired, at least one impaired class

13   of claims accepts the plan, the plan may be confirmed notwithstanding the opposition of one or

14   more impaired classes of claims or interests, provided the plan satisfies section 1129(b)." 7 Collier

15   on Bankruptcy ¶ 1129.02[8] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2016).

16        Whether a class has accepted the plan is determined by reference to section 1126 of the

17   Bankruptcy Code.  Under section 1126(c), "[a] class of claims has accepted a plan if such plan has

18   been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in

19   number of the allowed claims of such class held by creditors . . . ." 11 U.S.C. § 1126(c).  Under

20   section 1126(f), any class which is not impaired under the plan is conclusively presumed to have

21   accepted the plan. 11 U.S.C. § 1126(f).  Whether a class of claims is impaired is governed by

22   section 1124 of the Bankruptcy Code.  See 11 U.S.C. § 1124.

23        As applied in the case at hand, Class 1 (Specialized Loan Servicing Secured Claim) is

24   unimpaired by the Plan, and thus is presumed to have accepted the Plan pursuant to section 1126(f).

25   Class 2 (Other Secured Claims) is a vacant class and thus is eliminated under the terms of the Plan.

26   See Plan § 3.9.  Class 3 (Priority Non-Tax Claims) is unimpaired by the Plan, and thus is presumed

27   to have accepted the Plan pursuant to section 1126(f).  Class 4 (Excelsior Party Claims) is impaired

28   and has voted to accept the Plan, and thus being the only claim in this class, Class 3 has accepted

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

17

1  the Plan. Class 5 (Jennifer Randazza Claims) is impaired, but did not cast a ballot either way on

2  the Plan and did not file any written objection to confirmation either, however, under prevailing

3  caselaw, such inaction does not equate with acceptance pursuant to section 1126 of the Bankruptcy

4  Code. See In re M. Long Arabians, 103 B.R. at 215-216; In re Vita Corp., 358 B.R. 749, 751-52

5  (Bankr. C.D. Ill. 2007). Class 6 (General Unsecured Claims) is impaired, but as detailed in the

6  Ballot Summary, voted to accept the Plan pursuant to requisite thresholds in section 1126(c).

7       Accordingly, the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code given

8  the non-vote of Class 5, and thus the Debtor will address in a separate section of this Brief the

9  cramdown of the Plan as to Mrs. Randazza pursuant to section 1129(b) of the Bankruptcy Code.

10  **J.      11 U.S.C. § 1129(a)(9):  Administrative and Priority Claims.**

11       In accordance with sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, the Plan

12  provides for the payment in full of each holder of an Allowed Administrative Claim, unless that

13  party has otherwise consented. Plan §§ 1.1.1, 1.1.2, and 2.1. Moreover, the Plan all requests for

14  payment of Administrative Claims against Debtor, including but not limited to Professional Fee

15  Claims, must be filed within thirty (30) days after the Effective Date. See id. In accordance with

16  sections 1129(a)(9)(C) and (D), the Plan provides that all Allowed Priority Tax Claims, if any, will

17  be paid in full after such claim is allowed, or on such terms as the parties may agree. See Plan §

18  2.2. Accordingly, the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

19  **K.      11 U.S.C. § 1129(a)(10):  One Consenting Impaired Class.**

20       Section 1129(a)(10) of the Bankruptcy Code requires that "[i]f a class of claims is impaired

21  under the plan, at least one class of claims that is impaired under the plan has accepted the plan,

22  determined without including any acceptance of the plan by an insider." 11 U.S.C. § 1129(a)(10).

23  Classes 4 (Excelsior Party Claims), Class 5 (Jennifer Randazza Claims), and Class 6 (General

24  Unsecured Claims) are all impaired under the Plan, and two of those three classes (Classes 4 and

25  6) have voted to accept the Plan. Accordingly, the votes to accept the Plan by either Classes 4 or

26  6 satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

27  **L.      11 U.S.C. § 1129(a)(11):  Feasibility.**

28       Section 1129(a)(11) of the Bankruptcy Code requires that a proposed plan be feasible.

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Specifically, the Debtor must establish that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The feasibility test under section 1129(a)(11) requires the court to determine whether the plan is workable and has a reasonable likelihood of success. United States v. Energy Res. Co., 495 U.S. 545, 549 (1990).

The focus of the court's inquiry in determining whether the feasibility standard of section 1129(a)(1) of the Bankruptcy Code is been met is whether the plan offers a reasonable assurance of success. Post-confirmation success need not be guaranteed. The court is not required to determine that the future success of the post-confirmation debtor is inevitable in order to find that the plan is feasible. See Johns-Mansville, 843 F.2d at 649; In re The Prudential Energy Co., 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986); see also Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw.), 761 F.2d 1374, 1382 (9th Cir. 1985) ("The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.")). "While a reviewing court must examine 'the totality of the circumstances' in order to determine whether the plan fulfills the requirements of section 1129(a)(11) . . . only a relatively low threshold of proof is necessary to satisfy the feasibility requirement." Sagewood Manor, 223 B.R. at 762-63.

In the case at hand, the Plan calls for the Debtor to fund his Plan by continuing to work at his law firm, Randazza Legal Group, and also, if necessary, to liquidate exempt assets. See Plan § 4.5. The Debtor's projected disposable income for his Plan projects sufficient income to satisfy most obligations, and to the extent of any shortfall, also reveals substantially exempt assets, including a $495,000 equity in a homestead, among other exempt assets, that may be liquidated to provide for any remaining payments as may potential be needed. See Disclosure Statement, Exs. 2 and 3. Accordingly, the Plan is feasible pursuant to section 1129(a)(11) of the Bankruptcy Code.

## M.    11 U.S.C. § 1129(a)(12):  U.S. Trustee's Fees Paid.

Subsequent to filing the Plan, the Debtor conferred with the UST, and, as a result of those discussions, has agreed to modify the Plan to clarify that any U.S. Trustee Fees payable pursuant

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1   to 28 U.S.C. § 1930 are not subject to the Administrative Claim Bar Date under the Plan.  See Plan

2   §§ 1.1.1, 1.1.2, 2.1.2, 12.14.  In particular, the Debtor agreed to Plan § 1.1.1(c)'s reference to U.S.

3   Trustee Fees as being included within the definition of Administrative Claim would be eliminated,

4   thus making Plan § 12.14 the only applicable provision as to U.S. Trustee Fees (and thus also

5   clarifying that the allowance of U.S. Trustee Fees is not subject to any bar date like other

6   Administrative Claims).

7       Section 1127(a) of the Bankruptcy Code provides that "[t]he proponent of a plan may

8   modify such plan at any time before confirmation, but may not modify such plan so that such plan

9   as modified fails to meet the requirements of sections 1122 and 1123 of this title.  After the

10  proponent of a plan files a modification of such plan with the court, the plan as modified becomes

11  the plan." 11 U.S.C. § 1127(a).  Section 1127(c) provides that "[t]he proponent of a modification

12  shall comply with section 1125 of this title with respect to the plan as modified."  11 U.S.C. §

13  1127(a).  Pursuant to Fed. R. Bankr. P. 3019(a), if the Court finds that "the proposed modification

14  does not adversely change the treatment of the claim of any creditor . . . who has not accepted in

15  writing the modification," then it shall be deemed accepted.

16      Plan modifications do not require a new disclosure statement and court approval unless the

17  modifications are material.  See Andrew v. Coppersmith (In re Downtown Inv. Club III), 89 B.R.

18  59, 65 (B.A.P. 9th Cir. 1988)); In re Intercare Health Sys., Inc., No. 2:09-BK-29121, 2013 WL

19  5979762, at *5 (Bankr. C.D. Cal. 2013).  The word "material" in this context has been described

20  as "so affect[ing] a creditor or interest holder who accepted the plan that such entity, if it knew of

21  the modification, would be likely to reconsider its acceptance." Downtown Inv. Club III, 89 B.R.

22  at 65 (quoting In re Am. Solar King Corp., 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988)); Intercare

23  Health Sys., Inc., 2013 WL 5979762, at *5.

24      As applied in the case at hand, the proposed modification is confirmatory of existing rights,

25  and is not material; in fact, it is really only relevant to the UST and does not prejudice any other

26  creditors or parties in interest.  Accordingly, this modification is permitted and the Debtor's Plan,

27  as amended, satisfies section 1129(a)(12) of the Bankruptcy Code.

28

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**N.      11 U.S.C. § 1129(a)(13):  No Retiree Benefits.**

The Debtor has no "retiree benefits" as that term is defined in section 1114 of the Bankruptcy Code, and thus section 1129(a)(13) is inapplicable.

**O.      11 U.S.C. § 1129(a)(14):  Current on Domestic Support Obligations.**

Section 1129(a)(14) of the Bankruptcy Code requires as a condition of plan confirmation that "[i]f the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition."  11 U.S.C. § 1129(a)(14).  The term "domestic support obligation" in turn is defined in section 101(14)(A) of the Bankruptcy Code, and would include certain of the Debtor's obligations under the Randazza Marital Settlement Agreement.  Debtor asserts that he is current on his obligations pursuant to the Randazza Marital Settlement Agreement, which is the governing document providing for any applicable domestic support obligations in the case at hand, and further notes that Jennifer Randazza has not objected to confirmation of the Plan on this basis as well.  Accordingly, the Plan satisfies section 1129(a)(14) of the Bankruptcy Code.

**P.      11 U.S.C. § 1129(a)(15):  Required Contributions for an Individual Debtor.**

The Debtor is an individual, and thus section 1129(a)(15) of the Bankruptcy Code applies. Section 1129(a)(15) provides as follows:

> In a case in which the debtor is an individual <u>and in which the holder of an allowed unsecured claim objects to the confirmation of the plan</u>—
>
> (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

11 U.S.C. § 1129(a)(15) (emphasis added).

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

As applied in the case at hand, no holder of an allowed unsecured claim has filed a timely written objection to confirmation of the Debtor's Plan on the grounds that it fails to comply with section 1129(a)(15) of the Bankruptcy Code, and thus this provision does not apply and/or has been waived. See United States v. Villalobos (In re Villalobos), BAP No. NV-13-1179-JuKiTa, 2014 WL 930495, at *13 (B.A.P. 9th Cir. 2014); In re Samuel, No. 16-21585-A-11, 2018 WL 4739937, at *12 (Bankr. E.D. Cal. Sept. 27, 2018); In re Rose, 564 B.R. 728, 734 n.11 (Bankr. D. Nev. 2017); In re Decker, 535 B.R. 828, 836 (Bankr. D. Alaska 2015); In re Murray, No. 11-10535, 2012 WL 6015615, at *2 (Bankr. N.D. Cal. 2012); see also In re Mirchou, 588 B.R. 555, 570 (Bankr. D. Nev. 2018) (noting the practice); In re Martinez, 561 B.R. 132, 138 (Bankr. D. Nev. 2016) (same).

Second, even to the extent a timely written objection to confirmation were filed raising an issue pursuant to section 1129(a)(15) of the Bankruptcy Code by a creditor holding an impaired allowed unsecured claim -- which again, for the avoidance of doubt, has not happened -- the Debtor's Plan provides in that situation for a recovery as proven by his Projected Disposable Income calculation, which shows $0.00 projected disposable income, as well as the Debtor's Liquidation Analysis. See Plan § 3.8.2; Disclosure Statement, Exs. 2 and 3; see also 11 U.S.C. § 1129(a)(15)(B) (incorporating by reference 11 U.S.C. § 1325(b)(2)); In re Roedemeier, 374 B.R. 264, 272-73 (Bankr. D. Kan. 2007); Hamilton v. Lanning, 560 U.S. 505, 516-518 (2010).

In sum, section 1129(a)(15) of the Bankruptcy Code is inapplicable given the lack of any timely written objection to confirmation by any holder of an allowed general unsecured claim, and even to the extent such objection were timely, the Plan provides a means to satisfy that statute.

**Q.    11 U.S.C. § 1129(a)(16):  Non-Profit Transfers.**

The Debtor is not an eleemosynary entity; rather, he is an individual.  Moreover, the Plan does not contemplate any transfers in violation of any state non-profit law.  Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Debtor's Plan.

**R.    The Plan Complies with Various Other Miscellaneous Requirements.**

The Plan is dated and identifies the Debtor as the party submitting the Plan, and thus complies with Fed. R. Bankr. P. 3016(a).  The Plan does not seek to enjoin any conduct not

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

otherwise enjoined under the Bankruptcy Code, and thus complies with Fed. R. Bankr. P. 3016(c). Other than the Plan, no plan has been filed in this Chapter 11 Case, and thus the requirements of section 1129(c) of the Bankruptcy Code also have been satisfied.

No party in interest that is a governmental unit has requested that the Plan not be confirmed on the grounds that the primary purpose of the Plan is the avoidance of taxes or the avoidance of application of Section 5 of the Securities Act of 1933, and the primary purpose of the Plan is not avoidance of taxes or avoidance of Section 5 of the Securities Act of 1933. Therefore, the Plan satisfies section 1129(d) of the Bankruptcy Code.

Finally, this Chapter 11 Case is not a "small business case," as that term is defined in the Bankruptcy Code; accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**S.    11 U.S.C. § 1129(b):  The Plan May be Crammed Down on Class 4.**

Section 1129(b) of the Bankruptcy Code provides that a plan can be confirmed even if the plan is not accepted by all impaired classes as contemplated by section 1129(a)(8). In such a situation, the court may confirm a plan if the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b). As stated, Mrs. Randazza as the holder of the Class 5 (Jennifer Randazza Claims) did not vote on the Plan either way, which under applicable caselaw is deemed to not be an acceptance. Accordingly, the Debtor seeks to invoke section 1129(b) with respect to Class 5 only.

**1.    11 U.S.C. § 1129(b)(1):  The Plan Does Not Discriminate Unfairly.**

The unfair discrimination standard of section 1129(b)(1) ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value it will receive under a plan when compared to the value given to all other similarly situated classes. See In re LightSquared Inc., 513 B.R. 56, 99 (Bankr. S.D.N.Y. 2014). Generally a plan unfairly discriminates in violation of section 1129(b)(1) only if similar classes are treated differently without a reasonable basis for the disparate treatment. See In re Buttonwood Partners, Ltd., 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990). Accordingly, as between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests, see, e.g.,

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

*In re Johns-Mansville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), aff'd, 843 F.2d 636 (2d Cir. 1988), or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment, see, e.g., Buttonwood Partners, 111 B.R. at 63. A plan does not "discriminate unfairly" if a dissenting class is treated equally with respect to other classes of equal "rank," meaning of equal priority. *Art & Architecture*, 2016 WL 1118743 at *18.

As applied in the case at hand, the Debtor's Plan does not unfairly discriminate as to Class 5 (Jennifer Randazza Claims) because her claims are different in rank, in whole or in part, from other general (non-priority) unsecured creditor classes because, unlike such other classes 4 and 6, she holds priority claims pursuant to section 507(a)(1) of the Bankruptcy Code, and, at least unlike Class 6 (General Unsecured Claims), she potentially holds nondischargeable claims pursuant to sections 523(a)(5). See Plan § 1.1.44 (definition of Jennifer Randazza Claims under the Plan). Given such different priorities or "rank," it is not unfairly discriminatory to place Class 5 (Jennifer Randazza Claims), separate and apart from other general (non-priority) unsecured creditors like Classes 4 and 6.

## 2.    11 U.S.C. § 1129(b)(2):  The Plan is Fair and Equitable.

A plan is "fair and equitable" as to a class of unsecured claims that rejects a plan (or in this case, which did not vote either way if either:

> (i)    the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

> (ii)    the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

11 U.S.C. § 1129(b)(2)(B).

As applied in the case at hand, the Debtor's Plan is "fair and equitable" because it satisfies both (i) and (ii) of subsection 1129(b)(2)(B). First, the Plan complies with section 1129(b)(2)(B)(i)

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

24

regarding its treatment of Class 5 because it provides that Jennifer Randazza Claims will be paid fully consistent with the Randazza Marital Settlement Agreement, which is the only allowed claim she holds.  See Plan § 3.7.2.   Likewise, and in the alternative, the Plan's treatment of Class 5 also complies with section 1129(b)(2)(B)(ii) because no junior class of creditors, which in this case could arguably be Class 6 (General Unsecured Claims), receives or retains anything under the Plan as currently proposed since no creditors in that class have submitted a timely filed written objection to confirmation raising any issue with respect to section 1129(a)(15).  See Plan § 3.8.2.  Put another way, a bankruptcy judge may find that a debtor's plan is "fair and equitable" as to an objecting creditor only if the plan complies with the absolute priority rule.  See Zachary, 811 F.3d at 1194. Because the treatment of Class 5 under the Debtor's Plan complies with the absolute priority rule by paying a priority claimant like Jennifer Randazza before any potential payment to general unsecured (non-priority) creditors like in Class 6, the Plan is also fair and equitable as to Class 5 (Jennifer Randazza Claims) pursuant to section 1129(b)(2)(B)(ii) of the Bankruptcy Code as well.

Finally, and on the assumption that the cross-reference in the second clause in section 1129(b)(2)(B)(ii) of the Bankruptcy Code properly references 1129(a)(14), and is not a "scrivener's error" that was meant to refer to section 1129(a)(15) as some courts and commentators have asserted, see Zachary, 811 F.3d at 1197 n.4 (collecting citations and noting the issue, but not deciding it), as previously noted, the Debtor has fully paid any DSOs under the Randazza Marital Settlement Agreement that have accrued through the confirmation hearing on this Plan to Mrs. Randazza, and thus the Plan complies with this final part of section 1129(b)(2)(B)(ii).

In sum, the Court may approve the Plan nonconsensually, and notwithstanding Mrs. Randazza's non-vote, via "cramdown" as to Class 5 pursuant to section 1129(b).

**T.    Approval of the Randazza Marital Settlement Agreement.**

**1.    Overview of the Randazza Divorce and Proposed Agreement.**

The Debtor's Plan includes within it the negotiated Randazza Marital Settlement Agreement in order to finalize the Randazza's divorce and related DSOs.  See Plan §§ 1.1.43, 1.1.44, 3.7, and 10.6; Disclosure Statement, p. 13 and Ex. 4.  As previously noted, a plan may include a settlement agreement as a permissive plan provision pursuant to section 1123(b)(3) of

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1    the Bankruptcy Code as made relevant to confirmation pursuant to sections 1129(a)(1) and (2).

2        As explained in the Debtor's Disclosure Statement, as a result of various disputes and

3    differences, the Debtor and his wife chose to live separate and apart from one another.   On

4    November 30, 2017, the Randazzas entered into a Marital Settlement Agreement, as later amended

5    on December 8, 2017, and again on May 24, 2018 (collectively, the "Randazza Marital Settlement

6    Agreement").    The Randazza Martial Settlement Agreement provides for a full and final

7    adjustment of their property rights, interests and claims against each other, including all issues

8    regarding the case and custody of their two minor children, as well as their support and

9    maintenance of the parties, with each party releasing and forever discharging the other, subject to

10   the applicable courts' approval of the agreement.

11       The principal terms of the Randazza Marital Settlement Agreement generally include the

12   following:  (a) the Randazzas will share joint physical custody on an equal time share basis of their

13   two minor children; (b) the Debtor is to pay $2,230.00 per month as child support, among other

14   health and medical obligations, until the children turn 18; (c) as alimony, Mrs. Randazza is to

15   receive $2,000.00 per month for the first 12 months, then $1,500.00 per month for 12 months, then

16   $1,000.00 per month for the 12 months after that, subject to potential reduction, and other terms

17   and conditions; (d) the Randazzas equitably split their remaining property.

18       On December 26, 2017, the Randazzas submitted a *Joint Petition for Summary Decree of*

19   *Divorce* to the Family Court of the Eight Judicial District Court, Clark County, Nevada, and on

20   December 29, 2017, that Court entered a *Decree of Divorce*. The final approval of the Randazza

21   Marital Settlement Agreement remains subject to approval of the Bankruptcy Court.

22       **2.        Standard of Decision on Approval of Settlements.**

23       The Bankruptcy Court may approve a compromise or settlement between a debtor and

24   another party pursuant to Fed. R. Bankr. P. 9019(a).  Compromise and settlement agreements have

25   long been an inherent component of the bankruptcy process.  See Protective Comm. for Indep.

26   Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1958) (citing Case v. Los

27   Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)).  In TMT Trailer, the Supreme Court held

28   that a bankruptcy settlement must be fair and equitable.  Id.  In order to determine whether a

proposed settlement is fair and equitable, the court should consider the following factors:

        (a)      the probability of success in the litigation;

        (b)      the difficulties, if any, to be encountered in the matter of collection;

        (c)      the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

        (d)      the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

See Robinson v. Kane (In re A&C Props.), 784 F.2d 1377, 1381 (9th Cir. 1986). The debtor is not necessarily required to satisfy each of these factors as long as the factors as a whole favor approval of the settlement. See In re Pacific Gas and Elec. Co., 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). The settlement does not have to be the best the debtor could have possibly obtained; rather, the settlement must only fall "within the reasonable range of litigation possibilities." In re Adelphia Commc'ns Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005).

      When determining whether a settlement should be approved the Court "'need not rule upon disputed facts and questions of law, but only canvas the issues.'" Suter v. Goedert, 396 B.R. 535, 548 (D. Nev. 2008) (quoting Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997)). To require a more extensive analysis would defeat the purpose of Fed. R. Bankr. P. 9019. Id. ("if courts were required to do more than canvass the issue, 'there would be no point compromising; the parties might as well go ahead and try the case'") (citations omitted). No creditor or party in interest has objected to the approval of the Randazza Marital Settlement Agreement, and thus it may be approved on that basis as unopposed, however, an examination of each of the four (4) A&C Properties factors follows.

      **3.**    **Bankruptcy Code Provisions Relevant to Divorce.**

      Although various plan confirmation requirements, including principally section 1129(a)(14) of the Bankruptcy Code, are separately discussed herein, an overview of other Bankruptcy Code provisions that are generally relevant to marital dissolution proceedings and related marital property settlements is relevant. First, there is an exception from the automatic stay to permit commencement or continuation of civil actions "for the dissolution of a marriage,"

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

however, the stay still applying "to the extent that such proceeding seeks to determine the division of property that is property of the estate." 11 U.S.C. § 362(d)(2).

Second, section 541(a)(2) of the Bankruptcy Code provides that all interests of the debtor and the debtor's spouse in community property as of the commencement of the case are property of the bankruptcy estate. 11 U.S.C. § 541(a)(2). This section is supported by the definition of a "community claim" in section 101(7), as a "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable." 11 U.S.C. § 101(7). Therefore, whether only one of the community property owners or both of them file for bankruptcy relief, the property comes into the debtor's estate and will be administered in the bankruptcy for the benefit of creditors. What is or is not community property is determined by Nevada law, and it generally includes that property acquired during a marriage.

Third, "domestic support obligations" are nondischargeable. 11 U.S.C. § 523(a)(5). A "domestic support obligation" ("DSO") is defined as a debt under applicable nonbankruptcy law that is: owed to or recoverable by a spouse, former spouse, or child of the debtor; in the nature of alimony, maintenance or support without regard to whether the debt is expressly so designated; established by a separation agreement, divorce decree or property settlement agreement, a court order; and not assigned to a nongovernmental entity. 11 U.S.C. § 101(14A). Accordingly, any DSOs owing to Mrs. Randazza or their minor children are nondischargeable. DSOs also have first level administrative priority pursuant to section 507(a)(1). 11 U.S.C. § 507(a)(1).

Nonsupport debts owed to the debtor's spouse, former spouse or child incurred in connection with marriage dissolution or separation are also nondischargeable pursuant to section 523(a)(15) of the Bankruptcy Code. 11 U.S.C. § 523(a)(15). This subsection does not appear to apply in the case at hand because no divorce or separation had taken place or was not in progress as of the Debtor's Petition Date. See In re Heilman, 430 B.R. 213, 218, n.8 (B.A.P. 9th Cir. 2010).

### 4.    Application.

First, analyzing the probability of success involves an analysis of each side's claims and potential remedies. The Randazzas were married and had several children together during the marriage, who are presently minors, and thus as a result of the termination of their marriage and

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**LARSON ZIRZOW & KAPLAN, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1    Mrs. Randazza being a stay-at-home caregiver as well as a full-time student who recently

2    graduated from law school, the claims at issue involve DSOs that are nondischargeable pursuant

3    to section 523(a)(5) of the Bankruptcy Code.  At the outset of the Chapter 11 Case, the Randazzas

4    remained married, however, over the course of the more than three (3) year course of the case,

5    substantial irreconcilable differences arose such that the claims arose post-petition, and indeed

6    only in the last year and a half approximately, and thus after any bar date for claims and/or deadline

7    to file any nondischargeability adversary, to the extent one would even be required in the first

8    place.  Accordingly, Mrs. Randazza's claims for at least some amount of alimony, maintenance

9    and support are undoubtedly very strong as a matter of Nevada law and the Bankruptcy Code.

10    Second, the Debtor is obviously presently a debtor in bankruptcy, and thus there would be

11    difficulties in collecting sums.  Accordingly, the difficulties in collection also favor approval of

12    the Randazza Marital Settlement Agreement, which represents the parties' best efforts to negotiate

13    a fair and equitable resolution of their difficult marital separation and property settlement, and the

14    payments over time from future earnings as the Debtor, as a reorganized debtor, will continue to

15    work at his law practice in order to make certain payments as required.

16    Third, at all relevant times in negotiating the Randazza Marital Settlement Agreement, each

17    side was represented by their own separate, experienced divorce counsel, and their agreement was

18    negotiated in good faith and at arm's length in order to avoid a costly, expensive, time-consuming,

19    and ultimately counter-productive contested divorce proceeding.  The litigation of the Randazza

20    marital dissolution and property settlement would be complex, expensive, time consuming, and

21    result in significant delays, and could have potentially delayed further the Debtor's emergence

22    from chapter 11 given the claims at issue.  The issues may have included difficult and uncertain

23    matters such as what the Debtor's partial interest in his law practice is worth, matters of sole versus

24    joint custody of their two minor children, future projected earnings from the Debtor's law practice,

25    the proper amount of alimony and support due and owing given the length of the marriage, and

26    other issues incident to the division of their property, including what was Mrs. Randazza's sole

27    and separate property (and thus not property of the Debtor's bankruptcy estate).

28    Although there is always the potential for claims estimation proceedings pursuant to

29

section 502(c) of the Bankruptcy Code for purposes of determination the confirmability of a chapter 11 plan, there is no guaranty that the Court would have allowed such a process in this case as to the DSO and related claims of Mrs. Randazza in the case at hand, and/or even if the Court did allow such estimation, that the estimated amount would have necessarily been at the amount that would have allowed the Debtor to confirm a plan of reorganization notwithstanding the continued pendency of a contested matter.  All of the foregoing indicates that the matters at issue involve complex, expensive and delaying matters that all weigh in favor of a compromise, especially in the realm of family law.

Finally, the proposed Randazza Marital Settlement Agreement is in the best interest of the others creditors because it fully and finally resolves the Mrs. Randazza's claims, thus resolving the largest remaining claims in the Debtor's Chapter 11 Case, and thus allowing the case to proceed to plan confirmation and a timely conclusion.  Without a resolution of these claims, they could have been a significant impediment to confirmation and/or at least a delay in its consummation and effectuation.  In sum, the Settlement Agreement is in the best interest of all creditors of the estate in allowing it to move forward to a final conclusion and without any further delay.

## IV.  Conclusion

WHEREFORE, the Debtor requests that the Court approve his Disclosure Statement on a final basis as containing adequate information pursuant to section 1125 of the Bankruptcy Code, and confirm his Plan pursuant to sections 1129(a) and (b).

Dated:  October 30, 2018.

By:    /s/ Matthew C. Zirzow
      LARSON ZIRZOW & KAPLAN, LLC
      ZACHARIAH LARSON, ESQ.
      E-mail: zlarson@lzklegal.com
      MATTHEW C. ZIRZOW, ESQ.
      E-mail: mzirzow@lzklegal.com
      850 E. Bonneville Ave.

      Attorneys for Debtor

LARSON ZIRZOW & KAPLAN, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169